Stephen Roberts
Texas Bar No. 17019200
Robert P. Franke
Texas Bar No. 07371200
Duane J. Brescia
Texas Bar No. 240252650
**STRASBURGER & PRICE, LLP**
600 Congress, Suite 1600
Austin, Texas 78701
(512) 499-3600 / (512) 499-3660 Fax

**PROPOSED ATTORNEYS FOR DEBTOR SUPERIOR AIR PARTS, INC.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Case No. 08-36705 |
| | § | |
| **SUPERIOR AIR PARTS, INC.,** | § | Chapter 11 |
| | § | |
| **Debtor.** | § | |

**DEBTOR'S MOTION FOR ORDER AUTHORIZING THE DEBTOR TO PAY
PRE-PETITION WAGES, SALARIES AND EMPLOYEE BENEFITS**

*AN EXPEDITED HEARING HAS BEEN REQUESTED.*

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Superior Air Parts, Inc. ("Superior" or "Debtor"), as debtor and debtor-in-possession, and for its motion (the "Motion") for an order under §§ 507(a)(3) and 507(a)(4) and 105(a) of Title 11 of the United States Code (the "Bankruptcy Code")) authorizing the Debtor to pay pre-petition wages, salaries, and employee benefits in accordance with existing company policies established by the Debtors prior to the Commencement Date (as defined below) respectfully state as follows:

Document    Page 2 of 14

### I. Jurisdiction

1. This Court has jurisdiction to consider this Motion pursuant to §§ 157 and 1334 of Title 28 of the United States Code. Consideration of this Motion is a core proceeding pursuant to § 157(b) of Title 28 of the United States Code. Venue is proper before this Court pursuant to §§ 1408 and 1409 of Title 28 of the United States Code.

2. The relief sought in this Motion is based upon §§ 507(a)(3) and (4) and 105(a) of the Bankruptcy Code.

### II. Background

3. On the date hereof (the "Commencement Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its properties and assets as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No committee, chapter 11 trustee or examiner has been appointed in this case.

4. Superior Air Parts, Inc. ("Superior") is a Texas corporation with its offices and operating facilities located in Coppell, Dallas County, Texas. It was founded in 1967 in order to supply the United States Air Force and commercial customers with replacement parts for piston powered aircraft engines. Superior is one of the largest suppliers of parts under Federal Aviation Administration's ("FAA") Parts Manufacturer Approval ("PMA") regulations for piston engines. It provides Superior-brand parts for engines created by two primary original equipment manufacturers ("OEMs"), the Continental division of Teledyne, Inc. and the Lycoming division of Textron, Inc. Its customers are companies that perform maintenance and overhaul work in the general aviation industry. Superior is also an OEM for the (i) 180-horsepower Vantage Engine and (ii) Superior or owner-built XP-360 Engine for various aircraft companies.

**DEBTOR'S MOTION FOR ORDER AUTHORIZING THE DEBTOR TO PAY PRE-PETITION WAGES, SALARIES AND EMPLOYEE BENEFITS – page 2 of 14**
561634.1/SPA/20354/0102/010209

5. In 2006, 100% of the ownership interests of Superior was acquired by Thielert, AG ("Thielert"), a German corporation based out of Hamburg, Germany. Also in 2006, Thielert purchased the debt of Superior's senior secured lender and subordinated lenders secured by substantially all of the Debtor's assets. The outstanding indebtedness to Thielert is approximately $10 million. However, it does not appear that Thielert has filed a UCC Financing Statement with the Texas Secretary of State, perfecting its security interests in the Debtor's assets. One of Thielert's other subsidiaries, Thielert Aircraft Engines GmbH, has been providing Superior with parts on credit under a supply contract and is owed over $15 million in unsecured debt. Upon information and belief, the Debtor' trade creditors are owed over $1.8 million.

