Stephen Roberts
Texas Bar No. 17019200
Robert P. Franke
Texas Bar No. 07371200
Duane J. Brescia
Texas Bar No. 240252650
**STRASBURGER & PRICE, LLP**
600 Congress, Suite 1600
Austin, Texas 78701
(512) 499-3600 / (512) 499-3660 Fax

**PROPOSED ATTORNEYS FOR DEBTOR
SUPERIOR AIR PARTS, INC.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § § § | Chapter 11 |
| SUPERIOR AIR PARTS, INC. | § § | Case No. |
| Debtor. | § § § § | |

**DEBTOR'S EXPEDITED MOTION TO APPROVE BID PROCEDURES
FOR SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS
<u>FREE AND CLEAR OF LIENS</u>**

Superior Air Parts, Inc., debtor and debtor-in-possession ("Debtor") in the above-captioned chapter 11 case (collectively, the "Case"), hereby moves (the "Motion") that this Court enter an order pursuant to 11 U.S.C. §§ 105, 363, and 365 (A) approving bid procedures (the "Bid Procedures") relating to a sale of substantially all of its assets (the "Superior Assets") as set forth below and in that certain Asset Purchase Agreement (the "APA")[1] by and between Debtor and Avco Corporation, a wholly owned subsidiary of

---

[1] The executed APA is also attached to the Debtor's Motion to sell assets filed contemporaneously with this Motion and can be accessed by any creditor or party in interest at http://www.strasburger.com/client/SuperiorAirParts/, or by

Textron Inc. ("Purchaser"), subject to higher and/or better offers; (B) scheduling a hearing (the "Sale Hearing") to consider that sale and approving the form and manner of notices including notices relating to an (i) auction (the "Auction") and (ii) objection deadline with respect to that sale; (C) approving the APA as the Stalking Horse Bid and approving other bid protections for Purchaser ("Bid Protections") as described herein; and (E) granting related relief. In support of this Motion, the Debtor respectfully represents as follows:

## I.
## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter concerns the administration of this bankruptcy estate; accordingly, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are 11 U.S.C. §§ 105, 363, and 365 and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.
## BACKGROUND

**A. Commencement of Cases**

2. On December 31, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") with this Court.

3. The Debtor continues to operate and to manage its businesses as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases pursuant to section 1104 of the

---

contacting counsel for the Debtor in writing. Some of the schedules to the APA contain proprietary information and so the Debtor will provide those schedules to counsel for the Creditors Committee subject to a confidentiality

Bankruptcy Code. No official committee of unsecured creditors has been appointed in these cases.

B.  **Overview of the business of Superior Air Parts, Inc.**

4.  Superior Air Parts, Inc. ("Superior") is a Texas corporation with its offices and operating facilities located in Coppell, Dallas County, Texas. It was founded in 1967 in order to supply the United States Air Force and commercial customers with replacement parts for piston powered aircraft engines. Superior is one of the largest suppliers of parts under Federal Aviation Administration's ("FAA") Parts Manufacturer Approval ("PMA") regulations for piston engines. It provides Superior-brand parts for engines created by two primary original equipment manufacturers ("OEMs"), the Continental division of Teledyne, Inc. and the Lycoming division of Textron Inc. Its customers are companies that perform maintenance and overhaul work in the general aviation industry. Superior is also an OEM for the 180-horsepower Vantage Engine and owner-built XM-360 engines for various aircraft companies. In addition, Superior is a distributor of over 2,000 general parts purchased from other manufacturers to compliment its own product line.

5.  In 2006, 100% of the ownership interests of Superior was acquired by Thielert, AG ("Thielert"), a German corporation based out of Hamburg, Germany. Also in 2006, Thielert purchased the debt of Superior's senior secured lender and subordinated lenders secured by substantially all of the Debtor's assets. The outstanding indebtedness to Thielert is approximately $10 million. However, it does not appear that Thielert has filed a UCC Financing Statement with the Texas Secretary of

---

agreement, to any Qualified Bidder who executes a confidentiality agreement, and as otherwise ordered by the Court. Further, undefined capitalized terms in this Motion shall have the meaning ascribed to them in the APA.

