Stephen Roberts
Texas Bar No. 17019200
Robert P. Franke
Texas Bar No. 07371200
Duane J. Brescia
Texas Bar No. 240252650
**STRASBURGER & PRICE, LLP**
600 Congress, Suite 1600
Austin, Texas 78701
(512) 499-3600 / (512) 499-3660 Fax

**PROPOSED ATTORNEYS FOR DEBTOR SUPERIOR AIR PARTS, INC.**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO. 08-36705-BJH |
| **SUPERIOR AIR PARTS, INC.** § | |
| § | CHAPTER 11 |
| DEBTOR, § | |
| § | |

**DEBTOR'S (I) APPLICATION TO EMPLOY CORPORATE FINANCE
PARTNERS MIDCAP GMBH AS INVESTMENT CONSULTANTS
AND (II) MOTION TO ASSUME EXECUTORY CONTRACT
WITH CORPORATE FINANCE PARTNERS MIDCAP GMBH**

*NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, 12TH FLOOR, DALLAS, TEXAS 75242, BEFORE 5:00 O'CLOCK P.M., TWENTY (20) DAYS FROM THE DATE OF SERVICE HEREOF. ANY RESPONSE MUST BE IN WRITING AND FILED WITH THE CLERK, AND COPY MUST BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND THE TIME SET FORTH HEREIN. IF A RESPONSE IS FILED, A HEARING WILL BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY. IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.*

Superior Air Parts, Inc. ("Debtor" or "Superior Air") files this (I) Application to

Employ Corporate Finance Partners Midcap GmbH as Investment Consultants and (II)

Motion to Assume Executory Contract with Corporate Finance Partners Midcap GmbH and would show the Court as follows:

### I. Jurisdiction

1.    This Court has jurisdiction to consider this Motion pursuant to sections 157 and 1334 of Title 28 of the United States Code.  Consideration of this Motion is a core proceeding pursuant to section 157(b) of Title 28 of the United States Code.  Venue is proper before this Court pursuant to sections 1408 and 1409 of Title 28 of the United States Code.

2.    The relief sought in this Motion is based upon §§ 327 of the Bankruptcy Code.

### II. Background

3.    On December 31, 2008 (the "Commencement Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties and assets as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No committee, chapter 11 trustee or examiner has been appointed in this case.

4.    Superior Air Parts, Inc. ("Superior") is a Texas corporation with its offices and operating facilities located in Coppell, Dallas County, Texas.  It was founded in 1967 in order to supply the United States Air Force and commercial customers with replacement parts for piston powered aircraft engines.  Superior is one of the largest suppliers of parts under Federal Aviation Administration's ("FAA") Parts Manufacturer Approval ("PMA") regulations for piston engines.  It provides Superior-brand parts for engines created by two primary original equipment manufacturers ("OEMs"), the

Continental division of Teledyne, Inc. and the Lycoming division of Textron, Inc. Its customers are companies that perform maintenance and overhaul work in the general aviation industry. Superior is also an OEM for the (i) 180-horsepower Vantage Engine and (ii) Superior or owner-built XP-360 Engine for various aircraft companies.

5. In 2006, 100% of the ownership interests of Superior was acquired by Thielert, AG ("Thielert"), a German corporation based out of Hamburg, Germany. Also in 2006, Thielert purchased the debt of Superior's senior secured lender and subordinated lenders secured by substantially all of the Debtor's assets. The outstanding indebtedness to Thielert is approximately $10 million. However, it does not appear that Thielert has filed a UCC Financing Statement with the Texas Secretary of State, perfecting its security interests in the Debtor's assets. One of Thielert's other subsidiaries, Thielert Aircraft Engines GmbH, has been providing Superior with parts on credit under a supply contract and is owed over $15 million in unsecured debt. Upon information and belief, the Debtor' trade creditors are owed over $1.8 million.

6. The Debtor earned $451,365 from operations in 2006, but lost $5,635,053 in 2007 and $4,238,697 through October 2008.

7. On April 30, 2008, Thielert filed an insolvency proceeding in Hamburg, Germany and Dr. Achim Ahrendt was appointed as the preliminary Insolvency Administrator. Thielert Aircraft Engines GmbH, which had been providing engine parts to Superior on credit, also filed an insolvency proceeding in Germany. Dr. Ahrendt determined that it was in the best interest of Thielert and Superior to sell Superior or its assets. In June 2008, Superior hired Corporate Finance Partners Midcap GmbH ("CFP"), a German investment company based in Berlin, Germany to serve as its

investment advisor and to seek possible suitors for Superior. CFP canvassed the market, negotiated with numerous potential purchasers, and enabled interested parties to conduct substantial due diligence. As a result of those efforts, Superior entered into an asset purchase agreement on December 30, 2008 with Avco Corporation ("Avco"), a wholly-owned subsidiary of Textron, Inc., the highest bidder to date, pursuant to which Avco has agreed to buy substantially all of Superior's assets for $11.5 million, subject to adjustments for inventory reductions after October 31, 2008.

