

## CORPORATE FINANCE PARTNERS

CFP MidCap GmbH - Torstr. 35 - 10119 Berlin

Kent Abercrombie
President/CEO
Superior Air Parts Inc.
621 S. Royal Lane, Suite 100
Coppell, TX 75019-3805
USA

**Corporate Finance Partners
MidCap GmbH**
Torstr. 35
10119 Berlin
Germany
Tel:  +49 30 4979999 60
Fax: +49 30 4979999 67

Email: mcap@cfpartners.com
Web:  www.cfpmidcap.com

**Daniel Schenk**
Managing Director
Mob:  +49 172 1985 861

Effective as of June 2008

## ENGAGEMENT LETTER (Advisory Assignment)

between

**Superior Air Parts Inc.**

- hereinafter referred to as "SAP" -

and

**Corporate Finance Partners Midcap GmbH**
Berlin, Germany
hereinafter referred to as "CFP"

subject to the approval of

**Thielert AG
represented by Dr. Achim Ahrendt**
in his function as its
(preliminary) Insolvency Administrator

- hereinafter referred to as "TAG or the Company" -

Preamble:

(i)    Superior Air Parts Inc. (SAP) is a 100% subsidiary of TAG. TAG has filed for insolvency and is represented by the insolvency administrator Dr. Achim Ahrendt. Superior Air Parts Inc. is not under insolvency protection.

(ii)   CFP has worked since June 2007 on a potential sale of SAP on behalf of SAP owner as well as SAP major creditors.

(iii)  Investors, through Corporate Finance Partners (CFP) have approached SAP as well as TAG in order to acquire SAP or major assets of SAP, most preferably via a Chapter 11 procedure, a so called pre-packaged bankruptcy.

Corporate Finance Partners MidCap GmbH
Amtsgericht Charlottenburg von Berlin HRB 101757 B
Geschäftsführer: Felix Thorsten Markus Schauerte – Daniel Schenk
Deutsche Bank – BLZ 10070024 – Konto 1587872

(iv) CFP is therefore engaged by SAP to assist in the sale of assets by SAP, potentially via Chapter 11 and maximize value to Superior's creditors (the "Transaction")

(v) TAG and its subsidiary Thielert Aircraft Engines GmbH are by far the major creditors of SAP with a combined claim of approx. USD 26 million outstanding.

(vi) Any fees for services rendered by CFP shall be paid directly by SAP to CFP. In case of a Chapter 11 procedure, any fees due to CFP shall be paid prior to distribution to Creditors, subject to approval of the Bankruptcy Court and the Creditors.

(vii) CFP will work closely with SAP's retained law firm Strasburger, namely Mr. Stephen Roberts with respect to a potential Chapter 11 procedure.

CFP, Thielert AG and SAP (hereinafter together referred to as "the Parties") hereby agree to the following:

**1.    Scope of Advisory Assignment**

1.1.    CFP will, as advisor, support SAP throughout the sales process as described in the Preamble (hereinafter referred to as "Advisory Assignment").

1.2.    This Advisory Assignment includes the obligation to provide the following services:

(i) organization and management of the Transaction,

(ii) identification and contact of potential buyers,

(iii) preparation of a short profile and further supporting documentation;,

(iv) support with management presentations,

(v) obtain and verify Transaction offers from potential buyers, provide support in the assessment of these offers,

(vi) support and organize due diligence activities, including the set-up and management of a data room,

(vii) assistance and support with Transaction negotiations with potential buyers.

1.3.    It is hereby noted that CFP will not render accounting, legal or tax advice. The valuation advice provided by CFP will be given on the understanding that, unless expressly agreed in writing, CFP does not accept responsibility for the accounting or other data and commercial assumptions on which such a valuation is based, the assessment and evaluation of which remain to be SAP's responsibility respectively.

1.4.    Other possible advisory services which should be performed by CFP shall be binding only after consultation with SAP and confirmation by CFP either in writing, by facsimile, or e-mail prior to the beginning of the Advisory Assignment.

**2.    Duration / Timetable / Termination**

2.1.    The duration of the Advisory Assignment depends upon the realization of the objectives defined in the Preamble.

2.2.    This Engagement Letter may be terminated at any time by the parties upon their mutual agreement or terminated by one of the parties by 30-days' notice. Any such termination must be done in writing. Any liabilities or obligations, which may have arisen under this Engagement Letter prior to termination, will not be affected by the termination.

2.3.    The right to terminate this Engagement Letter for significant reasons remains unaffected.

Corporate Finance Partners MidCap GmbH
Amtsgericht Charlottenburg von Berlin HRB 101757 B
Geschäftsführer: Felix Thorsten Markus Schauerte – Daniel Schenk
Deutsche Bank – BLZ 10070024 – Konto 1587872

Exhibit A

**3.    Compensation**

3.1.    In the event of consummating a Transaction *CFP* shall be entitled to a one-time success fee (hereinafter referred to "Success Fee"). *CFP* shall receive the Success Fee upon consummation of a Transaction.

