Stephen Roberts
Texas Bar No. 17019200
Robert P. Franke
Texas Bar No. 07371200
Duane J. Brescia
Texas Bar No. 240252650
**STRASBURGER & PRICE, LLP**
600 Congress, Suite 1600
Austin, Texas 78701
(512) 499-3600 / (512) 499-3660 Fax

**PROPOSED ATTORNEYS FOR DEBTOR SUPERIOR AIR PARTS, INC.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 08-36705-BJH** |
| **SUPERIOR AIR PARTS, INC.** | § | |
| | § | **CHAPTER 11** |
| DEBTOR, | § | |
| | § | |

**DEBTOR'S (I) APPLICATION TO EMPLOY CORPORATE FINANCE
PARTNERS MIDCAP GMBH AS INVESTMENT CONSULTANTS
AND (II) MOTION TO ASSUME EXECUTORY CONTRACT
<u>WITH CORPORATE FINANCE PARTNERS MIDCAP GMBH</u>**

*NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, 12TH FLOOR, DALLAS, TEXAS 75242, BEFORE 5:00 O'CLOCK P.M., TWENTY (20) DAYS FROM THE DATE OF SERVICE HEREOF. ANY RESPONSE MUST BE IN WRITING AND FILED WITH THE CLERK, AND COPY MUST BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND THE TIME SET FORTH HEREIN. IF A RESPONSE IS FILED, A HEARING WILL BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY. IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.*

Superior Air Parts, Inc. ("Debtor" or "Superior Air") files this (I) Application to

Employ Corporate Finance Partners Midcap GmbH as Investment Consultants and (II)

Motion to Assume Executory Contract with Corporate Finance Partners Midcap GmbH and would show the Court as follows:

## I. Jurisdiction

1.    This Court has jurisdiction to consider this Motion pursuant to sections 157 and 1334 of Title 28 of the United States Code.  Consideration of this Motion is a core proceeding pursuant to section 157(b) of Title 28 of the United States Code.  Venue is proper before this Court pursuant to sections 1408 and 1409 of Title 28 of the United States Code.

2.    The relief sought in this Motion is based upon §§ 327 of the Bankruptcy Code.

## II. Background

3.    On December 31, 2008 (the "Commencement Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its properties and assets as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  No committee, chapter 11 trustee or examiner has been appointed in this case.

4.    Superior Air Parts, Inc. ("Superior") is a Texas corporation with its offices and operating facilities located in Coppell, Dallas County, Texas.  It was founded in 1967 in order to supply the United States Air Force and commercial customers with replacement parts for piston powered aircraft engines.  Superior is one of the largest suppliers of parts under Federal Aviation Administration's ("FAA") Parts Manufacturer Approval ("PMA") regulations for piston engines.  It provides Superior-brand parts for engines created by two primary original equipment manufacturers ("OEMs"), the

Continental division of Teledyne, Inc. and the Lycoming division of Textron, Inc.  Its customers are companies that perform maintenance and overhaul work in the general aviation industry.  Superior is also an OEM for the (i) 180-horsepower Vantage Engine and (ii) Superior or owner-built XP-360 Engine for various aircraft companies.

5.     In 2006, 100% of the ownership interests of Superior was acquired by Thielert, AG ("Thielert"), a German corporation based out of Hamburg, Germany.  Also in 2006, Thielert purchased the debt of Superior's senior secured lender and subordinated lenders secured by substantially all of the Debtor's assets.  The outstanding indebtedness to Thielert is approximately $10 million.  However, it does not appear that Thielert has filed a UCC Financing Statement with the Texas Secretary of State, perfecting its security interests in the Debtor's assets.  One of Thielert's other subsidiaries, Thielert Aircraft Engines GmbH, has been providing Superior with parts on credit under a supply contract and is owed over $15 million in unsecured debt. Upon information and belief, the Debtor' trade creditors are owed over $1.8 million.

6.     The Debtor earned $451,365 from operations in 2006, but lost $5,635,053 in 2007 and $4,238,697 through October 2008.

