# EXHIBIT B



*Driven by performance*

Tooling is the ownership of the supplier. Please note the clause that is on the back of Mahle Engine Components's acknowledgement.

**TOOL AND DIE CHARGES** Seller shall retain title to and the right to possession of all special tools, dies and molds used in the fabrication of articles to Buyer's blueprints and specifications, even though Buyer may be separately billed for all such tools, dies and molds, except when such tool's are for molds, patterns etc. for casting products. The tools, dies and molds paid for by the Buyer under separate invoice shall be used for the manufacture of goods to Buyer's orders. If no orders are received from Buyer requiring the use of such tooling for a period of seven (7) years, Seller may consider the same obsolete and destroy such tooling after notification to the Buyer in writing giving the buyer 3 months to respond. In the event special tools, dies or equipment are disposed of, any future orders are subject to an additional retooling charge.

Seller shall be under no liability for loss of tooling resulting from fire, theft or other causes beyond its control, whether or not this results from the negligence of any employee or subcontractor of Seller.

## TERMS AND CONDITIONS

1. BUYER'S ACCEPTANCE Buyer's acceptance of this offer is expressly limited to the terms of the offer and the Seller hereby gives notice of objection to the inclusion in this contract of any additional or different terms. The Buyer shall be conclusively presumed to have accepted the terms of this offer, thereby creating a contract limited to the terms of this offer, if he does not object in writing to these terms within five (5) business days after their receipt, or when he accepts delivery of the goods described on the face hereof, whichever shall occur first. The Seller's terms herein are an offer and shall not be deemed to operate as an acceptance but should Seller's terms be construed by law as an acceptance, such acceptance is expressly conditional on the Buyer's assent to the Seller's additional or different terms.

2. PRICES Prices are FOB point of manufacture, unless otherwise specified on the face hereof or on the Seller's invoice, and are subject to change without notice. Goods manufactured against this contract shall be priced separately and will conform to Seller's prices in effect at the date of shipment.

3. SPECIAL PRODUCTION QUANTITIES Orders for special production parts allow the Seller to complete them within ten percent (10%) overrun or underrun on the total amount of each part ordered unless otherwise mutually agreed in writing.

4. TOOL AND DIE CHARGES Seller shall retain title to and the right to possession of all special tools, dies and molds used in the fabrication of articles to Buyer's blueprints and specifications, even though Buyer may be separately billed for all such tools, dies and molds, except when such tools are for molds, patterns etc. for casting products. The tools, dies and molds paid for by the Buyer under separate invoice shall be used for the manufacture of goods to Buyer's orders. If no orders are received from Buyer requiring the use of such tooling for a period of seven (7) years, Seller may consider the same obsolete and destroy such tooling after notification to the Buyer in writing giving the buyer 3 months to respond. In the event special tools, dies or equipment are disposed of, any future orders are subject to an additional retooling charge. Seller shall be under no liability for loss of tooling resulting from fire, theft or other causes beyond its control, whether or not this results from the negligence of any employee or subcontractor of Seller.

5. TAXES All taxes, excises or levies, by any government authority (except taxes on income to Seller) which are payable or collectible as a result of the manufacture, sale, delivery, installation or maintenance of the goods shall be paid by the Buyer.

6. PAYMENT Terms of payment are specified on the face hereof. The Seller reserves the right to alter, suspend, or change in any way the credit terms provided herein if the Seller, in its sole discretion deems such change necessary or advisable to protect his interests. In such a case, in addition to any other remedies provided in this contract or by law, the Seller may require payment, may accelerate the due date of payment under this contract or may require satisfactory security from the Buyer before beginning manufacture or before shipment or delivery of goods. Should the Buyer default in the timely payments to Seller of sums coming due on this order, the Seller is entitled, in addition to any other remedies provided in this contract or by law, to interest for each day of such default at the maximum applicable rate allowed by law. Additionally, upon such default the Seller may declare immediately due and payable all sums to come due under this order and all other orders between Buyer and Seller and Seller may suspend manufacture, shipment, and delivery on all orders from Buyer until the Buyer's account is settled in full. Acceptance by the Seller of less than the full payment due at any time shall not be a waiver of its right to payment in full or any other rights.

7. CREDIT AGREEMENT Accounts are opened only with firms or individuals on approved credit. The Seller reserves the privilege of declining to make shipments except for cash in advance or cash on delivery whenever, for any reason, doubt as to the Buyer's financial responsibility develops and the Seller should not in such events be liable for non-performance of this contract in whole or in part.

