Billy G. Leonard, Jr.
Texas Bar No. 12208100
Attorney at Law
1650 W. Virginia Street, Suite 211
McKinney, Texas 75069-7703
Telephone  (469) 742-0855
Fax  (469) 442-0135
**Attorney for Aviation Parts Supply, Inc**.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SUPERIOR AIR PARTS, INC. | § | CASE NO. 08-36705-BJH-11 |
| | § | |
| DEBTOR | § | |

**AVIATION PARTS SUPPLY, INC.'S OBJECTION TO DEBTOR'S MOTION TO SELL SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS**

Aviation Parts Supply, Inc. ("APS"), a creditor and/or party in interest, by and through undersigned counsel, files this its Objection to Debtor's Motion to Sell Substantially all of Debtor's Assets Free and Clear of Liens ("Motion to Sell") and would show the Court as follows:

**PROCEDURAL BACKGROUND**

1.     On or about December 31, 2008, Superior Air Parts, Inc. ("Superior" or "Debtor") commenced this bankruptcy proceeding.

2.     On January 2, 2009, Debtor filed its Motion to Sell seeking approval to sell all or substantially all of its assets pursuant to the terms of a certain Asset Purchase Agreement ("Asset Purchase Agreement") entered into on December 30, 2008, a day prior to the commencement of this bankruptcy proceeding, between the Debtor and Avco Corporation ("Avco"), a wholly owned subsidiary of Textron, Inc.

3. A hearing on the Motion to Sell is set for February 24, 2009. The deadline for filing responses and/or objections to the Motion to Sell is February 17, 2009.

## FACTUAL BACKGROUND

4. Lycoming Engines ("Lycoming") is a division of Avco. Lycoming is the original equipment manufacturer ("OEM") of various aircraft piston engines and also sells individual parts for use in overhauling and repairing those engines under an FAA regulated Type Certificate ("TC").

5. Pursuant to Federal Aviation Administration ("FAA") regulations governing the manufacture of engine parts which are not made by the OEM for its own engines, any mechanic in the United States working on a Lycoming engine must use "replacement parts" approved by the FAA for the overhaul or repair of the engines.

6. Superior is one of only two companies that makes replacement parts for Lycoming aircraft piston engines. Accordingly, Avco and Superior are direct competitors for the worldwide demand for parts used in the overhaul and repair of Lycoming engines.

7. In order to make replacement parts for any Lycoming engine, Superior had to first apply for and obtain a part specific authority from the FAA referred to as a Parts Manufacturing Approval (a "PMA"). The PMA process is quite stringent and expensive, and it took Superior four decades to develop and obtain its Lycoming PMAs. Superior presently has 616 active PMAs for Lycoming engines on the high demand replacement parts.

8. Superior was family owned from 1967 until 1986. Since then, it has been owned by several private equity groups. Until the late 1990s, its business was the design and sale of the individual parts used to overhaul and repair piston engines. This is often referred to as the "piece part" or "core business."

9. Superior does not manufacture parts it designs. All of the manufacturing is done by FAA approved suppliers. All parts are then shipped to Superior where they are inspected in accordance with the FAA approved Fabrication Inspection System (the "FIS").

10. In the late 1990s, Superior had obtained enough PMAs on a Lycoming 360 cubic inch series engine that it could assemble an entire engine. Superior began to do so and marketed hundreds of the engines to the experimental aircraft market known as the "XP360 Engine."

11. In about 2002, Superior started the process of applying for a Type Certificate for the 360 engine for the certified market in order to compete directly with Lycoming for the sale of this size engine to the prime aircraft manufacturers like Cessna, Raytheon, Diamond and Piper. The result was the introduction of the type certificated piston engine known as the Vantage Engine in the spring of 2004 and the award of an FAA production certificate approximately a year later.

12. In March, 2006, Superior was purchased by a German holding company, Thielert AG ("TAG"), named after its largest shareholder, Frank Thielert. TAG purchased Superior by assuming Superior's existing $8.0 million bank revolver and paying off the subordinate debt of a private equity group in the amount of $2.0 million, for a total purchase price of $10 million.

**AVIATION PARTS SUPPLY, INC.'S OBJECTION TO DEBTOR'S MOTION TO SELL SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS  Page- 3**

13. At the time of its purchase of Superior, TAG owned another aviation company called Thielert Aircraft Engines ("TAE") which manufactured a line of diesel engines for aircraft and drones for sale in Europe and Asia. TAE also manufactured cylinders for Superior.

