# Exhibit "B"

**VIRGINIA**

**IN THE CIRCUIT COURT OF THE CITY OF RICHMOND
JOHN MARSHALL COURTS BUILDING**

ROXANNE CHERRY, Administrator of the
Estate of Christopher Desch, Deceased,

                            Plaintiff

v.                                    CASE NO. _CL08004429-00_

LYCOMING ENGINES, A Division of AVCO
CORPORATION f/k/a TEXTRON LYCOMING
RECIPROCATING ENGINE DIVISION
652 Oliver Street
Williamsport, PA 17701
SERVE:      Secretary of the Commonwealth
                 1111 East Broad Street
                 Richmond, VA 23219

and

AVCO CORPORATION,
a Delaware corporation,
40 Westminster Street
Providence, RI 02903
SERVE:      Secretary of the Commonwealth
                 1111 East Broad Street
                 Richmond, VA 23219

and

TEXTRON, INC.,
a Delaware corporation,
Serve:        CT Corporation System, Registered Agent,
                 4701 Cox Road, Suite 301
                 Glen Allen, VA 23060

and

RECEIVED & FILED
CIRCUIT COURT

SEP 2 2 2008

BEVILL M. DEAN, CLERK
BY_____ D.C.

TELEDYNE CONTINENTAL MOTORS, INC.,
a Delaware corporation,
P.O. Box 90
Mobile, AL 36601
SERVE:        Secretary of the Commonwealth
              1111 East Broad Street
              Richmond, VA 23219

and

DOMINION AVIATION SERVICES, INC.,
A Virginia corporation,
SERVE:     Thomas T. Mickel, Jr., President and Registered Agent
7511 Airfield Drive
Richmond, VA 23327

and

SUPERIOR AIR PARTS, INC.,
A Texas corporation,
621 South Royal Lane, Suite 100
Coppell, TX 75019-3805
SERVE:        Secretary of the Commonwealth
              1111 East Broad Street
              Richmond, VA 23219

Defendants.

## COMPLAINT

### The Parties

    1.    Plaintiff, Roxanne Cherry, is an individual, a citizen and resident of the Commonwealth of Virginia who resides at 2620 Stuart Avenue, Richmond, Virginia, 23220. She is the widow of Dr. Christopher Desch who was tragically killed on December 10, 2006 in an airplane crash in Virginia and has been appointed Administrator of his estate.

    2.    Defendant, Lycoming Engines, a Division of AVCO Corporation ("Lycoming") f/k/a Textron Lycoming Reciprocating Engine Divisions, is believed and therefore averred to be

- 2 -

an unincorporated division and/or a wholly owned subsidiary of defendants AVCO Corporation and/or Textron, Inc., with its principal place of business located at 652 Oliver Street, Williamsport, Pennsylvania. Lycoming was the designer, manufacturer, seller and certifier of the IO-540 aircraft engine that failed on the aircraft and its single drive dual magneto.

3.      Defendant, Avco Corporation ("AVCO"), is a Delaware corporation with its principal place of business in Rhode Island., and at all time was the designer, manufacturer, seller and certifier of the IO-540 aircraft engine that failed on the aircraft and its single drive dual magneto.

4.      Defendant, Textron, Inc. ("Textron") is a Delaware corporation with its principal place of business in Rhode Island, whose principal place of business for aircraft engines is within the Commonwealth of Pennsylvania by operating various subsidiary corporations and divisions within the Commonwealth of Pennsylvania and shipping goods into the Commonwealth of Virginia, and at all times directed the activities of defendant Lycoming in virtually every respect, including management, risk management, litigation strategy, approval for funding for improvements in its products, and engineering changes, and was for all practical and legal purposes a seller of the engine and magneto on the accident aircraft.

5.      Defendant, Teledyne Continental Motors, Inc. ("Teledyne"), is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Alabama, and is the product line successor and holder of the Type Certificate for the single drive dual magneto with which the aircraft was equipped, was responsible for its continuing airworthiness, and, in this instance, supplied overhaul and replacement parts for the magneto, as well as its maintenance instructions and attachment devices to the engine in 1993, 2004 and 2006.

