Stephen Roberts
Texas Bar No. 17019200
Robert P. Franke
Texas Bar No. 07371200
Duane J. Brescia
Texas Bar No. 240252650
**STRASBURGER & PRICE, LLP**
600 Congress, Suite 1600
Austin, Texas 78701
(512) 499-3600 / (512) 499-3660 Fax

**ATTORNEYS FOR DEBTOR SUPERIOR AIR PARTS, INC.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| | § | |
| **IN RE:** | § | **Case No. 08-36705** |
| | § | |
| **SUPERIOR AIR PARTS, INC.,** | § | **Chapter 11** |
| | § | |
| **Debtor.** | § | |
| | § | |

### PLAN OF REORGANIZATION FILED BY
### SUPERIOR AIR PARTS, INC.

**MAY 15, 2009**

Table of Contents

Page

I.    **DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME**..........1
         A.    DEFINITIONS...................................................................................1
         B.    RULES OF INTERPRETATION. ............................................................5
         C.    COMPUTATION OF TIME...................................................................5

II.    **TREATMENT OF ADMINISTRATIVE CLAIMS**...............................................5

III.    **CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ........................5
         CLASS 1:    SECURED TAX CLAIMS. ...................................................6

         CLASS 2:    PRIORITY TAX CLAIMS.....................................................6

         CLASS 3:    PRIORITY NON-TAX CLAIMS..............................................7

         CLASS 4:    SECURED CLAIM OF AICCO, INC. ......................................7

         CLASS 5:    SECURED CLAIM OF ERVIN LEASING COMPANY......................7

         CLASS 6:    SECURED CLAIM OF GREAT AMERICAN LEASING
                          CORPORATION. ..............................................................8

         CLASS 7:    SECURED CLAIM OF TIGRIS VENDOR FINANCE, INC., F/K/A US
                          EXPRESS LEASING. ........................................................8

         CLASS 8:    SECURED CLAIM OF NATIONAL CITY COMMERCIAL CAPITAL
                          COMPANY. ...................................................................9

         CLASS 9:    GENERAL UNSECURED CLAIMS. ......................................9

         CLASS 10: UNSECURED CLAIM THIELERT AIRCRAFT ENGINES GmbH
                          (TAE) .........................................................................9

         CLASS 11: UNSECURED CLAIM OF THIELERT AG (TAG)...........................10

         CLASS 12: INTERESTS IN THE DEBTOR. .......................................10

IV.    **IMPLEMENTATION OF THE PLAN**..............................................................10

V.    **PROVISIONS GOVERNING DISTRIBUTION** ...............................................12

VI.    **DISPOSITION OF CAUSES OF ACTION** .....................................................13

VII.    **EXECUTORY CONTRACTS AND LEASES** .................................................13

VIII.    **RESOLUTION OF DISPUTED CLAIMS**......................................................14

IX.    **MODIFICATION OF DEBTOR'S PLAN** ........................................................14

X.    **PROVISIONS GOVERNING DISTRIBUTION** ...............................................15

XI.    **MODIFICATION TO THE DEBTOR' PLAN**...................................................15

XII.    **RETENTION OF JURISDICTION**...............................................................16

**XIII.    DISCHARGE**.................................................................................................**16**

**XIV.    EXCULPATION AND RELEASE** ................................................................**17**

**XV.    MISCELLANEOUS PROVISIONS** ............................................................**17**

**XVI.    CONFIRMATION OF THE DEBTOR'S PLAN, VOTING PROCEDURES, AND
          REQUIREMENTS FOR CONFIRMATION OF A PLAN**...................................**18**

**XVII.    CONCLUSION** ..........................................................................................**21**

604403.3/SPA/20354/0102/051509

## INTRODUCTION

Superior Air Parts, Inc. ("Debtor"), Debtor-in-possession in the above-styled case under Chapter 11 of the Bankruptcy Code, is proposing its Plan of Reorganization ("Plan") to the Court, the creditors, and all other parties-in-interest under which it will propose to sell its property under a proposed sale or sealed bidding process, if necessary, and use existing assets and the proceeds from any sale to pay creditors according to the priorities set forth in the Plan.

ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.   SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO ITS CONSUMMATION.

### I.
### DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**A.    Definitions.** The following terms, when used in this Plan shall, unless the context requires otherwise, have the following meanings:

*"Administrative Expense Claim"* shall mean any cost or expense of administration of the Chapter 11 case entitled to a priority in accordance with the provisions of §§ 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual or necessary expenses of preserving the Debtor's estate and operating the business of the Debtor including any loans or other advances to the Debtor, all compensation or reimbursement for expenses to the extent allowed by the Bankruptcy Code under §§ 330 and 503 of the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate under Chapters 1, 2, and 3 of Title 28, United States Code.

*"Allowed Claim"* shall mean any claim against the Debtor, proof of which was timely and properly filed or, if no proof of claim was filed, which has been or hereafter is listed by the Debtor on their schedules as liquidated in amount and not disputed or contingent and, in either case, a claim as to which no objection to the allowance thereof has been interposed on or before any applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Court or this Plan, or as to which any objection has been determined by a Final Order, to the extent such objection is determined in favor of a Claimant or based upon an application for payment of professional fees to the extent such application is approved by a Final Order.

"*Bankruptcy Code*" or "*Code*" shall mean the Bankruptcy Code of 1978 as contained in Title 11 of the United States Code and all amendments thereto.

"*Bankruptcy Rules*" shall mean the Federal Rules of Bankruptcy Procedure applicable to cases pending before the Bankruptcy Court, as amended.

"*Claim*" shall have the meaning set out in § 101(5) of the Bankruptcy Code.

"*Claimant*" shall mean the holder of a Claim.

"*Class*" is a category of Claims or interests which are substantially similar to other Claims or interests in such Class.

"*Confirmation*" shall mean the date upon which an order is entered by the court confirming the Plan, after hearing, in accordance with Chapter 11 of the Code.

"*Court*" shall mean the United States Bankruptcy Court for the Northern District of Texas, Dallas Division and the United States Bankruptcy Judge presiding in the Debtor's Chapter 11 case.

"*Confirmation Order*" shall mean an order confirming the Plan that is final and non-appealable.

"*Confirmation Hearing*" shall mean the hearing on Confirmation, which may be continued from time to time.

"*Creditor*" shall mean the holder of a Claim against the Debtor as defined in § 101(10) of the Code.

"*Debtor*" shall mean Superior Air Parts, Inc.

"*Effective Date*" shall mean that date eleven (11) days after an order confirming the Plan is entered or such date thereafter until all Allowed Administrative Claims are paid in full or the date after the closing of any sale contemplated by the plan, if any.

"*Estate*" shall mean the bankruptcy estate of the Debtor as described in § 541 of the Bankruptcy Code.

