# Exhibit "A"

VIRGINIA:

## IN THE CIRCUIT COURT FOR THE COUNTY OF LOUDOUN

FILED

2009 APR -2 PM 3: 42

CIRCUIT COURT
CLERKS OFFICE
LOUDOUN COUNTY, VA.

BY_____ D C

| | |
|---|---|
| MICHAEL HENDERSON 13108 Pelfrey Lane Fairfax, VA 22033 | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil No. _a 55031_ ) |
| AERODYNE CORPORATION CRS HO1R-199K 5198 W. Military Highway Chesapeake, VA 23321 | ) ) ) ) ) |
| and | ) ) |
| WHITE HAWK AVIATION, INC. 12517 Beverly Ford Road Brandy Station, VA 22714 | ) ) ) ) |
| and | ) ) |
| A.E.R.O., INC. 3701 Highway 162 Granite City, IL 62040 | ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

COMES NOW Plaintiff Michael Henderson, by counsel, and for his claims

against Defendants Aerodyne Corporation, White Hawk Aviation, Inc., and A.E.R.O.,

Inc., respectfully states as follows:

1.     Plaintiff Michael Henderson resides at 13108 Pelfrey Lane, Fairfax,

Virginia 22033.

1

# EXHIBIT A

2.      Defendant Aerodyne Corporation ("Aerodyne") is a Virginia corporation located at CRS HO1R-199K, 5198 W. Military Highway, Chesapeake, Virginia 23321.

3.      Defendant White Hawk Aviation, Inc. ("White Hawk") is a Virginia Corporation located at 12517 Beverly Ford Road, Brandy Station, Virginia 22714.

4.      Defendant A.E.R.O., Inc. ("A.E.R.O.") is an Illinois corporation located at 3701 Highway 162, Granite City, IL 62040.

5.      Plaintiff Michael Henderson was the owner of a Cessna 172E personal aircraft (Registration N39825).  The aircraft's engine was a Continental O-300-D.

6.      Defendant Aerodyne overhauled the Continental engine for that aircraft in or around March 2005.

7.      In or around March 2005, Plaintiff requested that Defendant White Hawk perform various repairs, upgrades, and overhauls on the aircraft and the aircraft's engine in order to make the aircraft airworthy and safe.

8.      With respect to the aircraft engine, Defendant White Hawk removed the engine and then transported the engine to Defendant Aerodyne in Chesapeake, Virginia. At the request of White Hawk, Aerodyne then overhauled the engine in accordance with the directions and instructions from White Hawk.

9.      The engine was then overhauled by Aerodyne in or around March 2005.

10.     Part of the overhaul process involved replacement of the engine's exhaust valve guides.

11.     The exhaust valve guides that were incorporated with the engine were manufactured by Superior Air Parts, Inc. ("Superior").  Superior is currently a bankruptcy proceeding. *In Re Superior Air Parts, Inc.* No. 08-36705-BJH-11 (N.D Texas).

12.     One of the exhaust valve guides (the one used in the No. 2 cylinder) was defectively and negligently manufactured by Superior.

13.     Superior then supplied and sold this exhaust valve guide to Defendant A.E.R.O.

14.     A.E.R.O. then sold and supplied that exhaust valve guide to White Hawk and Aerodyne.

15.     Aerodyne then incorporated this exhaust valve guide into the engine.

16.     Aerodyne then supplied the overhauled engine with the defective exhaust valve guide to White Hawk.

17.     On or about April, 2005, White Hawk then supplied the aircraft, overhauled engine, and defective exhaust valve guide to Plaintiff Michael Henderson. On or about April 8, 2005, White Hawk invoiced Michael Henderson the sum of $17,984.90, which included its charges for the overhaul and parts used in the overhaul. This included the charge for the defective exhaust valve guide.

18.     Plaintiff Michael Henderson paid to White Hawk the sum of $17,984.90.

19.     The defect in the exhaust valve guide was present when it left the place of manufacture, and the exhaust valve guide was not altered or modified from the time that it left Superior until the time it reached the Plaintiff.

