Stephen Roberts
Texas Bar No. 17019200
Robert P. Franke
Texas Bar No. 07371200
Duane J. Brescia
Texas Bar No. 240252650
**STRASBURGER & PRICE, LLP**
600 Congress, Suite 1600
Austin, Texas 78701
(512) 499-3600 / (512) 499-3660 Fax

**ATTORNEYS FOR DEBTOR SUPERIOR AIR PARTS, INC.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 08-36705** |
| | § | |
| **SUPERIOR AIR PARTS, INC.,** | § | **Chapter 11** |
| | § | |
| **Debtor.** | § | |
| | § | |

**DEBTOR'S MOTION TO APPROVE BID PROCEDURES FOR SALE
OF EQUITY OR ASSETS PURSUANT TO PLAN OF REORGANIZATION**

***AN EXPEDITED HEARING WILL BE REQUESTED FOR JULY 6, 2009 AT 4:00 P.M.***

Superior Air Parts, Inc., debtor and debtor-in-possession ("**Debtor**" or

"**Superior**") in the above-captioned chapter 11 case (the "Case"), hereby moves (the

"**Motion**") that this Court enter an order pursuant to 11 U.S.C. §§ 105, 363, and 365

approving the attached Bid Procedures  (the "**Bid Procedures**") relating to a sale of

substantially all of its assets (the "**Superior Assets**") free and clear of liens, scheduling a

hearing to consider that sale and related relief.  In support of this Motion, the Debtor

respectfully represents as follows:

## I.
## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This matter concerns the administration of this bankruptcy estate; accordingly, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief requested herein are 11 U.S.C. §§ 105, 363, and 365 and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## II.
## BACKGROUND

2.      On December 31, 2008, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") with this Court.

3.      The Debtor continues to operate and to manage its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases pursuant to section 1104 of the Bankruptcy Code.  An official committee of unsecured creditors was appointed in this case on or about January 29, 2009.

4.      Superior is a Texas corporation with its offices and operating facilities located in Coppell, Dallas County, Texas.  It was founded in 1967 in order to supply the United States Air Force and commercial customers with replacement parts for piston powered aircraft engines.  Superior is one of the largest suppliers of parts under Federal Aviation Administration's ("**FAA**") Parts Manufacturer Approval ("**PMA**") regulations for piston engines.  It provides Superior-brand parts for engines created by two primary original equipment manufacturers ("**OEMs**"), the Continental division of Teledyne, Inc.

and the Lycoming division of Textron Inc.  Its customers are companies that perform maintenance and overhaul work in the general aviation industry.  Superior is also an OEM for the 180-horsepower Vantage Engine and owner-built XM-360 engines for various aircraft companies.  For a complete overview of the Debtor's business and the events of the bankruptcy case leading up to the Plan, please refer to the Disclosure Statement dated June 23, 2009, filed in the Bankruptcy Court.

5.     On or about June 23, 2009, the Debtor filed is Amended Plan of Reorganization ("**Plan**") and Amended Disclosure Statement ("**Disclsoure Statement**"). The Plan provides in general for the reorganization of Superior and the issuance of new shares in the Reorganized Debtor to Brantly International, Inc. ("**Brantly**").

6.     Under the Brantly offer, Brantly intends to generally continue selling all of its existing parts, cylinder assemblies and engine lines.  The Brantly offer is subject to higher and better offers and Brantly has agreed to serve as the "stalking horse" under these Bid procedures.  As stated in the Plan and Disclosure Statement, the Debtor will offer for sale two distinct asset pools:  (1) the Piece Parts Business and (2) the Vantage Engine Program (as defined in the Plan).  Under the Bid Procedures, any Bidder may bid for the stock of the Reorganized Debtor and if selected, be substituted for the current stalking horse bidder, Brantly, in the Plan. However, as a part of such Bid, Bidders may exclude either the Piece Parts Business or the Vantage Engine Program, in which case such asset will be conveyed to the Creditor's Trust defined in the Plan for later sale.  Bidders may also bid to purchase either the Vantage Engine Program or the Piece Parts Business, or both, on an asset purchase basis.

### III.
### RELIEF REQUESTED

7.      By this Motion, pursuant to sections 105, 363, and 365 of the Bankruptcy

Code and Bankruptcy Rules 2002, the Debtor seeks an order that:

a)      Authorizes and schedules a Bid Procedure, in a form substantially similar to the form attached hereto as *Exhibit A*, to be completed on or before the Confirmation Date of the Plan, for the sale of all or a portion of the Superior Assets (as defined herein and the Plan) free and clear of all liens, claims, encumbrances, and interests (the "**Sale**");

b)      Approves Brantly International, Inc.  as a "Stalking Horse" and "Qualified Bidder" and the sale to Brantly under the Plan as a "Qualified Bid";

c)      Establishes a date, three (3) days prior to the Auction Date, 2009, for qualified over bids to be received by the Debtor (the "**Bid Deadline**");

d)      Authorizes and schedules the Auction for a date, one week prior to the Confirmation hearing;

e)      Establishes conditions to select the winning bid(s) in consultation with the Committee and TAG, as described in the Plan.  The Confirmation Order shall be the order approving the sale and all related relief.

## A.      Stalking Horse Bid by Brantly International, Inc.

8.      The Brantly stalking horse offer under the Plan is for 100% of the shares

of the Reorganized debtor for a purchase price of $7.0 million, subject to certain

adjustments for any change in the value of the Debtor's inventory, accounts receivable

and working capital.  Brantly will also assume all outstanding purchase orders provided

that the vendors agree to delay delivery for up to 18 months in some instances.  Brantly

will also assume the Debtor's obligations under its insurance liability polices and honor

all warranty claims arising after the Effective Date of the Plan.  Other executory

contracts, including Debtor's real property lease is subject to negotiation and possible assumption and assignment.

9.      In order to serve as the stalking horse for the Bid Procedures, Brantly has requested an Expense Reimbursement up to $350,000 to be approved by the Court. The offer also contains an initial minimum overbid of another $150,000, which brings the total minimum overbid price to $7.5 million.

**B.      Proposed Bid Procedures**

10.      The Debtor believes that the Bid Procedure is necessary to generate the highest and/or best offer for the Superior Assets.  If the proposed Bid Procedures are approved, the Debtor will solicit competing bids for the Superior Assets.   The Bid Procedures describe, among other things: (a) the assets available for sale, (b) the manner in which bidders and bids become "qualified," (c) the coordination of diligence efforts among bidders and the Debtor, (d) the receipt, negotiation, and qualification of bids received, and (e) the selection and approval of any ultimately successful bidders.

11.      The Bid Procedures are designed to be consistent with the Debtor's competing needs to expedite the sale process and to promote participation and active bidding.

12.      The Superior Assets to be sold are:

"***Piece Parts Business***" shall mean:

1.      Inventory.  All inventories of raw materials, work-in-process, finished goods, demonstration equipment, parts, shipping containers, packaging materials, and other accessories related thereto and other materials that are used or held for use in connection with the manufacture, sale and repair of aircraft engine parts as of the Effective Date of the Plan.

2.      Manufacturing Equipment and Tooling.  All machinery, equipment and tooling used or held for use in connection with or

necessary for the manufacture and repair of aircraft engines and aircraft engine parts including all manufacturing, production, maintenance, packaging, gages, testing and other machinery, tooling (including dies, jigs, patterns, molds, prototypes and the like) and equipment, spare or replacement parts, computer equipment incidental to the development, design, manufacture, testing and inspection of parts, engine test cell equipment, specialized inspection and quality control equipment, and plant equipment and the like.

3.     Selected IP Assets.  All IP Assets supporting and otherwise underlying all replacement parts for which Seller has obtained from the FAA Parts Manufacturer Approval ("PMA"), including replacement parts for Lycoming and TCM engines as listed on as well as engineering specimens and masters related to such parts; and all electronic as well as paper copies of documents related to the foregoing, including all documentation submitted to and correspondence with the FAA relating to such engines and replacement parts identified above, as well as engineering data, legacy data, inspection processes and the quality manual.

4.     Trademarks, Trade dress and Trade Names and Domains. All Trademarks and Domains, including the "Superior" trade names, trademarks, service names, service marks, logos, brand names, and corporate names, and all applications, registrations, and renewals in connection therewith but excluding trademarks, trade names and trade dress relating to the engines in the Engine Program.

