Billy G. Leonard, Jr.
Texas Bar No. 12208100
Attorney at Law
1650 W. Virginia Street, Suite 211
McKinney, Texas 75069-7703
Telephone (469) 742-0855
Fax (469) 442-0135

and

Kevin H. Good
Texas Bar No. 08139300
Conner & Winters LLP
1700 Pacific Avenue
Suite 2250
Dallas, Texas 75201
Telephone (214)217-8070
Fax (214) 217-8861

**Attorneys for Aviation Parts Supply, Inc**.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SUPERIOR AIR PARTS, INC. | § | CASE NO. 08-36705-BJH-11 |
| | § | |
| | § | |
| DEBTOR | § | |

**AVIATION PARTS SUPPLY, INC.'S ADDITIONAL OBJECTIONS TO AMENDED
<u>DISCLOSURE STATEMENT OF SUPERIOR AIR PARTS, INC.</u>**

Aviation Parts Supply, Inc. ("APS"), a creditor and party in interest, by and through undersigned counsel, files these Additional Objections to Amended Disclosure Statement of Superior Air Parts, Inc., ("Superior") and would show the Court as follows:

**PRELIMINARY OBJECTION OF AVIATION PARTS SUPPLY, INC.**

1.	Superior's Amended Disclosure Statement was filed on June 23, 2009.  Due to the accelerated schedule for the hearing on the adequacy of the Disclosure Statement now set for July 6, 2009, APS filed its Preliminary Objection to Superior's Amended Disclosure Statement on June 25, 2009 to alert Superior to the deficiencies of the Amended Disclosure Statement immediately perceived by APS.

2.	As stated in the APS Preliminary Objection to the Superior Amended Disclosure Statement, APS has further objections which APS now submits to the Court and to Superior.

**ADDITIONAL OBJECTIONS OF APS TO SUPERIOR
AMENDED DISCLOSURE STATEMENT**

3.	<u>Reorganization - Feasibility</u>

	A.	Contrary to the statements in the Superior Amended Disclosure Statement[1], the Amended Plan proposed by Superior is a plan of reorganization.  As such, the Amended Plan is not feasible by its nature as alleged[2]; rather feasibility must be demonstrated by Superior at confirmation and adequate disclosures related to same must be contained in the Disclosure Statement.  The only statement contained in the Amended Disclosure Statement related to the ongoing operations of the Reorganized Superior is as follows:

> "Brantly intends to retain Kent Abercrombie, the current President of the Debtor, to continue as President and for Superior to resume sales of piece parts, cylinder assemblies and the Vantage engine."[3]

---

[1] Amended Disclosure Statement at Section IX and X, Page 33
[2] A liquidating plan does not create an exception to the feasibility requirement. See *In re Holmes*, 301 B.R. 911, 914 (Bankr. M.D. Ga. 2003)
[3] Amended Disclosure Statement at Section V, page 12

**AVIATION PARTS SUPPLY, INC.'S ADDITIONAL OBJECTIONS TO AMENDED DISCLOSURE STATEMENT OF SUPERIOR AIR PARTS, INC.  Page- 2 of 9**

Nowhere is there any information regarding the Brantly plan to address and turn around the EBITDA and Net Income Losses sustained from 2005 through 2008 as disclosed in the Amended Disclosure Statement.[4]  To satisfy the minimal requirements set forth in *In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567 (Bankr. N.D. GA. 1984), as applied to the facts of this case, Superior should be required to disclose the following information:

(a) *Pro forma* income statements, balance sheets and cash flow statements;

(b) All key assumptions made in calculating *pro forma* information setting forth the facts supporting the estimates;

(c) The factual basis for any assumptions that the Reorganized Superior can break even or make a profit including projected product mix, revenue, gross margins by product and detailed operating expenses;

(d) As the Debtor has sold a total of 65 Vantage engines in 4 years, the factual basis for any assumption that sales or margins will increase sufficiently to make the engine line profitable;

(e) Identification of the amount of increased inventory required to achieve revenue projections and the source of capital necessary to acquire same;

(f) Identification of the amount of operating capital required to achieve at least a break even operation and the source of such operating capital;

(g) Identification of the amount of capital necessary to sustain any projected losses until the company can return to profitability;

(h) Identification and experience level of the proposed day to day management team and a representation that such persons have agreed to assume the positions;

(i) The impact on the Reorganized Superior if the current management team has not or does not agree to remain with the Reorganized Superior; and

(j) Identification of the Brantly person who produced the projections and other information above so that these persons can be examined under oath.

See *In re Cardinal Congregate I,* 121 B.R. 760, 767 (Bankr. S.D. Ohio 1990); *In re Microwave Products of America, Inc,* 100 B.R. 376, 378-379 (Bankr. W.D. Tn. 1989).

