## Engine Transfer Restriction Agreement

THIS Engine Transfer Restriction Agreement (this "Agreement") is made and entered into this _____ day of _____, 2009, by and between Superior Air Parts, Inc. ("Superior"), and _____, Trustee of the Superior Creditors Trust (the "Trust").

WHEREAS, Superior filed a bankruptcy petition under Chapter 11 of the United States Code (the "Bankruptcy Code") on December 31, 2008 ("Petition Date") commencing the case of *In re Superior Air Parts Inc.*, Case No. 08-36705 ("Bankruptcy Case"), in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division ("Bankruptcy Court").

WHEREAS, on or about January 29, 2009, the United States Trustee's Office formed the Official Committee of Unsecured Creditors (the "Committee");

WHEREAS, the Bankruptcy Court entered an order confirming the Plan of Reorganization (the "Plan") proposed by Aviation Parts, Supply, Inc. on _____, 2009 in the Bankruptcy Case;

WHEREAS, the Plan provides for (i) the transfer of the Trust Assets (as defined in the Plan, together with all other assets as may become part of the trust estate, the "Trust Assets"), into a newly created grantor trust, (ii) the management, safekeeping and orderly liquidation of the Trust Assets by the Trustee with direction from the Trust Advisors, (iii) the distribution to the Trust's creditors and beneficiaries of the net proceeds from the sale, lease or other disposition of all or part of the Trust Assets, and (iv) the ultimate distribution of any remaining proceeds (or if such assets cannot be sold, the distribution thereof) to the creditors and beneficiaries of the Trust in accordance with the Plan upon termination of the Trust;

WHEREAS, pursuant to the Plan all existing inventory of "SV" parts for the Vantage O-360 and IO-360 Engine (the "Vantage Engines"), all documentation from Vantage Engines already shipped or sold to any customer for the purpose of use, test or evaluation, and all intellectual property, components and parts related to the design, development, testing, and FAA approval of the Vantage Engines, FAA Type Certificate No. E00001SC, (and related approvals Transport Canada Type Certificate IE-58, European Aviation Safety Agency Type Certificate EASA.(IM).E.024, and any other certifications) including but not limited to, drawings, research, all test reports and data, engineering change requests, engineering change notices, build sheets, bill of materials, (including current and historical bill of materials, all assembly and test instructions and all continued airworthiness documentation), parts catalog and supporting data, overhaul manual and supporting data, operator and maintenance manual and supporting data, installation manual and supporting data, service letters and service bulletins (including all quality documentation, all product integrity team meeting minutes and documentation, all



warranty claims and/or customer feedback, trademarks and logos, and all marketing material, including market studys, photographs, artwork, brochures and fliers, all sales information, customer inquiries and anything else related to the Vantage Engines (the "Vantage Engine Program") were deemed Trust Assets, and transferred to the Trust;

WHEREAS, pursuant to the Plan the Trust or its designee shall be responsible for the sale of the Vantage Engine Program;

WHEREAS, Superior has agreed to the sale, license or other transfer of the Vantage Engine Program, by the Creditors' Trustee or its designee, provided that certain conditions precedent were met, including that the Trustee enter into this Agreement.

NOW, THEREFORE, in order to effectuate and comply with the terms and conditions of the Plan, the parties hereto agree as follows:

1. **Restrictions on Use of Vantage Engine Program**

    1.1    Ownership of the Vantage Engine Program. It is expressly understood that the assets which comprise the Vantage Engine Program are the property of the Trust.

    1.2    Restriction of Transfer for Lycoming type Certified engines. The Trustee may not transfer, sell, license, assign or otherwise effect any transfer of the Vantage Engine Program to a person or any of its affiliated entities (collectively the "Purchaser") that will use or permit any person to use the Vantage Engine Program to obtain Parts Manufacturer Approvals ("PMA") or other Federal Aviation Administration ("FAA") approval to make FAA approved replacement parts for Lycoming type certificated engines.

    1.3.    No restriction on selling parts into Experimental market. Notwithstanding the restrictions contained in paragraph 1.2 above, the Purchaser may use the technical data associated with the Vantage Engine Program to manufacture and sell parts to be used in experimental engines or to otherwise use the Vantage Engine Program to manufacture type certificated engines.

    1.4.    Part numbers.    The Purchaser may not manufacture parts for using the Vantage Engine Program marked with Superior's "SL" designation.

    1.5    Product Liability Insurance. The Purchaser must agree to indemnify Superior and to maintain product liability insurance to cover parts manufactured for use in the Vantage Program and for the experimental market in the minimum amount of the aggregate limit of Five Million ($5,000,000) Dollars.

## 2. Restrictions on Tooling

2.1  If the Purchaser is using the Vantage Engine Program to manufacture type certificated engines, the Purchaser will be permitted to have suppliers with tools owned by Superior (the "SAP Tooling") manufacture parts using the SAP Tooling for up to 3 years at no charge to the Purchaser.

2.2  Notwithstanding the rights granted under paragraph 2.1 above, Purchaser shall agree not to have the suppliers use the SAP Tooling to solely manufacture parts for the experimental market.

2.3  Superior agrees, and the Purchaser shall agree, that all cost of design changes to the SAP Tooling shall be borne by the requesting party or parties.

2.4  Superior agrees, and the Purchaser shall agree, that wear and tear to, and costs of replacement of the SAP Tooling, shall be apportioned based on utilization.

## 3. Miscellaneous

3.1  **Performance by Trustee or Assigns.**  The Trustee or his assignee, shall be deemed to have discharged the duties undertaken by this Agreement by obtaining an agreement in writing from the Purchaser to abide by the obligations set forth herein and to require any subsequent purchaser, licensee or transferee of the Vantage Engine Program to agree to likewise abide by such restrictions. It is expressly understood that Purchaser may not transfer the right to use SAP Tooling to any subsequent purchaser without Superior's express permission  Superior shall be deemed a third party beneficiary, with full rights to enforce all such agreements.

3.2.  **Impact on Rights of Successors, Assigns and Third Parties.** The terms of this Agreement will be binding upon any successors or permitted assigns of the parties to this Agreement.

3.3.  **Counterpart Execution.** This Agreement may be executed in multiple counterparts, each of which when so executed will be an original, and all of which will constitute one and the same instrument.

3.4.  **Conflict of Terms.**  To the extent the terms of this Agreement conflict with the Plan, the terms of the Plan shall govern.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written.

**Superior Air Parts, Inc.**

By: _____

Name/Title: _____

_____, **Trustee of the Superior Creditors Trust:**

By: _____

Name/Title:_____