TAX CONSEQUENCES FROM DEBTOR'S
DISCLOSURE STATEMENT

B.  TAX CONSEQUENCES

THE FOLLOWING DISCUSSION IS A SUMMARY OF SOME OF THE MAJOR FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO THE DEBTOR AND THE CREDITORS. SOME CONSEQUENCES OF THE PLAN ARE DIFFICULT TO EVALUATE BECAUSE OF THE LACK OF INFORMATION, LACK OF CONTROLLING LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN LAW. THE DEBTOR HAS NOT APPLIED FOR RULINGS FROM THE IRS ON ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINIONS OF COUNSEL HAVE BEEN OBTAINED. EACH HOLDER OF A CLAIM SHOULD CONSULT WITH SUCH HOLDER'S TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLANS.

No representation is made with respect to the tax effects of the Plan upon the Debtor or any creditor. Each holder of a Claim is strongly urged to consult with such holder's tax advisor regarding the federal, state, local and foreign tax (if any) consequences of the Plan. The following general information is provided by Counsel to the Debtor:

<u>Certain Tax Aspects Of Distributions Under The Plan</u>. The following summary is a discussion of certain federal income tax consequences of the implementation of the Plan to creditors and to the Debtor. This summary is based on the Internal Revenue Code of 1986, as amended (the "Code"), the Treasury Regulations promulgated and proposed thereunder (the "Regulations"), and judicial decisions and published



administrative rulings and pronouncements of the Internal Revenue Service (the "Service") as in effect on the date hereof. Legislative or administrative changes in such rules or new interpretations thereof may have retroactive effect and could significantly alter the federal income tax consequences discussed below.

The federal income tax consequences of the Plan are subject to significant uncertainties. Debtor urges creditors to seek independent professional tax advice on the issues related to the Plan. This summary addresses only those federal income tax consequences relating to the implementation of the Plan and does not address the federal income tax consequences of the transactions, distributions and exchanges occurring prior to and leading up to the Petition Date. This summary does not address foreign, state or local tax consequences of the Plan or any estate or gift tax consequences of the Plan, nor does it purport to address all the significant federal income tax consequences of the Plan. This summary also does not purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as S corporations, banks, mutual funds, insurance companies, financial institutions, business investment companies, regulated investment companies, broker-dealers, employees and tax-exempt organizations).

Federal Income Tax Consequences to Debtor. The Debtor will realize cancellation of indebtedness ("COI") income in respect of each Claim generally in an amount equal to the excess, if any, of (i) the portion of the Claim (including accrued and previously deducted but unpaid interest) from which the Debtor are (or are deemed to be) discharged over; and (ii) the sum of any cash or the "issue price" under Code §§ 1273(b) and 1274 of any debt obligations distributed under the Plan in discharge of such Claims. The exact amount of COI income realized upon consummation of the Plan has not been finally determined.

Under the Code, a taxpayer is generally required to include COI income in gross income. COI income is not includable in gross income; however, if it occurs in a case under the Bankruptcy Code, provided the taxpayer is under the jurisdiction of a Court in such case and the cancellation of indebtedness is granted by the Court or is pursuant to a plan approved by the Court, the Debtor's COI income, if any, resulting from the Plan should satisfy these requirements, and, therefore, should not result in recognition of gross income to the Debtor. COI income that is excluded from gross income will reduce certain tax attributes of the taxpayer, including net operating loss (hereinafter "NOLs") carryovers, capital loss carryovers and the tax basis of assets, in a specified order of priority beginning with the NOLs and NOL carryovers, unless the taxpayer elects to have the reduction applied first to the tax basis of depreciable assets. The reduction of tax basis is limited to the excess of (i) the aggregate of the tax bases of the taxpayer's property (determined immediately after the discharge) over; and (ii) the aggregate liabilities of the taxpayer (determined immediately after the discharge).

Federal Income Tax Consequences to Creditors.

*Generally.* The federal income tax consequences of the Plan to a creditor will depend upon numerous factors, including but not limited to: (i) whether the Creditor's

Claim (or portion thereof) constitutes a Claim for principal or interest; (ii) the type of consideration received by the Creditor in exchange for the Claim; and (iii) whether the Creditor is a resident of the United States for tax purposes (or falls into any of the special classes of taxpayers excluded from this discussion as noted above); and (iv) whether the Creditor has taken a bad debt deduction with respect to its Claim. CREDITORS ARE STRONGLY ADVISED TO CONSULT THEIR TAX ADVISORS WITH RESPECT TO THE TAX TREATMENT UNDER THE PLAN OF THEIR PARTICULAR CLAIMS.

*Creditors Holding Claims.* The federal tax consequences to Creditors will depend, initially, on the Creditors' tax basis in their Claims. A loss generally is treated as sustained in the taxable year for which there has been a closed and completed transaction, and no portion of a loss with respect to which there is a reasonable prospect of reimbursement may be deducted until it can be ascertained with reasonable certainty whether or not such reimbursement will be recovered. The time as to when a debt becomes wholly worthless for federal income tax purposes is a factual determination based on all relevant facts.

