Stephen Roberts
Texas Bar No. 17019200
Robert P. Franke
Texas Bar No. 07371200
Duane J. Brescia
Texas Bar No. 24025265
**STRASBURGER & PRICE, LLP**
600 Congress, Suite 1600
Austin, Texas 78701
(512) 499-3600 / (512) 499-3660 Fax

**ATTORNEYS FOR DEBTOR SUPERIOR AIR PARTS, INC.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** § | Case No. 08-36705 | |
| § | | |
| **SUPERIOR AIR PARTS, INC.,** § | Chapter 11 | |
| § | | |
| Debtor. § | | |
| § | | |

**DEBTOR'S OBJECTION TO THE FIRST AMENDED DISCLOSURE STATEMENT
DATED AUGUST 4, 2009 FILED BY AVIATION PARTS SUPPLY, INC.[DOCKET NO. 335]**

Superior Air Parts, Inc., ("Debtor" or "Superior") files this Objection to the First Amended Disclosure Statement Dated August 4, 2009 filed by Aviation Parts Supply, Inc. and in support thereof states as follows:

**I.
SUMMARY**

1. The First Amended Plan of Reorganization ("APS Plan") filed by Aviation Parts Supply, Inc, ("APS") on August 4, 2009 is a patently unconfirmable plan which can not be approved by the Court as a matter of law.[1] Approval of APS's First Amended Disclosure Statement ("APS Disclosure Statement") should be denied for that reason

---

[1] The APS Disclosure Statement fails to disclose that this is one reason the Official Committee of Unsecured Creditors opposed efforts by APS to expedite consideration of its plan.

alone. *In re U.S. Brass Corp.*, 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996). There are so many misleading statements and misrepresentations in the APS Disclosure Statement and the APS Plan is so defective that it appears that APS filed and served its Disclosure Statement and Plan to create the illusion that APS is offering the creditors a favorable alternative to the Joint Plan proposed by the Debtor and the Official Committee of Unsecured Creditors ("Committee") set for confirmation on August 26, 2009. The APS Plan is not a legitimate alternative.

2.    In filing the APS Plan, it appears that APS is attempting to circumvent the prohibition under § 1125(b) of the Bankruptcy Code against parties soliciting votes against a Plan based on information in a disclosure statement that has not been approved by the Court as containing adequate information to fairly inform the creditors.

3.    Under the Debtor's Joint Plan, the Brantly Group ("Brantly") will fund the payment of $7.0 million to Superior's unsecured creditors, subject to adjustments based upon levels of inventory, accounts receivable, and cash as of August 31, 2009. The Reorganized Superior, to be owned by Brantly, will continue its piece parts business and revive its cylinder and engine programs under current management. Creditors are urged to read the Joint Disclosure Statement filed by the Debtor and the Committee dated July 23, 2009 in its entirety in deciding whether to vote for or against the Joint Plan. In comparison, the APS Plan offers unsecured creditors a cash distribution up to $2.5 million[2] for the piece parts business only, subject to adjustments based upon levels of inventory, accounts receivable, and cash if and when the APS Plan is confirmed. APS proposes the continuation of only the piece parts business.

---

[2] The APS Plan proposes that Superior's engine program be sold at a later date and the proceeds paid only to Thielert A.G. ("TAG"), the Debtor's parent, not to general unsecured creditors.

4.     The APS Disclosure Statement fails to disclose that the APS Plan depends on APS prevailing in a lawsuit (the "APS Lawsuit") they filed just last week against Thielert AG ("TAG"), the Debtor's parent, and Thielert Aircraft Engines GmbH ("TAE"), the Debtor's affiliate.  It also fails to disclose that the APS Lawsuit could take over a year to reach trial, and that, by that time, the Debtor would not only most likely be out of business, the Debtor's level of cash, inventory, and accounts receivable would be so low that the creditors would not receive anything under the APS Plan.

