Kevin H. Good
Texas Bar No. 08139300
Conner & Winters LLP
1700 Pacific Avenue
Suite 2250
Dallas, Texas 75201
Telephone  (214)217-8070
Fax  (214) 217-8861

and

Billy G. Leonard, Jr.
Texas Bar No. 12208100
Attorney at Law
1650 W. Virginia Street, Suite 211
McKinney, Texas 75069-7703
Telephone  (469) 742-0855
Fax  (469) 442-0135

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 08-36705-BJH-1I |
| SUPERIOR AIR PARTS, INC., | § | |
| | § | |
| DEBTOR-IN-POSSESSION. | § | |
| | § | Chapter 11 |
| | § | |
| AVIATION PARTS SUPPLY, INC., | § | Adversary No. _____ |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| THIELERT AIRCRAFT ENGINES | § | |
| GmbH and THIELERT AG, | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT
## AND
## OBJECTION TO CLAIM NUMBERS 46 and 70

TO THE HONORABLE BARBARA J. HOUSER,
UNITED STATES BANKRUPTCY JUDGE:



Aviation Parts Supply, Inc. ("Plaintiff" or "APS"), by and through its undersigned counsel, files this Complaint and for cause of action respectfully states:

## I.

## Preliminary Statement

1.     Superior Air Parts, Inc. ("Superior" or the "Debtor") was a leader in aftermarket parts for piston driven aircraft engines. For almost forty years, Superior remained a closely held company and continued to operate profitably.

2.     Defendant Thielert AG ("TAG") is the parent corporation of Defendant Thielert Aircraft Engines GmbH ("TAE") and Superior.   These entities were owned and controlled during all relevant points in time by Frank Thielert ("Thielert"), who was the controlling shareholder and director of all three companies.   Thielert was ultimately removed from management.

3.     By way of this Complaint, APS seeks to recharacterize the entire claim of TAE as equity and/or equitably subordinate the claims of TAG and TAE below the APS claim and below the claims of all unsecured creditors.

## II.

## Parties

4.     Plaintiff is a creditor and interested party of Debtor.

5.     Defendant TAE is an affiliate of the Debtor, has generally appeared and has asserted a general unsecured claim in this case.  Defendant TAE may be served with process by and through its counsel of record, Vincent P. Slusher, Esq., Beirne, Maynard & Parson, LLP, 1700 Pacific Avenue, Suite 4400, Dallas, Texas 75201.

6.     Defendant TAG is the owner of all of the shares of the Debtor, has generally appeared and has filed a proof of claim in this case asserting a secured position in substantially all of Superior's assets.  Defendant TAG may be served with process by and through its counsel of record, Chester B. Salomon, Esq., Becker, Glynn, Melamed & Muffly LLP, 299 Park Avenue, 16th Floor, New York, New York 10171.

### III.

### Jurisdiction and Procedural Background

7.     This Court exercises jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

8.     This is a core proceeding under 28 U.S.C. § 157(b)(2)(A),(B), (C), or (O).

9.     Pursuant to 28 U.S.C. §§ 1408 and 1409, venue is proper in this Court.

10.    This adversary proceeding is brought pursuant to Sections 547 and 550 of title 11 of the United States Code (the "Bankruptcy Code").

### IV.

### Standing

11.    APS is a creditor of the Debtor and, as such, has standing to file suit to recharacterize the claim of TAE and equitably subordinate the claim of TAG to the APS claim.  See 11 U.S.C.  Section 510(c); *In re Vitreous Steel Prods. Co.*, 911 F2d 1223, 1230-1231 (7th Cir. 1990); In *re Andrews*, 2009 WL 1076831 (Bankr.  S. D. Texas 2009).

12.    Moreover, under the facts presented in this case, APS seeks the special authorization of the Court, if necessary[1], to act on behalf of the unsecured creditors

---

[1] *In re Hoffinger Industries, Inc.*, 327 B.R. 389 (Bankr. E.D. Arkansas 2005); I*n re Franklin Industrial Complex, Inc,* 2007 WL 2509709 (Bankr. N.D.N.Y 2007)

herein and recharacterize the TAE claim and equitably subordinate the TAG claim to the entire Class 7 Unsecured Creditors' claims. As reflected in the record of this case, TAG is the 100% owner of the Debtor. Debtor has filed no objection[2] to the TAG claim in spite of the fact that TAG received potential preferences for which TAG has not been held accountable and despite the fact that TAG, managed by Mr. Frank Thielert, as more specifically alleged below, manipulated both TAG and TAE for his own purposes to the detriment of the Debtor and its creditors.

