**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **SUPERIOR AIR PARTS, INC.** | § | **CASE NO. 08-36705-BJH-11** |
| | § | |
| | § | |
| **DEBTOR** | § | |

**AMENDED PLAN OF REORGANIZATION
(Dated June 16, 2009)**

Comes now, Superior Air Parts, Inc. (the "Debtor") and the Official Committee of Unsecured Creditors (the "Committee"), and jointly propose the following Plan of Reorganization (the "Plan") pursuant to 11 U.S.C. §1121.

**ARTICLE I
SUMMARY OF PLAN**

Capitalized terms used in the following summary are as defined in Article II, Definitions. The following summary is included for convenience of the reader and shall not modify the specific terms of this Plan:

This Plan provides for the treatment of all Claims in a manner that is in the best interests of Creditors and is fair and equitable. It calls for the continued operation of the Debtor, the establishment of a creditors' trust for the benefit of unsecured creditors, the cancellation of existing equity and the issuance of new equity in the Reorganized Debtor to Aviation Parts Supply, Inc., unless a higher and better offer is received pursuant to a bidding process to be approved by the Court.

In consideration for the issuance of shares, APS will pay the Cash Contribution of $2.75 million, subject to certain adjustments, into a Creditors Trust for payment of Allowed Claims, as more particularly described in the plan. The Cash Contribution will be decreased pursuant to the Purchase Pride Adjustment if, at closing, Superior has less than $2 million in cash and less than $9.14 million in gross inventory and accounts receivable (excluding the account receivable from Thielert AE) and will be increased if gross inventory and accounts receivable (excluding the account receivable from Thielert AE) exceed that amount. Any cash in excess of $2 million will be transferred to the Creditors' Trust.

The Debtor projects that there will be $2.75 million available to distribute to all Creditors after payment of its professional fees and the professional fees of the Creditors' Committee, and the § 503(b)(9) administrative claims due to vendors who shipped goods to the Debtor within twenty days the Petition These projections are Debtor's best estimates. The Cash Contribution could be more or less after Adjustments to the Purchase Price due to factors beyond Debtor's control, and so, there could be more or less cash available to pay unsecured creditors.

Secured Claims which consist of claims secured by liens on Debtor's testing equipment, office equipment and telephone system will either be assumed by APS and paid in accordance with their terms or the Debtor will return the collateral to the holder of the Secured Claim in satisfaction of the Secured Claim.  The 2009 taxes will be paid by the Reorganized Superior, owned by APS, when due.

The Creditors Trust will distribute $500,000 to Thielert AE, an affiliate of Debtor, in full satisfaction of its proof of claim filed in the amount of $18,208,260 and the creditors' Trust will distribute $900,000 to TAG, Debtor's parent, in partial satisfaction of it proof of claim filed in the amount of $10,146,611.  The Debtor will transfer the Vantage Engine Program free and clear of all liens, claims and encumbrances into the Creditors Trust and 72% of the net proceeds from any subsequent sale of the Vantage Engine Program will be paid to TAG, 18% to the Creditors Trust and 10% to the Reorganized Superior, owned by APS. If the Cash Contribution increases or if another bid is higher then the allocation of the distribution of cash consideration between TAG and the non-insider unsecured creditors will change as more specifically set forth herein. In consideration for the concessions made by TAE and TAG, they will be released from any and all claims and causes of action by anyone in connection with the Debtor.

The Debtor estimates that the Creditors' Trust will have approximately $_____ to pay the non-insider unsecured creditors.

In addition to the Cash Contribution, APS has agreed to take certain actions to reduce the pool of claims of unsecured creditors including the following:

1.    APS will approach vendors with open purchase orders and negotiate the future delivery of parts, except those parts related to the Vantage Engine Program and cylinder assemblies in exchange for the release or reduction of claims those vendors may have against Superior for Superior's cancellation of binding purchase orders.

2.    APS will assume the Debtor' obligations under its liability insurance policies, which primarily consist of funding the costs of defense arising out of claims arising under policy periods after July 2005.

3.    APS will negotiate with Superior's landlord to modify the existing lease in an effort to reduce the landlord's claim.

4.     APS will honor all warranties where warranty claims were or are filed timely.

## ARTICLE II
## DEFINITIONS

As used in the Plan, the following terms shall have the meanings specified below.

2.1     <u>Administrative Claim</u>:  Any administrative cost or expense incurred on or before the Confirmation Date entitled to priority under section 507(a)(2) and allowed under section 503(b) of the Bankruptcy Code, including any actual and necessary expenses of preserving the Debtor's estate, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Case, claims entitled to administrative expense priority under section 503(b)(9) for goods received by the Debtor in the ordinary course of the Debtor's business within twenty days before the Petition Date, certain taxes, fines and penalties, any actual and necessary expenses of operating the business of the Debtor, any indebtedness or obligations incurred by or assessed against the Debtor in connection with the conduct of its business, or for the acquisition or lease of property or for provision of services to the Debtor, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, title 28, United States Code, and shall include all fees due to the Office of the United States Trustee both pre- and post-confirmation.

2.2     <u>Allowed</u>:  means any Claim against the Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date and as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto has been filed, or which Claim is allowed by Final Order of the Court, (b) for which a Proof of Claim has been filed after the Bar Date and (i) as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto has been filed, or (ii) as to which the Claim is allowed by Final Order of the Court, (c) scheduled in the Debtor's Schedule of Assets and Liabilities, as may be amended, prepared and filed with the Court and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto has been interposed through closing of this case, or as to which any such objection or action has been determined by an order or judgment which is no longer subject to appeal to certiorari proceeding and as to which no appeal or certiorari proceeding is pending.  This category includes all Claims deemed unsecured pursuant to section 506 of the  Bankruptcy Code and excludes any portion of any claim for fine or penalty.

2.3     Aviation Parts Supply, Inc. or APS:  Aviation Parts Supply, Inc., a Texas corporation, and as contemplated by this Plan, the 100% owner of the Reorganized Debtor.

2.4     Bankruptcy Case:  This case under Chapter 11 of the Bankruptcy Code in which Superior Air Parts, Inc. is the Debtor.

2.5     Bankruptcy Code:  The Bankruptcy Reform Act of 1978, as amended, title 11, United States Code, as applicable to this Chapter 11 case.

2.6     Bankruptcy Court:  The United States Bankruptcy Court for the Northern District of Texas, Dallas Division, having jurisdiction over the Chapter 11 Case, or in the event such court ceases to exercise jurisdiction over the Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

2.7     Bar Date:  The date fixed by the Bankruptcy Court as the last date for filing all Claims in this Case, February 17, 2009.

2.8     Business Day:  A day that is not a Saturday, Sunday, or legal holiday as those terms are used and defined in Bankruptcy Rule 9006(a).

2.9     Case:  This Bankruptcy Case.

2.10    Cash Contribution:  The cash payment in the amount of $2,750,000, as such may be adjusted pursuant to section 11.2(d) hereof, to be made by APS to the Creditors' Trust on the Effective Date.

2.11    Causes of Action:   Any and all claims, rights and causes of action that have been or could have been brought by or on behalf of the Debtor arising before, on or after the Petition Date, known or unknown, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to any and all claims, rights and causes of action of the Debtor or the Estate may have against any Person arising under chapter 5 of the Bankruptcy Code, or any similar provision of state law or any other law, rule, regulation, decree, order, statute or otherwise, including but not limited to any claim or cause of action described in the Disclosure Statement, avoidance actions under the Bankruptcy Code, or state law and any other causes of action belonging to the Debtor or the Estate.

2.12    Claim:  Any right to payment from the Debtor arising at any time before the Effective Date, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to any equitable remedy for future performance if the applicable breach gives rise to a right of payment from the Debtor, whether or not the right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.13   <u>Class or Classes</u>: All of the holders of Claims against or Interest with respect to the Debtor that have been designated as a class in this Plan.

