Billy G. Leonard, Jr.
Texas Bar No. 12208100
Attorney at Law
1650 W. Virginia Street, Suite 211
McKinney, Texas 75069-7703
Telephone (469) 742-0855
Fax (469) 442-0135

and

Kevin H. Good
Texas Bar No. 08139300
Conner & Winters LLP
1700 Pacific Avenue
Suite 2250
Dallas, Texas 75201
Telephone (214) 217-8070
Fax (214) 217-8861

*Attorneys for Aviation Parts Supply, Inc*.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § § | |
| **SUPERIOR AIR PARTS, INC.,** | § § § § | **CASE NO. 08-36705-BJH-11** |
| **DEBTOR** | § | |

### AVIATION PARTS SUPPLY, INC.'S SUPPLEMENTAL OBJECTION TO CONFIRMATION OF THE THIRD AMENDED PLAN OF REORGANIZATION OF SUPERIOR AIR PARTS, INC. <u>AND BRIEF IN SUPPORT THEREOF</u>

Aviation Parts Supply, Inc. ("APS"), a creditor and party in interest, by and through undersigned counsel, files these Supplemental Objections to the Third Amended Plan of Reorganization ('Plan") of Superior Air Parts, Inc. ("Superior"), and would show the Court as follows:

## I.

## Supplemental Objections

1.     APS filed its Objections to Superior's Third Amended Plan of Reorganization before the deadline for same at 5:00 PM on August 20, 2009.

2.     Because APS was advised that Superior planned to disclose, for the first time, financial projections for the Reorganized Superior on August 21, the deadline for disclosure of exhibits to be used at the Confirmation hearing set for August 26, 2009, APS reserved the right to further object to the Confirmation of Superior's Third Amended Plan of Reorganization.

3.     As it turns out, APS was prudent in reserving the right to further object as the subsequent filings and discovery presented demonstrate the importance of filing same.

4.     APS files this Supplemental Objection and moves the Court that same be considered at the hearing set for August 26, 2009.

## II.

### A.     Plan Modifications pursuant to 11 USC Section 1127

The code provides for modifications to a plan; however, all modifications "must satisfy the adequacy-of-disclosure concerns" of Section 1125.[1]  When a plan is modified in a *material* way, the unmodified disclosure statement becomes inadequate and the plan and disclosure statement must be resubmitted to the creditors.[2]  Stated another way, a materially modified plan is unconfirmable.  A material modification is one that would likely cause a creditor or interest holder to

---

[1] *In re American Solar King Corp.*, 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988).
[2] *See Id.* at 823-824(emphasis supplied).

reconsider its acceptance.[3]  The Bankruptcy Court for the Western District of Texas, Waco Division, has stated:

> "The severity of the modification need not be such as would motivate a claimant to *change* their vote-only that they would be apt to *reconsider* acceptance…"[4]

And…

> "The proponent of a modified plan may not, as a rule, use pre-modification acceptances solicited with a pre-modified disclosure statement, if the effect of the modification is to substantially change other terms of the original plan."[5]

For example, in *In re Concrete Designers, Inc.*, the Bankruptcy Court for the Southern District of Ohio held that modifications made to a reorganization plan were so material that the disclosure statement no longer described the plan at issue.[6]  The court noted that, because the disclosure statement did not describe the plan voted on by the creditors, the disclosure statement could not possibly contain "adequate information" as required by Section 1125.[7]  The Court stated:

> "Debtor is… attempting to use a disclosure statement approved for a prior plan, in conjunction with a substantially amended plan…"[8]

The Court then stated:

> "Debtor cannot and has not met it burden of proving compliance with all provisions of 11 USC 1129…*the Plan is… incapable of confirmation*."[9]

---

[3] *Id.* at 824.
[4] *Id.*(emphasis supplied).
[5] *Id.* at 824-825.
[6] *In re Concrete Designers, Inc.*, 173 B.R. 354, 356 (Bankr. S.D. Ohio 1994).
[7] *In re Concrete Designers, Inc.*, 173 B.R. 354, 356 (Bankr. S.D. Ohio 1994).
[8] *Id.* at 357.
[9] *Id.* at 358-59(emphasis supplied).

On August 24, 2009, APS took the deposition of Mr. Kent Abercrombie, President of Debtor, Superior Air Parts, in part, to discover and evaluate financial projections disclosed by Superior for the first time on August 21, 2009 in advance of the Superior Confirmation hearing set for August 26, 2009. Mr. Abercrombie's deposition has not yet been transcribed, but will be available at the time of the hearing set for August 26, 2009.

In order to advise the Court and the parties of APS' further objection in as timely a manner as possible, APS submits the following, subject to same being corroborated by the deposition transcript:

The projections disclosed by Superior on August 21, 2009:

1. were prepared by Mr. Abercrombie;

2. are an updated version of projections that were available for disclosure on July 23, 2009 and were not disclosed;

3. contain no input from The Brantly Group;

4. were not reviewed by The Brantly Group;

5. were not approved or adopted by The Brantly Group;

6. do not include the purchase of any inventory to support supplying piece parts to China;

7. do not include the purchase of inventory for manufacturing engines for China;

8. do not include the purchase of inventory for the manufacture of engines for DA 40 or DA 42 aircraft;

9. do not include the purchase of inventory for the manufacture of 500 engines per year in China;

10. do not include the purchase of inventory for the manufacture of 150 engines for Brantly helicopters in China.

