Stephen Roberts
Texas Bar No. 17019200
Robert P. Franke
Texas Bar No. 07371200
Duane J. Brescia
Texas Bar No. 240252650
**STRASBURGER & PRICE, LLP**
600 Congress, Suite 1600
Austin, Texas 78701
(512) 499-3600 / (512) 499-3660 Fax
stephen.roberts@strasburger.com
robert.franke@strasburger.com
duane.brescia@strasburger.com

*ATTORNEYS FOR DEBTOR SUPERIOR AIR PARTS, INC.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 08-36705 |
| | § | |
| SUPERIOR AIR PARTS, INC., | § | Chapter 11 |
| | § | |
| Debtor. | § | |

### FEE APPLICATION COVER SHEET

Second and Final Fee Application of Strasburger & Price, LLP, for the time period May 1, 2009 to September 28, 2009.

Capacity:  Counsel for Debtor

Chapter:  11

Debtor/Case: Superior Air Parts, Inc.  08-36705

Retainer Received (and applied):  $6,876.68

Amount Previously Paid:  $394,546.58

Applicant seeks final approval and allowance of fees of $877,124.00 and expenses in the amount of $100,359.98 for services performed from the commencement of this case on December 31, 2008 through September 28, 2009,  the Effective Date of the Plan.  In addition, Applicant seeks approval and allowance of additional fees in the amount of $5,209.00 for the preparation and prosecution of this Application, which are not otherwise included, and Applicant requests that the Debtor be authorized and ordered

to pay Applicant approved fees and expenses in the amount of **$563,175.21.**  A detail of this amount follows:

| **Payment Amount Requested[1]**: | | **Reductions**: | |
|---|---|---|---|
| Fees: | $477,755.00 | Vol. Fee Reduction: | **$18,094.50**[2] |
| Expenses: | $ 18,431.91 | Expense Reduction: $     00.00 | |
| Other: | $ 79,873.80[3] | **Total Reduction:**  **$18,094.50** | |
| Other: | $   5,209.00[4] | | |
| **Sub-total:** | **$ 581,269.71** | | |

**Total Payment Requested:  $563,175.21**

**Expenses**:

| Copies per page: | $0.20 | Westlaw/Lexis: $1,250.79 |
|---|---|---|
| Faxes per page: | $0.20 | Other (specify): |

| **Hourly Rates**: | Attorney | Paralegal/Case Clerk |
|---|---|---|
| Highest Rates: | $600.00 | $195.00 |
| Hours Billed: | 1,747.40 | 455.9 |
| Average: | $443.00 | $147.50 |


  /s/ Stephen A. Roberts_____          October 12, 2009____
Stephen A. Roberts                        Date

---

[1] For the time period May 1, 2009 through September 28, 2009.
[2] This represents a 50% reduction in fees charged for non-working travel.
[3] 20% fee hold-back from Applicant's First Interim Application.
[4] For preparation and prosecution of this Application.

Stephen Roberts
Texas Bar No. 17019200
Robert P. Franke
Texas Bar No. 07371200
Duane J. Brescia
Texas Bar No. 240252650
**STRASBURGER & PRICE, LLP**
600 Congress, Suite 1600
Austin, Texas 78701
(512) 499-3600 / (512) 499-3660 Fax
stephen.roberts@strasburger.com
robert.franke@strasburger.com
duane.brescia@strasburger.com

*ATTORNEYS FOR DEBTOR SUPERIOR AIR PARTS, INC.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 08-36705 |
| | § | |
| **SUPERIOR AIR PARTS, INC.,** | § | Chapter 11 |
| | § | |
| **Debtor.** | § | |
| | § | |

### SECOND AND FINAL APPLICATION OF STRASBURGER & PRICE, LLP
### FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

*NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, DALLAS, TX 75242, BEFORE THE CLOSE OF BUSINESS ON OR BEFORE TWENTY (20) DAYS FROM THE DATE OF SERVICE HEREOF.*

*ANY RESPONSE MUST BE IN WRITING AND FILED WITH THE CLERK, AND A COPY MUST BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN.  IF A RESPONSE IS FILED A HEARING WILL BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.*

*IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN*

***ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED
ACTION MAY BE TAKEN.***

TO:   THE HONORABLE BARBARA J. HOUSER
      UNITED STATES BANKRUPTCY JUDGE:

Strasburger & Price, LLP ("Applicant"), approved counsel for Debtor, hereby files

its Second and Final Application for Compensation and Reimbursement of Expenses,

as follows:

## Fees and Expenses Requested

1.     Applicant hereby seeks final approval and allowance of fees of

$877,124.00 and expenses in the amount of $100,359.98 for services performed from

the commencement of this case on December 31, 2008 through September 28, 2009,

the Effective Date of the Plan[1] and the payment of $563,175.21 in fees and expenses.

