David W. Parham
State Bar No. 15459500
Elliot D. Schuler
State Bar No. 24033046
Baker & McKenzie
2300 Trammel Crow Center
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 978-3000
Facsimile: (214) 978-3099

**ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | Case No. 08-36705-BJH-11 |
| **SUPERIOR AIR PARTS, INC.** | § | |
| | § | Hearing Date: 11/25/09 |
| **DEBTOR-IN POSSESSION.** | § | Hearing Time: 9:00 a.m. |

**FINAL APPLICATION OF BAKER MCKENZIE LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF ADMINISTRATIVE CLAIM FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF JANUARY 29, 2009 THROUGH SEPTEMBER 28, 2009**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, 12TH FLOOR, DALLAS, TEXAS 75242, BEFORE CLOSE OF BUSINESS ON THE DATE WHICH IS TWENTY-THREE (23) DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE MUST BE IN WRITING AND FILED WITH THE CLERK, AND A COPY MUST BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED, A HEARING WILL BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

1

Pursuant to 11 U.S.C. §§ 328, 330 and 331, Rule 2016 of the Federal Rules of Bankruptcy Procedure, the Retention Order (as defined below), and the Local Rules for the United States Bankruptcy Court for the Northern District of Texas, the law firm of Baker & McKenzie LLP ("B&M"), counsel for the Official Committee of Unsecured Creditors (the "Committee"), hereby applies (the "Application") for an order allowing it the following compensation and reimbursement on a final basis: (i) $426,199.00 for the reasonable and necessary services B&M has rendered to the Committee during the period from January 29, 2009 through September 28, 2009 (the "Entire Application Period"); and (ii) reimbursement for the actual and necessary expenses incurred in the amount of $5,709.41 for the Entire Application Period.  In support of this Application, B&M respectfully states as follows:

## JURISDICTION

1. This Court exercises jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BRIEF BACKGROUND AND OVERVIEW

*Background and Overview*

2. This case was commenced by the filing of a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division on December 31, 2008 (the "Petition Date").  Since the Petition Date, the Debtor has continued to operate their businesses as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2

3. On or about January 29, 2009, the United States Trustee certified and appointed the Committee in accordance with Section 1102(a)(1) of the Bankruptcy Code. The members of the Committee, as amended, include (1) AVStar Aircraft Accessories, Inc., represented by Ronald J. Weaver, (2) Eck Industries, Inc., represented by Phil Eck, (3) KSPG Automotive Brazil LTDA, represented by Werner Wilhelm Albus and Valeria de Freitas Mesquita, (4) Hartford Aircraft Products represented by Jim Griffin, (5) Seal Science, Inc., represented by Piyush Kakar, and (6) Zanzi, S.P.A., represented by Stefano Gazzola.

4. On or about January 29, 2009, the Committee interviewed and voted to retain B&M as its legal counsel to represent it and advise the Committee on matters arising in the case.

5. By this Court's Order dated April 7, 2009, the Committee was authorized to retain B&M, under 11 U.S.C. § 328(a), as counsel effective as of January 29, 2009 (the "Retention Order").

6. The Retention Order authorizes the Debtors to compensate B&M in accordance with the procedures set forth in sections 330 and 1103(a) of the Bankruptcy Code.

7. As disclosed in the Declaration of David W. Parham filed in support of the Application to Employ and Retain Baker & McKenzie as Counsel (the "Affidavit") filed on or about February 4, 2009, B&M does not hold or represent any interest adverse to the estate with respect to the matters for which B&M is employed.

8. B&M may have in the past represented, may currently represent, and likely in the future will represent, parties-in-interest in connection with matters unrelated to this Case. In the Affidavit, B&M disclosed its connections to parties-in-interest. B&M will update the Affidavit, as necessary, if B&M becomes aware of material new information.

3

9. B&M performed the services for which it is seeking compensation on behalf of the Committee.

10. Except as provided herein or in the application to retain B&M, B&M has received no payment and no promises for payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with this Case.

