David W. Parham
State Bar No. 15459500
Elliot D. Schuler
State Bar No. 24033046
Baker & McKenzie
2300 Trammel Crow Center
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 978-3000
Facsimile: (214) 978-3099

**ATTORNEYS FOR MARLA REYNOLDS, TRUSTEE
OF THE SUPERIOR CREDITOR'S TRUST**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| IN RE: § | |
| § | Case No. 08-36705-BJH-11 |
| **SUPERIOR AIR PARTS, INC.** § | |
| § | Hearing Date: 12/23/09 |
| DEBTOR-IN POSSESSION. § | Hearing Time: 9:00 a.m. |

## OBJECTION TO
## FIRST AND FINAL APPLICATION OF CORPORATE FINANCE PARTNERS MID CAP GMBH FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

TO THE HONORABLE BARBARA J. HOUSER,
UNITED STATES BANKRUPTCY JUDGE:

Marla Reynolds, in her capacity as Trustee of the Superior Creditor's Trust (the "Trustee") files this her Objection (the "Objection") with regard to the First and Final Application of Corporate Finance Mid Cap GmbH for Compensation and Reimbursement of Expenses (the "CFP Application") and respectfully represents as follows:

### Preliminary Statement

The Plan of Reorganization that was confirmed in this Bankruptcy Case represented a collaborative effort between the key parties in the case and was jointly proposed by both the Debtor and the Committee. In facilitating this result, the Debtor and the Committee devoted hundreds of hours to the formulation of the Plan and the end result was an outstanding result for

DALDMS/670473.3

1

creditors. The efforts of the Debtor and the Committee did not go unnoticed as the Plan was overwhelmingly approved by the creditors in this Case, and subsequently confirmed by the Bankruptcy Court.

Although the Plan was a complete success, and was a collaborative effort of multiple parties, the party trusted with marketing and selling and finalizing this deal, Corporate Finance Mid Cap GmbH ("CFP"), had little to do with that success.[1] While CFP apparently spent considerable amounts of time gearing Superior up for a sale to one of its primary competitors, the fact remains that after that sale did not go through, Daniel Schenk, CFP's representative, returned home to Germany and was barely heard from again. In fact, certain potential purchasers remarked frequently that calls to CFP went unreturned. CFP's own time entries corroborate this story as CFP recorded a grand total of 2.0 hours to this case after the failed auction in February 2009.

Recognizing that CFP had not contributed to the sale efforts, the Committee was insistent on a provision in the Plan that specified that no broker fees or commissions were to be paid in connection with the sale of Superior, a provision the Debtor agreed to. Rather than objecting to confirmation or otherwise notifying the Debtor or the Committee of his concerns with the potential lack of payment, Mr. Schenk stayed quiet throughout the entire plan process. Not until the Plan went effective did he chime back in to join in the celebration and attempt to cash in.

The Trustee submits that the filing of the CFP Application needs to be examined for reasonableness. The Trustee believes that CFP offered little value to the creditors of this estate and that CFP's request for payment should be either denied or greatly reduced.

---

[1] From the Trustee's investigation, it appears possible, though not certain, that CFP sent a communication to Brantly prior to the commencement of the case. No other communications with Brantly have been suggested. It also appears the Debtor provided Brantly with a disc containing due diligence information compiled by CFP sometime in 2008.

DALDMS/670473.3

2

**Background**

1. On December 31, 2008 (the "Petition Date"), Superior Air Parts, Inc. (the "Debtor" or "Superior") commenced this case by the filing of a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").

2. The deadline for filing claims was February 17, 2009 (the "Bar Date").

3. On or about August 27, 2009, the Bankruptcy Court entered an order confirming the Third Amended Plan of Reorganization (the "Confirmed Plan") jointly proposed by Superior and the Official Committee of Unsecured Creditors (the "Committee"). The Confirmed Plan became effective on September 28, 2009 (the "Effective Date").

4. On or about October 28, 2009, CFP filed the CFP Application.

5. Pursuant to the Confirmed Plan, on the Effective Date, all of the Trust Assets (as defined in the Plan) vested in the Superior Creditors Trust (the "Trust"). Marla Reynolds was appointed as Trustee of the Trust. The Trustee has authority to file objections to Claims.

