BECKER, GLYNN, MELAMED & MUFFLY LLP
By: Chester B. Salomon (CS-2319)
299 Park Avenue
New York, New York 10171
Telephone:    (212) 888-3033
Facsimile:    (212) 888-0255
csalomon@beckerglynn.com
Attorneys for Corporate Finance Partners Mid-Cap GmBH

UNITED STATES BANKRUPCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

In re:

SUPERIOR AIR PARTS, INC.,

Debtor,

Case No. 08-36705-BJH-11

**DECLARATION OF DANIEL SCHENK IN REPLY TO THE OBJECTION OF
THE CREDITORS TRUSTEE AND IN FURTHER SUPPORT OF APPLICATION FOR
COMPENSATION OF CORPORATE FINANCE PARTNERS MIDCAP GMBH**

**TO THE HONORABLE BARBARA J. HOUSER,
UNITED STATES BANKRUPTCY JUDGE:**

Daniel Schenk declares as follows:

### Introduction

1.    I am a Managing Director of Corporate Finance Partners Mid-Cap GmBH ("CFP" or "Applicant") and I respectfully submit this declaration in reply to the Objection of Marla Reynolds, as Trustee of the Superior Creditor's Trust, dated November 17, 2009 (the "Objection") and in further support of CFP's First and Final Application for Compensation and Reimbursement of Expenses, dated October 28, 2009.

*129930v1*

2. At the hearing scheduled for November 25, 2009, Applicant will present extensive email documentation that justifies an award of its fees and conclusively rebuts the Objection's contention that CFP did not perform significant services after the failed February auction. Although Applicant's extensive efforts were not recorded on its time sheets, under the engagement letter its fees are not compensable based on time. Applicant faithfully continued its engagement after the failure of the February auction until confirmation of the Debtor's plan. Applicant's work product and the model created for the AVCO deal were essential to the consummation of the Plan in August 2009.

3. The Objection ignores facts that are well known. As the many pages of emails attached and attachments to exhibits amply demonstrate, CFP performed extensive services long after the AVCO auction failed on or about February 27, 2009. Applicant, Dr. Achim Ahrendt and the Debtor's counsel resisted the sale that the Creditors' Committee was advocating. That sale would not have benefited the creditors that the Committee was representing. The objection suggests retaliation against that resistance. Apparently it does not trouble the Trustee to request that the court ignore its own order, nor to ignore the public effect of engaging a professional and then not compensating it.

4. CFP's fee application is based upon a contract that this Court approved on February 20, 2009 that was never modified or vacated. The assumed executory contract under the February 20 order was never rejected by the debtor. I am advised by counsel that, had the February 20 retention/assumption order been rejected, Applicant would still be entitled to an administrative expense claim under Section 365(g), which is memorialized in the CFP fee application.

5. The application to approve Applicant's engagement was filed by the Debtor's counsel on January 7, 2009. Both before and after court approval Applicant performed services under that contract and consistent with that contract. Applicant introduced Superior's counsel to Brantly International Inc. ("Brantly"), the affiliate of the successful "buyer" of the company that funded the Third Amended Joint Plan, continuously followed up with Superior's counsel on the Brantly deal, and opposed efforts by Superior's management and the Creditors' Committee to approve the Aviation Parts Supply ("APS") proposal to buy only half of Superior's assets on disadvantageous terms. The credit claimed by the Committee counsel for the successful Plan again suggests the adage that success has a thousand fathers. The Brantly Plan was confirmed despite favoritism toward APS by the Committee and the Debtor's management. Only Debtor's counsel, Dr. Ahrendt and Applicant pressed to continue the search for a bidder superior to APS.

6. Brantly first came to Applicant's attention in late December 2008. In February 2009, just before the auction scheduled for February 24, 2009, Applicant informed counsel of Brantly's interest. In due course Brantly signed a non-disclosure agreement, performed due diligence by accessing the data room created by Applicant, and made its bid in July 2009 near the Debtor's deadline for filing a Plan. Mr. Roberts and his associates skillfully negotiated the terms of the Plan, confirmed the Plan in late August 2009, and closed the Brantly transaction in late September 2009.

7. An example of the apparent hostility of both the Committee and the Debtor's senior management to Applicant and Debtor's counsel is shown in the June 8, 2009 email of Mr.. Abercrombie to Dr. Ahrendt (sole shareholder and a board member of Superior) urging him to exclude Declarant and Mr. Roberts from discussions and deliberations. <u>See</u> Page E-17-18 of

Exhibit E attached hereto. As the email refers to an impending conference call with the Committee, one must ask whether Committee representatives made the exclusion suggestion to Superior's manager, who then conveyed it to Dr. Ahrendt.

8. As skillful as Debtor's counsel's services were, but for the introduction of Brantly to counsel and Applicant's follow-up, no Brantly transaction would have been possible. This, together with the services described in the extensive email correspondence, justifies an award in full to Applicant of its requested fee.

## Extensive Documents Demonstrate the Services Performed by CFP

9. Exhibit A contains 13 pages of emails sent in February 2009, the month of the failed auction. At pages A1-12 Applicant introduces Brantly (Applicant's first communication was on December 31, 2008, see pp. A11-12). Applicant corresponds with Superior's counsel about Brantly's interest. On page A12 Applicant requests Brantly management for financial information on Superior. After it became clear that the auction failed, Applicant continued to request financial information from Superior's management (see Page A-13). Contrary to the Trustee's argument in the Objection, that request does not demonstrate that CFP had discontinued its work.

10. Exhibit B contains 25 pages of emails sent in March 2009 in part containing the analysis and discussion of Superior's lines of business and discussing sale prospects for Superior, including APS. Exhibit B demonstrates Applicant's continuing efforts to pursue buyers.

11. Exhibit C contains 8 pages of email correspondence in April 2009 further showing efforts by Applicant and counsel to sell Superior, including APS. APS' offer was perceived to be inadequate for creditors.

*129930v1*

-4-

12. Exhibit D contains 29 pages of email correspondence in May 2009 demonstrating Applicant's continuous involvement and addressing a plan of reorganization. Pages D 24-28 confirm Applicant's introduction of Brantly to Superior in correspondence with representatives of Brantly, to whom counsel sent a nondisclosure agreement on May 27. Applicant further inquired of counsel about its success fee upon consummation of a transaction. See Pp. D15-16.

13. Exhibit E contains 21 pages of email correspondence in June 2009 showing Applicant's follow-up with counsel on the Brantly transaction. On Pp. E1-2 Applicant informed Committee counsel of a "potential Chinese buyer," i.e. Brantly.

14. Exhibit F contains 3 pages of email correspondence showing follow-up with Brantly and counsel's email concerning the settlement with TAE. Contrary to the suggestion of the Trustee in her Objection, Applicant was consulted on sensitive plan issues and remained in the loop throughout.

15. Exhibit G contains the resumes of Applicant's two professionals principally engaged in the Superior matter, Fabian Pohl and Declarant.

16. In summary, Applicant respectfully submits that it has fully earned the $210,000 fee award that it seeks under 3.1 of the Engagement Letter and its reasonable expenses.

Dated: Berlin, Germany
November 24, 2009

                                                                                                        /s/Daniel Schenk (by CBS)
                                                                                                         Daniel Schenk

*129930v1*