# EXHIBIT E

**Salomon, Chester B.**

| | |
|---|---|
| From: | Schenk, Daniel (Corporate Finance Partners) [daniel.schenk@cfpartners.com] |
| Sent: | Wednesday, June 03, 2009 6:45 PM |
| To: | Stephen.Roberts@strasburger.com |
| Cc: | Salomon, Chester B. |
| Subject: | AW: RE: RE: Superior |

Of course. Never had any other intention :)

What about brantley / the chinese ?
If we'd could the engines sold for sure, would be easier to do a deal with aps.....and
aeverybody would be happy -- .did they get back to you ?


----- Originalnachricht -----
Von: Roberts, Stephen <Stephen.Roberts@strasburger.com>
An: Schenk, Daniel (Corporate Finance Partners)
Cc: CSalomon@beckerglynn.com <CSalomon@beckerglynn.com>
Gesendet: Thu Jun 04 00:33:51 2009
Betreff: RE: RE: Superior

I suggest you talk to Chester before moving forward so TAG can stay coordinated.


From: Schenk, Daniel (Corporate Finance Partners) [mailto:daniel.schenk@cfpartners.com]
Sent: Wednesday, June 03, 2009 5:30 PM
To: Roberts, Stephen
Cc: CSalomon@beckerglynn.com
Subject: AW: RE: Superior


No but in any case it was about to get a conf call / telco together to discuss and move it
forward....and see whether TAG and Creditors Committee can agree

The deal as proposed is not a good bad one for TAG right now -- in particular if there is
no certainty about a deal for the engines....
Did the Chinese / Brantley sign the NDA ?
Rgds
Daniel


----- Originalnachricht -----
Von: Roberts, Stephen <Stephen.Roberts@strasburger.com>
An: Schenk, Daniel (Corporate Finance Partners)
Cc: csalomon@beckerglynn.com <csalomon@beckerglynn.com>
Gesendet: Wed Jun 03 22:04:06 2009
Betreff: RE: Superior

did you talk to chester before sending this. chester, david and I talked yesterday.


From: Schenk, Daniel (Corporate Finance Partners) [mailto:daniel.schenk@cfpartners.com]
Sent: Wednesday, June 03, 2009 5:33 AM
To: Parham, David
Cc: Salomon, Chester B.; Roberts, Stephen
Subject: Superior

1

E-1

David,


things are busy in the US. I guess it makes sense that Chester, myself and yourself should
talk on how to how to move forward re/ Superior.


I also understand that the Creditors Committee is anxious that there are no other Buyers
other than Superior — there is a Chinese potential buyer recently interested and I put
Stephen Roberts in touch with a party that was at the time interested to purchase the
inventory only — the PMA would still keep value and be sold separately as obviously some
Buyers are not interested to acquire inventory.


When is most suitable for a conference call ?


Regards,

Daniel


--------------------------------------------------------------------------
Corporate Finance Partners Group
Frankfurt - Berlin - Miami - Tallinn - Wien - Budapest

Daniel Schenk
Managing Director
Torstr. 35
10119 Berlin
Tel: +49 (30) 497 9999 68
Fax: +49 (30) 497 9999 67
Mobil: +49 172 1985 861
Mail: daniel.schenk@cfpartners.com <mailto:daniel.schenk@cfpartners.com>
--------------------------------------------------------------------------

Diese E-Mail enthält vertrauliche oder geschützte Informationen. Wenn Sie nicht der
richtige Adressat sind oder diese E-Mail irrtümlich erhalten haben, informieren Sie bitte
sofort den Absender und vernichten Sie diese Mail. Das unerlaubte Kopieren sowie die
unbefugte Weitergabe dieser Mail ist nicht gestattet.

This e-mail may contain confidential and/or priviliged information. If you are not the
recipient (or have received this e-mail in error) please notify the sender immediately and
destroy this e-mail. Any unauthorized copying, disclosure or distribution of the material
in this e-mail ist strictly forbidden.


This email message and any attachments are confidential and may be privileged. If you are
not the intended recipient, please notify Strasburger & Price, LLP immediately -- by
replying to this message or by sending an email to postmaster@strasburger.com -- and
destroy all copies of this message and any attachments. Thank you.

**Salomon, Chester B.**

| | |
|---|---|
| **From:** | Roberts, Stephen [Stephen.Roberts@strasburger.com] |
| **Sent:** | Friday, June 05, 2009 3:00 PM |
| **To:** | Salomon, Chester B.; achim.ahrendt@hww-kanzlei.de; Schenk, Daniel (Corporate Finance Partners); kabercrombie@superiorairparts.com; Parham, David |
| **Cc:** | Brescia, Duane; Schuler, Elliot; Dunn, Angela; Krupa, Donna |
| **Subject:** | conference Monday? |

Everyone agrees that we are at a critical point in the case.

Kent, Achim and I had a long conversation this morning in their capacities of directors of Superior. No one is excited about the APS offer but there are differences of opinion among key people in this case regarding the value of the offer and what we should do with the offer.  We think that it would be worthwhile to have a meeting in Dallas as soon as possible with Dave Parham and Chuck Dedman as a representative of the committee (and Lain Faulkner, if they wish), Kent Abercrombie, Dr. Ahrendt, Chester Salomon, Daniel Schenk and me. Achim, Chester and Daniel cannot make it to Dallas on short notice but Achim has committed to be available by phone on Monday morning or Tuesday (except between 10 and 11 a.m.)

I can get to Dallas.

Time is of the essence so I suggest we meet in Dallas on Monday morning.

Please advise of your willingness and availability as soon as possible.

Regards,
Steve Roberts

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.

