Jerry C. Alexander
Texas Bar No. 00993500
James F. Adams
Texas Bar No. 00863450
Christopher A. Robison
Texas Bar No. 24035720
Passman & Jones
1201 Elm Street, Suite 2500
Dallas, TX 75270-2599
Phone: (214) 742-2121
Fax: (214) 748-7949
Counsel for Superior Air Parts, Inc.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § § | |
| SUPERIOR AIR PARTS, INC., | § § § | CHAPTER 11 CASE NO. 08-36705-BJH-11 |
| DEBTOR. | § | |
| LYCOMING ENGINES, A DIVISION OF AVCO CORPORATION AND TEXTRON INNOVATIONS, INC., | § § § § | |
| PLAINTIFFS, | § § | ADVERSARY NO. _____ |
| V. | § § | |
| SUPERIOR AIR PARTS, INC., | § | |
| DEFENDANT. | | |

**NOTICE OF REMOVAL**

COMES NOW Superior Air Parts, Inc. (*"Superior"* or *"Debtor"*), the Debtor in above-styled bankruptcy case and files this notice of removal ("*Notice of Removal"*) with the Bankruptcy Court pursuant to 28 U.S.C. §§ 157, 1331, 1334, 1441, and/or 1452, 11 U.S.C. §§ 105, 1127, and/or 1142, Rules 3020(d) and 9027 of the Federal Rules of Bankruptcy Procedure, and Local District Misc. Order #33, removing the below-described state court lawsuit and all claims and causes of action asserted therein pursuant to the aforementioned removal statutes and 28 U.S.C.

§ 1367, and respectfully represents as follows:

1. Superior is a manufacturer of replacement parts for various reciprocating aircraft engines, including engines originally manufactured by plaintiff Lycoming Engines, a Division of Avco Corporation ("***Avco***").

2. Superior may be Avco's only competitor in the world for the manufacture of such replacement aircraft parts.

3. The Federal Aviation Administration ("***FAA***") has issued various Parts Manufacturing Approvals ("***PMAs***") to Superior authorizing Superior to manufacture such replacement aircraft parts. Each PMA was issued by the FAA after a review of an application and supporting data, typically including specifications, designs, test results, drawings and other technical data (collectively "***Data Packs***") for each proposed part.

4. For decades Textron, Inc. ("***Textron***"), its wholly owned subsidiary Avco, the Lycoming Division of Avco ("***Lycoming***") and their predecessors have tried to put Superior out of business, thus eliminating their only competition for the production of various replacement parts necessary to service a Lycoming aircraft engine.

5. For example, Lycoming allegedly encouraged Superior's vendors to boycott Superior under the threat that Lycoming, the dominant purchaser in the industry, would refuse to do business with any vendor that also supplied Superior. In about 1976, Superior sued Lycoming in the United States District Court for the District of Kansas in Cause No. 76-176-C2 ("***1976 Lawsuit***"), asserting various antitrust violations. Lycoming counterclaimed against Superior alleging, among other things, that the Data Packs supporting Superior's PMA applications included drawings purportedly prepared by Lycoming. Lycoming further alleged in the 1976 Lawsuit that such drawings were its proprietary rights used without permission or knowledge. Superior denied

Lycoming's counterclaims. Lengthy litigation ensued.

6. On or about January 29, 1981, Superior entered into an agreement with Avco ("*1981 Agreement*") to, among other things, license various data from Avco, including the disputed drawings, for the Lycoming compatible parts listed in Exhibit A to the 1981 Agreement.

7. A dispute developed between Superior and Avco regarding the 1981 Agreement.

8. On or about February 9, 1999 (or February 12, 1999), Superior entered into an agreement with Avco ("*1999 Agreement*") in which Avco agreed, among other things, to grant Superior a perpetual license to various data from Lycoming, including the disputed drawings for the parts listed in the 1999 Agreement ("*Perpetual License*"). Avco also waived any claim that the PMAs then held by Superior were purportedly obtained in violation of Avco's rights.

9. The 1999 Agreement required that Superior pay Avco a one-time licensing fee for the Perpetual License in four installments. On or about March 31, 2002, Superior completed such installment payments and owed Avco no further payments for the Perpetual License.

