Jerry C. Alexander
Texas Bar No. 00993500
James F. Adams
Texas Bar No. 00863450
Christopher A. Robison
Texas Bar No. 24035720
Passman & Jones
1201 Elm Street, Suite 2500
Dallas, TX  75270-2599
Phone: (214) 742-2121
Fax: (214) 748-7949
Counsel for Superior Air Parts, Inc.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| SUPERIOR AIR PARTS, INC., | § | CHAPTER 11 |
| | § | CASE NO. 08-36705-BJH-11 |
| DEBTOR. | § | |

## MOTION TO SHOW CAUSE

COMES NOW, Superior Air Parts, Inc. (*"Superior"* or *"Debtor"*), the Debtor, and files this its Motion to Show Cause why Thielert A.G. and Thielert Aircraft Engines GmbH (also known as Centurion Aircraft Engines), and their respective parents, sister and subsidiary companies, and all other companies or persons in their control, and each of them, should not be held in contempt and enjoined for violating the Bankruptcy Court's confirmation order in the above-styled bankruptcy case, and in support thereof would show the following:

### I.    BACKGROUND

1.    Superior is a manufacturer of replacement parts for various reciprocating aircraft engines, including engines originally manufactured by Lycoming Engines, a Division of Avco Corporation ("*Avco*") and Teledyne Technologies Incorporated a/k/a Teledyne Continental Motors ("*TMC*").  Superior also manufactures its own aviation gas powered reciprocating aircraft engines ("*Vantage Engines"* and *"XP-Series Engines*").

2. Superior is one of the largest competitors of Avco and TMC for the sale of replacement parts for reciprocating aircraft engines.

3. The Federal Aviation Administration ("*FAA*") has issued various Parts Manufacturing Approvals ("*PMAs*") to Superior authorizing Superior to manufacture such replacement aircraft parts.  Each PMA was issued by the FAA after a review of an application and supporting data, typically including specifications, designs, test results, drawings and other technical data (collectively "*Data Packs*") for each proposed part.

4. The FAA, Canada and European Union also issued licenses ("*Type Certificates*") to Superior for the manufacture and sale of the Vantage Engines and XP-Series Engines, plus replacement parts for such engines.

5. As permitted by the PMA and Type Certificate issuing authorities, Superior sometimes contracted with suppliers to manufacture or process aircraft engine parts for Superior under the PMAs and Type Certificates issued to Superior.  One such supplier was Thielert Aircraft Engines GmbH ("*TAE*"), which later changed its name to Centurion Aircraft Engines ("*Centurion*"), which was owned by Thielert A.G. ("*TAG*").  Pursuant to such supplier relationship, Superior supplied TAE/Centurion with various Data Packs, blueprints, castings and other documents owned by Superior to allow for the fabrication of parts for Superior, and Superior contracted with TAE/Centurion to conduct additional testing for Superior (collectively "*Superior Intellectual Property*").

6. TAG later purchased Superior's stock, but Superior remained a separate corporation and continued to be organized and operated as a separate company from TAG and TAE/Centurion with different products, customers, suppliers and creditors.  TAE/Centurion produced and held licenses exclusively for diesel-powered reciprocating aircraft engines, while

Superior still produced and held licenses exclusively for aviation gasoline-powered engines. TAE/Centurion continued to manufacture parts for Superior as a supplier.

7. Eventually TAG encountered financial difficulties and attempted to sell Superior's assets to Avco.

8. On or about December 31, 2008, TAG arranged for Superior to file a pre-packaged voluntary Chapter 11 bankruptcy petition [Bankr. Doc. No. 1] in the above-captioned bankruptcy case (the "***Bankruptcy Case***"), with the intention of selling the PMAs, Perpetual License and other assets to Avco pursuant to an asset purchase agreement ("***Superior APA***") signed with Avco and Textron one day before the petition date.

