Craig F. Simon
Texas Bar No. 00784968
Daniel P. Winikka
Texas Bar No. 00794873
SIMON, RAY & WINIKKA LLP
2525 McKinnon Street, Suite 540
Dallas, TX 75201
Phone: (214) 871-2292
Facsimile:  (469) 759-1699
Counsel for Dr. Kübler, in his capacity as Insolvency
Administrator of Thielert Aircraft Engines GmbH

## IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SUPERIOR AIR PARTS, INC. | Case No. 08-36705-BJH-11 |
| Debtor. | |

## PRELIMINARY RESPONSE OF INSOLVENCY
## ADMINISTRATOR TO MOTION TO ENFORCE

Subject to and without waiving his Motion to Compel Arbitration,[1] Dr. Bruno Kübler, in his capacity as Insolvency Administrator (the "Insolvency Administrator") of Thielert Aircraft Engines GmbH ("TAE"),[2] files this preliminary response to Superior Air Parts, Inc.'s Motion to Enforce [D.I. 684] and, in support hereof, respectfully represents as follows.

---

[1] Contemporaneously with the filing of this preliminary response, the Insolvency Administrator is filing a Motion to Compel Arbitration and Dismiss Without Prejudice or Stay Proceedings on the Motion to Enforce (the "Motion to Compel Arbitration").

[2] Under the German Insolvency Code, TAE can act only through its insolvency administrator, Dr. Bruno Kübler.

## I.     PRELIMINARY STATEMENT

1.      Superior Air Parts, Inc. ("Superior") alleges that TAE, a former affiliate of Superior that itself has been through insolvency proceedings in Germany, is in possession of certain categories of documents, information and parts that belong to Superior (the "Materials"). Superior's plan of reorganization was confirmed on August 29, 2009 – nearly four years before Superior requested that TAE return those Materials.  According to Superior, the parties continued to do business during those four years pursuant to a Supplier Agreement the parties entered into in December 2001 and subsequently amended in 2005.  It is that Supplier Agreement that Superior contends establishes its ownership of the Materials.

2.      During the nearly four years after the order confirming Superior's plan of reorganization (the "Confirmation Order") was entered, TAE and Superior continued to do business together without any assertion by Superior that TAE was in violation of, or obligated to return property to Superior pursuant to, the Confirmation Order. Notwithstanding Superior's recognition that those dealings continued for years after the entry of the Confirmation Order, and that during that time Superior did not ask for or desire for TAE to return any information to it, Superior now alleges that TAE is obligated to return property pursuant to the 2009 Confirmation Order.

3.      The issue between the Insolvency Administrator and Superior is not an issue of failing to comply with a 2009 order; instead, it is an issue of determining what, if any, property Superior owns that is in TAE's possession. The Insolvency Administrator will return to Superior any property in his control that Superior owns.  For several reasons as explained herein, however, the Insolvency Administrator does not have sufficient information at this point to make an appropriate determination of what, if any, property in his control Superior owns.   To that end, the Insolvency Administrator has served initial discovery requests on Superior.  In addition, the Insolvency Administrator recently sold substantially all of TAE's assets.  However, because shortly before the sale closed Superior requested a return of the Materials, the Insolvency Administrator specifically directed that any property that Superior could conceivably own be

segregated and carved out from the asset sale. Those materials (the "Segregated Property") have
been safeguarded by the Insolvency Administrator and will not be transferred or disposed of until
the dispute with Superior has been resolved.

4.     Superior's motion completely ignores and fails to mention that on October 30,
2013 – before Superior filed its motion – the Insolvency Administrator made an arbitration
demand on Superior concerning Superior's demand for the Materials. The arbitration demand is
pursuant to the terms of the Supplier Agreement, which requires that disputes between the parties
be resolved through binding arbitration. In the demand, the Insolvency Administrator has
requested that Superior identify the property it believes it owns and that is in TAE's possession
and, to the extent necessary the Insolvency Administrator also seeks a declaratory judgment that
all or a portion of the Segregated Property is not owned by Superior. As explained in the Motion
to Compel Arbitration, the Court should either dismiss the Motion to Enforce without prejudice
or stay the proceedings on the Motion to Enforce pending conclusion of the arbitration. If,
however, the Motion to Compel Arbitration is denied and this Court adjudicates the issues over
ownership of the Segregated Property, the Insolvency Administrator reserves all rights to
supplement this response following the completion of discovery.