6. The Debtor earned $451,365 from operations in 2006, but lost $5,635,053 in 2007 and $4,238,697 through October 2008.

7. On April 30, 2008, Thielert filed an insolvency proceeding in Hamburg, Germany and Dr. Achim Ahrendt was appointed as the preliminary Insolvency Administrator. Thielert Aircraft Engines GmbH, which had been providing engine parts to Superior on credit, also filed an insolvency proceeding in Germany. Dr. Ahrendt determined that it was in the best interest of Thielert and Superior to sell Superior or its assets. In June 2008, Superior hired Corporate Finance Partners Midcap GmbH ("CFP"), a German investment company based in Berlin, Germany to serve as its investment advisor and to seek possible suitors for Superior. CFP canvassed the market, negotiated with numerous potential purchasers, and enabled interested parties to conduct substantial due diligence. As a result of those efforts, Superior entered into an asset purchase agreement on December 30, 2008 with Avco Corporation ("Avco"), a

wholly-owned subsidiary of Textron, Inc., the highest bidder to date, pursuant to which Avco has agreed to buy substantially all of Superior's assets for $11.5 million, subject to adjustments for inventory reductions after October 31, 2008.

7. One of the conditions of the purchase agreement was that the purchase be consummated through a Chapter 11 bankruptcy proceeding. This Chapter 11 case was filed to liquidate the assets of Superior and to obtain the highest and best price for creditors, either through the purchase agreement with Avco, or a public auction.

8. Time is of the essence. Due to the nature of the Debtor's business, it is not feasible for the Debtor to continue to assemble and sell small engines or to sell parts when the sale of substantially all of its assets is pending. Accordingly, the Debtor has ceased sales and assembly operations to conserve cash and preserve the assets. The Debtor has retained a group of key employees who are necessary to the consummation of a sale and the Debtor's only post-petition income will come from the collection of accounts receivable. The longer the Debtor must continue to operate in this mode, the less funds will be available to pay creditors.

### III. Relief Requested

9. Pursuant to this Motion, the Debtor seeks authority, in its discretion and in the exercise of it business judgment, under §§ 105(a), 507(a)(4) and 507(a)(5) of the Bankruptcy Code to pay certain pre-petition obligations to the Debtor's employees. As more fully described below, these pre-petition obligations may include (1) amounts owed to the employees for wages, salaries, vacation pay, sick leave pay, holiday pay, jury duty pay, federal, state and local payroll related taxes, deductions and withholdings, payroll deductions in respect of various benefits, and reimbursement for business expenses; and (2) benefit claims of employees (including without limitation, medical,

dental, prescription, life and disability insurance, and miscellaneous other benefits) (collectively, "Employee Obligations").

**Pre-petition Wages, Salaries, and Reimbursable Expenses**

10.   The Debtor directly employs approximately 15 full-time employees and one independent contractor.[1]  The Debtor has both salaried and hourly employees.  The Debtor's direct employees are not union members and do not operate under a collective bargaining agreement.  All employees are paid bi-weekly, in arrears. Payroll obligations are paid either by direct deposit or check.  On Tuesday, December 30, 2008, all of the Employees were paid their wages and salaries earned through December 26, 2008.  As such, Debtor's most recent payroll will "straddle" the bankruptcy filing.  Consequently, as of the Commencement Date, the only wage and salary obligations owed by the Debtor to its employees would be amounts owed on account of services provided between December 27, 2008 and December 30, 2008.  The total pre-petition wages and salaries, which remain unpaid as of the Commencement Date, is approximately $7,855.59, or an average of less than $523.71 per employee.  See *Exhibit A*.  To the extent that any pre-petition wages or salaries are owed, the Debtor's active employees will be immediately affected by any delay in payment of these amounts.  Accordingly, the Debtor seeks authority to pay such amounts and any related payroll tax obligations.[2]

11.   In the ordinary course of business, many of the employees incur a variety of business expenses, including without limitation, travel and relocation expenses,

---

[1] Superior laid-off a substantially all of its non-essential workforce prior to the commencement of this case.
[2] The Debtor is not by this Motion seeking to pay any bonuses or other incentive compensation which may be owing to its officers and senior management but reserve the right to do so by separate motion at a later date.  Additionally, the Debtor is not by this Motion seeking to pay any severance benefits to terminated employees.