State, perfecting its security interests in the Debtor's assets. One of Thielert's other subsidiaries, Thielert Aircraft Engines GmbH, has been providing Superior with parts on credit under a supply contract and is owed over $15 million in unsecured debt. Upon information and belief, the Debtor' trade creditors are owed over $1.8 million.

6.      The Debtor earned $451,365 from operations in 2006, but lost $5,635,053 in 2007 and $4238,697 through October 2008.

7.      On April 30, 2008, Thielert filed an insolvency proceeding in Hamburg, Germany and Dr. Achim Ahrendt was appointed as the preliminary Insolvency Administrator. Thielert Aircraft Engines GmbH, which had been providing engine parts to Superior on credit, also filed an insolvency proceeding in Germany. Dr. Ahrendt determined that it was in the best interest of Thielert and Superior to sell Superior or its assets. In June 2008, Superior hired Corporate Finance Partners Midcap GmbH ("CFP"), a German investment company based in Berlin, Germany to serve as its investment advisor and to seek possible suitors for Superior. CFP canvassed the market, negotiated with numerous potential purchasers, and enabled interested parties to conduct substantial due diligence. As a result of those efforts, Superior entered into an asset purchase agreement on December 30, 2008 with Avco Corporation, a wholly owned subsidiary of Textron Inc., the highest bidder to date, pursuant to which Avco Corporation has agreed to buy substantially all of Superior's assets for $11.5 million, subject to adjustments for inventory reductions after October 31, 2008

8.      One of the conditions of the purchase agreement was that the purchase be consummated through a Chapter 11 bankruptcy proceeding. This Chapter 11 case

was filed to liquidate the assets of Superior and to obtain the highest and best price for creditors, either through the purchase agreement with Textron Inc. or a public auction.

9. Time is of the essence. Due to the nature of the Debtor's business, it is not feasible for the Debtor to continue to assemble and sell small engines or to sell parts when the sale of substantially all of its assets is pending. Accordingly the Debtor has ceased sales and assembly operations to conserve cash and preserve the assets. The Debtor has retained a group of key employees who are necessary to the consummation of a sale and the Debtor's only post-petition income will come from the collection of accounts receivable. The longer the Debtor must continue to operate in this mode, the less funds will be available to pay creditors.

C. **Permission to Use Cash Collateral**

10. The assets of the Debtor are pledged to Thielert A.G., Debtor's sole shareholder, to secure an indebtedness of approximately $10 million. As noted earlier, it does not appear that Thielert has perfected its lien. In any event, Thielert A.G. has consented in writing to the Debtor's use of cash collateral in this case pursuant to 11 U.S.C. 363(a)(2). There are no other parties with an interest in the Debtor's cash.

D. **The Proposed Sale of the Superior Assets**

11. Contemporaneously with the filing of this Motion, the Debtor filed a Motion for an Order Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Sale of Substantially All of Debtors' Assets Associated With or Related to Superior Air Parts, Inc.; (B) Approving Asset Purchase Agreement, Subject to Higher and/or Better Offers, Associated Therewith or Related Thereto; (C) Approving the Rejection of Certain Executory Contracts and Unexpired Leases; And (D) Granting Related Relief (the "Sale

Motion") with this Court. In the Sale Motion, the Debtor proposes to sell all of its rights, title, and interests in the Superior Assets to Avco Corporation, the Purchaser, free and clear of all liens, claims, encumbrances, and interests subject to higher and/or better offers received at the Auction.

12. This Motion was filed in connection with the Sale Motion in an attempt to take advantage of the possibility of better offers being made to the Debtor. The Debtor believes that the Bid Procedures adequately expose the Superior Assets to the marketplace, in light of the Debtor's extensive pre-petition sales efforts, and permit interested parties a reasonable opportunity to evaluate whether to make a bid for the Superior Assets and to submit any bids.