8. One of the conditions of the purchase agreement was that the purchase be consummated through a Chapter 11 bankruptcy proceeding. This Chapter 11 case was filed to liquidate the assets of Superior and to obtain the highest and best price for creditors, either through the purchase agreement with Avco, or a public auction.

### III. Relief Requested

9. The Debtor desires to employ CFP to serve as its consultant and investment advisors and to continue to assist with the proposed sale. Since a significant portion of the time and effort provided by Mr. Schenk occurred prior to the petition date, Debtor also seeks to assume the retention agreement with CFP. A copy of the Engagement Letter (Advisory Assignment) ("Assignment") dated December 23, 2008, but effective June 2008, is attached hereto as *Exhibit A*.

10. Mr. Schenk and CFP are investment consultants, with a principal place of business located at Torstr. 35 – 10119, Berlin, Germany, telephone +49 30 497 99 99 60, facsimile +49 30 497 99 99 67. CFP is an internationally recognized consulting firm specializing in mergers & acquisitions, in particular turnaround situations, refinancing, joint ventures, sales of going concerns, and liquidation of assets of financially troubled

companies. CFP operates several offices in Europe (Berlin, Frankfurt, and Vienna). CFP also has a strong track record of arranging sale transactions in Chapter 11 proceedings. For example, CFP has assisted in some of the largest bankruptcy cases in Germany, such as marketing and selling Germany's largest bankruptcy in 2007, Schieder Möbel Holding (12,000 staff, EUR 800 million sales) ("SMH Group"). CFP achieved to sell substantial parts of SMH Group out of bankruptcy, generating significant proceeds to the bankruptcy estate and the Creditors. Mr. Schenk has personally worked on the SMH Group bankruptcy and other large bankruptcy cases and as such holds a professional track record that spans more than 12 years of advisory services on mergers & acquisitions with a focus on bankruptcy proceedings and distressed companies. In addition, Mr. Schenk worked two years in New York, USA, for Compass Advisors, an M&A boutique specialized on mergers & acquisitions for troubled companies/ bankruptcies as well as for going concern sales.

11. CFP organized and structured the entire M&A process regarding Superior, drafted supporting transaction documentation, approached potential investors and generated interest in Superior from various potential Buyers, throughout the process maintained contact with investors, organized due diligence and lead the most serious and interested Buyers throughout due diligence as well as assisted in the negotiation of Letters of Intent with potential Buyers as well as asset purchase sale agreements. The CFP team, primarily myself, has spent significant time in the US (e.g. Superior's facilities in Coppell, Texas, or at meetings with investors), implementing the M&A process. The M&A process was executed as follows:

    (a) CFP identified 76 potential investors (from Superior's industry, adjacent industries, as well as financial investors) world-wide, approached those

investors, provided initial information about Superior as well as discussed with the investors their potential interest in acquiring Superior.

(b) 11 investors showed an initial interest and entered into Confidentiality Agreements with CFP. To those investors, a detailed information package was made available and CFP requested those investors to submit an offer.

(c) Four offers were received and due diligence was awarded to those investors, including access to a data room, containing detailed financial, operating and legal information and discussion with Superior management.

(d) With the two most interested and serious parties (including Textron Inc.) which both required Superior to file for Chapter 11, criteria of selection were the purchase price being offered as well as having the financial wherewithal to consummate a transaction such as Superior without financing contingency (i.e. to provide maximum closing certainty), parallel negotiations and confirmatory due diligence was pursued. CFP handled this stage of the transaction process and the confirmatory due diligence phase, for which substantial additional information had to be prepared. Consequently, with two investors interested and being handled in parallel through CFP, a competitive bidding scenario was created.

(e) With these two entities, CFP structured and arranged to enter into a non-exclusive LOI, and supported Strasburger & Price, LLP in the negotiations of an APA, after a thorough and confirmatory due diligence.

(f) Following completion of its very detailed due diligence, Avco Corporation then submitted a differently structured, but in sum a financially superior offer (purchase price of USD 11.5 million) to the other serious proposal, providing for more immediate cash proceeds to the bankruptcy estate.

(g) Consequently, the APA with Avco Corporation was fully negotiated and executed.

12. The scope of the services to be provided by CFP will include, but will not be limited to the following:

(a) FP will, as advisor, support Superior throughout the sales process as described in the preamble of the Assignment, and includes the obligation to provide:

(i) organization and management of the Transaction (as defined in the Assignment);

(ii) Identification and contact of potential buyers;

    (iii) preparation of a short profile and further supporting documentation;

    (iv) support with management presentations;

    (v) obtain and verify Transaction offers from potential buyers, provide support in the assessment of these offers;

    (vi) support and organize due diligence activities, including the setup and management of a date room, and

    (vii) assistance and support with Transaction negotiations with potential buyers

    (b) If a bidding procedure is required, CFP will also prepare a program which will include marketing the assets through electronic communications, internet web sites, letters, fliers, signs and telephone solicitation. Other marketing activities may include the use of newspapers, magazines and journal advertising, or such other methods as CFP may deem appropriate and/or Debtor orders otherwise;