The consummation (signing of a binding agreement and receipt of respective cash proceeds from the Transaction by SAP, or by the Bankruptcy Estate in case of a Chapter 11) of a Transaction is defined as:

   i.    the sale or disposal of SAP's assets or parts of it, and/or;

   ii.    the sale or disposal of the business operations of *SAP* or a significant portion of the business operations, contributed to a corporate joint venture with a third party, and/or;

   iii.    the merging of *SAP* with the business operations of a third party, and/or;

   iv.    any other binding agreement entered into between the company and a third party as a result of the services rendered by *CFP* according to this Advisory Assignment, including, but not limited to, the equivalent to a disposal of *SAP* or assets of *SAP* from a commercial point of view.

The Success Fee payable to *CFP* upon consummation of the Transaction will be calculated based on an escalating schedule, i.e. a higher percentage applicable to the amounts for which defined hurdle amounts are being overachieved, and be based on the following schedule:

Transaction Value

| from<br>US$ m | to<br>US$ m | Fee<br>Percentage |
|---|---|---|
| 0 | 10 | 3% |
| 10 | 12 | 5% |
| 12 | 17 | 7.5% |
| above | 17 | 10% |

For the avoidance of doubt; the respective percentage is always applicable to the amount exceeding the hurdle amount; and the Transaction Value calculates as follows:
- 3% on the first USD 10 million of Transaction Value
- 5% on the next USD 2 million, i.e. from USD 10m to 12m
- 7,5% on the next USD 5 million, i.e. from USD 12m to USD 17m
- 10% on every USD exceeding the amount of USD 17m

3.2.    The "Transaction Value" as mentioned above includes:

   (i)    The agreed purchase price for the disposed assets and as prescribed in a binding agreement, in particular any fixed assets, any intellectual property, inventory as well as other current assets, whereas accounts receivable and cash are excluded from the definition of the Transaction Value.

    (ii)  Any liabilities of SAP that might be taken over (applicable if there is no Chapter 11 procedure) by the acquirer.

    (iii)  In addition to the consideration immediately due upon consummation of the Transaction, the Transaction Value shall include installment, contingent, escrow payments (e.g. Earn-out) or similar future payments granted by the acquirer to the Company for the stakes of for any major assets that may be sold separately post Closing of a transaction and for which SAP or the Creditors will receive proceeds. In the event future payments are made to the company be it installment, contingent, escrow payments or any other delayed payments.

3.3.    If more than one agreement or Transaction is consummated the cumulative amount of such consideration of such agreements and/or Transactions shall apply to determine the Transaction Value as described in paragraph 3.2/3.3..

3.4.    *CFP* will remain entitled to the Success Fee, if, within 12 (twelve) months following the termination of this Engagement Letter, a Transaction is consummated as described in Paragraph 3.2 and 3.3. to a buyer who, during the term of the Engagement Letter, expressed interest in writing, signed confidentiality agreement, and received the information memorandum. Paragraph 3.4 and 3.5 remain in effect and shall also apply.

3.5.    All reasonable travel and other out-of-pocket expenses incurred by *CFP* in connection with the Advisory Assignment, including the costs and expenses of external advisors (such as accountants, lawyers etc.) whose engagement has been previously approved in written by the company, will be reimbursed separately from time to time, upon request.

3.6.    All fees, reimbursements of expenses and other sums payable to *CFP* are due upon receipt of.

## 4.    Information and Confidentiality

4.1.    Information

    4.1.1.    SAP will ensure to keep *CFP at any time* fully informed of all strategies, developments and discussions relevant to the Advisory Assignment and that no initiatives relevant to the Advisory Assignment will be taken without prior consultation with *CFP*. SAP will provide *CFP* with, and give access to, all information which is relevant for the purposes of the Advisory Assignment.

    4.1.2.    *CFP* will assume that all information provided by SAP, *the Company* and its advisors (hereinafter referred to as the "Information") is correct. *CFP* is not obliged to verify that the Information is true, accurate and complete or is in no way misleading. SAP agrees to indemnify and hold harmless *CFP* from any and all claims from third parties resulting from incorrect, incomplete, or misleading Information.

4.2.    Confidentiality

    4.2.1    *CFP* shall keep the Information strictly confidential and use the Information solely in respect to the Advisory Assignment. This shall not apply to any such information, which:

    (i)    is already in the public domain at the time of disclosure by SAP, TAG or any of its advisors or has entered the public domain thereafter without any failure to act by *CFP*, or

Corporate Finance Partners MidCap GmbH
Amtsgericht Charlottenburg von Berlin HRB 101757 B
Geschäftsführer: Felix Thorsten Markus Schauerte – Daniel Schenk
Deutsche Bank – BLZ 10070024 – Konto 1587872

    (ii)    is already known to *CFP* at the time of disclosure by SAP, TAG or any of its advisors and has not previously been obtained by *CFP* either directly or indirectly from the administrator/the company or any of its advisors, or

    (iii)   has been made accessible to *CFP* after disclosure by SAP, the Company or any third party having no obligation of secrecy to the administrator/the company with respect thereto.