7.     On April 30, 2008, Thielert filed an insolvency proceeding in Hamburg, Germany and Dr. Achim Ahrendt was appointed as the preliminary Insolvency Administrator.  Thielert Aircraft Engines GmbH, which had been providing engine parts to Superior on credit, also filed an insolvency proceeding in Germany.  Dr. Ahrendt determined that it was in the best interest of Thielert and Superior to sell Superior or its assets.  In June 2008, Superior hired Corporate Finance Partners Midcap GmbH ("CFP"), a German investment company based in Berlin, Germany to serve as its

investment advisor and to seek possible suitors for Superior. CFP canvassed the market, negotiated with numerous potential purchasers, and enabled interested parties to conduct substantial due diligence. As a result of those efforts, Superior entered into an asset purchase agreement on December 30, 2008 with Avco Corporation ("Avco"), a wholly-owned subsidiary of Textron, Inc., the highest bidder to date, pursuant to which Avco has agreed to buy substantially all of Superior's assets for $11.5 million, subject to adjustments for inventory reductions after October 31, 2008.

8.     One of the conditions of the purchase agreement was that the purchase be consummated through a Chapter 11 bankruptcy proceeding. This Chapter 11 case was filed to liquidate the assets of Superior and to obtain the highest and best price for creditors, either through the purchase agreement with Avco, or a public auction.

### III.  Relief Requested

9.     The Debtor desires to employ CFP to serve as its consultant and investment advisors and to continue to assist with the proposed sale. Since a significant portion of the time and effort provided by Mr. Schenk occurred prior to the petition date, Debtor also seeks to assume the retention agreement with CFP. A copy of the Engagement Letter (Advisory Assignment) ("Assignment") dated December 23, 2008, but effective June 2008, is attached hereto as *Exhibit A*.

10.    Mr. Schenk and CFP are investment consultants, with a principal place of business located at Torstr. 35 – 10119, Berlin, Germany, telephone +49 30 497 99 99 60, facsimile +49 30 497 99 99 67. CFP is an internationally recognized consulting firm specializing in mergers & acquisitions, in particular turnaround situations, refinancing, joint ventures, sales of going concerns, and liquidation of assets of financially troubled

companies.  CFP operates several offices in Europe (Berlin, Frankfurt, and Vienna). CFP also has a strong track record of arranging sale transactions in Chapter 11 proceedings.  For example, CFP has assisted in some of the largest bankruptcy cases in Germany, such as marketing and selling Germany's largest bankruptcy in 2007, Schieder Möbel Holding (12,000 staff, EUR 800 million sales) ("SMH Group"). CFP achieved to sell substantial parts of SMH Group out of bankruptcy, generating significant proceeds to the bankruptcy estate and the Creditors. Mr. Schenk has personally worked on the SMH Group bankruptcy and other large bankruptcy cases and as such holds a professional track record that spans more than 12 years of advisory services on mergers & acquisitions with a focus on bankruptcy proceedings and distressed companies.   In addition, Mr. Schenk worked two years in New York, USA, for Compass Advisors, an M&A boutique specialized on mergers & acquisitions for troubled companies/ bankruptcies as well as for going concern sales.

11.   CFP organized and structured the entire M&A process regarding Superior, drafted supporting transaction documentation, approached potential investors and generated interest in Superior from various potential Buyers, throughout the process maintained contact with investors, organized due diligence and lead the most serious and interested Buyers throughout due diligence as well as assisted in the negotiation of Letters of Intent with potential Buyers as well as asset purchase sale agreements. The CFP team, primarily myself, has spent significant time in the US (e.g. Superior's facilities in Coppell, Texas, or at meetings with investors), implementing the M&A process. The M&A process was executed as follows:

(a)   CFP identified 76 potential investors (from Superior's industry, adjacent industries, as well as financial investors) world-wide, approached those

investors, provided initial information about Superior as well as discussed with the investors their potential interest in acquiring Superior.

(b)  11 investors showed an initial interest and entered into Confidentiality Agreements with CFP.  To those investors, a detailed information package was made available and CFP requested those investors to submit an offer.

(c)  Four offers were received and due diligence was awarded to those investors, including access to a data room, containing detailed financial, operating and legal information and discussion with Superior management.

(d)  With the two most interested and serious parties (including Textron Inc.) which both required Superior to file for Chapter 11, criteria of selection were the purchase price being offered as well as having the financial wherewithal to consummate a transaction such as Superior without financing contingency (i.e. to provide maximum closing certainty), parallel negotiations and confirmatory due diligence was pursued. CFP handled this stage of the transaction process and the confirmatory due diligence phase, for which substantial additional information had to be prepared. Consequently, with two investors interested and being handled in parallel through CFP, a competitive bidding scenario was created.