8. CANCELLATION Orders placed pursuant to this quotation can be cancelled only with Seller's written consent. In the event of such consent, Buyer shall pay to Seller promptly upon receipt of invoice from Seller.
    (a) The full contract price for all products, which shall have been completed prior to Seller's receipt of notice of cancellation.
    (b) All costs actually incurred by Seller in connection with the uncompleted portion of the order plus normal profit on the total contract price for the uncompleted portion of the order.
    (c) Cancellation charges incurred by Seller on account of its purchasing commitments made under the order.
    (d) Any other consequential or incidental damages incurred by Seller as a result of Buyer's cancellation.

9. SHIPMENT/DELIVERY DATES All shipment or delivery dates or schedules are estimates only and are not binding upon the Seller, nor may the Buyer rely on such dates or schedules unless the Seller has specifically agreed to such shipment or delivery date or schedule in writing by a separate agreement exclusively for that purpose. RETURNABLE DUNNAGE Buyer warrants that all returnable packaging and dunnage supplied to Seller by Buyer is returned in a condition clean and acceptable for repackage and returning of products back to Buyer.

10. RISK OR LOSS Risk or loss, including but not limited to loss of goods from shortage, damages, or transit delays, shall pass to the Buyer when the goods have been delivered to any transportation carrier (excluding only proprietary transportation facilities of the Seller) notwithstanding any contrary intent which might otherwise be presumed from the use of such commercial terms as, for example, F.O.B. destination.

11. WARRANTY The only warranties given by Seller are those written warranties which refer to and are attached to the goods sold under this contract. Seller's obligation under these warranties is limited to the repair or replacement at its factory of any of the goods which are defective in material or workmanship which are returned to Seller within six (6) months from the date of shipment or within the specified time limit in the warranty, whichever is earlier, with transportation charges prepaid, and is conditioned upon Buyer furnishing satisfactory evidence that the goods alleged to be defective have been properly installed and maintained and operated under normal conditions for which the goods are offered and sold with competent supervision. This warranty shall not apply to goods which have been subjected to misuse, abuse, neglect or improper storage, handling or maintenance, or which have been damaged by operation under abnormal conditions. SELLER MAKES NO OTHER WARRANTY. ALL OTHER WARRANTIES, WHETHER EXPRESS, IMPLIED OR STATUTORY, SUCH AS WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY EXCLUDED AND DISCLAIMED TO THE EXTENT THAT THEY EXCEED THE WARRANTIES EXPRESSLY GRANTED IN THIS CLAUSE. IN NO EVENT SHALL SELLER BE LIABLE FOR CONSEQUENTIAL OR INCIDENTAL DAMAGE.

12. LIMITATION OF REMEDIES/LIABILITIES Seller's liability for defective materials or workmanship is limited to replacement, repair or correction of defective articles. This is expressly agreed to be the Buyer's sole and exclusive remedy whether in contract, tort or otherwise and is subject to the following conditions. Without limiting the generality of the foregoing it is expressly understood that no allowance will be made for repair work or other work performed on any articles at Buyer's plant or on Buyer's order and that Seller shall not be liable to Buyer or to any other person, firm or corporation whatever, for loss, damages, or expenses directly or indirectly arising from the use of any article purchased from Seller or from the incorporation of such article into any machinery, equipment or article used, manufactured or sold by Buyer. Seller shall have no liability to replace, repair or correct any article rejected because of any defect unless the same shall be returned to Seller within thirty (30) days from the date of Buyer's receipt thereof except where the defect is not immediately ascertainable upon inspection, in which latter event the aforesaid liability of Seller shall exist only if the article is returned to Seller within the warranty period under this contract, or, if none specified, within ninety (90) days after receipt. Every claim of Buyer with respect to defects shall be deemed waived in the absence of return to Seller within the periods aforesaid of any article claimed to be defective. If upon return of any articles to Seller, Seller's inspection discloses a defect, Seller, at its election, will allow Buyer a credit or will repair, correct or replace the defective article, but not otherwise. Any article of Seller's manufacture, which has been accepted by Buyer by placing in actual service, is not subject to return for other than salvage credit.

13. PATENT INFRINGEMENTS On goods which the Seller supplies made under its own patents the Seller will hold the Buyer harmless from any patent infringement suit or suits provided that Seller is notified in writing within ninety (90) days after such notice and is tendered the defense of any suit instituted against Buyer therefor, but on devices submitted by the Buyer the Seller is hereby held harmless by the Buyer.