14. TAG acquired Superior for the purpose of being able to penetrate the United States market with the diesel engine, to be able to offer both diesel and piston engines to the airframe manufacturers, and for TAE to be able to manufacture engine parts for Superior's new line of engines. Stated succinctly, Thielert wanted to turn the TAE/Superior combination into an engine company and move away from the piece part business which had been so successful.

15. After the April, 2006, purchase, Frank Thielert intended to infuse up to $6-7 million in capital into Superior in order to develop a broader range of piston engines to be dubbed the Vantage 320 and Vantage 400.

16. In order to provide Superior operating capital, Frank Thielert, who was the chairman of the boards of both TAE and Superior, instructed TAE to continue to ship manufactured product to Superior without requiring payment for such product. This permitted Thielert to, in effect, infuse capital into Superior without the necessity of depleting cash or obtaining financing for capital purposes. This arrangement continued until late April of 2008 when TAE filed insolvency proceedings in Germany after failed attempts to recapitalize TAE.

17. TAG, Superior's owner, filed for insolvency in Germany within days after TAE's insolvency proceeding, and the German insolvency court appointed Dr. Ahrendt, a Hamburg lawyer, as the insolvency administrator for TAG.

18. Dr. Ahrendt decided to sell TAG's only remaining asset, Superior Air Parts, and engaged the services of Daniel Schenk of Corporate Finance Partners in Bremen, Germany to manage the sale. Neither had experience running a PMA business like Superior.

19. Upon information and belief, from May 2008, Dr. Ahrendt's main goal was to try to sell Superior. The goal of Messrs. Ahrendt and Schenk was simply to raise as much cash as possible for the TAG insolvency estate. Dr. Ahrendt's original plans were to close a sale of Superior by August 1, 2008. As a result, prudent business practices such as reducing employee headcount, securing a line of credit, shedding unprofitable business lines such as the engine program and renegotiating the TAE debt and the facility lease were not begun.

20. Because the replacement parts market is a specialized niche market, it takes special experience and skill to be successful. As a result, over the course of the next 7 months, the bid process only resulted in bids by three of Superior's competitors and APS, a company formed for the purpose of acquiring either the assets or shares of Superior with the goal of down-sizing to the piece part business model and returning the company to profitability.

21. Based upon its business plan and the projections developed by Superior's management, APS arranged bank and personal financing for the acquisition.

22. In the summer and early fall of 2008, APS made 2 separate offers for Superior. On June 27, APS offered to buy Superior's assets for $5-7 million depending upon the value of the inventory at closing, to assume the non-TAE trade payables and to assume the facility and equipment leases. Then, on September 12, 2008, APS

offered to buy Superior's assets for $5.8 million plus a percentage of the later sale of the Vantage engine, to leave the $1.3 million balance of the accounts receivable with the seller and to assume the facility and equipment leases. As an alternative, APS offered to buy the "piece part" business for $6.0 million.

23. Each of APS' bids was rejected by Dr. Ahrendt for the reason that they did not net enough cash to the insolvent TAG and TAE estates.

24. Since PMAs are not transferable, and consequently, cannot be sold and used by the buyer of Superior's assets, they have no market value.[1] The market value of Superior is the value of its inventory. As a part of its anticipated third bid proposal, APS, in November, 2008, retained the leading aviation auction company to place a liquidation value on Superior's inventory. The company opined that the liquidation value of Superior's inventory was between $3.0 - 3.5 million.

25. APS met with Dr. Ahrendt and Mr. Schenck in New York on December 3, 2008, and offered to buy the shares of Superior for $4.0 million cash and 90% of the net proceeds from a proposed future sale of the Vantage engine design data. At the meeting, Dr. Ahrendt indicated he thought that the engine sale could bring $5 million, making the offer worth about $8.5 million. After the meeting, APS received no further response from Dr. Ahrendt.

26. APS subsequently learned that on December 30, 2008, Superior executed the Asset Purchase Agreement with Avco. The Asset Purchase Agreement required that Superior commence a Chapter 11 bankruptcy proceeding, which it did the next day.