- 3 -

6.      Defendant, Dominion Aviation Services, Inc. ("Dominion"), is a corporation organized under the laws of the Commonwealth of Virginia, a citizen of Virginia, with its principal place of business in or near Richmond, Virginia, and is a fixed base operator, a repair and fueling station for aircraft, and was the principal maintainer of the aircraft for the items which were causative of the accident that took the life of Dr. Desch. Upon current information and belief, Dominion regularly conducts substantial business in the City of Richmond, Virginia.

7.      Defendant, Superior Air Parts, Inc. ("Superior"), is a corporation organized under the laws of the State of Texas, a citizen of that State, with its principal place of business there, and was the designer, manufacturer, supplier and seller of the gasket used to mount the single drive dual magneto onto the engine of the aircraft in 2006.

**Background of this Lawsuit**

8.      Plaintiff's decedent, Dr. Christopher Desch, aged 51, was a renowned and beloved oncologist in Richmond, Virginia.

9.      His life's work was the preservation and extension of human life for those whose misfortune it was to be stricken by cancer.

10.     As a direct result of his brilliant and selfless commitment to his patients, Dr. Desch was admired, revered and loved by the Richmond, Virginia community where he lived and worked. He was nationally known in his field as well.

11.     Just like his devotion to his patients, Dr. Desch was an equally devoted husband of Roxanne and father of a son Toby Desch, aged 20, and whose unabashed enthusiasm for life was reflected in an equal enthusiasm for caring and loving for his family.

- 4 -

12. Dr. Desch was a passionate advocate for all living things, and his sudden and unexpected death due to an airplane crash was a devastating, overwhelming and insufferable shock to his family, including the plaintiff, Roxanne Cherry, and their son Toby.

13. No one could inquire or investigate this tragic accident without being aware of the pain suffered by the Desch family from this loss.

14. Sometime in the 1980s, Lycoming and Textron decided to design some of their aircraft engines to accommodate a single drive dual magneto.

15. That magneto, unlike all the others used by Lycoming and its competitor Teledyne, utilized only a single drive from the engine accessory case to motivate two separate but connected magnetos to supply electrical power to the spark plugs of the engine.

16. Predecessors of the magneto and all others utilized by Lycoming and Teledyne have two separate magnetos driven by two separate accessory pads to provide the redundancy required by the Federal Aviation Regulations.

17. The single drive dual magneto also contained an unusual and unorthodox timing adjustment, which required the loosening of attachment hardware in the form of clamps that had no mechanical connection to any engine housing but for a press fit and rotating the magneto housing one way or the other to adjust timing, then tightening the clamp to hold the housing to the back of the engine accessory case.

18. Between the accessory case and the magneto housing is a gasket that serves to prevent oil from the accessory case from leaking all over the accessories mounted on the rear of the engine.

19.    Due to gasket set, the phenomenon where a gasket takes an impression once components are tightened onto it, the large and unwieldy magneto housing works its way loose and rotates affecting engine timing.

20.    The gasket set and loosening problem was well-known to the defendants because Lycoming and Teledyne designed a different clamp to hold the housing in place and knew from other components, including carburetors mounted to their engines that failure to periodically retighten the clamp screws or provide a gasket with little or no set would result in undesired engine timing changes and in some cases engine failure due to loss of operational timing entirely.

21.    Both Teledyne and Lycoming had the responsibility to provide continuing airworthiness instructions with regard to the inspection, retightening, replacement of gaskets and even the selection of the type gasket to be used for the single drive dual magneto.

22.    Defendant Dominion was aware of the need to replace gaskets every time any work was done on the magneto, to retighten clamp screws to specified torque and to ensure that gasket set did not occur.

23.    Defendant Dominion was responsible to use only factory recommended replacement parts, especially gaskets and clamps, so as to avoid gasket set and loosening of this critical component.