"*Final Order*" shall mean an order or a judgment which has not been reversed, stayed, modified, or amended and as to which the time to seek appeal or review or re-hearing has expired and as to which no appeal or petition for review or re-hearing is pending as a result of which such order shall have become final in accordance with applicable law.

"*Governmental Claim*" shall mean Claims made pursuant to § 507(a)(7) of the Code.

"*Priority Claim*" shall mean a Claim made pursuant to §§ 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(6) of the Code.

"*Secured Claim*" shall mean a claim, debt or demand against the Debtor as determined in accordance with § 506 of the Code, which is secured by a properly perfected mortgage, deed of trust or security interest in any of the real or personal property owned by the Debtor.

"*Unsecured Claim*" shall mean any unsecured debt, demand or claim of whatever nature other than Administrative Claims, Priority Claims, Governmental Claims or Secured Claims, to the extent as determined and allowed by the Court in accordance with § 502 of the Code.

"*Piece Parts Business*" shall mean:

1.   Inventory.  All inventories of raw materials, work-in-process, finished goods, demonstration equipment, parts, shipping containers, packaging materials, and other accessories related thereto and other materials that are

used or held for use in connection with the manufacture, sale and repair of aircraft engine parts as of the Effective Date of the Plan.

2.      <u>Manufacturing Equipment and Tooling</u>.  All machinery, equipment and tooling used or held for use in connection with or necessary for the manufacture and repair of aircraft engines and aircraft engine parts including all manufacturing, production, maintenance, packaging, gages, testing and other machinery, tooling (including dies, jigs, patterns, molds, prototypes and the like) and equipment, spare or replacement parts, computer equipment incidental to the development, design, manufacture, testing and inspection of parts, engine test cell equipment, specialized inspection and quality control equipment, and plant equipment and the like.

3.      <u>Selected IP Assets</u>.  All IP Assets supporting and otherwise underlying all replacement parts for which Seller has obtained from the FAA Parts Manufacturer Approval ("PMA"), including replacement parts for Lycoming and TCM engines as listed on as well as engineering specimens and masters related to such parts; and all electronic as well as paper copies of documents related to the foregoing, including all documentation submitted to and correspondence with the FAA relating to such engines and replacement parts identified above, as well as engineering data, legacy data, inspection processes and the quality manual.

4.      <u>Trademarks, Trade dress and Trade Names and Domains</u>.  All Trademarks and Domains, including the "Superior" trade names, trademarks, service names, service marks, logos, brand names, and corporate names, and all applications, registrations, and renewals in connection therewith but excluding trademarks, trade names and trade dress relating to the engines in the Engine Program.

5.      <u>Other Tangible Personal Property</u>.  All other tangible personal property of Seller that is used or held for use in connection with the manufacture, repair and sale of aircraft engines and aircraft engine parts except Excluded Assets.

6.      <u>Accounts Receivable</u>.  Trade accounts receivable and all notes, bonds and other evidences of Indebtedness pursuant to which Seller shall have the right to receive payments (in each case, of any nature whatsoever, whether recorded or unrecorded) arising out of sales of products delivered by Seller and any related security arrangements and collateral securing the repayment or other satisfaction thereof, including any rights with respect to any third party collection procedures or any other Claims that have been commenced in connection therewith.

*"Excluded Assets"* shall mean cash, cash equivalents, securities, deposit and other bank accounts, Parts Manufacturing Approvals and Production Certificates that are not transferable.

*"Engine Program"* shall mean:

(i)      all Intellectual Property, know-how, designs, drawings, specifications, data and documentation supporting and otherwise underlying the FAA approved and issued type certificate and production certificate for Seller's Vantage Engine, as well as engineering specimens and masters related to the Vantage Engine;

(ii)      all Intellectual Property, know-how, designs, drawings, specifications, data and documentation supporting and otherwise underlying all of Seller's XP-Series Engines, including those experimental engines currently undergoing testing, as well as prototype, engineering specimens and masters related to such engines, including without limitation, the Model 400 Engine and related prototype(s); and

(iii)     all electronic as well as paper copies of documents related to the foregoing, including all documentation submitted to and correspondence with the FAA relating to such engines as well as engineering data, legacy data, inspection processes and the quality manual.

*"IP Assets"* shall mean:

(i)      all Intellectual Property, know-how, designs, drawings, specifications, data and documentation supporting and otherwise underlying the FAA approved and issued type certificate and production certificate for Seller's Vantage Engine, as well as engineering specimens and masters related to the Vantage Engine;

(ii)      all Intellectual Property, know-how, designs, drawings, specifications, data and documentation supporting and otherwise underlying all of Seller's XP-Series Engines, including those experimental engines currently undergoing testing, as well as prototype, engineering specimens and masters related to such engines, including without limitation, the Model 400 Engine and related prototype(s);

(iii)     all Intellectual Property, know-how, designs, drawings, specifications, data and documentation supporting and otherwise underlying all replacement parts for which Seller has obtained from the FAA Parts Manufacturer Approval ("PMA"), including replacement parts for Lycoming and TCM engines[1] as listed on Schedule 1.1(b)(iii) as well as engineering specimens and masters related to such parts; and

(iv)     all electronic as well as paper copies of documents related to the foregoing, including all documentation submitted to and correspondence with the FAA relating to such engines and replacement parts identified above, as well as engineering data, legacy data, inspection processes and the quality manual; provided that Seller shall may retain such limited production, quality and inspection data necessary to enable Seller to sell the engines and parts that remain in its inventory at the time of Closing.

*"Intellectual Property"* shall mean (a) all inventions (whether patentable or unpatentable and whether or not reduced to practice), all improvements thereto, and all patents, patent applications, and patent disclosures, together with all reissues, continuations, continuations-in-part, revisions, extensions, and reexaminations thereof, (b) all copyrightable works, all copyrights, all rights to database information, and all applications, registrations, and renewals in connection therewith, (c) all mask works and all applications, registrations, and renewals in

---

[1] To include Supplemental Type Certificates.

604403.3/SPA/20354/0102/051509

connection therewith, (d) all trade secrets and confidential business information (including ideas, research and development, know-how, formulas, compositions, manufacturing and production processes and techniques, technical data, designs, drawings, and specifications), (e) all other proprietary rights, and (f) all copies and tangible embodiments thereof (in whatever form or medium) existing in any part of the world.

**B.     Rules of Interpretation.**   Unless otherwise specified, all article, section and exhibit references in this Plan are to the respective article of, section in, or exhibit to, this Plan, as the same may be amended, waived or modified from time to time.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Plan.  Any reference in this Plan to an existing document or instrument means such document or instrument as it may have been amended, modified, or supplemented from time to time.  As contextually appropriate, each term stated in either the singular or plural shall include both the singular and the plural.  The words herein, hereof, hereto, hereunder, and others of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

**C.     Computation of Time.**   The rules of construction set forth in § 102 of the Bankruptcy Code shall apply to this Plan.  In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**II.**
**TREATMENT OF ADMINISTRATIVE CLAIMS**

As provided in § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims are not classified for purposes of voting or receiving distributions under the Plan; rather, such Claims shall be treated on the terms set forth in Article II of the Plan.