20.     The overhaul of the engine was negligently performed.  Among other acts of negligence, the exhaust valve in the No. 2 cylinder was made to an incorrect specification.  This defect created excessive length on the rocker box side of the guide. This caused the guide to make contact with the spring retainer.  The shoulder which limits its placement into the cylinder was manufactured in an incorrect position leave too

3

much length of the guide protruding beyond the cylinder casting. This should have been discernible to those involved in the overhaul process. The engine should not have been approved for flight in such a condition. This protrusion creates a dangerous condition in that it will lead to failure of the rocker arm in the cylinder from excessive bending stress. Rocker arm failure will lead to catastrophic engine failure in flight.

21.    After receipt of the aircraft following the above-referenced engine overhaul, Plaintiff Michael Henderson flew the engine sparingly.

22.    On May 23, 2007, Michael Henderson took off in his Cessna 172E from the Leesburg Municipal Airport. The weather conditions were clear and calm. Shortly after takeoff, the aircraft suffered a catastrophic engine failure. The inflight engine failure was caused by failure of the rocker arm in the No. 2 cylinder. Plaintiff Michael Henderson declared a flight emergency to Air Traffic Control and was forced to attempt an emergency landing in an open field in Loudoun County, Virginia.

23.    The mishap occurred after only 34.8 hours of flight time since the engine overhauled.

24.    In the course of attempting to land the aircraft in the field, the aircraft, still with substantial ground speed, struck a ditch in the field, causing the nose gear to collapse and the aircraft to be propelled hard into the ground at a high rate of speed.

25.    In the course of this crash landing, Plaintiff was severely injured, and the aircraft suffered substantial damage. The estimate for repair is $52,474.

26.    As a result of the mishap, Plaintiff suffered serious injuries to his body, neck, knees, and back; has suffered and continues to suffer substantial pain, mental anguish, and inconvenience; has incurred and continues to incur substantial medical and

4

rehabilitation expenses; has incurred a loss of income and impairment of earning capacity; has suffered property damage and loss of use of his aircraft; has suffered a permanent injury; and has otherwise been injured and damaged.

## COUNT I
### (Breach of Warranty – Article 2)

27.     Plaintiff incorporates and re-alleges herein paragraphs 1-26.

28.     The exhaust valve guide in the No. 2 cylinder was a "good" within the meaning of the Virginia Uniform Commercial Code (Va. Code 8.2-101, *et seq.*).

29.     Defendants Aerodyne, White Hawk, and A.E.R.O. were each a "seller" of that exhaust valve guide and each such Defendant was a "merchant" because they each dealt with engine parts, including exhaust valve guides, and by their occupations and trade held themselves out as having knowledge or skill peculiar to engine parts, including exhaust valve guides.

30.     Plaintiff was a person each defendant might have reasonably expected to use, consume, or be affected by the exhaust valve guide.

31.     Defendants each and separately warranted that the exhaust valve guide was merchantable within the meaning of Va. Code § 8.2-314.

32.     Defendants Aerodyne, White Hawk, and A.E.R.O. breached the aforesaid warranty of merchantability in that the exhaust valve guide would not pass without objection in the trade, was not fit for the ordinary purpose for which such goods are used, and/or varied from the expected and ordinary size of that part.

33.     Each Defendant was in the chain of distribution for the exhaust valve guide.

34.    As a direct and proximate result of this breach, Plaintiff was injured and damaged as previously alleged herein.

## COUNT II
### (Breach of Non-Statutory Warranties)

35.    Plaintiff incorporates and re-alleges herein paragraphs 1-34.

36.    Defendants Aerodyne, White Hawk, and A.E.R.O. implied, warranted, and represented that the exhaust valve guide was merchantable and fit for the particular purpose for which it was intended.

37.    Defendants breached said warranties in that the exhaust valve guide was neither merchantable nor fit for its particular purpose.