5.     Other Tangible Personal Property.   All other tangible personal property of Seller that is used or held for use in connection with the manufacture, repair and sale of aircraft engines and aircraft engine parts except Excluded Assets.

6.     Accounts Receivable.  Trade accounts receivable and all notes, bonds and other evidences of Indebtedness pursuant to which Seller shall have the right to receive payments (in each case, of any nature whatsoever, whether recorded or unrecorded) arising out of sales of products delivered by Seller and any related security arrangements and collateral securing the repayment or other satisfaction thereof, including any rights with respect to any third party collection procedures or any other Claims that have been commenced in connection therewith.

7.     Experimental Engines.   Those experimental engines currently undergoing testing, as well as prototype, engineering specimens and masters related to such engines, including without

limitation, the Model 400 Engine and related prototype(s).   All Intellectual Property, know-how, designs, drawings, specifications, data and documentation supporting and otherwise underlying all of Seller's XP-Series Engines;

**(ii)**   ***Vantage Engine Program:***

1.   All existing inventory of "SV" parts for the Vantage O-360 and IO-360 Engine (the "Vantage Engines"),

2.   All documentation from Vantage Engines already shipped or sold to any customer for the purpose of use, test or evaluation, and all intellectual property, components and parts related to the design, development, testing, and FAA approval of the Vantage Engines, FAA Type Certificate No. E00001SC, (and related approvals Transport Canada Type Certificate IE-58, European Aviation Safety Agency Type Certificate EASA.(IM).E.024, and any other certifications) including but not limited to, drawings, research, all test reports and data, engineering change requests, engineering change notices, build sheets, bill of materials, (including current and historical bill of materials, all assembly and test instructions and all continued airworthiness documentation), parts catalog and supporting data, overhaul manual and supporting data, operator and maintenance manual and supporting data, installation manual and supporting data, service letters and service bulletins (including all quality documentation, all product integrity team meeting minutes and documentation, all warranty claims and/or customer feedback, trademarks and logos, and all marketing material, including market studies, photographs, artwork, brochures, models and fliers, all sales information, customer inquiries and anything else related to the Vantage Engines..

13.   The assets specifically <u>excluded</u> from Sale in the event of an asset purcahse are cash, cash equivalents, securities, deposit and other bank accounts, Parts Manufacturing Approvals and Production Certificates that are not transferable.

14.   This section summarizes key provisions of the Bid Procedure but is qualified in its entirety by reference to the Bid Procedure[1] attached hereto as *Exhibit A:*

a)   <u>Bid Deadline</u>.   The deadline for submitting bids by a Qualified Bidder (as defined below) shall be one week prior to the Auction Date at 4:00 p.m. (CDT) (the "**Bid Deadline**").   Prior to the Bid Deadline, a Qualified Bidder that wants to make an offer,

---

[1] Undefined capitalized terms in this section shall have the meaning ascribed to them in the Bid Procedure.

solicitation or proposal (a "**Bid**") shall deliver sealed written copies of its bid via hand delivery, electronic mail or facsimile to:

(i)   Debtor, at Superior Air Parts, Inc., 621 South Royal Lane, Suite 100, Coppell, Texas 75019, Attn: Mr. Kent Abercrombie, Fax: 972-829-4600, E-mail: kabercrombie@superiorairparts.com ;

(ii)  Debtor's Counsel, Strasburger & Price, LLP, Attn: Stephen A. Roberts, 600 Congress, Suite 1600, Austin, Texas 78701; Fax: 512-536-5723, E-mail: stephen.roberts@strasburger.com;

(iii) Counsel for TAG, Chester Salomon, Becker, Glynn, Melamed & Muffly LLP, 299 Park Avenue, New York, N.Y. 10171; FAX: 212-888-0255; E-mail: CSalomon@beckerglynn.com; and

(iv)  Counsel to the Official Committee of Unsecured Creditors (the "**Committee**") David Parham, Baker & McKenzie LLP, 2001 Ross Ave., Suite 2300, Dallas, TX 75201; FAX: 214-978-3099; E-mail: David.W.Parham@BAKERNET.com,

(v)   Counsel for Brantly, Mr. Matthew S. Okin, Okin & Adams, LLP, 1113 Vine Street, Suite 201, Houston, TX  77002, Fax: (713) 236-0822, mokin@okinadams.com.

not later than the Bid Deadline.  A Bid proposal received after the Bid Deadline shall not constitute a Qualified Bid.

b)   Stalking Horse Bidder.  The Debtor has negotiated with Brantly, who will serve as the stalking-horse bidder for the purchase of 100% of the stock of the reorganized Debtor for a purchase price of $7.0 million subject to adjustments (the "**Stalking Horse Bid**"). The Stalking Horse Bid is a Qualified Bid for all purposes herein. All terms and conditions of the Stalking Horse Bid are more fully described in the Plan and Disclosure Statement and potential Bidders are urged to review the Plan and Disclsoure Statement in their entirety.

c)   Qualified Bidder.  A bidder shall be a Qualified Bidder if it timely submits a Qualified Bid along with a Good Faith Deposit (as defined below) and the Debtor, in its discretion, determines such bidder is reasonably likely to submit a bona fide offer.

d)   Qualified Bid.  A qualified bid is a bid timely submitted in accordance with the Bid Requirements.

e)     <u>Bid Requirements</u>.   To be eligible to participate in the Bid Procedure, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtor to satisfy each of the following conditions:

(i)     <u>Offer</u>.   A Bid must (a) identify whether the Bid is for the Superior Stock, the Piece Parts Business or Vantage Engine Program, or a combination thereof, (b) identify the entity or entities bidding, (c) if the bid is for assets, describe whether the bid is for the Piece Parts Business, Vantage Engine Program or both (d) if the bid is for the stock in the Reorganized Debtor, disclose any assets to be excluded and conveyed to the Creditor's Trust, (e) state the proposed purchase price and other consideration to be paid, (f) in the event of a bid for the assets, describe any allocation of the purchase price and other consideration among the respective Superior Asset(s) that the bidder will insist upon (in the absence of such Superior may effect its own allocation), and (g) identify any executory contracts and unexpired leases to be assumed and assigned or rejected. A bid must be a "firm offer" and not contain any contingencies to the validity, effectiveness, or binding nature, including, without limitation, contingencies for financing, due diligence, or inspection.   The bid must be for cash and other consideration as set forth below.

(ii)    <u>Good-Faith Deposit</u>:   Each Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of cash or in other form of immediately available U.S. funds, in an amount equal to to 10% of the cash consideration of any Bid.   The Good Faith Deposit shall be deposited in a segregated interest bearing "Debtor-in-Possession" account of Debtor at J.P. Morgan Chase (the "Deposit Account").   Wire instructions will be made available to such account upon request.

(iii)   <u>Irrevocable</u>:   Each Bid must be irrevocable until five (5) business days after the consummation or closing of the Sale approved by this Court in a final, non-appealable order.

(iv)    <u>Ability to Close</u>:   Each Bid must be accompanied by evidence reasonably satisfactory to the Debtor, TAG, and the Committee demonstrating the Bidder's financial ability to close an asset purchase or stock purchase, as the case may be, and in the event of a stock purchase demonstrate the Plan is financially feasible and not likely to be followed by a need for further financial reorganization.

(v)   <u>No Fees payable to Qualified Bidder</u>:  A Bid may not request or entitle the Qualified Bidder to any fee, expense reimbursement, or similar type of payment.  Further, by submitting a Bid, a Bidder shall be deemed to waive its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code or in any way related to the submission of its Bid or the Bid Procedures.

(vi)  <u>Liabilities Assumed</u>.  A Bid for stock of the Reorganized Debtor must describe the liabilities to be assumed and the proposed/estimated amount of such liabilities.  To the extent a bidder has obtained releases of any of the Debtor's liabilities should they become a successful purchaser, written evidence of releases or contingent releases by the creditor must be furnished in order for such to be considered.

(vii)  <u>Executory Contracts to be Assumed and Assigned</u>.  A Bid must contain a list of all executory contracts of the Debtor that the Bidder requests the Debtor to assume and assign to the Bidder and the proposed Cure Amount, if any.  All Cure Amounts must be paid in full at Closing unless any such non-debtor party shall agree to lesser treatment.