---

[4] Id at Section I, page 4 and 5

**AVIATION PARTS SUPPLY, INC.'S ADDITIONAL OBJECTIONS TO AMENDED DISCLOSURE STATEMENT OF SUPERIOR AIR PARTS, INC.  Page- 3 of 9**

B.  Superior asserts:

> "Brantly offer is not contingent on financing and Brantly will have $7 million in available cash to close the transaction prior to confirmation of the Plan. The Reorganized Debtor will have $2 million in cash at closing and Brantly will provide additional capital and credit as needed for the Reorganized Debtor to assume the executory contracts it is assuming under the Plan."[5]

There is (i) no proof of Brantly's ability to pay the $7.0 Million (assuming it does not withdraw from the plan on or before July 13, the end of the due diligence period) (ii) no quantification of the "additional capital and credit as needed" and (iii) no proof of Brantly's ability to provide such unknown sums. Without such proof, the Disclosure Statement is inadequate. See *In re Knight Energy*, 2009 WL 1851739 (Bankr. N.D. Texas 2009) where the Court stated:

> "The Court does not find that there is no reorganization in prospect, but the Debtors will have to <u>"show me the money"</u> at a disclosure statement hearing or else this finding will be different in early August." (emphasis added).

And further:

> However, the automatic stay will terminate on August 6, 2009, if the Debtors do not file a disclosure statement and plan by August 6, 2009, providing for a significant cash infusion and <u>a credible commitment for such cash infusion. In other words, an exhibit must be attached to the Disclosure Statement that is a credible letter of commitment, signed by parties with the financial wherewithal who are doing the committing</u>. (emphasis added).

C.  Superior describes Brantly as follows:

> "Under the Plan, the ownership of the Debtor will be transferred to Brantly International, Inc. ("Brantly"), unless a higher and better offer is received under the proposed bidding procedure. Brantly is a closely held Texas Corporation which manufactures helicopters in Vernon, Texas and exports then [sic] to China and is owned by Chinese investors who have the goal of expanding civil aviation in China."[6]

---

[5] Id at Section IX, page 33
[6] Id at Section V, page 12

**AVIATION PARTS SUPPLY, INC.'S ADDITIONAL OBJECTIONS TO AMENDED DISCLOSURE STATEMENT OF SUPERIOR AIR PARTS, INC.  Page- 4 of 9**

While not explicitly stated, the clear inference of this statement is that Brantly and the Reorganized Superior plan to export products to China as part of the Superior business plan going forward. If this is the case, then such should be stated clearly and the factual foundation for same explicated sufficiently for the voters to evaluate same. Specifically, Superior should be required to disclose the following:

    (a) The factual basis for the assumption that there is an untapped market for Superior's products in China that will positively affect earnings.

    (b) Whether Brantly's business plan calls for shedding Superior's current supplier base by moving manufacturing to China, the timetable for same and its impact on revenue and expenses.

    (c) Whether Brantly's business plan calls for manufacturing United States FAA Authorized Parts Manufacturing Authority products in China for sale to current Superior customers and the governmental authority or permission for doing so.

4.    <u>Brantly Ability To Perform</u>

Superior discloses that Brantly [or its designee][7] will

    (a) assume purchase orders estimated at an amount in excess of $5 Million if vendors agree to an 18 month delivery delay;

    (b) assume insurance obligations including a deductible of $875,000 per year for 5 years;

    (c) reduce or eliminate the claim of the landlord on Superior's leasehold interest;

    (d) honor warranties of Superior; and

    (e) cure defaults on executory contracts.[8]

To properly inform the voters, Superior should be required to disclose at least the following:

    (a) A detailed analysis of the projected income, expenses, and surplus funds available for satisfaction of the open purchase orders should the suppliers not

---

[7] Id at Section V , page 21-22
[8] Id at Section V, Pages 13, 22, 24-25

**AVIATION PARTS SUPPLY, INC.'S ADDITIONAL OBJECTIONS TO AMENDED DISCLOSURE STATEMENT OF SUPERIOR AIR PARTS, INC.  Page- 5 of 9**

      agree to an 18 month delivery schedule;

(b) A detailed analysis of the projected income, expenses, and any surplus funds or additional capital available for satisfaction of the insurance deductibles;

(c) If it is proposed the deductibles can be insured, proof that such coverage has been secured;

(d) An explanation of the financial and operational impact of Brantly failing to reach an agreement with the landlord;

(e) A detailed analysis of the projected income, expenses, and any surplus funds or additional capital available for satisfaction of the warranty claims and cure of, and/or future ability to perform under, the assumed executory contracts;[9]

(f) An explanation of what happens to the vendors, insurers and landlord if Brantly fails to perform after confirmation;

(g) The current status of all agreements in place with vendors, landlord or insurers; and

(h) To the extent relied upon in the Plan, a written commitment confirming (i) all cash to be infused into the Reorganized Superior, (ii) the continued commitment and performance of all post confirmation obligations, (iii) the terms or conditions related to same, if any, and (iv) the identity of all parties or entities making such commitments.[10]

See *In re Neutgens*, 87 B.R. 128 (Bankr. D. Montana 1987)

5. <u>TAE Agreement</u>

Superior discloses that the Creditors Trust will pay TAE $500,000 to settle TAE's claim of $18,208,260. If this is an agreed treatment, Superior should provide the terms of the agreement as set forth in the executed, written agreement.