The fact that a Debtor has filed for bankruptcy protection may be an indication that a debt is worthless, but the IRS and Courts have held that bankruptcy does not conclusively establish worthlessness, especially where it appears that creditors will still receive some payments on the debt. The IRS has ruled, however, that where it appears a creditor will receive only a *de minimis* recovery on its debt, such debt may be treated as wholly worthless. Even if a debt is not wholly worthless, if the debt is partially worthless and the creditor can establish with reasonable certainty the portion of the debt that is worthless and charges that portion off of its books of account, the creditor may deduct the portion becoming worthless that tax year. Creditors may already have made their own determinations as to the portion of their claims which are worthless and deducted such amounts. In such cases, the deductions would reduce the Creditors' basis in their claims.

Creditors receiving cash, notes or other assets in exchange for their Claims will generally recognize taxable gain or loss in an amount equal to the difference between the amount realized and each such Creditor's adjusted tax basis in the Claim, to the extent that such consideration is not allocable to any portion of the Claim representing accrued and unpaid interest (see "Receipt of Interest", below) or to market discount, discussed below. The character of any recognized gain or loss (i.e., ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the Creditor, the nature of the Claim in the Creditor's hands, the purpose and circumstances of its acquisition, the Creditor's holding period of the Claim, and the extent to which the Creditor previously claimed a deduction for the worthlessness of all or a portion of the Claim.

A Creditor may receive a note or other evidence of indebtedness in exchange for part of its entire Claim, or may be deemed to have exchanged its note or other evidence of indebtedness if the terms of such note or other evidence of indebtedness are significantly modified under the provisions of Treasury Regulations § 1.1001-3. If the

terms of the note received differ materially in kind or extent from the note or evidence of indebtedness exchanged (or deemed exchanged), the exchange of the Claim for the note will be a taxable event. The amount realized in such circumstances will be the "issue price" of the note or debt obligation received pursuant to Reg. Sec. 1.1001-1(g). Depending on the Creditor's circumstances, if it has a gain on the receipt of the note, the Creditor may be eligible to report the gain on the installment method as amounts are paid on the note, unless the Creditor chooses to elect out of the installment method of reporting. In addition, such notes may carry "original issue discount," requiring the holder thereof to accrue and report interest income over the term of the note.

Generally, a debt instrument will have a "market discount" for federal income tax purposes if the debt instrument is acquired after its original issuance for less than the issue price of such instrument plus the aggregate amount, if any, of original issue discount includable in the income of all holders of such instrument prior to such acquisition. A Creditor holding a Claim with market discount must treat as ordinary income any gain recognized on the satisfaction of such Claim pursuant to the Plan, to the extent that such gain does not exceed the accrued but previously unrecognized market discount on such Claim in the hands of the Creditor.

Creditors should consult with their own tax advisors as to the matters discussed in this section concerning character and timing of recognition of gain or loss. Because a loss will be allowed as a deduction only for the taxable year in which the loss was sustained, a Creditor that claims a loss in the wrong taxable year risks denial of such loss altogether. In the case of certain categories of Claims, consideration should be given to the possible availability of a bad debt deduction under § 166 of the Code for a period prior to the Effective Date. In addition, a portion of any distributions received after the Effective Date may be taxed as ordinary income under the imputed interest rules.

*Receipt of Interest.* If any portion of the distribution is allocated to accrued but unpaid interest, such portion would be taxable to the Creditor as interest income, except to the extent the Creditor has previously reported such interest as income. In the event that a Creditor has previously reported the interest income, only the balance of the distribution after the allocation of proceeds to accrued interest would be considered received by the Creditor in respect of the principal amount of the Claim. Such an allocation to accrued but unpaid interest would reduce the amount of the gain, or increase the amount of loss, realized by the Creditor with respect to the Claim. If such loss were a capital loss, it would not offset any amount of the distribution that was treated as ordinary interest income (except, in the case of individuals, to the limited extent that capital losses may be deducted against ordinary income).

<u>Tax Reporting and Backup Withholding</u>. The payment to creditors may be subject to applicable withholding. For example, under federal income tax law, interest, dividends and other reportable payments may, under certain circumstances, be subject to backup withholding. Backup withholding generally applies only if the holder (i) fails to furnish its social security number or other taxpayer identification number ("TIN"); (ii) furnishes an incorrect TIN; (iii) fails to properly report interest or dividends; or (iv) under

certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is its correct number and that it is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including corporations and financial institutions.

Importance of obtaining professional tax advice. The foregoing is intended to be a summary only and not a substitute for consultation with a tax professional. The federal, state, local and foreign tax consequences of the Plan are complex and, in some respects, uncertain. Such consequences may also vary based upon the individual circumstances of each holder of a Claim. Accordingly, each holder of a Claim is strongly urged to consult with its own tax advisor regarding the federal, state, local and foreign tax consequences of the Plan.

THE FOREGOING DESCRIPTION OF FEDERAL INCOME TAX CONSEQUENCES IS INTENDED MERELY AS AN AID FOR CREDITORS, AND NEITHER THE DEBTOR, THE COMMITTEE, NOR THEIR COUNSEL ASSUME ANY RESPONSIBILITY IN CONNECTION WITH THE INCOME TAX LIABILITY OF ANY CREDITOR.

THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN MANY RESPECTS, UNCERTAIN. THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND, AS SUCH, DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR CREDITOR. ALL CREDITORS ARE STRONGLY URGED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES OF THE PLAN THAT ARE RELEVANT TO THEIR PARTICULAR CIRCUMSTANCES.