5.     The APS Disclosure Statement fails to disclose that the APS Plan cannot be confirmed without the support of TAG.[3]  Under §1122 of the Bankruptcy Code, a plan proponent must treat all similar creditors, such as all unsecured creditors, the same. TAG has an unsecured claim for $10,146,611. The APS Plan puts all unsecured creditors in Class 7, except for TAG, which is placed in Class 9. The APS Plan proposes to give the Class 7 unsecured creditors pro rata payments from the $2.5 million cash fund, but give TAG the engine program in payment of its claim.  However, TAG has notified the Debtor that it will not accept this different treatment.  For this reason alone, the APS Plan cannot be confirmed on its face.  In addition, even if APS were to put TAG into Class 7, TAG has a blocking vote for Class 7, based upon the size of its claim as compared to the rest of Class 7.  Without TAG's support, the APS Plan simply cannot be confirmed.

6.     Both plans require that the Debtor have $2.0 million in cash at closing.  In effect, under the APS Plan, APS is offering to pay a net of $500,000 to fund the $2.5 million cash distribution to the Class 7 unsecured creditors.  Specifically, the APS

---

[3] Unless APS ultimately prevails against TAG in the APS Lawsuit.

Disclosure Statement discloses that the $2.5 million cash distribution to Class 7 will be reduced to the extent Superior has less than $2.0 million in cash at closing and to the extent that Superior's levels of inventory and accounts receivable are less than $9.14 million at closing. What the APS Disclosure Statement fails to disclose is that the Debtor currently projects that the levels of its cash, inventory and accounts receivable will be at least $500,000 less than these minimum levels by the time that the APS Plan could be approved (even if it were approved by September 30, 2009). Therefore, APS could wind up paying <u>nothing</u> for Superior.

   7. The APS Disclosure Statement contains wildly inaccurate estimates of distribution to creditors, claiming that unsecured creditors will receive 79.9% to 100% of their claims under the APS Plan. This is objectively false and misleading and is based in false assumptions and calculations. APS should disclose that it is possible that the unsecured creditors will not receive any payments under the APS Plan. The Court should require that the APS Disclosure Statement contain all of the assumptions upon which its estimates are based and the impact on distributions if such assumptions are incorrect. Such discussion should include the assumptions that APS will prevail in its lawsuit against TAG, that the Debtor's cash, inventory and accounts receivable will remain constant instead of significantly declining as projected by the Debtor, and that APS can successfully object to enough of the claims filed by the trade creditors and other unsecured creditors to reduce the total amount of claims by over a half million dollars at no cost to the creditors.

   8. The APS Disclosure Statement fails to disclose that APS has made numerous offers over the past year, which APS has changed, reduced and withdrawn

such offers at will, that APS has never offered to make an initial earnest money deposit in connection with any of its offers, and that APS could withdraw its proposed Plan at anytime without penalty.[4] The APS Disclosure Statement fails to disclose that APS, which is a shell corporation formed solely for this acquisition, has never disclosed the identity of its principals to the Debtor.[5] APS has not done so despite its claims that they have considerable expertise in the industry. APS has also not disclosed any ability it actually has to fund the acquisition, or what loan commitments it has obtained, in spite of the Debtor's offer to keep such information confidential.

## II.
## BACKGROUND

9. On August 4, 2009, APS filed an amendment to its own competing plan, the APS Plan and the APS Disclosure Statement.[6] Essentially, the APS Plan proposes to buy only the Debtor's piece parts business for sum of $2.5 million with certain adjustments, leaving the Debtor's Vantage Engine Program to be later sold and all proceeds paid to TAG. Hearing to approve the APS Disclosure Statement is set for August 26, 2009. The deadline for objections is August 20, 2009 and said time has not expired.

## III.
## LEGAL STANDARD

10. Disapproval of the adequacy of a disclosure statement is appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible. *In re U.S. Brass Corp.,* 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996).

---

[4] Under the APS Plan, APS is not required to put up their $250,000 Deposit until three (3) days prior to confirmation.
[5] Other than the three litigation attorneys with one of the Debtor's previous law firms.
[6] APS's original plan and disclosure statement were filed on July 15, 2009.