13.    The benefit to the Debtor and the creditors of a successful suit brought by APS against TAE and TAG is the elimination of over $28 Million in unsecured claims at no cost to the Debtor as APS will fund the litigation.[3]

V.

Facts

14.    Pursuant to Federal Aviation Administration ("FAA") regulations governing the manufacture of engine parts which are not made by the Original Equipment Manufacturers ("OEM") for their own engines, any mechanic in the United States working on piston driven aircraft engines must use "replacement parts" approved by the FAA for the overhaul or repair of the engines.

15.    Superior is one of only two companies that make replacement parts for piston driven aircraft engines.

16.    In order to make replacement parts for any piston driven aircraft engine, Superior had to first apply for and obtain a part-specific authority from the FAA, referred to as a

---

[2] Debtor did file an objection to the TAG claim, claiming that it was unsecured and not secured; as the Court will recall the Motion for Summary Judgment was virtually unopposed due to the uncontradicted evidence that the UCC filings were not properly continued.
[3] If successful, APS reserves the right to file an application to the Court for recovery of expenses under 11 U.S.C 503(b)(3)(D).

**PLAINTIFF'S ORIGINAL COMPLAINT and OBJECTION TO CLAIM NUMBERS 46 and 70**
Page 4 of 10

Parts Manufacturing Approval (a "PMA").   The PMA process is quite stringent and expensive, and it took Superior four decades to develop and obtain its piston driven aircraft engine PMAs.  Superior presently has 616 active PMAs for piston driven aircraft engines on the high demand replacement parts.

17.    Superior was family owned from 1967 until 1986.  Since then, it has been owned by several private equity groups.  Until the late 1990s, its business was the design and sale of the individual parts used to overhaul and repair piston engines.  This is often referred to as the "piece part" or "core business."

18.    Superior does not manufacture parts it designs.  All of the manufacturing is done by FAA-approved suppliers.  All parts are then shipped to Superior where they are inspected in accordance with the FAA-approved Fabrication Inspection System (the "FIS").

19.    In the late 1990s, Superior had obtained enough PMAs on a piston driven aircraft 360-cubic-inch series engine that it could assemble an entire engine.  Superior began to do so and marketed hundreds of the engines to the experimental aircraft market known as the "XP360 Engine."

20.    In about 2002, Superior started the process of applying for a Type Certificate for the 360 engine for the certified market in order to compete for the sale of this size engine to the prime aircraft manufacturers like Cessna, Raytheon, Diamond and Piper. The result was the introduction of the type certificated piston engine known as the Vantage Engine in the spring of 2004 and the award of an FAA production certificate approximately a year later.

21.    In March 2006, Superior was purchased by a German holding company, Thielert
AG ("TAG"), named after its largest shareholder, Frank Thielert.    TAG purchased
Superior by assuming Superior's existing $8.0 million bank revolver and paying off the
subordinate debt of a private equity group in the amount of $2.0 million, for a total
purchase price of $10 million.

22.    At the time of its purchase of Superior, TAG owned another aviation company
called Thielert Aircraft Engines ("TAE") which manufactured a line of diesel engines for
aircraft and drones for sale in Europe and Asia.    TAE also manufactured cylinders for
Superior.

23.    TAG acquired Superior for the purpose of being able to penetrate the United
States market with the diesel engine, to be able to offer both diesel and piston engines
to the airframe manufacturers, and for TAE to be able to manufacture engine parts for
Superior's new line of engines.    Stated succinctly, Thielert wanted to turn the
TAE/Superior combination into an engine company and move away from the piece part
business which had been so successful.

24.    After the April 2006 purchase, Frank Thielert intended to infuse up to $6-7 million
in capital into Superior in order to develop a broader range of piston engines to be
dubbed the Vantage 320 and Vantage 400.

25.    In order to provide Superior operating capital, Frank Thielert, who was the
chairman of the boards of both TAE and Superior, instructed TAE to continue to ship
manufactured product to Superior without requiring payment for such product.    This
permitted Thielert to, in effect, infuse capital into Superior without the necessity of
depleting cash or obtaining financing for capital purposes.  This arrangement continued

until late April of 2008 when TAE filed insolvency proceedings in Germany after failed attempts to recapitalize TAE.  As a result of the foregoing, Superior turned from a market leader to one whose  unsecured creditors were left diluted by a $18 million claim by TAE (the "TAE Claim"), and a $10 million claim by TAG which is allegedly secured by a lien on substantially all of the Debtor's assets (the "TAG Claim").