2.14   <u>Committee</u>:  The official Committee of Unsecured Creditors appointed by the United States Trustee in this Bankruptcy Case on January 29, 2009.

2.15   <u>Confirmation</u>:  The entry of the Confirmation Order on the docket of the Bankruptcy Court in the Bankruptcy Case.

2.16   <u>Confirmation Date</u>:  The date on which the Bankruptcy Court enters the Confirmation Order.

2.17   <u>Confirmation Hearing</u>:  The hearing or hearings to be held before the Bankruptcy Court in which the Confirmation of this Plan will be sought.

2.18   <u>Confirmation Order</u>:  The order of the Bankruptcy Court, in form and substance reasonable acceptable to the Committee and APS, confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.19   <u>Creditor</u>:  Any person that holds a Claim against the Debtor that arose on or before the Effective Date, or a Claim against the Debtor of any kind specified in Sections 502(f), 502(g), 502(h) or 502(i) of the Bankruptcy Code.

2.20   <u>Creditors' Trust</u>:  The trust established pursuant to this Plan for the benefit of Creditors.

2.21   <u>Creditors' Trust Agreement</u>:  That certain agreement attached as Exhibit __, establishing and creating the Creditors' Trust in accordance with the provisions of section 6.7 of this Plan.

2.22   <u>Creditors' Trustee</u>:  The Trustee of the Creditors' Trust who shall be appointed in the Confirmation Order.

2.23   <u>Debtor</u>:  Superior Air Parts, Inc., the Debtor herein.

2.24   <u>Disclosure Statement</u>:  The Disclosure Statement under section 1125 of the Bankruptcy Code filed by the Committee in connection with this Plan, and as thereafter amended.

2.25   <u>Disputed Claim</u>:  A Claim against the Debtor (a) as to which an objection to the allowance thereof, an action to equitably subordinate or otherwise limit recovery, or a request for estimation has been filed on or before the deadline for objecting to a Claim by any party in interest and which objection has not been withdrawn or resolved

by entry of a Final Order, (b) a Claim that has been asserted in an amount greater than that set forth in the Schedules listed as contingent, unliquidated or disputed.  A claim shall not be considered a Disputed Claim if such claim has previously been Allowed by order of the Bankruptcy Court.

2.26   <u>Disputed Claims Reserve</u>:  A segregated account to be held in trust by the Creditors Trustee for the benefit of holders of Disputed Claims in accordance with the provisions of the Plan or Creditors Trust Agreement.

2.27   <u>Distribution</u>:  The property required by the plan to be distributed to the holders of Allowed Claims.

2.28   <u>Effective Date</u>:  The first Business Day after the expiration of the tenth (10th) day after entry of the Confirmation Order, unless the effectiveness of the Confirmation Order has been stayed or vacated by a court of appropriate jurisdiction, in which case the Effective Date shall be the later of the first Business Day after expiration of the tenth (10th) day after entry of the Confirmation Order or such date thereafter when any stay of the effectiveness of the Confirmation Order has expired or otherwise terminated.

2.29   <u>Estate</u>:  The bankruptcy estate of the Debtor created by Section 541 of the Bankruptcy Code.

2.30   <u>Excess Cash</u>:   Subject to the Purchase Price Adjustment cash in the Debtors' possession on the Effective Date in excess of $2,000,000, excluding the Cash Contribution.

2.31   <u>Executory Contract or Unexpired Lease</u>:   Any prepetition executory contract or lease agreement with the Debtor governed by section 365 of the Bankruptcy Code.

2.32   <u>Final Order</u>: An order of the Bankruptcy Court that has not been reversed, modified, amended or stayed, and as to which the time for appeal, review, certiorari proceeding, or other proceeding for review or rehearing has expired, and as to which no appeal, review or rehearing is pending, and such order has become conclusive of all matters adjudicated thereby, and is in full force and effect.

2.33   <u>General Unsecured Claim</u>:  A Claim not secured by a charge against or interest in property in which the Debtor's Estate has an interest, any unsecured deficiency claim as hereinafter defined, Claims which are not entitled to priority pursuant to section 507 of the Bankruptcy Code, and any Claims arising from the Debtor's rejection of Executory Contracts.

2.34   <u>Interests</u>:  Any "equity security" in the Debtor (as defined by section 101(16) of the Bankruptcy Code.

2.35   Other Priority Claim:  A Claim accorded priority and right of payment under section 507(a) of the Bankruptcy Code other than a Priority Tax Claim or an Administrative Claim.

2.36   Person:   An individual, corporation, a limited liability company, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a government or any agency or subdivision thereof or any other entity.

2.37   Petition Date:  The date on which the Debtor filed its voluntary Chapter 11 petition, being December 31, 2008.

2.38   Plan:  This Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code, either in its present form, including exhibits, or as it may be altered, amended, or modified from time to time.

2.39   Plan Rate:   The prime rate of Bank of America, N.A., in effect at Confirmation, or such other rate of interest as is determined by the Bankruptcy Court.

2.40   Priority Claim:   Any Claim (other than an Administrative Claim) to the extent entitled to priority in payment under section 507(a) of the Bankruptcy Code, which arose prior to the Petition Date, except for Priority Tax Claims.

2.41   Priority Tax Claim:  Any Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code and filed as a priority tax claim on or before the Bar Date and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

2.42   Pro Rata:   Proportionately, based on the percentage amount of the distribution made on account of a particular Allowed Claim and the distributions made on account of all Allowed Claims of the class in which the particular Allowed Claim is made.

2.43   Purchase Price Adjustment:   To the extent the Debtors' inventory and accounts receivable excluding any account receivable due from Thielert AE ("Current Assets"), exceed $9,140,000 on the Effective Date, without deduction for any reason, including slow moving or obsolete inventory or old or uncollectible accounts, the amount of Unrestricted Cash to be retained by the Reorganized Debtor shall be reduced.  To the extent Current Assets are less than $9,140,000 using the same calculation methodology, the amount of Excess Cash payable to the Creditors' Trust shall be reduced.

2.44   Reorganized Debtor:  The Debtor, from and after the Confirmation Date, which shall assume title to and control of the Debtor's assets and liabilities upon confirmation as provided herein.

2.45   <u>Secured Claim</u>:  A Claim to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest in property of the Debtor's estate securing such Claim.  To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an unsecured deficiency claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

2.46   <u>TAG</u>:  Thielert, AG

2.47   <u>Thielert AE</u>:  Thielert Aircraft Engines, GmbH.

2.48   <u>Trust Advisors</u>: The oversight committee appointed by the Committee, and established by the Creditors' Trust Agreement.

2.49   <u>Trust Assets</u>:  The  (i) Cash Contribution, (ii) the Vantage Engine Program, (iii) all avoidance actions under Chapter 5 of the Bankruptcy Code and state law, (iv) all claims and causes of action which are property of the Debtor's bankruptcy estate, including, without limitation, claims for equitable subordination or to recharacterize a claim as equity, but excluding claims or causes of action relating to assets which remain in the Reorganized Debtor, and (vi) the Excess Cash.

2.50   <u>Unrestricted Cash</u>:  $2,000,000.00, excluding the Cash Contribution as such amount may be adjusted by the Purchase Price Adjustment.

2.51   <u>Vantage Engine</u>:     All existing inventory of "SV" parts for the Vantage O-360 and IO-360 Engine.