In essence, the Reorganized Superior depicted in the projections is a piece part business, not an engine manufacturing company at all in spite of the express representations of Superior and Brantly that the Reorganized Superior would resume the operations of the former Superior, piece parts, cylinders and engine manufacture sales and distribution.

What are these "projections?" These are "Confirmation Projections," numbers created by Mr. Abercrombie because he has no other numbers to work with from Brantly. He has no input from Brantly. His numbers have not been reviewed by Brantly. His numbers have not been approved or adopted by Brantly. His numbers may be reasonable, but numbers nonetheless that have no relationship to the Brantly plan for an engine manufacturing company described in the Third Amended Disclosure Statement. Why is Mr. Abercrombie put in the position that he is obligated to produce Confirmation Projections without any input, review or approval of the acquiring entity, The Brantly Group? This makes no sense.

What does make sense is that the Third Amended Disclosure Statement cannot stand side-by-side with the Confirmation Projections prepared by Mr. Abercrombie in complete disregard for the contents of Section IX, Feasibility. The material changes must be disclosed to the creditors and APS invites Superior and Mr. Abercrombie to explain why it is that Financial Projections as they existed on July 23, 2009 with minor changes to sales, insurance costs and leasehold expense were not disclosed to the Court and delivered to the creditors – despite the request and objections of APS. Surely, Superior would agree that the creditors would have been better informed with the financial projections attached rather than page after page about all the purported opportunities in China about which Mr. Abercrombie knows nothing and which do not ever get to the Confirmation Projections. APS urges that whatever the real story is needs to be revealed to the creditors for their consideration. The Third Amended Plan of Reorganization as depicted in the Superior "Confirmation Projections" cannot be confirmed as the Plan described in the Disclosure Statement is materially, indeed dramatically, different, such that the creditors need to be advised of the correct business plan for the Reorganized Superior – whatever it is. Otherwise, the term "bait and switch" applies.

**B.     TAE's Vote and Committee's Objection**

Thielert Aircraft Engines GmbH ("TAE") voted to reject Superior's Third Amended Plan of Reorganization.  Thereafter, The Unsecured Creditors' Committee objected to TAE's claim.  While unsure of the intent or the result, APS submits that the TAE claim is for approximately $18 Million and was supposedly resolved by Superior as part of its Plan of Reorganization for $500,000.  There appears to be a disagreement regarding this material claim and its resolution.

APS would show that where a party simply files an objection, especially after the creditor's ballot was submitted and here, after the ballot deadline has passed, the Court should not disenfranchise the voter.  See In re Goldstein, 114 B.R. 430 (Bankr. E.D. Pa. 1990).

**C.     Debtor's Plan cannot be confirmed in light of TAE's vote to reject.**

Thielert Aircraft Engines, GmbH ("TAE") was a prepetition supplier of goods to Superior.  TAE filed an unsecured claim against the Debtor in excess of $18,000,000.  The Debtor's Plan separately classifies TAE's claim as a Class 8 creditor and proposes to pay TAE the sum of $500,000 in full and final satisfaction of TAE's claims against the Debtor.

The deadline to accept or reject Debtor's Plan was Thursday, August 20, 2009. According to the Ballot Summary filed by the Debtor on August 21st, TAE cast a ballot rejecting the Debtor's Plan.  Accordingly, as TAE was the only

creditor in Class 8 of the Debtor's Plan, that Class has rejected the Debtor's Plan.

TAE's rejection of the Debtor's Plan means that the Debtor cannot satisfy the confirmation requirements under Sections 1129(a)(7) and 1129(b) of the Bankruptcy Code.

Section 1129(a) of the Bankruptcy Code provides in pertinent part, that:

> (a) The court shall confirm a plan only if all of the following requirements are met:
> …
> (7) With respect to each impaired class of claims or interests—
> (A) each holder of a claim or interest of such class—
> (i) has accepted the plan; or
> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date…
>
> 11. U.S.C. Section 1129(a)(7)

This provision of the Bankruptcy Code is commonly referred to as the "best interests of creditors" test. TAE's Class 8 claim is impaired under the Debtor's Plan. <u>See</u>, Disclosure Statement article V.C. at page 23; and Debtor' Plan, Section 4.2(h), at page 15. TAE filed an unsecured claim in an amount in excess of $18,000,000, and the Debtor's Plan proposes to pay TAE $500,000, a dividend of approximately 2.8%. The Debtor's liquidation analysis which is attached as Exhibit C to the Debtor's Third Amended Disclosure Statement approved by the Court on July 23, 2009, estimates that return to unsecured creditors in a Chapter 7 liquidation would be 11.8%. The Debtor's Plan fails to satisfy the best interests of creditors test in that it pays a holder of an impaired claim which has not accepted the Debtor's Plan an amount less than that creditor

would receive under a Chapter 7 liquidation. Accordingly, the Debtor's Plan cannot be confirmed.