These amounts include all fees and expenses incurred during the case as detailed

below.

2.     This Court has already approved the interim allowance of $319,495.20 in

fees and $40,964.03 in expenses in its Order Approving First Interim Application of

Strasburger & Price, LLP for Compensation and Reimbursement of Expenses ("First

Interim Fee Application") for the Period December 31, 2008 through April 30, 2009,

entered June 29, 2009 [dkt. No. 267] which comprise 80% of the fees and 50% of

expenses requested in Applicants First Interim Fee Application. Applicant hereby seeks

final allowance of the fees and expenses requested in its First Interim Fee Application

and the payment of the remaining 20% of fees held back from Applicant's first interim

application in the amount of $79,873.80.

---

[1] Plus and amount for the preparation and presentation of this Final Fee Application incurred after the
Effective Date of the Plan as detailed herein.

3.      This Court approved the remaining 50% of the expenses sought in Applicant's First Interim Fee Application in its Order Approving Supplement to First Interim Application of Strasburger & Price, LLP for Compensation and Reimbursement of Expenses dated August 10, 2009 [dkt. #355].

4.      Applicant also seeks the allowance and payment of fees of $477,755.00 and expenses of $18,431.91 incurred since April 30, 2009, the period covered by the First Interim Fee Application.

## Employment and Prior Compensation

5.      The Order approving Applicant as counsel for debtor (Dkt. #122) was entered on February 20, 2009, effective December 31, 2008.

6.      This is Applicant's second and final fee application.  Applicant filed its first interim fee application on May 29, 2009, seeking $399,369.00 in fees, $81,928.05 in reimbursement of expenses, and authority to apply its retainer in the amount of $6,876.68. (Dkt. #226)

7.      After notice and hearing, the Court entered its order on Applicant's First Interim Fee Application on June 29, 2009 (Dkt. #267) and awarded Applicant fees in the amount of $319,495.20[2], and expenses in the amount of $40,964.03[3].  The Court granted Applicant the authority to apply its retainer to the outstanding amounts.

8.      On July 7, 2009, Applicant filed its Supplement to First Interim Fee Application seeking the balance of expenses and provided the requested

---

[2] The Court awarded Applicant 80% of its fees, with the remaining 20% to be considered with Applicant's final fee application.
[3] The Court awarded Applicant 50% of its expenses, subject to a supplemental application with more detailed information about the reasonableness of the expenses requested.

documentation (Dkt. #277).   On August 10, 2009, the Court awarded the balance of expenses requested in the amount of $40,964.03 (Dkt. #355).

9.       To date, the Debtor has paid Applicant $394,546.58, and Applicant has applied the retainer in the amount of $6,876.68, for a total of $401,423.26.

## Status of the Case

10.       On August 27, 2009 the Court entered its order confirming the Third Amended Plan of Reorganization of Superior Air Parts, Inc. and the Official Committee of Unsecured Creditors ("Plan"). Under the Plan, 100% of the equity of the Reorganized Debtor was to be issued to Weifang Freesky Aviation Technologies Company ("Weifang") , a member of the Brantly Group, in consideration for the payment of $7 million to the Creditors Trust, subject to certain adjustments, as well the agreement of the Reorganized Debtor to assume purchase orders of approximately $3,095,001, the payment of defense costs of and the assumption of contingent liabilities under its insurance policies of over $3,407,000, and the assumption of certain warranty claims aggregating at least $83,000.

11.       On September 28, 2009 Weifang transferred $7 million to the Debtor, funding the acquisition, and the plan became effective.   Thereafter the Debtor transferred $8,027,140 to the Creditors Trust for payment of administrative professional fees and payments to the creditors as provided in the Plan.

12.       As a result of the successful consummation of the plan, the unsecured trade creditors are expected to receive at payment of least 80% on their claims.   In addition to the consideration paid by Weifang and the obligations assumed by the Reorganized Superior which reduced the total amount of claims to be paid by the Creditors Trust, this substantial payout was made possible by settlements with Thielert

AG and Thielert Aircraft Engines GmbH where they agreed to accept approximately $4,740,000 under the Plan in payment of claims in excess of $26 million.