**STANDARD FOR DETERMINING ALLOWANCE OF REQUEST FOR REIMBURSEMENT OF ATTORNEYS' FEES**

11. Pursuant to Section 330 of the Bankruptcy Code and the orders employing B&M, this Court may award to B&M "reasonable compensation for actual, necessary services rendered" to the Committee and reimbursement of actual and necessary expenses incurred. 11 U.S.C. § 330(a)(1). Section 330 of the Bankruptcy Code mandates that in "determining the amount of reasonable compensation to be awarded," that this Court must consider not only the nature, extent and value of the services rendered, but also all relevant factors such as the following

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary . . . or beneficial at the time at which the service was rendered toward completion of, a case. . .;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than in cases [under title 11].

4

12. Furthermore, under applicable federal law, the Court possesses "broad discretion in determining the amount of attorneys' fees to award as compensation for services performed in connection with bankruptcy proceedings." *In re First Colonial Corp. of America*, 544 F.2d 1291, 1298 (5th Cir.), *cert. den'd*, 431 U.S. 901 (1977). However, in so exercising its discretion, the Court must weigh several factors to determine the reasonableness of the attorneys' fees requested. *Id.* Those factors include the following

(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; and (12) Awards in similar cases.

*Id.* at 1298-1299 (*quoting, Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714-717-719 (5th Cir. 1974)).

13. In considering the weight of various factors, this Court "must [first] determine the nature and the extent of the services supplied by [B&M]" with reference to the time and labor records submitted. *First Colonial Corp. of America,* 544 F.2d at 1299-1300. Thereafter, the Court must ascertain the value of the services rendered by B&M. *Id*. at 1300. Ultimately, this Court "must briefly explain the findings and reasons upon which the award is based." *Id*.

5

14. As demonstrated in detail below, B&M has met its burden under Section 330 of the Bankruptcy Code, and the Court should authorize the payment of the requested attorneys' fees and expenses.

### A. *Lodestar Analysis*

#### *First Fee Application*

15. On May 22, 2009, the first Application of Baker & McKenzie LLP, Counsel to the Official Committee of Unsecured Creditors, for Interim Allowance of Administrative Claim for Compensation and Reimbursement of Expenses for the Period of January 29, 2009 through May 15, 2009 (the "First Fee Application") [Doc. No. 215] was filed. Copies of the exhibits relating to the First Fee Application were attached to it and are referenced and incorporated herein.

16. As no objections were filed during the objection period following the filing of the First Fee Application, a certificate of no objection was filed on June 23, 2009 [Docket #242].

17. On June 26, 2009, an Order Granting the First Application was entered [Doc. No. 256]. The Debtor became authorized to pay B&M (i) $175,150.00 in fees for the First Fee Application Period (80% of the allowed fees); and (ii) $2,505.68 in expenses for the First Fee Application Period.

#### *Current Application*

18. In accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the U.S. Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "UST Guidelines"), B&M submits herewith, as **Exhibit "A"** through **Exhibit "F"**, the invoices (the "Fee Statements") that

6

show the detailed itemization and description of the services that B&M rendered during May 16, 2009 through September 28, 2009 (the "Current Application Period").

19. The Fee Statements included in the Current Application Period (a) identify the individuals that rendered services; (b) describe each activity or service that each individual performed; and (c) state the number of hours (in increments of one-tenth of an hour) spent by each individual providing the services.

20. Due to the nature of B&M's employment as counsel during the Current Application Period, the Fee Statements are separated into 6 categories: (1) Committee Representation; (2) Employment and Fee Applications; (3) Claims Analysis; (4) Plan Issues; (5) Committee Communications and (6) Antitrust Issues.

### B. *Time and Labor Expended During the Current Application Period*

21. The professional services rendered by B&M to the Committee in this Chapter 11 case required an expenditure of substantial time and effort. From May 16, 2009, through and including September 28, 2009, B&M's attorneys and paraprofessionals expended 464.1 hours rendering legal services to the Committee.