**Objection**

6. The Trustee has reviewed and analyzed the CFP Application and after reasonable investigation and due diligence, believes that CFP contributed little to the estate and that its requests for fees and expenses should be denied, or at least greatly reduced.

**A.     Who is CFP and what did they actually do?**

7.      CFP is a German company that was retained by Thielert A.G., the Debtor's German parent ("TAG") in 2008 after TAG commenced insolvency proceedings in Germany. CFP was essentially charged by TAG with disposing of Superior and generating some extra money for the benefit of TAG and TAG's creditors.[2] As TAG was the 100 percent shareholder of Superior, it had complete control over the decisions. No explanation was provided in the motion seeking CFP's retention as to why someone based in the United States was not retained to assist in this endeavor of selling a relatively small company in Dallas, Texas.

8.      Nevertheless, CFP was employed by TAG, whereby pursuant to an Engagement Letter (the "Engagement Letter"), CFP was obligated to provide certain services to Superior (the "Obligations") in order to be entitled to a Success Fee (defined therein). See, Exhibit B to CFP Application. These Obligations were as follows:

      (i) organization and management of the Transaction

      (ii) identification and contact of potential buyers;

      (iii) preparation of a short profile and further supporting documentation;

      (iv) support with management presentations;

      (v) obtain and verify Transaction offers from potential buyers, provide support in assessment of these offers;

      (vi) support and organize due diligence activities, including the setup of management data room;

      (vii) assistance and support with Transaction negotiations with potential buyers.

See, Exhibit B to CFP Application at ¶1.2.

---

[2] Subsequent to the retention of CFP, TAG learned that its security interests in Superior were not perfected and its $10 million claim was going to be regarded as an unsecured claim.

9.  The Trustee does not dispute that CFP performed all of these Obligations as it related to the proposed sale of substantially all of the Debtor's assets to Avco, a subsidiary of Textron (collectively "Textron").

10. CFP alleges that it spent "over five hundred hours, including time in the United States at Superior's facilities in Coppell, Texas, Superior's counsel's offices in Austin and Dallas, and other U.S. locations for meeting with investors and to implement the M&A process". See CFP Application at ¶10. The Trustee does not dispute CFP's recitation of the time expended. However, all of that time and effort did not entitle CFP to its "Success Fee" as the Debtor did not consummate the proposed sale to either Textron or Teledyne as contemplated in February 2009.

**B.   CFP vanishes after the Auction**

11. After the auction failed to produce a successful purchaser in late February 2009, CFP did nothing.

12. Exhibit E to CFP Application contains the time entries for CFP's personnel on this matter. Most notably Daniel Schenk, the only party that undersigned counsel ever dealt with on this case, and the party that signed the Declaration in support of CFP's retention, spent a whopping 2.0 hours on the sale of Superior after the auction----and that was in March 2009, well prior to the time Brantly surfaced as a potential bidder.

13. In April 2009 Mr. Schenk did not spend any time on the potential sale of Superior. See, Exhibit E to CFP Application.

14. In May 2009 Mr. Schenk did not spend any time on the potential sale of Superior. See, Exhibit E to CFP Application.

15. In June 2009 Mr. Schenk did not spend any time on the potential sale of Superior. See, Exhibit E to CFP Application.

16. In July 2009 Mr. Schenk did not spend any time on the potential sale of Superior. See, Exhibit E to CFP Application.

17. In August 2009 Mr. Schenk did not spend any time on the potential sale of Superior. See, Exhibit E to CFP Application.

18. Undersigned counsel could recall only one instance after the auction where Mr. Schenk's name even came up again. And that was not in conjunction with the potential sale of Superior. On the contrary, it was with regard to a settlement conference between the Committee and TAG that occurred on June 9, 2009 (the "TAG-Committee Settlement Conference").

19. The central purpose of the TAG-Committee Settlement Conference was the hopeful resolution of causes of action the Committee might have against TAG and an agreement on the percentage distribution of creditor claims. The TAG-Committee Settlement Conference was arranged to negotiate a resolution with regard to a consensual plan of reorganization to be proposed by the Debtor and the Committee.