1

E-3

## Salomon, Chester B.

| | |
|---|---|
| **From:** | Roberts, Stephen [Stephen.Roberts@strasburger.com] |
| **Sent:** | Friday, June 05, 2009 5:54 PM |
| **To:** | Salomon, Chester B.; Achim Ahrendt; Schenk, Daniel (Corporate Finance Partners); David.W.Parham@BAKERNET.com; Kent Abercrombie; Elliot.D.Schuler@BAKERNET.com; Brescia, Duane; Franke, Bob |
| **Cc:** | Krupa, Donna; Dunn, Angela |
| **Subject:** | UPDATE  Superior: Analysis of APS offer |
| **Attachments:** | SPA-#596476-v11-4_16_09_claims_analysis.XLS; SPA-#604513-v1-Schedule_of_Open_Purchase_Orders_for_Amended_Schedules.XLS; SPA-#610462-v1-Superior_Asset_Trend.XLS; Cash Flow 05-29-09.xls; Inventory 05-31-09.xls; AR Aging 05-31-09.xls |

     

SPA-#596476-v11- SPA-#604513-v1-S SPA-#610462-v1-S   Cash Flow        Inventory      AR Aging
4_16_09_claims... chedule_of_Ope...  uperior_Asset_... 5-29-09.xls (33 KB)5-31-09.xls (488 KB)5-31-09.xls (47 KB)

Regarding the analysis below, we pointed out that, if current trends continued, inventory could drop $400,000 a month and so would APS's cash payment.  Dave Parham advised me that he did not think that the intent of the price adjustment mechanism is to reduce the cash paid by APS based on today's inventory and a/r levels and is conferring with Lain Faulkner regarding this to see if the language needs to be changed.

Regarding the value of APS eliminating the contingent claims of the insurers, we can put a "market value" of $1.1 million on that as follows: APS intends to pay a $350,000 to limit its obligation to pay the cost of defense to $250,000 per annum (as opposed to $875,000 now.) So if you add the premium to the maximum remaining exposure, the total possible cost to APS to eliminate the insurers' claims is $1.1 million. Put another way, the insurer is betting that the exposure will not be $350,000 more than $750,000 risk retained by APS.

Regards,
Steve

---

From: Roberts, Stephen
Sent: Thursday, June 04, 2009 12:05 PM
To: Chester B. Salomon (csalomon@beckerglynn.com); Achim Ahrendt (achim.ahrendt@hww-kanzlei.de); Schenk, Daniel (Corporate Finance Partners); Parham, David; Kent Abercrombie (kabercrombie@superiorairparts.com); Schuler, Elliot; Brescia, Duane; Franke, Bob
Cc: Krupa, Donna; Dunn, Angela
Subject: Superior: Analysis of APS offer

I have been asked to summarize and provide an analysis of the APS offer and thought it best to share it with everyone and would invite any of you to make any corrections or comments:

SUMMARY OF THE DEAL:

CASH CONSIDERATION

APS is paying a net $ 500,000 (or less, depending on adjustments) for Superior excluding the Vantage Engine Program which will be spun off into a trust or SPE for the benefit of creditors; however, APS will get 10% of the proceeds of any future sale of the engine business.

More specifically, APS will pay $2.5 million to the Creditors Trust (subject to

1

E-4

adjustments) for distribution to creditors but requires that Superior have $2 million cash on hand at closing (thus, the "net" number of $500,000.)

$500,000 of that amount is paid to TAE and the balance is the subject of current negotiations between TAG and the committee as is the payment of proceeds from a future engine sale.

As for adjustments, the price is reduced if the gross inventory and gross accounts receivable decline below the current level of $9,140,000. Any cash in excess of $2 million goes to the Creditors' Trust. I have attached a chart prepared by Kent showing the cash, inventory and a/r trends since filing.

Kent estimates that inventory will decline by about $400,000 and month and that a/rs will remain the same. So if it took us 60 days to close the deal, the amount paid into the Creditors Trust would be $800,000 less, so APS would essentially be paid $300,000 to acquire the company under this projection.

As for any expected cash adjustment, I have attached Kent's latest cash projection which was circulated earlier this week and he projects that Superior will have about $2 million in cash at closing and so we do not expect there to be any upward adjustment for cash.

Cash has been rising throughout the case and Superior now has about $4 million in cash; however a $400,000 insurance payment is due in June and professional fees need to be paid. Such fees through April are about $750,000 and Kent estimates them to rise to $1,250,000 by closing, reducing current cash to $2,350,000. There are also section 503(b)(9) administrative claims in the amount of $78,818.74 (i.e. for good shipped within 20 days before filing.) It which must be paid on the effective date of the plan. These together with expenses of operation are estimated to erode the $350,000 "excess" over $2 million. See Kent's attached cash projection and inventory and a/r analysis.

OTHER CONSIDERATION

APS also proposes to take certain actions to reduce claims against the estate which provide additional value to unsecured creditors.

We have prepared and refined claims analysis to estimate the claims against Superior, in the opinion of debtor. The most current claims analysis is attached. Superior's estimate includes both objective and subjective factors and are subject to further adjustment.

The debtor estimates that there are $17,483 in finance leases, or secured claims for office equipment and machinery. If APS choose to keep the equipment, the New Superior will pay for it, but APS can surrender the equipment instead, causing some reduction in these claims.

There are $56,144,43 in priority claims of employees for severance pay under a retention plan approved by the court. It is not clear to me what APS intends to due with these claims. I believe, but am not sure, that APS intends to retain the employees and assume the severance obligations.

The Debtor estimates that there are unsecured claims of $4,186,611 excluding insiders, TAG and TAE. See the attached claims analysis for details. Of this amount, $1,765,071 is for unpaid trade claims excluding claims of suppliers with open purchase orders which Superior cancelled. Those unfilled orders total about $3,558,596 although that is not the measure of damages caused by the cancellation, discussed below.

APS will also approach the suppliers with open purchase orders and attempt to strike a deal where the New Superior will agree to purchase a certain volume of parts in the future in exchange for credit terms and a full or partial release of the suppliers' claim against Superior. This would result in an undetermined reduction of claims.