10. Despite the Perpetual License, Avco and its parent Textron continued to harass and unfairly compete with Superior.

11. On or about December 30, 2008, Superior executed an Asset Purchase Agreement ("*Superior APA*") as seller with plaintiff Avco as buyer and Textron as guarantor contingent upon Bankruptcy Court approval. The Superior APA provided, among other things, that Superior would sell to Avco "all of [Superior's] right[s], title and interest in, to and under the assets, property, rights and Claims" set forth in Exhibit A thereto. Exhibit A included, among other things, all PMAs held by Superior "and all documentation relating to the same … ." The Superior APA also provided, among other things, that Superior would sell to Avco "all design and manufacturing rights, design documentation, information and systems, including … Data Packs … ." The

Superior APA also provided, among other things, that Superior would sell to Avco "any and all Intellectual Property" which was defined to include the Data Packs. The Superior APA also listed various licenses and/or executory contracts in schedules attached thereto.

12. As required by the Superior APA with Avco, on or about December 31, 2008, Superior filed a pre-packaged voluntary Chapter 11 bankruptcy petition [Bankr. Doc. No. 1] in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division ("**Bankruptcy Case**") with Avco's blessing and support.

13. Two days later, on or about January 2, 1999, Superior filed its "*Debtor's Motion to Sell Substantially All of Debtor's Assets Free and Clear of Liens*" [Bankr. Doc. 11] ("**Section 363 Motion**") in the Bankruptcy Case seeking authority to sell most of its assets to Avco as set forth in the Superior APA. The Section 363 Motion attached the Superior APA as an exhibit, but failed to attach most of the schedules to the Superior APA, including, but not limited to, Schedule 6.3, Schedule 6.4, Schedule 6.5(a), Schedule 6.5(b), Schedule 6.6, Schedule 6.7, Schedule 6.8, Schedule 6.9, Schedule 6.11, Schedule 6.12, Schedule 6.13, Schedule 6.14(a), Schedule 6.14(d), Schedule 6.18(a), and Schedule 6.18(b), asserting that such schedules to the Superior APA contained proprietary information.

14. Upon information and belief, Avco and Textron participated in the preparation and/or review of the Section 363 Motion, bankruptcy schedules, Superior APA and the exhibits and schedules thereto. As such, Avco and Textron were aware that the Perpetual License was not listed as listed as an executory contract in either Superior's bankruptcy Schedule G [Bankr. Doc. Nos. 4 and 265] or the schedules to the Superior APA, and did not object to Superior's characterization of the Perpetual License as a non-executory contract. Avco and Textron were also aware that Superior's response to Question 23 on its bankruptcy Schedule B [Bankr. Doc.

Nos. 4 and 263] indicated that Superior held various licenses, including the PMAs, and did not object to Superior not specifically listing the Perpetual License, but expressly listing the PMAs in "Schedule 22" (sic) thereto which were supported in part by Data Packs that included drawings purportedly covered by the Perpetual License.

15. The Section 363 Motion was later withdrawn, due in part to antitrust concerns. See, Bank. Doc. No. 146.

16. On or about July 23, 2009, Superior filed its "Third[1] Amended Plan of Reorganization" [Bankr. Doc. No. 322] ("***Third Amended Plan***"). The Third Amended Plan proposed cancelling all existing ownership interests in the Debtor, continuing the Debtor's existence, reorganizing the Debtor, issuing new ownership interests in the Debtor to Brantley International, Inc. and other entities (collectively the "***Brantly Group***") or their designate, and making various distributions to its creditors. The Third Amended Plan provided for Superior to retain all PMAs and all assets "supporting and otherwise underlying all replacement parts for which [Superior] has obtained from the FAA [a PMA], including replacement parts for Lycoming … engines … [and] all documentation submitted to the and correspondence with the FAA relating to such engines and replacement parts … ." See, Third Amended Plan, page 8.