9. As required by the Superior APA, Superior filed its "Debtor's Motion to Sell Substantially All of Debtor's Assets Free and Clear of Liens" [Bankr. Doc. 11] ("***Section 363 Motion***") in the Bankruptcy Case seeking authority to sell most of its assets to Lycoming. The Section 363 Motion was later withdrawn, due in part to antitrust concerns. See, Bank. Doc. No. 146.

10.    Superior changed course with TAG's blessing and filed its "Third Amended Plan of Reorganization" [Bankr. Doc. No. 322] ("***Plan of Reorganization***") on or about July 23, 2009. Among the primary purposes and intent of the Plan of Reorganization and subsequent confirmation order were: (1) to discharge Superior from "any debt that arose prior to the Effective Date" whether or not a proof of claim was filed against Superior; (2) to permanently restrain and enjoin every holder of every claim against Superior from asserting against Superior any "claim … based upon any document, instrument or act, omission, transaction or other activity of any kind or nature whatsoever, whether in law or equity, arising from or related to the Debtor which arose prior to the Effective Date" of the Plan of Reorganization; and (3) to allow

Superior to continue manufacturing replacement parts and its own engines in competition with Lycoming and Avco using the PMAs and Type Certificates issued by the FAA and other aviation authorities, plus supporting documents and data "free and clear of all claims, liens, encumbrances and other interests of holders of claims and interests." The Plan of Reorganization also set forth what assets were to be returned to Superior.

11.   The Plan of Reorganization proposed cancelling all existing ownership interests in the Debtor, continuing the Debtor's existence, reorganizing the Debtor, issuing new ownership interests in the Debtor to Brantly International, Inc. and other entities (collectively the "**Brantly Group**") or their designate, creating a creditors' trust, and making various distributions to creditors. The Plan of Reorganization also provided for the Brantly Group to contribute $7,000,000 to the creditors' trust.

12.   Superior's Plan of Reorganization also provided for "the resumption and continuation of [Superior's] business, including the assembly and sale of piece parts, cylinder assemblies, and Vantage engines." See pages 1 and 2 of Superior's Plan of Reorganization. Superior's "piece parts business" was defined on pages 8 and 9 of Superior's Plan of Reorganization as follows:

> 1. Inventory. All inventories of raw materials, work-in-process, finished goods, demonstration equipment, parts, shipping containers, packaging materials, and other accessories related thereto and other materials that are used or held for use in connection with the manufacture, sale and repair of aircraft engine parts as of the Effective Date of the Plan.
>
> 2. Manufacturing Equipment and Tooling. All machinery, equipment and tooling used or held for use in connection with or necessary for the manufacture and repair of aircraft engines and aircraft engine parts including all manufacturing, production, maintenance, packaging, gauges, testing and other machinery, tooling (including dies, jigs, patterns, molds, prototypes and the like) and equipment, spare or replacement parts, computer equipment incidental to the development, design, manufacture, testing and inspection of parts, engine test cell equipment,

specialized inspection and quality control equipment, and plant equipment and the like.

3. Selected IP Assets. All IP Assets supporting and otherwise underlying all replacement parts for which Seller has obtained from the FAA Parts Manufacturer Approval ("PMA"), including replacement parts for Lycoming and TCM engines as listed on as well as engineering specimens and masters related to such parts; and all electronic as well as paper copies of documents related to the foregoing, including all documentation submitted to and correspondence with the FAA relating to such engines and replacement parts identified above, as well as engineering data, legacy data, inspection processes and the quality manual.

4. Trademarks, Trade Dress and Trade Names and Domains. All Trademarks and Domains, including the "Superior" trade names, trademarks, service names, service marks, logos, brand names, and corporate names, and all applications, registrations, and renewals in connection therewith but excluding trademarks, trade names and trade dress relating to the engines in the Engine Program.

5. Other Tangible Personal Property. All other tangible personal property of [Debtor] that is used or held for use in connection with the manufacture, repair and sale of aircraft engines and aircraft engine parts except Excluded Assets.