## II.     BACKGROUND FACTS

5.     On December 15, 2001, TAE and Superior entered into a Supplier Agreement (as
subsequently amended in 2005, the "Supplier Agreement"), a copy of which is attached hereto as
Exhibit A, pursuant to which TAE agreed to manufacture and sell certain aircraft parts to
Superior. The Supplier Agreement provided that Superior would "deliver to TAE all drawings
and the related data and information that TAE may request and which is reasonably required for
the intended use of the drawings" and that Superior "shall retain title to all Superior furnished
drawings, related data (whether or not maintained or stored on computer) and information
supplied to TAE under this Agreement." Supplier Agreement §§ 3.01, 3.02. The Supplier
Agreement also provided, among other things, that any disputes "related to" the agreement
would be submitted to arbitration:

-3-

> 10.05 <u>Arbitration</u>. TAE agrees that any dispute related to this
> Agreement, including the arbitrability of this Agreement shall, on
> the written request of the other party, be submitted to arbitration
> under the rules as Superior and TAE shall agree. If no agreement
> can be reached, such arbitration shall be governed by the
> Commercial Arbitration Rules of the American Arbitration
> Association.

(Supplier Agreement at ¶ 10.05) (the "Arbitration Provision"). At the time the Supplier

Agreement was entered into, TAE was a wholly owned subsidiary of Thielert A.G. ("TAG"), a

German company founded by Frank Thielert. In 2006, TAG acquired Superior, which thus

became a sister company of TAE, both wholly owned by TAG.

     6.     In April 2008, both TAG and TAE were placed into insolvency proceedings in

Germany. Dr. Kübler was appointed as the Insolvency Administrator over TAE. A separate

insolvency administrator was appointed over TAG.

     7.     On or about December 31, 2008, Superior commenced the above-captioned

bankruptcy case by filing a voluntary chapter 11 petition. Superior filed its Third Amended Plan

of Reorganization (the "Plan") on July 23, 2009 [D.I. 322], and the Court entered the

Confirmation Order confirming the Plan on August 27, 2009 [D.I. 404]. The Plan went effective

and Superior emerged from chapter 11 on September 28, 2009 (the "Effective Date") [D.I. 432].

The Confirmation Order provided that certain parties, including TAG, TAE and others, "shall be

directed" to return to reorganized Superior "all documents and other information owned by the

Debtor related to the Debtor's business and operations." Confirmation Order ¶ 37.

     8.     On August 20, 2010, the Trustee of the Superior Creditor's Trust filed an

Application for Final Decree [D.I. 650], asserting that the case had been fully administered and

the final distributions to creditors had been made. Accordingly, the Court entered an order

closing the above-captioned bankruptcy case on October 8, 2010. The Court entered an order

reopening the bankruptcy case on May 23, 2012 [D.I. 670] to hear an adversary proceeding that

involved several bankruptcy issues, including whether certain third party claims against Superior

were barred by the Plan and the Confirmation Order.

9.      TAE continued manufacturing and selling aircraft parts to Superior throughout the
course of Superior's bankruptcy case and up through the second quarter of 2013. On April 24,
2013, nearly four years after the Confirmation Order was entered, Superior sent the Insolvency
Administrator a letter alleging, for the first time, that TAE, TAG and an affiliated entity had
failed to comply with the Confirmation Order. The April 24, 2013 letter cited several provisions
of Superior's Plan and Confirmation Order generally describing Superior's piece parts business
and Vantage engine program and demanded that TAE immediately return Superior's property,
which Superior stated included a list of parts attached to the April 24, 2013 letter. A copy of the
April 24, 2013 letter is attached hereto as Exhibit B and incorporated herein by reference.

10.     The Insolvency Administrator was unaware that TAE was in possession of any
property belonging to Superior and, to the extent TAE may be in possession of Superior
property, was uncertain how to determine what property actually belonged to Superior given that
Superior had provided nothing more than a list of part numbers and a general description of those
parts. The Insolvency Administrator, through his counsel, responded to Superior's letter on
June 3, 2013, requesting that Superior specifically identify the documents and information that
Superior had furnished to TAE, provide serial numbers or similar information for any parts or
other property and some proof of Superior's ownership to any property Superior believed was in
TAE's possession. The June 3, 2013 letter also informed Superior of the ongoing negotiations
for the potential sale of TAE's assets and therefore that it would be prudent for Superior to
provide additional information relating to its request relatively quickly. A copy of the June 3,
2013 letter is attached hereto as Exhibit C and incorporated herein by reference.