**DEBTOR'S MOTION FOR ORDER AUTHORIZING THE DEBTOR TO PAY PRE-PETITION WAGES, SALARIES AND EMPLOYEE BENEFITS – page 5 of 14**
561634.1/SPA/20354/0102/010209

which, consistent with ordinary practice, are reimbursable by the Debtors. It would be inequitable and cause an undue hardship if those active employees were required to bear those expenses, some of which may be substantial and all of which were incurred on behalf of the Debtor in the expectation that such expenses would be reimbursed promptly. Such expenses are typically paid by the Debtor on a rolling basis as processed. As of the Commencement Date, the Debtors estimate that approximately $1,000 was owed on account of pre-petition reimbursable/employee business expenses.

**Pre-petition Employee General Welfare Benefits**

12. Like most major businesses, the Debtor provides their employees with certain general welfare benefits, including, without limitation, medical, dental and prescription coverage, disability protection, jury duty pay, vacation and holiday pay, personal leave and sick day pay, life insurance and other insurance coverage. In addition, the Debtors make matching contributions to a 401(k) program. These additional benefits are an integral and important part of each employee's total compensation package. Interruption of such additional benefits would seriously disrupt the morale of employees and would undermine the Debtor's reorganization efforts. Thus, the Debtor requests authority to pay certain pre-petition amounts attributable to such benefits from time to time, as and when such amounts become due in the ordinary course.

    (a)    <u>Medical Benefits</u>

13. The Debtor also requests authority to pay, from time to time, as and when due, certain pre-petition claims, premiums and administrative expenses related to

medical, dental, vision and prescription benefits (collectively, "Pre-petition Medical Benefits") for employees and their eligible dependents.

14. Medical, dental and prescription coverage is provided to the employees through the Superior Air Parts, Inc. Cafeteria 125 Plan ("Plan"), a self-insured program administered by All-American Benefits ("AAB").  Under the Plan, the Debtor pays covered claims in full on a rolling basis as they are processed by AAB and pay an administration fee to AAB.  The employees are required to make contributions to the Plan in the form of payroll deductions, which vary depending upon whether the employee elects individual, spouse or family coverage.

15. The amount of medical and dental claims which have been submitted and not paid is approximately $500.  The Debtor's monthly payments to AAB for its administrative fee are $225.  The Debtor seeks authority to make all medical benefit payments that may be owed under their plans on account of pre-petition claims, to pay any outstanding administrative fees and premiums and to make all payments necessary to maintain post-petition medical, dental and prescription insurance coverage for their employees.

16. If certain amounts relating to the Pre-petition Medical Benefits claims of these employees are not paid, certain providers of health care would seek payment directly from the employees and might refuse to provide continuing medical services or treatment to them.  Permission to pay the Pre-petition Medical Benefits is particularly necessary for those employees who currently are receiving services or who are recuperating from recent medical treatment.  In addition, these employees might not receive disability income replacement payments.  The morale of the employees would

be seriously undermined if medical benefits were interrupted. More importantly, however, the Debtor desires to avoid the risk that employees will not be given needed treatment because health care providers have not been paid for pre-petition services rendered to them. Therefore, the Debtor requests authority to take all steps necessary to maintain continued medical benefits for their employees.

      (a)    <u>Vacation Pay, Sick Pay and Other Paid Leave</u>

17. Based on their tenure with the Debtor, the Debtor's full-time employees are permitted to take paid vacation. In addition to vacation pay, employees are entitled to sick leave pay, holiday pay, and other paid leave. Certain employees have accrued vacation and sick leave and other leave based upon work performed pre-petition. Under the Debtor's policies, accrued sick leave and vacation time, any unused time carries over to the next year. By this Motion, the Debtor does not propose to pay such amounts in lump sum cash payments,[3] but rather request authority to permit such employees to use their accrued paid vacation days, sick days and other leave post-petition and to be paid for such leave in the ordinary course of Company policies established prior to the Commencement Date.