### III.
### RELIEF REQUESTED

13. By this Motion, pursuant to sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004, the Debtor seeks an order that:

   a) approves Avco Corporation as a "Stalking Horse" and "Qualified Bidder" and the APA as a "Qualified Bid";

   b) authorizes and schedules the Auction for a date, on or before March 20, 2009, for the sale of all or a portion of the Superior Assets (as defined in the Sale Motion) free and clear of all liens, claims, encumbrances, and interests (the "Sale");

   c) establishes a date, on or before March 20, 2009, for qualified over-bids to be received by the Debtor and approves the Bid Procedures in a form substantially similar to the form attached hereto as Exhibit A;

   d) approves the form and manner of the Auction and Sale notice substantially in the form attached as Exhibit B pursuant to Bankruptcy Rule 2002; and

   e) schedules the Sale Hearing to consider the Sale on or before February 28, 2009.

14. The Debtor requests that the Court grant the relief requested herein on an expedited basis. The Debtor is operating at a minimal operational level in anticipation of its assets being sold. Due to the Debtor's extensive marketing of its assets prior to the Petition Date, the Debtor located Purchaser and entered into the APA with Purchaser, who will serve as the Stalking Horse Bidder during the course of the Auction process. It is essential that the Debtor be granted the relief requested herein on an emergency basis so that an effective Auction can be conducted and a sale consummated as soon as possible and the Debtor can cease all operations and increase the recovery for the Debtor's estate.

**A.** **Auction**

15. Under Bankruptcy Rule 6004(f)(1), the Debtor may sell property outside the ordinary course of business by private sale or public auction. Here, the Debtor believes that an Auction will expose the Superior Assets to a broad and diverse market due to the Debtor's prepetition efforts and the Auction process, and will ensure a sale to the bidder making the highest and/or best offer.

**B.** **Proposed Bid Procedures**

16. The Debtor further believes that the Bid Procedures are necessary to facilitate the Auction and ensure an orderly process to generate the highest and/or best offer for the Superior Assets. If the proposed Bid Procedures are approved, the Debtor will solicit competing bids for the Superior Assets. The Bid Procedures describe, among other things: (a) the assets available for sale, (b) the manner in which bidders and bids become "qualified," (c) the coordination of diligence efforts among bidders and the Debtor, (d) the receipt, negotiation, and qualification of bids received, (e) the conduct of any auction, and (f) the selection and approval of any ultimately successful bidders.

17. The Bid Procedures were designed to be consistent with the Debtor's competing needs to expedite the Sale process and to promote Auction participation and active bidding. Further, the Bid Procedures show the Debtor's objective to conduct the Auction in a controlled but fair and open fashion. The Bid Procedures are likewise consistent with those approved by courts in this jurisdiction.

18. This section summarizes key provisions of the Bid Procedures but is qualified in its entirety by reference to the Bid Procedures[2] attached as <u>Exhibit A</u>:

   a) <u>Bid Deadline</u>. The deadline for submitting bids by a Qualified Bidder (as defined below) shall be [as set by the Court], at 4:00 p.m. (CDT) (the "Bid Deadline"). Prior to the Bid Deadline, a Qualified Bidder that wants to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its cash bid via hand delivery, electronic mail or facsimile to: (i) <u>Debtor</u>, at <u>Superior Air Parts, Inc., 621 South Royal Lane, Suite 100, Coppell, Texas 75019</u>, Attn:<u>Mr. Kent Abercrombie</u>, Fax: <u>972-829-4600</u>, E-mail: <u>kabercrombie@superiorairparts.com</u>; (ii) <u>Debtor's Counsel</u>, Strasburger & Price, LLP, Attn: Stephen A. Roberts, 600 Congress, Suite 1600, Austin, Texas 78701; Fax: <u>512-536-5723</u>, E-mail: stephen.roberts@strasburger.com; (iii) <u>Purchaser's Counsel</u>, Gardere Wynne Sewell, LLP, Attn: Deirdre B. Ruckman, 3000 Thanksgiving Tower, 1601 Elm Street, Dallas, Texas 75201-4761; and (iv) proposed counsel for any official committee of unsecured creditors (the "Committee") appointed in the Cases (collectively, the "Notice Parties"), not later than the Bid Deadline. A Bid proposal received after the Bid Deadline shall not constitute a Qualified Bid. However, if no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held.