    (c) Circulate materials to interested parties regarding the asset sale, after completing confidentiality documents with those interested parties. The Debtor gives CFP the right to execute and modify confidentiality agreements on the Debtor's behalf;

    (d) Respond, provide information to, communicate and negotiate with and obtain offers from interested parties and make recommendations to the Debtor as to whether or not the Debtor should accept any particular offer;

    (e) As necessary and requested, assist the Debtor in formulating a plan of reorganization and advise the Debtor as to the setup and execution of any sale of the assets outside the ordinary course of business;

    (f) Communicate regularly with the Debtor and other interested parties with respect to the status of the services CFP is providing; and

    (g) If necessary, testify in Court on the status any and all offers and negotiations related thereto on behalf of Debtor.

13. In consideration of the services rendered by CFP under the Assignment, CFP shall receive a "Success Fee" that shall be defined as the consummation (signing of a binding agreement and receipt of respective cash proceeds from the transaction by

Superior, or by the Bankruptcy Estate in case of a Chapter 11) of a Transaction, as more fully defined in the Assignment.  The amount of the Success Fee shall be calculated upon the following escalating schedule of Transaction Value (as defined in the Assignment):

    (a) 3% on the first US $10 million of Transaction Value;
    (b) 5% on the next US $2 million (i.e., from $10 million to $12 million);
    (c) 7.5% on the next US $5 million (i.e., from $15 million to $17 million); and
    (d) 10 % on every USD exceeding the amount of $17 million.

14. To the best of Debtor's knowledge, CFP does not have any connection with the Debtor, any of its creditors, or any other party in interest, or their respective attorneys and accountants, with the exception that CFP was also previously retained by the Debtor's parent, Thielert AG, to perform the same services.  As the Transaction moved from a stock sale to an asset sale, it was determined and became necessary that Superior should be the contracting party. The Debtor asserts that there is no conflict because the interests of the Debtor and Thielert AG were aligned.  The goal is to obtain the highest and best price for the assets, which is also aligned with the interests of all creditors and the estate.  Also, because CFP's proposed compensation is a Success Fee based upon closing, there are no current debts owed to CFP.  CFP is not a creditor and it is otherwise a disinterested person, as that term is defined by 11 U.S.C. § 327(a) and (b).  See the Declaration of Daniel Schenk, Managing Director of Corporate Finance Partners Midcap GMBH , Filed (i) Pursuant to 11 U.S.C. § 2014 and (ii) In Support of All motions to be Heard on January 9, 2009, filed contemporaneously with this Application.

15. As stated above, because a significant portion of the time and effort expended by Mr. Schenk and CFP occurred prior to the petition date, Debtor desires to

assume the executory contract with CFP.  Debtor asserts that there are no defaults and this, no cure provisions are required.   The Court has the power to permit assumption of this contract pursuant to 11 U.S.C. § 365.   Assumption or rejection of executory contracts is based upon the sound business judgment of the Debtor.  See *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir. 1985); see also, generally, *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993).  Here, because the bulk of the work performed by CFP occurred prior the Commencement Date and culminated in an asset purchase agreement with Avco Corporation, the Debtor believes that the Assignment should be assumed.  It will benefit the estate and all creditors if CFP remains the investment consultant for the Debtor because CFP has a valuable accumulation of knowledge about the assets to be sold, the Debtor's business, potentially interested buyers and efforts to sell made to date.  It would be difficult, time consuming and expensive to replace this knowledge at this juncture in the case.   There is no harm in the assumption of the Assignment because there are no current defaults for which cure will need to be made.

WHEREFORE, the Debtor, Superior Air Parts, Inc. prays that this Court enter an order (i) granting it the authority to employ CFP under the terms and conditions described in the Assignment attached hereto as *Exhibit A,* (ii)  authorizing the Debtor to assume the executory contract with CFP without the necessity of any cure provision and (iii) granting the Debtor such other and further relief to which it may show itself to be justly entitled.

Respectfully submitted,

Superior Air Parts, Inc.

By: ___/s/ Kent Abercrombie_____
Kent Abercrombie, Chief Executive Officer

**Debtor and Debtor-in-Possession**

Respectfully submitted,

/s/ Stephen A. Roberts
Stephen A. Roberts (SBN 17019200)
Robert P. Franke (SBN  07371200)
Duane J. Brescia (SBN 24025265)
**STRASBURGER & PRICE, LLP**
600 Congress, Suite 1600
Austin, Texas 78701
Tel. (512) 499-3600  /  Fax (512) 499-3643
stephen.roberts@strasburger.com
bob.franke@strasburger.com
duane.brescia@strasburger.com

**Proposed Bankruptcy Attorneys for the Debtor**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served upon the partie(s) listed below and on the attached service list via First Class U.S. Mail, postage prepaid on January 7, 2009.

/s/ *Stephen A. Roberts*
Stephen A. Roberts

Office of the United States Trustee
1100 Commerce Street
Dallas, Texas  75242-1496