4.2.2    *CFP* is allowed to make available the Information to other individuals within its organization to the extent necessary for the fulfillment of the Advisory Assignment. *CFP* has taken all necessary precautions, which can reasonably be expected to prevent these persons from using the Information for themselves or for others or from passing on the Information to any third parties, unless necessary in respect to the Advisory Assignment. *CFP* assumes responsibility for violation of the confidentiality provisions of this Engagement Letter or misuse of the Information by its employees.

4.2.3    Any obligation resulting from 4.2 shall remain valid even in the event of the termination of this Engagement Letter.

## 5.   Publications and Compliance

5.1.    The parties will make sure that throughout the duration of this Engagement Letter detailed public statements or other publications and documents concerning the Advisory Assignment or relating to it will neither be made nor published without prior consultation with the other party. The Parties will also ensure that any such statement, publication or other documents will be in any case complete, correct and not misleading and, where appropriate, will contain all information and expressions of opinion necessary for legal or regulatory purposes and all such opinions will be honestly held and given after due and careful consideration. All parties will comply with all applicable legal and regulatory provisions.

5.2.    Advice (including any opinion or report), whether written or oral given by *CFP* to SAP, or any communications between *CFP* and SAP in connection with the Advisory Assignment may only be used and relied upon by SAP/TAG and may not be used or relied upon by any third party and may not be disclosed to any third party without the prior written approval of *CFP*.

5.3.    Subject to prior written consent from SAP/TAG (such consent may not be unreasonably withheld), *CFP* may place advertisements in financial and other newspapers and journals at *CFP'* expense describing *CFP'* involvement in any transaction resulting from its engagement under this Engagement Letter and its services rendered.

## 6.   Indemnification / Liability

6.1.    SAP/TAG agree to indemnify and hold harmless *CFP* from any and all claims of third parties, damages, costs and expenses (hereinafter together or separately referred to as "Disadvantages") that may arise in the course of the performance of this Advisory Assignment or in connection herewith. This indemnification does not extend to Disadvantages caused willfully or gross negligently by *CFP*. *CFP* will immediately inform SAP if any claims are brought to its notice that may lead to a liability of SAP.

6.2.    When providing services under this agreement *CFP* will exercise the care of a diligent businessman. Yet, should there be violations of its duties, *CFP* will be liable to SAP only in the event if *CFP*, its elements, or its employees caused detriment as a result of willful misconduct or gross negligence.

6.3.    It is hereby noted that any evaluation of a company prepared by *CFP* is not an expert opinion as prepared by chartered accountants or tax consultants on the basis of the balance sheets or annual accounts. When assessing the value of companies

Exhibit A

*CFP* will, in particular, not carry out an evaluation of the assets and liabilities of the relevant company as is done by chartered accountants; further, *CFP* will not review the tax position of the company to be evaluated.

It is further noted that both the evaluation of a company to be carried out by *CFP* as well as the calculation of an adequate purchase price are influenced by factors of which the relative weight can be objectively verified to a limited extent only, because their assessment is based to a high degree on the subjective opinion of *CFP*. These factors include, in particular, the assessment of the market, of the competitors and of the competitive environment and the prospects of the economy as a whole.

6.4.    Any liability of *CFP* will become subject to a statute of limitations of two years after termination or expiration of this Engagement Letter.

**7.    Miscellaneous**

7.1.    This Engagement Letter shall be governed and construed in accordance with the laws of Germany. The Parties have agreed that in the event of any dispute, conflict or claim, they will: (i) attempt to resolve them by negotiations within ten (10) days of the date of such dispute, conflict or claim; (ii) in the event of any dispute, conflict or claim, which the Parties are unable to resolve by negotiations, the Parties shall refer such dispute, conflict or claim to German Arbitration Authorities, which shall appoint the arbitrator. If the claims of the party that has applied to the said authority are not recognized or not supported by the decision of this authority, the party that has applied to the authority shall cover any expenses of the other party incurred by the latter in connection with such arbitration..

7.2.    Should any of the provisions of this Assignment prove to be invalid or impracticable, all other provisions will remain unaffected. The invalid or impracticable provisions will be replaced by the provisions the parties would have agreed upon had they foreseen the invalidity or impracticability of such provisions.

We confirm our agreement with the contents of this Engagement Letter.

Place, Date  *Coppell, TX*        *12-23-08*

_____   *President*
(SAP)

Berlin, 22. December 2008

Corporate Finance Partners Midcap GmbH
Torstr. 35 * D-10119 Berlin
Tel. 030 497 9999-60
Fax 030 497 9999-67

_____                    _____
(CFP) / Daniel Schenk                       Gabriele Christian

approved by
Place, Date_____

_____
(TAG)

Corporate Finance Partners MidCap GmbH
Amtsgericht Charlottenburg von Berlin HRB 101757 B
Geschäftsführer: Felix Thorsten Markus Schauerte – Daniel Schenk
Deutsche Bank – BLZ 10070024 – Konto 1587872