(e)  With these two entities, CFP structured and arranged to enter into a non-exclusive LOI, and supported Strasburger & Price, LLP in the negotiations of an APA, after a thorough and confirmatory due diligence.

(f)  Following completion of its very detailed due diligence, Avco Corporation then submitted a differently structured, but in sum a financially superior offer (purchase price of USD 11.5 million) to the other serious proposal, providing for more immediate cash proceeds to the bankruptcy estate.

(g)  Consequently, the APA with Avco Corporation was fully negotiated and executed.

12.  The scope of the services to be provided by CFP will include, but will not

be limited to the following:

(a)  FP will, as advisor, support Superior throughout the sales process as described in the preamble of the Assignment, and includes the obligation to provide:

(i) organization and management of the Transaction (as defined in the Assignment);

(ii) Identification and contact of potential buyers;

(iii) preparation of a short profile and further supporting documentation;

(iv) support with management presentations;

(v) obtain and verify Transaction offers from potential buyers, provide support in the assessment of these offers;

(vi) support and organize due diligence activities, including the setup and management of a date room, and

(vii) assistance and support with Transaction negotiations with potential buyers

(b)    If a bidding procedure is required, CFP will also prepare a program which will include marketing the assets through electronic communications, internet web sites, letters, fliers, signs and telephone solicitation.    Other marketing activities may include the use of newspapers, magazines and journal advertising, or such other methods as CFP may deem appropriate and/or Debtor orders otherwise;

(c)    Circulate materials to interested parties regarding the asset sale, after completing confidentiality documents with those interested parties.    The Debtor gives CFP the right to execute and modify confidentiality agreements on the Debtor's behalf;

(d)    Respond, provide information to, communicate and negotiate with and obtain offers from interested parties and make recommendations to the Debtor as to whether or not the Debtor should accept any particular offer;

(e)    As necessary and requested, assist the Debtor in formulating a plan of reorganization and advise the Debtor as to the setup and execution of any sale of the assets outside the ordinary course of business;

(f)    Communicate regularly with the Debtor and other interested parties with respect to the status of the services CFP is providing; and

(g)    If necessary, testify in Court on the status any and all offers and negotiations related thereto on behalf of Debtor.

13.    In consideration of the services rendered by CFP under the Assignment,

CFP shall receive a "Success Fee" that shall be defined as the consummation (signing

of a binding agreement and receipt of respective cash proceeds from the transaction by

Superior, or by the Bankruptcy Estate in case of a Chapter 11) of a Transaction, as more fully defined in the Assignment.   The amount of the Success Fee shall be calculated upon the following escalating schedule of Transaction Value (as defined in the Assignment):

(a) 3% on the first US $10 million of Transaction Value;
(b) 5% on the next US $2 million (i.e., from $10 million to $12 million);
(c) 7.5% on the next US $5 million (i.e., from $15 million to $17 million); and
(d) 10 % on every USD exceeding the amount of $17 million.

14.   To the best of Debtor's knowledge, CFP does not have any connection with the Debtor, any of its creditors, or any other party in interest, or their respective attorneys and accountants, with the exception that CFP was also previously retained by the Debtor's parent, Thielert AG, to perform the same services.   As the Transaction moved from a stock sale to an asset sale, it was determined and became necessary that Superior should be the contracting party. The Debtor asserts that there is no conflict because the interests of the Debtor and Thielert AG were aligned.   The goal is to obtain the highest and best price for the assets, which is also aligned with the interests of all creditors and the estate.  Also, because CFP's proposed compensation is a Success Fee based upon closing, there are no current debts owed to CFP.  CFP is not a creditor and it is otherwise a disinterested person, as that term is defined by 11 U.S.C. § 327(a) and (b).  See the Declaration of Daniel Schenk, Managing Director of Corporate Finance Partners Midcap GmbH , Filed (i) Pursuant to 11 U.S.C. § 2014 and (ii) In Support of All motions to be Heard on January 9, 2009, filed contemporaneously with this Application.