14. CLAIMS/RETURNS Claims for damages, errors or shortages must be made in writing to the Seller within ten (10) business days after delivery of the goods. Failure by the Buyer to make a claim will constitute an irrevocable acceptance of the goods and an admission compliance with the terms, conditions and specifications of this contract. The Seller, upon receipt of Buyer's claim, will have the option of reinspection of the goods at either the Buyer's place of business or at it's own place of business before allowing or rejecting the claim. Transportation expenses incurred to permit reinspection of goods will be borne by the Buyer. The Seller, if it accepts the Buyer's claim, will reimburse the Buyer for transportation expenses incurred in any reinspection and/or redelivery and will at its option either (i) repay or credit to the Buyer the price of such goods, (ii) replace the goods in the form originally shipped or (iii) repair the goods. The Seller will have the time it deems necessary for the replacement or repair of any goods, including the time for manufacture or replacement of goods, if necessary. No claim will be allowed for goods damaged by Buyer or in transit, nor will the Seller be responsible for any work done by the Buyer or by third parties to correct errors or defects in the goods unless such work was authorized in writing by the Seller.

15. EXCUSE OR PERFORMANCE Seller shall not be liable for any delays or defaults in performance occasioned by events beyond the Seller's reasonable control, including, but not limited to, fires, floods, accidents, wars, civil commotion, governmental regulation, breakdown of machinery, shortage of, or the inability for any reason to obtain, materials, fuel, labor or transportation, strikes or other labor difficulties, whether or not involving the employees of the Seller and regardless of responsibility or fault on the part of the employer, and any contingencies of manufacture of shipment, in the event of delay in Seller's performance due in whole or in part to any event beyond Seller's reasonable control. Seller shall have such additional time for performances as he may deem reasonable necessary under the circumstances. Acceptance by the Buyer of any goods shall constitute a waiver by the Buyer of any claim for damage due to delay in delivery of such goods.

16. INTERPRETATION PAROL EVIDENCE This writing is intended by the Seller and the Buyer as the final expression and the complete and exclusive statement of the terms of this contract. No course of prior dealings between the parties and no usage of the trade shall be relevant to supplement or explain any term used in this contract. Acceptance or acquiescence in a course of performance rendered under this contract shall not be relevant to determine the meaning of this contract, even though the accepting or acquiescing party had knowledge of the nature of the performance and opportunity for objection.

17. AUTHORITY OF SELLER'S AGENTS No agent, employee or representative of the Seller has the authority to bind the Seller to any affirmation, representation, or warranty concerning the goods sold under this contract, and unless an affirmation, representation or warranty made by an agent, employee or representative is specifically included within this bargaining it shall not in any way be enforceable by the Buyer.

18. ASSIGNMENT/DELEGATION No right or interest under this contract may be assigned by the Buyer, nor may any obligation or performance under this contract be delegated by the Buyer without the Seller's written permission. Any attempted assignment or delegation shall be void and ineffective for all purposes unless made in conformity with this paragraph.

19. SEPARABILITY/VALIDITY In the event any provision of this contract is held to be invalid by a court of law, the remaining provisions shall nevertheless continue in full force and effect. Nothing contained herein shall limit any additional rights or remedies, which Seller may have under any applicable laws, including without limitation, the Uniform Commercial Code of Ohio.

20. WAIVER Waiver by the Seller of a breach of any provision of this contract shall not be deemed a waiver of future compliance and all provisions of this contract remain in full force and effect.

21. ERRORS Stenographic and clerical errors by the Seller shall bind the Seller only as they are correctly stated.

22. PRECEDENCE Conflicting provisions under this contract, if any, shall prevail in the following descending order of precedence. (i) Seller's handwritten provisions on this order, (ii) Seller's typed provisions to this order, (iii) Seller's attachments to this order, and (iv) the printed portion of this order including these provisions.

23. STATE LAW AND COMPLIANCE WITH LAW This contract shall be construed, interpreted and applied in accordance with the laws of the State of Ohio. Further, Seller agrees that, in the performance of all work hereunder, it will comply with all applicable laws, rules, regulations, ordinances and orders of the United States Government and of all applicable State or political subdivisions thereof, except provisions which would provide access to records containing cost and/or pricing information or technical data not specifically called out as a deliverable item.

24. MODIFICATIONS This contract can be modified or rescinded only by writing signed by both of the parties or their duly authorized agents.

25. MANUFACTURING METHODS Seller manufacturing methods and materials are within the government and safety constraints on restricted, toxic, and hazardous substances.

p1a REVISED 21807