---

[1] In a reorganization, however, the PMAs are the core of the Superior business and are extremely valuable to the Superior Business. The PMAs allow Superior to make products, hire and retain employees, purchase products from vendors, sell to customers and compete in the marketplace.

**AVIATION PARTS SUPPLY, INC.'S OBJECTION TO DEBTOR'S MOTION TO SELL SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS  Page- 6**

27. One of the requirements of the Avco Asset Purchase Agreement is that Superior must deliver at Closing an order of this Bankruptcy Court which contains certain findings of facts, among them, the following:

> …(9) confirms that Seller would be unable to meet its financial obligations in the near future, (10) confirms that Seller would not be able to reorganize successfully under Chapter 11 of the Bankruptcy Code and/or, as applicable, under Chapter 11 of the Bankruptcy Code [sic], (11) confirms that Seller has made unsuccessful good-faith efforts to elicit reasonable alternative offers of acquisition of the Purchased Assets and (12) confirms that absent the acquisition contemplated hereby, the Purchased Assets would exit the relevant market…

Asset Purchase Agreement, Article IV, Section 4.2(v)

The foregoing requirements are made a condition to the obligations of the Purchaser to close by Article VIII, Section 8.1(c) of the Asset Purchase Agreement.

**ARGUMENT**

28. APS asserts that the findings of facts set forth above which are required by Avco as a condition to its obligation to close the transactions contemplated by the Asset Purchase Agreement will not be supported by the evidence adduced at the hearing on the Motion to Sell. An Order which meets the requirements of Avco's Asset Purchase Agreement cannot be entered.

29. The evidence will not show that Superior will be unable to meet its financial obligations in the near future. Superior was making payments on a current basis to all of its trade creditors at the time of the filing of its bankruptcy petition. Based on the practice between TAE and Superior up until the time of TAE's German insolvency, the TAE debt is more properly characterized as capital. The arrangement was structured by Frank Thielert to capitalize Superior's engine program in order to

develop a synergy with the German based diesel engine company he also owned. At no time since March, 2006, had TAE taken any action to collect its "debt" from Superior. By agreement with TAE, Superior had made payments to TAE against the trade payable of nearly $1.0 million in 2007. By April, 2008, when TAE filed for insolvency, Superior owed TAE about $12.2 million after applying the nearly $3.0 million contra that TAE owed Superior. After April, 2008, Superior continued to purchase parts from TAE on agreed terms, i.e., 25% prior to delivery the balance in 45 days as was agreed. Moreover, no creditors had made any demands for payment of past due amounts, no collection notices had been received, and Superior was not a defendant in any suit for the collection of amounts owed. Thus, the two largest "creditors" in this bankruptcy proceeding are the German companies - the parent and sister companies of Superior. As for the $10 million obligation arising out of TAG's stock purchase of Superior stock, Superior had been making current and timely interest payments to TAG. Based on the foregoing, APS believes that the Court cannot find that Superior would be unable to meet its financial obligations in the near future as it had been meeting its obligations right up until the time of filing.

30.     Based on the (i) pre-petition projections provided by Superior to APS, (ii) the facts stated herein (and with the exception of the amounts purportedly owed TAE) that APS was paying its trade payables on a timely basis, and (iii) the schedules and statement of financial affairs filed by Superior herein, APS asserts that a successful reorganization under Chapter 11 of the Bankruptcy Code would be a reasonable probability and that this Court would not be able to find, based on the evidence to be

adduced at the sale hearing, that "the Seller would not be able to reorganize successfully under Chapter 11 of the Bankruptcy Code".

31. Superior engaged in pre-petition efforts to market the assets and/or stock of Superior. Based on the declaration of Mr. Schenck filed in connection with motions to be heard on January 9th in this proceeding, including the Debtor's motion to approve bid procedures, Mr. Schenck set forth the efforts undertaken to market Superior's assets and/or stock. He indicated that Superior entered into confidentiality agreements with 11 investors, received four offers, entered into parallel negotiations and due diligence was conducted. APS, as stated herein, signed a prepetition confidentiality agreement, conducted due diligence, and made several offers, all of which contemplated the continued operation of Superior as a going concern with continued presence in the market place. Based on the foregoing, APS asserts that this Court would be unable to make a finding that Superior made unsuccessful efforts to find reasonable alternative offers for the acquisition of Superior's assets.