24.    Superior Air Parts is a manufacturer of PMA Parts for aircraft engines.

25.    A PMA Part is one that the holder of PMA Authority, in this instance Superior, represents is for all practical purposes like the Original Equipment Manufacturer's (OEM) parts, in this case either Lycoming or Teledyne.

26.    Superior supplied the gasket utilized by Dominion to interface between the magneto housing and the engine accessory case when Dominion tightened this magneto in 2006.

- 6 -

27.     The accident aircraft engine was overhauled by an authorized Lycoming/Textron overhaul shop in 1993, at which time new and replacement parts supplied and sold by Lycoming and Teledyne were used for the overhaul of the magneto, including the gasket and clamps.

28.     During that overhaul, the single drive dual magneto was overhauled by an FAA authorized magneto overhaul shop and mounted to the engine.

29.     Sometime in 2004, the magneto failed and was removed for repair and then re-mounted to the engine by Dominion.

30.     On January 13, 2006, Dominion removed the magneto and remounted it using a Superior made gasket and Lycoming/Teledyne clamps, but then on June 5, 2006, Dominion found the magneto housing loose and retightened them, but did not replace either the gasket nor did it replace the clamps or determine why the magneto had become loose.

31.     On December 10, 2006, plaintiff's decedent was operating the accident aircraft as pilot-in-command when the magneto housing rotated, causing change in engine timing, which caused both engine failure and a rapid increase in engine heat that ultimately was sufficient to cause the propeller to stop turning.

32.     Dr. Desch, faced with an overwhelming emergency, carefully nursed the crippled aircraft back to an airport, but there was neither sufficient altitude nor airspeed to make the runway.  An off-airport landing occurred and a crash, igniting the fuel and resulting in Dr. Desch's death in Virginia.

33.     The cause of the crash was engine failure due to the improper and inadequate design of the magneto, the gasket interface and the clamps that hold it in place, together with the inadequate maintenance and inspections by Dominion, which included a failure to use the required parts and methods to correct the loosening of the magneto.

34.   At the time of his death, Dr. Desch was survived by his wife, Roxanne Cherry, and his son, Toby Desch, both of whom are beneficiaries under the Virginia Wrongful Death Act, Va. Code § 8.01-53.

35.   The gasket, magneto, and the attachment hardware was less than eighteen years of age at the time of the accident; thus, the General Aviation Revitalization Act of 1994's eighteen year statute of repose is inapplicable.

36.   The manufacturing defendants are liable regardless of the applicability of the GARA statute because they have knowingly misrepresented to the Federal Aviation Administration facts and information necessary for the certification of the magneto, its attaching hardware and gaskets, and have falsely misrepresented by act or omission the known propensity of the magneto to rotate due to gasket set, thus causing a loss of proper engine magneto timing.

37.   The manufacturing defendants are also liable, regardless of the existence of the GARA statute, because the parts that failed on the accident aircraft magneto were replacement parts that start anew the GARA eighteen year statute of repose, such parts including, but not limited to, the gasket and attaching hardware of the magneto.

38.   The attaching hardware of the magneto was designed and sold by the Lycoming, Avco, Textron and Teledyne defendants.

39.   This claim is based upon the Wrongful Death and Survival Statutes of the Commonwealth of Virginia, Virginia Code § 8.01-50, et seq., and all damages suffered by those entitled to recover under the aforesaid statute as a result of his death, including but not limited to sorrow, mental anguish and solace which may include society, companionship, comfort, guidance and kindly offices and advice of the decedent; compensation for reasonably expected loss of income of decedent and services, protection, care and assistance provided by decedent;

- 8 -

medical expenses and funeral expenses and all other elements of damages cognizable under any applicable law, including Virginia Code § 8.01-52, including punitive damages of $350,000.00. The actions and inactions by all defendants evinced a conscious disregard for the safety of the public, including plaintiff's decedent. Roxanne Cherry, decedent's wife, and Toby Desch, decedent's son, are statutory beneficiaries.