Except to the extent that the holder of an Administrative Expense Claim may otherwise agree in writing, Administrative Expense Claims which are Allowed Claims prior to the Effective Date of the Plan shall be paid in full on or before the Effective Date of the Plan.  The Distributor Agent (the Post-Confirmation Debtor, unless the Court names another party) must pay in full all Allowed Administrative Expense Claims at closing on the Closing Date and such payment shall be a condition of closing.  Administrative Expense Claims which become Allowed Claims after the Closing Date shall be paid by the Distributor Agent within ten (10) business days after the Distribution Agent is served with an order of the Bankruptcy Court allowing such fees.  The Bankruptcy Court shall retain jurisdiction to compel such payment and any action to compel such payment shall be initiated by motion of a party and be treated as a contested matter under Bankruptcy Rule 9014.  Administrative claims are estimated to total approximately $750,992.82.  This is made up of approximately $650,000 in professional fees and expenses and $100,992.82 for administrative claims allowed under 11 U.S.C. § 503(b)(9), claims for goods delivered and received within 20 days prior to the Petition Date.  This number may change if the Debtor has any unpaid expenses at the Effective Date from operations.

The deadline to file an application for allowance and payment of an administrative expense claim is 30 days after the Effective Date.  Failure to file such a request shall constitute waiver of such claim.

**III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

A summary of the classification of claims is as follows:

| Class | Description |
|-------|-------------|
| 1 | Secured Tax Claims |
| 2 | Priority Tax Claims |
| 3 | Priority Non-Tax Claims |
| 4 | AICCO, Inc. |
| 5 | Earvin Leasing Company |
| 6 | Great America Leasing Corporation |
| 7 | Tigris Vendor Finance, Inc. f/k/a US Express Leasing |
| 8 | Secured Claim of National City Commercial Capital |
| 9 | General Unsecured Creditors |
| 10 | Unsecured Claim of TAE |
| 11 | Unsecured Claim of TAG |
| 12 | Interests |

CLASS 1:  SECURED TAX CLAIMS.

Class 1 Secured Tax Claims consist of the claims of all taxing authorities, if any, whose claims are secured by assets of the estate.  The total filed proofs of claim in Class 1 are approximately $87,418.51.  However, several proofs of claim filed by taxing authorities have already been paid, and are thus objectionable.  The remaining claims are actually for 2009 taxes, which are not yet due, but certain taxing authorities have a current lien as of January 1, 2009.  The Debtor estimates that this class totals $70,617.82.

Class 1 Claims will have their liens reinstated in the same validity, priority and extent to its pre-petition lien until such claim is paid in full.  Secured Tax Claims will receive cash payments equal to 100% of their Allowed Claims when they become due.  If assets are sold to any buyer according to the Plan, the balance of any Class 1 claims, not paid prior to Closing, will be paid at Closing.

The Class 1 Claims are Unimpaired under the Plan and, accordingly, are not entitled to vote on the Plan.

For convenience of identification, the Plan describes the Allowed Secured Tax Claims in Class 1 as a single Class.  Class 1 Claims actually consist of separate subclasses, each based on the underlying property securing such Claim, and each subclass is treated hereunder as a distinct Class for treatment and distribution purposes and for all other purposes under the Bankruptcy Code.

CLASS 2:  PRIORITY TAX CLAIMS.

Class 2 Priority Tax Claims consist of any Claim entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.  The Debtor does not believe that any claims in this class exist.  However, filed proofs of claim in this Class total approximately $23,936.37, which the Debtor disputes, and objections to these claims are anticipated to be filed.

Allowed Class 2 Claimants will receive a distribution in cash on the Effective Date of the Plan from all of the remaining existing assets and Proceeds of the Sale, after payment of Administrative Claims, until paid in full.   Class 2 Claims will be paid in pari-passu with the Class 3 Claims.

The Class 2 Claims are Unimpaired under the Plan and, accordingly, are not entitled to vote on the Plan.

CLASS 3:  PRIORITY NON-TAX CLAIMS.

Class 3 Priority Non-Tax Claims consist of all Allowed Priority Claims given priority payment status pursuant to § 507(a) of the Bankruptcy Code except Administrative Claims under § 507(a)(1) and Priority Tax Claims under § 507(a)(8).  The Class 3 Claims are estimated to total $56,144.43.   These claims include all accrued vacation and other benefit pay of employees of the Debtor.

Allowed Class 3 Claimants will receive a distribution in cash on account of their Allowed Claims on the Effective Date of the Plan from all of the remaining existing assets and Proceeds of the Sale until paid in full.  Class 3 Claims will be paid in *pari-passu* with the Class 2 Claims. *Provided*, however, if a Buyer decides to continue to operate the business of the Debtor after Closing, and any employee holding an Allowed Class 3 Claim is offered employment with the Buyer and accepts such employment, the Buyer will assume the liability for such Class 3 Claim and such employee will be deemed to have waived any payment on account of their Class 3 Claim.

The Class 3 Claims are Unimpaired under the Plan and, accordingly, are not entitled to vote on the Plan.

CLASS 4:  SECURED CLAIM OF AICCO, INC.

The Class 4 Claim of AICCO, Inc. consists of the finance charges for the insurance premiums paid pursuant to Debtor's product liability insurance with several carriers for pistons only.  The collateral for this claim is any refund upon cancellation.  The Class 4 Claim was filed in the amount of $41,797.70, but through monthly post-petition payments permitted by an agreed order approved by the Court, this claim will have been completely satisfied by July 1, 2009.  Therefore, the Debtor intends to object to this claim to reduce it to the proper amount. The value of the collateral securing such Claim is equal to that amount.

The Allowed Class 4 Claim will retain its lien on the collateral and will be paid in full out of any refund due upon cancellation of the policy with the carriers; provided, however, that if the Closing of any sale occurs after July 1, 2009, the claim will have already been satisfied in full and no further treatment is required.

The Class 4 claim is Impaired under the Plan and, accordingly, is entitled to vote for or against the Plan.

CLASS 5:  SECURED CLAIM OF ERVIN LEASING COMPANY.

The Class 5 Claim consists of the secured claim of Erving Leasing Company, the collateral for which is an oil machine to clean parts  The Class 5 Claim is estimated to be

$3,959.06 and the value of the collateral securing such Claim is estimated to be equal to that amount.