38.    As a direct proximate result of said breaches, Plaintiff was injured and damaged as previously alleged herein.

## COUNT III
### (Negligence – Aerodyne)

39.    Plaintiff incorporates and re-alleges herein paragraphs 1-38.

40.    Aerodyne, thought its agents and employees acting within the scope of their employment, negligently overhauled the engine.  Said negligence included:

    a.  installing an exhaust valve guide in the No. 2 cylinder which was too long;

    b.  failing to detect the exhaust valve guide anomaly;

    c.  failing to conduct appropriate tests, including a deflated (dry tappet) clearance, to confirm proper installation of the exhaust valve guide;

    d.  failing to warn Plaintiff of the dangerous nature of the exhaust valve guide; and

6

e.  otherwise failing to exercise ordinary and reasonable care in the
overhaul of the engine.

## COUNT IV
### (Breach of Warranty – Aerodyne)

41.    Plaintiff incorporates and re-alleges herein paragraphs 1-40.

42.    Defendant Aerodyne impliedly warranted and represented that its overhaul
of the engine was done in a workman-like manner and that the overhauled engine was
safe, free from material defects, and that the overhaul left the aircraft in an airworthy
condition.

43.    Defendant Aerodyne breached said warranty in that its overhaul of the
engine was not done in a workman-like manner, the engine was not safe following the
overhaul, the engine was not free from material defects, and the overhaul did not leave
the aircraft in an airworthy condition.

44.    As a direct and proximate result of said breaches, Plaintiff suffered the
injuries and damages as previously alleged herein.

## COUNT V
### (Negligence – White Hawk)

45.    Plaintiff incorporates and re-alleges herein paragraphs 1-44.

46.    The overhauling of an aircraft engine implicates the health and safety of
the pilot and passengers that use the aircraft into which that overhauled engine is
installed.

47.    Plaintiff entrusted Defendant White Hawk to maintain, upgrade, inspect,
repair, overhaul, and make airworthy and safe his Cessna 172E.

7

48.     Defendant White Hawk took the responsibility to maintain, upgrade, inspect, repair, overhaul, and make airworthy and safe the Cessna 172E.

49.     Defendant White Hawk also undertook the responsibility to supervise, direct, and monitor the overhaul of the engine to ensure to Plaintiff that the overhaul left the engine in a safe and airworthy condition.

50.     Following receipt of the overhauled engine from Aerodyne and re-installation in the aircraft, Defendant White Hawk knew, or should have known, that the engine had not been overhauled in accordance with generally accepted standards and that the engine was not in an airworthy condition.

51.     Defendant White Hawk was negligent in that it:

    a.  failed to properly inspect and test the engine prior to informing Plaintiff that the aircraft was airworthy;

    b.  knew, or should have known, that the overhaul had not been conducted in accordance with generally accepted aviation practices; and

    c.  failed to warn Plaintiff that the engine was not airworthy.

52.     As a direct and proximate result of this breach, Plaintiff was injured and damaged as alleged herein.

## COUNT VI
### (Breach of Warranty – White Hawk)

53.     Plaintiff incorporates and re-alleges herein paragraphs 1-52.

54.     Defendant White Hawk recommended and selected Defendant Aerodyne for the overhaul of the engine and implied, represented, and warranted that the work of Defendant Aerodyne would be done in accordance with the generally accepted standards in the industry.

8

55.     As previously alleged, the overhaul work of Aerodyne was done in accordance with generally accepted standards in the industry.

56.     Defendant White Hawk breached said warranty in that the overhaul of the engine was not done in a safe manner, was not done in a workman-like manner, was not free from defect in workmanship, and did not leave the engine in a safe and airworthy condition.

57.     As a direct and proximate result of this breach, Plaintiff was injured and damaged as previously alleged herein.

WHEREFORE Plaintiff Michael Henderson demands judgment against Defendants Aerodyne Corporation, White Hawk Aviation, Inc., and A.E.R.O., Inc., jointly and severally, in the amount of ONE MILLION DOLLARS ($1,000,000.00), plus costs and interest.

                                        MICHAEL HENDERSON
                                        By His Counsel


LAW OFFICES OF RANDELL C. OGG


_____
Randell C. Ogg, Esq. (VBN 22660)
Law Offices of Randell C. Ogg
1150 Connecticut Avenue N.W., 9th Floor
Washington, DC 20036-4192
(202) 862-4323
Fax (202) 828-4130
rogg@bode.com
*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues triable by jury by the Constitution of the Commonwealth of Virginia.

Randell C. Ogg