(viii)  <u>Minimum Overbid</u>.  The aggregate proposed purchase price for the stock of the Reorganized Debtor must exceed the sum of (i) $7.0 million (the "Cash Consideration", as defined by the Plan), subject to no greater working capital adjustments to the purchase price than in the Stalking Horse Bid; plus (ii) $150,000.00 (initial overbid amount), plus (iii) $350,000 Expense Reimbursement, as defined below.

(ix)  <u>Transfer Restriction Agreement</u>.  If any Bidder chooses to bid solely on the Piece Parts Business, then such Bid shall state that the Bidder agrees to be bound by the terms and conditions of the Transfer Restriction Agreement attached hereto as *Attachment 1.*

(x)   <u>Documentation</u>.  If the Bid is for Superior Stock, the Bidder must submit a copy of the Plan, redlined to reflect any changes to the Plan, and evidence of any releases of claims which the bidder wishes to be considered as additional consideration. If the Bid is for substantially all of the assets of the Debtor, the Bidder must submit a copy of the Plan to reflect the transfer of assets to the Bidder rather than the issuance of new shares and identify the assets the Bidder is not purchasing.  Any asset purchaser must exclude all Parts

Manufacturing Authorizations and Production Certificates issued by the Federal Aviation Administration.  If the Bid is for less than substantially all of the assets, the offer must be an unconditional offer to purchase the assets, AS IS, without representations or warranties.

(xi)  <u>Mandatory markup of certain Plan terms</u>.  The markup of the Plan under a stock purchase must address the following items in the Plan:  (i) assumption of all outstanding purchase orders, (ii) assumption of all insurance obligations under current policies, (iii) treatment regarding assumption or rejection of warranties, provided that warranties have been or are timely made, (iv) treatment regarding Debtor's lease of non-residential real property with Texas Duggan Limited Partnership; (v) identification of any Purchase Price Adjustment, as defined by the Plan, (vi) any other consideration offered.

(xii)  <u>Additional Conditions</u>.  Prior to submitting a Qualified Bid, Bidders are urged to check with the Court's docket or Debtor's counsel to determine if any Additional Conditions exist..

f)  <u>Bid Assessment Criteria</u>.  The determination of which Qualified Bid constitutes a Winning Bid(s) shall take into account any factor that the Debtor, TAG and the Committee reasonably deem relevant to the value of the Qualified Bid to the estate, including, among other things, the following, which may govern, but not control:  (a) the amount and nature of the consideration; (b) the proposed assumption of any liabilities, if any; (c) the ability of the Qualified Bidder to close the proposed transaction; (d) the proposed closing date and the likelihood, extent, and impact of any potential delay in closing; (e) any purchase-price adjustments; (f) the impact of the contemplated transaction on any actual or potential litigation; (g) and the net after-tax consideration to be received by the Debtor (collectively, the "**Bid Assessment Criteria**").

g)  <u>Bid Selection</u>.  Following expiration of the Bid Deadline, the Debtor will review all Qualified Bids and determine which Qualified Bid(s) represents the highest and/or best offer for the Superior Assets (the "**Bid Selection Process**").   No later than one day after the Bid Deadline, at 4:00 P.M. (CDT), the Debtor will notify all Qualified Bidders of the highest, best, and/or otherwise financially superior Qualified Bid or Bids, as determined by the Debtor, the Committee and TAG (the "**Baseline Bid**") and will notify such parties of such time and place of the Auction.

h) <u>Auction</u>. If more than one Qualified Bid is received, the Debtor will conduct the Auction one week prior to the hearing on confirmation of the Debtor's Plan, 2009, at 9:00 A.M. (CDT), or such other time and location as may be designated by the Debtor, to determine which Qualified Bid is the highest and/or best offer for the purchase of the Superior Assets. Unless otherwise stated, the Auction will take place in the offices of Strasburger & Price, LLP, 901 Main Street, Suite 4400, Dallas, Texas 75202-3794. Unless otherwise announced by the Debtor at the commencement of the Auction, the following procedures shall govern the Auction

i) <u>Debtor shall conduct the Auction</u>. The Debtor and its professionals shall direct and preside over the Auction. At the start of the Auction(s), the Debtor shall describe the terms of the Baseline Bid and open the Auction for higher and/or better Bids. All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, with all material terms of each Bid fully disclosed to all other Qualified Bidders. The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

j) <u>Participation at the Auction</u>. Only a Qualified Bidder is eligible to participate at the Auction. Only the authorized representatives of each Qualified Bidder shall be permitted to attend, along with the Debtor, the Committee, TAG and their respective representatives.

k) <u>Overbids</u>. Bidding shall start with the lowest Qualified Bid, as determined by the Debtor, TAG and the Committee, and continue with each successive higher Qualified Bid. During the Auction, bidding shall begin with the Baseline Bid and subsequently continue in minimum increments of at least $100,000 in cash, or such higher amount as may be determined by the Debtor during the Auction. Other than as set forth herein, the Debtor may conduct the Auction in the manner it determines will result in the highest, best, and/or otherwise financially superior offer for the Superior Assets.

l) <u>Additional Procedures</u>. In its reasonable discretion and after consultation with all Qualified Bidders, the Committee and TAG, the Debtor may adopt rules for the Auction(s) at or prior to the Auction(s) that, in its reasonable discretion, will better promote the goals of the Auction(s), will result in the highest, best, and/or otherwise financially superior offer, and that are not inconsistent with any of the provisions of the Bid Procedures Order. All such rules will provide that all bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be

entitled to be present for all bidding with the understanding that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

m)    <u>Closing the Auction</u>:  Upon conclusion of the bidding, the Auction(s) shall be closed, and the Debtor, Committee and TAG shall (a) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the Sale process, including those factors affecting the speed and certainty of consummating the Sale, (b) identify the highest, best, and/or otherwise financially superior offer (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest, best, and/or otherwise financially superior offer will provide the greatest amount of net value to the Debtor, (c) identify the next highest or otherwise best offer after the Successful Bid (the "Back-Up Bid") and advise the entity submitting such Back-up Bid, provided, however, that no Qualified Bidder is required to be a Back-Up Bidder, and (d) announce to the participants the results of the Auction.

n)    <u>Notice</u>.  Immediately after closing of the Auction(s), Debtor shall file and serve a notice to all Notice Parties identifying the Successful Bid and Successful Back-Up Bid, for which approval will be sought at Confirmation..

o)    <u>Rejection of Any Bid</u>.  The Debtor reserves the right to reject, at any time before the Sale Hearing, any Bid or Qualified Bid that the Debtor determines is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or these Sealed Bid Procedures, or (iii) contrary to the best interests of the Debtor, its estate, and the creditors thereof.

p)    IF THE DEBTOR DOES NOT RECEIVE A QUALIFIED BID BY THE BID DEADLINE, THE AUCTION WILL NOT BE HELD, AND THE DEBTOR WILL PROCEED AT CONFIRMATION TO ASK THE BANKRUPTCY COURT TO APPROVE THE SALE OF THE SUPERIOR ASSETS TO BRANTLY UNDER THE PLAN.

**F.    Sale to Be Approved in Confirmation Order.**

15.    The Debtor will seek approval of the Successful Bid(s) and Successful Back-Up Bid(s) at the Confirmation Hearing on Debtor's Plan.  Any Qualified Bidder whose Qualified Bid is finally approved by the Bankruptcy Court and authorized to be consummated by the Debtor shall be referred to herein as a "Buyer."  The Order

Confirming Debtor's Plan shall be the order approving the sale and all related relief.   All objections to the Sale(s) shall be filed as an objection to Confirmation of the Debtor's Plan.

## G.   Brantly Expense Reimbursement

16.   If Brantly is not approved by the Bankruptcy Court by reason of the acceptance of an overbid for the equity in or assets of the Debtor in an alternative transaction and such alternative transaction closes or becomes effective, (a) the Debtor shall arrange for the immediate return of the deposit in to Brantly and (b) Brantly will be entitled to receive a reimbursement of attorneys fees and expenses incurred by Brantly in connection with this Bankruptcy Case up to Three Hundred Fifty Thousand Dollars ($350,000.00) (the "**Expense Reimbursement**"). Such Expense Reimbursement shall be paid by the Debtor in cash payable within five Business Days after Brantly submits an itemization of such expenses to the Debtor and the Committee unless either the Committee or the Debtor objects in which case only the undisputed portion will be timely paid and Brantly may seek court approval for the payment of any disputed portion.