8. <u>Discrepancies</u>

APS notes the following discrepancies in the Amended Disclosure Statement that need to be corrected or further explained:

    (a) Section II, page 6 – Contingent insurance-related claims are listed at $2,633,000 versus the filed Proof of Claim of Certain London Underwriters

---

[9] See *In re Ferretti*, 128 B.R. 16, 21 (Bankr. D. N.H. 1991)
[10] *In re Knight Energy Corp.*, 2009 WL 1651739 (Bankr. N.D. Texas 2009)

**AVIATION PARTS SUPPLY, INC.'S ADDITIONAL OBJECTIONS TO AMENDED DISCLOSURE STATEMENT OF SUPERIOR AIR PARTS, INC.  Page- 6 of 9**

(Claim # 72-1 for $6.875 Million);

(b) Section II, Page 7 – Superior alleges that "… the valid amount of General Unsecured Claims is substantially less than these amounts and [Superior] intends to file objections to disputed claims." The disclosure should identify the undisputed claims, the disputed claims and what effect, if any, there will be on the distribution if the disputed claims are or are not allowed.[11]

(c) Section V, Page 13 – A payment of $3,905,000 to TAG, the holder of 100% of Superior's stock, with respect to a purported claim of $10,146,611 and reference is made to concessions being made by TAG in return for a release of all claims against TAG. No explanation is provided as to what claims are being released and, specifically, there is no explanation as to the handling of the voidable preference payments made to TAG, an insider, as set forth on Exhibit B to the Disclosure Statement.[12] Are these being released and, if so, why?

(d) Section V, page 14 – TAG is included in the Bid Procedure and the possible "switching" of the successful bidder under the Plan without explanation. TAG is not a Plan proponent and should not be given any greater position or influence than any other creditor.

(e) Section V, page 22 – Funding of payments to creditors includes "litigation recoveries", but there is no discussion of same; see *In re Cardinal Congregate I,* 121 B.R. 760, 767 (Bankr. S.D. Ohio 1990);

(f) Section V, page 23 – Reference is made to excess funds from the sale of the Vantage engine, but this does not seem to connect with the other terms of the plan and is confusing and/or misleading;

(g) Section V, page 24 – Reference is made to Exhibits 1 and 2 as being attached, but they are not; importantly, Exhibit 1 purports to include Executory Contracts and Unexpired Leases and Exhibit 2 purports to include prepetition executory purchase orders; the holders of these contracts are entitled to know whether their contracts are being assumed or rejected prior to casting their votes.

(h) Section V, page 28 – Brantly is included in the Release and Injunction provisions, but Brantly is assuming ongoing obligations for which it remains at risk; Brantly should not be included as to those obligations;

(i) Section V, page 29 – Expense Reimbursement should be made upon the presentation of proof of reasonable and necessary expenses incurred;

---

[11] See *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991)
[12] Amended Disclosure Statement at Section IV, page 11

(j) Section V, page 32 – Brokers Fees are referenced, but not identified; if any are to be paid, they should be disclosed and the payor and payee identified;

## CONCLUSION

9. Mere conclusory statements by Superior are inadequate to provide the voters on a plan of reorganization with sufficient information for them to understand what they are going to get, when are they going to get it and what contingencies exist to the distribution.[13] Creditors are not mind readers or clairvoyant.[14] As such, the prospective voters on the proposed plan do not have information sufficient to satisfy the requirements of 11 U.S.C Section 1125.

WHEREFORE, PREMISES CONSIDERED, APS files these Additional Objections to the Amended Disclosure Statement of Superior Air Parts, Inc. and requests an order of the Court denying approval of the Amended Disclosure Statement and for such other and further relief as may be just and equitable.

DATE: July 6, 2009

        Respectfully submitted,

By: /s/Billy G. Leonard, Jr.
    BILLY G. LEONARD, JR.
    Texas State Bar No. 12208100
    1650 W. Virginia Street, Suite 211
    McKinney, Texas 75069
    (469) 742-0855
    (469) 442-0135 (Facsimile)

and

---

[13] See *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991)
[14] See *In re Egan,* 33 B.R. 672 (Bankr. N.D Ill. 1983)

**AVIATION PARTS SUPPLY, INC.'S ADDITIONAL OBJECTIONS TO AMENDED DISCLOSURE STATEMENT OF SUPERIOR AIR PARTS, INC.   Page- 8 of 9**

 Kevin H. Good  
Texas Bar No. 08139300  
Conner & Winters LLP  
1700 Pacific Avenue  
Suite 2250  
Dallas, Texas 75201  
Telephone  (214)217-8070  
Fax  (214) 217-8861  

**Attorneys for Aviation Parts Supply, Inc.**

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on the 6th day of July, 2009, a true and correct copy of the foregoing was served to those persons receiving electronic notification from the Court's electronic filing system and via e-mail to Mr. Stephen Roberts, counsel for the Debtor and Mr. Dave Parham, counsel for the Unsecured Creditors' Committee.

/s/Billy G. Leonard, Jr  
Billy G. Leonard, Jr.