Approval of a disclosure statement is governed by § 1125 of the Bankruptcy Code, which states in relevant part:

> (b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

"Adequate information" is defined in § 1125(a)(1) of the Bankruptcy Code to mean:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.

What is adequate information is decided on a case-by-case basis and left largely to the discretion of the bankruptcy court. *U.S. Brass,* 194 B.R at 422; *Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998).

    11.    The purpose of the disclosure statement is not to assure acceptance or rejection of a plan, but to provide enough information to interested persons so they may make an informed choice between two alternatives. *U.S. Brass* 194 B.R. at 422; *In re Stanley Hotel, Inc.,* 13 B.R. 926, 930 (Bankr. D.Colo. 1981). Accordingly, the following factors of disclosure may be necessary to meet the statutory requirement of adequate information:

> (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors

under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectability of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under *425 the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a non-bankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with the affiliates.

*U.S. Brass* 194 B.R. at 424-25 (citing *In re Metrocraft Pub. Services, Inc.*, 39 B.R. 567, 568 (Bankr. N.D.Ga. 1984)).

## IV.
## OBJECTIONS

**A.  The APS Plan is patently unconfirmable because TAG – who has a blocking vote - has not agreed to its proposed treatment.**

12. It is improper to approve a disclosure statement for a plan that is patently unconfirmable. *U.S. Brass*, 194 B.R. at 422. The APS Plan is not confirmable because it improperly classifies the claim of TAG. In addition, TAG - **the Debtor's largest unsecured creditor who possesses a blocking vote** - has not agreed to the alternate treatment.

13. Under §1122 of the Bankruptcy Code, a plan "may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class." In other words, a plan generally cannot discriminate among similarly situated creditors. *In re Greystone III Joint Venture*, 995 F.2d 1274, (5th Cir. 1991) *cert. den.* 506 U.S. 821, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992)(similar claims may not be separately classified in order to gerrymander an affirmative vote on reorganization); *In re Briscoe Enter.,* Ltd. II, 994 F.2d 1160, 1167 (5th

Cir. 1993); *In re Bernhard Steiner Pianos USA, Inc.,* 292 B.R. 109, 114-15 (Bankr. N.D.Tex. 2002).

14.  The APS plan puts the $10,146,611.11 unsecured claim of TAG into Class 9, instead with the other Unsecured Creditors in Class 7. Class 7 Creditors are to receive *pro rata* payments from a $2.5 million fund, after all other required payments are first made from the fund.[7] TAG's claim is placed in Class 9 Claim and will only receive proceeds from the subsequent sale of the Debtor's engine program, if any. TAG has not agreed to this separate classification and treatment. Therefore, the APS plan violates §1122 and is unconfirmable on its face.

15.  Moreover, TAG's blocking vote makes the plan unconfirmable even if APS were to amend the APS Plan and move TAG into Class 7. In order for any plan to be confirmed, it must be accepted by each class of claims. See 11 U.S.C. § 1129(a)(8). For a class to accept a plan, it must be accepted by creditors holding at least two-thirds (2/3) in dollar amount and one-half (1/2) in number of claims for each class. 11 U.S.C. §1126(c). The Debtor and APS estimate that the total possible amount of unsecured claims against the bankruptcy estate is approximately $11.63 million, excluding TAG and TAE, (whose claims total approximately $28,354,871), although this number may end up substantially lower based upon numerous contingencies.[8] However, even if the highest possible number were to be allowed, TAG (with a claim of $10,146.611.11) still holds a blocking vote because its claim will be almost as large or larger than the entire remaining Claims in Class 7. The APS Plan cannot meet the "2/3 in dollar amount"

---

[7] As demonstrated in *Section B*, below, the Debtor estimates the available fund after payment of these priority claims will be closer to $800,000.
[8] Both the Debtor and APS estimate a lower number in actual allowed claims. APS optimistically projects the unsecured claims to be approximately $1.5 million, which is unsubstantiated by APS.

requirement of §1126(c) under any scenario, <u>especially</u> if other unsecured claims are $1.5 million, as APS suggests.  Thus, the APS Plan is still unconfirmable even if it amended the APS Plan to properly classify TAG's Claim.