**VI.**

**First Claim for Relief**
**(Recharacterization of the TAE Claim)**

26.     APS repeats and realleges each and every allegation contained in paragraphs 1 through 25 above.

27.     Frank Thielert was, at all relevant times, the majority shareholder and director of TAG, TAE and Superior – an insider.

28.     At the time of the acquisition of Superior, TAG indicated its firm intent to continually capitalize Superior; however, TAG "funded" Superior by directing TAE to ship goods to Superior and not requiring Superior to pay.

29.     Superior was thinly or inadequately capitalized throughout the relevant period of time and was unable to secure outside financing largely due to the massive trade debt owed to TAE.

30.     Thielert, TAG and TAE never made any cash infusions into Superior.

31.     All of the invoices included in the TAE Claim, though described as debt transactions, were disguised equity contributions.

32.     The actions described above have resulted in harm to APS and other creditors.

33.    APS therefore requests that the Court enter judgment against Defendant TAE recharacterizing the entire TAE Claim as equity, and award APS all other relief available under the law and the facts.

### VII.

### Second Claim for Relief
**(Equitable Subordination of the TAG Claim and TAE Claim)**

34.    APS repeats and realleges each and every allegation contained in paragraphs 1 through 33 above.

35.    TAG and TAE engaged in inequitable conduct that resulted in harm to APS and other creditors and conferred an unfair advantage on TAG and TAE.

36.    TAG and TAE exercised control over Superior in a manner that severely disadvantaged APS and other creditors.

37.    TAG and TAE caused Superior to be undercapitalized.

38.    TAG and TAE used Superior as a mere instrumentality and/or alter ego to solely benefit TAG at great expense to Superior and its creditors.

39.    As a result, equitable subordination of TAG Claim and/or the TAE Claim would not be inconsistent with the provisions of the Bankruptcy Code.

40.    APS therefore requests that the Court enter judgment against the Defendants equitably subordinating all of their claims, and award APS all other relief available under the law and the facts.

### VIII.

### Objection to Claims

41.    Incorporating the foregoing Paragraphs 1 through 40, APS, under 11 U.S.C. §502 and Fed. R. Bankr. P. 3007, objects to the claims of Defendants (Claim Numbers

46 and 70) and moves that such claims be disallowed in all respects or, in the alternative, that Claim Number 46 be equitably subordinated to the allowed claims of all unsecured creditors and that Claim Number 70 be recharacterized and/or equitably subordinated to all allowed claims of all unsecured creditors.

**IX.**

**Prayer**

Based upon the foregoing, and the law and the facts to be presented at trial, APS requests that the Court cite Defendants to appear and grant APS the following relief: (1) recharacterize as equity the entire claim of Defendant TAE; (2) equitably subordinate any and all claims of Defendants TAG and TAE; and (3) award APS all other and further relief to which APS may be entitled.

DATED:      August 4, 2009
             Dallas, Texas

Respectfully submitted,

By: /s/ Kevin H. Good
     Kevin H. Good
     Texas Bar No. 08139300
     Conner & Winters, LLP
     1700 Pacific Avenue, Suite 2250
     Dallas, Texas 75201
     (214) 217-8070
     (214) 217-8861 (Facsimile)

     and

     Billy G. Leonard, Jr.
     Texas State Bar No. 12208100
     1650 W. Virginia Street, Suite 211
     McKinney, Texas 75069
     (469) 742-0855
     (469) 442-0135 (Facsimile)

*Attorneys for Aviation Parts Supply, Inc.*

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on the 5th day of August, 2009, a true and correct copy of the foregoing was served via regular first-class U.S. mail, postage prepaid, on Chester B. Salomon, Esq., Becker, Glynn, Melamed & Muffly LLP, 299 Park Avenue, 16th Floor, New York, New York 10171, counsel for TAG, and Vincent P. Slusher, Esq. and Cynthia Cole, Esq., Beirne Maynard & Parsons, LLP, 1700 Pacific Avenue, Suite 4400, Dallas, TX 75201, counsel for TAE, and via e-mail to Stephen Roberts, Esq., counsel for the Debtor, and Dave Parham, Esq., counsel for the Unsecured Creditors' Committee.

/s/Kevin H. Good
Kevin H. Good