2.52   <u>Vantage Engine Program</u>:  With regard to the Vantage O-360 and IO-360 Engine, all documentation from Vantage Engines already shipped or sold to any customer for the purpose of use, test or evaluation, and all intellectual property, components and parts related to the design, development, testing, and FAA approval of the Vantage Engines, FAA Type Certificate No. E00001SC, (and related approvals Transport Canada Type Certificate IE-58, European Aviation Safety Agency Type Certificate EASA.(IM).E.024, and any other certifications) including but not limited to, drawings, research, all test reports and data, engineering change requests, engineering change notices, build sheets, bill of materials, (including current and historical bill of materials, all assembly and test instructions and all continued airworthiness documentation), parts catalog and supporting data, overhaul manual and supporting data, operator and maintenance manual and supporting data, installation manual and supporting data, service letters and service bulletins (including all quality documentation, all product integrity team meeting minutes and documentation, all warranty claims and/or customer feedback, trademarks and logos, and all marketing material, including market studies, photographs, artwork, brochures, models and fliers,

all sales information, customer inquiries and anything else related to the Vantage Engines.

## ARTICLE III

## ADMINISTRATIVE CLAIMS AGAINST THE DEBTOR

3.1    **Administrative Claims**

(a)    In General.  Subject to the provisions of sections 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Claim shall be paid by the Creditors Trust the full unpaid amount of such Allowed Administrative Claim in cash on the Effective Date or as soon as practicable thereafter, or on such other terms as may be agreed upon by such holder of such Administrative Claim and the Creditors' Trust or otherwise upon order of the Bankruptcy Court; provided, however, that allowed Administrative Claims representing obligations incurred in the ordinary course of business or otherwise assumed by the Debtor pursuant to this Plan and unpaid as of the Effective Date, shall be assumed on the Effective Date and paid or performed by the Reorganized Debtor when due in accordance with the terms and conditions of the particular agreements governing such obligations.    All requests for payment of Administrative Claims (other than Professional Fees and claims arising in the ordinary course of business) arising on or before the Effective Date must be filed by the first Business Day after the 30th day after the Effective Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the debtor or the Reorganized Debtor.

(b)    Professional Fee Claims.  All final applications for fees for Persons whose retention with respect to the Case has been approved by the Bankruptcy Court or who holds, or asserts, an Administrative Claim shall be filed not less than sixty (60) days after the Effective Date.  Fees for services rendered, and disbursements incurred, on behalf of the Reorganized Debtor, by professionals retained by the Reorganized Debtor, from and after the Effective Date shall be paid by the Reorganized Debtor in the ordinary course.  Fees for services rendered and expenses incurred on behalf of the Creditors' Trust, by professionals retained by the Creditors' Trustee, shall be paid by the Creditors' Trust.

## ARTICLE IV
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

4.1    **Summary**:

Pursuant to Section 1123(a)(1) of the Bankruptcy Code this Plan designates the following classes of Claims and Interests.  A Claim or Interest is included in a particular class only to the extent that the Claim or Interest fits within the description of that class and, unless otherwise herein provided, is included in a different class to the extent that

any remainder of the Claim or Interest fits within the description of such different class. A Claim or Interest is included in a particular class only to the extent that the Claim is an Allowed Claim in that class and has not been paid prior to the Effective Date, and, in the case of an Interest evidenced by certificated or uncertificated shares of preferred or common stock, only to the extent that such stock is outstanding immediately prior to the Effective Date.  The treatment afforded to the creditors' Claims or Interests as set forth hereunder shall be in full satisfaction, settlement, release, and discharge for and in exchange for such Claim or Interest, respectively.   The Claims (except for the Administrative Claims which are described above and which are not required to be classified pursuant to section 1123(a)(i) of the Bankruptcy Code) and Interests against the Debtor are classified as follows

A summary of the classification of claims is as follows:

| Class | Description |
|---|---|
| 1 | Priority Tax Claims |
| 2 | Priority Employee Claims |
| 3 | Ervin Leasing Company |
| 4 | Great America Leasing Corporation |
| 5 | Tigris Vendor Finance, Inc. f/k/a US Express Leasing |
| 6 | Secured Claim of National City Commercial Capital |
| 7 | General Unsecured Creditors |
| 8 | Unsecured Claim of TAE |
| 9 | Claim of TAG |
| 10 | Interests |

**4.2   Classification and Treatment of Claims Against and Interests in the Debtor**

(a)   CLASS 1 - PRIORITY TAX CLAIMS.

Class 1 Priority Tax Claims consist of any Claim entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.  The Debtor does not believe that any claims in this class exist.  However, filed proofs of claim in this Class total approximately $23,936.37, which the Debtor disputes, and objections to these claims are anticipated to be filed.

Unless a Creditor holding a Priority Tax Claim and APS agree to a different treatment, each Allowed Class 1 Priority Tax Claim shall receive one of the following alternative treatments, at the election of APS:

(A)    Except with respect to Allowed Priority Tax Claims that APS elects to pay pursuant to subparagraphs (B) or (C) below, each Allowed Priority Tax Claim shall be paid by APS in full, in cash upon the latest of (i) the Effective Date, (ii) the date upon which there is a Final Order allowing such Allowed Priority Tax Claim, (iii) the date such Allowed Priority Tax Claim would have been due and payable if the Chapter 11 Case had not been commenced, or (iv) as may be agreed upon between the holder of such Allowed Priority Tax Claim and APS.

(B)    APS may, at its option, in lieu of payment in full of an Allowed Priority Tax Claim on the date when it would otherwise have been paid under subparagraph (A) above, make cash payments on account of such Allowed Priority Tax Claim, deferred to the extent permitted pursuant to section 1129(a)(9)(C) of the Bankruptcy Code and, in such event, interest shall be paid on the unpaid portion of such Allowed Priority Tax Claim at the Plan Rate.

(C)    If an Allowed Priority Tax Claim is for a tax assessed against property of the Debtor and that Allowed Priority Tax Claim may also be classified as an Allowed Other Secured Claim, APS may, at its option, elect to treat such Allowed Priority Tax Claim as an Allowed Secured Claim.

Class 1 is unimpaired.  Creditors holding a Class 1 Priority Tax Claim are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and Creditors holding Claims in Class 1 are not entitled to vote to accept or reject this Plan.

(b)    <u>CLASS 2 - PRIORITY EMPLOYEE CLAIMS.</u>

Class 2 Priority Employee Claims consist of all Allowed Priority Claims given priority payment status pursuant to § 507(a) of the Bankruptcy Code except Administrative Claims under § 507(a)(1) and Priority Tax Claims under § 507(a)(8).  The Class 2 Claims are estimated to total $56,144.43.  These claims include all accrued vacation and other benefit pay of employees of the Debtor.

Unless a Creditor holding a Class 2 claim agrees to a different treatment, each Allowed Class 2 claim shall receive one of the following treatments, at the election of APS:

(A)    to the extent due and owing on the Effective Date, such Claim shall be paid in full in cash by APS on the Effective Date, or as soon thereafter as is practicable; or

(B)    to the extent not due and owing on the Effective Date, such Claim shall be paid in full in cash by the Reorganized Debtor when and as such Claim becomes due and owing in the ordinary course of business.

The Class 2 Claims are Unimpaired under the Plan and, accordingly, are not entitled to vote on the Plan.

(c)    CLASS 3 - SECURED CLAIM OF ERVIN LEASING COMPANY.

The Class 3 Claim consists of the secured claim of Ervin Leasing Company, the collateral for which is an oil machine to clean parts  The contract with Ervin Leasing Company is denominated as a lease; however, the Debtor believes it is properly characterized as a financing agreement.   The Class 3 Claim is estimated to be $3,959.06 or less depending on  the value of the collateral securing such Claim.

At the election of APS, Debtor will retain the collateral, the holder of the Class 3 Claim will retain its lien on its collateral, APS will cure any payment defaults as of the Effective Date, and the Debtor will continue paying the Class 3 Claim in accordance with the terms of the written agreement without acceleration and, or the Debtor will surrender to the holder of the Class 3 Claim all collateral securing such Claim in full satisfaction of its Secured Claim. Any deficiency claim shall be treated as a Class 7 General Unsecured Claim.

APS shall notify the Ervin Leasing Company of its election in writing at least five (5) business days before the Voting Deadline.