The Debtor's Plan likewise fails the test for cramdown of an unsecured creditor under Section 1129(b)(1) of the Bankruptcy Code in that the plan discriminates unfairly in its treatment of TAE. Section 1129(b)(1) provides, in pertinent part:

> (b)(1) …if all of the applicable requirements of [1129(a)] of this section other than paragraph (8) are met…the court…shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly…with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.
> 11. U.S.C. Section 1129(b)(1).

Thus, in order for the Debtor's Plan to satisfy Section 1129(b)(1) of the Bankruptcy Code, it cannot unfairly discriminate in its treatment of TAE's claim.

As set forth above, the Debtor's Plan proposes to pay TAE a dividend of approximately 2.8% on account of its unsecured claim. In contrast, the general unsecured creditors in Class 7 of the Debtor's Plan are estimated to receive a dividend in the range of at least 45-60%. Moreover, the Class 9 claim of TAG, an insider of the Debtor that filed an unsecured claim in the approximate amount of $10,000,000, will receive under the Debtor's Plan 58% of the first $5.0 million of distributable cash and 67% of any distributable cash in excess of $5.0 million. *See*, Debtor's Plan, at Section 4.2(i). According to the Debtor's Disclosure Statement, Debtor estimates that there will be $7.0 million in cash to distribute to creditors; $6.5 million after payment of $500,000 to TAE. *See*, Disclosure Statement at page 16. Accordingly, based on these statements in the Debtor's Disclosure Statement, it appears that TAG will receive, at a minimum,

$3,905,000 or approximately 39% of its claim ($5.0 million multiplied by 58% plus $1,500,000 remaining after payment of TAE's claim times 67%). Further, TAG may even receive more under the Debtor's Plan as TAG is also entitled to any surplus remaining in the Creditors' Trust after payments to Class 7 creditors.

The Bankruptcy Code scheme of distribution is based upon equality of treatment, and, as with respect to claims of creditors with equal priority, they are entitled to equal treatment. See, *In re Sentry Operating Company of Texas, Inc.*, 264 B.R. 850, 863 (Bankr. S.D. TX 2001). Where there is a gross discrimination in payouts among creditors of equal priority without justification the Plan unfairly discriminates. *See*, *In re Creekside Landing, Ltd.*, 140 B.R. 713 (Bankr. M.D. TN 1992). "The 'does not unfairly discriminate unfairly' requirement…protects each class of creditors against involuntary loss of their equal distribution rights *vis a vis* other creditors of equal rank." *Sentry Operating* at 865. There is no justification in the Debtor's Plan for paying TAE 2.7% on account of its unsecured claim where the Class 7 general unsecured creditors are receiving at least 45-60% or more, and TAG, an insider of the Debtor, is receiving at least 39%. APS asserts such a plan cannot pass the "does not discriminate unfairly" test of Section 1129(b)(1).

As set forth above, Debtor's Plan cannot be confirmed in light of TAE's rejection of the Debtor's Plan.

### III.

### Relief Sought

Wherefore, Premises Considered, APS respectfully moves the Court, that, on consideration of the above Objections and other Motions to be heard on August 26, 2009, that an Order be entered as follows:

1. Confirmation of Superior's Third Amended Plan of Reorganization with "The Brantly Group" being the Successful Bidder be DENIED;

2. Designating APS as the Back Up Bidder in accordance with the Bid Procedures;

3. Confirmation of Superior's Third Amended Plan of Reorganization with APS being the Successful Bidder be APPROVED;

4. And for such other and further relief to which APS would show itself justly entitled.

Respectfully Submitted:

/s/ Kevin H. Good
Kevin H. Good
Texas Bar No. 08139300
Conner & Winters LLP
1700 Pacific Avenue, Suite 2250
Dallas, Texas 75201
Telephone  (214) 217-8070
Fax  (214) 217-8861

and

>Billy G. Leonard, Jr.
>Texas Bar No. 12208100
>Attorney at Law
>1650 W. Virginia Street, Suite 211
>McKinney, Texas 75069-7703
>Telephone  (469) 742-0855
>Fax  (469) 442-0135
>
>**Attorneys for Aviation Parts Supply, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of August, 2009, a true and correct copy of the foregoing document was served to the following:

Via facsimile and email to Matthew S. Okin, Esq., counsel for Brantly, Stephen A. Roberts, Esq., counsel for Debtor, David Parham, Esq., counsel for the Official Unsecured Creditors' Committee, and Chester Salomon, Esq., counsel for TAG, via email only to Mary Frances Durham, U.S. Department of Justice Office of the United States Trustee, and on August 25, 2009 facsimile to Matthew S. Okin, Esq., counsel for Brantly, Stephen A. Roberts, Esq., counsel for Debtor, David Parham, Esq., counsel for the Official Unsecured Creditors' Committee, and Chester Salomon, Esq., counsel for TAG, and by first class U.S. Mail to the attached service list, postage prepaid.

>/s/ Kevin H. Good
>Kevin H. Good