13.     Moreover the confirmation of the Plan is facilitating the revival of the Debtor's business and an opportunity for significant growth, which benefits the estate, its customers, and entire supply chain of vendors.

## MAJOR EVENTS IN THE CASE

14.     On December 31, 2008 (the "Petition Date"), Superior Air Parts, Inc. ("Debtor" or "Superior") filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.   The Debtor managed its affairs as debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

15.     Superior Air Parts, Inc. ("Superior") is a Texas corporation with its offices and operating facilities located in Coppell, Dallas County, Texas.   It was founded in 1967 in order to supply the United States Air Force and commercial customers with replacement parts for piston powered aircraft engines.   Superior is one of the largest suppliers of parts under Federal Aviation Administration's ("FAA") Parts Manufacturer Approval ("PMA") regulations for piston engines.   It provides Superior-brand parts for engines created by two primary original equipment manufacturers ("OEMs"), the Continental division of Teledyne, Inc. and the Lycoming division of Textron Inc.   Its customers are companies that perform maintenance and overhaul work in the general aviation industry.   Superior is also an OEM for the 180-horsepower Vantage Engine and owner-built XM-360 engines for various aircraft companies.   In addition, Superior is a distributor of over 2,000 general parts purchased from other manufacturers to compliment its own product line.

16.    Just prior to the commencement of this case, Superior entered into an asset purchase agreement with Avco Corporation ("Avco"), an affiliate of Textron Corporation, which contemplated a sale of substantially all of the Debtor's assets to Avco for $11 million, adjusted by reductions in inventory, or the highest bidder in a Chapter 11 auction process.

17.    Upon filing, Superior stopped assembling cylinders and engines, eliminated its sales and marketing staff, reduced its employees from 25 to 15, and virtually ceased acquiring parts from its vendors in anticipation of the sale of its assets to Avco Corporation.

18.    The auction process was approved by this court and the auction was conducted on February 25, 2009. The two bidders were Avco and TCM, an affiliate of Teledyne Industries, Inc..  A sale to either of these purchasers raised anti-trust concerns with the United States Department of Justice and several state attorneys general. The Justice Department had opened an investigation and began gathering information from the Debtor and other parties to determine its position on a sale to either bidders but was not expected to reach any conclusions for several months; as a result of this uncertainty, the parties were unable to reach an agreement on how to address these concerns or allocate the risk and so the Debtor chose to decline their bids.

19.    Thereafter, the Debtor and its counsel continued to negotiate with several parties expressing interest in acquiring all or part of the Debtor's assets and the Debtor entered into non-disclosure agreements with several parties, but no party presented a firm offer to acquire the Debtor prior to the expiration of the Debtor's exclusive period. to

file a plan; and so on May 15, 2009, the Debtor filed a plan to sell the Debtor or its assets or equity through an auction process without a stalking horse bidder.

20. Aviation Parts Supply, Inc., a corporation created by the Debtor's aviation liability defense law firm and others to acquire the Debtor's piece parts business, but not its engine program, had made numerous proposals, none of which the Debtor believed to be insufficient to provide a basis for a plan.

21. After the Debtor filed its plan, APS entered into extensive negotiations with the Creditors Committee to define, refine and firm its proposal. The term sheet proposed by APS was at or near liquidation value but provided for a continuation of part of the Debtor's business. After conferring with the Creditors Committee, the Debtor joined the negotiations insisting that the APS offer be subject to higher and better offers, a condition agreed to by the Committee.

22. Before the negotiations were concluded, the Brantly Group expressed interest in acquiring the equity in the Debtor at a substantially higher price and proposed continuing the entire business with the goal of, among other things, taking advantage of what it believed to be a rapidly expanding market in China for F.A.A. certified parts. APS, which had not paid or promised any earnest money withdrew its offer out of concern that the Debtor would choose the higher offer from the Brantly Group.

23. On June 23, 2009, Debtor filed its Amended Disclosure Statement and the Amended Plan of Reorganization, proposed by the Debtor and the Official Committee of Unsecured Creditors ("Creditors Committee"). Debtor also filed its Motion to Establish Bid Procedures for Bid on the Sale of Equity or Assets Pursuant to a Plan of

Reorganization.  A hearing was set for July 7, 2009 to determine the adequacy of the disclosure statement.

24.    On June 25, 2009, Creditor Aviation Parts Supply ("APS") filed its preliminary objection to Debtor's Amended Disclosure Statement.  APS filed additional objections on July 6th, the eve of the disclosure statement hearing.