22. The following table identifies each of the B&M attorneys, paraprofessionals and clerks who performed services on behalf of the Committee and their respective hourly billing rates, the number of hours spent and the fees billed during the Current Application Period (the "Summary"). The Summary sets forth all of the time for which compensation is sought for services performed by B&M's attorneys and paraprofessionals during the Current Application Period:

7

| Name, Position, Year Employed at Position, Year of Law School Graduation | Location | Bill Hours | Rate | Bill Amount |
|---|---|---|---|---|
| Cynthia Y.S. Tang, Partner, 2009, 1988 | Hong Kong | .1 | $980.00 | $98.00 |
| David W. Parham, Partner, 2002, 1981 | Dallas | 167.1 | $555.00 | $92,740.50 |
| Elliot D. Schuler, Associate 2003, 2001 | Dallas | 257.5 | $410.00 | $105,575.00 |
| Harvey Lau, Partner, 2007, 1988 | Shanghai | 1.2 | $990.00 | $1,188.00 |
| Randall A. Swick, Associate, 2006, 2006 | Dallas | 11.3 | $305.00 | $3,446.50 |
| Wendi J. Wheeler, Paralegal | Dallas | 25.9 | $155.00 | $4,014.50 |
| Mari L. Adams, Legal Assistant | Dallas | .3 | $185.00 | $55.50 |
| Jacquelyn Evans, Paralegal | Dallas | .7 | $205.00 | $143.50 |
| **GRAND TOTALS** | | **464.1** | | **$207,261.50** |

23.    Recognizing the costs of legal services, B&M endeavored to provide a continuity of service to the Committee with respect to the professionals performing services in order to avoid duplication of time and effort.

24.    In accordance with Bankruptcy Rule 2016, B&M herewith provides project-specific descriptions of the services performed by B&M as follows:

   *(i)    Committee Representation*

25.    During the Current Application Period, B&M professionals spent 16.6 hours, representing $6,304.00 in fees, on general matters, relating to work, which was not appropriate in any other category.

8

### *(ii)   Employment and Fee Applications*

26.   During the Current Application Period, B&M spent 22.1 hours, representing $8,171.50 in fees, on preparing B&M and other professionals employment and fee applications.

### *(iii)   Claims Analysis*

27.   During the Current Application Period, B&M professionals spent 43.1 hours, representing $17,739.00 in fees, performed in connection with evaluating the claims made against the estate as well as any potential objections and/or causes of action to equitably subordinate or recharacterize certain claims.

### (iv)   *Plan Issues*

28.   During the Current Application Period, B&M professionals spent 338.8 hours, representing $154,587.50 in fees, negotiating and reviewing the terms of proposed plans of reorganization.

### (v)   *Committee Communications*

29.   During the Current Application Period, the B&M spent 41.4 hours, representing $19,526.00 in fees preparing for and participating in various Committee meetings.

### *(vi)   Antitrust Issues*

30.   During the Current Application Period, B&M professionals spent 2.1 hours, representing $933.50 in fees, in connection with the investigation of potential antitrust issues related to the sale of assets to certain entities and negotiations with same and related governmental entities.

C.   **Novelty and Difficulty of the Case**

31. B&M's representation of the Committee required a degree of skill and expertise as well as an understanding of the largely complex and novel issues surrounding this case. Accordingly, B&M maintains that its representation presented novel and difficult legal and procedural issues.

### D. *Reputation of Attorneys*

32. This Court authorized the employment of B&M based upon the skill and reputation of B&M's professionals and paraprofessionals in the practice of creditors' rights, insolvency, business restructuring and bankruptcy law. The attorneys of B&M enjoy a well-respected reputation for their abilities in creditors' rights, insolvency, business restructuring and bankruptcy matters. B&M has been and continues to be actively involved on behalf of its clients in multiple insolvency, business reorganization, creditors' rights and bankruptcy matters, involving high profile and complex issues.

### E. *Skill Required*

33. The nature of B&M's representation required B&M to exercise a high degree of skill in advising the Committee. B&M staffed all matters with competent personnel, while delegating tasks as appropriate to reduce costs and achieve maximum efficiency and economy.

*F.*     *Preclusion of Other Employment*

34.     During the Current Application Period, B&M's dedication of time to the representation of the Committee did not interfere with other representations.