20. Mr. Schenk participated in the TAG-Committee Settlement Conference with Dr. Ahrendt on behalf of TAG. Other than that one day, undersigned counsel, as counsel to the Committee, never spoke with Mr. Schenk or heard from him between February 2009 and confirmation of the Confirmed Plan at the end of August.

21. In the interest of giving CFP the benefit of the doubt, the Trustee reviewed the time sheets attached to the Second and Final Application of Strasburger & Price, LLP for Compensation and Reimbursement of Expenses (the "Strasburger Application") to see if, by

chance, the Debtor's records indicated otherwise. Interestingly, the Strasburger Application corroborated the total lack of involvement of Mr. Schenk and CFP.

22. In reviewing the Strasburger Application, the Trustee was only able to locate 3 instances where CFP communicated with Debtor's counsel after the failed auction, one of which was *after* the confirmation hearing. In all of those instances, it would again appear that Mr. Schenk was either acting on behalf of TAG or otherwise rendering non-compensable services to the estate.

23. The first entry appeared on May 12, 2009 (entry of Stephen Roberts): "conference call with Dr. Ahrendt, [Dr. Ahrendt's counsel] Mr. Salomon, Mr. Schenk and Mr. Abercrombie regarding APS and Plan (.7)" See, Strasburger Application.

24. Based on the date of this entry, it would appear that the "Plan" referred to in this entry was the Debtor's First Plan of Reorganization that was subsequently amended and completely overhauled (the "First Plan").

25. The First Plan provided for a liquidation of all assets of the Debtor at auction. If items did not sell at auction, the Debtor proposed to transfer all of Superior's assets to its parent, TAG, for a credit on their $10 million claim. Under that scenario, the First Plan provided a questionable, if any, distribution to unsecured trade creditors. Prior to its filing, undersigned counsel who represented the Committee, never even saw a draft of the First Plan.

26. A hearing was never held with regard to the First Plan, and virtually no portion of the First Plan was represented in the Confirmed Plan. In any event, the May Call noted above does not appear to have had anything to do with either Brantly, or any other prospective purchaser.

27. The second entry in the Strasburger Application where Mr. Schenk is referenced is another entry of Stephen Roberts dated June 4, 2009. The relevant portion of that entry details a "telephone conference with Dr. Ahrendt, Mr. Salomon and Mr. Schenk regarding Debtor's alternatives and issues that need to be addressed by TAG with Committee (0.9)". See, Strasburger Application.

28. Again, this has nothing to do with Brantly or the alleged efforts by CFP to sell the company. Rather, it appears to be a preparatory call in advance of the TAG-Committee Settlement Conference that occurred on Tuesday June 9, 2009. As noted above, however, Mr. Schenk participated in the TAG-Committee Settlement Conference as an advisor to TAG.

29. There are no time entries by any party relating to CFP during the rest of June 2009.

30. There are no time entries by any party relating to CFP during July 2009.

31. There are no time entries by any party relating to CFP during August 2009.

32. June, July and August of 2009 were undoubtedly the most important months in this Bankruptcy Case. During those three months, the Committee was successful in working with the Debtor to conform the original plan negotiated with APS into the "Brantly Plan" and jointly propounded same with the Debtor. That plan required substantial negotiation with Brantly on many items and was ultimately confirmed by the Bankruptcy Court with overwhelming creditor support.

33. Contrary to the proposed liquidating APA with Textron, that CFP evidently negotiated and/or authored, the Confirmed Plan was not an asset sale for purposes of liquidating the Debtor. Rather, it was a stock sale that provided for the continuation of the Debtor and its business. In fact, none of the provisions of the Textron APA were incorporated into the

Confirmed Plan. CFP had no role whatsoever in preparing the Confirmed Plan, working with Brantly, or providing any of the other services it had contracted to perform. Rather, each of the those services were provided by the other estate professionals.

34. Despite failing to contribute anything of substance following the failed auction in February 2009, CFP was quick to contact Debtor's counsel after the plan was confirmed.

35. The Strasburger Application reflects that *three months* after their last contact, and just a matter of days following the confirmation hearing, Mr. Schenk did reach out to see how and when he was going to get paid. The relevant portion of the September 8, 2009 entry belonging to Mr. Roberts states "exchange emails with Mr. Schenk regarding administrative claim (0.2)". See, Strasburger Application.