Superior cancelled $4,946,725 in open purchase orders where the goods had not yet been delivered, excluding TAE. After the filing, Superior reordered some goods after the filing leaving unfulfilled orders of $3,558,596. The damages of vendors for cancelled purchase orders vary dramatically. In some cases, the vendor can sell the parts at the same price elsewhere and suffers no damages. In other cases, the vendor has acquired raw material and incurred costs in manufacturing customized parts and so has suffered damages closer to the

2

E - 5

invoice amount. We are verifying that the limitation of liability terms on the purchase order eliminates lost profit claims. We have gone through each vendor with Kent and estimated potential liability for the breach of the purchase order, and have estimated the total estimated exposure at $1,719,545.

However, we do not expect APS to obtain releases of all of this liability since we do not believe it is the intent of APS to sell cylinder assemblies or engines and a substantial portion of the purchase orders covered such goods, including a substantial portion of the claims of Zanzi and Eck Industries, two of the largest vendors in this group.

So the value of APS's obtaining partial releases of these claims cannot be quantified at this time but we believe it will result in a reduction of claim of substantially less than $1,719,545.

The unsecured claims estimates also include $142,970 in warranty claims for allegedly damaged goods and an estimated $19,580 in claims for the loss of the warranty itself.  I believe that the Reorganized debtor will assume these liabilities.

APS is also assuming Superior's obligations under its insurance policies. We believe that the plaintiffs will all waive their claims against Superior so Superior will not have any exposure to the plaintiffs. However Superior's insurers under the 2004-5 policy (8/1/2004 to 7/31/05), Superior must pay 10% of the cost of defense up to $350,000 per occurrence up to an aggregate of $875,000. Under the 2005-6, 2006-7, and 2007-8 and 2008-9 policies, Superior must pay 100% of the costs of defense up to $350,000 per occurrence up to an aggregate of $875,000.

Currently the Debtor owed $93,398 in professional fees under its policy obligations and there are several ongoing lawsuits which will go forward where the insurers will have to pay the cost of defense and then have a claim back against Superior for.

This exposure is hard to quantify as it depends on how much the current suits cost to defend and what new suits may be filed in the future for occurrences that occurred during the policy period.

So we know that the assumption of obligations by APS will reduce claims by $93,398 and it could be substantially more. We are conducting a further analysis on this.

I look forward to seeing your comments.

Regards,
Steve

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.

## Salomon, Chester B.

**From:**    Roberts, Stephen [Stephen.Roberts@strasburger.com]
**Sent:**    Monday, June 08, 2009 10:07 AM
**To:**    achim.ahrendt@hww-kanzlei.de; Schenk, Daniel (Corporate Finance Partners); Salomon, Chester B.
**Subject:** FW: UPDATE Superior: Analysis of APS offer

---

**From:** Roberts, Stephen
**Sent:** Monday, June 08, 2009 9:05 AM
**To:** Parham, David
**Subject:** RE: UPDATE Superior: Analysis of APS offer

Dave, these numbers just do not square with what Kent is saying and he is in favor of the APS deal. Strange.

He expects cash and a/rs to stay even with an inventory drop of $400,000 per month. I will forward your email to him for comments.

By the way, even my calculations show Lain Faulkner is way off on projected cash on hand. I suspect the differences are the projected attorneys fees and the 503b9 administrative claims.

Can you share Lain Faulkner's analysis so Kent can analyze?

I imagine we all agree that getting an accurate estimate of the value of the APS offer is critical.

---

**From:** Parham, David [mailto:David.W.Parham@BAKERNET.com]
**Sent:** Sunday, June 07, 2009 1:16 PM
**To:** Roberts, Stephen; Chester B. Salomon; Achim Ahrendt; Schenk, Daniel (Corporate Finance Partners); Kent Abercrombie; Schuler, Elliot; Brescia, Duane; Franke, Bob
**Cc:** Krupa, Donna; Dunn, Angela
**Subject:** RE: UPDATE Superior: Analysis of APS offer

Steve,
A couple of comments on your earlier e-mail and this one. First, the purchase price adjustment mechanism, and our analysis of liquidation values, excludes approximately $3.3 million in AR attributable to TAE. Unless you are valuing the TAE receivable at 0, this should reduce the liquidation value you are getting.

Second, we had considered that there would be a $300,000 monthly drop in inventory. The purchase price adjustment takes care of that, and it actually is a good thing. SAP has been selling inventory at an average gross margin of approximately 33%, assuming that holds the $400,000 in inventory that is sold should become $600,000 in AR, which can hopefully get collected and should help offset losses we expect the company to incur during this period. In any event, under the PPA, we would get credit for $600k in AR rather than $400k in inventory towards the $9.1 million threshold and thus should get more cash, not less.

Third, Lain Faulkner projects, using your numbers in the last e-mail, approximately $600,000 of the cash on hand will go to the creditors' trust.

I hope this helps. I will forward the latest engine agreement in a few minutes. Look forward to visiting with you Tuesday. I expect to be in and generally available on Monday, at least in the am.

Best Regards,
Dave

David W. Parham
Baker & McKenzie
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas  75201
Tel: 1 214 978 3034
Fax: 1 214 978 3099
David.W.Parham@bakernet.com

---

**From:** Roberts, Stephen [mailto:Stephen.Roberts@strasburger.com]
**Sent:** Friday, June 05, 2009 4:54 PM
**To:** Chester B. Salomon; Achim Ahrendt; Schenk, Daniel (Corporate Finance Partners); Parham, David; Kent Abercrombie; Schuler, Elliot; Brescia, Duane; Franke, Bob
**Cc:** Krupa, Donna; Dunn, Angela
**Subject:** UPDATE Superior: Analysis of APS offer

Regarding the analysis below, we pointed out that, if current trends continued, inventory could drop $400,000 a month and so would APS's cash payment.  Dave Parham advised me that he did not think that the intent of the price adjustment mechanism is to reduce the cash paid by APS based on *today's* inventory and a/r levels and is conferring with Lain Faulkner regarding this to see if the language needs to be changed.

Regarding the value of APS eliminating the contingent claims of the insurers, we can put a "market value" of $1.1 million on that as follows: APS intends to pay a $350,000 to limit its obligation to pay the cost of defense to $250,000 per annum (as opposed to $875,000 now.) So if you add the premium to the maximum remaining exposure, the total possible cost to APS to eliminate the insurers' claims is $1.1 million. Put another way, the insurer is betting that the exposure will not be $350,000 more than $750,000 risk retained by APS.