17. Section 12.1 of the Third Amended Plan provided that "[t]he Bankruptcy Court shall retain <u>exclusive</u> jurisdiction over this Bankruptcy Case after Confirmation for the following purposes: … (b) to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan; … (f) to consider and act on such other matters consistent with this Plan as may be

---

[1] Superior previously filed a "Third Amended Plan of Reorganization" [Bankr. Doc. No. 309] on or about July 17, 2009, but all subsequent pleadings and orders refer to the July 23, 2009 document [Bankr. Doc. No. 322] as the "Third Amended Plan of Reorganization" so Superior will do the same to minimize confusion.

provided in the Confirmation Order; (g) to make such orders as are necessary and appropriate to carry out and implement the provisions of this Plan; … (m) to correct any defect, cure any omission or reconcile any inconsistency in this Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan; and (n) to determine any and all motions, applications, adversary proceedings and contested matters whether pending in the Bankruptcy Case as of the Effective Date or brought subsequently by the Reorganized Debtor … ."

18.    The Third Amended Plan also required any creditor to file any claim against Superior by the bar date. Neither Avco nor Textron filed a proof of claim by the bar date.

19.    Neither the Third Amended Plan nor the "Third[2] Amended Disclosure Statement" [Bankr. Doc. No. 321] listed the Perpetual License as an executory contract subject to acceptance or rejection. Neither Avco nor Textron objected to Superior's characterization of the Perpetual License as a non-executory contract or any other aspect of the Third Amended Plan or Third Amended Disclosure Statement despite receiving notice of the same.

20.    On or about July 23, 2009, United States Bankruptcy Judge Barbara J. Houser signed an "Order Approving Debtor's Third Amended Disclosure Statement and Setting Documents (Docket No. 321)" [Bankr. Doc. No. 325] approving the Third Amended Disclosure Statement and setting a confirmation hearing date.

21.    On or about August 27, 2009, Judge Houser signed an "Order Confirming Third Amended Plan of Reorganization File[d] By The Debtor and The Official Committee of Unsecured Creditors Dated July 23, 2009 (Docket No. 322)" [Bankr. Doc. No. 325]

---

[2]    Superior previously filed a "Third Amended Disclosure Statement" [Bankr. Doc. No. 308] on or about July 17, 2009, but all subsequent pleadings and orders refer to the July 23, 2009 document [Bankr. Doc. No. 321] as the "Third Amended Disclosure Statement" so Superior will do the same to minimize confusion.

("***Confirmation Order***") approving the Third Amended Plan of Reorganization as modified by the Confirmation Order.

22. Section 30 of the Confirmation Order further provided that the provisions of the Third Amended Plan and the Confirmation Order are binding upon all creditors and parties in interest whether or not their claims and interests are impaired under the Third Amended Plan.

23. Section 32 of the Confirmation Order further permanently restrained and enjoined every holder of every claim against Superior from asserting against Superior any "claim … based upon any document, instrument or act, omission, transaction or other activity of any kind or nature whatsoever, whether in law or equity, arising from or related to the Debtor which arose prior to the Effective Date" of the Third Amended Plan.

24. Section 35 of the Confirmation Order "discharged" Superior from "any debt that arose prior to the Effective Date" … whether or not a proof of claim was filed against Superior.

25. Section 36 of the Confirmation Order provided that "all property" of the debtor's estate shall vest in Superior as of the effective date "free and clear of all claims, liens, encumbrances and other interests of holders of claims and interests."

26. Section 37 of the Confirmation Order required that Avco and its parents, sister and subsidiary companies, and all other companies or persons in their control, return to Superior all documents and other information owned by Superior related to Superior's business and operations. Upon information and belief, Avo, Textron and Lycoming failed to comply with the Confirmation Order and retained documents and information that now serve as the basis of their claims asserted in the State Civil Action discussed below.

27. Section 39 of the Confirmation Order provided that "this Court shall retain jurisdiction over this case pursuant to and for the general purposes of §§ 105(a), 1127 and 1142

of the Bankruptcy Code and Fed. R. Bankr. P. 3020(d), and for the specific purposes proscribed in Article XII of the [Third Amended] Plan", which includes the retention of exclusive jurisdiction as discussed above as set forth in Section 12.1 of the Third Amended Plan.

28. Neither Avco nor Textron objected to any aspect of the Confirmation Order or appealed the same despite receiving notice of the same.