6. Accounts Receivable. Trade accounts receivable and all notes, bonds and other evidences of Indebtedness pursuant to which Seller shall have the right to receive payments (in each case, of any nature whatsoever, whether recorded or unrecorded) arising out of sales of products delivered by [Debtor] and any related security arrangements and collateral securing the repayment or other satisfaction thereof, including any rights with respect to any third party collection procedures or any other Claims that have been commenced in connection therewith.

7. Experimental Engines. Those experimental engines currently undergoing testing, as well as prototype, engineering specimens and masters related to such engines, including without limitation, the Model 400 Engine and related prototype(s). All Intellectual Property, know-how, designs, drawings, specifications, data and documentation supporting and otherwise underlying all of [Debtor's] XP-Series Engines.

13. Superior's "Vantage Engine Program" is defined on pages 10 and 11 of

Superior's Plan of Reorganization as follows:

[A]ll documentation from Vantage Engines already shipped or sold to any customer for the purpose of use, test or evaluation, and all intellectual property, components and parts related to the design, development, testing, and FAA approval of the Vantage Engines, FAA Type Certificate No. E00001SC, (and related approvals Transport Canada Type Certificate IE-58, European Aviation

Safety Agency Type Certificate EASA.(IM).E.024, and any other certifications) including but not limited to, drawings, research, all test reports and data, engineering change requests, engineering change notices, build sheets, bill of materials, (including current and historical bill of materials, all assembly and test instructions and all continued airworthiness documentation), parts catalog and supporting data, overhaul manual and supporting data, operator and maintenance manual and supporting data, installation manual and supporting data, service letters and service bulletins (including all quality documentation), all product integrity team meeting minutes and documentation, all warranty claims and/or customer feedback, trademarks and logos, and all marketing material, including market studies, photographs, artwork, brochures, models and fliers, all sales information, customer inquiries and anything else related to the Vantage Engines.

14. Superior's "Vantage Engines" are defined on page 10 of Superior's Plan of Reorganization as including all "SV parts for the Vantage O-360 and IO-360" engines.

15. Superior's Plan of Reorganization also provides that "the property of the Debtor … shall vest in the Reorganized Debtor on the Effective Date free and clear of all claims, liens, charges or other encumbrances and interests." See page 17, § 6.13 of Superior's Plan of Reorganization. Section 6.12 of Superior's Plan of Reorganization further provides that:

> ***all persons***, including but not limited to Corporate Finance Partners, ***TAG***, ***TAE***, Engine Components, Inc., ***Avco Corporation*** and ***Teledyne Technologies Incorporated***, ***and their respective parents, sister and subsidiary companies, and all other companies or persons in their control***, and each of them, shall be ***directed to return to the Reorganized Debtor all documents and other information owned by the Debtor related to the Debtor's business and operations (the "Proprietary Information")***. For the avoidance of doubt, the Reorganized Debtor retains all of the Debtor's rights pursuant to any confidentiality agreement executed in connection with the exchange of such information.

16. Neither TAG, TAE/Centurion, Avco nor TMC timely objected to Superior's Plan of Reorganization and thus waived all objections thereto, and are bound by the terms of the Plan of Reorganization.

17. On August 27, 2009, the Bankruptcy Court entered an order [Bankr. Doc. #404] ("***Confirmation Order***") in the Superior Bankruptcy Case confirming Superior's Plan of Reorganization.

18. Paragraph 36 of the Confirmation Order provides, in relevant part, that "all property of the Estate shall vest in the Reorganized Debtor as of the Effective Date, and the Reorganized Debtor shall take and hold all such assets free and clear of all Claims, Liens, encumbrances and other interests of holder of Claims and Interests."

19. Paragraph 37 of the Confirmation Order reiterates, in relevant part, that "[p]ursuant to §6.12 of the Plan, ***all persons, including but not limited to*** Corporate Finance Partners, ***TAG***, ***TAE***, Engine Components, Inc., ***Avco Corporation*** and ***Teledyne Technologies Incorporated***, and their respective parents, sister and subsidiary companies, and all other companies or persons in their control, and each of them, ***shall be directed to return to the Reorganized Debtor all documents and other information owned by the Debtor related to the Debtor's business and operations (the 'Proprietary Information')***."