11.     Five weeks later, on July 9, 2013, Superior sent a further letter to counsel for the
Insolvency Administrator, repeating the general descriptions of Superior's business contained in
the Plan and alleging that the property in question consists of "[a]ny technical specifications,
blueprints, drawings, test data, work instructions, PMAs or materials relating to" Superior part
numbers. A copy of the July 9, 2013 letter is attached hereto as Exhibit D and incorporated
herein by reference. In an apparent attempt to interfere with the potential sale transaction, the

-5-

July 9, 2103 letter indicated that Superior had sent a copy of the letter to the potential purchaser with whom the Insolvency Administrator was in the midst of negotiations.

12.     The July 9, 2013 letter contained no additional information that would assist the Insolvency Administrator in determining what, if any, Superior property may be in his possession. Thus, counsel for the Insolvency Administrator initiated a follow-up telephone call with Superior and Superior's counsel on July 11, 2013 to try to better understand Superior's position and how the parties might address the issues. On that call, Mr. Abercrombie with Superior indicated that information was provided to TAE over the period of many years and that there was a governing agreement that was entered into before Superior became a Thielert affiliate. Counsel for the Insolvency Administrator asked for a copy of that agreement and inquired whether Superior could provide a detailed inventory of the specific information furnished to TAE. Mr. Abercrombie indicated that Superior could create an inventory listing but that it would require some time and effort. Later that same day, Superior filed a Motion to Show Cause (the "Show Cause Motion") [D.I. 673], asking the Court to enter an order requiring the Insolvency Administrator to show cause why TAE should not be held in contempt and enjoined for allegedly violating the terms of the Confirmation Order four years after it was entered by failing to turn over the property allegedly belonging to Superior.

13.     Given that the Insolvency Administrator did not have an adequate basis yet to properly determine what, if any, information in his possession properly belongs to Superior, out of an abundance of caution and to ensure that he did not transfer to the potential buyer any property that Superior might conceivably own, the Insolvency Administrator segregated all documents, information and other property that related in any way to the general descriptions and part numbers Superior had provided. The Segregated Property was withheld from the subsequent sale and remains segregated at this time.

14.     On July 18, 2013, Superior sent an additional letter to counsel for the Insolvency Administrator attaching a copy of the Supplier Agreement and a sample purchase order and explaining that the Supplier Agreement contemplated that proprietary information would be

provided to TAE and that Superior would retain title to any such proprietary information. A copy of the July 18, 2013 letter is attached hereto as Exhibit E and incorporated herein by reference. With respect to the Insolvency Administrator's request for a specific listing of the proprietary information furnished to TAE, Superior indicated that it was not seeking "any data related to diesel powered aircraft engines . . . or machinery" and once again merely reiterated general categories information, stating that the property includes "drawings, specifications, and engineering, manufacturing, inspection and test data" and other categories for all Superior "AVGas Engines" and Superior parts. This information, however, was wholly inadequate to enable the Insolvency Administrator to carry out his duties to ensure he both returns any property over which Superior has rightful ownership but also does not transfer to Superior any property over which the TAE has rightful ownership given the substantial time period involved and the facts that (a) the parties operated under common control for a substantial period of time; (b) TAE had developed a substantial amount of its own drawings, technical specifications, test data, reports and other information; and (c) employees with historical knowledge of what may have been provided by Superior and under what agreements or circumstances were no longer available to assist.

15.     To provide time for the parties to investigate and discuss an amicable resolution of the ownership dispute, Superior, the Insolvency Administrator and Centurion entered into a Tolling Agreement, providing, among other things, that Superior would not seek to have the Motion to Show Cause heard until sometime after September 30, 2013.

16.     During the pendency of the Tolling Agreement, Superior provided no additional information to the Insolvency Administrator, and the parties had no further discussions. Because it appeared that formal discovery and litigation may be necessary to resolve the issue between the parties, pursuant to the terms of the Supplier Agreement, the Insolvency Administrator sent Superior a Demand for Arbitration (the "Arbitration Demand") on October 30, 2013. Through the Arbitration Demand, the Insolvency Administrator seeks (1) to require Superior to (a) identify the specific documents and information that were provided to TAE and (b) provide other

-7-

information that may be required for the Insolvency Administrator to determine what, if any, property under his control might be owned by Superior and (2) to the extent necessary, a declaratory judgment that some or all of the Segregated Property is not owned by Superior. A copy of the Arbitration Demand is attached hereto as Exhibit F and is incorporated herein by reference.