      (a)    <u>401(k) Plan</u>

18. As an additional benefit to employees, Superior offers a retirement investment plan and withholds from the wages of participating employees contributions towards a § 401(k) Plan. Superior then matches that contribution by paying 50% of the contribution up to 3% of the salary. As of the Commencement Date, the Debtor estimates that $9,235.03 in accrued obligations in contributions exist. See *Exhibit A*.

---

[3] The accrued liability as of December 30, 2008 for vacation and related time is approximately $65,092.39. See *Exhibit A*.

**DEBTOR'S MOTION FOR ORDER AUTHORIZING THE DEBTOR TO PAY PRE-PETITION WAGES, SALARIES AND EMPLOYEE BENEFITS – page 8 of 14**
561634.1/SPA/20354/0102/010209

19. In order to maintain employee confidence and morale, the Debtors request authority to continue providing the Employee Obligations described in this Motion consistent with the Debtors' pre-petition customs and policies.

**Independent Contractor Obligations**

20. To supplement their workforce, the Debtor utilizes from time to time the services of independent contractors who provide necessary services relating to the operation of the Debtor's business. Included among these independent contractors are individuals from temporary service agencies and persons acting as freelance consultants providing services with respect to general management and various professional disciplines, such as administrative secretaries and reserves analysts (such individuals and corporate entities collectively, the "Independent Contractors"). Payment to each of the Independent Contractors varies according to the terms of each Independent Contractor's contract with the Debtor.

21. It would be difficult, time-consuming and expensive to replace these Independent Contractors due to their specialized skills, training and knowledge of the Debtor's operations and facilities. Although contract employees, these individuals work closely with the Debtor's wage and salary employees and are considered an important part of the Debtor's' team. The Debtor estimates that, as of the Commencement Date, the accrued and unpaid obligations to the one (1) Independent Contractor currently on staff totals approximately $3,000/month or less (the "Independent Contractor Obligation"), which for two days of work would be approximately $300.00. The Debtor requests authority, in its discretion and the exercise of its business judgment, to honor and pay in full the accrued and unpaid Independent Contractor Obligations.

**Payroll Deductions and Tax Withholdings**

22. As with other major business corporations, certain of the benefits that the Debtor offers their employees, such as medical benefits, dental insurance, and disability insurance involve payroll deductions as employee co-contributions or otherwise. In such cases, the Debtor makes deductions from an employee's payroll check and subsequently pays those funds, along with any required employer contributions, to various appropriate third parties. The Debtor also routinely and ordinarily makes deductions from employee's payroll relating to federal, state and local tax withholdings and garnishments. The Debtor requests authority to pay over to the appropriate parties all such funds in accordance with existing Company policies and practices.

### IV. Basis for the Relief Requested

23. The Debtor is engaged in the sale of substantially all of tis assets and the remaining employees are critical to the consummation of the transaction. Absent the relief requested herein, the employees and their families will suffer undue hardship because these amounts are needed to enable them to meet their financial obligations and to maintain their life and health insurance. If the requested relief is not granted, many of the employees may seek other employment alternatives. The Debtor's ability to preserve its business and assets and ultimately close the proposed sale will be adversely affected if the Debtor is unable to retain its employees. Accordingly, it is critical that the hardship and disruption caused by this Chapter 11 case be minimized in order to preserve morale and maintain the Debtor's workforce.

24. The Debtor believes that it will have sufficient cash from current accounts receivable and through the consensual use cash collateral to pay all amounts provided for herein as they come due.

25. As previously stated, the Debtor believes that the majority of the amounts it seeks to pay are entitled to a priority claim status under §§ 507(a)(4) and 507(a)(5) of the Bankruptcy Code. As such, these claims would be entitled to payment in full under any plan of reorganization. Authorizing the Debtor to make these payments at this time will affect only the timing of such payments and will not prejudice the rights of any other creditors or parties-in-interest. To the extent such claims are not entitled to priority claim status, their payment is justified under the "doctrine of necessity".

26. Under § 105(a) of the Bankruptcy Code, courts have authorized debtors to pay certain pre-petition claims where such payment was necessary to insure uninterrupted operation of the debtor's business activities, including claims similar to the Employee Obligations described in the Motion.