   b) <u>Stalking Horse Bidder</u>. The Debtor has negotiated with the Purchaser, who will serve as the stalking-horse bidder for the purchase of substantially all of the Debtor's assets for a purchase price of $11.5 million subject to adjustments to inventory after October 31, 2008 (the "Stalking Horse Bid"). The Stalking Horse Bid is a Qualified Bid for all purposes herein.

   c) <u>Qualified Bidder</u>. A bidder shall be a Qualified Bidder if it timely submits a Qualified Bid along with a Good Faith Deposit (as defined below) and the Debtor, in its discretion, determines such bidder is

---

[2] Undefined capitalized terms in this section shall have the meaning ascribed to them in the Bid Procedures.

reasonably likely to submit a bona fide offer. In order to be deemed a Qualified Bidder, a bidder must also present evidence of cash available to close the Sale within 3 business days of the Sale Order being entered by the Bankruptcy Court.

d) <u>Qualified Bid</u>. A qualified bid is a bid timely submitted in accordance with the Bid Requirements.

e) <u>Bid Requirements</u>. To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtor to satisfy each of the following conditions:

   i) <u>Assets</u>. A Bid must (a) identify the assets to be purchased (b) identify the entity or entities bidding on the Superior Assets, (c) state the proposed purchase price, and (d) allocate that purchase price among the respective Superior Asset(s) to be purchased and (e) identify any executory contracts and unexpired leases to be assumed and rejected. A bid must be a "firm offer" and not contain any contingencies to the validity, effectiveness, or binding nature, including, without limitation, contingencies for financing, due diligence, or inspection.

   ii) <u>Good-Faith Deposit</u>. Each Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of cash or in other form of immediately available U.S. funds, in an amount equal to $350,000. The Good Faith deposit shall be delivered to Debtor's counsel, Stephen Roberts, to be held in the trust account of Strasburger & Price, pending the closing of the Sale of further order of the Bankruptcy Court. Wire instructions will be made available to such account upon request.

   iii) <u>Minimum Overbid</u>. The consideration proposed by the Bid must be cash. The aggregate proposed purchase price must equal or exceed the sum of (a) $11.5 million subject to no greater inventory adjustments to the purchase price than in the Stalking Horse bid; plus (b) $500,000.00 (initial overbid amount); plus (c) $350,000 ("Break-Up Fee" (defined below)).

   iv) <u>Same or Better Terms</u>. The Bid must be on terms that are, in the Debtors' business judgment, the same or better than the terms in the APA. A Bid shall include a copy of the APA marked to show all changes requested by the Bidder.

    v)   <u>Irrevocable</u>. Each Bid must be irrevocable until five (5) business days after the consummation or closing of the Sale approved by this Court in a final, nonappealable order.

    vi)   <u>Ability to Close</u>. Each Bid must be accompanied by evidence reasonably satisfactory to the Debtor demonstrating the Bidder's financial ability to close no later than 3 business days after the Sale Order is entered.

    vii)   <u>No Fees payable to Qualified Bidder</u>: A Bid may not request or entitle the Qualified Bidder to any fee, expense reimbursement, or similar type of payment. Further, by submitting a Bid, a Bidder shall be deemed to waive its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code or in any way related to the submission of its Bid or the Bid Procedures.