15.   As stated above, because a significant portion of the time and effort expended by Mr. Schenk and CFP occurred prior to the petition date, Debtor desires to

assume the executory contract with CFP.  Debtor asserts that there are no defaults and

this, no cure provisions are required.   The Court has the power to permit assumption of

this contract pursuant to 11 U.S.C. § 365.   Assumption or rejection of executory

contracts is based upon the sound business judgment of the Debtor.  See *Richmond

Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir. 1985); see also, generally,

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d

1095 (2d Cir. 1993).  Here, because the bulk of the work performed by CFP occurred

prior the Commencement Date and culminated in an asset purchase agreement with

Avco Corporation, the Debtor believes that the Assignment should be assumed.  It will

benefit the estate and all creditors if CFP remains the investment consultant for the

Debtor because CFP has a valuable accumulation of knowledge about the assets to be

sold, the Debtor's business, potentially interested buyers and efforts to sell made to

date.  It would be difficult, time consuming and expensive to replace this knowledge at

this juncture in the case.   There is no harm in the assumption of the Assignment

because there are no current defaults for which cure will need to be made.

WHEREFORE, the Debtor, Superior Air Parts, Inc. prays that this Court enter an

order (i) granting it the authority to employ CFP under the terms and conditions

described in the Assignment attached hereto as *Exhibit A,* (ii)  authorizing the Debtor to

assume the executory contract with CFP without the necessity of any cure provision and

(iii) granting the Debtor such other and further relief to which it may show itself to be

justly entitled.

Respectfully submitted,

Superior Air Parts, Inc.

By:    /s/ Kent Abercrombie
Kent Abercrombie, Chief Executive Officer

**Debtor and Debtor-in-Possession**


Respectfully submitted,

/s/ Stephen A. Roberts
Stephen A. Roberts (SBN 17019200)
Robert P. Franke (SBN  07371200)
Duane J. Brescia (SBN 24025265)
**STRASBURGER & PRICE, LLP**
600 Congress, Suite 1600
Austin, Texas 78701
Tel. (512) 499-3600  /  Fax (512) 499-3643
stephen.roberts@strasburger.com
bob.franke@strasburger.com
duane.brescia@strasburger.com

**Proposed Bankruptcy Attorneys for the
Debtor**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was served upon the partie(s) listed below and on the attached service list via First Class U.S. Mail, postage prepaid on January 7, 2009.

/s/ *Stephen A. Roberts*
Stephen A. Roberts

Office of the United States Trustee
1100 Commerce Street
Dallas, Texas  75242-1496

Exhibit A



## CORPORATE FINANCE PARTNERS

CFP MidCap GmbH - Torstr. 35 - 10119 Berlin

Kent Abercrombie
President/CEO
Superior Air Parts Inc.
621 S. Royal Lane, Suite 100
Coppell, TX 75019-3805
USA

**Corporate Finance Part-
ners
MidCap GmbH**
Torstr. 35
10119 Berlin
Germany
Tel:  +49 30 4979999 60
Fax: +49 30 4979999 67

Email: mcap@cfpartners.com
Web:  www.cfpmidcap.com

**Daniel Schenk**
Managing Director
Mob:  +49 172 1985 861

Effective as of June 2008

## ENGAGEMENT LETTER (Advisory Assignment)

between

**Superior Air Parts Inc.**

- hereinafter referred to as "SAP" -

and

**Corporate Finance Partners Midcap GmbH**
Berlin, Germany
hereinafter referred to as "*CFP*"

subject to the approval of

**Thielert AG
represented by Dr. Achim Ahrendt**
in his function as its
(preliminary) Insolvency Administrator

- hereinafter referred to as "TAG or the Company" -

Preamble:

(i)     Superior Air Parts Inc. (SAP) is a 100% subsidiary of TAG. TAG has filed for insolvency and is represented by the insolvency administrator Dr. Achim Ahrendt. Superior Air Parts Inc. is not under insolvency protection.

(ii)    CFP has worked since ~~June 2007~~ on a potential sale of SAP on behalf of SAP owner as well as SAP major creditors.

(iii)   Investors, through Corporate Finance Partners (CFP) have approached SAP as well as TAG in order to acquire SAP or major assets of SAP, most preferably via a Chapter 11 procedure, a so called pre-packaged bankruptcy.