32. Finally, APS asserts that the evidence will not support a finding that "absent the acquisition contemplated [by the Avco Asset Purchase Agreement], the Purchased Assets would exit the relevant market place." As stated herein, APS' prepetition offer for the purchase of Superior's business would not have resulted in Superior's assets exiting the market place. APS' offer contemplated that the assets would remain in the market place maintaining the current market dynamics, as opposed to Avco's offer, which appears to contemplate the takeover by a competitor of a competitor and the resulting reduction in competition in the market place.

33. As stated in the Motion to Sell, the proper standard for a Court to use in determining whether to approve a section 363(b) sale is whether the transaction is supported by a reasonable business judgment or justification. In re Lionel Corp., 722 F.2d 1063 (2nd Cir. 1983); see also, In re Continental Airlines, Inc., 780 F.2d 1223 (5th Cir. 1986). In *Lionel*, the Court further stated that "in fashioning its findings, a bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest groups" but "should consider all salient factors pertaining to the proceeding, and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." *Lionel* at 1071. APS believes that Avco's Asset Purchase Agreement is seeking entry of an order of this Court which contains findings of fact that will not be supported by the evidence. Such findings are a condition precedent to the obligations of Avco to close the contemplated transactions. Thus, Avco's offer, in effect, is conditioned upon conditions which cannot possibly be satisfied, and Avco will not be obligated to close the transactions contemplated by the Asset Purchase Agreement. APS asserts that approval of the transactions contemplated in the Motion to Sell with an order containing the findings discussed herein is not supported by a reasonable business justification and does not further the diverse interests of the debtor, creditors and equity holders and is not in the best interests of the estate. Accordingly, the Court should deny the Motion to Sell.

WHEREFORE, PREMISES CONSIDERED, APS files this its Objection to Debtor's Motion to Sell Substantially all of Debtor's Assets Free and Clear of Liens, and requests an order of the Court denying the sale of Debtor's assets to Avco and for such other and further relief as may be just and equitable.

DATE: February 17, 2009

                          Respectfully submitted,

                          By: /s/Billy G. Leonard, Jr.
                             BILLY G. LEONARD, JR.
                             Texas State Bar No. 12208100
                             1650 W. Virginia Street, Suite 211
                             McKinney, Texas 75069
                             (469) 742-0855
                             (469) 442-0135 (Facsimile)
                             **Attorney for Aviation Parts Supply, Inc.**

## **CERTIFICATE OF SERVICE**

     The undersigned counsel certifies that on the 17th day of February, 2009, a true and correct copy of the foregoing was forwarded to those persons set forth on the attached service list via First Class U.S. Mail and, in addition, via e-mail to Mr. Stephen Roberts, counsel for the Debtor.

                             /s/Billy G. Leonard, Jr
                             Billy G. Leonard, Jr.