## COUNT I

### Negligence

### *Plaintiff v. Dominion Aviation Services*

40.    Plaintiff incorporates by reference paragraphs 1 through 39 as though set forth at length.

41.    The negligence of defendant Dominion includes the following

a.    Failing to follow the requirements of FAR 43 15 and the advisory circulars and publications that require a maintenance facility to abide by the requirements of the Type Design and manufacturers' recommendations with regard to maintenance.

b.    Failing to follow the manufacturers' recommendations, manuals and instructions with regard to installation and maintenance of the magneto.

c.    Failing to follow accepted maintenance practices with respect to installation of the magneto.

d.    Failing to replace the gasket in 2006 when the magneto became loose.

e.    Failing to replace the magneto gasket with one provided by Lycoming or Teledyne for the magneto in 2006.

f.    Failing to inspect the gasket in 2006 when the magneto came loose.

g.    Failing to replace the securing clamps in 2006 when the magneto came loose.

h.    Failing to properly torque the hold down screws when the magneto came loose in 2006.

i.    Failing to properly secure the magneto in 2006.

- 10 -

j.     Failing to warn the owner and foreseeable users of the aircraft that the mounting methods of the magneto were faulty and the magneto could come loose at any time and result in engine failure and other failures to warn.

k.     Failing to note evidence of magneto and thus timing anomalies.

l.     Failing to contact Lycoming and or Teledyne to determine if use of a Superior gasket was a suitable substitute for the original equipment manufacturer gasket.

m.     Failing to conclude after the magneto became loose after just a few hours in service that the Superior gasket and Lycoming/Avco and Teledyne clamps were in fact inferior and unsuitable for service in that application.

n.     Falsely executing a logbook entry returning the aircraft to service as airworthy.

o.     Violating the Federal Aviation Regulations with respect to aircraft maintenance.

42.     As a direct result of the negligence of the defendant Dominion, the magneto moved, the timing was lost for engine operation, the engine temperature increased  and the propeller stopped causing the crash and killing the plaintiff's decedent.

WHEREFORE, plaintiff, by counsel, and on behalf of all statutory beneficiaries, demand judgment against defendant Dominion in the sum of Twenty Million Dollars ($20,000,000.00) for each beneficiary, and their costs in this behalf expended, and all other compensatory and punitive damages allowed by law, plus pre-judgment and post-judgment interest.

- 11 -

## COUNT II

### Strict Liability in Tort —
#### *Plaintiff v. Lycoming, Avco, Textron and Teledyne*

43.    Plaintiff incorporates by reference paragraphs 1 through 42 as though set forth at length.

44.    The single drive dual magneto was originally designed as a result of a requirement by Lycoming for making drive pads available for redundant aircraft systems like standby vacuum pumps and alternators in single engine aircraft.

45.    In order to accommodate these requirements cheaply without redesigning the engine accessory case, Lycoming designed and tested a single drive dual magneto.

46.    In so doing Lycoming eliminated one redundancy in favor of another without fully disclosing the inherent risks of doing so to the FAA which by regulation had required two separate magnetos mounted separately to fire two separate sets of spark plugs, two for each cylinder.

47.    What the Lycoming defendants failed to do and Teledyne has continued is to disclose to the Federal Aviation Administration that the design of the single drive dual magneto was flawed in that the housing, gasket and attachment clamps were defective and allowed gasket set to loosen the housing allowing it to move and thus change the timing of the magneto which results in engine failure and loss of power.

48.    At all times material, Lycoming and Teledyne knew that gasket set would result in a loosening of the attachment hardware on the magneto and because it was a single drive would result in engine failure.

- 12 -

49.    Lycoming and Teledyne also knew because of its carburetor experience that gasket set would require periodic tightening of the attachment screws and hardware or they would loosen and the engine would lose power or fail.

50.    Lycoming issued a Service Instruction twice warning mechanics and aircraft owners to verify the tightness of carburetor screws to avoid engine failure due to gasket set but totally neglected the very same problem on single drive dual magnetos on this model engine.