The Allowed Class 5 Claim shall receive one of the following two treatments on the Effective Date, depending upon whether a Buyer chooses to take an assumption and assignment of the contract comprising this claim:  (1) return of the collateral in full satisfaction of the Claim or (2) if a Buyer elects to purchase the collateral, then this Claim shall retain its lien on the collateral in the same validity, priority and extent as it was pre-petition and the Buyer will assume all future payments on the same terms and conditions until paid in full.

The Class 5 Claim is Impaired under the Plan and is entitled to vote on the Plan unless a Buyer elects to purchase the collateral, in which case, the Claim is Unimpaired and is not entitled to vote on the Plan.

CLASS 6:  SECURED CLAIM OF GREAT AMERICAN LEASING CORPORATION.

The Class 6 Claim consists of the secured claim of Great American Leasing Corporation, the collateral for which is the Debtor's phone system.  The Class 6 Claim is estimated to be $13,524.47 and the value of the collateral securing such Claim is estimated to be equal to that amount.

The Allowed Class 6 Claim shall receive one of the following two treatments, depending upon whether any Buyer chooses to take an assumption and assignment of the contract comprising this claim:  (1) return of the collateral in full satisfaction of the Claim or (2) if a Buyer elects to purchase the collateral, then this Claim shall retain its lien on the collateral in the same validity, priority and extent as it was pre-petition and the Buyer will assume all future payments on the same terms and conditions until paid in full.

The Class 6 Claim is Impaired under the Plan and is entitled to vote on the Plan unless a Buyer elects to purchase the collateral, in which case, the Claim is Unimpaired and is not entitled to vote on the Plan.

CLASS 7: SECURED CLAIM OF TIGRIS VENDOR FINANCE, INC., F/K/A US EXPRESS LEASING.

The Class 7 Claim consists of the secured claim of Tigris Vendor Finance, Inc. f/k/a US Express Leasing, the collateral for which is all of the debtor's printers, copiers and fax machines.  The Class 7 Claim is estimated to be $67,329.40 and the value of the collateral securing such Claim is estimated to be equal to that amount.

The Allowed Class 7 Claim shall receive one of the following two treatments, depending upon whether any Buyer chooses to take an assumption and assignment of the contract comprising this claim:  (1) return of the collateral in full satisfaction of the Claim or (2) if a Buyer elects to purchase the collateral, then this Claim shall retain its lien on the collateral in the same validity, priority and extent as it was pre-petition and the Buyer will assume all future payments on the same terms and conditions until paid in full.

The Class 7 Claim is Impaired under the Plan and is entitled to vote on the Plan unless a Buyer elects to purchase the collateral, in which case, the Claim is Unimpaired and is not entitled to vote on the Plan.

<u>CLASS 8:  SECURED CLAIM OF NATIONAL CITY COMMERCIAL CAPITAL COMPANY.</u>

The Class 8 Claim consists of the secured claim of National City Commercial Capital Company, the collateral for which is a CMM parts measuring machine used for quality assurance.  The Class 8 Claim is estimated to be $123,839.19 and the value of the collateral securing such Claim is estimated to be equal to that amount.

The Allowed Class 8 Claim shall receive one of the following two treatments, depending upon whether any Buyer chooses to take an assumption and assignment of the contract comprising this claim:  (1) return of the collateral in full satisfaction of the Claim or (2) if a Buyer elects to purchase the collateral, then this Claim shall retain its lien on the collateral in the same validity, priority and extent as it was pre-petition and the Buyer will assume all future payments on the same terms and conditions until paid in full.

The Class 8 Claim is Impaired under the Plan and is entitled to vote on the Plan unless a Buyer elects to purchase the collateral, in which case, the Claim is Unimpaired and is not entitled to vote on the Plan.

<u>CLASS 9:  GENERAL UNSECURED CLAIMS.</u>

Class 9 General Unsecured Claims consist of all other Allowed Claims against the Debtor not placed in any other Class.  This class includes all trade creditors, claims based upon open purchase orders to be rejected, claims for rejected executory contracts, warranty claims, loss of warranty claims (where no actual loss has yet been identified), and injury claims subject to insurance.  The total filed claims in Class 9 are approximately $11,035,314.  However, the Debtor disputes a significant number of these claims and may, with the consultation and participation of the Committee, object to many of them if the potential savings can justify the cost of pursuing the objections.  The Debtor estimates that the total value of valid claims is no greater than $8,817,905 and could be considerably less.

After payment of the Administrative Claims, Classes 2 and 3 described above, and the Class 10 Unsecured Claim of TAE, Allowed Class 9 Claims will receive a pro-rata distribution in cash of two-thirds (2/3) of the first $3.0 million in remaining existing assets and Proceeds of the Sale.  Allowed Class 9 Claims shall also receive a pro rata distribution in cash of 20% of the remaining Proceeds of the Sale in excess of $3.0 million.

The Class 9 Claims are Impaired under the Plan and, accordingly, are entitled to vote for or against the Plan.

<u>CLASS 10:  UNSECURED CLAIM THIELERT AIRCRAFT ENGINES GmbH (TAE)</u>

Class 10 Claim consists of the unsecured claim of TAE, an affiliate of the Debtor.  TAE filed a proof of claim in the amount of $18,208,260.17.  The Committee contends that TAE's claim should either be subordinated or re-characterized as equity.

The Class 10 Claim will be Allowed in the amount of $500,000; and, after payment of the Administrative Claims, and Classes 2 and 3 described above, will receive in cash on the Effective Date the next $500,000 in existing assets and Proceeds of the Sale in full satisfaction of the claim and will be released from any and all claims or causes of action by or through the Debtor or the bankruptcy estate.

The Class 10 Claim is Impaired under the Plan and, accordingly, is entitled to vote for or against the Plan.

CLASS 11:  UNSECURED CLAIM OF THIELERT AG (TAG)

The Class 11 Claim consists of the unsecured claim of TAG, the parent company of the Debtor, who purchased the existing secured debt of the Debtor when it acquired the Debtor's stock.  TAG filed a proof of claim in the amount of $10,146,611.11 as a secured claim. However, the Debtor has filed an Adversary Proceeding to avoid the lien of TAG , asserting that it is unperfected and thus, avoidable under 11 U.S.C. § 546.  No resolution has been reached in the Adversary Proceeding.  In addition, the Committee contends that TAG's claim should either be subordinated or re-characterized as equity.

After payment of the Administrative Claims, Classes 2, 3, and 10 described above, the Class 11 Unsecured Claim of TAG will receive a distribution in cash of one-third (1/3) of the first $3.0 million in remaining existing assets and Proceeds of the Sale.  The Allowed Class 10 Claims shall also receive 80% of the remaining Proceeds of the Sale in excess of $3.0 million; provided, however, that if the Debtor cannot sell its Engine Program either through an asset sale or a stock sale, then all assets comprising the Debtor's Engine Program shall revest in the Debtor free and clear of any claims, or assigned to TAG or its designee, at its option in partial satisfaction of its claims.  In addition, if the Debtor cannot sell its Piece Parts Business through an asset sale or stock sale, then all IP Assets comprising the Piece Parts Business shall revest in the Debtor free and clear of any claims, or assigned to TAG or its designee, at its option in partial satisfaction of its claims.