**IV.**
**BASIS FOR REQUESTED RELIEF**

17.   <u>Debtor's Justification for Bid Procedure</u>.  The Bid Procedures are in the best interests of the Debtor's estate because they will promote active bidding from seriously interested parties and will identify the best and/or highest offer(s) for the Superior Assets.  The proposed Bid Procedures will allow the Debtor to conduct the Sale in a controlled and fair fashion, which will encourage participation by financially capable bidders who demonstrate the ability to close a transaction.  The Debtor believes that the Bid Procedures are:  (a) sufficient to encourage bidding for the Superior Assets;

(b) consistent with other procedures previously approved by courts; and (c) appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, considering the exigencies of this case.

18.    In this particular case, a stalking horse Bid Procedure is preferable because it will give the Debtor greater certainly as to the Closing, yet still subject the Superior Assets to higher and better offers.

19.    <u>Standards to Approve Motion</u>.    After the debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Il. 1995*); In re Integrated Res., Inc.,* 147 B.R. 650, 656 (S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("A presumption of reasonableness attaches to a Debtor's management decisions.").

20.    With respect to the procedures to be used by debtors when selling assets of the estate, courts have made clear that a debtor's business judgment is entitled to substantial deference.  See, e.g., *Integrated Res.*, 147 B.R. at 656-57; *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).

21.    The paramount goal in any proposed sale of estate property is to maximize the proceeds received by the estate.  See, e.g., *In re Food Barn Stores, Inc.,* 107 F.3d 558, 564-65 (8th Cir. 1997) (finding that, in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Res.*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the

[debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

22.     Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions.  See, e.g., *Integrated Res.*, 147 B.R. at 659 (such procedures "encourage bidding and maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("Court-imposed rules for the disposition of assets ... [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates.").  Section 105(a) of the Bankruptcy Code, which provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title," provides additional support to approve bid procedures.  11 U.S.C. § 105(a).

23.     The Debtor has sound business justification for seeking approval of the Bid Procedures at this time.  Pre-bankruptcy, the Debtor extensively marketed its assets and the Debtor has very limited resources to try to maximize the value of the Superior Assets.  One open bid process with auction procedures was conducted, but the Debtor did not receive any bids that it, in consultation with the Committee and secured creditors, chose to accept.  Without additional cash or debtor-in-possession financing, the Debtor will be unable to continue operations.  Accordingly, the Debtor has determined that, in its business judgment, the best option for maximizing the value of

the Superior Assets for the benefit of creditors on conjunction with its Plan is the Sale pursuant to the Bid Procedure.

24.    The Debtor believes that the Bid Procedures will provide a framework for it to entertain Qualified Bids for the Superior Assets and, if such Qualified Bids are received, to select a Successful Bid or Bids in a fair fashion that will encourage participation by financially capable bidders who demonstrate the desire and ability to consummate the Sale.  This should increase the likelihood that the Debtor will receive the greatest possible consideration for the Superior Assets.  Under the circumstances, approval of the Bid Procedures are in best interests of the Debtor, its estate, and the creditors thereof.

WHEREFORE, the Debtor respectfully requests that this Court grant the Motion and award the Debtor such other and further relief that this Court deems just and proper.

Dated:  June  23, 2009

Respectfully submitted,

/s/ *Duane J. Bresia*
Stephen A. Roberts (SBN 17019200)
Robert P. Franke (SBN 07371200)
Duane J. Brescia (SBN 24025265)
**STRASBURGER & PRICE, LLP**
600 Congress, Suite 1600
Austin, Texas 78701
Tel. (512) 499-3600  /  Fax (512) 499-3643
stephen.roberts@strasburger.com
bob.franke@strasburger.com
duane.brescia@strasburger.com

**Attorneys for Debtor Superior Air Parts, Inc.**

## CERTIFICATE OF CONFERENCE

The undersigned certifies that this Motion is unopposed by the following parties: TAG (the sole shareholder and secured creditor of the debtor), and the Committee.

*/s/ Duane J. Brescia*
Duane J. Brescia

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that a true and correct copy of the foregoing document was transmitted to parties listed on the attached Service List via first Class, United States Mail, postage prepaid on the 24th day of June, 2009.

*/s/ Duane J. Brescia*
Duane J. Brescia

**EXHIBIT A**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |
|---|---|
| | § |
| | §  **Chapter 11** |
| **IN RE:** | § |
| | §  **Case No. 08-36705** |
| **SUPERIOR AIR PARTS, INC.** | § |
| | § |
| **Debtor.** | § |
| | § |

**ORDER APPROVING BID PROCEDURES FOR**
**SALE OF EQUITY OR ASSETS PURSUANT TO PLAN OF REORGANIZATION**

The matter having come before this Court on Debtor's Motion to Approve Bid

Procedures for Sale of Equity or Assets Pursuant to Plan of Reorganization (the

"**Motion**")[1]; the Court finds that it has jurisdiction over this matter pursuant to 28 U.S.C.

§ 1334; the Court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

the Court finds that the relief requested in the Motion is in the best interests of the

Debtor, its estate, and the creditors thereof; the Court finds that, under the

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion or the Bid Procedures.

**ORDER APPROVING BID PROCEDURES FOR SALE OF EQUITY OR ASSETS PURSUANT TO AMENDED PLAN OF REORGANIZATION - Page 1 of 3**

circumstances, proper and adequate notice of the Motion and the hearing thereon has been given and that no other or further notice is necessary; and the Court finds that, upon the record herein, the Debtor has shown good, sufficient, and sound business purpose and justification for the relief requested in the Motion; therefore, cause exists to grant the Motion; accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Motion is approved in its entirety.

2.     The Bid Procedures attached as *Exhibit A* hereto are approved in their entirety and shall be binding on all parties as if fully set forth herein.

3.     Each person or entity who submits a Qualified Bid shall be deemed to have read and understood the terms and conditions of the Bid Procedures and shall comply with and be bound by such Bid Procedures.

4.     The Debtor is hereby authorized and empowered to take all such actions as may be necessary to implement the terms and requirements of this Order and solicit Qualified Bids, and conduct the Bid Selection Process.

5.     Approval of the Buyer(s) at the Confirmation Hearing will be held on _____, 2009, at _____ ___.m. (CDT).

6.     Objections to Confirmation of the Plan and the proposed Sale must be (a) in writing; (b) comply with the Bankruptcy Rules; (c) be filed with the Clerk of this Court on or before _____, 2009; and (d) served on the Notice Parties by that same time.

7.     No later than three (3) business days after entry of this Order, the Debtor shall serve by first-class mail, postage prepaid, a Notice of Sale upon all creditors listed on the most recent mailing matrix, all parties requesting notice and all parties-in-interest

in this case.  This notice shall be deemed to be sufficient notice for all Bankruptcy Code purposes.

8.    Service of the Notice of Sale and the Bid Procedures in the manner set forth in the Motion shall constitute proper, timely, adequate, and sufficient notice of the Bid Procedure as required pursuant to Bankruptcy Rules 2002 and no other or further notice shall be required with respect thereto.

9.    Brantly International, Inc. ("Brantly") is approved as the stalking horse for the Bid Procedures.  The Expense Reimbursement of $350,000 payable to Brantly, as defined in the Bid Procedures,  is approved.

10.    Notwithstanding any Bankruptcy Rule to the contrary, this Order is a final order, effective immediately, and the period in which an appeal must be filed shall commence upon entry hereof.