16.   This position is in accord with rulings in other jurisdictions.  See *In re Comandante Management Co., LLC*, 359 B.R. 410, 415-16 (Bankr. D.P.R. 2006)(court cannot approve disclosure statement if chapter 11 plan is unconfirmable on its face.); In *re 266 Washington Assocs.*, 141 B.R. 275, 288, aff'd, 147 B.R. 827 (E.D.N.Y. 1992) (classification of unsecured portion of a partially secured claim in a separate class rendered plan "fatally flawed and incapable of confirmation"); *In re Stoneridge Apts.*, 125 B.R. 794, 796 (Bankr. W.D. Mo. 1991)(same); see also *In re Market Square Inn, Inc.*, 163 B.R. 64, 67-68 (Bankr. W.D.Pa. 1994)("We conclude that [the creditor] cannot be compelled to voluntarily release his claim" and since it is clear that the plan is not capable of confirmation, it is "appropriate to refuse approval of the disclosure statement.").

17.   Finally, TAG has not agreed to the Transfer Restriction Agreement, which is required under the APS Plan.

18.   APS's solution is to file an Adversary Proceeding against TAG (and TAE) on alleged subordination and recharacterization claims.  The merits of these claims aside, it will be months before they are resolved, and consequently months before the APS Plan can be confirmed.  By that time, the Debtor will have run out of money and will have to be liquidated with very little return for creditors.

19.   The APS Disclosure Statement must address all of these issues and contingencies.

**B.    Misleading estimates for payout to creditors.**

20.    The APS Disclosure Statement states that the projected fund to pay the Class 7 Creditors will be approximately $2.0 million. This is incorrect.

21.    For instance, the APS Plan requires an initial cash contribution of $2.5 million, less adjustments, to be placed into a Creditors' Trust for payment. One adjustment is that the $2.5 million price is reduced dollar-for-dollar if the Debtor possesses less than $2.0 million in cash at closing. The APS Disclosure Statement projects $2.4 million in available cash[9]. However, the Debtor's most recent estimate projects only $1,214,227 in cash by the end of September, which is APS's conditional date to close. At best, the $2.5 million contribution will be reduced by almost $800,000. Similar reductions could apply for accounts receivable and inventory, which are expected to be well below the $9.14 million required by the APS Plan by the time the APS Plan could close.

22.    From this reduced fund, all Administrative Claims (see §3.1 of the APS Plan) and the Claim of TAE (Class 8) are to be paid first. Administrative Claims are not estimated by APS but will be substantial. TAE is to be paid $500,000. Therefore, while the total amount to be paid to unsecured creditors is uncertain, APS's $2.0 million projection is too high and misleading.

23.    Furthermore, the APS Plan in Section 6.7 requires all open purchase orders to be assumed if the vendor agrees to a modified delivery schedule. Yet, there is no accounting for the $5.2 million in open purchase orders in APS's *pro formas*. Moreover, APS is not operating the engine program, and will not commence the cylinder

---

[9] APS apparently took this projection from a much earlier analysis, maybe as early as May or June 2009.

and experimental engines for at least a year. Either APS will be paying a huge sum for unusable inventory or its projected allowable claims will be drastically higher than the $1.5 million alleged.

24.     APS projects that there will be $1.5 million in unsecured claims. However, page 15 of the APS Disclosure Statement states that there will be $11.63 million in unsecured claims, excluding TAG and TAE. Many of the reductions that APS takes for granted are actually contingent or estimated reductions.

25.     The APS Disclosure Statement should be amended to accurately reflect and describe the contingencies and risks associated with them and the effect on the Class 7 Creditors. The projected 79.9% to 100% payout is completely unsubstantiated.