The Class 3 Claim is Impaired under the Plan if the Debtor chooses to surrender the collateral and is entitled to vote on the Plan; otherwise, the Claim is Unimpaired and is not entitled to vote on the Plan.

(d)    CLASS 4 - SECURED CLAIM OF GREAT AMERICAN LEASING CORPORATION.

The Class 4 Claim consists of the secured claim of Great American Leasing Corporation, the collateral for which is the Debtor's phone system.  The contract with Great American Leasing Company is denominated as a lease; however, the Debtor believes it is properly characterized as a financing agreement.  The Class 4 Claim is estimated to be $13,524.47 or less depending on  the value of the collateral securing such Claim.

At the election of APS, Debtor will retain the collateral, the holder of the Class 4 Claim will retain its lien on its collateral, APS will cure any payment defaults as of the Effective Date, and the Debtor will continue paying the Class 4 Claim in accordance with the terms of the written agreement without acceleration and, or the Debtor will surrender to the holder of the Class 4 Claim all collateral securing such Claim in full satisfaction of its Secured Claim. Any deficiency claim shall be treated as a Class 7 General Unsecured Claim.

APS shall notify the Great American Leasing Company of its election in writing at least five (5) business days before the Voting Deadline.

The Class 4 Claim is Impaired under the Plan if APS chooses to surrender the collateral and is entitled to vote on the Plan; otherwise, the Claim is Unimpaired and is not entitled to vote on the Plan.

(e)    CLASS 5 - SECURED CLAIM OF TIGRIS VENDOR FINANCE, INC., F/K/A US EXPRESS LEASING.

The Class 5 Claim consists of the secured claim of Tigris Vendor Finance, Inc. f/k/a US Express Leasing, the collateral for which is all of the debtor's printers, copiers and fax machines.  The contract with Tigris Vendor Finance, Inc is denominated as a lease; however, the Debtor believes it is properly characterized as a financing agreement.  The Class 5 Claim is estimated to be $67,329.40 or less depending on the value of the collateral securing such Claim.

At the election of APS, Debtor will retain the collateral, the holder of the Class 5 Claim will retain its lien on its collateral, APS will cure any payment defaults as of the Effective Date, and the Debtor will continue paying the Class 5 Claim in accordance with the terms of the written agreement without acceleration and, or the Debtor will surrender to the holder of the Class 5 Claim all collateral securing such Claim in full satisfaction of its Secured Claim. Any deficiency claim shall be treated as a Class 7 General Unsecured Claim.

APS shall notify the Tigris Vendor Finance of its election in writing at least five (5) business days before the Voting Deadline.

The Class 5 Claim is Impaired under the Plan if the Debtor chooses to surrender the collateral and is entitled to vote on the Plan; otherwise, the Claim is Unimpaired and is not entitled to vote on the Plan.

(f)    CLASS 6 SECURED CLAIM OF NATIONAL CITY COMMERCIAL CAPITAL COMPANY.

The Class 6 Claim consists of the secured claim of National City Commercial Capital Company, the collateral for which is a CMM parts measuring machine used for quality assurance.  The contract with National City Commercial Capital Company may be denominated as a lease; however, the Debtor believes it is properly characterized as a financing agreement.   The Class 6 Claim is estimated to be $123,839 or less depending on the value of the collateral securing such Claim.

At the election of APS, Debtor will retain the collateral, the holder of the Class 6 Claim will retain its lien on its collateral, APS will cure any payment defaults as of the Effective Date, and the Debtor will continue paying the Class 6 Claim in accordance with the terms of the written agreement without acceleration and, or the Debtor will surrender to the holder of the Class 6 Claim all collateral securing such Claim in full

satisfaction of its Secured Claim. Any deficiency claim shall be treated as a Class 7 General Unsecured Claim.

APS shall notify the National City Commercial Capital Company of its election in writing at least five (5) business days before the Voting Deadline.

The Class 6 Claim is Impaired under the Plan if the Debtor chooses to surrender the collateral and is entitled to vote on the Plan; otherwise, the Claim is Unimpaired and is not entitled to vote on the Plan.

(g)    CLASS 7 - GENERAL UNSECURED CLAIMS.

Class 7 consists of the Claims of Creditors holding an Allowed General Unsecured Claim against the Debtor other than TAG and Thielert AE.

Each Creditor holding an Allowed Class 7 Claim shall receive in full satisfaction of all of its Allowed Class 7 Claim cash in the amount of its Pro Rata Share of amounts to be distributed from the Creditors' Trust.

Class 7 is impaired.  Creditors holding Claims in Class 7 are entitled to vote to accept or reject this Plan

(h)    CLASS 8 - CLAIM OF THIELERT AE

The Class 8 Claim consists of the unsecured claim of Thielert AE, an affiliate of the Debtor.  Thielert AE filed a proof of claim in the amount of $18,208,260.17.  The Committee contends that Thielert AE's claim should either be subordinated or re-characterized as equity.

In lieu of prolonged litigation and in accordance with an agreement entered into with APS, such agreement being conditioned upon the confirmation of the APS supported Plan of Reorganization whereby APS emerges as the owner of the Reorganized Debtor, Thielert AE has agreed to the classification and treatment of its Claim in this Class 8.  Pursuant to this Agreement, the Claim of Thielert AE shall receive a cash payment by the Creditors' Trust on the Effective Date, or as soon thereafter as is practicable, in the amount of $500,000 in full and final satisfaction of its any and all Claims which Thielert AE holds or may hold against the Debtor or the Reorganized Debtor.  In consideration for Thielert AE's acceptance of this treatment, Thielert AE shall be released from any and all claims or Causes of Action the Debtor may have against it as of the Confirmation Date.

Class 8 is impaired.  The holder of the Class 8 Claim is entitled to vote to accept or reject this Plan.

(i)    CLASS 9 - CLAIM OF TAG

The Class 9 Claim consists of the claim of TAG, the sole shareholder of the Debtor, TAG filed a proof of claim in the amount of $10,146,611.11 as a secured claim. However, the Debtor has filed an Adversary Proceeding to avoid the lien of TAG, asserting that it is unperfected and, thus, avoidable under 11 U.S.C. § 544.  In addition, the Committee contends that TAG's claim should either be subordinated or re-characterized as equity.

In lieu of prolonged litigation, the Debtor, the Committee and TAG have agreed to the classification and treatment of its Claim in this Class 9.  The Claim of TAG shall receive a cash payment by the Creditors' Trust on the Effective Date, or as soon thereafter as is practicable, in the amount of $900,000. In the event of an overbid, or should APS increase its bid and successfully bid for the assets, the overage shall be split 58% to TAG and 42% to the Class 7 General Unsecured creditors, up to $5,000,000 in distributable cash and thereafter on a basis of 67% to TAG and 33% to the Class 7 General Unsecured Creditors.

If the Vantage Engine Program and the Debtor's parts business are sold together, then Class 7 General Unsecured Creditors and TAG will share the first $5 million of distributable cash 58% to TAG and 42% to the Class 7 General Unsecured Creditors, and distributable cash above $5 million will be shared 67% to TAG and 33% to the Class 7 General Unsecured Creditors. Either TAG or the Unsecured Creditors Committee may veto any proposal to buy all or substantially all  assets of the company if in the exercise of their reasonable discretion they do not believe the deal is materially and financially superior to the APS offer.  The Bankruptcy Court may review any veto if requested by the Debtor, TAG or the Committee.

If the Vantage Engine Program is not sold prior to the Effective Date, 72% of the net proceeds of the sale of the Vantage Engine Program, after deduction of the costs and professional fees incurred in connection with such sale, shall be paid split to TAG, 18% to the Class 7 General Unsecured Claims, and 10% to APS . TAG shall have the sole discretion and authority to manage the sale process, retain brokers and professionals and convey the Vantage Engine Program.