25.    A hearing on the amended disclosure statement was held on July 7, 2009. On July 9, 2009, the Debtor and the Creditors Committee filed the Second Amended Disclosure Statement and Plan, and the hearing was continued to July 14, 2009.

26.    On July 10, 2009, the Debtor filed its Amended Motion to Approve Bid Procedures and Sell Equity Pursuant to Plan of Reorganization ("Motion to Approve Bid Procedures").

27.    On July 13, 2009 APS filed objections to the Debtor's and the Committee's Third Amended Disclosure Statement, and the Motion to Approve Bid Procedures.

28.    The hearing on the second amended disclosure statement was held on July 14, 2009.  On July 15, 2009, APS filed its Disclosure Statement and Chapter 11 Plan.  A hearing on the APS disclosure statement was set for August 26, 2009.

29.    On July 17, 2009, the Debtor and the Creditors Committee filed the Third Amended Disclosure Statement, Third Amended Plan of Reorganization (the "Third Amended Plan") and the Motion to Approve Bid Procedures.

30.    On July 17, 2009, Creditor Maloney, Bean, Horn & Hull, P.C. filed its Objection to Second [*sic*] Amended Disclosure Statement and Alternately Motion for Protection and/or to Establish Escrow Account.

31.    On July 20, 2009, APS filed its Objection to the Debtor's Third Amended Disclosure Statement.

32.    After further modification, the Third Amended Disclosure Statement was approved on July 23, 2009, and the confirmation hearing was set for August 26, 2009.

33.    APS filed its amended disclosure statement and plan on August 4, 2009, as well as Adversary Proceeding 09-3249 against Thielert Aircraft Engines GmbH and Thielert AG.

34.    Objections to the APS amended plan and disclosure statement were filed by the Debtor, the Committee, and TAG.

35.    The confirmation hearing was held on August 26, 2009, and the Third Amended Plan filed by the Debtor and the Committee was confirmed.  The sale of the Debtor's assets to Weifang, as contemplated by the confirmed plan, closed on September 28, 2009.

36.    A significant complication in this case arose out of the claims of insiders. Thielert A.G., the Debtor's sole shareholder, alleged that it had a secured claim in excess of $10 million arising out of the payment of secured debt when it acquired the company and Thielert Aircraft Engines GmbH[4], the Debtor's affiliate alleged that it had an unsecured claim in excess of $16 million for parts delivered on credit. These claims, if allowed, dwarfed the claims of the unsecured creditors. The Creditors' Committee conducted an investigation of the claims and expressed its intention to seek the subordination or recharacterization of these claims unless an acceptable settlement was reached.    The ensuing posturing and negotiations created additional tension and

---

[4] The Debtor avoided TAG's security interest in an adversary proceeding because it was unperfected.

complexity to the case and increased the obstacles to a consensual plan; fortunately a multi-party settlement was reached literally on the day of the confirmation hearing.

37.     Another layer of complexity in this case arose out of the Debtor's relationship with its aviation liability insurers, which included disagreements over the effect of the Debtor's disputed obligation to share in defense costs, the appropriate treatment of aviation liability insurance contracts in bankruptcy, the difficulty in estimating contingent liabilities, as well as the importance of the Debtor's maintaining a relationship with its insurers and with vendors and distributors who relied on Superior to maintain insurance.  The insurance issues which remained at issue throughout the case were resolved just days before the hearing on the confirmation of the Plan.

38.     On September 28, 2009 the Brantly Group funded the acquisition, triggering the Effective Date of the Plan

39.     In addition to the services performed in connection with the disclosure statement and plan, during the Application Period Applicant assisted Debtor with numerous claim objections and defending motions to lift stay filed by the personal injury plaintiffs as more particularly described in the Narrative Description of Services Provided, by Category section below.

### Operations

40.     The Debtor is currently operating under the confirmed Plan and the Creditors Trust has sufficient funds to pay the projected administrative expenses of professionals in this case and also distribute approximately $7 million to creditors as projected in the Disclosure Statement.

## Narrative Description of Services Provided, By Category

41.    The services provided by Application during the period December 31, 2008 through April 30, 2009 were detailed in Applicant's First Interim Fee Application filed May 29, 2009 [dkt. 226].   The total hours of service and fees charged in each category is indicated in the following paragraphs.

42.    The services provided by Applicant during this Application Period have been itemized by category.    Miscellaneous items are included in the "Case Administration" category.

a.    General Case Administration:   The services provided in this category include preparation and filing of the amended schedules and matrix, maintaining a due diligence extranet for potential purchasers, fielding general inquiries from creditors, communication and reports to the United States Trustee, and monthly operating reports.