*G.*     *Results Obtained*

35.     B&M has acted as the Committee's general counsel on all matters. Since its employment, B&M has provided the following professional services to the Committee:

(a)    Advise the Committee with respect to its statutory powers and duties;

(b)    Advise the Committee and consult with the Debtor concerning the administration of the Debtor's estate;

(c)    Assist the Committee in its investigation of the acts, conduct, assets, liabilities and financial condition of the Debtor, the operation of the Debtor's business and the desirability of the continuance of such business and any other matters relevant to the case or to the formulation of a plan(s) of reorganization or liquidation;

(d)    Advise the Committee regarding the formulation of a plan(s) of reorganization for the Debtor;

(e)    Prepare and defend, on the Committee's behalf, any and all necessary and appropriate motions and legal papers;

(f)    Investigate potential claims against insiders;

(g)    Represent the Committee in all matters before this Court; and

(h)    Perform any and all other and further legal services as may be necessary and appropriate to protect all unsecured creditors.

36.     More specifically, it can not be stressed enough that the Committee was primarily responsible for achieving consensual resolutions with Thielert AG ("TAG") and Thielert Aircraft

11

Engines GmbH ("TAE") regarding the treatment of their claims prior to the need for costly and time consuming litigation. These claims were the two largest in this case by a large margin and collectively totaled more than $28 million. Failing to resolve even one of those claims would have likely resulted in conversion of the case to one under Chapter 7 or at best a liquidating plan.

37. By obtaining consensual agreements with both TAG and TAE, the Committee was able to create the framework for a plan of reorganization in this case. In fact, the plan of reorganization ultimately confirmed in this case, was originally crafted after significant negotiation between the Committee and Aviation Part Supply ("APS"), the original proposed stalking horse bidder.

38. While APS was not ultimately the stalking horse bidder, the plan of reorganization that was formulated by the Committee and APS was ultimately utilized to attract additional buyers. After Brantly International surfaced as a potential purchaser their bid was substituted into the plan created by the Committee and APS.

39. The Committee was successful in working with the Debtor to conform the original plan to the "Brantly Plan" and jointly propounded same with the Debtor. That plan was ultimately confirmed by the Bankruptcy Court with overwhelming creditor support, after a contested confirmation hearing.

40. In addition, the Joint Plan of Reorganization submitted by the Committee and the Debtor is projecting creditor recoveries potentially as high as 100%. Comparatively, under a liquidation of all of the Debtor's assets creditors were projected to receive only 11%.

### H.  *Customary Fee for Services Rendered*

41. The time and effort required by B&M to adequately represent the Committee and the complexities of the issues involved therein have all been described in this Final Application.

For services rendered, B&M charged its attorneys' fees at the rates charged to B&M's bankruptcy, insolvency and creditors' rights and non-bankruptcy insolvency and creditors' rights clients alike. Moreover, the fees and rates charged are the same or lower than fees and rates charged by comparable law firms practicing before the bankruptcy cases and those charged by B&M for work performed by attorneys of commensurate experience in insolvency, creditors' rights and bankruptcy law throughout the country.

42. B&M is a law firm of international reputation, having approximately 3000 attorneys throughout the world.

### I. *Fixed or Contingent Fee*

43. B&M accepted the representation of the Committee upon the expectation that it would receive reimbursement of its expenses and compensation for services rendered at its usual and customary hourly rates.

### J. *Undesirability of the Case*

44. The representation of the Committee was not an undesirable representation.

### STANDARD FOR DETERMINING ALLOWANCE OF REQUEST FOR REIMBURSEMENT OF EXPENSES AND CHARGES

45. The UST Guidelines for Compensation and Expense Reimbursement of Professionals govern the reimbursement of expenses pursuant to Section 330 of the Bankruptcy Code.

46. It is B&M's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also B&M's policy to charge its clients only the amount actually incurred by B&M in connection with such items. Examples of such expenses are postage, overnight mail, courier delivery, transportation, overtime expenses,

13

computer assisted legal research, photocopying, outgoing facsimile transmissions, airfare, meals and lodging. With respect to airfare expenses, all travel, by all individuals, is billed at the coach class rate.