36. CFP was retained pursuant to 11 U.S.C. §327 thus their fees are reviewed for reasonableness under 11 U.S. C. §330. The time entries submitted by CFP clearly show that they spent practically no time on this matter after the failed auction. The Trustee submits that the time devoted to negotiating a deal with Brantly and carrying out CFP's other contractual duties was zero.

37. As it concerned Brantly, CFP performed few of the Obligations required for it to earn its Success Fee under the Engagement Letter. They were not involved in the Transaction at all. They played no role in the negotiations or the drafting of the Confirmed Plan or the related sale documents. They had nothing to do with the proposed bid procedures. They didn't even bother to travel to Dallas in the summer of 2009 to meet with representatives of Brantly who came in from China to Dallas to meet with the Debtor and its counsel before making their offer. CFP was non-existent in this transaction. In summary, CFP never spoke to Brantly, negotiated with Brantly, or otherwise participated in the transaction.

38. CFP goes on for pages in the CFP Application about its contributions to the proposed sale to Textron. However, the fact that most of the CFP Application deals with negotiating the proposed APA with Textron (and to a lesser extent Teledyne) does not demonstrate their entitlement to payment.

**C.   The Confirmed Plan states that no broker fees or commissions were owed**

39. On July 23, 2009, true and correct copies of the Third Amended Disclosure Statement, Third Amended Plan, Order Approving Third Amended Disclosure Statement, Order Approving Bid Procedures for Sale of Equity pursuant to the Plan, and a ballot were sent to all parties in interest in the Bankruptcy. See, Certificate of Service [Docket No. 357].

40. The Certificate of Service notes that CFP was provided a copy of all of these documents.

41. Section 13.9 of the Confirmed Plan entitled "No Attorneys' Fees or Broker Fees" provides:

> No attorneys' fees will be paid with respect to any Claim, other than Claims of attorneys and financial advisors retained by Debtor or the Committee, except as specified herein or as allowed by an Order of the Court. **No commissions or broker's fees will have been earned as a result of the transactions contemplated by the Plan.**

See, Confirmed Plan at §13.9 (emphasis added).

42. Recognizing that CFP contributed nothing to the sale efforts, the Committee requested a provision in the Plan that specified that no broker fees were to be paid in connection with the sale of Superior, a request to which the Debtor readily agreed. CFP had the opportunity to appear and be heard at the Confirmation Hearing. Rather than objecting to confirmation or otherwise notifying the Debtor or the Committee of his concerns with the potential lack of

payment, Mr. Schenk stayed quiet throughout the entire plan process. CFP should be barred by the Confirmed Plan from receiving payment of its alleged commissions.

WHEREFORE, premises considered, the Trustee respectfully requests that this Court deny the CFP Application and grant the Trustee such other and further relief as this Court deems just and proper.

Dated: November 17, 2009
       Dallas, Texas

Respectfully submitted,

BAKER & MCKENZIE LLP

By: /s/ Elliot D. Schuler
    David W. Parham
    State Bar No. 15459500
    Elliot D. Schuler
    State Bar No. 24033046
    2300 Trammell Crow Center
    2001 Ross Avenue
    Dallas, Texas 75201
    Telephone: (214) 978-3000
    Facsimile: (214) 978-3099
    E-mail: david.w.parham@bakernet.com
    E-mail: elliot.d.schuler@bakernet.com

**ATTORNEYS FOR MARLA REYNOLDS, TRUSTEE OF THE SUPERIOR CREDITOR'S TRUST**

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was served on November 17, 2009 upon the following via US mail, and electronic mail where indicated, and on all parties via the Court's ECF system:

| | |
|---|---|
| Chester B. Salomon<br>Becker, Glynn, Melamed & Muffly LLP<br>299 Park Avenue - 16th Floor<br>New York, NY 10171<br>csalomon@beckerglynn.com | Mary Frances Durham<br>Trial Attorney for the Office of the United States Trustee<br>1100 Commerce Street, Room 976<br>Dallas, TX 75242<br>MaryFrances.Durham@usdoj.gov |

/s/ Elliot D. Schuler
    Elliot D. Schuler