Regards,
Steve

---

**From:** Roberts, Stephen
**Sent:** Thursday, June 04, 2009 12:05 PM
**To:** Chester B. Salomon (csalomon@beckerglynn.com); Achim Ahrendt (achim.ahrendt@hww-kanzlei.de); Schenk, Daniel (Corporate Finance Partners); Parham, David; Kent Abercrombie (kabercrombie@superiorairparts.com); Schuler, Elliot; Brescia, Duane; Franke, Bob
**Cc:** Krupa, Donna; Dunn, Angela
**Subject:** Superior: Analysis of APS offer

I have been asked to summarize and provide an analysis of the APS offer and thought it best to share it with everyone and would invite any of you to make any corrections or comments:

SUMMARY OF THE DEAL:

CASH CONSIDERATION

APS is paying a net $ 500,000 (or less, depending on adjustments) for Superior excluding the Vantage Engine Program which will be spun off into a trust or SPE for the benefit of creditors; however, APS will get 10% of the proceeds of any future sale of the engine business.

More specifically, APS will pay $2.5 million to the Creditors Trust (subject to adjustments) for distribution to creditors but requires that Superior have $2 million cash on hand at closing (thus, the "net" number of $500,000.)

$500,000 of that amount is paid to TAE and the balance is the subject of current negotiations between TAG and the committee as is the payment of proceeds from a future engine sale.

As for adjustments, the price is reduced if the gross inventory and gross accounts receivable decline below the current level of $9,140,000. Any cash in excess of $2 million goes to the Creditors' Trust. I have attached a chart prepared by Kent showing the cash, inventory and a/r trends since filing.

Kent estimates that inventory will decline by about $400,000 and month and that a/rs will remain the same. So if it took us 60 days to close the deal, the amount paid into the Creditors Trust would be $800,000 less, so APS would essentially be paid $300,000 to acquire the company under this projection.

As for any expected cash adjustment, I have attached Kent's latest cash projection which was circulated earlier this week and he projects that Superior will have about $2 million in cash at closing and so we do not expect there to be any upward adjustment for cash.

Cash has been rising throughout the case and Superior now has about $4 million in cash; however a $400,000 insurance payment is due in June and professional fees need to be paid. Such fees through April are about $750,000 and Kent estimates them to rise to $1,250,000 by closing, reducing current cash to $2,350,000. There are also section 503(b)(9) administrative claims in the amount of $78,818.74 (i.e. for good shipped within 20 days before filing.) It which must be paid on the effective date of the plan. These together with expenses of operation are estimated to erode the $350,000 "excess" over $2 million. See Kent's attached cash projection and inventory and a/r analysis.

## OTHER CONSIDERATION

APS also proposes to take certain actions to reduce claims against the estate which provide additional value to unsecured creditors.

We have prepared and refined claims analysis to estimate the claims against Superior, in the opinion of debtor. The most current claims analysis is attached. Superior's estimate includes both objective and subjective factors and are subject to further adjustment.

The debtor estimates that there are $17,483 in finance leases, or secured claims for office equipment and machinery. If APS choose to keep the equipment, the New Superior will pay for it, but APS can surrender the equipment instead, causing some reduction in these claims.

There are $56,144,43 in priority claims of employees for severance pay under a retention plan approved by the court. It is not clear to me what APS intends to due with these claims. I believe, but am not sure, that APS intends to retain the employees and assume the severance obligations.

The Debtor estimates that there are unsecured claims of $4,186,611 excluding insiders, TAG and TAE. See the attached claims analysis for details. Of this amount, $1,765,071 is for unpaid trade claims excluding claims of suppliers with open purchase orders which Superior cancelled. Those unfilled orders total about $3,558,596 although that is not the measure of damages caused by the cancellation, discussed below.

APS will also approach the suppliers with open purchase orders and attempt to strike a deal where the New Superior will agree to purchase a certain volume of parts in the future in exchange for credit terms and a full or partial release of the suppliers' claim against Superior. This would result in an undetermined reduction of claims.

Superior cancelled $4,946,725 in open purchase orders where the goods had not yet been delivered, excluding TAE. After the filing, Superior reordered some goods after the filing leaving unfulfilled orders of $3,558,596. The damages of vendors for cancelled purchase orders vary dramatically. In some cases, the vendor can sell the parts at the same price elsewhere and suffers no damages. In other cases, the vendor has acquired raw material and incurred costs in manufacturing customized parts and so has suffered damages closer to the invoice amount.

We are verifying that the limitation of liability terms on the purchase order eliminates lost profit claims. We have gone through each vendor with Kent and estimated potential liability for the breach of the purchase order, and have estimated the total estimated exposure at $1,719,545.

However, we do not expect APS to obtain releases of all of this liability since we do not believe it is the intent of APS to sell cylinder assemblies or engines and a substantial portion of the purchase orders covered such goods, including a substantial portion of the claims of Zanzi and Eck Industries, two of the largest vendors in this group.

So the value of APS's obtaining partial releases of these claims cannot be quantified at this time but we believe it will result in a reduction of claim of substantially less than $1,719,545.

The unsecured claims estimates also include $142,970 in warranty claims for allegedly damaged goods and an estimated $19,580 in claims for the loss of the warranty itself. I believe that the Reorganized debtor will assume these liabilities.

APS is also assuming Superior's obligations under its insurance policies. We believe that the plaintiffs will all waive their claims against Superior so Superior will not have any exposure to the plaintiffs. However Superior's insurers under the 2004-5 policy (8/1/2004 to 7/31/05), Superior must pay 10% of the cost of defense up to $350,000 per occurrence up to an aggregate of $875,000. Under the 2005-6, 2006-7, and 2007-8 and 2008-9 policies, Superior must pay 100% of the costs of defense up to $350,000 per occurrence up to an aggregate of $875,000.