29. The Brantly Group subsequently contributed approximately $7,000,000.00 to the trust established for Superior's creditors as set forth in the Third Amended Plan. At no time prior to the Brantly Group making the $7,000,000.00 contribution pursuant to the Third Amended Plan did Avco or Textron assert that: (a) the Perpetual License was an executory contract subject to acceptance or rejection, or (b) that the PMAs were subject to attack by Avco or Textron.

30. On or about January 13, 2012, Avco and Textron filed a lawsuit ("*State Civil Action*") against Superior in the 236th Judicial District Court, Tarrant County, Texas ("*State Court*"). The State Civil Action is entitled *Lycoming Engines, A Division of Avco Corporation and Textron Innovations, Inc. v. Superior Air Parts, Inc.*, Cause No. 236-257478-12. The State Court is located in the Northern District of Texas.

31. On or about February 22, 2012, a copy of the petition and citation in the State Civil Action were served on Superior. Superior's deadline to answer is the first Monday following the twentieth day after service according to Texas law, i.e., Monday March 19, 2012.

32. The petition in the State Civil Action acknowledges that Lycoming licensed drawings and other data to Superior pursuant to the 1981 Agreement and 1999 Agreement; however, Avco and Textron seek a declaratory judgment from the State Court that the "1981 and/or 1999 Agreements have been rejected" by Superior during the Bankruptcy Case and that

Superior "has no license rights" to the Lycoming drawings and other data.  See, Plaintiff's Original Petition, paragraph 24.

33. Avco and Textron further seek a declaration that "any PMAs obtained with such data cannot be used by [Superior] in the production of aviation merchandise because [Superior] has not (sic) right to use the data or information."  See, Plaintiff's Original Petition, paragraph 24.  Avco and Textron also seek a declaration that Superior "cannot use any PMAs obtained based on whole or in part and/or based directly or indirectly on any trade secret or proprietary data of Plaintiffs" despite the Perpetual License and the purpose and intent of the Third Amended Plan and Confirmation Order.  See, Plaintiff's Original Petition, paragraph 25.

34. Avco and Textron further seek a declaration that Superior "cannot manufacture, distribute, or sell any items that incorporate in whole or in part and/or that incorporate directly or indirectly any trade secret or proprietary data of Plaintiffs" despite the Perpetual License and the purpose and intent of the Third Amended Plan and Confirmation Order.  See, Plaintiff's Original Petition, paragraph 25.

35. If the trial court finds that the Perpetual License and any licenses from the 1981 Agreement were somehow terminated, then Avco and Textron seek damages for Superior allegedly using the Lycoming drawings under a misappropriation of trade secrets theory or a conversion theory.  See, Plaintiff's Original Petition, paragraphs 14-22 and 38-39.

36. Avco and Textron alternatively seek damages for Superior allegedly breaching the "1981 and 1999 Agreements", or Superior allegedly breaching its purported "fiduciary duty" arising from such agreements.  See, Plaintiff's Original Petition, paragraphs 32-37.

37. Avco and Textron seek damages for Superior allegedly disparaging Lycoming parts, the recovery of attorney's fees, punitive or exemplary damages, and a permanent

injunction. See, Plaintiff's Original Petition, paragraphs 42, 46-52, and 54.

39. Avco and Textron acknowledge that their claims arise, at least in part, pre-petition and thus seek to invoke the discovery rule alleging that the Plaintiffs "had no reason to know of the wrongful act until the time this lawsuit was filed" or because of an alleged "fraudulent concealment of the wrongful act." See, Plaintiff's Original Petition, paragraphs 43-45.

39. In short, the relief sought by Avco and Textron turns on determinations of: (1) what happened in the Bankruptcy Case to the 1981 Agreement and 1999 Agreement ("*Section 365 Issues*"); (2) whether the Plaintiffs' claims and causes of action are barred and enjoined by the Third Amended Plan and Confirmation ("*Bar and Injunction Issues*"); (3) whether the State Civil Action violates the Confirmation Order ("*Bankruptcy Contempt Issues*"); (4) what was the purpose and intent of the Third Amended Plan and Confirmation Order ("*Plan Intent Issues*"); (5) whether any defect or omission exists in the Third Amended Plan or Confirmation Order that may need to be cured or reconciled to carry out the purposes and intent of the Third Amended Plan ("*Plan Implementation Issues*"); (6) whether the Plaintiffs are attempting to thwart the purpose and intent of the Third Amended Plan and Confirmation Order, and thus lack the "clean hands" necessary to obtain the declaratory and/or injunctive relief sought ("*Plan Interference Issues*"); and (7) whether Superior can continue to use the PMAs if the licenses were terminated as alleged ("*FAA Issues*").