20. The Confirmation Order also discharged any debts that Superior might have owed TAG or TAE/Centurion (¶ 35), and enjoined everyone, including TAG and TAE/Centurion, from asserting any claims against Superior or its property which arose prior to the Effective Date (¶ 32 - 35).

21. Neither TAG, TAE/Centurion, Avco nor TMC timely appealed the Confirmation Order which has become final and non-appealable; accordingly, they are bound by the Confirmation Order.

22. Superior's Plan of Reorganization became effective on September 28, 2009. See, Notice of Effective Date [Bankr. Doc. #432].

23. TAE/Centurion continued to fabricate replacement aircraft parts for Avco and TMC engines for Superior, plus parts for Superior's Vantage Engines and XP-Series Engines, pursuant to Superior's PMAs and Type Certificates using Superior's Intellectual Property.

24. Superior ceased purchasing parts from TAE/Centurion for pricing reasons and is expecting to receive the last shipment soon. Accordingly, Superior has requested that TAG and TAE/Centurion (through their administrator Dr. Bruno Kuebler and president Luca Botica) return to Superior all of its property as set forth in the Plan of Reorganization and Confirmation Order, including Superior's Intellectual Property. See, Letter dated April 24, 2013 attached as Exhibit "A".

25. TAG and TAE/Centurion acknowledged receipt Superior's letter and belatedly replied, but have failed to return any such property in contravention of the Plan of Reorganization and Confirmation Order.

26. Superior has learned from counsel for TAG and TAE/Centurion that such entities are "currently engaging in negotiations with a potential investor for the possible transfer of their assets." Counsel for TAG and TAE/Centurion would not confirm whether such assets include any of the items that the Plan of Reorganization and Confirmation Order required TAG and TAE/Centurion to return to Superior, including Superior's Intellectual Property.

WHEREFORE, PREMISES CONSIDERED, Superior requests that the Bankruptcy Court issue an order requiring TAG and TAE/Centurion, and their respective parents, sister and subsidiary companies, and all other companies or persons in their control, and each of them, to appear before the Bankruptcy Court to show cause why they should not be held in contempt and enjoined for failing to comply with Section 6.12 of Superior's Plan of Reorganization and Paragraph 37 of the Confirmation Order by not returning Superior's property as described above,

and impose a constructive trust on such property, and grant Superior such other and further relief to which it may be justly entitled.

        Respectfully submitted,

        /s/ Jerry C. Alexander
        Jerry C. Alexander
        Texas Bar No. 00993500
        James F. Adams
        Texas Bar No. 00863450
        Christopher A. Robison
        Texas Bar No. 24035720
        Passman & Jones
        1201 Elm Street, Suite 2500
        Dallas, TX  75270-2599
        Phone:  214-742-2121
        Fax:  214-748-7949
        COUNSEL FOR SUPERIOR AIR PARTS, INC.

**Certificate of Service**

The undersigned counsel hereby certifies that on July 11, 2013, pursuant to the Federal Rules of Bankruptcy Procedure, the foregoing instrument was served on the parties in interest listed below via prepaid first-class mail, hand-delivery, fax, ECF/PACER, email and/or other electronic means.

/s/ Jerry C. Alexander
Jerry C. Alexander

| | |
|---|---|
| U.S. Trustee<br>1100 Commerce Street, Room 976<br>Dallas, TX 75242-1496 | Dr. Bruno Kuebler<br>Ehrenhainstrasse 1<br>42329 Wuppertal, Germany<br>Email: Bruno.m.kuebler@kueblerlaw.com |
| Daniel P. Winikka<br>Craig Simon<br>Simon, Ray & Winikka LLP<br>2525 McKinnon Street, Suite 540<br>Dallas, TX 75201<br>Fax: (469) 759-1699 | Luca Botica<br>President<br>Centurion Aircraft Engines<br>Platanenstr. 14<br>09356 St. Egidien (Liehtenstein), Germany<br>Email: luca.botica@kueblerlaw.com |