17.     To date, Superior has not responded in any fashion to the Arbitration Demand. On November 14, 2013 this Court entered an order [D.I. 682] denying the Motion to Show Cause for want of prosecution without prejudice. The next day, on November 15, 2013, Superior filed the Motion to Enforce [D.I. 684] (the "Motion to Enforce"), asking the Court to enter another order effectively containing the same terms as the Confirmation Order (to the extent that order required the immediate return of Superior's property) and directing the Insolvency Administrator to return all property belonging to Superior. The Motion to Enforce, which failed to even mention the Arbitration Demand, was subsequently set for hearing on December 20, 2013.

18.     Counsel for the Insolvency Administrator subsequently contacted counsel for Superior to (a) inform counsel that the Insolvency Administrator intended to file a motion to compel arbitration and (b) attempt to reach an agreement on a schedule for the Motion to Enforce and the motion to compel arbitration. Counsel for the Insolvency Administrator also informed counsel for Superior that the Insolvency Administrator intended to seek discovery and that the Insolvency Administrator's witnesses from Germany are not able to travel from Germany to attend a hearing on December 20 even if the discovery could be completed sufficiently in advance of that hearing. Accordingly, counsel for the Insolvency Administrator suggested that the parties identify a future date for an evidentiary hearing on the Motion to Enforce that would work for all parties and, if acceptable to the Court, use the December 20 hearing to address the Insolvency Administrator's motion to compel arbitration.

19.     On December 3, 2013, the parties obtained some additional available dates from the Court for an evidentiary hearing on the Motion to Enforce if the Court denies the motion to

compel arbitration.  Counsel for Superior indicated that he was available on at least certain of those potential dates, including January 20 and 21.  Counsel for the Insolvency Administrator subsequently verified that necessary witnesses in Germany could be available on those dates as well, and on December 4, 2013, requested that Superior agree to schedule the evidentiary hearing on the Motion to Enforce for one of those two dates.  Although there was no agreement yet on a schedule, in the interest of time, counsel for the Insolvency Administrator also served discovery requests on counsel for Superior on December 4, 2013.  Despite more than one request for a response, to date counsel for Superior has not responded to the requests for an agreement on a future date for the evidentiary hearing on the Motion to Enforce.

  20. The Insolvency Administrator has a duty under applicable German insolvency law, and recognizes that he is likewise obligated under other applicable law, to return any of the Segregated Property that Superior owns.  The sole issue is the need to determine what, if any, of the Segregated Property Superior owns.  That issue has nothing to do with Superior's reorganization, which concluded years ago, and depends solely upon the application of non-bankruptcy law to the facts as determined by the trier of fact after discovery.

## III. ARGUMENT AND AUTHORITIES

### A. The Dispute is Properly Pending in Arbitration

  21. TAE has itself been the subject of insolvency proceedings in Germany since 2008.  The Insolvency Administrator has sold all of TAE's assets (other than the Segregated Property), and TAE has no employees with any meaningful knowledge of the pre-insolvency business relationships between Superior and TAE.  Simply stated, the Insolvency Administrator does not have the ability to determine with any level of certainty what, if any, property TAE possesses that belongs to Superior.  Dr. Kübler, as the court-appointed insolvency administrator, must ensure for the benefit of TAE's creditors that he (i) complies with any legal obligation to return property to Superior, and (ii) properly retains and, to the extent feasible, obtains value for all of TAE's assets.  These are duties that the Insolvency Administrator takes very seriously given that he may have personal liability to third parties under section 60 of the German

Insolvency Code if he violates his duties to "conduct himself with the care of a proper and diligent liquidator."

22.    The Insolvency Administrator does not currently dispute that whatever property Superior actually owned on the date of confirmation re-vested in reorganized Superior or that he is obligated, whether pursuant to the Confirmation Order, the Supplier Agreement or otherwise, to return Superior's property to Superior. The issue is determining what property Superior in fact owns. That determination requires the Insolvency Administrator to gain a more complete understanding of the parties' relationship, obtain any agreements that may bear on that relationship and Superior's ownership claims, identify exactly what Superior may have furnished to TAE and otherwise better understand the facts and circumstances related to Superior's claims that TAE is in possession of Superior's property.