27. Although individual employee claims above $10,950 are not priority claims, where payment of the non-priority employee claims is critical to retention of employees and to the Debtor's ability to reorganize, the Court should authorize the Debtor to pay these pre-petition obligations under § 105(a). Here, payment of claims over $10,950, if any, will serve the goals of Chapter 11 by preventing employee flight and the associated disruption of the Debtor's operations while the sale process continues.

28. This Court and other courts in the Fifth Circuit have authorized payment of prepetition amounts owed to employees in other Chapter 11 cases. See *In re CEI Roofing, Inc.*, 315 B.R. 50, 60 (Bankr. N.D. Tex. 2004)("payment of prepetition wage claims of employees that qualify as priority wages claims under [now §507(a)(4)] does not upset the priorities under the Code or discriminate unfairly among general

unsecured creditors); *In re Coserv., L.L.C.*, 273 B.R. 487, 494 (Bankr. N.D. Tex. 2002)(finding that "wage claims typically are payable out of necessity as well as by virtue of their priority."); *See* also, *e.g.*, *In re EnRe*, Case No. 01-21354-SS-11 (Bankr. S.D. Tex. August 5, 2002); *In re Pioneer Companies, Inc.*, Case No. 01-38259-H3-11 (Bankr. S.D. Tex. July 31, 2001) (order authorizing debtors to pay pre-petition employee wages, salaries and employee benefits). Here, as in those cases, failure by the Debtors to honor pre-petition obligations to employees during the pendency of the Chapter 11 Cases would disrupt the efficient administration of the Debtor's estate and the proposed sale to Avco, to the clear detriment of the Debtor's creditors.

29.    It is essential to the Debtor's ability to continue to operate their businesses and ultimately reorganize that the employees continue to provide services to the Debtors and that the employees' morale be preserved. To accomplish this, it is essential that the Debtor's active employees be paid without interruption, and that the Debtor continues to honor its existing practices and policies that are of pecuniary benefit to such employees. Such payments are necessary to prevent irreparable harm to employee morale at the very time when their dedication, confidence and cooperation are most critical to the Debtor's reorganization efforts.

30.    The Debtor's requests for authority to pay the Employee Obligations is not to be deemed an assumption or adoption of any agreements or policies providing for such Employee Obligations. The Debtor is in the process of reviewing these matters and reserves all of its rights with respect to the assumption or rejection of any executory contracts.

### V.  Notice

31. As of the filing of this Motion, no trustee, examiner or creditors' committee has been appointed in this Chapter 11 case.  Because of the exigencies of the circumstances and the irreparable harm to the Debtor, its estate, and all parties-in-interest that will ensue if the relief requested herein is not granted, the Debtor submits that the notice set forth in the Certificate of Service filed contemporaneously herewith is sufficient.

32. No prior Motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors request that the Court enter an Order, in substantially the form attached hereto, granting the relief requested herein and such other and further relief as this Court may deem just and proper.

Respectfully submitted,

/s/ *Duane J. Brescia*
Stephen A. Roberts (SBN 17019200)
Robert P. Franke (SBN 07371200)
Duane J. Brescia (SBN 24025265)
**STRASBURGER & PRICE, LLP**
600 Congress, Suite 1600
Austin, Texas 78701
Tel. (512) 499-3600  /  Fax (512) 499-3643
stephen.roberts@strasburger.com
bob.franke@strasburger.com
duane.brescia@strasburger.com

**Proposed Bankruptcy Attorneys for the Debtor**

## CERTIFICATE OF CONFERENCE

The undersigned certifies that this motion is unopposed by the following parties: Thielert AG (the sole shareholder and secured creditor of the debtor). Since this motion is filed within one business day of the petition date, the undersigned will not know whether any parties may object until they are served.

/s/ Duane J. Brescia
Duane J. Brescia

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served upon the parties listed below, if any, and on the attached service list via First Class U.S. Mail, postage prepaid and email on January 2, 2009.

/s/ Duane J. Brescia
Duane J. Brescia