f)   No later than two (2) business days before the Auction, the Debtor will notify all Qualified Bidders of the highest, best, and/or otherwise financially superior Qualified Bid, as determined in the Debtors' discretion (the "Baseline Bid"). The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factor that the Debtor reasonably deems relevant to the value of the Qualified Bid to the estate, including, among other things, the following, which may govern, but not control: (a) the amount and nature of the consideration; (b) the proposed assumption of any liabilities, if any; (c) the ability of the Qualified Bidder to close the proposed transaction; (d) the proposed closing date and the likelihood, extent, and impact of any potential delay in closing; (e) any purchase-price adjustments; (f) the impact of the contemplated transaction on any actual or potential litigation; (g) the net economic effect of any changes from the APA, if any, contemplated by the proposed transaction; and (h) the net after-tax consideration to be received by the Debtor (collectively, the "Bid Assessment Criteria").

g)   <u>Auction</u>. If a Qualified Bid other than the Stalking Horse Bid is received, the Debtor will conduct an Auction. The Auction shall be conducted according to the following procedures:

    i)   <u>The Debtor Shall Conduct the Auction</u>. The Debtor and its professionals shall direct and preside over the Auction. At the start of the Auction, the Debtor shall describe the terms of the Baseline Bid and open the Auction for higher and/or better Bids. All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, with all material terms of each Bid fully disclosed to all

      other Qualified Bidders. The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

  ii)  <u>Participation at the Auction</u>. Only a Qualified Bidder is eligible to participate at the Auction. Only the authorized representative of each Qualified Bidder shall be permitted to attend.

  iii)  <u>Overbids</u>. During the Auction, bidding shall begin with the Baseline Bid and subsequently continue in minimum increments of at least $50,000, or such other amount as may be determined by the Debtor during the Auction. Other than as set forth herein, the Debtor may conduct the Auction in the manner it determines will result in the highest, best, and/or otherwise financially superior offer for the Superior Assets.

  iv)  <u>Additional Procedures</u>. In its reasonable discretion, after consultation with all Qualified Bidders, the Debtor may adopt rules for the Auction at or prior to the Auction that, in its reasonable discretion, will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bid Procedures Order. All such rules will provide that all bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (i.e., the principals submitting the bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

  v)  <u>Closing the Auction</u>. Upon conclusion of the bidding, the Auction shall be closed, and the Debtor shall (a) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the Sale process, including those factors affecting the speed and certainty of consummating the Sale, (b) identify the highest, best, and/or otherwise financially superior offer for the Superior Assets (the "Successful Bid")[3] and the entity submitting such Successful Bid (the "Successful Bidder"), which highest, best, and/or otherwise financially superior

---

[3] If no Auction is held, the Stalking Horse Bid shall be deemed the "Successful Bid" and Avco Corporation the "Successful Bidder".

**DEBTOR'S EXPEDITED MOTION TO APPROVE BID PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS -  - PAGE 11 OF 18**
559777.3/SPA/20354/0101/010209

offer will provide the greatest amount of net value to the Debtor, (c) identify the next highest or otherwise best offer after the Successful Bid (the "Back-Up Bid"), and advise the entity submitting such Back-up Bid, provided, however, that no Qualified Bidder is required to be a Back-Up Bidder, and (d) announce to the participants the results of the Auction.

**C.  Purchaser Protections/Break-Up Fee**

19. To induce Purchaser to expend the time, energy, and resources necessary to submit its "stalking-horse" bid, the Debtor has agreed to provide, and to seek this Court's approval of, certain bid protections to the Purchaser. In addition to the above requirements, Debtor proposes that the sum of $350,000 (the "Break-Up Fee") be paid to the Purchaser at the closing of the Sale only if (a) Purchaser is not the Successful Bidder, and (b) the proposed Sale closes. In no event shall the Purchaser be entitled to the Break-Up Fee if no Sale occurs. Other protections, such as minimum overbid amounts, were also negotiated with the Purchaser. These protections were negotiated in good faith and provide a structure and format for other potentially interested parties to formulate a Bid. Failure to approve the Bid Procedures may jeopardize the Sale to the detriment of the Debtor and its estate.