Corporate Finance Partners MidCap GmbH
Amtsgericht Charlottenburg von Berlin HRB 101757 B
Geschäftsführer: Felix Thorsten Markus Schauerte – Daniel Schenk
Deutsche Bank – BLZ 10070024 – Konto 1587872

Exhibit A

    (iv)    CFP is therefore engaged by SAP to assist in the sale of assets by SAP, potentially via Chapter 11 and maximize value to Superior's creditors (the "Transaction")

    (v)    TAG and its subsidiary Thielert Aircraft Engines GmbH are by far the major creditors of SAP with a combined claim of approx. USD 26 million outstanding.

    (vi)    Any fees for services rendered by CFP shall be paid directly by SAP to CFP. In case of a Chapter 11 procedure, any fees due to CFP shall be paid prior to distribution to Creditors, subject to approval of the Bankruptcy Court and the Creditors.

    (vii)    CFP will work closely with SAP's retained law firm Strasburger, namely Mr. Stephen Roberts with respect to a potential Chapter 11 procedure.

CFP, Thielert AG and SAP (hereinafter together referred to as "the Parties") hereby agree to the following:

## 1.    Scope of Advisory Assignment

1.1.    CFP will, as advisor, support SAP throughout the sales process as described in the Preamble (hereinafter referred to as "Advisory Assignment").

1.2.    This Advisory Assignment includes the obligation to provide the following services:

    (i)    organization and management of the Transaction,

    (ii)    identification and contact of potential buyers,

    (iii)    preparation of a short profile and further supporting documentation;,

    (iv)    support with management presentations,

    (v)    obtain and verify Transaction offers from potential buyers, provide support in the assessment of these offers,

    (vi)    support and organize due diligence activities, including the set-up and management of a data room,

    (vii)    assistance and support with Transaction negotiations with potential buyers.

1.3.    It is hereby noted that CFP will not render accounting, legal or tax advice. The valuation advice provided by CFP will be given on the understanding that, unless expressly agreed in writing, CFP does not accept responsibility for the accounting or other data and commercial assumptions on which such a valuation is based, the assessment and evaluation of which remain to be SAP's responsibility respectively.

1.4.    Other possible advisory services which should be performed by CFP shall be binding only after consultation with SAP and confirmation by CFP either in writing, by facsimile, or e-mail prior to the beginning of the Advisory Assignment.

## 2.    Duration / Timetable / Termination

2.1.    The duration of the Advisory Assignment depends upon the realization of the objectives defined in the Preamble.

2.2.    This Engagement Letter may be terminated at any time by the parties upon their mutual agreement or terminated by one of the parties by 30-days' notice. Any such termination must be done in writing. Any liabilities or obligations, which may have arisen under this Engagement Letter prior to termination, will not be affected by the termination.

2.3.    The right to terminate this Engagement Letter for significant reasons remains unaffected.

### 3.    Compensation

3.1.    In the event of consummating a Transaction *CFP* shall be entitled to a one-time success fee (hereinafter referred to "Success Fee"). *CFP* shall receive the Success Fee upon consummation of a Transaction.

The consummation (signing of a binding agreement and receipt of respective cash proceeds from the Transaction by SAP, or by the Bankruptcy Estate in case of a Chapter 11) of a Transaction is defined as:

   i.    the sale or disposal of SAP's assets or parts of it, and/or;

   ii.   the sale or disposal of the business operations of *SAP* or a significant portion of the business operations, contributed to a corporate joint venture with a third party, and/or;

   iii.  the merging of *SAP* with the business operations of a third party, and/or;

   iv.   any other binding agreement entered into between the company and a third party as a result of the services rendered by *CFP* according to this Advisory Assignment, including, but not limited to, the equivalent to a disposal of *SAP* or assets of *SAP* from a commercial point of view.

The Success Fee payable to *CFP* upon consummation of the Transaction will be calculated based on an escalating schedule, i.e. a higher percentage applicable to the amounts for which defined hurdle amounts are being overachieved, and be based on the following schedule:

Transaction Value

| from<br>US$ m | to<br>US$ m | Fee<br>Percentage |
|---|---|---|
| 0 | 10 | 3% |
| 10 | 12 | 5% |
| 12 | 17 | 7.5% |
| above | 17 | 10% |

For the avoidance of doubt; the respective percentage is always applicable to the amount exceeding the hurdle amount; and the Transaction Value calculates as follows:
•    3% on the first USD 10 million of Transaction Value
•    5% on the next USD 2 million, i.e. from USD 10m to 12m
•    7,5% on the next USD 5 million, i.e. from USD 12m to USD 17m
•    10% on every USD exceeding the amount of USD 17m

3.2.    The "Transaction Value" as mentioned above includes:

   (i)   The agreed purchase price for the disposed assets and as prescribed in a binding agreement, in particular any fixed assets, any intellectual property, inventory as well as other current assets, whereas accounts receivable and cash are excluded from the definition of the Transaction Value.