SERVICE LIST

| | | |
|---|---|---|
| **Theilert Aircraft Engines**<br>Nieritzstr 14 D-01097<br>Dresden Germany | **Mahle Engine Components**<br>60428 Marine Road<br>Atlantic IA 50022-8291 | **KS-Pistoes**<br>Rodovia Arnald, Julio Mauberg<br>4000 Disrito Industrial No<br>Nova Odessa SP Brasil CAIZA Postal 91<br>CEP 13460-000 |
| **Airsure Limited**<br>15301 Spectrum Drive, #500<br>Addison, TX 75001 | **ECK Industries, Inc.**<br>1602 North 8th Street<br>Manitowoc, WI 54221-0967 | **Mahle Engine Components**<br>14161 Manchester Road<br>Manchester, MO 63011 |
| **Crane Cams**<br>530 Fentress Blvd<br>Daytona Beach, FL 32114 | **Corley Gasket Co.**<br>6555 Hunnicut Road<br>Dallas TX 75227 | **Saturn Fasteners Inc.**<br>425 S. Varney St.<br>Burbank, CA 91502 |
| **Champion Aerospace, Inc.**<br>1230 Old Norris Road<br>Liberty, SC 29654-0686 | **Ohio Gasket & Shim**<br>976 Evans Ave.<br>Akron, OH 44305 | **Gerhardt Gear**<br>133 East Santa Anita<br>Burbank CA 91502-1926 |
| **Automatic Screw Machine**<br>709 2nd Avenue SE<br>Decatur, AL 35601 | **Helio Precision Products**<br>601 North Skokie Highway<br>Lake Bluff, IL 60044 | **Knappe & Koester Inc.**<br>18 Bradco Street<br>Keen, NH 3431 |
| **Chester Salomon**<br>Stevens & Lee<br>485 Madison Ave., 20th Floor<br>New York, NY 10022 | **AOPA Pilot**<br>PO Box 973<br>Frederick, MD 21701 | **Mahle Engine Components**<br>17226 Industrial HWY<br>Caldwell, OH 43724-9779 |
| **Genesee Stamping & Fabricating**<br>1470 Avenue T<br>Grand Prairie, TX 75050-1222 | **City of Coppell/Coppell ISD**<br>Mary McGuffey, Tax Assessor<br>PO Box 9478<br>Coppell, TX 75019 | **Internal Revenue Service**<br>Special Procedures - Insolvency<br>P.O. Box 21126<br>Philadelphia, PA 19114 |
| | **David Childs, Ph.D.**<br>Dallas County Tax Assessor/Collector<br>500 Elm Street, Records Building<br>Dallas, TX 75202 | **Thielert AG**<br>Albert-Einstein-Ring 11<br>D-22761, Hamburg Germany |
| **Betsy Price, Tax Assessor Collector**<br>100 E. Weatherford<br>PO Box 961018<br>Fort Worth, TX 76196 | **Hartford Aircraft Products**<br>94 Old Poquonock Road<br>Bloomfield, CT 06002 | **Ace Grinding & Machine Company**<br>2020 Winner Street<br>Walled Lake, MI 48390 |

SERVICE LIST

**Lynden International**
1800 International Blvd. #800
Seattle, WA 98188

**Mary Frances Durham**
Office of the US Trustee
1100 Commerce St., Rm 976
Dallas, TX 75242-1496

**Kent Abercrombie**
Superior Air Parts, Inc.
621 S. Royal Ln., Suite 100
Coppell, TX 75019-3805

**Neil J. Orleans**
Goins Underkofler, et. al.
1201 Elm Street, Ste. 4800
Dallas, TX 75270

**Anita F. McMahon**
1646 Belmont Avenue
Baton Rouge, LA 70808

**Susan B. Hersh, P.C.**
12770 Coit Road, Suite 1100
Dallas, Texas 75251

**William G. Burd**
Atkinson & Brownell, PA
2 So. Biscayne Blvd., Suite 3750
Miami, Florida 33131

**David W Parham**
Baker & McKenzie
2001 Ross Avenue, Suite 2300
Dallas, Texas 75201

**Combustion Technologies, Inc.**
1804 Slatesville Road
Chatham, VA 24531

**Seal Science**
17131 Daimler
Irvine, CA 92614-5508

**Chester Salomon**
Stevens & Lee
485 Madison Ave., 20th Flr.
New York, NY 10022

**Gordon J. Toering**
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street, NW
Grand Rapids, MI 49503

**Laurie A. Spindler**
Linebarger Goggan Blair, et. al.
2323 Bryan Street, Suite 1600
Dallas, TX 75201

**William O. Angelley**
Kreindler & Kreindler LLP
707 Wilshire Blvd., 41st Floor
Los Angeles, California 90017

**Michael S. Leib**
Maddin, Hauser, Wartell
28400 Northwestern Highway, 3rd Fl.
Southfield, Michigan 48034-8004

**Ruhrtaler Gesenkschmiede**
F.W. Wengler GMBH & Co. KG, Feld
Witten, Germany 58456

**Stephen A. Roberts**
Strasburger & Price, L.L.P.
600 Congress Ave., Suite 1600
Austin, TX 78701

**Deirdre B. Ruckman**
Gardere Wynne Sewell LLP
1601 Elm Street, Suite 3000
Dallas, TX 75201-4761

**Michael L. Jones**
Henry & Jones LLP
2902 Carlisle Street, Ste. 150
Dallas, TX 75204

**Howard A. Borg**
Assistant United States Attorney
801 Cherry Street, Unit 4, Ste. 1700
Fort Worth, TX 76102-6882

**Vincent P. Slusher**
Beirne Maynard & Parsons LLP
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201

**Larry K. Hercules**
1400 Preston Road, Suite 280
Plano, Texas 75093