51.    The failure to disclose this flaw to the FAA and the continuing airworthiness instructions relating to troubleshooting, correcting and eliminating the problem was a knowing misrepresentation and failure to disclose required and necessary information for the FAA to certify and or approve the single drive dual magneto and worse to accept this departure from accepted redundancy standards in aircraft engine design without being informed of the serious risk from an entirely undisclosed cause.

52.    The failure to make the required disclosures permitted the FAA to certify this design without the required or necessary information for certification and approval of continuing airworthiness instructions.

53.    Although the magneto was replaced and or overhauled within 18 years of the date of the accident and the gasket was replaced within that time again, such conduct by these defendants was a separate exception to the General Aviation Revitalization Act 18-year statute of repose.

54.    The defects in the magneto and its gasket and mounting hardware rendered the magneto system defective and unreasonably dangerous and caused the engine failure that resulted in the death of plaintiff's decedent.

WHEREFORE, plaintiff, by counsel, and on behalf of all statutory beneficiaries, demand judgment against defendants Lycoming, Avco, Textron and Teledyne in the sum of Twenty Million Dollars ($20,000,000.00) for each beneficiary, and their costs in this behalf expended, and all other compensatory and punitive damages allowed by law, plus pre-judgment and post-judgment interest.

## COUNT III
### Negligence
### *Plaintiff v. Lycoming, Avco and Textron*

55.     Plaintiff incorporates by reference paragraphs 1 through 54 as though set forth at length.

56.     The negligence of these defendants include:

a.      Failing to properly or adequately test the magneto system.

b.      Failing to properly and adequately design the magneto system.

c.      Failing to properly and adequately manufacture the magneto system.

d.      Failing to properly and adequately provide continuing airworthiness instructions with regard to the magneto system.

e.      Failing to properly and adequately warn of the design and manufacturing defects in the magneto system.

f.      Failing to provide adequate continuing airworthiness instructions.

g.      Failing to design, build and furnish adequate attachment hardware, gaskets and redundancy to the magneto system.

h.      Violating the requirements of the Federal Aviation Regulations applicable to engine manufacturers.

57.     The further negligence of Lycoming consisted of the following

- 14 -

a.      Lycoming knew that the clamps that retain the single drive dual magneto were critical to the retention of the device to avoid engine failure.

b.      Lycoming also knew that in applications the clamps were loosening and the gaskets were taking a set so quickly that only its gasket was suitable and only its clamps were suitable for retention.

c.      Notwithstanding that actual knowledge and the fact that it applied equally to all engines with a single drive dual magneto Lycoming issued a Service Instruction.

d.      That Instruction required the use of retention clamps of a certain design and a gasket that bore a Lycoming Part number but was directed only to 4 cylinder engines known as I0-360 engines.

e.      Lycoming issued no bulletin or instruction for engines like on the accident aircraft in spite of the fact that the magneto, the clamps and the gasket was the same design and material.

f.      The failure of Lycoming to issue a bulletin or instruction in the face of actual knowledge of failures, the mode of failure, the means of failure and the method to correct the same is unjustifiable, wanton and outrageous.

g.      In 2007, Lycoming participated in a Special Airworthiness Information Bulletin ("SAIB") issuance by the Federal Aviation Administration.

h.      That SAIB advised the field that a new revised retention device was available for the magneto but failed to include a caution that gaskets by other manufacturers were defective, could take a gasket set, could loosed the attachments and cause engine failure.

- 15 -

i.    Lycoming knew how serious gasket set could be for such an application because it had actual experience with gasket set in carburetors that caused loose screws and failure of the carburetors and engines.

j.    Armed with that prior knowledge and the serious risk of bodily injury or death that was known to have occurred from it, Lycoming elected to do nothing to see that the bolts and clamps would not loosen between inspection in spite of the existence of feasible alternatives.