The Class 11 Claim is Impaired under the Plan and, accordingly, is entitled to vote for or against the Plan.

CLASS 12:  INTERESTS IN THE DEBTOR.

The Class 12 Interests consists of 100% of equity interests of the Debtor, which is held by TAG .

It is not anticipated that there will be any remaining Proceeds to pay the Allowed Class 12 Interests.  To the extent remaining Proceeds are available, then the Class 12 Interests shall retain all Proceeds of Sale and the Debtor's Available Cash after all other classes are paid in full as provided above.

The Class 12 Interests are comprised of the 100% shareholder of the Debtor and, accordingly, is not entitled to vote for or against the Plan.

IV.
IMPLEMENTATION OF THE PLAN

Effective Date.  If the Plan is approved by the Court, an Order Confirming the Plan will be signed.  The Effective Date of the Plan shall be the date the Sale contemplated under the Plan closes.   If no assets are sold under the Plan, then the Effective Date shall be eleven (11) days after the Order confirming the Plan is entered.

Notice of the Effective Date.  The Debtor shall file and serve a Notice of Occurrence of the Effective Date to all Creditors on the last-filed matrix and on all parties requesting notice.

Vesting of Assets. Upon the Effective Date of the Plan, all Assets of the bankruptcy estate not otherwise transferred in accordance with the Plan shall vest in the Debtor. If New Equity is issued to a purchaser under the Plan, then all assets not conveyed to the holder of the New Equity will be conveyed to an entity to be owned by TAG which shall be assigned all rights and perform all of the post-confirmation duties of the Debtor.

Sale of Substantially All Assets. The Debtor will sell its Assets to the highest bidder(s) under a Sealed Bid Sales Procedure to be approved by the Court and the sale ("Sale") will be approved in the Order confirming this Plan. The terms and conditions of the sale are as follows:

*Sealed Bid Procedure*: The Sealed Bid Procedure was approved by the Bankruptcy Court on _____, 2009, and can be accessed at http://www.strasburger.com/SAPMORs or by contacting Ms. Angela J. Dunn, PLS Legal Administrative Assistant, Strasburger & Price, LLP at angela.dunn@strasburger.com or 512-499-3643. The Sealed Bid Procedure shall result in a Sale of the Assets to the Successful Bidder(s), as more fully described in the Sealed Bid Procedure.

*Assets to Be Purchased.* The assets ("Assets") to be purchased consist of all of the Debtor's assets comprising the Piece Parts Business and the Engine Program, as defined in the Plan. Subject to full payment of the Purchase Price and all other conditions in the Sealed Bid Procedure, the included Assets will be sold free and clear of all liens, claims, and encumbrances to the fullest extent allowed under § 363(f) of the Bankruptcy Code, with certain exceptions, as provided for in the Bidding Procedure.

*Excluded Assets.* Excluded Assets, as described in this Plan, shall consist of the Debtor's cash and cash equivalents, non-transferable PMAs and Chapter 5 Causes of Action.

*Sale Hearing.* A sale hearing shall be conducted as part of the Confirmation Hearing. The order approving the Sale(s) to the Successful Bidder(s) shall be the Confirmation Order. Prior to the Confirmation Hearing, the Debtor shall file a Notice of Proposed Sale to be served upon the approved Service List in the Sealed Bid Procedure. The Notice of Proposed Sale shall identify the Successful Bidder(s), the Assets proposed to be sold to each Bidder, an Allocation of the Purchase Price for each Asset, and a proposed Distribution of the Sale Proceeds under the Plan, as may be amended prior to the Confirmation Hearing.

*Closing Date.* The Closing Date shall be set by the Court as soon as practicable at the Confirmation Hearing approving the Sale to the Successful Bidder(s) pursuant to the Sealed Bidding Procedures.

Distribution of Existing Assets and Sale Proceeds. The Debtor (or the entity designated by TAG) will be the Distribution Agent and shall distribute the balance of its existing assets (e.g, cash and cash equivalents) not otherwise transferred by the Plan and Sale Proceeds to the creditors in the amounts and order established by the Plan. After the Debtor (or the entity designated by TAG) has completed winding up its affairs, the Debtor will make a supplemental distribution or distributions of any remaining cash in the same manner until all of the Debtor's available cash has been distributed.

Motion to Approve Claims Reserve. The Debtor and the Post-Confirmation Committee shall agree on the appropriate claims reserve to satisfy payment of all Claims treated under the

Plan.  If an agreement cannot be reached, then the Debtor shall file a Motion to Approve Claims Reserve, which shall govern the reserves and order further distribution requirements in addition to the distribution scheme contemplated by the Plan.

Post-Confirmation Committee.  The existing Creditors Committee may select a Post-Confirmation Committee consisting of up to 5 members having Allowed Claims in excess of $10,000 each, which will have the authority to pursue any Chapter 5 causes of action, monitor the Debtor's compliance with the Plan, and object to any claims.  Any fees and expenses of the Post-Confirmation Committee and its professionals will be deducted from the payments to the General Unsecured Creditors. The Committee will be terminated upon the completion of payments to the Class 9 General Unsecured Creditors under the Plan.

Transfer of Assets to Post-Confirmation Committee.  The Post-Confirmation Committee shall receive assignment under the Confirmation Order of all Chapter 5 Causes of Action, to be held in trust for all Class 9 General Unsecured Claims.  If the Post-Confirmation Committee chooses to create a formal trust document to govern their affairs, which is not required, they may do so and submit such document for approval by the Court.

Liquidation of All Assets Not Sold or Transferred.  The Assets not sold under the Sealed Bid Procedure or transferred to TAG under the Plan in the event no Sale occurs shall be sold through a Liquidation Process with a reputable asset liquidation company ("Liquidator").  Proceeds from the Liquidation Process shall be applied towards the distribution scheme contemplated under the Plan.  The Liquidation Process shall be conducted by the Debtor (or the entity designated by TAG) and monitored by the Post-Confirmation Committee.  If the Debtor and the Post-Confirmation Committee cannot agree on the Liquidator or the terms of the Liquidation Process, then the Debtor shall file a Motion with the Court to seek approval of the Liquidation Process on terms as are fair and reasonable to all parties-in-interest.

Application to Close Case.  As soon as practicable after the Confirmation Order, the Debtor (or the entity designated by TAG) shall file an application to close the Case.