11.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

12.    The Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order.

### ### END OF ORDER ###

Submitted and prepared by:
Order submitted by:
*/s/ Duane J. Brescia*
Stephen A. Roberts
Robert P. Franke
Duane J. Brescia
Strasburger & Price, LLP
600 Congress Avenue, Suite 1600
Austin Texas, 78701
Tel. (512) 499-3600 / Fax (512) 499-3660
Stephen.roberts@strasburger.com
Duane.brescia@strasburger.com
**ATTORNEYS FOR DEBTOR SUPERIOR AIR PARTS, INC**

**ORDER APPROVING BID PROCEDURES FOR SALE OF EQUITY OR ASSETS PURSUANT TO AMENDED PLAN OF REORGANIZATION - Page 2 of 3**

**Exhibit A**

**Bid Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| **SUPERIOR AIR PARTS, INC.** | § | Case No. 08-36705 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |

## <u>BID PROCEDURES</u>

These procedures (the "**Bid Procedures**") describe the process by which Superior Air Parts, Inc., ("**Superior**" or "**Debtor**") debtor and debtor-in-possession in the above-captioned chapter 11 case ("**Case**") has been authorized to conduct a sale of all ownership interests in the Debtor, and/or all or substantially all of the Debtor's assets (the "**Superior Stock**"). These Bid Procedures were approved by order (the "**Bid Procedures Order**")[1] of the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**"), on July 6, 2009.

On _____, 2009, at _____ \_\_.M. (CDT), as further described below and in the Bid Procedures Order, the Bankruptcy Court shall conduct the Confirmation Hearing to approve the Sale under Debtor's Plan to one or more other Qualified Bidders (defined below) that the Debtor determined, in its reasonable discretion, and with consultation with Thielert AG ("**TAG**") and the Official Committee of Unsecured Creditors ("**Committee**") to have made the highest and/or best offer for the Superior Stock.

Additional terms and conditions of the Bid Procedures are found within the Debtor's Amended Plan of Reorganization Dated June 23, 2009, as may be amended from time to time (the "**Plan**"). All parties receiving notice of these Procedures may obtain a copy of the Debtor's Plan and Disclosure Statement associated therewith by visiting http://www.strasburger.com/_client/SAP-Plan-Documents/ or contacting, Ms. Angela J. Dunn, PLS, Legal Administrative Assistant, Strasburger & Price, LLP at angela.dunn@strasburger.com or 512-499-3643.

The Plan provides in general for the reorganization of Superior and the issuance of new shares in the Reorganized Debtor to Brantly International, Inc. ("**Brantly**"). Under the Brantly offer, Brantly intends to generally continue selling all of its existing parts, cylinder assemblies and engine lines. As stated in the Plan and Disclosure

---

[1] All capitalized terms not defined herein shall be given the meaning ascribed to them in the Bid Procedure Order.

Statement, the Debtor will offer for sale two distinct asset pools: (1) the Piece Parts Business (defined below), and (2) the Vantage Engine Program (defined below). Under the Bid Procedures, any Bidder may bid for the stock of the Reorganized Debtor and if selected, be substituted for the current stalking horse bidder, Brantly, in the Plan. However, as a part of such Bid, Bidders may exclude either the Piece Parts Business or the Vantage Engine Program, in which case such asset will be conveyed to the Creditor's Trust defined in the Plan for later sale. Bidders may also bid to purchase either the Vantage Engine Program or the Piece Parts Business, or both, on an asset purchase basis.

## A.    Assets to be Sold.

If Qualified Bids (defined below) are received by the Debtor before the Bid Deadline, the Debtor will conduct an Auction(s) for the sale ("**Sale**") of the Superior Stock or the Piece Parts Business and/or Vantage Engine Program, or both, or an asset purchase basis to the bidder(s) who submits the highest and/or best offer.

(i)    "*Piece Parts Business*" shall mean:

1.    <u>Inventory</u>. All inventories of raw materials, work-in-process, finished goods, demonstration equipment, parts, shipping containers, packaging materials, and other accessories related thereto and other materials that are used or held for use in connection with the manufacture, sale and repair of aircraft engine parts as of the Effective Date of the Plan.

2.    <u>Manufacturing Equipment and Tooling</u>. All machinery, equipment and tooling used or held for use in connection with or necessary for the manufacture and repair of aircraft engines and aircraft engine parts including all manufacturing, production, maintenance, packaging, gages, testing and other machinery, tooling (including dies, jigs, patterns, molds, prototypes and the like) and equipment, spare or replacement parts, computer equipment incidental to the development, design, manufacture, testing and inspection of parts, engine test cell equipment, specialized inspection and quality control equipment, and plant equipment and the like.

3.    <u>Selected IP Assets</u>. All IP Assets supporting and otherwise underlying all replacement parts for which Seller has obtained from the FAA Parts Manufacturer Approval ("**PMA**"), including replacement parts for Lycoming and TCM engines as listed on as well as engineering specimens and masters related to such parts; and all electronic as well as paper copies of documents related to the foregoing, including all documentation submitted to and correspondence with the FAA relating to such engines and

replacement parts identified above, as well as engineering data, legacy data, inspection processes and the quality manual.

4.  <u>Trademarks, Trade dress and Trade Names and Domains</u>. All Trademarks and Domains, including the "Superior" trade names, trademarks, service names, service marks, logos, brand names, and corporate names, and all applications, registrations, and renewals in connection therewith but excluding trademarks, trade names and trade dress relating to the engines in the Engine Program.

5.  <u>Other Tangible Personal Property</u>.   All other tangible personal property of Seller that is used or held for use in connection with the manufacture, repair and sale of aircraft engines and aircraft engine parts except Excluded Assets.

6.  <u>Accounts Receivable</u>.   Trade accounts receivable and all notes, bonds and other evidences of Indebtedness pursuant to which Seller shall have the right to receive payments (in each case, of any nature whatsoever, whether recorded or unrecorded) arising out of sales of products delivered by Seller and any related security arrangements and collateral securing the repayment or other satisfaction thereof, including any rights with respect to any third party collection procedures or any other Claims that have been commenced in connection therewith.

7.  <u>Experimental Engines</u>.   Those experimental engines currently undergoing testing, as well as prototype, engineering specimens and masters related to such engines, including without limitation, the Model 400 Engine and related prototype(s).   All Intellectual Property, know-how, designs, drawings, specifications, data and documentation supporting and otherwise underlying all of Seller's XP-Series Engines;

(ii)   "***Vantage Engine Program***" shall mean:

1.  All existing inventory of "SV" parts for the Vantage O-360 and IO-360 Engine (the "**Vantage Engines**"),

2.  All documentation from Vantage Engines already shipped or sold to any customer for the purpose of use, test or evaluation, and all intellectual property, components and parts related to the design, development, testing, and FAA approval of the Vantage Engines, FAA Type Certificate No. E00001SC, (and related approvals Transport Canada Type Certificate IE-58, European Aviation Safety Agency Type Certificate EASA.(IM).E.024, and any other certifications) including but not limited to, drawings, research,

all test reports and data, engineering change requests, engineering change notices, build sheets, bill of materials, (including current and historical bill of materials, all assembly and test instructions and all continued airworthiness documentation), parts catalog and supporting data, overhaul manual and supporting data, operator and maintenance manual and supporting data, installation manual and supporting data, service letters and service bulletins (including all quality documentation, all product integrity team meeting minutes and documentation, all warranty claims and/or customer feedback, trademarks and logos, and all marketing material, including market studies, photographs, artwork, brochures, models and fliers, all sales information, customer inquiries and anything else related to the Vantage Engines.

(iii)     <u>Assets to be Excluded in event of Asset Purchase</u>.

Cash, cash equivalents, securities, deposit and other bank accounts, Parts Manufacturing Approvals and Production Certificates that are not transferable.

## B.     Stalking Horse Bidder.

Brantly will serve as the stalking-horse bidder for the issuance of the new Superior Stock for a purchase price of $7.0 million (the Cash Contribution, as defined by the Plan), subject to working capital adjustments and conditions as noted in the Plan (the "**Stalking Horse Bid**").  In addition to the Cash Contribution, the Plan provides for the assumption of certain of the Debtor's liabilities and the release or settlement of certain other claims.  The Stalking Horse Bid is a Qualified Bid for all purposes herein.

Brantley shall have until the earlier of 20 days from the date of the Amended Plan, or five (5) days prior to the Bid Deadline, as defined below, to conduct due diligence (the "**Due Diligence Period**").  Upon the expiration of the Due Diligence Period, Brantly's $700,000 deposit shall be nonrefundable if Brantly withdraws its offer for any reason.  If Brantly is not the Successful Bid, as defined below, and the Debtor proceeds to confirmation with another Bidder, then Brantly's deposit shall be refundable in accordance with Section I below.