**C.    No Proof of Financing Commitment.**

26.     APS, or one of its principals, has been in negotiations with Superior as a potential purchaser of the piece parts business since the summer of 2008, over **14 months ago**. During this entire time, APS has never been able to substantiate, to any degree of certainty, its ability to fund and close any purchase. APS is spearheaded by three lawyers. It is not a going concern company. It has no current operations and no historical performance to measure its operational ability. According to APS, APS is made up of a small group of Superior's former distributors and engine shops with a "principle interest of ensuring continued competition with the OEMs in the aftermarket engine parts." See APS Disclosure Statement, p. 9. The APS Disclosure Statement should disclose APS's financial ability to close and information to support its claim that its principals bring substantial industry experience.

**D.    Miscellaneous Objections.**

27. The Debtor also objects to the APS Disclosure Statement for the following reasons:

(a) <u>Deposit</u>. Section 6.3 of the APS Plan requires APS to put up a $250,000 Deposit three (3) days prior to the confirmation hearing. Meaning, after approval of their disclosure statement, after the solicitation to all creditors, APS can still walk away or change their plan three (3) days prior to confirmation *with absolutely no cost to APS*. This risk to creditors is significant because APS previously walked away in June 2009 on a plan to be proposed by the Debtor and the Committee with APS serving as the stalking horse when APS learned that the Debtor and the Committee were talking to Brantly. Then, just as now, APS had "no skin in the game" and chose to walk away. This factor and a description of APS's previous withdrawals of their offers must be included.

(b) <u>Principals</u>. The disclosed principals of APS are three products liability lawyers with no former business experience in the aviation industry and a retired former president of Superior. There is no description on how this management team will translate to future performance, given the recent economic downturn in the United States and its effect on the aviation industry.

(c) <u>Class 9 – Claims against TAG and TAE</u>. In its treatment of the Class 9 Claim of TAG, APS suggests that the claims against TAG should be subordinated or re-characterized as equity. The APS Disclosure Statement suggests that APS will pursue this claim. On August 4, 2009, APS filed an adversary proceeding (the "APS Lawsuit") against TAG and TAE on these alleged claims. The APS Lawsuit is not described at all in the APS Disclosure Statement, much less how its cost and the success or failure of the APS Lawsuit may affect the APS Plan and creditors. Given TAG's blocking vote, this information is crucial.

(d) <u>Art I, Section E - Economic Factors</u>. Projections are based upon the "stable" past performance of Superior, with alleged feasibility being accomplished mainly due to cost savings from reduced insurance requirements and a reduction in G&A expenses. However, this "past performance" calculation does not take into account the recent economic downturn in the United States and its effect on the aviation industry in the U.S. Projected revenue could be significantly less. There is virtually no description of the current U.S. aviation market.

(e) <u>Art. I, Section E - Lease</u>. APS says it plans to stay at the Debtor's current location. However, section 6.8 of the APS plan says that it is currently negotiating with the landlord, and if an agreement is not reached, the lease will be rejected and APS forced to move. The *pro formas* provided by APS rely on numerous cost savings measures contingent upon APS being able to remain at its current location, which is not assured. The APS Disclosure Statement should address this contingency and the effect on its *pro formas*.

(f) <u>Art. III – Claims</u>.  The APS Disclosure Statement provides information that Unsecured Claims, excluding TAE and TAG, could be as low as $1.5 million.  However, that same section estimates unsecured claims at over $11,634,000.  APS's claim that it its plan "rewinds the clock" is confusing and further analysis is required.

(g) <u>Art. VI, Section C - Causes of Action</u>.  This section describes a potential claim of the Debtor against TAG for payments not made in the ordinary course.  No further analysis or its effect on creditors is provided.  These claims do not appear to be part of the APS Lawsuit.  There is no description of who may pursue this lawsuit, how it will be funded, or the potential costs and timing associated with such a lawsuit.

(h) <u>Art. VII, Section A – Funding</u>.  This section states that the Vantage Engine Program will be sold for "the benefit of creditors," but the treatment of the Class 9 Claim of TAG states that all proceeds will be paid to TAG, an apparent inconsistency.