TAG's rights and claims against third parties relating to the perfection of its security interest in property of the Estate shall be and are reserved and preserved.

The Class 9 Claim is Impaired under the Plan and, accordingly, is entitled to vote for or against the Plan.

(j)      CLASS 10 - INTERESTS IN THE DEBTOR.

The Class 10 Interests consists of 100% of equity interests of the Debtor, which is held by TAG.

On the Effective Date, all Interests in Debtor automatically, and without any action on the part of the holders thereof, the Debtor, or the Reorganized Debtor, shall be cancelled and extinguished.

The Class 10 Interests are deemed to have rejected the Plan, accordingly, is not entitled to vote for or against the Plan.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF THE PLAN

**5.1    Classes Entitled to Vote**

(a)    Classes 1 and 2 are unimpaired Classes under this Plan and are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

(b)    Classes 3, 4, 5, and 6 are impaired Classes (unless APS elects to retain the collateral) and are entitled to vote to accept or reject this Plan. Classes 7, 8, and 9 are impaired Classes and are entitled to vote to accept or reject this Plan.   Class 10 will not receive or retain any distributions or property under this Plan, and, accordingly, under 1126(g) of the Bankruptcy Code is presumed to have rejected the Plan.

**5.2    Cram Down**

If a Class fails to accept this Plan by the statutory majorities provided in section 1126(c) of the Bankruptcy Code, the Debtor reserves the right to request the Bankruptcy Court to confirm this Plan as to such rejecting Class.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THIS PLAN

6.1    Reorganized Debtor**:**

(a)    Cancellation of Interests:  At the close of business on the Effective Date of the Plan, all of the existing ownership interests in Debtor will be canceled without any further action by the Debtor.  The obligations of the Debtor in respect of the Interests and under the Debtor's certificate of incorporation, and under any other agreements or instruments governing the Interests, including but not limited to any shareholders rights plan shall be discharged and extinguished.

(b)    Continued Corporate Existence:  The Reorganized Debtor shall continue its corporate existence on and after the Effective Date, with all express, incidental and attendant powers granted to it under its certificate of incorporation, as amended pursuant to the provisions of this Plan, and the laws of the state of its organization and without prejudice to any right hereafter to alter or terminate such existence (whether by contract, operation of law or otherwise) under such

applicable state law. The Reorganized Debtor will continue to engage in the business of owning and operating the business of the Debtor.

(c)     Issuance of New Interests:   On or immediately after the Effective Date, new ownership interests, representing 100% ownership in the Reorganized Debtor, will be issued to APS either directly or to such entity as it may designate. The issuance of the new ownership interests hereunder shall be exempt from the registration requirements of the Securities Act pursuant to section 1145(a) of the Bankruptcy Code.

(d)     Amended Certificate of Incorporation:  Not later than the Effective Date, the Reorganized Debtor shall file an Amended Certificate of Incorporation with the applicable state agency.  The Amended Certificate of Incorporation shall, among other things, prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a) of the Bankruptcy Code, subject to further amendment as permitted by applicable law, and the Amended Certificate of Incorporation shall change, if required, the authorized number of shares of stock to implement this Plan.

(e)     Directors and Officers of Reorganized Debtor:  As of the Effective Date, and without further action of the Debtor or the Bankruptcy Court, all Persons then serving as officers or directors of the Debtor shall cease to be officers or directors of the Debtor.  Immediately as of the Effective Date, APS, without further action of the Debtor or the Bankruptcy Court shall select directors of the Reorganized Debtor and hire officers of the Reorganized Debtor.  The initial director of the Reorganized Debtor shall be J. Michael Bean, and the initial officer of the Reorganized Debtor shall be Kent Abercrombie, President and Chief Executive Officer.

6.2    APS' Contribution:   APS or its designee will acquire all of the new ownership interests in Debtor, free and clear of any and all liens, claims and encumbrances to the fullest extent authorized under § 1141.  In consideration for the issuance of the new ownership interests to APS, APS or its designee will fund the Cash Contribution to the Creditors' Trust on the Effective Date.  Further, APS will cause a $1,000,000 credit facility (the "Credit Facility") to be provided for the use and benefit of the Reorganized Debtor in its ongoing operations.

6.3    APS' Deposit:   By the earlier of the initial bid deadline established by separate order or 3 days prior to the Confirmation Hearing, APS or its designee shall deposit the sum of $500,000, in an escrow account to be established by APS or its designee, which amounts shall be refundable only if (a) this Plan is not Confirmed by July 30, 2009, (b) Confirmation of the Plan is denied, (c) the Effective Date does not occur on or before July 31, 2009, or (d) any of the conditions precedent set forth in section 11.1 of this Plan are not satisfied or waived by APS as provided therein.

6.4    <u>Funding of Payments to Creditors</u>:  Payments to be made to creditors under this Plan will come from the Cash Contribution, the Excess Cash, litigation recoveries, and, upon the closing of the sale of the Vantage Engine Program, 90% of the net cash proceeds of the sale of the Vantage Engine Program up to $5,000,000.  On the Effective Date, the Reorganized Debtor shall fund the Creditors' Trust by making the Cash Contribution.

6.5    <u>Purchase Price Adjustment</u>:  On the Effective Date, APS and the Creditors' Trustee shall calculate the Purchase Price Adjustment and all funds payable to the Creditors' Trust pursuant to the Purchase Price Adjustment, the Excess Cash, shall be paid to the Creditors' Trust by APS.

6.6    <u>Sale of the Vantage Engine Program</u>:  TAG shall be responsible for the sale of the Vantage Engine Program.  In order to ensure the success of the Reorganized Debtor, the terms and conditions of the sale, license or other transfer of the Vantage Engine Program will be subject to certain restrictions set forth on Exhibit __.  In addition to any amounts to be paid the Reorganized Debtor pursuant to Section 6.11(f) hereof, the Reorganized Debtor shall receive 10% of the net proceeds of the sale of the Vantage Engine Program up to $5,000,000 and all amounts in excess of $5,000,000, and if requested, by TAG, to assist with the marketing and sale of the Vantage Engine Program.

6.7    <u>Prepetition Purchase Orders</u>:  With respect to those unsecured creditors who had prepetition purchase orders for manufactured product, APS and/or the Reorganized Debtor will renegotiate the purchase and delivery of any unfinished or undelivered goods under such prepetition purchase orders on terms and conditions satisfactory to APS and the supplier in exchange for which the creditor will be required to release its claims, if any, for rejection damages and/or breach of contract against the Debtor.  APS will also be seeking supplier agreements with a term of not less than a 1-year, on standard payment terms and with the requirement for the supplier to obtain product liability insurance. APS shall advise the Debtor and the Creditors' Committee of all agreements reached with such suppliers and shall provide copies of the agreements reached with all such suppliers to the Debtor and the Creditors' Committee by the earlier of the bid deadline, set by separate order, or three days prior to Confirmation.

6.8    <u>Facility Lease</u>:  APS will attempt to negotiate a new facility lease with Duke Realty in exchange for a release of its claim, but failing agreement satisfactory to APS, the facility lease will be rejected and treated as a Claim under Class 4 . APS shall advise the Creditors Trustee of any agreements reached with Duke Realty.  APS shall advise the Debtor and the Creditors' Committee of any agreement reached with Duke Realty and shall provide copies of the agreement to the Debtor and the Creditors' Committee by the earlier of the bid deadline, set by separate order, or three days prior to Confirmation.

6.9    <u>Reorganized Debtor to Honor Warranties</u>.  The Reorganized Debtor will honor all warranties made by the Debtor provided that any Allowed Claims under such warranties will be treated as Class 7 Claims.

6.10    <u>Plan Documents</u>:  Implementation of the Plan requires the execution of certain documents by the Debtor and other parties.  No further Court order must be obtained prior to execution of such documentation.  In the event any party does not agree to execution of such documentation, APS may appoint a party to execute it on such party's behalf.