The number of hours of services provided by Applicant during the Application Period in this category were 27.7 hours for a total of $8,241.50 in fees billed.

The total hours of services provided by Applicant in this category since December 31, 2008 were 145.8 hours for a total of $31,613.50.

b.    Asset Analysis and Recovery:   The services provided in this category include efforts to prepare a comprehensive analysis of and disseminate information about the APS offer, Debtor's alternatives, and issues related to TAE and TAG.

The number of hours of services provided by Applicant during the Application Period in this category were 4.7 hours for a total of $2,266.50 in fees billed.

The total hours of services provided by Applicant in this category since December 31, 2008 were 33.5 hours for a total of $12,326.50.

c.    Asset Disposition:   The services provided in this category relate to the continued efforts to sell substantially all of the Debtor's assets, including negotiations with potential purchasers.

The number of hours of services provided by Applicant during the Application Period in this category were 14.40 hours for a total of $6,116.00 in fees billed.

The total hours of services provided by Applicant in this category since December 31, 2008 were 458.40 hours for a total of $189,947.00.

d.    <u>Relief from Stay Proceedings</u>:  At the time the bankruptcy case was filed, there were numerous personal injury and wrongful death claims and lawsuits on file against the Debtor.  These claims and lawsuits were disclosed in Debtor's schedules and statement of financial affairs.    Although the Debtor believes that each of these claims and lawsuits, and the expenses associated therewith, including local counsel and expert witness fees, are covered by insurance, there have been no assurances made by the insurance carriers that issued the applicable polices that the insurers will assume, or have assumed, financial responsibility for defending the lawsuits.

Some of the underlying insurance policies provide for deductibles, self insured retentions, reimbursement obligations, fees and expenses and related costs that the insurance carriers have stated are the responsibility of the Debtor.    Further, the insurance carriers have expressed the opinion that the Debtor's failure to assume responsibility for the payment of those items is a condition of the carrier's obligation to continue to provide a defense on behalf of the Debtor.  Several claimants filed Motions for Relief from Stay, to which the Debtor objected.  Orders were entered maintaining the stay if it would benefit the estate by preserving insurance costs or lifting the stay if it reduced claims or did not harm the estate.

The number of hours of services provided by Applicant during the Application Period in this category were 15.5 for a total of $7,345.50.

The total hours of services provided by Applicant in this category since December 31, 2008 were 57.30 hours for a total of $27,208.50.

e.    <u>Meetings and Communications with Creditors</u>:  The services provided in this category include providing information to, communicating with, and negotiating with the creditors' committee and responding to inquiries from the California Attorney General.

The number of hours of services provided by Applicant during the Application Period in this category were 5.00 hours for a total of $2,447.00 in fees billed.

The total hours of services provided by Applicant in this category since December 31, 2008 were 30.00 hours for a total of $14,231.00.

f.    <u>Fee/Employment Applications</u>:  The services provided in this category include preparation, filing, and attendance at the hearing on Applicants first interim fee application, preparation of the order approving same, preparation and filing of Applicant's supplement to first interim fee application, and preparation and filing of this Application.  Additional amounts for preparation, filing, and attendance at the hearing on this Application are being requested, and detailed explanation of those amounts is provided in paragraph 46, below.

The number of hours of services provided by Applicant during the Application Period in this category were 55.40 for a total of $13,109.00.

The total hours of services provided by Applicant in this category since December 31, 2008 were 72.80 hours for a total of $20,880.00.

g.    <u>Other Contested Matters</u>:  The services provided in this category include resolution of reclamation claims of Seal Science, EMag Ignitions, and Aviall, attendance at the hearing on Debtor's accounts receivable motion and preparation of order, preparation for and attendance at summary judgment hearing in adversary proceeding against Thielert AG.

The number of hours of services provided by Applicant during the Application Period in this category were 7.00 hours for a total of $2,999.00 in fees billed.

The total hours of services provided by Applicant in this category since December 31, 2008 were 12.60 hours for a total of $5,261.00

h.    <u>Non-Working Travel</u>:  The number of hours of non-working travel time during the Application Period is 76.8 hours for a total of $36,189.00 in fees billed. Applicant has made a voluntary reduction of 50% of the fees applied for in this category. The total fees billed in the amount of $36,189.00 have been reduced by $18,094.50, for a total amount requested in this category of $18,094.50.