47. B&M charges: (a) $0.10 per page for standard duplication; and (b) $1.00 per page for outgoing telecopier transmissions (plus any applicable long distance charges). B&M does not charge its clients for incoming telecopier transmissions. B&M has negotiated a discounted rate for Lexis Nexis computer assisted legal research, and B&M passes on only the actual cost to the client. Computer assisted legal research is used whenever the researcher determines that using Lexis Nexis is more cost effective than using traditional (non-computer assisted legal research) techniques.

48. A statement of expenses by type, as well as a detailed itemization and description of the disbursements made by B&M on the Committee's behalf during the Current Application Period is attached as a part of the Fee Statements. All of these disbursements comprise the requested sum for B&M's out-of-pocket expenses and total $3,203.73 for the Current Application Period. In summary, those expenses for the Current Application Period are as follows:

| Description | Amount |
|---|---|
| Telephone | $47.69 |
| Photocopies | $713.64 |
| Postage | $13.71 |
| Transportation-Local | $121.69 |
| Courier/Messenger Service | $334.72 |
| Travel-Out of Town | $38.00 |
| Temporary Agency | $260.87 |
| Meals & Travel | $296.16 |
| Outside Information Services | $610.47 |
| Facsimile | $4.18 |
| Court Reporters | $588.60 |
| Outside Copy Service | $111.51 |
| Value Added Tax | $62.49 |

14

|  |  |
|---|---|
| **TOTAL** | **$3,203.73** |

## SUMMARY

49. B&M seeks final approval of its fees and expenses incurred during the Entire Application Period in the total amount of $431,908.41 consisting of (a) $218,937.50 incurred during the First Application Period and $207,261.50 incurred during the Current Application Period by the Committee for reasonable and necessary professional services rendered by B&M, and (b) $2,505.68 incurred during the First Application Period and $3,203.73 incurred during the Current Application Period for actual and necessary costs and expenses. B&M also seeks payment of all outstanding fees and expenses. In summary, those fees and expenses are as follows:

| PERIOD | TOTAL FEES REQUESTED | TOTAL EXPENSES REQUESTED | FEES PAID | EXPENSES PAID | UNPAID FEES and EXPENSES |
|---|---|---|---|---|---|
| First Application | $218,937.50 | $2,505.68 | $175,150.00 | $2,505.68 | $43,787.50 |
| Current Application | $207,261.50 | $3,203.73 | $0.00 | $0.00 | $210,465.23 |
| **TOTALS** | **$426,199.00** | **$5,709.41** | **$175,150.00** | **$2,505.68** | **$254,252.73** |

WHEREFORE, PREMISES CONSIDERED, B&M respectfully requests:

(i) final approval of attorneys' fees incurred in the amount of **$431,908.41** for services rendered to the Debtors and expenses in the amount of **$5,709.41** incurred during the Entire Application Period;

(ii) approval and direction of payment for the outstanding amount of **$43,787.50** for the unpaid 20% of fees from the First Application Period and **$207,261.50** for fees incurred during the Current Application Period and **$3,203.73** for expenses incurred during the Current

15

Application Period for a total of **$254,252.73** for services rendered to and expenses incurred on behalf of the Debtors;

  (iii) approval and direction of payment for fees and expenses which were incurred after the Current Application Period in connection with the Application in an amount of not more than $2,000.00;

  (iv) all other and further relief, at law or in equity, to which B&M may show itself justly entitled.

DATED: October __, 2009
          Dallas, Texas

Respectfully submitted,

**BAKER & McKENZIE LLP**

By: /s/ Elliot D. Schuler
    David W. Parham
    State Bar No. 15459500
    Elliot D. Schuler
    State Bar No. 24033046
    R. Adam Swick
    State Bar No. 24051794
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 978-3000
Facsimile: (214) 978-3099

**ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

## CERTIFICATE OF SERVICE

On this the ____ day of October 2009, the undersigned attorney hereby certifies that he caused a true and correct copy of the foregoing Application to be served upon the persons or entities through the Court's ECF system and via United States mail, first-class postage pre-paid and properly addressed upon those indicated as not receiving electronic notice on the ECF Receipt. Copies of the Exhibits may be reviewed through Pacer or by requesting them from Baker & McKenzie LLP.

/s/ Elliot D. Schuler
Elliot D. Schuler