Currently the Debtor owed $93,398 in professional fees under its policy obligations and there are several ongoing lawsuits which will go forward where the insurers will have to pay the cost of defense and then have a claim back against Superior for.

This exposure is hard to quantify as it depends on how much the current suits cost to defend and what new suits may be filed in the future for occurrences that occurred during the policy period.

So we know that the assumption of obligations by APS will reduce claims by $93,398 and it could be substantially more. We are conducting a further analysis on this.

I look forward to seeing your comments.

Regards,
Steve

---

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.

---

Pursuant to requirements related to practice before the Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purposes of (i) avoiding penalties imposed under the United States Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Please visit www.bakernet.com/disclaimer_bm for other important information concerning this message.

---

11/23/2009                    E - 10

## Salomon, Chester B.

| | |
|---|---|
| **From:** | Schenk, Daniel (Corporate Finance Partners) [daniel.schenk@cfpartners.com] |
| **Sent:** | Monday, June 08, 2009 10:39 AM |
| **To:** | Stephen.Roberts@strasburger.com; achim.ahrendt@hww-kanzlei.de; Salomon, Chester B. |
| **Subject:** | AW: FW: UPDATE  Superior: Analysis of APS offer |

I understand their offer as follows:

```
SAP current accounts (approx)
 Cash (mid july projected): 3,5m
 Professional Fees:          - 1,5m
 Net available cash:           2,0m
APS available cash in SAP. 2,0m
 Net for Creditors.            0,0

 Cash Payment by APS.       2,5m
     + to TAE.                       0,5m
     + to TAG (as drafted).   0,5m
     + to classes 1-3.            0,2m
     + to unsecured. (C 4).   1,3m
```

In essence, the deal from APS is entirely self-inanced by SAP except a cash/equity contribution of 0,5 mio plus a workoing capital facility of 1,0m for recurring operations (no money to creditors).

Do I miss sth? Of course Kent favours APS as he will receive an equity stake and injects some money on his own (or may get the equity even for free). Own agenda at work - and this is not liquidation or selling to somenody who does not continue the business.

TAG should continue the business on its own at these terms and restructure to have a profitable piece parts business.

BR
Daniel


----- Originalnachricht -----
Von: Roberts, Stephen <Stephen.Roberts@strasburger.com>
An: achim.ahrendt@hww-kanzlei.de <achim.ahrendt@hww-kanzlei.de>; Schenk, Daniel (Corporate Finance Partners); csalomon@beckerglynn.com <csalomon@beckerglynn.com>
Gesendet: Mon Jun 08 16:06:56 2009
Betreff: FW: UPDATE  Superior: Analysis of APS offer


_____

From: Roberts, Stephen
Sent: Monday, June 08, 2009 9:05 AM
To: Parham, David
Subject: RE: UPDATE Superior: Analysis of APS offer

Dave, these numbers just do not square with what Kent is saying and he is in favor of the APS deal. Strange.

He expects cash and a/rs to stay even with an inventory drop of $400,000 per month. I will forward your email to him for comments.

By the way, even my calculations show Lain Faulkner is way off on projected cash on hand. I suspect the differences are the projected attorneys fees and the 503b9 administrative

1

E - 11

claims.

Can you share Lain Faulkner's analysis so Kent can analyze?

I imagine we all agree that getting an accurate estimate of the value of the APS offer is critical.

---

From: Parham, David [mailto:David.W.Parham@BAKERNET.com]
Sent: Sunday, June 07, 2009 1:16 PM
To: Roberts, Stephen; Chester B. Salomon; Achim Ahrendt; Schenk, Daniel (Corporate Finance Partners); Kent Abercrombie; Schuler, Elliot; Brescia, Duane; Franke, Bob
Cc: Krupa, Donna; Dunn, Angela
Subject: RE: UPDATE Superior: Analysis of APS offer

Steve,
A couple of comments on your earlier e-mail and this one. First, the purchase price adjustment mechanism, and our analysis of liquidation values, excludes approximately $3.3 million in AR attributable to TAE. Unless you are valuing the TAE receivable at 0, this should reduce the liquidation value you are getting.

Second, we had considered that there would be a $300,000 monthly drop in inventory. The purchase price adjustment takes care of that, and it actually is a good thing. SAP has been selling inventory at an average gross margin of approximately 33%, assuming that holds the $400,000 in inventory that is sold should become $600,000 in AR, which can hopefully get collected and should help offset losses we expect the company to incur during this period. In any event, under the PPA, we would get credit for $600k in AR rather than $400k in inventory towards the $9.1 million threshold and thus should get more cash, not less.

Third, Lain Faulkner projects, using your numbers in the last e-mail, approximately $600,000 of the cash on hand will go to the creditors' trust.

I hope this helps. I will forward the latest engine agreement in a few minutes. Look forward to visiting with you Tuesday. I expect to be in and generally available on Monday, at least in the am.

Best Regards,
Dave

David W. Parham
Baker & McKenzie
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas  75201
Tel: 1 214 978 3034
Fax: 1 214 978 3099
David.W.Parham@bakernet.com

---

From: Roberts, Stephen [mailto:Stephen.Roberts@strasburger.com]
Sent: Friday, June 05, 2009 4:54 PM
To: Chester B. Salomon; Achim Ahrendt; Schenk, Daniel (Corporate Finance Partners); Parham, David; Kent Abercrombie; Schuler, Elliot; Brescia, Duane; Franke, Bob
Cc: Krupa, Donna; Dunn, Angela
Subject: UPDATE Superior: Analysis of APS offer

Regarding the analysis below, we pointed out that, if current trends continued, inventory could drop $400,000 a month and so would APS's cash payment.  Dave Parham advised me that he did not think that the intent of the price adjustment mechanism is to reduce the cash paid by APS based on today's inventory and a/r levels and is conferring with Lain Faulkner regarding this to see if the language needs to be changed.