40. The Third Amended Plan and Confirmation Order vest "exclusive" jurisdiction over such issues in Judge Houser. See, Bankr. Doc. No. 322, Section 12.01 ("exclusive jurisdiction … (b) to hear and determine all suits and disputes that arise in connection with the interpretation … and enforcement of [the Third Amended] Plan"); … (f) to consider and act on such other matters consistent with [the Third Amended] Plan … ; (g) to make such orders as are

necessary and appropriate to carry out and implement the provisions of this Plan; … (m) to correct any defect, cure any omission or reconcile any inconsistency in this Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan; and (n) to determine any and all … proceedings … brought subsequently … ." See also, Bankr. Doc. No. 404, Section 39 ("retain jurisdiction … for the specific purposes proscribed in Article XII of the [Third Amended] Plan"). Accordingly, Superior respectfully submits that Judge Houser has exclusive jurisdiction to hear all of issues outlined above.

41. The primary purposes and intent of the Third Amended Plan and Confirmation Order were: (1) to discharge Superior from "any debt that arose prior to the Effective Date" whether or not a proof of claim was filed against Superior; (2) permanently restrain and enjoin every holder of every claim against Superior from asserting against Superior any "claim … based upon any document, instrument or act, omission, transaction or other activity of any kind or nature whatsoever, whether in law or equity, arising from or related to the Debtor which arose prior to the Effective Date" of the Third Amended Plan; and (3) allow Superior to continue manufacturing replacement parts in competition with Lycoming using the PMAs issued by the FAA "free and clear of all claims, liens, encumbrances and other interests of holders of claims and interests." Accordingly, the Third Amended Plan and Confirmation Order provided that Judge Houser retain exclusive jurisdiction to achieve those goals. Avco and Textron sat silent and failed to object.

42. Neither the Brantly Group, nor any other potential investor, would pay millions of dollars to assume control of a debtor's primary assets if companies such as Avco and Textron were allowed to hide behind pleadings that they helped prepare, and later claim that the Debtor had nothing to sell. Accordingly, Superior respectfully submits that the bankruptcy court should

exercise is exclusive jurisdiction to hear and determine the relief requested and enter orders necessary to implement the Third Amended Plan, correct any defects or omissions, and to carry out the purposes and intent of the Plan.

43. In the alternative, even if Judge Houser lacks "exclusive" jurisdiction to hear and determine the claims and causes of action asserted in the State Civil Action, Superior respectfully submits that the bankruptcy courts of the Northern District of Texas still have original, if not exclusive, jurisdiction over such claims and causes of action. 28 U.S.C. § 1452(a) provides that "a party may remove any claim or cause of action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334" of Title 28. Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The federal district courts of the Northern District of Texas have adopted a standing local miscellaneous order pursuant to 28 U.S.C. § 157(a) automatically referring all cases under title 11 and any and all proceedings arising under title 11 or arising in or related to a case under title 11 to the bankruptcy judges for the district. See, Local District Misc. Order No. 33. Accordingly, pursuant to 28 U.S.C. § 157(b)(1) bankruptcy judges in this district may "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11."

44. All of the claims and causes of action asserted by Avco and Textron turn on the issues identified in Paragraph 39 above, and thus either "arise under title 11" or "arise in cases under title 11", and are core proceedings under 28 U.S.C. §§ 157(b)(2)(A), (B), (E), (I), (K), (L), (M), (N), and/or (O). Alternatively, the claims and causes of action that turn on the FAA Issues relate to a case under title 11, and therefore maybe heard by the bankruptcy court pursuant to 28

U.S.C. §§ 157(c)(1) and/or (2). Alternatively, the district courts have original jurisdiction to hear all of the claims and causes of action asserted in the State Civil Action, including the claims and causes of action that turn on the FAA Issues, pursuant to 28 U.S.C. §§ 1331, 1334, 1441(a) and (c), and/or 1452. Moreover, 11 U.S.C. §§ 105(a), 1127(b), and 1142(b) and Fed. R. Bankr. Proc. 3020(d) authorize the bankruptcy and federal district courts to modify a confirmed plan, issue judgments and orders necessary to implement a confirmed plan, and otherwise implement such court's orders, prevent an abuse of process or otherwise carry out the provisions of the Bankruptcy Code.