23.    Because of the uncertainties surrounding Superior's demands and Superior's unwillingness to provide a listing of the specific property it contends it provided to TAE that it now seeks to have returned, the Insolvency Administrator served Superior with the Arbitration Demand on October 30, 2013. To date, Superior has not responded to the Arbitration Demand, and indeed is in violation of the Supplier Agreement by virtue of its seeming unwillingness to arbitrate the parties' dispute.

24.    For the reasons set forth in the Insolvency Administrator's Motion to Compel Arbitration being filed contemporaneously herewith, the Insolvency Administrator requests that this Court require Superior to honor its contractual obligation to arbitrate the parties' dispute and, accordingly, either deny the Motion to Enforce without prejudice or stay proceedings on the Motion to Enforce until the arbitration proceedings have concluded.

**B.    Superior Has Failed to Prove that TAE or the Insolvency Administrator is in Possession of Superior's Property**

25.    Through its Motion to Enforce, Superior seeks an order requiring TAE and others "to comply with Section 6.12 of Superior's Plan of Reorganization and Paragraph 37 of the Confirmation Order by immediately returning Superior's property…" Motion at 9. To be

entitled to this relief, Superior must, at a minimum, establish that (i) TAE is in possession of "Superior's property", and (ii) such property was (and remains) required to be returned pursuant to the Plan and Confirmation Order.

26.    To date, Superior has merely alleged, without proof, that it provided certain broad categories of property to TAE and that Superior retains ownership rights to such property. In addition, while Superior has demanded that TAE deliver to it *all* information related to certain parts, the Supply Agreement only provides that TAE would return "drawings, data and information *supplied by Superior*" upon termination of the Supplier Agreement. Supplier Agreement § 3.02. Superior has not only failed to identify the information it supplied to TAE, but also has failed to articulate any basis for its demand that TAE provide Superior with information other than that which Superior supplied to TAE. At this point, without the benefit of discovery the entry of an order granting the Motion to Enforce leaves the Insolvency Administrator with the same dilemma of being unable to determine what, if any, of the Segregated Property should be returned.

27.    In all likelihood, a substantial portion of the Segregated Property and the broad categories of information demanded by Superior include property that Superior did not furnish to TAE or that Superior does not otherwise own. The information currently available to the Insolvency Administrator, however, has not enabled the Insolvency Administrator to carry out his duties to ensure he both returns any property over which Superior has rightful ownership but also does not transfer to Superior any property over which the TAE has rightful ownership. This determination is complex given (a) the substantial time period involved; (b) TAG's common control over both parties for a couple of years; (c) TAE's development of a substantial amount of its own drawings, technical specifications, test data, reports and other information; and (d) the lack of access to employees with historical knowledge of what Superior may have provided and under what agreements or circumstances. For this reason, the Insolvency Administrator served initial discovery requests on Superior to obtain additional facts and information to assist the Insolvency Administrator in assessing what, if any, of the Segregated Property is rightfully

-11-

Superior's property. The Insolvency Administrator reserves all rights to supplement this preliminary response following the conclusion of discovery.

## IV.    CONCLUSION

The Insolvency Administrator respectfully requests that the Court dismiss the Motion to Enforce without prejudice in light of the pending arbitration. If the Court hears the Motion to Enforce on its merits, the Insolvency Administrator requests that such motion be denied and that the Insolvency Administrator be awarded any additional relief to which he may be entitled.

Dated:  December 9, 2013

Respectfully submitted,

/s/ Craig F. Simon
Craig F. Simon, Esq.
State Bar No. 00784968
Daniel P. Winikka, Esq.
State Bar No. 00794873
SIMON, RAY & WINIKKA LLP
2525 McKinnon Street, Suite 540
Dallas, TX  75201
Telephone:  (214) 871-2292
Facsimile:  (469) 759-1699

*Counsel for Dr. Bruno Kübler, in his*
*Capacity as Insolvency Administrator of*
*Thielert Aircraft Engines GmbH*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of December 2013, a true and correct copy of the foregoing document has been served on the parties listed below via the Court's ECF filing system, first class mail or other appropriate means.

*/s/ Craig F. Simon*
Craig F. Simon

U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242-1496

Jerry Alexander
James Adams
Christopher Robison
PASSMAN & JONES
1201 Elm Street, Suite 2500
Dallas, TX 75270