**D.  Notice of Sale Hearing, Auction, Bid Procedures, and Objection Dates**

20. To preserve the Debtor's going-concern value while providing the requisite notice of the proposed Sale as required under Bankruptcy Rule 2002, the Debtor intends to proceed to the Auction and the Sale Hearing as detailed herein. The Debtor proposes to hold the Auction at a date set by the Court in the order approving these bid procedures.

21. The Debtor requests that the Court schedule the Sale Hearing for the afternoon on the date set for the Auction. The Debtor proposes that objections, if any,

to the Sale Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the Clerk of the Bankruptcy Court for the Northern District of Texas on the date set forth by the Court in the order approving the Bid Procedures (the "Sale Objection Deadline"), and (d) be served on the Notice Parties by that same time. The failure of any objecting person or entity receiving the Auction and Sale Notice to timely file its Sale Objections will be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Debtor's consummation of the proposed Sale, if so authorized by this Court.

22. In accordance with Bankruptcy Rule 2002, the Debtor proposes to give notice of the Bid Procedures, the Bid Procedures Order, the Auction, the Sale, and the Sale Objection Deadline

   a) by first class postage pre-paid to: (i) all suppliers of the Business at any time during the last five years, (ii) all customers of the Business since January 1, 2003, (iii) all distributors of the Business who served as such at any time during the last five years, (iv) all parties (other than Seller) to any contract listed in Schedule 6.6 of the APA or other executory contract or unexpired lease, (v) all owners of piston-powered aircraft engines registered with the FAA as such, (vi) all plaintiffs in the litigation identified in Schedule 6.7 of the APA; (vii) Federal Trade Commission; and (viii) all other Creditors (other than unknown Creditors) of Seller; and

   b) by publication on its website and in the following publications: Aircraft Owners and Pilot Association Magazine; EAA – Sport Aviation Magazine; and Trade-a-Plane Magazine

23. The Debtor submits that such notice is reasonably calculated to provide timely and adequate notice to the Debtor's creditors and other parties-in-interest, along with parties that have expressed interest (or may express interest) in bidding on the Superior Assets, the Bid Procedures, the Auction, the Sale, the Cure Costs, and all matters related thereto and proceedings to be held thereon.

24. Based on the foregoing, the Debtor submits that the relief requested herein is necessary and appropriate, is in the best interests of the Debtor and its estate, and should be granted in all respects.

## IV.
## BASIS FOR REQUESTED RELIEF

25. The Auction and the Bid Procedures are in the best interests of the Debtor's estate because they will promote active bidding from seriously interested parties and will identify the best and/or highest offer(s) for the Superior Assets. The proposed Bid Procedures will allow the Debtor to conduct the Auction in a controlled, fair, and open fashion, which will encourage participation by financially capable bidders who demonstrate the ability to close a transaction. The Debtor believes that the Bid Procedures are: (a) sufficient to encourage bidding for the Superior Assets; (b) consistent with other procedures previously approved by courts; and (c) appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, considering the exigencies of this case.

26. After the debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" In re S.N.A. Nut Co., 186 B.R. 98 (Bankr. N.D. Il. 1995); In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992); In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("A presumption of reasonableness attaches to a Debtor's management decisions.").

27. With respect to the procedures to be used by debtors when selling assets of the estate, courts have made clear that a debtor's business judgment is entitled to

substantial deference. See, e.g., Integrated Res., 147 B.R. at 656-57 (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business-judgment" standard under which such procedures and arrangements are "presumptively valid"); In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).

28. The paramount goal in any proposed auction of estate property is to maximize the proceeds received by the estate. See, e.g., In re Food Barn Stores, Inc., 107 F.3d 558, 564-65 (8th Cir. 1997) (finding that, in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); Integrated Res., 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting In re Atlanta Packaging Prods., Inc., 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

29. Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. See, e.g., Integrated Res., 147 B.R. at 659 (such procedures "encourage bidding and maximize the value of the debtor's assets"); In re Fin. News Network, Inc., 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("Court-imposed rules for the disposition of assets ... [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates."). Section 105(a) of the Bankruptcy Code, which provides that the Court "may issue any order, process or judgment that is

necessary or appropriate to carry out the provisions of this title," provides additional support to approve bid procedures. 11 U.S.C. § 105(a).