Corporate Finance Partners MidCap GmbH
Amtsgericht Charlottenburg von Berlin HRB 101757 B
Geschäftsführer: Felix Thorsten Markus Schauerte – Daniel Schenk
Deutsche Bank – BLZ 10070024 – Konto 1587872

Exhibit A

    (ii)  Any liabilities of SAP that might be taken over (applicable if there is no Chapter 11 procedure) by the acquirer.

    (iii)  In addition to the consideration immediately due upon consummation of the Transaction, the Transaction Value shall include installment, contingent, escrow payments (e.g. Earn-out) or similar future payments granted by the acquirer to the Company for the stakes of for any major assets that may be sold separately post Closing of a transaction and for which SAP or the Creditors will receive proceeds. In the event future payments are made to the company be it installment, contingent, escrow payments or any other delayed payments.

3.3.    If more than one agreement or Transaction is consummated the cumulative amount of such consideration of such agreements and/or Transactions shall apply to determine the Transaction Value as described in paragraph 3.2/3.3..

3.4.    *CFP* will remain entitled to the Success Fee, if, within 12 (twelve) months following the termination of this Engagement Letter, a Transaction is consummated as described in Paragraph 3.2 and 3.3. to a buyer who, during the term of the Engagement Letter, expressed interest in writing, signed confidentiality agreement, and received the information memorandum. Paragraph 3.4 and 3.5 remain in effect and shall also apply.

3.5.    All reasonable travel and other out-of-pocket expenses incurred by *CFP* in connection with the Advisory Assignment, including the costs and expenses of external advisors (such as accountants, lawyers etc.) whose engagement has been previously approved in written by the company, will be reimbursed separately from time to time, upon request.

3.6.    All fees, reimbursements of expenses and other sums payable to *CFP* are due upon receipt of.

## 4.    Information and Confidentiality

4.1.    Information

    4.1.1.  SAP will ensure to keep *CFP at any time* fully informed of all strategies, developments and discussions relevant to the Advisory Assignment and that no initiatives relevant to the Advisory Assignment will be taken without prior consultation with *CFP*. SAP will provide *CFP* with, and give access to, all information which is relevant for the purposes of the Advisory Assignment.

    4.1.2.  *CFP* will assume that all information provided by SAP, *the Company* and its advisors (hereinafter referred to as the "Information") is correct. *CFP* is not obliged to verify that the Information is true, accurate and complete or is in no way misleading. SAP agrees to indemnify and hold harmless *CFP* from any and all claims from third parties resulting from incorrect, incomplete, or misleading Information.

4.2.    Confidentiality

    4.2.1  *CFP* shall keep the Information strictly confidential and use the Information solely in respect to the Advisory Assignment. This shall not apply to any such information, which:

    (i)  is already in the public domain at the time of disclosure by SAP, TAG or any of its advisors or has entered the public domain thereafter without any failure to act by *CFP*, or

Corporate Finance Partners MidCap GmbH
Amtsgericht Charlottenburg von Berlin HRB 101757 B
Geschäftsführer: Felix Thorsten Markus Schauerte – Daniel Schenk
Deutsche Bank – BLZ 10070024 – Konto 1587872

Exhibit A

(ii)    is already known to *CFP* at the time of disclosure by SAP, TAG or any of its advisors and has not previously been obtained by *CFP* either directly or indirectly from the administrator/the company or any of its advisors, or

(iii)   has been made accessible to *CFP* after disclosure by SAP, the Company or any third party having no obligation of secrecy to the administrator/the company with respect thereto.

4.2.2    *CFP* is allowed to make available the Information to other individuals within its organization to the extent necessary for the fulfillment of the Advisory Assignment. *CFP* has taken all necessary precautions, which can reasonably be expected to prevent these persons from using the Information for themselves or for others or from passing on the Information to any third parties, unless necessary in respect to the Advisory Assignment. *CFP* assumes responsibility for violation of the confidentiality provisions of this Engagement Letter or misuse of the Information by its employees.