WHEREFORE, plaintiff, by counsel, and on behalf of all statutory beneficiaries, demand judgment against defendants Lycoming, Avco and Textron in the sum of Twenty Million Dollars ($20,000,000.00) for each beneficiary, and their costs in this behalf expended, and all other compensatory and punitive damages allowed by law, plus pre-judgment and post-judgment interest.

## COUNT IV
### Strict Liability In Tort
### *Plaintiff v. Teledyne*

58.    Plaintiffs incorporate by reference paragraphs 1 through 57 as though set forth at length.

59.    Teledyne purchased the product line of single drive dual magneto product line, which preceded the overhaul and replacement of the magneto in the accident aircraft.

60.    Under the Federal Aviation Regulations, Teledyne was obligated to *inter alia* report failures of the magneto, provide continuing airworthiness instructions, and correct defects that could cause engine failure.

61. Teledyne knew from its experience with carburetors and other engine components that gasket set frequently allows for retaining bolts to loosen and catastrophic results occur.

62. Teledyne knew that the mounting system for the magneto was flawed because of reports of looseness and loss of correct engine timing and that the likely cause was both the mounting hardware and the gasket set.

63. Notwithstanding that actual knowledge Teledyne did nothing to effectively deal with either problem as a result of which an unreasonably dangerous condition existed with any engine to which the magneto was mounted.

64. Within 18 years of the date of this accident Teledyne and Lycoming distributed a different mounting clip than that originally provided with the magneto.

65. The mounting clip was unreasonably dangerous and defective in that it did not correct the dangerous deficiency of looseness due to gasket set and lack of bolt retention which allowed the magneto to rotate and change engine timing.

66. The magneto was defective and unreasonably dangerous as was its mounting system because it allowed for looseness to develop between inspections which caused in this instance engine loss of power and ultimately failure.

67. The magneto and mounting system was thus defective and unreasonably dangerous in that it was the same as when originally sold, the same as modified by Lycoming and Teledyne and in accordance with the revised airworthiness instructions issued within 18 years of the date of accident.

68. The magneto components at the time of the accident were in the same condition as when sold.

- 17 -

69.     As a result of the conduct of this defendant it is liable under the theory of strict liability in tort.

WHEREFORE, plaintiff, by counsel, and on behalf of all statutory beneficiaries, demand judgment against defendant Teledyne in the sum of Twenty Million Dollars ($20,000,000.00) for each beneficiary, and their costs in this behalf expended, and all other compensatory and punitive damages allowed by law, plus pre-judgment and post-judgment interest.

**Count V**

**Negligence**

**_Plaintiff v. Teledyne_**

70.     Plaintiffs incorporate by reference paragraphs 1 through 69 as though set forth at length.

71.     The negligence of Teledyne includes:

a.     Failing to issue adequate and necessary continuing airworthiness instructions for the magneto.

b.     Failing to properly design and test the housing and mounting system of the magneto.

c.     Failing to properly warn mechanics, the FAA and owners of aircraft of defects in the mounting system of the magneto.

d.     Failing to correct deficiencies in the design of the magneto and mounting system.

e.     Failing to warn of gasket set in the magneto mounting system.

f.     Failing to provide adequate mounting system hardware and gaskets to insure that the magneto would not come loose in service before inspections.

- 18 -

g.    Failing to adequately redesign the mounting system in the face of actual knowledge of failures.

h.    Failing to provide continuing airworthiness instructions.

i.    Failing to use a non-gasket setting oil barrier between the magneto and engine accessory case.

j.    Violating the Federal Aviation Regulations applicable to engine component suppliers.

72.    The further negligence of Teledyne consisted of the following

a.    Teledyne knew that the clamps that retain the single drive dual magneto were critical to the retention of the device to avoid engine failure.

b.    Teledyne also knew that in applications the clamps were loosening and the gaskets were taking a set so quickly that only its gasket was suitable and only its clamps were suitable for retention.

c.    Teledyne knew how serious gasket set could be for such an application because it had actual experience with gasket set in carburetors that caused loose screws and failure of the carburetors and engines.

d.    Armed with that prior knowledge and the serious risk of bodily injury or death that was known to have occurred from it, Teledyne elected to do nothing to insure that the bolts would not loosen between inspections in spite of the availability of feasible alternatives.