## V.
## PROVISIONS GOVERNING DISTRIBUTION

Claims.  Claims are defined in the Plan.  The Plan is intended to deal with all Claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Bankruptcy Court pursuant to § 502(a) of the Bankruptcy Code; however, only those Claims Allowed pursuant to § 502(a) of the Bankruptcy Code will be entitled to and receive payment under the Plan.

Compliance with Plan.  Any Person, including a Creditor, which has not, within the time provided in the Plan, performed any act required in the Plan or in the Confirmation Order, shall not be entitled to participate in any distribution under the Plan.

Provisions Covering Distributions.

*Disbursement of Sales Proceeds Under the Plan.*  The Debtor shall disburse all proceeds of the Sale according to the Plan.  All costs of the Sale shall be deducted from the proceeds before any distributions under the Plan are made.

*Disbursements of Debtor's Available Cash.* Upon closing, the Debtor will pay the post-petition expenses the Debtor has incurred pursuant to its authority under §363 of the Code and the Allowed Administrative Claims. The Debtor will propose a reserve for estimated Administrative Claims which have not been allowed as of the Closing Date, estimated costs and professional fees of the Debtor to be incurred in connection with the implementation of the Plan and the resolution of pending objections to claims by the Debtor and counterclaims by the Debtor which must be resolved to effectuate the terms of the plan and the distributions to creditors. The Committee and the Debtor may agree to the amount of such reserve and to subsequent partial distributions and reserves and, if no agreement can be reached, either party may file a motion with the court proposing the amount of funds to be held in reserve.

*Method of Payment.* Payments to be made in cash pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank, such mode of payment to be at the sole discretion of the Distribution Agent.

*Delivery of Distributions.* Distributions and deliveries to holders of an Allowed Claim shall be made to the holder at the address set forth on the latest-filed proof of claim filed by such holder or at the last known address of such holder if no proof of claim is filed. If any holder's distribution is returned as undeliverable, the Disbursing Agent shall hold the distribution until notified of such holder's new address or the first anniversary of the Effective Date occurs, at which time the undelivered distribution shall revert and become the property of the Debtor and the Claim shall be discharged and forever barred.

*Time Bar to Cash Payments.* Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for re-issuance of any checks shall be made directly to the Debtor and Closing Agent by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before the later of the first anniversary of the Effective Date or ninety (90) days after the date of issuance of such check. After such date, all Claims in respect of such checks shall be discharged and forever barred.

## VI.
## DISPOSITION OF CAUSES OF ACTION

<u>Chapter 5 Causes of Action Preserved</u>. Any and all causes of action or claims which the Debtor may have that arise under Chapter 5 of the Bankruptcy Code ("Chapter 5 Causes of Action") against any third party shall be transferred to the Post-Confirmation Committee for the benefit of the General Unsecured Creditors (Class 9).

<u>Non-Chapter 5 Causes of Action Preserved</u>. Filing and prosecuting Non-Chapter 5 Causes of Action shall be at the sole discretion of the Debtor, and may be pursued to the extent any potential recovery would justify the costs and time associated with pursuing such actions.

## VII.
## EXECUTORY CONTRACTS AND LEASES

<u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>. All identified executory contracts and leases will be rejected unless specifically assumed by the Debtor and assigned to the Successful Bidder(s) under the Sale process, which will be subject to final adjustment at the Confirmation Hearing. The Debtor reserves the right to file an exhibit with the

Court prior to the Confirmation Date identifying any contract or lease to be assumed and assigned, along with any proposed cure amount, prior to confirmation of the Plan.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection or assumption and assignment pursuant to § 365 of the Bankruptcy Code, as of the Effective Date.

Bar Date for Rejection Damages.  If the rejection of an executory contract or unexpired lease gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtor, or their successors or properties, unless a proof of claim is filed and served on the Debtor and their counsel within thirty (30) days after rejection.

Claims Arising from Rejection.  All Allowed Claims arising from the rejection of an executory contract or unexpired lease shall be treated as Class 9 General Unsecured Claims, and all other Allowed Claims relating to an executory contract or unexpired lease shall have such status as they may be entitled to under the Bankruptcy Code as determined by Final Order of the Bankruptcy Court.

## VIII.
## RESOLUTION OF DISPUTED CLAIMS

Allowed Claims.  Only "Allowed Claims" will be paid by the Distribution Agent or the Debtor according to the Plan.  An Allowed Claim is any claim against the Debtor for which a proof of claim was timely and properly filed or is deemed to have been timely and properly filed because the Debtor has or hereafter does list such claim on its schedules as liquidated and not disputed or contingent.  If the Debtor or Purchaser files an objection to a proof of claim, then an Allowed Claim shall be the amount of the claim allowed by order of the Court.

The Debtor has not declared an intention to object to any or all claims scheduled as contingent or disputed.  If an objection is filed, then to the extent that such claims are unsecured claims, Proceeds of the Sale sufficient to pay the disputed claims shall be reserved and paid if and when they become Allowed Claims.  To the extent that an objection to a secured claim is filed, if any,  the Debtor shall deposit such payments as would be made if the claim were allowed in full into a claims escrow account, unless and until the claim becomes an Allowed Secured Claim.  The Committee or any party in interest may also object to any claim.

Bar Date For Objecting To Claims.  The Bar Date for objecting to claims shall be sixty (60) days after the Effective Date.

## IX.
## MODIFICATION OF DEBTOR'S PLAN

Section 1127(a) of the Bankruptcy Code permits the Debtor to amend or modify a plan at any time prior to confirmation.  Post-confirmation modifications of a plan are allowed under § 1127(b), if the proposed modification is offered before a plan has been substantially consummated or pursuant to an article of the confirmed plan authorizing the intended modification.  The Debtor reserves the right to amend or modify the Plan at any time at which such modification is permitted under the Bankruptcy Code.

In the event the Debtor proposes to modify the Plan prior to the Confirmation Order, further disclosures pertaining to the proposed modification will be required only if the Bankruptcy Court finds, after a hearing, that the pre-confirmation modifications adversely change the treatment of any creditor or equity security interest holder who has previously accepted the Plan.   If the proposed pre-confirmation modification is material and adverse, or if a post-confirmation modification is sought, the Debtor intends to supplement this Disclosure Statement as necessary to describe the changes made in the Plan and the reasons for any proposed modifications.

## X.
## PROVISIONS GOVERNING DISTRIBUTION

<u>Claims.</u>  Claims are defined in the Plan.  The Plan is intended to deal with all Claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Bankruptcy Court pursuant to § 502(a) of the Bankruptcy Code; however, only those Claims Allowed pursuant to § 502(a) of the Bankruptcy Code will be entitled to and receive payment under the Plan.

<u>Compliance with Plan.</u>  Any Person, including a Creditor, which has not, within the time provided in the Plan, performed any act required in the Plan or in the Confirmation Order, shall not be entitled to participate in any distribution under the Plan.