## C.     Qualified Bids.

To be a Qualified Bid, an offer, solicitation or proposal (a "**Bid**") must:

(i)     be submitted in writing and received by (the parties listed below at the below addresses no later than _____, 2009, at 4:00 p.m. (CDT) (the "**Bid Deadline**"):

**DEBTOR**
Attn:  Mr. Kent Abercrombie
Superior Air Parts, Inc.
621 South Royal Lane, Suite 100
Coppell, Texas 75019
Fax:  972.829.4600
kabercrombie@superiorairparts.com

**DEBTOR'S COUNSEL**
Attn:  Stephen A. Roberts
Strasburger & Price LLP
600 Congress, Suite 1600
Austin, Texas  78701
Fax: 512.536.5723
stephen.roberts@strasburger.com

**TAG'S COUNSEL**
Attn:  Chester B. Salomon
Becker, Glynn, Melamed & Muffly LLP
299 Park Avenue
New York, New York 10171
Fax: (212) 888-0255
CSalomon@beckerglynn.com

**COMMITTEE'S COUNSEL**
Attn: David Parham
Baker & McKenzie LLP
2001 Ross Ave., Suite 2300
Dallas, Texas 75201
Fax:   (214-978-3099)
David.w.Parham @bakernet.com

**COUNSEL FOR BRANTLY**
Attn: Mr. Matthew S. Okin
Okin & Adams, LLP
1113 Vine Street, Suite 201
Houston, TX  77002
Fax:   (713) 236-0822
mokin@okinadams.com

(ii)     Offer.  A Bid must (a) identify whether the Bid is for the Superior Stock, the Piece Parts Business or Vantage Engine Program, or a combination thereof, (b) identify the entity or entities bidding, (c) if the bid is for assets, describe whether the bid is for the Piece Parts Business, Vantage Engine Program or both (d) if the bid is for the stock in the Reorganized Debtor, disclose any assets to be excluded and conveyed to the Creditor's Trust, (e) state the proposed purchase price and other

consideration to be paid, (f) in the event of a bid for the assets, describe any allocation of the purchase price and other consideration among the respective Superior Asset(s) that the bidder will insist upon (in the absence of such Superior may effect its own allocation), and (g) identify any executory contracts and unexpired leases to be assumed and assigned or rejected. A bid must be a "firm offer" and not contain any contingencies to the validity, effectiveness, or binding nature, including, without limitation, contingencies for financing, due diligence, or inspection. The bid must be for cash and other consideration as set forth below.

(iii)    Good-Faith Deposit:  Each Bid must be accompanied by a deposit (the "**Good Faith Deposit**") in the form of cash or in other form of immediately available U.S. funds, in an amount equal to 10% of the cash consideration of any Bid.  The Good Faith Deposit shall be deposited in a segregated interest bearing "Debtor-in-Possession" account of Debtor at J.P. Morgan Chase (the "**Deposit Account**").  Wire instructions will be made available to such account upon request.

(iv)    Irrevocable:  Each Bid must be irrevocable until five (5) business days after the consummation or closing of the Sale approved by this Court in a final, non-appealable order.

(v)    Ability to Close:  Each Bid must be accompanied by evidence reasonably satisfactory to the Debtor, TAG, and the Committee demonstrating the Bidder's financial ability to close an asset purchase or stock purchase, as the case may be, and in the event of a stock purchase demonstrate the Plan is financially feasible and not likely to be followed by a need for further financial reorganization.

(vi)    No Fees Payable to Qualified Bidder:  A Bid may not request or entitle the Qualified Bidder to any fee, expense reimbursement, or similar type of payment.  Further, by submitting a Bid, a Bidder shall be deemed to waive its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code or in any way related to the submission of its Bid or the Bid Procedures.

(vii)    Liabilities Assumed.  A Bid for stock of the Reorganized Debtor must describe the liabilities to be assumed and the proposed/estimated amount of such liabilities.  To the extent a bidder has obtained releases of any of the Debtor's liabilities should they become a successful purchaser, written evidence of releases or contingent releases by the creditor must be furnished in order for such to be considered.

(viii)    Executory Contracts to be Assumed and Assigned.  A Bid must contain a list of all executory contracts of the Debtor that the Bidder requests the Debtor to assume and assign to the Bidder and the proposed

Cure Amount, if any.  All Cure Amounts must be paid in full at Closing unless any such non-debtor party shall agree to lesser treatment.

(ix)    <u>Minimum Overbid</u>.  The aggregate proposed purchase price for the stock of the Reorganized Debtor must exceed the sum of (i) $7.0 million (the "Cash Consideration", as defined by the Plan), subject to no greater working capital adjustments to the purchase price than in the Stalking Horse Bid; plus (ii) $150,000.00 (initial overbid amount), plus (iii) $350,000 (the "Expense Reimbursement", as defined below.

(x)    <u>Transfer Restriction Agreement</u>.  If any Bidder chooses to bid *solely* on the Piece Parts Business, then such Bid shall state that the Bidder agrees to be bound by the terms and conditions of the Transfer Restriction Agreement attached hereto as *Attachment 1*.

(xi)    <u>Documentation</u>.  If the Bid is for Superior Stock, the Bidder must submit a copy of the Plan, redlined to reflect any changes to the Plan, and evidence of any releases of claims which the bidder wishes to be considered as additional consideration. If the Bid is for substantially all of the assets of the Debtor, the Bidder must submit a copy of the Plan to reflect the transfer of assets to the Bidder rather than the issuance of new shares and identify the assets the Bidder is not purchasing. Any asset purchaser must exclude all Parts Manufacturing Authorizations and Production Certificates issued by the Federal Aviation Administration.  If the Bid is for less than substantially all of the assets, the offer must be an unconditional offer to purchase the assets, AS IS, without representations or warranties.

(xii)    <u>Mandatory markup of certain Plan terms</u>.  The markup of the Plan under a stock purchase must address the following items in the Plan:  (i) assumption of all outstanding purchase orders, (ii) assumption of all insurance obligations under current policies, (iii) treatment regarding assumption or rejection of warranties, provided that warranties have been or are timely made, (iv) treatment regarding Debtor's lease of non-residential real property with Texas Duggan Limited Partnership; (v) identification of any Purchase Price Adjustment, as defined by the Plan, (vi) any other consideration offered.

(xiii)    <u>Additional Conditions</u>.  Prior to submitting a Qualified Bid, Bidders are urged to check with the Court's docket or Debtor's counsel to determine if any Additional Conditions exist.

Any Bid submitted in accordance with the foregoing procedures may be deemed a "**Qualified Bid**."  Each Bidder submitting a Qualified Bid shall be deemed a "**Qualified Bidder**."

   D.    **Access to Information.**

Any entity that desires to submit a Qualified Bid for the Superior Stock or assets shall be permitted to conduct and complete reasonable due diligence prior to the Bid Deadline as set forth herein.  Each entity seeking to submit a Bid shall be, upon execution of a confidentiality agreement in the form provided by the Debtor, provided due-diligence materials containing information about the Superior Assets.

### E.    Auction and Selection of the Winning Bid.

Following expiration of the Bid Deadline, the Debtor, the Committee and TAG will review all bids and determine which bids are Qualified Bids and determine which Qualified Bid(s) represents the highest and/or best offer (the "**Bid Selection Process**").

No later than _____, 2009, at 4:00 P.M. (CDT), the Debtor will notify all Qualified Bidders of the highest, best, and/or otherwise financially superior Qualified Bid or Bids (the "**Baseline Bid**"), as determined by the Debtor, the Committee and TAG and will notify such parties of such time and place of the Auction.  In the event bids are received for the for stock or assets of the Reorganized Debtor excluding either the Piece Parts Business or the Vantage Engine Program, the Debtor, Committee and TAG may designate more than one Baseline Bid and conduct more than one auction.

The determination of which Qualified Bid(s) constitutes the winning bid(s) shall take into account any factor that the Debtor, TAG and the Committee reasonably deem relevant to the value of the Qualified Bid to the estate, including, among other things, the following, which may govern, but not control:  (a) the amount and nature of the consideration; (b) the proposed assumption of any liabilities; (c) the ability of the Qualified Bidder to close the proposed transaction; (d) the proposed closing date and the likelihood, extent, and impact of any potential delay in closing; (e) any purchase-price adjustments; (f) the impact of the contemplated transaction on any actual or potential litigation; (g) the net economic effect of the proposed transaction; and (h) the net after-tax consideration to be received by the Debtor (collectively, the "**Bid Assessment Criteria**").