(i) <u>Art. VII, Section D – Vantage Engine Program</u>.  There is no proof for the estimated $4.0 to $5.0 million in proceeds for the Vantage Engine Program, to be sold in the future.  While these numbers may have been suggested to APS by the Committee in the past, it is not reasonable for APS to rely solely upon the Committee's opinion for such an integral piece of the Plan.  Further analysis is warranted.

(j) <u>Art. VII, Section G - Payout</u>.  APS's estimation of a 79 % to 100% payout to creditors is not substantiated at all.

(k) <u>Art. VII, Section F - TAE</u>.  There is an insufficient description of the "long-term supply contract" that APS has entered into with TAE.  This contract could have a substantial effect on other creditors.  Furthermore, TAE's main parts supply to Superior is cylinders and engines.  Because the Vantage Engine Program will be transferred to the Creditors' Trust for liquidation to the benefit of TAG only, the APS Disclosure Statement needs to explain why the contract is necessary and how it will affect creditors.  The *pro formas* do not appear to account for these products, although APS suggests it will buy "camshafts, crankshafts, connecting rods and roller lifters" from TAE.  APS does not describe why it sued TAE in the APS Lawsuit when it also states that it already has a settlement with TAE.

(l) <u>Art. VII, Section F – Warranty Claims</u>.  The APS Disclosure Statement does not contain an analysis of the warranty claims and whether the filed proofs of claim are considered valid or objectionable.

(m) <u>Art. VII, Section C - Secured Claims</u>.  The APS Disclosure Statement does not value any collateral, which might be returned in full

satisfaction of the claim, the deficiency for which will be a Class 7 General Unsecured Claim.

WHEREFORE, the Debtor respectfully requests that this Court deny approval of the APS Disclosure Statement and award the Debtor such other and further relief that this Court deems just and proper.

> Respectfully submitted,
>
> /s/ *Stephen A. Roberts*
> Stephen A. Roberts (SBN 17019200)
> Robert P. Franke (SBN 07371200)
> Duane J. Brescia (SBN 24025265)
> **STRASBURGER & PRICE, LLP**
> 600 Congress, Suite 1600
> Austin, Texas 78701
> Tel. (512) 499-3600/Fax (512) 499-3643
> stephen.roberts@strasburger.com
> bob.franke@strasburger.com
> duane.brescia@strasburger.com
>
> **Attorneys for Debtor Superior Air Parts, Inc.**

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that a true and correct copy of the foregoing document was transmitted via electronic mail to parties listed below August 10, 2009 and to the parties on the attached Service List via first Class, United States Mail, postage prepaid on the 11th day of August, 2009.

Billy G. Leonard, Jr.
Attorney at Law
1650 W. Virginia Street, Suite 211
McKinney, TX 75069
Email: bleonard@billyleonardlaw.com

Matthew Okin
Okin Adams & Kilmer LLP
1113 Vine Street, Suite 201
Houston, TX 77002
Email: mokin@oakllp.com

Tom Tong
Tong & Sung, P.C.
3050 Post Oak Blvd., Suite 1720
Houston, Texas 77056
Email: tomtong@tonglawfirm.com

Kevin H. Good
Conner & Winters, LLP
1700 Pacific Avenue, Suite 2250
Dallas, TX 75201
Email: kgood@cwlaw.com

Chester B. Salomon
Becker, Glynn, Melamed & Muffly LLP
299 Park Avenue
New York, NY 10171
Email: csalomon@beckerglynn.com

David W. Parham
Elliot D. Schuler
BAKER & McKENZIE LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
Email: david.w.parham@bakernet.com
         elliot.d.schuler@bakernet.com