6.11    <u>Creditors' Trust</u>:

(a)    <u>Creditors' Trust</u>:  Prior to the Effective Date, the Creditors' Trust shall be established pursuant to the Creditors' Trust Agreement, for the purpose of liquidating the Trust Assets, resolving all Disputed Claims and making distributions to Creditors holding Allowed Claims as provided in this Plan.  On the Effective Date, the Trust Assets shall be transferred to and vest in the Creditors' Trust.  Subject to and to the extent set forth in any other applicable provision of the Plan, the Confirmation Order, the Trust Agreement or other agreement (or any other order of the Bankruptcy Court entered pursuant to or in furtherance hereof), the Creditors' Trust shall be empowered to:  (i) effect all actions and execute all agreements, instruments and other documents necessary to implement the Plan; (ii) make Distributions contemplated hereby; (iii) establish and administer any reserves with respect to Disputed Claims; (iv) comply herewith and with its obligations hereunder; (v) object to Claims and resolve such objections; (vi) employ professionals to represent it with respect to its responsibilities; and (vii) exercise such other powers as may be vested in it or as deemed by it to be necessary and proper to implement the provisions thereof.

(b)    <u>Trust Governance</u>:  The Creditors' Trust Agreement shall provide for an advisory committee which may include members of the Committee.  The Creditors' Trustee shall be appointed by the Committee.  Powers, rights and responsibilities of the  Creditors' Trustee shall be specified in the Creditors' Trust Agreement and shall include the authority and responsibility to:  (i) receive, manage, invest, supervise and protect the Trust Assets; (ii) pay taxes or other obligations incurred by the Creditors' Trust (iii) retain and compensate, without further order of the Bankruptcy Court, the services of professionals to advise and assist in the administration, prosecution and distribution of the Trust Assets; and (iv) prosecute, compromise and settle in accordance with the specified terms of the Plan and the Trust Agreement all Disputed Claims.  Other rights and duties of the Creditors' Trustee and the Trust beneficiaries shall be as set forth in the Creditors' Trust Agreement.

(c)    <u>Fees and Expenses of the Creditors' Trust</u>:  The Creditors' Trust expenses shall be paid from the Trust Assets in accordance with the Creditors' Trust

Agreement.  In no event shall the Debtor or Reorganized Debtor be responsible for any such fees or expenses.

(d)   Reports to be Filed by the Creditors' Trustee:   The Creditors' Trustee, shall file quarterly reports with the Court regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by it and other matters required to be included in such report. [need to check on this]

(e)   Expenses for Professionals of the Creditors' Trust:  The Creditors' Trustee may employ, without further order of the Court, professionals to assist in carrying out its duties hereunder and may, after review by the Trust Advisors, compensate and reimburse the expenses of these professionals without further order of the Court from the Trust Assets in accordance with the Creditors' Trust Agreement.

(f)   Excess Funds in Creditors Trust:  To the extent funds (from any source including, but not limited to, the Creditors' Trust's share of the Vantage Engine Program sales proceeds) remain in the Creditors' Trust after payment in full of all Allowed Claims required to be paid by the Creditors' Trust, with interest at the Plan Rate, such surplus shall be paid to the Reorganized Debtor.

(g)   Indemnification:   The Creditors' Trust Agreement may include reasonable and customary indemnification provisions that are acceptable to the Trust Advisors and Creditors' Trustee.   Any such indemnification shall be the sole responsibility of the Creditors' Trust.

(h)   Vesting of Chapter 5 and State Law Avoidance Actions, Claims and TAG Litigation:  On the Effective Date the TAG Litigation, all Chapter 5 and state law avoidance actions, and all other claims and Causes of Action which are property of the Estate, excluding those claims and causes of action directly relating to assets retained by the Reorganized Debtor, shall vest in the Creditors' Trust.  The Creditors' Trustee shall be the Debtors' designated representative pursuant to 11 U.S.C. § 1123(b)(3) to bring all such claims on behalf of the Creditors' Trust.

6.12   Proprietary Information:  The Confirmation Order will include a requirement that all persons, including but not limited to Corporate Finance Partners, Thielert AG, Thielert Aircraft Engines, Engine Components, Inc., Avco Corporation and Teledyne Technologies Incorporated, and their respective parents, sister and subsidiary companies, and all other companies or persons in their control, and each of them, shall be directed to return to the Reorganized Debtor all documents and other information owned by the Debtor related to the Debtor's business and operations (the "Proprietary Information"). For the avoidance of doubt, the Reorganized Debtor retains all of the Debtor's rights pursuant to any confidentiality agreement executed in connection with the exchange of such information

6.13   Vesting of Assets:   Except for the Trust Assets and as otherwise specifically provided herein, the property of the Debtor, including any and all causes of

action not transferred or assigned to the Creditors' Trust under this Plan, shall vest in the Reorganized Debtor on the Effective Date free and clear of all Claims, liens, charges or other encumbrances and Interests.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     <u>Assumption of Executory Contracts</u>:   The Executory Contracts and Unexpired Leases set forth on the attached Exhibit 1 to this Plan shall be assumed by the Reorganized Debtor in accordance with the terms of each such Executory Contract and Unexpired Lease as such may be modified by agreement between the non-debtor party to such Executory Contract or Unexpired Lease prior to its assumption.  APS intends to negotiate modifications to certain of the contracts listed on Exhibit __ attached hereto.  Should such negotiations not be successful, APS reserves the right to remove such executory contract or unexpired lease from the list of contracts and/or leases to be assumed.  APS may amend Exhibit 1 at any time prior to the Confirmation Date; provided, however that APS shall assume all liability insurance contracts of the Debtor regardless of whether such contracts are scheduled on Exhibit 1.

7.2     <u>Rejection of Executory Contracts and Unexpired Leases</u>:   All Executory Contracts and Unexpired Leases that have not been specifically assumed by the Debtor or listed by the Debtor and/or Reorganized Debtor on Exhibit __ hereto shall be rejected as of the Effective Date.

7.3     <u>Cure of Defaults</u>:   Reorganized Debtor shall cure all defaults existing under any assumed Executory Contract and Unexpired Lease pursuant to the provisions of sections 1123(a)(5)(G) and 365(b) of the Bankruptcy Code, by paying the amount, if any, determined by the Bankruptcy Court required to be paid in order to assume such Executory Contract and/or Unexpired Lease.  Payment of such amounts shall be made by the Reorganized Debtor on the later of (i) the Effective Date, (ii) the date the Bankruptcy Court determines the cure amount by Final Order, or (iii) the date the Reorganized Debtor and the party to such contract agree on a cure amount. Reorganized Debtor contemplates that there will be no cure amounts on assumed contracts as Reorganized Debtor intends to enter into consensual agreements to modify the contracts being assumed under this Plan with such modifications to be in lieu of cure amounts under sections 1123(a)(5)(G) and 365(b) of the Bankruptcy Code.

7.4     <u>Rejection Damage Claims</u>:   Each person who is a party to an Executory Contract and/or Unexpired Lease rejected pursuant to this Article shall be entitled to file, not later than thirty (30) days after the Effective Date, which is the deemed date of such rejection, a proof of claim for damages alleged to arise from the rejection of the Executory Contract and/or Unexpired Lease to which such person is a party.  A copy of such Claim shall be sent to the Creditor's Trustee.  The Bankruptcy Court shall determine any such objections, unless they are otherwise resolved.  All Allowed Claims

for rejection damages shall be treated as Class 4 Claims, and the Creditor's Trust and/or the Creditor's Trustee shall have standing to object to any such rejection damage Claim so filed.

## ARTICLE VIII
## PROVISIONS REGARDING DISTRIBUTIONS

8.1    Date of Distributions:  Except as otherwise provided by this Plan, any Distributions and deliveries to be made to holders of Allowed Claims in Classes 1-3, shall be made on the Effective Date or as soon thereafter as may be practicable.  As to Disputed Claims, Distributions shall be made as set forth in Article IX hereof.