The total number of hours of non-working travel since December 31, 2008 were 89.4 for a total of $21,026.00.

i.    <u>Business Operations</u>:  The services provided in this category include ongoing discussions with Mr. Abercrombie regarding insurance issues and operations.

The hours of services provided by Applicant during the Application Period in this category were 1.00 hours for a total of $491.00 in fees billed.

The total hours of services provided by Applicant in this category since December 31, 2008 were 60.3 for a total of $24,816.00.

j.    <u>Tax Issues</u>:  The hours of service in this category include analysis of state tax issues.

The hours of services provided by Applicant during the Application Period in this category were .3 hours for a total of $180.00 in fees billed.

The total hours of services provided by Applicant in this category since December 31, 2008 were 3.1 for a total of $1,643.00.

k.    <u>Claims Administration/Objections</u>:  The services provided in this category include specific claim issues including analysis of validity and priority of claims filed, determination of basis for objections to claims, preparation of objections to certain claims, analysis of warranty claims and warranty holder claims, analysis of Zanzi claim, claims resulting from the rejection of certain executory contracts, analysis and resolution of reclamation claims, analysis and resolution of 503(b)(9) claims, analysis and

reconciliation of open purchase orders, detailed analysis of insured claims and potential exposure on personal injury claims, and maintenance of a working claims analysis to track the status of claims and objections.

The hours of services provided by Applicant during the Application Period in this category were 97.40 hours for a total of $26,486.00 in fees billed.

The total hours of services provided by Applicant in this category since December 31, 2008 were 250.8 for a total of $78,070.00.

l.      <u>Strategic Planning, Disclosure Statement and Bankruptcy Plan</u>:    The services provided in this category include communications with potential buyers, development of the strategic plan for the disclosure statement and plan, mapping out issues and structure of liquidation plan, discussion of plan alternatives, including selling company in parcels or stock and analysis of financial information to support same, review of pro forma for stand alone piece parts business and analysis of tax and potential post-confirmation liability issues, preparation and filing of motion to extend exclusivity, negotiation of possible settlement with TAG, evaluation of causes of action plead by Committee, efforts to reach consensual plan, communications with potential new buyer, preparation and filing of disclosure statement and plan on May 15, 2009, subsequent filings of amended, second amended, and third amended disclosure statement and plan on June 23, 2009, July 7, 2009, and July 17, 2009, respectively. The third amended disclosure statement was approved on July 23, 2009, and the confirmation hearing was scheduled for August 26, 2009.  On July 15, 2009, creditor Aviation Parts Supply filed a competing plan, and Applicant provided services in this category related to the analysis of that plan and communications with the Debtor and Creditors Committee regarding same.

The Plan filed by the Debtor and the Committee was confirmed on August 26, 2009, and the sale of the Debtor's assets pursuant to the confirmed plan was funded and closed on September 28, 2009.

The numbers of hours of services provided by Applicant during the Application Period in this category were 854.50 for a total of $371,884.50 in fees billed.

The total hours of services provided by Applicant in this category since December 31, 2008 were 936.60 for a total of $410,173.50.

## Billing Summary

| Name | Attorney Specialty | Number of Hours Worked | Hourly Rate | TOTAL |
|---|---|---|---|---|
| Stephen A. Roberts | Bankruptcy | 434.80 | $495.00 | $215,226.00 |
| Duane J. Brescia | Bankruptcy | 401.20 | $425.00 | $170,510.00 |
| Elizabeth Volmert | Litigation | 68.60 | $395.00 | $27,097.00 |
| Bob Franke | Bankruptcy | 38.60 | $475.00 | $18,335.00 |
| Amy Schumacher | Litigation | 4.40 | $325.00 | $1,430.00 |
| Robert Tyler | Litigation | 2.80 | $430.00 | $1,204.00 |
| Spencer Stevens | Corporate | 16.50 | $375.00 | $6,187.50 |
| David Cibrian | Corporate | .80 | $475.00 | $380.00 |
| John E. Rogers | Corporate | .20 | $550.00 | $110.00 |
| Daniel L. Butcher | Tax | .30 | $600.00 | $180.00 |
| Donna Krupa | Paralegal | 188.90 | $195.00 | $36,835.50 |
| Angelyn Tomes | Case Clerk | 2.60 | $100.00 | $260.00 |
| **Sub-Total** | | **1,159.70** | | **$477,755.00** |
| **Less deduction for non-working travel** | | | | **-18,094.50** |
| **TOTAL** | | | | **$459,660.50** |

43.     Copies of the fee statements for the application period are attached as *Exhibit A*.

## Paraprofessionals

44.     Donna Krupa served as the chief paralegal on this case. Ms Krupa holds a Bachelor's degree from the University of Illinois – Urbana and has over twenty-two years experience in bankruptcy and litigation. Ms. Krupa has assisted in numerous complex Chapter 11 cases, enabling Applicant to reduce its blended hourly rate performing services where other firms are required to use professionals at higher billing rates.