E - 12

Regarding the value of APS eliminating the contingent claims of the insurers, we can put a "market value" of $1.1 million on that as follows: APS intends to pay a $350,000 to limit its obligation to pay the cost of defense to $250,000 per annum (as opposed to $875,000 now.) So if you add the premium to the maximum remaining exposure, the total possible cost to APS to eliminate the insurers' claims is $1.1 million. Put another way, the insurer is betting that the exposure will not be $350,000 more than $750,000 risk retained by APS.


Regards,
Steve

---

From: Roberts, Stephen
Sent: Thursday, June 04, 2009 12:05 PM
To: Chester B. Salomon (csalomon@beckerglynn.com); Achim Ahrendt (achim.ahrendt@hww-kanzlei.de); Schenk, Daniel (Corporate Finance Partners); Parham, David; Kent Abercrombie (kabercrombie@superiorairparts.com); Schuler, Elliot; Brescia, Duane; Franke, Bob
Cc: Krupa, Donna; Dunn, Angela
Subject: Superior: Analysis of APS offer


I have been asked to summarize and provide an analysis of the APS offer and thought it best to share it with everyone and would invite any of you to make any corrections or comments:

SUMMARY OF THE DEAL:

CASH CONSIDERATION

APS is paying a net $ 500,000 (or less, depending on adjustments) for Superior excluding the Vantage Engine Program which will be spun off into a trust or SPE for the benefit of creditors; however, APS will get 10% of the proceeds of any future sale of the engine business.

More specifically, APS will pay $2.5 million to the Creditors Trust (subject to adjustments) for distribution to creditors but requires that Superior have $2 million cash on hand at closing (thus, the "net" number of $500,000.)

$500,000 of that amount is paid to TAE and the balance is the subject of current negotiations between TAG and the committee as is the payment of proceeds from a future engine sale.

As for adjustments, the price is reduced if the gross inventory and gross accounts receivable decline below the current level of $9,140,000. Any cash in excess of $2 million goes to the Creditors' Trust. I have attached a chart prepared by Kent showing the cash, inventory and a/r trends since filing.

Kent estimates that inventory will decline by about $400,000 and month and that a/rs will remain the same. So if it took us 60 days to close the deal, the amount paid into the Creditors Trust would be $800,000 less, so APS would essentially be paid $300,000 to acquire the company under this projection.

As for any expected cash adjustment, I have attached Kent's latest cash projection which was circulated earlier this week and he projects that Superior will have about $2 million in cash at closing and so we do not expect there to be any upward adjustment for cash.

Cash has been rising throughout the case and Superior now has about $4 million in cash; however a $400,000 insurance payment is due in June and professional fees need to be paid. Such fees through April are about $750,000 and Kent estimates them to rise to $1,250,000 by closing, reducing current cash to $2,350,000. There are also section 503(b)(9) administrative claims in the amount of $78,818.74 (i.e. for good shipped within 20 days before filing.) It which must be paid on the effective date of the plan. These together with expenses of operation are estimated to erode the $350,000 "excess" over $2 million. See Kent's attached cash projection and inventory and a/r analysis.

3

E - 13

OTHER CONSIDERATION

APS also proposes to take certain actions to reduce claims against the estate which provide additional value to unsecured creditors.

We have prepared and refined claims analysis to estimate the claims against Superior, in the opinion of debtor. The most current claims analysis is attached. Superior's estimate includes both objective and subjective factors and are subject to further adjustment.

The debtor estimates that there are $17,483 in finance leases, or secured claims for office equipment and machinery. If APS choose to keep the equipment, the New Superior will pay for it, but APS can surrender the equipment instead, causing some reduction in these claims.

There are $56,144,43 in priority claims of employees for severance pay under a retention plan approved by the court. It is not clear to me what APS intends to due with these claims. I believe, but am not sure, that APS intends to retain the employees and assume the severance obligations.

The Debtor estimates that there are unsecured claims of $4,186,611 excluding insiders, TAG and TAE. See the attached claims analysis for details. Of this amount, $1,765,071 is for unpaid trade claims excluding claims of suppliers with open purchase orders which Superior cancelled. Those unfilled orders total about $3,558,596 although that is not the measure of damages caused by the cancellation, discussed below.

APS will also approach the suppliers with open purchase orders and attempt to strike a deal where the New Superior will agree to purchase a certain volume of parts in the future in exchange for credit terms and a full or partial release of the suppliers' claim against Superior. This would result in an undetermined reduction of claims.

Superior cancelled $4,946,725 in open purchase orders where the goods had not yet been delivered, excluding TAE. After the filing, Superior reordered some goods after the filing leaving unfulfilled orders of $3,558,596. The damages of vendors for cancelled purchase orders vary dramatically. In some cases, the vendor can sell the parts at the same price elsewhere and suffers no damages. In other cases, the vendor has acquired raw material and incurred costs in manufacturing customized parts and so has suffered damages closer to the invoice amount. We are verifying that the limitation of liability terms on the purchase order eliminates lost profit claims. We have gone through each vendor with Kent and estimated potential liability for the breach of the purchase order, and have estimated the total estimated exposure at $1,719,545.

However, we do not expect APS to obtain releases of all of this liability since we do not believe it is the intent of APS to sell cylinder assemblies or engines and a substantial portion of the purchase orders covered such goods, including a substantial portion of the claims of Zanzi and Eck Industries, two of the largest vendors in this group.

So the value of APS's obtaining partial releases of these claims cannot be quantified at this time but we believe it will result in a reduction of claim of substantially less than $1,719,545.

The unsecured claims estimates also include $142,970 in warranty claims for allegedly damaged goods and an estimated $19,580 in claims for the loss of the warranty itself. I believe that the Reorganized debtor will assume these liabilities.

APS is also assuming Superior's obligations under its insurance policies. We believe that the plaintiffs will all waive their claims against Superior so Superior will not have any exposure to the plaintiffs. However Superior's insurers under the 2004-5 policy (8/1/2004 to 7/31/05), Superior must pay 10% of the cost of defense up to $350,000 per occurrence up to an aggregate of $875,000. Under the  2005-6, 2006-7, and 2007-8 and 2008-9 policies, Superior must pay 100% of the costs of defense up to $350,000 per occurrence up to an aggregate of $875,000.