45. Pleading further in the alternative, should the Bankruptcy Court decline to exercise jurisdiction, the District Court has federal question jurisdiction over the claims asserted in the State Civil Action under 28 U.S.C. §§ 1331 and 1441(a). Specifically, by seeking "*a declaration that Defendant cannot use any PMAs obtained based in whole or in part and/or based directly or indirectly on any trade secret or proprietary data of Plaintiffs*" (Petition ¶ 25), the Plaintiffs have expressly requested relief which necessarily depends on the resolution of a substantial question of federal law – *i.e.* the construction and application of Federal Regulations pertaining to the certification procedures for aircraft replacement parts, 14 C.F.R. § 21.303 *et seq*. While Plaintiffs have cast their claims as state law causes of action, the law is clear that a case with only state law claims may nonetheless arise under federal law when the vindication of a right under state law necessarily turns on construction of federal law. That is the case here.

46. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b)(1) and FRBP 9027(a)(3) because the instant Notice of Removal was filed within 30 days of the Plaintiffs serving Superior with citation and the petition in the State Civil Action.

47. Concurrent with the filing of this Notice of Removal, copies of the pleadings filed

in the State Civil Action are being filed with the Bankruptcy Court in accordance with Rule 9027 of the Federal Rules of Bankruptcy Procedure.

48. The State Civil Action was not filed in the United States Tax Court, nor is an action by a governmental unit to enforce police or regulatory powers.

49. In the event that any claim or cause of action asserted in the State Civil Action is determined to be non-core, Superior consents to the entry of final orders or judgment by the bankruptcy judge.

50. Notice of the instant Notice of Removal is being filed with the State Court in the State Civil Action and served on the parties therein contemporaneous with the filing of this Notice of Removal with the clerk of the Bankruptcy Court.

51. The reorganized Superior is a creature of the Bankruptcy Case, the Third Amended Plan, and the Confirmation Order; but for the Third Amended Plan and Confirmation Order, Superior would not exist, it would not own the PMAs and Perpetual License, nor could Superior manufacture the replacement Lycoming aircraft parts that are the subject of the State Civil Action. Superior exists solely as a vehicle to execute and implement the Third Amended Plan. Likewise, there is no way to implement the Plan absent Superior continuing to have rights in the PMAs and Perpetual License.

52. The Plaintiffs' claims against Superior existed, in whole or in part, either pre-petition or during the Bankruptcy Case, and involve pre-petition relations between the Plaintiffs and Superior and the effects of the Bankruptcy Case thereon. Any potential liability of Superior is contingent upon the Plaintiffs first establishing that the pre-petition Perpetual License and PMAs were somehow terminated and voided as a result of the Bankruptcy Case. Throughout the pendency of the Bankruptcy Case, the Plaintiffs had the ability to seek such a determination

regarding the Perpetual License and PMAs, yet no Plaintiff did so. To the contrary, plaintiff Avco sought to buy the PMAs and Perpetual License from Superior through the Section 363 Motion. Neither Avco or Textron ever disclosed an intention to sue Superior post-confirmation for determinations that the reorganized debtor could not use the Perpetual License or PMAs. Indeed, such action would render implementation of the Third Amended Plan impractical and would discourage the Brantly Group, or any other investor, from funding millions of dollars which ultimately flowed to the creditors in the Bankruptcy Case.