30. The Debtor has sound business justification for seeking approval of the Bid Procedures at this time. Pre-bankruptcy the Debtor extensively marketed its assets and the Debtor has very limited resources to try to maximize the value of the Superior Assets. Without additional cash or debtor-in-possession financing, the Debtor will be unable to continue operations beyond the time period proposed herein. Accordingly, the Debtor has determined that, in its business judgment, the best option for maximizing the value of the Superior Assets for the benefit of creditors, yet maintaining operations, is the Sale pursuant to the Bid Procedures.

31. The Debtor believes that the Bid Procedures will provide a framework for it to entertain Qualified Bids for the Superior Assets and, if such Qualified Bids are received, to conduct the Auction in a fair and open fashion that will encourage participation by financially capable bidders who demonstrate the desire and ability to consummate the Sale. This should increase the likelihood that the Debtor will receive the greatest possible consideration for the Superior Assets. Under the circumstances, approval of the Bid Procedures is in best interests of the Debtor, its estate, and the creditors thereof.

**V.
COMPLIANCE WITH BANKRUPTCY RULE 6003**

32. Because the relief requested herein is procedural in nature, and does not affect substantive rights, Debtor believes that Bankruptcy Rule 6003 is inapplicable. However, if this Court disagrees, the Debtor further seeks approval of this Motion in compliance with Bankruptcy Rule 6003. Pursuant to Bankruptcy Rule 6003, the Court

may not grant the relief requested herein except to the extent necessary to avoid immediate and irreparable harm. As noted above, the approval of the Bid Procedures and the other relief related thereto is essential to prevent potentially immediate and irreparable damage to the Debtor and the value of its business enterprise. Accordingly, the Debtor submits that cause exists to satisfy Bankruptcy Rule 6003.

## VI.
## NOTICE

33. Notice of this Motion will be given to the following: (a) the Office of the United States Trustee; (b) the prepetition secured lender; (c) all parties described in paragraph 22 herein except 22(v); (d) the United States Internal Revenue Service; (e) the Securities and Exchange Commission; and (f) all parties in interest who have filed a notice of appearance or on whom service must be effected under the Federal Rules of Bankruptcy Procedure. Given the nature of the relief requested herein, the Debtor submits that no further notice is required.

WHEREFORE, the Debtor respectfully requests that this Court grant the Motion and award the Debtor such other and further relief that this Court deems just and proper.

Dated: January 2, 2009

Respectfully submitted,

/s/ *Stephen A. Roberts*
Stephen A. Roberts (SBN 17019200)
Robert P. Franke (SBN 07371200)
Duane J. Brescia (SBN 24025265)
STRASBURGER & PRICE, LLP
600 Congress, Suite 1600
Austin, Texas 78701
Tel. (512) 499-3600  /  Fax (512) 499-3643
stephen.roberts@strasburger.com

bob.franke@strasburger.com
duane.brescia@strasburger.com

Proposed Bankruptcy Attorneys for Debtor
Superior Air Parts, Inc.

### CERTIFICATE OF CONFERENCE

The undersigned certifies that this Motion is unopposed by the following parties: Thielert AG (the sole shareholder and secured creditor of the debtor). Since this Motion is filed within one business day of the petition date, the undersigned will not know whether any parties may object until they are served.

*/s/ Stephen A. Roberts*
Stephen A. Roberts

### CERTIFICATE OF SERVICE

The undersigned counsel certifies that on the 2nd day of January, 2009, a true and correct copy of the foregoing was transmitted to all creditors and parties in interest as detailed on the separately filed Certificate of Service.

*/s/ Stephen A. Roberts*
Stephen A. Roberts