4.2.3    Any obligation resulting from 4.2 shall remain valid even in the event of the termination of this Engagement Letter.

## 5.  Publications and Compliance

5.1.    The parties will make sure that throughout the duration of this Engagement Letter detailed public statements or other publications and documents concerning the Advisory Assignment or relating to it will neither be made nor published without prior consultation with the other party. The Parties will also ensure that any such statement, publication or other documents will be in any case complete, correct and not misleading and, where appropriate, will contain all information and expressions of opinion necessary for legal or regulatory purposes and all such opinions will be honestly held and given after due and careful consideration. All parties will comply with all applicable legal and regulatory provisions.

5.2.    Advice (including any opinion or report), whether written or oral given by *CFP* to SAP, or any communications between *CFP* and SAP in connection with the Advisory Assignment may only be used and relied upon by SAP/TAG and may not be used or relied upon by any third party and may not be disclosed to any third party without the prior written approval of *CFP*.

5.3.    Subject to prior written consent from SAP/TAG (such consent may not be unreasonably withheld), *CFP* may place advertisements in financial and other newspapers and journals at *CFP'* expense describing *CFP'* involvement in any transaction resulting from its engagement under this Engagement Letter and its services rendered.

## 6.  Indemnification / Liability

6.1.    SAP/TAG agree to indemnify and hold harmless *CFP* from any and all claims of third parties, damages, costs and expenses (hereinafter together or separately referred to as "Disadvantages") that may arise in the course of the performance of this Advisory Assignment or in connection herewith. This indemnification does not extend to Disadvantages caused willfully or gross negligently by *CFP*. *CFP* will immediately inform SAP if any claims are brought to its notice that may lead to a liability of SAP.

6.2.    When providing services under this agreement *CFP* will exercise the care of a diligent businessman. Yet, should there be violations of its duties, *CFP* will be liable to SAP only in the event if *CFP*, its elements, or its employees caused detriment as a result of willful misconduct or gross negligence.

6.3.    It is hereby noted that any evaluation of a company prepared by *CFP* is not an expert opinion as prepared by chartered accountants or tax consultants on the basis of the balance sheets or annual accounts. When assessing the value of companies

Corporate Finance Partners MidCap GmbH
Amtsgericht Charlottenburg von Berlin HRB 101757 B
Geschäftsführer: Felix Thorsten Markus Schauerte – Daniel Schenk
Deutsche Bank – BLZ 10070024 – Konto 1587872

Exhibit A

CFP will, in particular, not carry out an evaluation of the assets and liabilities of the relevant company as is done by chartered accountants; further, CFP will not review the tax position of the company to be evaluated.

It is further noted that both the evaluation of a company to be carried out by CFP as well as the calculation of an adequate purchase price are influenced by factors of which the relative weight can be objectively verified to a limited extent only, because their assessment is based to a high degree on the subjective opinion of CFP. These factors include, in particular, the assessment of the market, of the competitors and of the competitive environment and the prospects of the economy as a whole.

6.4.    Any liability of CFP will become subject to a statute of limitations of two years after termination or expiration of this Engagement Letter.

**7.    Miscellaneous**

7.1.    This Engagement Letter shall be governed and construed in accordance with the laws of Germany. The Parties have agreed that in the event of any dispute, conflict or claim, they will: (i) attempt to resolve them by negotiations within ten (10) days of the date of such dispute, conflict or claim; (ii) in the event of any dispute, conflict or claim, which the Parties are unable to resolve by negotiations, the Parties shall refer such dispute, conflict or claim to German Arbitration Authorities, which shall appoint the arbitrator. If the claims of the party that has applied to the said authority are not recognized or not supported by the decision of this authority, the party that has applied to the authority shall cover any expenses of the other party incurred by the latter in connection with such arbitration..

7.2.    Should any of the provisions of this Assignment prove to be invalid or impracticable, all other provisions will remain unaffected. The invalid or impracticable provisions will be replaced by the provisions the parties would have agreed upon had they foreseen the invalidity or impracticability of such provisions.

We confirm our agreement with the contents of this Engagement Letter.