73.    The negligence of this defendant caused the death of the plaintiff's decedent and the unnecessary increase in pain, discomfort and grief of his family.

WHEREFORE, plaintiff, by counsel, and on behalf of all statutory beneficiaries, demand judgment against defendant Teledyne in the sum of Twenty Million Dollars ($20,000,000.00)

- 19 -

for each beneficiary, and their costs in this behalf expended, and all other compensatory and punitive damages allowed by law, plus pre-judgment and post-judgment interest.

**Count VI**

**Strict Liability In Tort**

***Plaintiff v. Superior Air Parts***

74.     Plaintiffs incorporate by reference paragraphs 1 through 73 as though set forth at length.

75.     Superior Air Parts is a corporation organized and existing under the laws of the State of Texas, with its principal place of business at 621 S. Royal Lane, Coppell, Texas, 75019.

76.     Superior is in the business of building aircraft engine components which it touts as good as or "superior" to those of original equipment manufacturers.

77.     Superior selected and sold the gasket utilized by the defendant Dominion that was installed between the magneto and the engine accessory case in 2006.

78.     The gasket was defective and unreasonably dangerous in that it was especially susceptible to gasket set and thus was unsuitable for this application because it guaranteed loosening of the attachment hardware before required inspections.

79.     The gasket was neither as good as nor superior to the gasket provided by the defendant Lycoming and Textron nor was it "superior".

80.     As a direct result of the unreasonably dangerous and defective gasket for which there were feasible alternatives, the magneto loosened, changing the engine timing and causing engine failure.

WHEREFORE, plaintiff, by counsel, and on behalf of all statutory beneficiaries, demand judgment against defendant Superior Air Parts in the sum of Twenty Million Dollars

($20,000,000.00) for each beneficiary, and their costs in this behalf expended, and all other compensatory and punitive damages allowed by law, plus pre-judgment and post-judgment interest.

## COUNT VII

### Negligence

### *Plaintiff v. Superior Air Parts*

81.     Plaintiff incorporates by reference paragraphs 1 through 80 as though set forth at length.

82.     The negligence of the defendant Superior includes the following:

a.      Failing to properly and adequately select a material for the gasket.

b.      Failing to properly and adequately test the gasket material.

c.      Failing to properly and adequately provide instructions for using the gasket.

d.      Failing to properly and adequately supply attachments for the magneto that would work with the gasket.

e.      Failing to properly and adequately provide continuing airworthiness instructions with the gasket.

f.      Failing to warn about the propensity of the gasket to take a set and loosen the attachment hardware.

g.      Failing to leave the supplying of critical hardware for engine operation to the experts.

h.      Consistently failing to recognize its limitations in its capabilities as a supplier of hardware for replacement of parts that should be made by original equipment manufacturers.

i.     Violating the Federal Aviation regulations with respect to PMA holders.

83.    As a direct result of the negligence of Superior, the plaintiff was killed.

WHEREFORE, plaintiff, by counsel, and on behalf of all statutory beneficiaries, demand judgment against defendant Superior Air Parts in the sum of Twenty Million Dollars ($20,000,000.00) for each beneficiary, and their costs in this behalf expended, and all other compensatory and punitive damages allowed by law, plus pre-judgment and post-judgment interest.

**Count VIII**

**Breach of Warranty**

***Plaintiff v. Superior Air Parts***

84.    Plaintiff incorporates by reference paragraphs 1 through 83 as though set forth at length.

85.    Along with the sale of the gasket to Superior and by implication to the plaintiff's decedent who was at all times an intended beneficiary came express and implied warranties. Superior impliedly warranted that the gasket was of merchantable quality and fit for its intended and ordinary use, and for the general and particular purposes for which it was designed, manufactured, marketed, distributed, assembled and sold. The gasket did not conform to the implied warranties made by Superior in that it was defectively designed, manufactured, assembled and distributed, and as a result was unreasonably dangerous.