<u>Provisions Covering Distributions.</u>

*Method of Payment.*  Payments to be made in cash pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank, such mode of payment to be at the sole discretion of the Debtor.

*Delivery of Distributions.*  Unless otherwise specified in the Plan, the Debtor will have the sole responsibility for making the disbursements and distributions to Creditors under the provisions of the Plan.  Distributions and deliveries to holders of an Allowed Claim shall be made to the holder at the address set forth on the latest-filed proof of claim filed by such holder or at the last known address of such holder if no proof of claim is filed.  If any holder's distribution is returned as undeliverable, the Debtor shall hold the distribution until notified of such holder's new address or the first anniversary of the Effective Date occurs, at which time the undelivered distribution shall revert and become the property of the Debtor and the Claim shall be discharged and forever barred.

*Time Bar to Cash Payments.*  Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.  Requests for re-issuance of any checks shall be made directly to the Debtor by the holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before the later of the first anniversary of the Effective Date or ninety (90) days after the date of issuance of such check.  After such date, all Claims in respect of such checks shall be discharged and forever barred.

## XI.
## MODIFICATION TO THE DEBTOR' PLAN

Section 1127(a) of the Bankruptcy Code permits the Debtor to amend or modify a plan at any time prior to confirmation.  Post-confirmation modifications of a plan are allowed under §

1127(b), if the proposed modification is offered before a plan has been substantially consummated or pursuant to an article of the confirmed plan authorizing the intended modification.  The Debtor reserves the right to amend or modify the Plan at any time at which such modification is permitted under the Bankruptcy Code.

In the event the Debtor proposes to modify the Plan prior to the Confirmation Order, further disclosures pertaining to the proposed modification will be required only if the Bankruptcy Court finds, after a hearing, that the pre-confirmation modifications adversely change the treatment of any creditor or equity security interest holder who has previously accepted the Plan.  If the proposed pre-confirmation modification is material and adverse, or if a post-confirmation modification is sought, the Debtor intend to supplement this Disclosure Statement as necessary to describe the changes made in the Plan and the reasons for any proposed modifications.

## XII.
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction in the following matters after confirmation of the Plan until all payments and distributions called for under this Plan have been made:

(a)     To enable any party-in-interest to consummate any and all proceedings that it may bring to set aside liens or to recover preferences, fraudulent transfers, assets or damages to which it may be entitled under applicable bankruptcy, federal or state law;

(b)     To classify, allow or disallow claims and to direct distributions of funds under the Plan and to hear and determine all controversies pertaining thereto;

(c)     To determine and adjudicate all causes of action, controversies, disputes, arising either before or after the entry of the order for relief herein between the Debtor and any other party;

(d)     To correct any defect, cure any omission or reconcile any inconsistency in this Plan or in the order of confirmation of the Plan as may be necessary to carry out the purposes and intent of the Plan;

(e)     To modify this Plan after Confirmation of the Plan in accordance with applicable bankruptcy law;

(f)     To enforce and interpret the terms and conditions of the Plan;

(g)     To liquidate, estimate or determine the manner for such liquidation or estimation of any contingent or unliquidated claim;

(h)     Conduct the Sale hearing and enter the Sale Order, as well as hear any disputes concerning the sale process; and

(i)     To make such orders as are necessary or appropriate to carry out the provisions of the Plan.

## XIII.
## DISCHARGE

Except as otherwise provided herein, the rights afforded in this Plan shall be in exchange for and in complete satisfaction, discharge and release of all claims of any nature whatsoever, including any interest accrued thereon, against the Debtor, or any of its assets or property. Except as otherwise provided herein, on the Effective Date, in accordance with 11 U.S.C. § 1141, all such claims against the Debtor shall be satisfied, discharged, and released in full. Except as otherwise provided herein, any Creditor or interest holder shall be precluded from asserting against the Debtor or their assets or properties any other or further claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date; provided, however, that nothing contained in this Plan shall alter the legal, equitable, and contractual right of the holder of any claim specifically designated as being unimpaired in the Plan, it being intended that such rights, if any exist, are to remain unaltered by the Plan.

## XIV.
## EXCULPATION AND RELEASE

Neither the Debtor, nor its officers, directors, responsible parties, attorneys or agents shall have or incur any liability to any holder of a Claim or Interest for any act, event, or omission in connection with, or arising out of, the Bankruptcy Case, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for willful misconduct or gross negligence.

## XV.
## MISCELLANEOUS PROVISIONS

Payment of Statutory Fees. All fees payable pursuant to § 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.

Binding Effect. As of the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims, and their respective successors and assigns.

Revocation of this Plan. The Debtor reserves the right to revoke and/or withdraw this Plan prior to entry of the Confirmation Order. If the Debtor revokes and/or withdraws this Plan, or if confirmation of this Plan does not occur, then this Plan shall be deemed null and void and nothing contained herein shall be deemed (a) to constitute a waiver or release of any Claims by the Debtor, (b) to prejudice in any manner the rights of the Debtor, or (c) to constitute any omission by the Debtor.

Effectuating Documents; Further Transactions. The Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Cramdown. In the event that any class rejects the Plan, the Debtor reserves the right to modify this Plan and may seek to invoke the provisions of § 1129(b) of the Bankruptcy Code and confirm the Plan notwithstanding the rejection of the Plan by any class of Claims. In the event that confirmation is requested under § 1129(b) of the Bankruptcy Code, the Debtor reserves the right to amend or otherwise modify the Plan to eliminate distributions to holders of any Claims junior to any Class of Claims that is impaired under, and has not accepted, the Plan in accordance with § 1129(b)(2) of the Bankruptcy Code.

Governing Law, Forum Selections.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Texas.

Notices.  All notices, requests or demands in connection with this Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing, provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and sent to the following parties, addressed to:

**Debtor:**
Kent Abercrombie
621 S. Royal Lane, Ste. 100
Coppell, TX 75019-3805

**Debtor's counsel:**
Stephen Roberts
Robert P. Franke
Duane J. Brescia
STRASBURGER & PRICE, LLP
600 Congress, Suite 1600
Austin, Texas 78701
512) 499-3600 / (512) 499-3660 Fax

All notices and requests to holders of Claims and Interests shall be sent to them at the address listed on the last-filed proof of claim and if no proof of claim is filed, at the last known address.

Successors and Assigns.  The rights and obligations of any person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such person.

Severability.  Wherever possible, each provision of this Plan shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Plan shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Plan.  Furthermore, if the Bankruptcy Court will not confirm this Plan because one or more provisions hereof are determined to be prohibited or invalid under applicable law, the Debtor may seek permission of the Bankruptcy Court to amend this Plan by deleting the offending provision.