If more than one Qualified Bid is received, the Debtor will conduct the Auction(s) on _____, 2009, at 9:00 A.M. (CDT), or such other time and location as may be designated by the Debtor, to determine which Qualified Bid is the highest and/or best offer.

Unless otherwise stated, the Auction(s) will take place in the offices of Strasburger & Price, LLP, 901 Main Street, Suite 4400, Dallas, Texas 75202-3794.  Unless otherwise announced by the Debtor at the commencement of the Auction(s), the following procedures shall govern the Auction(s):

(i)    <u>The Debtor Shall Conduct the Auction</u>.  The Debtor and its professionals shall direct and preside over the Auction.  At the start of the Auction(s), the Debtor shall describe the terms of the Baseline Bid and open the Auction for higher and/or better Bids.  All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on

an open basis, with all material terms of each Bid fully disclosed to all other Qualified Bidders.  The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

(ii)    <u>Participation at the Auction</u>.  Only a Qualified Bidder is eligible to participate at the Auction.  Only the authorized representatives of each Qualified Bidder shall be permitted to attend, along with the Debtor, the Committee,  TAG and their respective representatives.

(iii)    <u>Overbids</u>.  Bidding shall start with the lowest Qualified Bid, as determined by the Debtor, TAG and the Committee, and continue with each successive higher Qualified Bid.  During the Auction, bidding shall begin with the Baseline Bid and subsequently continue in minimum increments of at least $100,000 in cash, or such higher amount as may be determined by the Debtor during the Auction.  Other than as set forth herein, the Debtor may conduct the Auction in the manner it determines will result in the highest, best, and/or otherwise financially superior offer for the Superior Assets.

(iv)    <u>Additional Procedures</u>.  In its reasonable discretion and after consultation with all Qualified Bidders, the Committee and TAG, the Debtor may adopt rules for the Auction(s) at or prior to the Auction(s) that, in its reasonable discretion, will better promote the goals of the Auction(s), will result in the highest, best, and/or otherwise financially superior offer, and that are not inconsistent with any of the provisions of the Bid Procedures Order.  All such rules will provide that all bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

(v)    <u>Closing the Auction:</u>   Upon conclusion of the bidding, the Auction(s) shall be closed, and the Debtor, Committee and TAG shall (a) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the Sale process, including those factors affecting the speed and certainty of consummating the Sale, (b) identify the highest, best, and/or otherwise financially superior offer (the "**Successful Bid**") and the entity submitting such Successful Bid (the "**Successful Bidder**"), which highest, best, and/or otherwise financially superior offer will provide the greatest amount of net value to the Debtor, (c) identify the next highest or otherwise best offer after the Successful Bid (the "**Back-Up Bid**") and advise the entity submitting such Back-up Bid, provided, however, that no Qualified Bidder is required to be a Back-Up Bidder, and (d) announce to the participants the results of the Auction.

(vi)   <u>Notice</u>. Immediately after closing of the Auction(s), Debtor shall file and serve a notice to all Notice Parties identifying the Successful Bid and Successful Back-Up Bid, for which approval will be sought at Confirmation.

The Debtor reserves the right to reject, at any time before the Confirmation Hearing, any Bid or Qualified Bid that the Debtor determines is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or these Bid Procedures, or (iii) contrary to the best interests of the Debtor, its estate, and the creditors thereof.

TAG or the Unsecured Creditors Committee may veto any proposal to buy the Superior Stock and the Vantage Engine Program if in the exercise of their reasonable discretion they do not believe the deal is materially and financially superior to the APS offer reflected in the Plan.

IF THE DEBTOR DOES NOT RECEIVE A QUALIFIED BID BY THE BID DEADLINE, THE AUCTION WILL NOT BE HELD, AND THE DEBTOR WILL PROCEED AT CONFIRMATION TO ASK THE BANKRUPTCY COURT TO APPROVE THE SALE OF THE SUPERIOR STOCK TO BRANTLY.

**F.   Sale to Be Approved in Confirmation Order.**

The Debtor will seek approval of the Successful Bid(s) and Successful Back-Up Bid(s) at the Confirmation Hearing on Debtor's Plan, to be held before the Honorable Barbara J. Houser, 1100 Commerce Street, 14th Floor, Dallas, Texas 75242 on _____, 2009, at _____ P.M.  Any Qualified Bidder whose Qualified Bid is finally approved by the Bankruptcy Court and authorized to be consummated by the Debtor shall be referred to herein as a "**Buyer**."  The Order Confirming Debtor's Plan shall be the order approving the sale and all related relief.   All objections to the Sale(s) shall be filed as an objection to Confirmation of the Debtor's Plan.

**G.   Brantly Expense Reimbursement**

If Brantly is not approved by the Bankruptcy Court by reason of the acceptance of an overbid for the equity in or assets of the Debtor in an alternative transaction and such alternative transaction closes or becomes effective, (a) the Debtor shall arrange for the immediate return of the deposit in to Brantly and (b) Brantly will be entitled to receive a reimbursement of attorneys fees and expenses incurred by Brantly in connection with this Bankruptcy Case up to Three Hundred Fifty Thousand Dollars ($350,000.00) (the "**Expense Reimbursement**"). Such Expense Reimbursement shall be paid by the Debtor in cash payable within five Business Days after Brantly submits an itemization of such expenses to the Debtor and the Committee unless either the Committee or the Debtor objects in which case only the undisputed portion will be timely paid and Brantly may seek court approval for the payment of any disputed portion.

**H.   Closing.**

The Debtor and the Buyer shall use commercially reasonable efforts to consummate the Bankruptcy Court-approved transaction, including the payment of the purchase price in readily available funds, on or prior to ten days after the entry of the order approving the sale (the "**Closing**").  In connection with the Closing, the Buyer's Good Faith Deposit shall be applied by the Debtor against the cash portion of the purchase price to be paid by the Buyer at Closing.

### I.       Deposits.

All Good Faith Deposits received by the Debtor shall be maintained in a segregated account and be subject to the jurisdiction of the Bankruptcy Court.  Within seven (7) business days after the Bid Selection Process, the Debtor shall return the Good Faith Deposit of all remaining Bidders other than the Successful Bidder and the Successful Back-Up Bidder, if any, without further order of the Bankruptcy Court.

Except as otherwise set forth below, within a reasonable time after the Closing, and without further order of the Bankruptcy Court, the Debtors shall return the Good Faith Deposit to each Qualified Bidder that is not the Buyer.

### J.       Buyer Default.

If any Buyer fails to close after approval of the Successful Bid by the Bankruptcy Court at the Confirmation Hearing, such Buyer's Good Faith Deposit shall be forfeited to and retained irrevocably by the Debtor, and the Debtor specifically reserves the right to seek all appropriate additional damages from any such Buyer.

### K.      Jurisdiction of Bankruptcy Court.

All Qualified Bidders are deemed to have submitted to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters relating to the sale and the transactions contemplated thereby.

### L.      No Break Up Fee.

No Qualified Bid shall contain a "break up fee" of any kind.  Any bid containing a break-up fee will be rejected as a Non-Qualifying Bid.

### M.      Costs and Expenses of Bid.

Each Bidder (whether or not a Qualified Bidder) shall bear its own costs and expenses (including any legal or other professionals' fees and expenses) incurred.  The costs and expenses incurred by the Debtor will be borne by the Debtor and its estate.

To the extent any Qualified Bidder submits a bid asserting the payment of fees, broker's fees, or commissions in connection with a sale of Superior Stock or Superior Assets to such Qualified Bidder, then such bid must identify such as a term of its Bid, so

that the Debtor, TAG and the Committee can evaluate whether such Bid is in fact the highest and best offer.

No bidder shall be entitled to any fee, expense reimbursement, or similar type of payment, except as otherwise provided by Court Order. Further, by submitting a Bid, a bidder shall be deemed to waive its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code or in any way related to the submission of its Bid or the Bid Procedures.