*/s/ Duane J. Brescia*
Duane J. Brescia

| | | |
|---|---|---|
| Theilert Aircraft Engines<br>Nieritzstr 14 D-01097<br>Dresden Germany | Mahle Engine Components<br>60428 Marine Road<br>Atlantic IA 50022-8291 | KS-Pistoes<br>Rodovia Arnald, Julio Mauberg<br>4000 Disrito Industrial No<br>Nova Odessa SP Brasil CAIZA Postal 91<br>CEP 13460-000 |
| Airsure Limited<br>Dallas Office<br>5700 Granite Parkway, #550<br>Plano, TX 75024-6647 | ECK Industries, Inc.<br>1602 North 8th Street<br>Manitowoc, WI 54221-0967 | Mahle Engine Components<br>14161 Manchester Road<br>Manchester, MO 63011 |
| Crane Cams<br>2531 Tail Spin Trail<br>Daytona Beach, FL 32128-6743 | Corley Gasket Co.<br>6555 Hunnicut Road<br>Dallas TX 75227 | Saturn Fasteners Inc.<br>425 S. Varney St.<br>Burbank, CA 91502 |
| Champion Aerospace, Inc.<br>1230 Old Norris Road<br>Liberty, SC 29654-0686 | Ohio Gasket & Shim<br>976 Evans Ave.<br>Akron, OH 44305 | Gerhardt Gear<br>133 East Santa Anita<br>Burbank CA 91502-1926 |
| Automatic Screw Machine<br>709 2nd Avenue SE<br>Decatur, AL 35601 | Helio Precision Products<br>601 North Skokie Highway<br>Lake Bluff, IL 60044 | Knappe & Koester Inc.<br>18 Bradco Street<br>Keen, NH 3431 |
| Garlock-Metallic Gasket Div<br>250 Portwall St., Ste. 300<br>Houston, TX 77029 | AOPA Pilot<br>PO Box 973<br>Frederick, MD 21701 | Mahle Engine Components<br>17226 Industrial HWY<br>Caldwell, OH 43724-9779 |
| Genesee Stamping & Fabricating<br>1470 Avenue T<br>Grand Prairie, TX 75050-1222 | Seal Science<br>17131 Daimler<br>Irvine, CA 92614-5508 | Internal Revenue Service<br>Special Procedures - Insolvency<br>P.O. Box 21126<br>Philadelphia, PA 19114 |
| Deirdre B. Ruckman/AVCO<br>Gardere Wynne Sewell LLP<br>1601 Elm Street, Ste. 3000<br>Dallas, TX 75201 | David Childs, Ph.D.<br>Dallas County Tax Assessor/Collector<br>500 Elm Street, Records Building<br>Dallas, TX 75202 | Thielert AG<br>Albert-Einstein-Ring 11<br>D-22761, Hamburg Germany |
| Betsy Price, Tax Assessor Collector<br>100 E. Weatherford<br>PO Box 961018<br>Fort Worth, TX 76196 | Hartford Aircraft Products<br>94 Old Poquonock Road<br>Bloomfield, CT 06002 | Ace Grinding & Machine Company<br>2020 Winner Street<br>Walled Lake, MI 48390 |
| Lynden International<br>1800 International Blvd. #800<br>Seattle, WA 98188 | Combustion Technologies, Inc.<br>1804 Slatesville Road<br>Chatham, VA 24531 | Ruhrtaler Gesenkschmiede<br>F.W. Wengler GMBH & Co. KG, Feld<br>Witten, Germany 58456 |