8.2    Distributions:    The Reorganized Debtor shall make all Distributions required under this Plan with respect to Claims in Classes 1-3.  All other Distributions under this Plan shall be made by the Creditors' Trust.

8.3    Means of Cash Payment:  Cash payments made pursuant to this Plan shall be in U.S. funds, by check drawn on a domestic bank, or, at the option of the Reorganized Debtor or the Creditors' Trust, as the case may be, by wire transfer from a domestic bank, except that payments made to foreign creditors holding Allowed Claims may be in such funds and by such means as are customary or as may be necessary in a particular foreign jurisdiction.

8.4    Delivery of Distributions:  Subject to Bankruptcy Rule 9010, Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders (or at the last known addresses of such holder if no proof of Claim is filed or if the Debtor has been notified in writing of a change of address), except as provided below.  If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Reorganized Debtor or Creditors' Trustee, as the case may be, is notified of such holder's then current address, at which time all missed Distributions shall be made to such holder without interest.  Amounts in respect of undeliverable Distributions shall be returned to the Reorganized Debtor with respect to Classes 1- 3 and to the Creditors' Trust with respect to Classes 4-8  until such Distributions are claimed.  All claims for undeliverable distributions shall be made on or before two months following the final Distribution to Class 4 Creditors.  After such date, any claim top such unclaimed shall be forfeited.

8.5    Fractional Distributions:

8.6    Time Bar to Cash Payments:  Checks issued by the Reorganized Debtor or the Creditors' Trust, as the case may be, in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Reorganized Debtor or the Creditors' Trustee, as the case may be, by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before 120 days after the date of reissuance of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

8.7    Distributions    Pending    Allowance/Distributions    after    Allowance:  Distributions pending Allowance of a Claim and distributions after Allowance of a Claim are governed by sections 9.3 and 9.4 hereof.

## ARTICLE IX
## PROVISIONS FOR RESOLVING DISPUTED CLAIMS

9.1    Prosecution of Objections to Claims:    After the Effective Date, the Reorganized Debtor and the Creditors' Trustee shall have the exclusive authority to file objections to Claims.  Any objections to Claims must be made before the date that is 90 days after the Effective Date, or such other date as is established by order of the Bankruptcy Court.

9.2    Estimation of Claims:    The Debtor, the Reorganized Debtor, or with respect to Classes 4-8, the Creditors' Trustee, may,  at any time, request that the Bankruptcy Court fix, liquidate or estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code or other applicable law regardless of whether the Debtor has previously objected to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.    In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  The Bankruptcy Court's entry of this order may limit the distribution to be made on individual Disputed Claims regardless of the amount finally Allowed on account of such Disputed Claims and no holder shall have recourse against the Debtor, the Reorganized Debtor, the Creditors' Trust, their assets or any of their respective professionals.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor, the Reorganized Debtor, or the Creditors' Trust may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.    Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  If a holder of a Claim fails to seek estimation of a Claim at any time prior to the final distribution date of the Creditors' Trust, such Claim shall be treated as a disallowed Claim without further Order of the Bankruptcy Court on

the final distribution date of the Creditors' Trust.  Any unliquidated claim or contingent Claim shall be treated as a Disputed Claim until and unless it becomes an Allowed Claim pursuant to a Final Order of the Bankruptcy Court.

9.3     Payments and Distributions on Disputed Claims:  Partial payments or partial distributions may be made with respect to a Disputed claim on the undisputed portion of such Disputed Claim, pending resolution of such disputes by Final Order.  No reserve for Disputed Claims other than those in Classes 4 and 5 shall be established.  All obligations in respect of Disputed Claims for Claims other than those in Classes 1, 2,4, 5 and 6 shall be undertaken after the Effective Date by the Reorganized Debtor.

9.4     Distributions After Allowance:  The Reorganized Debtor or the Creditors' Trust, as applicable, shall make all payments and distributions required to be made under this Plan as soon as practicable after the date such Disputed Claim becomes an Allowed Claim.  Such distributions shall be based upon the cumulative distributions that would have been made to the holder of such Claim under this Plan if the Disputed Claim had been Allowed on the Effective Date less actual distributions made pursuant to section 9.3 hereof.

## ARTICLE X
## EFFECT OF CONFIRMATION, DISCHARGE, RELEASES, AND INJUNCTION

10.1     Binding Effect:  Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Effective Date, the provisions of this Plan shall bind any holder of a Claim against, or Interest in, the Debtor and its respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under this Plan and whether or not such Holder has accepted this Plan.

10.2     Discharge:  Except as otherwise provided in this Plan or the Confirmation Order and subject to section 1141(d)(1) of the Bankruptcy Code, upon the Effective date, all debts of, Claims against and Interests in the Debtor of any nature whatsoever including interest thereon, its assets, or properties, shall be completely satisfied, discharged and released.  The discharge of the Debtor shall be effective as to each debt, Claim or Interest, regardless of whether a proof of Claim or proof of Interest therefor was filed, whether the Claim or Interest is Allowed, or whether the holder thereof votes to accept this Plan.  On the Effective Date, as to every discharged debt, Claim and Interest, all persons, entities and governmental units (including, without limitation, any holder of a debt, Claim or Interest) shall be precluded from asserting against the Debtor or Reorganized Debtor or against such Debtor's or Reorganized Debtor's assets or properties, or the Creditors' Trust or its assets any other or further debt, Claim or Interest based upon any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.

10.3     Preservation of Rights of Action:  Except as otherwise provided in this Plan or in any contract, instrument, or agreement entered into in connection with this

Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor and the Creditors' Trust, as applicable, shall retain and may exclusively enforce any claims, rights and causes of action that the Debtor may hold against any person or entity that have not been released under this Plan.  The Reorganized Debtor and the Creditors' Trust, as applicable, may pursue such retained Claims, rights or causes of action, as appropriate, in accordance with the best interests of the Reorganized Debtor.

10.4    <u>Exculpation and Release</u>:  As of the Effective Date, the Debtor, the Committee, APS and their respective advisors, attorneys, agents or any professionals retained by them (acting in such capacity) shall neither have nor incur any liability to, nor be subject to any right of action by, any person or entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, administration, Confirmation or effectiveness of this Plan, the Disclosure Statement, the solicitation of votes for and the pursuit of Confirmation of this Plan, the consummation of this Plan or the administration of this Plan or the property to be distributed under this Plan, or any contract, instrument or other agreement or document created or entered into in connection with this Plan, or any other act taken or omitted to be taken in connection with this Bankruptcy Case; provided, however, that the foregoing provisions of this section 10.4 shall have no effect on the liability of any person or entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.

10.5    <u>Injunction</u>:  Except as otherwise provided in, or permitted under this Plan, from and after the Effective Date, all persons and entities that have held, currently hold or may hold a Claim or Interest or other debt or liability or right that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against the (a) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor, Reorganized Debtor, the Committee, or APS, as the case may be, on account of Claims against or Interests in the Debtor; (b) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor, Reorganized Debtor, the Committee, or APS, or any assets or property of same; or (c) creation, perfection or enforcement of any encumbrance of any kind against the Debtor, Reorganized Debtor, the Committee, or APS, as the case may be, arising from a Claim.  This provision does not enjoin the prosecution any claims that arise on or after the Effective Date nor does it enjoin the determination of the allowance of any Claims that arose prior to the Effective Date by a court of competent jurisdiction.

## **<u>ARTICLE XI</u>**
## **<u>CONDITIONS PRECEDENT</u>**

11.1    <u>Condition Precedent to Confirmation</u>: Confirmation shall not occur until APS shall have deposited $500,000, if applicable, into escrow.