## Expenses

45.     An itemized list of disbursements is included in *Exhibit A.*

**Preparation of Application**

46.    Applicant estimates the total time spent on the preparation of this application to be 25 hours for a total of $6,666.50 in fees incurred at a blended rate of $266.66 per hour.  In addition, Applicant estimates 9 hours of attorney time to travel to and attend the hearing on this application.  Non-working travel time of 7 hours will be billed at $247.50, one-half the standard hourly rate charged by Mr. Roberts, for a total of $1,732.50, to travel to and from the hearing.  Applicant estimates (2) hours will be billed at $495 per hour, for a total of $990.00, for Mr. Brescia's attendance at the hearing. Accordingly, the total fees requested for the preparation and prosecution of this Application are $9,389.00.  Of this amount, $4,180.00 is included in the fee statements attached as *Exhibit A*, and the balance of $5,209.00 is requested in addition to the amounts reflected in the attached fee statements.

**Factors Supporting Allowance of Compensation**

47.    Section 330(a)(3)(A) of the Bankruptcy Code sets forth the criteria for the evaluation of professional fees.  The § 330(a)(3)(A) factors are subsumed within the more extensive factors set forth in *In re First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir.), *cert. denied,* 431 U.S. 904 (1977) *First Colonial* factors.  The following analysis of the *First Colonial* factors supports the reasonableness of the requested fees and expenses:

    a.    **Time and labor required:**  *Exhibit A* to this Application contains copies of Strasburger & Price, LLP's Monthly invoices.  All time records are recorded in the firm's computerized billing system contemporaneously with the rendition of the services, and those daily records are reviewed periodically.  *Exhibit A* sets forth in detail all the time for which compensation is sought, as well as the specific services performed by each of the professionals in connection with the services.

    b.    **The size of the fee is commensurate with the novelty and difficulty of the questions presented in the case:**  Applicant believes that the amount of the fees

in this case is commensurate with the complexity of the legal issues and problems present in this case including but not limited to the federal regulation and anti-trust laws affecting the Debtor's business, the relatively small pool of potential buyers, the extended due diligence conducted by potential buyers, the complexity of the auction process, the economic downturn, the complexity of the proposals made by APS to acquire the company requiring detailed analysis and quantification of estimated and contingent claims, the overlay of aviation liability insurance issues affecting any potential resolution, the nature and extent of the insider claims against the Debtor, and the persistent efforts of APS to derail the Debtor's efforts to sale its assets or confirm a plan that did not involve APS as the buyer.

c.    **The skill requisite to perform the legal services properly:**  This case required a high level of skill and experience for the professionals involved. In addition, Applicant has made a substantial investment in technology and electronic document organization which enabled it to use attorneys with the required expertise across the Firm's offices by putting the necessary information at their fingertips in a cost-effective manner.

d.    **Preclusion of other employment due to the acceptance of this case:** This case did not preclude Applicant from accepting other cases, however, it did take up substantial amount of attorney and paralegal time which otherwise could have been diverted to other cases.

e.    **The Customary fee:**  The hourly rates of Applicants are consistent or less than the reasonable and customary rates charged by professionals of comparable experience and ability in matters of similar scope, complexity, and significance.

f.    **Whether the fee is fixed or contingent:**  Fixed.

g.    **The amount of time involved and the results obtained:**  The amount of time involved was commensurate with the tasks required.  As more fully detailed above, this case resulted in the confirmation of reorganization plan providing for the revival of the Debtor's business and estimated payment in excess of 80% to unsecured creditors. The time and expenses incurred in this case, are reasonable for a case of this type. This case was initially filed on December 31, 2009 as part of an effort to sell the assets of the Debtor to Avco Corporation for a purchase price of $11 million subject to adjustments due to inventory reductions.  The sale was not consummated due to antitrust concerns brought to the attention of the United States Justice Department and state attorneys general by a party interested in acquiring the Debtor.  Had the sale closed, the Debtor estimates that the payment to unsecured creditors would have been substantially less than under the Plan even though the purchase price was higher because the buyer would not have assumed any of the obligations assumed under the confirmed Plan and neither Theilert AG or Thielert Aircraft Engines GmbH had agreed to accept less than their pro-rata share in payment of their claims which exceeded $26 million.. Moreover the successful confirmation of the Plan provides an opportunity for the Debtor to revive and grow its business.  The Debtor estimates that the additional

financial benefit conferred upon the estate and its creditors  substantially exceeds the professional fees in this case.