Currently the Debtor owed $93,398 in professional fees under its policy obligations and there are several ongoing lawsuits which will go forward where the insurers will have to pay the cost of defense and then have a claim back against Superior for.

This exposure is hard to quantify as it depends on how much the current suits cost to defend and what new suits may be filed in the future for occurrences that occurred during the policy period.

So we know that the assumption of obligations by APS will reduce claims by $93,398 and it could be substantially more. We are conducting a further analysis on this.

I look forward to seeing your comments.

Regards,
Steve

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.

Pursuant to requirements related to practice before the Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purposes of (i) avoiding penalties imposed under the United States Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Please visit www.bakernet.com/disclaimer_bm for other important information concerning this message.

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.

## Salomon, Chester B.

| | |
|---|---|
| **From:** | Roberts, Stephen [Stephen.Roberts@strasburger.com] |
| **Sent:** | Monday, June 08, 2009 11:29 AM |
| **To:** | Parham, David; achim.ahrendt@hww-kanzlei.de; Schenk, Daniel (Corporate Finance Partners); Salomon, Chester B. |
| **Cc:** | Schuler, Elliot; Brescia, Duane |
| **Subject:** | Superior/ Brantley Helicopter Update |

The Chinese are sending the general manager of Brantley Helicopter to meet with us tomorrow afternoon. He has a list of questions which, if answered to their satisfaction, will result in them making cash offer for the stock. I am pressing them as hard as I can. They had tried to get visas for their engineers and technical experts to come from China but learned that it would take over a month to get them so they will proceed this way.

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.

E-16

## Salomon, Chester B.

**From:** Roberts, Stephen [Stephen.Roberts@strasburger.com]
**Sent:** Monday, June 08, 2009 6:22 PM
**To:** Salomon, Chester B.
**Subject:** RE: Tuesday Conference Call

I do not agree. Kent is pushing for this plan and there are many issues he does not understand.

---

**From:** Salomon, Chester B. [mailto:CSalomon@beckerglynn.com]
**Sent:** Monday, June 08, 2009 4:28 PM
**To:** Roberts, Stephen
**Subject:** FW: Tuesday Conference Call

Steve -

We think you should see the email below. I phoned you earlier this afternoon and left a message. I'm leaving the office in a couple of minutes.

Chester

---

**From:** Dr. Achim Ahrendt [mailto:achim.ahrendt@hww-kanzlei.de]
**Sent:** Monday, June 08, 2009 12:24 PM
**To:** Salomon, Chester B.
**Subject:** WG: Tuesday Conference Call

What is your opinion on this?

Yours Achim

---

**Von:** Kent Abercrombie [mailto:Kabercrombie@superior-air-parts.com]
**Gesendet:** Montag, 8. Juni 2009 17:15
**An:** Dr. Achim Ahrendt
**Betreff:** Tuesday Conference Call

Dr. Ahrendt,

After our conversation last week with Steve Roberts and giving thought to the Tuesday conference call with the credit committee, I wanted to give a couple of suggestions:

- I believe the initial conversations with Dave Parham should exclude Steve Roberts and Daniel Schenk. It is my opinion that Steve tends to focus too much on the minor issues that he believes can not be confirmed within the plan and loses focus of the larger issues within the plan. I felt like we were near an agreement on how we could work with the credit committee on revising the APS plan to facilitate the bid process until Steve derailed the conversations. I am sure you have a few points that must be addressed and it is my opinion that keeping Steve out of the discussions is in the best interest of all parties. If a general agreement can be reached, Steve can then be tasked with working with the credit committee to revise the plan into an acceptable document for the court. As for Daniel, I feel his role of selling the company may be at odds with this meeting as I do not believe he can add anything to the conversations regarding this plan. His involvement, like Steve's, may move the discussions to a level of detail that is unnecessary at this

time.  His value will be in anything he can add if an agreement can be reached.  If you are more comfortable having his opinion, it may be better to have him in the same room but not an active participant on the call.

- It is my opinion that if you can clearly state what you need from the credit committee to accept any plan the process will go much quicker and may be easier on everyone.  If you have a specific dollar figure then now is the time to present that number.  If I am reading the plan correctly, TAG is currently being offered $500,000 and 90% of the engine.  I understand these figures to be less than desirable but they are a starting point.  If you can close the gap with Dave Parham it may prevent any unnecessary actions from any of the parties.  If you and Mr. Soloman have a separate proposal, I believe it should be presented as well.

I am very hopeful that tomorrow's conference call will be productive but I am also concerned that it may be the last opportunity for any negotiations to occur.  If I am correct, then I feel it is best to have outside parties removed from the early conversations.  If there is any information you need from me to assist on the call tomorrow please let me know so I can prepare it as quickly as possible.  If you would prefer I not be on the initial call as well please let me know.

Best regards,

*Kent Abercrombie*
President/CEO



621 S. Royal Lane, Suite 100
Coppell, TX 75019-3805

Phone: 972-829-4636
Fax:    866-743-3508

**Visit:** www.superiorairparts.com
www.xp-series.com

The information contained in this electronic mail transmission may contain privileged communications and/or confidential information intended only for the use of the named recipient(s). If the reader of this information is not the named recipient (s) or you receive this transmission in error, please: (1) immediately notify us by return electronic transmission at pbenoit@superiorairparts.com; and (2) permanently delete this message from your computer and all servers and other storage devices. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received or opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Superior Air Parts for any damage or loss arising in any way from its use.

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any attachments. Thank you.