53. The Plaintiffs did not need to wait until after confirmation of the Third Amended Plan to seek a determination regarding whether Superior or any purchaser could use the Perpetual License and PMAs after the bankruptcy. For example, the Plaintiffs could have objected to Superior's answer to Question 23 on Schedule B regarding licenses and supplemental Schedule B-22, and sought a determination in the Bankruptcy Case regarding whether the Perpetual License and PMAs would survive the bankruptcy. As another example, the Plaintiffs could have objected to Superior's Schedule G regarding executory contracts, and sought clarification early in the Bankruptcy Case regarding whether the Perpetual License and/or PMAs were executory contracts that needed to be scheduled to survive the bankruptcy. Instead, the Plaintiff remained silent and pressed forward with their efforts to purchase the Perpetual License and PMAs through the Section 363 Motion, a position contrary to the position now taken by the Plaintiffs in the State Civil Action.

54. Even after the Section 363 Motion was withdrawn and the six plans of reorganization were proposed, the Plaintiffs could have sought a determination regarding whether the reorganized Superior could continue to use the Perpetual License and PMAs post-confirmation. For example, the Plaintiffs could have objected to each of the plans of

reorganization, including the Third Amended Plan and related disclosure statement, and sought clarification regarding whether the Perpetual License and/or PMAs were executory contracts and, if so, whether such contracts would be assumed or rejected pursuant to 11 U.S.C. § 365 under each plan.  Instead, the Plaintiffs once again remained silent.  If the Plaintiffs had not hidden behind their silence, they would have been required to fairly disclose their contentions, which might have ultimately affected the Brantly Group's contribution and/or the viability of the Third Amended Plan.  Instead, the Plaintiffs cleverly came up with the idea of waiting until post-confirmation to contest the viability of the Perpetual License and PMAs in a State Court naturally less familiar with the intricacies of bankruptcy law or the history of the Plaintiffs' involvement in Superior's bankruptcy case in particular, the Superior APA, the Third Amended Plan and the Confirmation Order, and the implementation thereof.  Such an attempt to avoid the rigid requirements and safeguards of the Bankruptcy Court and Bankruptcy Code is an improper scheme, and the Bankruptcy Court's expertise might more readily allow it to recognize that Plaintiffs cannot seek equitable relief which is at the heart of the Plaintiffs' claims and causes of action; one who has unclean hands is not entitled to relief in equity.

55.     The results of the claims and causes of action in the State Civil Action undeniably can impact the bankruptcy estate, as a recovery would render implementation of the Third Amended Plan and Confirmation Order impractical.  Moreover, the Third Amended Plan and Confirmation Order specifically retained jurisdiction over all claims of the claims and causes of action asserted here.

56.     Not only does the Bankruptcy Court have jurisdiction, it is the proper forum to adjudicate the claims and causes of action asserted in the State Civil Action.  The Bankruptcy Court has extensive experience and familiarity with the underlying events and the claims and

causes of action will involve construction of the Bankruptcy Court's prior orders, which are now under collateral attack by the Plaintiffs. The construction of these orders is most appropriately considered by the Bankruptcy Court, which entered them after hearing the evidence and argument in the Bankruptcy Case.

Respectfully submitted,

/s/ Jerry C. Alexander
Jerry C. Alexander
Texas Bar No. 00993500
James F. Adams
Texas Bar No. 00863450
Christopher A. Robison
Texas Bar No. 24035720
Passman & Jones
1201 Elm Street, Suite 2500
Dallas, TX  75270-2599
Phone:  214-742-2121
Fax:  214-748-7949
COUNSEL FOR SUPERIOR AIR PARTS, INC.

**Certificate of Service**

The undersigned counsel hereby certifies that on March 14, 2012, pursuant to the Federal Rules of Bankruptcy Procedure, the foregoing instrument was served on the parties in interest listed below via prepaid first-class mail, hand-delivery, fax, ECF/PACER, email and/or other electronic means.

/s/ Jerry C. Alexander
Jerry C. Alexander

U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242-1496

Charles H. Smith
Bryan S. David
David Denny
Smith & Moore, L.L.P.
3030 Lincoln Plaza
500 North Akard Street
Dallas, TX 75201-6606
Fax: (214) 740-4242

Stephen A. Roberts
Strasburger & Price, LLP
600 Congress Ave., Suite 1600
Austin, TX 78701
Fax: (512) 499-3660
Email: stephen.roberts@strasburger.com