Place, Date_____ Coppell, TX _____ 12-23-08 _____

_____ President _____
(SAP)

Berlin, 22. December 2008

Corporate Finance Partners Midcap GmbH
Torstr. 35 * D-10119 Berlin
Tel: 030 497 9999-60
Fax: 030 497 9999-67

_____              _____
(CFP) / Daniel Schenk                  Gabriele Christian

approved by
Place, Date_____

_____
(TAG)

Corporate Finance Partners MidCap GmbH
Amtsgericht Charlottenburg von Berlin HRB 101757 B
Geschäftsführer: Felix Thorsten Markus Schauerte – Daniel Schenk
Deutsche Bank – BLZ 10070024 – Konto 1587872

Theilert Aircraft Engines
Nieritzstr 14 D-01097
Dresden Germany
Fax: 011-49-89-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

Airsure Limited
15301 Spectrum Drive, #500
Addison, TX  75001
Fax: 214-705-6262

Crane Cams
530 Fentress Blvd
Daytona Beach, FL  32114
Fax: 386-947-5109

Champion Aerospace, Inc.
1230 Old Norris Road
Liberty, SC 29654-0686
Fax: 864-843-5479

Automatic Screw Machine
709 2nd Avenue SE
Decatur, AL 35601
Fax: 256-353-2197

Chester Salomon
Stevens & Lee
485 Madison Ave., 20th Floor
New York, NY 10022
Fax: 212-319-8505

Genesee Stamping & Fabricating
1470 Avenue T
Grand Prairie, TX  75050-1222
Fax: 972-623-0404

Betsy Price, Tax Assessor Collector
100 E. Weatherford
PO Box 961018
Fort Worth, TX 76196
Fax: 817-884-2793

Lynden International
1800 International Blvd. #800
Seattle, WA 98188
Fax: 206-777-7330

Mahle Engine Components
60428 Marine Road
Atlantic IA 50022-8291
Fax: 712-243-1553

ECK Industries, Inc.
1602 North 8th Street
Manitowoc, WI 54221-0967
Fax: 251-625-2241

Corley Gasket Co.
6555 Hunnicut Road
Dallas TX  75227
Fax: 214-388-0619

Ohio Gasket & Shim
976 Evans Ave.
Akron, OH 44305
Fax: 330-630-2075

Helio Precision Products
601 North Skokie Highway
Lake Bluff, IL  60044
Fax: 847-473-1306

AOPA Pilot
PO Box 973
Frederick, MD  21701
Thomas.haines@aopa.org
Steve@ellsaviation.com

City of Coppell/Coppell ISD
Mary McGuffey, Tax Assessor
PO Box 9478
Coppell, TX 75019
Fax: 972-304-3571

David Childs, Ph.D.
Dallas County Tax Assessor/Collector
500 Elm Street, Records Building
Dallas, TX 75202
214-653-7887

Hartford Aircraft Products
94 Old Poquonock Road
Bloomfield, CT 06002
Fax: 860-242-3159

Combustion Technologies, Inc.
1804 Slatesville Road
Chatham, VA 24531
mpercario@combustech.com

KS-Pistoes
Rodovia Arnald, Julio Mauberg
4000 Disrito Industrial No
Nova Odessa SP Brasil CAIZA Postal
91 CEP 13460-000
Fax: 011-55-19-3466-9814

Mahle Engine Components
14161 Manchester Road
Manchester, MO 63011
Fax: 636-394-3736

Saturn Fasteners Inc.
425 S. Varney St.
Burbank, CA  91502
Fax: 818-846-0003

Gerhardt Gear
133 East Santa Anita
Burbank CA  91502-1926
Fax: 818-842-1458

Knappe & Koester Inc.
18 Bradco Street
Keen, NH 3431
Fax: 603-355-2266

Mahle Engine Components
17226 Industrial HWY
Caldwell, OH  43724-9779
Fax: 740-732-2520

Internal Revenue Service
Special Procedures - Insolvency
P.O. Box 21126
Philadelphia, PA 19114
Fax: 214-413-5028

Thielert AG
Albert-Einstein-Ring 11
D-22761, Hamburg Germany
Fax: 011-49-40-899-5610

Ace Grinding & Machine Company
2020 Winner Street
Walled Lake, MI 48390
Fax: 248-624-0512

Ruhrtaler Gesenkschmiede
F.W. Wengler GMBH & Co. KG,
Feld
Witten, Germany 58456
Fax: 011-49-230-27-08-28