86.    The implied warranties were of merchantability, fair or average quality of other gaskets for similar uses and fitness for a particular purpose, safe flight.

87.    The express warranty was that the gasket met all requirements of the Federal Aviation regulations and that it was as good as or superior to the original equipment.

- 22 -

88.    The defendant Superior breached its implied warranties also for the reasons stated and that the gasket was entirely unsuitable and was not of the same characteristics or quality as that of the OEMs but also it was neither airworthy nor in compliance with the requirements of the FARs as they relate to Parts Manufacturing Approval holders.

89.    As a direct result of the breaches of warranties of the defendant Superior, plaintiff's decedent was killed.

WHEREFORE, plaintiff, by counsel, and on behalf of all statutory beneficiaries, demand judgment against defendant Superior Air Parts in the sum of Twenty Million Dollars ($20,000,000.00) for each beneficiary, and their costs in this behalf expended, and all other compensatory and punitive damages allowed by law, plus pre-judgment and post-judgment interest.

## Count IX
## Breach of Warranty
### *Plaintiff v. Lycoming, Avco, Textron and Teledyne*

90.    Plaintiff incorporates by reference paragraphs 1 through 89 as though set forth at length.

91.    At all times material there were certain warranties which flowed to the plaintiff and plaintiff's decedent by the defendants Lycoming, Avco, Textron and Teledyne as a result of the sale of the magneto, its replacement parts and overhaul which included the warranties of merchantability and fitness for a particular purpose, to wit, safe flight and merchantability which is that this magneto was substantially the same as other magnetos for aircraft engines. The defendants impliedly warranted that the magneto was of merchantable quality and fit for its intended and ordinary use, and for the general and particular purposes for which it was designed, manufactured, marketed, distributed, and sold. The magneto did not conform to the implied

- 23 -

warranties made by the defendants in that it was defectively designed, manufactured, assembled and distributed, and as a result was unreasonably dangerous.

92.    The defendants breached their implied warranties in that the magneto was not fit for safe flight and had a long history of failure including but not limited to gasket set, unintended rotation which changed engine timing and was unlike other magnetos that did not have the problem because they were separate, dual, redundant and allowed for the failure of one not to compromise the operation of the other.

93.    The defendants also expressly warranted that the magneto met all FAA standards for redundancy of ignition systems when they knew it did not because by design and manufacture of the retention devices, gasket set along with the inadequate clamp up allowed for undesired rotation, loss of ignition timing and engine failure.

94.    The defendants also violated their express warranty that the magneto was airworthy thus safe for flight when they at all times knew it was not.

95.    As a result of the defendants' breaches of implied and express warranties the magneto rotated, the engine quit and the plaintiff's decedent was killed.

WHEREFORE, plaintiff, by counsel, and on behalf of all statutory beneficiaries, demand judgment against defendants Lycoming, Avco, Textron and Teledyne in the sum of Twenty Million Dollars ($20,000,000.00) for each beneficiary, and their costs in this behalf expended, and all other compensatory and punitive damages allowed by law, plus pre-judgment and post-judgment interest.

- 24 -

TRIAL BY JURY AGAINST ALL DEFENDANTS IS DEMANDED.

ROXANNE CHERRY,
Administrator of the Estate of
Christopher Desch, Deceased

By _____
                    Counsel

W. F. Drewry Gallalee, Esquire
VSB No. 20561
Alden J. Eldredge, Esquire
VSB No. 72915
WILLIAMS MULLEN
Two James Center
1021 East Cary Street
P. O. Box 1310 (23218)
Richmond, VA  23219
804-783-6460
804-783-6507 (Fax)

    *and*

Arthur Alan Wolk (PA Bar 02091)
THE WOLK LAW FIRM
1710-12 Locust Street
Philadelphia, PA  19103
215-545-4220
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 (Fax)

1660348v2

- 25 -