## XVI.
## CONFIRMATION OF THE DEBTOR'S PLAN, VOTING PROCEDURES, AND REQUIREMENTS FOR CONFIRMATION OF A PLAN

At the confirmation hearing, the Bankruptcy Court will determine whether the requirements of § 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  Those requirements include:

Best Interest Test and Liquidation Analysis.  Confirmation of a plan requires that, with respect to each impaired class of creditors, each holder of an allowed claim in the class has either accepted the plan or will receive under the plan property of a value, as of the Effective

Date, that is not less than the amount the holder would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

To determine if a plan is in the best interests of each class, the probable results of Chapter 7 liquidation must be compared with the results reasonably to be obtained under the Plan.  The Debtor has applied the rule of absolute priority of distributions in the Plan.  Under that rule no junior class of creditors may receive any distribution until all senior classes of creditors are paid in full and no holder of an equity interest may receive any distribution until all creditors are paid in full.

Feasibility.  In order for a plan to be confirmed, the Bankruptcy Court must determine that a further reorganization or subsequent liquidation is not likely to result following confirmation of the Plan unless such further reorganization or liquidation is contemplated by the Plan.

Acceptance by Impaired Classes.  Section 1129(a)(8) of the Bankruptcy Code generally requires that each impaired class must accept a plan by the requisite votes for confirmation to occur.  A class of impaired claims will have accepted a plan if, of the holders in the class actually voting, at least two-thirds (2/3) in amount and more than one-half (1/2) in number of allowed claims, excluding the claims of insiders, cast an affirmative vote.  A class of equity interests will have accepted a plan if the holders in the class actually voting at last two-thirds in number cast an affirmative vote.  The vote of any person or entity can be disqualified pursuant to § 1126(e) of the Bankruptcy Code.

Fair and Equitable Test  If any impaired class of claims does not accept a plan, the Bankruptcy Court may confirm a plan pursuant to its "cram down" powers under § 1129(b) of the Bankruptcy Code, if a plan "does not discriminate unfairly" and is "fair and equitable."  The Bankruptcy Court must determine at the confirmation hearing whether a plan is fair and equitable and does not discriminate unfairly against any impaired, dissenting class of claims.  A plan will not discriminate unfairly if no class receives more than it is legally entitled to receive for its claims.  The meaning of the phrase "fair and equitable" is different when applied to secured claims and unsecured claims.

With respect to a secured claim, the requirement that a plan be "fair and equitable" includes:  (1) the impaired secured creditor retains its liens to the extent of its allowed secured claim and receives deferred cash payments at least equal to the allowed amount of its claim with a present value as of the effective date of the plan at least equal to the value of its interest in the Debtor's interest in the property securing its liens, (2) if property subject to the lien of the impaired secured creditor is sold free and clear of its lien the impaired secured creditor receives a lien attaching to the Proceeds of the Sale, or (3) the impaired secured creditor realizes the "indubitable equivalent" of its claim under the plan.

If a holder of a claim which is at least in part secured makes a valid and timely election under § 1111(b)(2) of the Bankruptcy Code, its Allowed Secured Claim will be deemed equal to its Allowed Claim, regardless of whether the value of its collateral on the effective date is in fact less than its Allowed Claim.  In such a case a plan will be fair and equitable if:  (1) the secured creditor receives deferred cash payments that both equal the allowed amount of its claim and have a present value equal to the value of the claimant's interest in Debtor's interest in the collateral on the effective date and (2) the secured creditor retains a lien on its collateral securing its entire allowed claim.  A secured creditor that elects treatment under § 1111(b)

waives its right to have a portion of its claim included as an unsecured or deficiency claim for purposes of voting.

With respect to an unsecured claim, "fair and equitable" includes the requirements that either:  (1) the impaired unsecured creditor receives property of a value equal to the amount of its allowed claim or (2) the holders of claims and equity interests that are junior to the claims of the dissenting impaired unsecured creditor class will not receive any property under the plan until the claims of the dissenting impaired unsecured creditor class are paid in full.

If creditors do not vote in numbers and amounts sufficient to accept the Plan as proposed, the Debtor nevertheless will seek confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code, sometimes referred to as the "cram down" provision.

In addition to the above requirements, the Plan cannot be confirmed unless all quarterly United States Trustee fees payable under 28 U.S.C. § 1930 have been paid or unless the Plan provides for their payment on the Effective Date of the Plan.  Under the Plan, all fees due and owing will be paid on the Effective Date of the Plan.

<u>Creditors Typically Entitled to Vote</u>.  Generally, any Creditor whose Claim is Impaired under the Plan is entitled to vote if either (i) its Claim has been scheduled by the Debtor (and such Claim is not scheduled as disputed, contingent, or unliquidated), or (ii) it has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings and no objection to the claim has been filed.  Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allowed the Claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon application by the Creditor.  Such application must be heard and determined by the Bankruptcy Court at such time as specified by the Bankruptcy Court.  A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

<u>Definition of Impairment</u>.  Under § 1124 of the Bankruptcy Code, a class of Claims or Interests is "Impaired" under a Chapter 11 plan unless, with respect to each Claim or Interest of such class, the Plan:

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

<u>Classes Under Debtor's Plan</u>.  The Impaired Classes entitled to vote on the Plan are Classes 5, 6, 7, 8, 9, 10, and 11.

<u>Vote Required for Class Acceptance</u>   The Bankruptcy Code defines acceptance of a Plan by a class of Creditors or Interest holders as acceptance by holders of two-thirds (2/3) in dollar amount and a majority in number of the Claims or Interests of that class which actually cast ballots for acceptance or rejection of the Plan; i.e., acceptance takes place only if sixty-six and two-thirds percent (66-2/3%) in amount of Claims and Interests in each class and more than fifty percent (50%) of Claims or Interests voting in each class cast their ballots in favor of acceptance.

## XVII.
## CONCLUSION

Debtor respectfully submits that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, including the "best interest" and "feasibility" requirements and that it should be confirmed even in the event a class of claims does not vote for acceptance of the Plan.  The Debtor believes that the Plan is "fair and equitable" and "does not discriminate unfairly."  Additionally, the Debtor believes that the Plan has been proposed in good faith.

DATED:  May 15, 2009

Respectfully submitted,

**DEBTOR:**
**Superior Air Parts, Inc.**


  _/s/ Kent Abercrombie_
Kent Abercrombie, President

**APPROVED AS TO FORM:**

  _/s/ Duane J. Brescia_
Stephen Roberts
Texas Bar No. 17019200
Robert P. Franke
Texas Bar No. 07371200
Duane J. Brescia
Texas Bar No. 240252650
**STRASBURGER & PRICE, LLP**
600 Congress, Suite 1600
Austin, Texas 78701
Telephone:  (512) 499-3600
Facsimile:  (512) 499-3660

**COUNSEL FOR DEBTOR**