### N.    As-Is, Where-As Sale.

Any sale shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents, or estate, except as otherwise agreed in writing.  Each Qualified Bidder (as defined below) shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence prior to making its offer, that it has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Superior Assets in making its Bid, and that it did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Superior Stock or Superior Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bid Procedure or, as to any Successful Bidder, the terms of the Sale shall be set forth in the Confirmation Order.

### O.    Free Of Any And All Interests.

The Plan shall provide that, in the event of an asset sale, the assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against in accordance with 11 U.S.C. §§ 363 AND § 1141.  The Plan will also provide for a discharge of the Debtor pursuant to 11 U.S.C. 1141 in the event of a sale of the stock of Superior.

### P.    Reservation of Rights; Deadline Extensions.

In its reasonable business judgment, the Debtor reserves the right to (i) impose, at or prior to the Bid Selection Process and after consultation with TAG and the Committee, additional terms and conditions on the Sale of the Superior Stock consistent with the Bid Procedure Order; (ii) extend the deadlines set forth in the Bid Procedures, provided Confirmation will not be extended past July 31, 2009; (iii) reject all Qualified Bids if no Bid is, in the Debtor's reasonable business judgment for fair and adequate consideration.

Theilert Aircraft Engines
Nieritzstr 14 D-01097
Dresden Germany

Mahle Engine Components
60428 Marine Road
Atlantic IA 50022-8291

KS-Pistoes
Rodovia Arnald, Julio Mauberg
4000 Disrito Industrial No
Nova Odessa SP Brasil CAIZA Postal
91 CEP 13460-000

Airsure Limited
Dallas Office
5700 Granite Parkway, #550
Plano, TX 75024-6647

ECK Industries, Inc.
1602 North 8th Street
Manitowoc, WI 54221-0967

Mahle Engine Components
14161 Manchester Road
Manchester, MO 63011

Crane Cams
2531 Tail Spin Trail
Daytona Beach, FL 32128-6743

Corley Gasket Co.
6555 Hunnicut Road
Dallas TX 75227

Saturn Fasteners Inc.
425 S. Varney St.
Burbank, CA 91502

Champion Aerospace, Inc.
1230 Old Norris Road
Liberty, SC 29654-0686

Ohio Gasket & Shim
976 Evans Ave.
Akron, OH 44305

Gerhardt Gear
133 East Santa Anita
Burbank CA 91502-1926

Automatic Screw Machine
709 2nd Avenue SE
Decatur, AL 35601

Helio Precision Products
601 North Skokie Highway
Lake Bluff, IL 60044

Knappe & Koester Inc.
18 Bradco Street
Keen, NH 3431

Garlock-Metallic Gasket Div
250 Portwall St., Ste. 300
Houston, TX 77029

AOPA Pilot
PO Box 973
Frederick, MD 21701

Mahle Engine Components
17226 Industrial HWY
Caldwell, OH 43724-9779

Genesee Stamping & Fabricating
1470 Avenue T
Grand Prairie, TX 75050-1222

Seal Science
17131 Daimler
Irvine, CA 92614-5508

Internal Revenue Service
Special Procedures - Insolvency
P.O. Box 21126
Philadelphia, PA 19114

Deirdre B. Ruckman/AVCO
Gardere Wynne Sewell LLP
1601 Elm Street, Ste. 3000
Dallas, TX 75201

David Childs, Ph.D.
Dallas County Tax Assessor/Collector
500 Elm Street, Records Building
Dallas, TX 75202

Thielert AG
Albert-Einstein-Ring 11
D-22761, Hamburg Germany

Betsy Price, Tax Assessor Collector
100 E. Weatherford
PO Box 961018
Fort Worth, TX 76196

Hartford Aircraft Products
94 Old Poquonock Road
Bloomfield, CT 06002

Ace Grinding & Machine Company
2020 Winner Street
Walled Lake, MI 48390

Lynden International
1800 International Blvd. #800
Seattle, WA 98188

Combustion Technologies, Inc.
1804 Slatesville Road
Chatham, VA 24531

Ruhrtaler Gesenkschmiede
F.W. Wengler GMBH & Co. KG, Feld
Witten, Germany 58456

Chester Salomon
Becker, Glynn, Melamed & Muffly LLP
299 Park Avenue
New York, NY 10171

City of Coppell/Coppell ISD
Mary McGuffey, Tax Assessor Collector
PO Box 9478
Coppell, TX 75019

Kent Abercrombie
Superior Air Parts, Inc.
621 S. Royal Lane, Suite 100
Coppell, TX 75019-3805

Neil J. Orleans
Goins, Underkofler, et al, LLP
1201 Elm Street, Ste. 4800
Dallas, TX 75270

Howard A. Borg/James T. Jacks
Ass't US Atty for FAA
Burnett Plaza, Suite 1700
801 Cherry Street, Unit 4
Fort Worth, Texas 76102-6882

Laurie A. Spindler
Linebarger Goggan et al, LLP
2323 Bryan Street Suite 1600
Dallas, TX 75201

Jeffrey N. Thom, Q.C.
Miller Thomson LLP
3000, 700 - 9th Avenue SW
Calgary, AB   T2P 3V4

Gordon J. Toering
**WARNER NORCROSS & JUDD LLP**
900 Fifth Third Center
111 Lyon Street, NW
Grand Rapids, Michigan 49503

Anita F. McMahon
1646 Belmont Ave.
Baton Rouge, LA 70808

Michael L. Jones
Henry & Jones, LLP
2902 Carlisle Street, Ste. 150
Dallas, TX 75204

LARRY K. HERCULES
ATTORNEY AT LAW
1400 Preston Road, Suite 280
Plano, Texas 75093

Gregory B. Gill, Jr.
Gill & Gill, S.C.
128 North Durkee St.
Appleton, WI 54911

Laura Boyle
TW Telecom, Inc.
10475 Park Meadows, Dr. #400
Littleton, CO 80124

Melissa S. Hayward
LOCKE LORD& LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Counsel for the Insurers

Vincent Slusher/J. Seth Moore
Beirne Maynard & Parsons, LLP
1700 Pacific Ave., Ste. 4400
Dallas, TX 75201
Attys for Theilert Aircraft Engines
GMBH

Mary Frances Durham
U.S. Department of Justice
Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242

Stefano Gazzola
Zanzi, S.p.A.
Corso Vercelli, 159
10015 Ivrea, Italy

Piyush Kakar
Seal Science Inc.
17131 Daimler
Irvine, CA 92614

Jim Griffin
Hartford Aircraft Products
94 Old Poquonock Road
Bloomfield, CT 06002

Phil Eck
Eck Industries, Inc.
1602 North 8th Street
Manitowoc, WI 54221-0967

Werner Wilhelm Albus
Valeria de Freitas Mesquita
KSPG Automotive Brazil LTDA
Rodovia Arnaldo Julio Mauerbert,
 n. 4000-Distrito Industrial 01
Nova Odessa- SP Brasil
Caixa Postal 91

Ronald Weaver
Avstar
1365 Park Lane South
Jupiter, Fl 33458

Linda Boyle
TW Telecom, Inc.
10475 Park Meadows Dr. #400
Littleton, CO 80124

Susan B. Hersh
12770 Coit Rd. Ste. 1100
Dallas, TX 75251

William G. Burd/Krystina N. Jiron
Atkinson & Brownell, PA
2 South Biscayne Blvd., Suite 3750
Miami, FL 33131

David W. Parham,
Elliot Schuler & A. Swick
Baker & McKenzie LLP
2001 Ross Ave., Suite 2300
Dallas, TX 75201

Timothy S. McFadden
LOCKE LORD& LIDDELL LLP
111 South Wacker Drive
Chicago, IL 60606
Counsel for the Insurers

Billy G. Leonard, Jr.
Attorney at Law
1650 W. Virginia Street, Suite 211
McKinney, Texas 75069

Kevin H. Good
Conner & Winters LLP
1700 Pacific Avenue
Suite 2250
Dallas, Texas 75201

Rosa R. Orenstein
LOOPER, REED & McGRAW, P.C.
4100 Thanksgiving Tower
1601 Elm Street
Dallas, TX 75201

Kenneth A. Hill
QUILLING, SELANDER, CUMMISKEY
& LOWNDS, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201