| | | |
|---|---|---|
| Chester Salomon<br>Becker, Glynn, Melamed & Muffly LLP<br>299 Park Avenue<br>New York, NY 10171 | City of Coppell/Coppell ISD<br>Mary McGuffey, Tax Assessor Collector<br>PO Box 9478<br>Coppell, TX 75019 | Kent Abercrombie<br>Superior Air Parts, Inc.<br>621 S. Royal Lane, Suite 100<br>Coppell, TX 75019-3805 |
| Neil J. Orleans<br>Goins, Underkofler, et al, LLP<br>1201 Elm Street, Ste. 4800<br>Dallas, TX 75270 | Howard A. Borg/James T. Jacks<br>Ass't US Atty for FAA<br>Burnett Plaza, Suite 1700<br>801 Cherry Street, Unit 4<br>Fort Worth, Texas 76102-6882 | Laurie A. Spindler<br>Linebarger Goggan et al, LLP<br>2323 Bryan Street Suite 1600<br>Dallas, TX 75201 |
| Jeffrey N. Thom, Q.C.<br>Miller Thomson LLP<br>3000, 700 - 9th Avenue SW<br>Calgary, AB   T2P 3V4 | Gordon J. Toering<br>**WARNER NORCROSS & JUDD LLP**<br>900 Fifth Third Center<br>111 Lyon Street, NW<br>Grand Rapids, Michigan 49503 | Anita F. McMahon<br>1646 Belmont Ave.<br>Baton Rouge, LA  70808 |
| Michael L. Jones<br>Henry & Jones, LLP<br>2902 Carlisle Street, Ste. 150<br>Dallas, TX  75204 | LARRY K. HERCULES<br>ATTORNEY AT LAW<br>1400 Preston Road, Suite 280<br>Plano, Texas 75093 | Gregory B. Gill, Jr.<br>Gill & Gill, S.C.<br>128 North Durkee St.<br>Appleton, WI 54911 |
| Laura Boyle<br>TW Telecom, Inc.<br>10475 Park Meadows, Dr. #400<br>Littleton, CO  80124 | Melissa S. Hayward<br>LOCKE LORD BISSELL& LIDDELL LLP<br>2200 Ross Avenue, Suite 2200<br>Dallas, Texas 75201<br>Counsel for the Insurers | Vincent Slusher/J. Seth Moore<br>Beirne Maynard & Parsons, LLP<br>1700 Pacific Ave., Ste. 4400<br>Dallas, TX  75201<br>Attys for Theilert Aircraft Engines GMBH |
| Mary Frances Durham<br>U.S. Department of Justice<br>Office of the United States Trustee<br>1100 Commerce Street, Room 976<br>Dallas, TX 75242 | Stefano Gazzola<br>Zanzi, S.p.A.<br>Corso Vercelli, 159<br>10015 Ivrea, Italy | Piyush Kakar<br>Seal Science Inc.<br>17131 Daimler<br>Irvine, CA 92614 |
| Jim Griffin<br>Hartford Aircraft Products<br>94 Old Poquonock Road<br>Bloomfield, CT 06002 | Phil Eck<br>Eck Industries, Inc.<br>1602 North 8th Street<br>Manitowoc, WI 54221-0967 | Werner Wilhelm Albus/Valeria de Freitas Mesquita/KSPG Automotive Brazil LTDA<br>Rodovia Arnaldo Julio Mauerbert,<br> n. 4000-Distrito Industrial 01<br>Nova Odessa- SP Brasil, Caixa Postal 91 |
| Ronald Weaver<br>Avstar<br>1365 Park Lane South<br>Jupiter, Fl 33458 | Linda Boyle<br>TW Telecom, Inc.<br>10475 Park Meadows Dr. #400<br>Littleton, CO 80124 | Susan B. Hersh<br>12770 Coit Rd. Ste. 1100<br>Dallas, TX  75251 |
| William G. Burd/Krystina N. Jiron<br>Atkinson & Brownell, PA<br>2 South Biscayne Blvd., Suite 3750<br>Miami, FL 33131 | David W. Parham,<br>Elliot Schuler & A. Swick<br>Baker & McKenzie LLP<br>2001 Ross Ave., Suite 2300<br>Dallas, TX  75201 | Timothy S. McFadden<br>LOCKE LORD BISSELL& LIDDELL LLP<br>111 South Wacker Drive<br>Chicago, IL 60606<br>Counsel for the Insurers |
| Billy G. Leonard, Jr.<br>Attorney at Law<br>1650 W. Virginia Street, Suite 211<br>McKinney, Texas 75069 | Kevin H. Good<br>Conner & Winters LLP<br>1700 Pacific Avenue<br>Suite 2250<br>Dallas, Texas 75201 | Rosa R. Orenstein<br>LOOPER, REED & McGRAW, P.C.<br>4100 Thanksgiving Tower<br>1601 Elm Street<br>Dallas, TX 75201 |

Kenneth A. Hill
QUILLING, SELANDER, CUMMISKEY
& LOWNDS, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201