11.2   <u>Conditions Precedent to Effective Date</u>:  The Effective Date shall not occur until each of the following conditions shall have been satisfied or waived pursuant to the provisions hereof:

(a)   <u>Confirmation Order</u>:   The Confirmation Order, in form and substance satisfactory to APS and the Committee in their reasonable discretion, confirming this Plan shall have become a Final Order.

(b)   <u>No Material Modifications to Plan</u>:   No material modifications, as determined by APS in its reasonable discretion, shall have been made to this Plan without the consent of APS.

(c)   <u>Effective Date</u>:  The Effective Date of this Plan shall have occurred on or before July 31, 2009.

(d)   <u>Unrestricted Cash</u>:  The Debtor shall have on the Effective Date $2,000,000, excluding the Cash Contribution as such amount may be adjusted by the Purchase Price Adjustment.  To the extent the Debtor does not have sufficient cash on hand to satisfy this condition, the Cash Contribution shall be reduced by the amount of any deficiency.

11.3   <u>Waiver of Conditions</u>:  APS may waive any of the conditions set forth in section 11.2 of this Plan except for Condition 11.2(a) which may be waived only with the concurrence of the Committee, at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate this Plan.

11.4   <u>Expense Reimbursement</u>: If APS is not approved by the Bankruptcy Court by reason of the acceptance of an overbid for the equity in the Reorganized Debtor and such alternative transaction closes or becomes effective, (a) APS, the Debtor and the Committee shall arrange for the immediate return of the deposit in 11.1  to APS and (b) APS will be entitled to receive a payment in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00) (the "<u>Expense Reimbursement</u>"), in cash payable within (3) three Business Days following the closing of the alternate transaction.  Such Expense Reimbursement is based upon APS, the Debtor and the Committee's acknowledgment and agreement that APS has expended substantial funds and other resources in connection with the transactions contemplated by this Agreement and APS will suffer material harm if such transactions are not consummated (because it will then be impossible for APS to realize any benefits therefrom), that the precise amount of such harm is difficult to determine, that it would be unfair for APS to bear such harm in view of the fact that APS, the Debtor and the Committee hoped to benefit from the transactions contemplated by this Agreement and to reimburse APS for the fees and expenses paid to APS's attorneys and other advisors in connection with the actions taken by APS in its due diligence and the negotiation and documentation of this

Agreement and other actions taken in contemplation of the transactions contemplated hereby.

11.5   <u>Restrictions on APS.</u>   In the event APS purchases any claims, other than claims purchased before February 1, 2009, APS shall not vote such claims or object to any plan proposed by the Debtor or the Creditors Committee as a holder of such claims

## ARTICLE XII
## RETENTION OF JURISDICTION

12.1   <u>Retention of Jurisdiction</u>:   The Bankruptcy Court shall retain exclusive jurisdiction over this Bankruptcy Case after Confirmation for the following purposes:

(a)  to consider and effect any modification of this Plan under section 1127 of the Bankruptcy Code;

(b)  to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

(c)   to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Effective Date;

(d)  to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in this Plan or the Confirmation Order;

(e)  to hear and determine all claims that the Debtor, Reorganized Debtor, or the Creditors' Trust could assert under the Bankruptcy Code;

(f)  to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

(g)   to make such orders as are necessary and appropriate to carry out and implement the provisions of this Plan;

(h)  to approve the reasonableness of any payments made or to be made, within the meaning of section 1129(a)(4);

(i)   to exercise the jurisdiction granted pursuant to section 505 of the Bankruptcy Code to determine any and all federal, state, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor;

DALDMS/662130.3
DRAFT 6/16/09 4:48 PM

(j)  to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan;

(k)   to hear and determine any controversies with respect to any settlements approved by the Court;

(l)  to enable the Reorganized Debtor, the Committee, the Creditors' Trust and any party-in-interest to consummate any and all proceedings that it may bring to set aside liens or to recover preferences, fraudulent transfers, assets or damages to which it may be entitled under applicable bankruptcy, federal or state law;

(m)   to correct any defect, cure any omission or reconcile any inconsistency in this Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan:

(n)  to determine any and all motions, applications, adversary proceedings and contested matters whether pending in the Bankruptcy Case as of the Effective Date or brought subsequently by the Reorganized Debtors or the Creditors' Trust, as the case may be.

12.2  No Limitation:  Nothing contained in this Article XII shall be construed so as to limit the rights of the Reorganized Debtor or the Creditors' Trust to commence or prosecute any claim in any court of competent jurisdiction.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1  Modification:   After the Effective Date, this Plan shall not be modified except upon the agreement of the Reorganized Debtor and the Creditors' Trustee.

13.2  Headings:  All headings utilized in this Plan are for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

13.3  Safe Harbor:  Issuance of stock in conjunction with the Plan is exempt from securities laws pursuant to section 1145(a)(1) of the Bankruptcy Code.

13.4  Due Authorization:  Each and every holder of a Claim who elects to participate in the distributions provided for herein warrants that such holder is authorized to accept, in consideration of such Claim against the Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, expressed or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such holder of a Claim under this Plan.

13.5  Authorization of Corporate Action:  All matters and actions provided for under this Plan involving the structure of the Debtor or action to be taken by or required of the Debtor or Reorganized Debtor shall be deemed to have occurred and be effective

as provided herein, and shall be deemed to be authorized and approved in all respects without any requirement for further action by the Debtor or Reorganized Debtor.

13.6   <u>Further Assurances and Authorizations</u>:   The Debtor, the Reorganized Debtor, the Creditors' Trust or Creditors' Trustee, if and to the extent necessary, shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect of the provisions, of this Plan.

13.7   <u>Applicable Law</u>:   Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Texas.

13.8   <u>No Interest</u>:   Except as expressly provided for in this Plan, or allowed by the Court, no interest, penalty or late charge is to be Allowed on any Claim subsequent to the Petition Date.

13.9   <u>No Attorneys' Fees or Broker Fees</u>:   No attorneys' fees will be paid with respect to any Claim, other than Claims of attorneys and financial advisors retained by Debtor or the Committee, except as specified herein or as allowed by an Order of the Court. No commissions or broker's fees will have been earned as a result of the transactions contemplated by this Plan.

13.10   <u>Auction</u>: In the event the Debtor receives and accepts a higher and better bid for the equity of the Debtor, then the offer by APS contained in this Plan, references to APS herein, and the obligations of APS contained herein, shall become references to and the obligations of the successful bidder.

13.11   <u>Notice of Default</u>:   In the event of any alleged default under the Plan, any Creditor or party-in-interest must give a written default notice to the Reorganized Debtor and the Creditors' Trustee with copies to their respective counsel of record specifying the nature of the default.  Upon receipt of the default notice, the Reorganized Debtor, or the Creditors' Trustee, as the case may be, shall have ten (10) days to cure such default from the time of receipt of the default notice.  If such default has not been cured within the applicable time period, the default may be brought to the attention of the Court.

13.12   <u>Notices</u>:   All notices, requests, elections or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested and addressed as follows:



13.13 <u>Consummation</u>:    For all purposes, consummation (and substantial consummation of this Plan) shall occur the instant upon which the new equity interest are issued and payments required to be made on the Effective Date are made; consummation shall occur on or promptly following the Effective Date.

## Exhibit 1

Insurer Claims:  With respect to all claims filed by insurers, including those for deductibles, the Reorganized Debtor shall assume all insurance policies.  APS further intends to contact each insurer and indicate that the Reorganized Debtor will honor the obligations under the insurance policies, including payment of deductibles, as and when they become due and in exchange, the insurers will release all claims against the Debtor.  In lieu of providing an irrevocable letter of credit under the 2008-2009 product liability policy, APS will purchase deductible buy down insurance for at least that policy year.  The insurance negotiations will be conducted by the Reorganized Debtor's insurance broker who has advised its belief that the insurers will compromise their claims in this fashion.