h.    **The experience, reputation, and ability of the professionals who performed services in the case:**    Applicant has a prominent and long-standing reputation handling chapter 11 bankruptcy cases in Texas.  Lead bankruptcy counsel, Stephen A. Roberts, has 27 years experience in the insolvency practice and has represented numerous debtors in publicly held and privately held companies, creditors committees, secured and unsecured creditors, and acquirers.  Mr. Roberts also has considerable experience in non-bankruptcy litigation and in other areas of business law. Mr. Roberts has been certified as a specialist in Business Bankruptcy Law by the Texas Board of Legal Specialization since 1992.  He has been selected by his peers as a Texas "Superlawyer" every year since 2003 when the selection program started.

Duane E. Brescia, who was the bankruptcy attorney most involved in this case other than Mr. Roberts, has more than 11 years experience assisting clients in insolvency, corporate reorganization and commercial litigation-related matters.  He has served as lead counsel in several chapter 11 cases, as well as representing creditors' committees, secured and unsecured creditors, and stakeholders in insolvent situations.

The other professionals who performed services in this case are listed above in descending order of the time they worked on the case. Their individual credentials can be viewed at www.strasburger.com.

i.    **The undesirability of the cases:**    This case was by no means undesirable, but it did involved complex issues not customary in cases of this size.

j.    **Awards in Similar Cases:**    The compensation requested in this case is comparable to the compensation allowed in other cases of the size and complexity of this case.

WHEREFORE, Applicant requests (i) final approval and allowance of fees of $877,124.00 and expenses in the amount of $100,359.98 for services performed from the commencement of this case on December 31, 2008 through September 28, 2009, the Effective Date of the Plan; (ii) approval and allowance of additional fees in the amount of $5,209.00 for the preparation and prosecution of this Application; (iii) that the Debtor be authorized and ordered to pay Applicant approved fees and expenses in the amount of **$563,175.21**; and, (iv) for such other and further relief to which Applicant may show itself to be justly entitled.

Respectfully submitted,

*/s/ Stephen A. Roberts*
Stephen A. Roberts (SBN 17019200)
Robert P. Franke (SBN 07371200)
Duane J. Brescia (SBN 24025265)
**STRASBURGER & PRICE, LLP**
600 Congress, Suite 1600
Austin, Texas 78701
Tel. (512) 499-3600
Fax (512) 499-3660
stephen.roberts@strasburger.com
bob.franke@strasburger.com
duane.brescia@strasburger.com

**BANKRUPTCY ATTORNEYS FOR DEBTOR
SUPERIOR AIR PARTS, INC.**

## CERTIFICATION BY PROFESSIONAL

By my signature below, I, Stephen A. Roberts, do hereby certify (i) that I have read the foregoing Application, (ii) to the best of my knowledge, information and belief, formed after reasonable inquiry, the compensation and expense reimbursement sought is in conformity with the Guidelines for Compensation and Expense Reimbursement of Professionals, and (iii) the compensation and expense reimbursement requested are billed at rates, in accordance with practices, no less favorable than those customarily employed by Applicant and generally accepted by the Applicant's clients.

*/s/ Stephen A. Roberts*
Stephen A. Roberts

## <u>CERTIFICATE OF SERVICE</u>

        The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been forwarded by United States first class mail to the parties listed below, and without Exhibit A to all parties listed on the attached Service List on this the 12th day of October, 2009.  The fee statements are available upon request.

### <u>U.S.TRUSTEE:</u>

Mary Frances Durham
U.S. Department of Justice
Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242

### <u>POST-CONFIRMATION TRUSTEE OF THE CREDITORS' TRUST:</u>

Marla C. Reynolds
Lain, Faulkner & Co., P.C.
400 N. St. Paul, Suite 600
Dallas, Texas 75201

### <u>OFFICIAL COMMITTEE OF</u> <u>UNSECURED CREDITORS</u>:

David W. Parham,
Elliot Schuler & A. Swick
Baker & McKenzie LLP
2001 Ross Ave., Suite 2300
Dallas, TX  75201

                        */s/ Stephen A. Roberts*
                        Stephen A. Roberts