11/18/2009

E-18

## Salomon, Chester B.

| | |
|---|---|
| **From:** | Schenk, Daniel (Corporate Finance Partners) [daniel.schenk@cfpartners.com] |
| **Sent:** | Tuesday, June 09, 2009 7:04 AM |
| **To:** | Stephen.Roberts@strasburger.com; Salomon, Chester B.; achim.ahrendt@hww-kanzlei.de; kabercrombie@superiorairparts.com; David.W.Parham@BAKERNET |
| **Cc:** | Duane.Brescia@strasburger.com; Elliot.D.Schuler@BAKERNET.com; Angela.Dunn@strasburger.com; Donna.Krupa@strasburger.com |
| **Subject:** | Conference tuesday |

Dave,
Did you circulate dial in information yet ?
Daniel


----- Originalnachricht -----
Von: Roberts, Stephen <Stephen.Roberts@strasburger.com>
An: Roberts, Stephen <Stephen.Roberts@strasburger.com>; csalomon@beckerglynn.com
<csalomon@beckerglynn.com>; achim.ahrendt@hww-kanzlei.de <achim.ahrendt@hww-kanzlei.de>;
Schenk, Daniel (Corporate Finance Partners); kabercrombie@superiorairparts.com
<kabercrombie@superiorairparts.com>; Parham, David <David.W.Parham@BAKERNET.com>
Cc: Brescia, Duane <Duane.Brescia@strasburger.com>; Schuler, Elliot
<Elliot.D.Schuler@BAKERNET.com>; Dunn, Angela <Angela.Dunn@strasburger.com>; Krupa, Donna
<Donna.Krupa@strasburger.com>
Gesendet: Sat Jun 06 21:38:00 2009
Betreff: RE: conference Monday?

The meeting will be held at Dave Parham's office at 11:30 a.m. next Tuesday. His office
will provide call in information.

Regards,
Steve Roberts


_____

From: Roberts, Stephen
Sent: Friday, June 05, 2009 2:00 PM
To: Chester B. Salomon (csalomon@beckerglynn.com); Achim Ahrendt (achim.ahrendt@hww-
kanzlei.de); Schenk, Daniel (Corporate Finance Partners); Kent Abercrombie
(kabercrombie@superiorairparts.com); Parham, David
Cc: Brescia, Duane; Schuler, Elliot; Dunn, Angela; Krupa, Donna
Subject: conference Monday?

Everyone agrees that we are at a critical point in the case.

Kent, Achim and I had a long conversation this morning in their capacities of directors of
Superior. No one is excited about the APS offer but there are differences of opinion among
key people in this case regarding the value of the offer and what we should do with the
offer.  We think that it would be worthwhile to have a meeting in Dallas as soon as
possible with Dave Parham and Chuck Dedman as a representative of the committee (and Lain
Faulkner, if they wish), Kent Abercrombie, Dr. Ahrendt, Chester Salomon, Daniel Schenk and
me. Achim, Chester and Daniel cannot make it to Dallas on short notice but Achim has
committed to be available by phone on Monday morning or Tuesday (except between 10 and 11
a.m.)

I can get to Dallas.

Time is of the essence so I suggest we meet in Dallas on Monday morning.

Please advise of your willingness and availability as soon as possible.

Regards,
Steve Roberts

FW: Offer to Purchase Stock of Superior Air Parts 11/24/09   Entered 11/24/09 13:06:59   Page 3 of 2
Case 08-36705-bjh11   Doc 2200-1   Filed 11/24/09

Exhibit E    Page 21 of 22

## Salomon, Chester B.

| | |
|---|---|
| **From:** | Roberts, Stephen [Stephen.Roberts@strasburger.com] |
| **Sent:** | Monday, June 22, 2009 2:23 PM |
| **To:** | Salomon, Chester B.; kabercrombie@superiorairparts.com; achim.ahrendt@hww-kanzlei.de; Schenk, Daniel (Corporate Finance Partners) |
| **Subject:** | FW: Offer to Purchase Stock of Superior Air Parts |
| **Attachments:** | image001.jpg; 20090622LOI(signed).pdf |

We recommend that the Debtor enter into the attached letter of intent and file a revised plan tomorrow with Brantly as the stalking horse yet go forward with the bidding procedure in case they drop out or get outbid.

If the amended plan is filed tomorrow before 5 pm the court will have a hearing at 4 pm on July 6. otherwise we will be set back by at least 15 days.

One issue that must be addressed is how Brantly is going to show adequate assurance that it will pay the purchase orders it is assuming over the next 18 months. They can either put up cash such as a letter of credit or commit to adequately capitalize the company and sho <<image001.jpg>> w they can do it. Kent is working on a pro forma as to how much cash Superior will need. We need to get this nailed down fast so we can add it to our disclosure statement.

-----Original Message-----
From: Roberts, Stephen
Sent: Monday, June 22, 2009 11:47 AM
To: 'elliot.d.schuler@bakernet.com'; 'David.W.Parham@BAKERNET.com'; Brescia, Duane
Cc: Krupa, Donna; Dunn, Angela
Subject: Fw: Offer to Purchase Stock of Superior Air Parts

Fyi

----- Original Message -----
From: Matthew S. Okin <mokin@oakllp.com>
To: Roberts, Stephen
Cc: 'Tom Tong' <tomtong@tonglawfirm.com>; 'Meritt Crosby' <mcrosby@oakllp.com>
Sent: Mon Jun 22 11:25:17 2009
Subject: Offer to Purchase Stock of Superior Air Parts

Steve-


Attached please find a copy of Brantly's signed offer to purchase the stock of Superior Air Parts. Please let me know if you have any questions regarding the terms of the offer. Thank you.


Matt


Matthew S. Okin

Okin Adams & Kilmer LLP

1113 Vine St., Suite 201

Houston, TX 77002

Tel: 713.228.4100

Fax: 888.865.2118

www.oakllp.com


Confidentiality Notice


This message is being sent by or on behalf of a lawyer.  It is intended exclusively

for the individual or entity to which it is addressed.  This communication may

contain information that is proprietary, privileged or confidential or otherwise

legally exempt from disclosure.  If you are not the named addressee, you are not

authorized to read, print, retain, copy or disseminate this message or any part of it.

If you have received this message in error, please notify the sender immediately

by e-mail and delete all copies of the message.


This email message and any attachments are confidential and may be privileged. If you are not the
intended recipient, please notify Strasburger & Price, LLP immediately -- by replying to this message or
by sending an email to postmaster@strasburger.com -- and destroy all copies of this message and any
attachments. Thank you.