Passman
& Jones

A Professional Corporation

ATTORNEYS AT LAW
2500 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2599
www.passmanjones.com

James F. Adams
214-742-2121 Ext 3503
jimadams@passmanjones.com
Fax: 214-748-7949

July 18, 2013

Craig F. Simon, Esq.                    Via e-mail to csimon@srwlawfirm.com
Simon, Ray & Winikka, LLP
2525 McKinnon Street, Suite 540
Dallas, TX 75201

Re:    In re Superior Air Parts, Inc., Bankruptcy Case No. 08-36705-bjh-11; U.S. Bankruptcy
       Court, Northern District of Texas, Dallas Division.

Dear Mr. Simon:

I am in receipt of your letter dated July 18, 2013 written on behalf of your client Dr. Bruno Kübler
("**Dr. Kübler**"). From the perspective of my client Superior Air Parts, Inc. ("**Superior**"), your letter
contains several potentially relevant misstatements and omissions that I would like to clarify before
responding to your requests.

First, your letter states that you represent Dr. Kübler "in his capacity as insolvency administrator
of Thielert Aircraft Engines GmbH ("**TAE**") and Centurion Aircraft Engines AG & Co. KG ("**Centurion**")",
but fail to state whether your firm represents either TAE or Centurion. Your firm has requested
information regarding Thilert AG ("**TAG**"), but your firm's correspondence fails to state whether it
represents TAG. You also fail to identify whether Dr. Kübler has any authority to act on behalf of TAG,
TAE and Centurion, and the source, if any, of such authority. As you are probably aware, Superior was
not a party to the German insolvency proceedings and was not serviced with the pleadings in such
proceedings. Knowing who you represent and which entities on whose behalf Dr. Kübler is authorized
to act would allow Superior to evaluate your requests.

Second, as was explained to you in the July 11, 2013 telephone conference, Superior and TAE
had an ongoing business relationship prior to TAG's acquisition of Superior's stock. Such business
relationship included TAE manufacturing and testing of aviation gasoline powered aircraft engines
("**AVGas Engines**") and parts for Superior pursuant to Superior's Parts Manufacturing Authorities
("**PMAs**"), Type Certificates, and other licenses and permits issued to Superior. Such business
relationship continued throughout Superior's bankruptcy and the ensuing years. Indeed, as was
explained, only recently has that business relationship wound up with the last shipment from TAE to
Superior currently in transit. So your complaint that Superior "waited almost four years" before
requesting the return of Superior's intellectual property ("**Superior IP**") is misleading at best.

Third, in Kent Abercrombie's letter dated April 24, 2013, he provided a detailed description of
Superior's successful bankruptcy reorganization, the participation of Dr. Kübler, Ms. Botica, TAG, TAE
and Centurion in Superior's Bankruptcy Case, Superior's Plan of Reorganization, and Judge Houser's
Confirmation Order. Mr. Abercrombie's letter also contained a description of Superior's IP and an
attachment listing the specific numbers relating to the parts in question. Such information was sufficient
to allow TAE, Centurion and TAG to respond immediately; however, no response was received until Mr.

Craig F. Simon
July 18, 2013
Page 2

Winikka's June 3, 2013 letter approximately 40 days later. Mr. Winikka's letter offered no explanation for the long delay or the reason for the additional information requested. Indeed, Mr. Winikka's June 3, 2013 letter appeared to be a thinly veiled stalling tactic. Nonetheless, Mr. Abercrombie supplied additional information in his July 9, 2013 letter.

Fourth, while Mr. Winikka's June 3, 2013 letter made a somewhat cryptic reference to a possible sale, the letter failed to identify the potential purchaser, items being sold or anticipated sale date. Moreover, during both the July 11, 2013 and July 16, 2013 telephone conferences, you likewise refused to provide such information. To date, Superior has not received such information in response to our requests.

Fifth, during both the July 11, 2013 and July 16, 2013 telephone conferences I explained that all PMAs, Type Certificates, drawings, specifications, and engineering, manufacturing, inspection, and test data in the possession of TAE, Centurion or TAG relating to the AVGas Engines is owned by Superior and is the subject of the Plan of Reorganization, Confirmation Order and Superior's April 24, 2013 letter. We also made it clear that Superior was not seeking any data related to diesel powered aircraft engines ("***Diesel Engines***") or machinery. We also made it clear that TAE, Centurion and TAG already have sufficient information to return Superior's IP, so your dilatory request appeared pointless.

Sixth, during the July 11, 2013 telephone conference, I asked whether Superior should immediately seek relief from Judge Houser to enforce the Plan of Reorganization and Confirmation Order, and you said to do whatever I felt necessary to protect Superior's rights. Accordingly, to claim any surprise by the contempt motion is a bit misleading.

Seventh, during our July 16, 2013 telephone conference, I explained to you that I would be in deposition on July 17, 2013 and preparing the balance of the preceding day, so would be unable to get back to you with any additional information until today July 18, 2013.

Regarding your request for an even more detailed description of Superior's IP, please consider the following:

For all Superior AVGas Engines (including the Vantage and XP series engines), and the parts listed in the attachment, and any other Superior parts not listed but in the possession of TAE, Centurion or TAG, Superior seeks all PMAs, Type Certificates, drawings, specifications, and engineering, manufacturing, inspection, and test data (whether in hard copy or electronic file format), including but not limited to:

1.    design data/criteria, reports, forms, spreadsheets, notes, CAD and 3D Models;

2.    manufacturing and process control data/criteria, reports, spreadsheets, forms, notes, and records;

3.    inspection data/criteria, forms, spreadsheets, reports, notes, and records including First Article layouts;

4.    testing and performance data/criteria, forms, spreadsheets, reports, notes, and records; and

5.    all photographs, drawings and sketches.

Craig F. Simon
July 18, 2013
Page 3

Regarding your request for a contract between Superior and TAE that discusses Superior's IP rights, attached is a Supplier Agreement dated December 15, 2001, together with an October 2005 amendment. Please note that Section 3.01 of the Supplier Agreement anticipates that Superior's IP will be delivered to TAE for use in production of items for Superior. Section 3.02 provides that (1) Superior shall retain title to all Superior IP supplied to TAE, (2) TAE will maintain the confidentiality of Superior's IP, and (3) TAE will return Superior's IP to Superior. Section 3.03 provides that Superior's IP shall only be used by TAE to perform its obligations to Superior. Section 3.04 provides that TAE shall be responsible for any loss or destruction of Superior's IP.

Also attached is purchase order number 108508 from Superior to Centurion, which I understand is representative of the numerous purchase orders ("POs") issued by Superior first to TAE and later Centurion. Please note in paragraphs 17 and 18 of the "Conditions" section on the second page, the POs are generally conditioned on the vendor (i.e., TAE or Centurion) maintaining the confidentiality of and not copying Superior's IP supplied to aid in the manufacture of any parts. The second sentence of paragraph 18 specifically provides that title to Superior's IP shall remain with Superior, and such IP "shall be returned *forthwith* at [Superior's] request."

As I explained during our July 16, 2013 telephone conference, while Superior is generally receptive to your request to postpone scheduling a hearing on the pending contempt motion to allow more time to discuss resolution, Superior is unwilling to withdraw the motion at this time. To avoid any argument that Superior somehow is barred from seeking relief by agreeing to your request to postpone the hearing until after the fourth anniversary of the Confirmation Order or otherwise, we have prepared the attached Tolling Agreement for your consideration. Please let me know as soon as possible whether, and in what capacity, your client(s) are willing to execute the proposed Tolling Agreement.

Sincerely yours,

James F. Adams

Attachments

351288

PURCHASE ORDER

Order number **108508**

**Superior Air Parts**
**621 South Royal Lane**
**Suite 100**
**Coppell TX 75019-3805**

| Supplier | Order date | Print date |
|---|---|---|
| 113041 | 02/11/12 | 2/14/12 |

| Delivery address | Order address |
|---|---|
| Superior Air Parts Inc.<br>621 South Royal Lane<br>Suite 100<br>Coppell TX 75019-3805 | CENTURION AIRCRAFT ENGINES<br>PLATANENSTRASSE<br>D-09350<br>LICHTENSTEIN, GERMANY |

| Buyer | To: |
|---|---|
| Jeff Lochridge | ANDREA BECHER |

| Terms of payment | Internal Authorization |
|---|---|
| Cash in Advance | Jeffry Lochridge |

Manner of transport    JAS FORWARDING WORLDWIDE

*** FOR USE ON EXPERIMENTAL ENGINES AND COMPONENTS ONLY ***
****** QAM 003 DOES NOT APPLY TO THIS PURCHASE ORDER ******

| Product | Quantity | Del.date | Price | Discount | Prev. |
|---|---|---|---|---|---|
| SX36800-R1 | | CRNKCSE ASSY WD/#1 MNT, ROLLER | | | |
| Rev A | 40    EA | 06/11/12 | 1470.000 | | Y |

DO NOT MARK "FAA-PMA"

Line value:    58800.00    USD

Order total:    58800.00    USD

** All Suppliers must comply with QAM003 Superior's Quality Requirements Manual **

Acknowledgement:    Sign and return by FAX to
                    1-866-743-3558

Signature _____    Date _____

# CONDITIONS

1. ACCEPTANCE BY SELLER. The acceptance of this order by Seller shall bind Seller to all the terms and conditions hereof.

2. ACKNOWLEDGEMENT. This order shall not be effective for any purpose nor shall Buyer be obligated to pay moneys called for hereunder unless and until Seller shall have signed and returned written acknowledgement and acceptance provided on opposite side hereof.

3. UNIT PRICES. Prices indicated herein are maximum but are to be adjusted downward to the lowest prices in effect on date of shipment if Seller's prices decline.

4. PACKING. All articles shall be suitably packed or otherwise prepared for shipment to prevent damage in transit, to assure the lowest transportation and insurance rates, and to meet carrier's requirements.

5. SUBSTITUTIONS. If Seller is unable to furnish any item on this order, in quantity, size or otherwise, exactly as specified and described, immediate advice to this effect must be sent to the Buyer (by return airmail where this will expedite delivery), indicating the best available substitute, with full description, statement as to interchangeability, and delivery time. Shipment of substitutes offered by the Seller and found to be acceptable by the Buyer, will be authorized through issuance of a SUPPLEMENT to this order. Unauthorized substitutions will be subject to refusal and to return at the Seller's expense.

6. INSPECTION. All items shall be subject to final inspection and approval following receipt thereof by the Buyer. Such inspection shall be made within a reasonable time after receipt, irrespective of the date of payment, and any items which are not at the time of inspection fully satisfactory to the Buyer may be rejected by the Buyer by notice to the Seller. The Buyer may hold any rejected articles for the instruction, and at the risk of the Seller or may return such items to the Seller at the Seller's expense. After such notice of rejection, title to and risk of loss of the items rejected shall be in the Seller. Buyer reserves the right to charge the Seller's account the cost of inspection material which does not conform to the specifications of this order. All conditions herein shall be construed as warranties and all warranties as conditions; and all agreements, representations, warranties and conditions shall survive acceptance of delivery of the items covered hereby.

7. RISK PRIOR TO DELIVERY. The articles ordered hereby shall remain at Seller's risk until delivered to the Buyer at the place of delivery designated by this order, but after notice of rejection of articles, such rejected articles shall be at Seller's risk. When final inspection is at place of origin, but delivery by Seller is at another place, Seller's risk shall continue until articles are delivered.

8. CLAIMS. The Seller shall indemnify and save harmless the Buyer, its officers, agents, employees, successors, assigns and lessees from all claims, proceedings, suits and action based upon, and all liabilities, damages, expenses and costs suffered or incurred by any of them by reason of, any illegal infringement or violation of any one or more patents or applications therefor or rights, arising out of the purchase, ownership, use or disposal of any item purchased hereunder.

9. CANCELLATION. If the Seller refuses or fails to make deliveries of the articles within the time specified in this order or any extension thereof. Buyer may terminate the right of Seller to deliver the articles, except when delay of Seller in delivering articles is due to unforeseeable causes beyond the control and without the fault or negligence of Seller, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, but not including delays caused by subcontractor or suppliers, provided that the Seller, within ten (10) days from the beginning of such delay, notify Buyer in writing of the cause of delay. In the event party voluntary or involuntary, in bankruptcy, or insolvency, or under provisions of the United States Bankruptcy Act, or the appointment of a receiver or trustee or an assignee for the benefit of creditors of either party, the other party shall be entitled to cancel this contract with written notice.

10. ASSIGNMENT. This contract shall not be assigned by the Seller.

11. DISCOUNT PAYMENTS. Discount and payment periods will start from the date of the receipt by the Buyer. Buyer may pay Seller's invoice before delivery and complete inspection or test of the articles, and thereby avail itself of the cash discounts, but by such payments Buyer does not waive its right to reject the articles any may charge the account of Seller for any loss, shortage, defect, delay or other default.

12. MODIFICATION IN WRITING. Neither this Purchase Order nor any provision hereof may be amended or modified orally, but only by an instrument of writing by the party against which enforcement of the amendment of modification is sought.

13. CONFIDENTIAL. The Seller shall not disclose any details connected with the order to any third party except as herein specified without first obtaining the written consent of the Buyer.

14. This order shall insure to the benefit of and be binding upon the successors or assigns of the Seller, hereinafter referred to as the "Vendor", and of the Purchaser respectively.

15. Where the Purchaser supplies any constituent materials to complete this order, all covering packing and shipping documents, signed by a reasonable representative of the Vendor, must certify that the parts have been manufactured from properly identified and classified materials supplied by the Purchaser.

16. The Purchaser may at any time, by giving due notice to the Vendor, terminate, modify, or reduce this order. Upon such notice being given, the Vendor shall cease work, including the manufacturing and/or procuring of materials for the fulfillment of this order.

17. All tools, jugs, dies, patterns, gauges, equipment, material specifications, drawings, etc., loaned or supplied by the Purchaser to the Vendor for incorporation into or to aid in the manufacture of the parts covered by this order, are to be preserved in good condition and the Vendor shall be liable for any damage to the aforementioned Purchaser loaned items.

18. The Vendor is responsible for the security of the aforementioned Purchaser loaned items, loaned or issued for the execution of this order, and is to regard as confidential all technical data such as drawings, specifications loaned or issued for the execution of this order and must not copy or reproduce or allow to be copied or reproduced any information contained therein, without the written consent of the Purchaser. Title to all tools, jigs, dies, patterns, gauges, equipment, material specifications, drawings, etc., loaned or supplied by the Vendor shall remain vested in the Purchaser and shall be returned forthwith at the Purchaser's request, or disposed of according to instructions.

19. The Vendor shall not have any claim for damages, compensation, loss of profit, allowance or otherwise by reason of, or directly or indirectly arising out of, any actions taken or notice given by the Purchaser, except as and to the extent expressly provided under the terms of this purchase order.

20. The Vendor is responsible for the security of all parts and components manufactured in execution of this order. Nor part of parts, component or components relating to this order are to be released, sold or otherwise disposed of by the Vendor without the prior written permission of the Purchaser.

TOLLING AGREEMENT

Effective as of July 16, 2013, (hereinafter the "***Effective Date***") the undersigned parties, on behalf of themselves and their respective subsidiaries, parents, affiliates, successors, predecessors-in-interest, and assignees, hereby enter into this Tolling Agreement in consideration of the mutual promises made herein and other good and valuable consideration the sufficiency of which the parties hereto acknowledge and stipulate as indicated by their signatures hereto.

Definitions

As used in this Tolling Agreement the following terms shall have the following meanings:

1.     "***Thielert***" shall mean Thielert A.G. (hereinafter "***TAG***"), Thielert Aircraft Engines GmbH, also known as Centurion Aircraft Engines (hereinafter collectively "***TAE***"), Dr. Bruno Kübler in his capacity as the insolvency administrator for TAG and/or TAE (hereinafter "***Kübler***"), and any of their respective subsidiaries, parents, affiliates, successors, predecessors-in-interest, and assignees;

2.     "***Superior***" shall mean Superior Air Parts, Inc.;

3.     The term "***Claim***" or "***Claims***" means any and all claims, if any, which Superior may have against Thielert, including without limitation, any and all claims for breach of contract, negligence, breach of fiduciary duty, breach of warranty, negligent misrepresentation, fraudulent misrepresentation, fraudulent act, deceptive act, misleading act or unconscionable act, conspiracy, common law misappropriation, conversion, unjust enrichment, fraudulent transfer, violations of Texas Business and Commerce Code §24.001, et seq., fraudulent conveyance, violations of 11 United States Code §362, §544, §547, §548, §549, §550, §1142, Federal Bankruptcy Rule 9020 and contempt of court (including those claims asserted in the Motion to Show Cause as defined below) for which Thielert might be liable to Superior and/or other affiliated persons and/or entities;

4.     The term "***Parties***" shall mean Superior and Thielert collectively;

5.     The term "***Bankruptcy Case***" shall mean the bankruptcy proceedings filed by the Superior styled In re Superior Air Parts, Inc., Bankruptcy Case No. 08-36705-bjh-7, pending in the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division; and

6.     The term "***Motion to Show Cause***" shall mean the pleading filed by Superior against Thielert in the Bankruptcy Case, including any supplements or amendments thereto.

Agreements

In order to provide an additional period of time in which to investigate and discuss amicable resolution of any possible Claims by Superior against Thielert, and in consideration of Superior agreeing to seek that the Motion to Show Cause shall not be set for hearing in the Bankruptcy case

until sometime after September 1, 2013, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned Parties hereby unequivocally and irrevocably agree and stipulate for all purposes in all proceedings in all forums to exclude the period of time starting with the Effective Date of this Tolling Agreement through October 9, 2013 ("***Tolling Period***") from the calculation of any applicable statute of limitation, statute of repose, or other possible time related defense or statutory extension of deadline to file an action, howsoever arising, including without limitation whether arising by common law, agreement, court order, or statute, including without limitation anything contained in the law of any jurisdiction including without limitation anything in the Texas Civil Practice and Remedies Code, the United States Code, the Bankruptcy Code or any order or deadline in the Bankruptcy Case.   The Parties hereby unequivocally and irrevocably agree and stipulate for all purposes in all proceedings that if Superior subsequently asserts a Claim against Thielert in a proceeding or lawsuit on or before October 9, 2013, that such Claims for purposes hereof shall be deemed to have been filed as of the Effective Date, and Thielert will not interpose a defense, plea, motion or argument that any Claim asserted by Superior against Thielert is barred, expired or otherwise adversely affected due to the running of any statute of limitations, statute of repose, or any other time related defense during the Tolling Period, or any Claim is barred, expired or otherwise adversely affected by virtue of the inclusion of the Tolling Period in any period of limitations, repose, or other time related defense to any Claim averred in any such proceeding or law suit, or that any extension of the statute of limitations, statute of repose or other time-related defense extant at any time during the Tolling Period has expired or is of no effect, subject to the following:

1.   If any applicable statute of limitations and any legal extension thereof whether by statute or otherwise expired prior to the Effective Date of this Tolling Agreement as to any portion of a Claim, Thielert reserves the right to interpose such statute of limitations defense to such portion of such Claim which expired prior to the Effective Date of this Tolling Agreement; and

2.   Nothing in this Tolling Agreement shall be used or construed as an admission of liability or a waiver of any other defense or claim not addressed herein, in whole or in part, by anyone, to any part of any Claim.

This Tolling Agreement may be executed in multiple counterpart originals.   Facsimile copies of signatures to this Tolling Agreement are stipulated as valid as original signatures.   This written Tolling Agreement is the entire agreement between the parties hereto and supersedes any other agreements, written or oral, that may exist between them relating to the tolling of the statute of limitations, statutes of repose, and other time-related defenses.   This Tolling Agreement may only be modified in writing executed by all the parties hereto.   This Tolling Agreement shall be governed by the laws of the State of Texas.

IN WITNESS WHEREOF, the undersigned Parties have executed this Tolling Agreement for the purpose and consideration herein expressed.

**Superior Air Parts, Inc.**

By: _____

       Kent Abercrombie

Its:   Chief Financial Officer

ACKNOWLEDGEMENT

State of Texas        §
                       §
County of Dallas     §

BEFORE ME, the undersigned notary public, personally appeared Kent Abercrombie, who being duly identified to me and sworn upon his oath, that he has read, understands and agrees to the foregoing Tolling Agreement, that he is the Chief Financial Officer of Superior Air Parts, Inc., that he signed the foregoing Tolling Agreement in that capacity on behalf of that entity, and that he was authorized the sign the foregoing Tolling Agreement on behalf of said entity.

SUBSCRIBED AND SWORN TO BEFORE ME on this the _____ day of _____, 20____, to certify which witness my hand and seal of office.


_____
Notary Public, State of Texas

Notary's Printed Name: _____     (seal)

Expiration Date: _____

**Dr. Bruno Kübler**, in his capacity as the insolvency administrator for **Thielert A.G.** and **Thielert Aircraft Engines GmbH, also known as Centurion Aircraft Engines.**

_____
Dr. Bruno Kübler

## ACKNOWLEDGEMENT

State of _____     §
                           §
County of _____      §


BEFORE ME, the undersigned notary public, personally appeared Dr. Bruno Kübler in his capacity as the insolvency administrator for Thielert A.G. and Thielert Aircraft Engines GmbH, also known as Centurion Aircraft Engines, who being duly identified to me and sworn upon his oath, that he has read, understands and agrees to the foregoing Tolling Agreement, that he signed the foregoing Tolling Agreement in his representative capacity.

SUBSCRIBED AND SWORN TO BEFORE ME on this the _____ day of _____, 20____, to certify which witness my hand and seal of office.



_____
Notary Public, State of _____

Notary's Printed Name: _____     (seal)

Expiration Date: _____

**Thielert Aircraft Engines GmbH, also known as
Centurion Aircraft Engines**

By: _____

_____

Its: _____

## ACKNOWLEDGEMENT

State of _____   §
                            §
County of _____    §

BEFORE ME, the undersigned notary public, personally appeared _____,
who being duly identified to me and sworn upon his/her oath, that he/she has read, understands
and agrees to the foregoing Tolling Agreement, that he/she is the _____
of Thielert Aircraft Engines GmbH, also known as Centurion Aircraft Engines, that he/she
signed the foregoing Tolling Agreement in that capacity on behalf of that entity, and that he/she
was authorized the sign the foregoing Tolling Agreement on behalf of said entity.

SUBSCRIBED AND SWORN TO BEFORE ME on this the _____ day of
_____, 20____, to certify which witness my hand and seal of office.

_____

Notary Public, State of _____

Notary's Printed Name: _____   (seal)

Expiration Date: _____

**Thielert A.G.**

By: _____
    _____

Its: _____

### ACKNOWLEDGEMENT

State of _____   §
                          §
County of _____    §


       BEFORE ME, the undersigned notary public, personally appeared _____, who being duly identified to me and sworn upon his/her oath, that he/she has read, understands and agrees to the foregoing Tolling Agreement, that he/she is the _____ of Thielert A.G., that he/she signed the foregoing Tolling Agreement in that capacity on behalf of that entity, and that he/she was authorized the sign the foregoing Tolling Agreement on behalf of said entity.

       SUBSCRIBED AND SWORN TO BEFORE ME on this the _____ day of _____, 20____, to certify which witness my hand and seal of office.


_____

Notary Public, State of _____

Notary's Printed Name: _____   (seal)

Expiration Date: _____

SUPERIOR IP RE FOLLOWING PARTS SUPPLIED TO TAE/ CENTURION

| Part Number | Part Description |
|---|---|
| SA021284 | PUSH ROD HOUSING |
| SA010205 | VALVE GUIDE |
| SA010209 | VALVE GUIDE |
| SA10200-A1 | ASSEMBLY, STUD |
| SA10200-A20P | CYL ASSY. WITH VALVES & PISTON |
| SA10200-A21P | POWER ASSY NEW C75/85 |
| SA10200-A22P | POWER ASSY NEW C90 |
| SA10202 | BARREL |
| SA10203 | HEAD MACHINING |
| SA10204 | VALVE |
| SA21361 | VLVE SPRING LOCK |
| SA24026 | VALVE SPRING RETAINER |
| SA24029 | SPRING |
| SA24044 | VALVE SPRING RETAINER |
| SA24082 | VALVE SPRING RETAINER KEY |
| SA35971 | RETAINER |
| SA401893 | STUD |
| SA47000L-A1 | CYLINDER ASSEMBLY LONG REACH |
| SA47000L-A20P | POWER ASSY NEW 470L |
| SA47000S-A1 | CYLINDER ASSEMBLY SHORT REACH |
| SA47000S-A20P | POWER ASSY NEW 470S |
| SA47000S-A21P | POWER ASSY NEW 470S |
| SA47001 | CYLINDER HEADE ASSY |
| SA47001L | HEAD MACHINING |
| SA47001S | HEAD MACHINING |
| SA47005 | HEAD MACHINING |
| SA47006L-A1 | CYLINDER STUD ASSEMBLY, LONG R |
| SA47006L-A20P | CYLINDER POWER ASSY LONG REACH |
| SA47006S-A1 | CYLINDER STUD ASSEMBLY, SHORT |
| SA47006S-A20P | CYLINDER PWR ASSY, SHORT REACH |
| SA47006S-A21P | CYLINDER PWR ASSY, SHORT REACH |
| SA47030 | BARREL MACHINED 470 |
| SA52000-A1 | CYLINDER ASSEMBLY |
| SA52001 | 520 HEAD MACHINING |
| SA52005 | 520 HEAD MACHINING |
| SA52006-A1 | CYLINDER STUD ASSEMBLY |
| SA52006-A20P | CYLINDER ASSEMBLY |
| SA52006-A21P | CYLINDER ASSEMBLY |
| SA52006-A22P | CYLINDER ASSEMBLY |
| SA52006-A23P | CYLINDER POWER ASSEMBLY |
| SA52030 | BARREL MACHINED 520 |
| SA524818 | PIPE PLUG |
| SA530851 | BODY, HYD. LIFTER |
| SA535661 | CAMSHAFT |
| SA537882 | CAM LIFT AND TIMING |

SUPERIOR IP RE FOLLOWING PARTS SUPPLIED TO TAE/ CENTURION

| Part Number | Part Description |
|---|---|
| SA539988 | VALVE |
| SA542818 | PIPE PLUG |
| SA55006-A1 | CYLINDER STUD ASSEMBLY |
| SA55006-A20P | CYLINDER POWER ASSEMBLY |
| SA55030 | BARREL |
| SA625393 | VALVE SPRING RETAINER |
| SA625957 | SPRING |
| SA625958 | SPRING |
| SA625961 | VALVE SPRING SEAT |
| SA628488 | LIFTER, HYD. |
| SA629117 | ROTOCOIL |
| SA632092 | EXPANSION PLUG |
| SA633106 | HYDRAULIC LIFTER ASSEMBLY |
| SA636242 | VALVE GUIDE |
| SA638125 | CAPTIVE LOCKING STUD |
| SA640482 | CAPTIVE LOCKING STUD |
| SA641972 | VALVE |
| SA643873 | VALVE |
| SA643967 | NUT |
| SA646277 | HYD. LIFTER |
| SA646846 | PLUNGER UNIT |
| SA649520 | CAMSHAFT |
| SA649520-A3 | ASSEMBLY CAMSHAFT |
| SA646985 | SEAL |
| SA65000-A1 | STUD ASSY A65 |
| SA65000-A20P | POWER ASSY NEW A65 |
| SA65030 | BARREL |
| SA65140 | VALVE |
| SA65160 | VALVE |
| SA65441 | VALVE SPRING |
| SA65442 | VALVE SPRING |
| SAC10203 | CASTING HEAD O-200 |
| SAC52001 | CASTING HEAD 520 STANDARD |
| SL010209 | VALVE GUIDE |
| SL061681A | VALVE GUIDE |
| SL066713A | SL667113A VALVE GUIDE |
| SL075838A | SL75838A VALVE GUIDE |
| SL1102 | PIPE PLUG |
| SL10077 | VALVE SPRING SEAT |
| SL10302-A1 | STUD ASSY 235 L2C |
| SL10302-A20P | CYLINDER ASSEMBLY |
| SL10302-A21P | CYLINDER ASSY. W/ VALVES & PIS |
| SL10303-A1 | STUD ASSY 235 C |
| SL10303-A20P | POWER ASSY NEW 235 C |
| SL10311 | HEAD MACHINING |
| SL10450 | CYLINDER FIN STABILIZER |

SUPERIOR IP RE FOLLOWING PARTS SUPPLIED TO TAE/ CENTURION

| Part Number | Part Description |
| --- | --- |
| SL10451 | CYLINDER FIN STABILIZER |
| SL10452 | CYLINDER FIN STABILIZER |
| SL11485 | TUBE, SHROUD |
| SL11626 | VALVE GUIDE |
| SL116740A | EXHAUST VALVE |
| SL11750 | CONNECTING ROD ASSEMBLY |
| SL11750-1 | CONNECTING ROD SUB-ASSEMBLY |
| SL11795 | SPRING |
| SL11797 | VALVE SPRING |
| SL11800 | VALVE SPRING |
| SL11901 | INTAKE VALVE |
| SL12186 | NUT-HEX |
| SL12596 | BOLT, CONNECTING ROD |
| SL13212A | BEARING |
| SL13321 | VALVE SPRING SEAT |
| SL13322 | VALVE SPRING SEAT |
| SL13323 | VALVE SPRING SEAT |
| SL13444 | PISTON PIN ASSY |
| SL13444-1 | PISTON PIN ASSY |
| SL13622 | VALVE SPRING SEAT |
| SL13521A | BEARING |
| SL13793 | STUD |
| SL13884A | BEARING |
| SL13923A | BUSHING, CONNECTING ROD |
| SL14820 | SNAP RING |
| SL14W21696 | COUNTERWEIGHT ROLLER |
| SL15B21318 | BODY HYDRAULIC TAPPET |
| SL15B21319 | PUSHROD CUP |
| SL15F19957 | PUSH ROD ASSY |
| SL15H21201 | SPRING |
| SL16475 | VALVE SPRING SEAT |
| SL16511 | CAMSHAFT |
| SL16511-1 | CAMSHAFT PROFILE |
| SL16711A | BEARING |
| SL16740A | INTAKE VALVE |
| SL17F21187 | ROCKER ARM |
| SL18667 | PIN, TACH DRIVE |
| SL18815 | PROP FLANGE BUSHING |
| SL18816 | PROP FLANGE BUSHING |
| SL18817 | PROP FLANGE BUSHING |
| SL18818 | PROP FLANGE BUSHING |
| SL18819 | PROP FLANGE BUSHING |
| SL18921 | PROP FLANGE BUSHING |
| SL18922 | PROP FLANGE BUSHING |
| SL18840 | CAMSHAFT |
| SL18840 OH | CAMSHAFT REGROUND |

SUPERIOR IP RE FOLLOWING PARTS SUPPLIED TO TAE/ CENTURION

| Part Number | Part Description |
|---|---|
| SL18840-1 | CAMSHAFT PROFILE |
| SL18840-2 | CAMSHAFT |
| SL18840-3 | CAMSHAFT PROFILE |
| SL18843 | CAMSHAFT ASSY |
| SL18843-2 | CAMSHAFT FRONT MNT PROP GOV |
| SL19001A | VALVE |
| SL19034 | EXHAUST VALVE |
| SL19227 | COUNTERWEIGHT ASSY |
| SL19227-1 | COUNTERWEIGHT FOR SL36650-A1 |
| SL19332-1 | CONNECTING ROD SUB-ASSY |
| SL19340 | CAMSHAFT |
| SL19340-1 | CAMSHAFT PROFILE |
| SL19340-2 | CAMSHAFT |
| SL19340-3 | CAMSHAFT PROFILE |
| SL23530 | BARREL |
| SL25C | STUD |
| SL31C-12 | STUD, 5/16 IN DIA, COARSE THRD |
| SL32000N-A1 | STUD ASSY 320 |
| SL32000N-A20P | POWER ASSY NEW 320N |
| SL32000N-A21P | POWER ASSY NEW |
| SL32000NA-A1 | STUD ASSY 320N ND SPOT FACED |
| SL32000NA-A21P | POWER ASSY NEW 320 SPOT FACED |
| SL32000W-A1 | STUD ASSY 320 |
| SL32000W-A2 | VALVE ASSY 320W |
| SL32000W-A20P | POWER ASSY NEW |
| SL32000W-A21P | POWER ASSY NEW |
| SL32000WH-A1 | STUD ASSY 320 76 SERIES |
| SL32000WH-A20P | POWER ASSY 320 76 SERIES |
| SL32000WL-A1 | STUD ASSY 320 WIDE LONG |
| SL32000WL-A20P | POWER ASSY NEW WIDE/LONG |
| SL32006N-A1 | CYLINDER STUD ASSY |
| SL32006N-A20P | CYLINDER COMPLETE ASSY |
| SL32006N-A21P | CYLINDER COMPLETE ASSY |
| SL32006NA-A1 | CYLINDER STUD ASSY |
| SL32006NA-A21P | CYLINDER COMPLETE ASSY |
| SL32006W-A1 | CYLINDER STUD ASSY |
| SL32006W-A2 | CYLINDER STUD ASSY&VALVE ASSY |
| SL32006W-A20P | CYLINDER COMPLETE ASSY |
| SL32006W-A21P | CYLINDER COMLETE ASSY |
| SL32033 | BARREL |
| SL32033N | BARREL |
| SL32500 | CRANKSHAFT MACHINING |
| SL32500-A1 | CRANKSHAFT ASSEMBLY 320 |
| SL32500-A30 | CRANKSHAFT ASSEMBLY |
| SL36000N-A1 | STUD ASSY 360 |
| SL36000N-A20P | POWER ASSY NEW |

SUPERIOR IP RE FOLLOWING PARTS SUPPLIED TO TAE/ CENTURION

| Part Number | Part Description |
|---|---|
| SL36000N-A21P | POWER ASSY NEW |
| SL36000NL-A1 | STUD ASSY 360 NARROW LONG |
| SL36000NL-A20P | POWER ASSY NARROW/LONG REACH |
| SL36000NL-A21P | POWER ASSY NARROW/LONG REACH |
| SL36000TW-A1 | STUD ASSY 360 THIN WIDE |
| SL36000TW-A20P | POWER ASSY NEW |
| SL36000TW-A21P | POWER ASSY NEW |
| SL36000TWL-A1 | STUD ASSY 360 THIN WIDE LONG |
| SL36000TWL-A20P | POWER ASSY THIN/WIDE/LONG REAC |
| SL36000W-A1 | STUD ASSY 360 |
| SL36000W-A2 | VALVE ASSY 360W |
| SL36000W-A20P | POWER ASSY NEW |
| SL36000W-A21P | POWER ASSY NEW |
| SL36000WH-A1 | STUD ASSY 360 76 SERIES |
| SL36000WH-A20P | POWER ASSY 360 76 SERIES |
| SL36000WL-A1 | STUD ASSY 360 |
| SL36000WL-A20P | POWER ASSY WIDE/LONG REACH |
| SL36000WL-A21P | POWER ASSY. WIDE/LONG REACH |
| SL36001 | HEAD MACHINING |
| SL36005 | HEAD MACHINING |
| SL36006 | CYLINDER ASSY MASTER DRAWING |
| SL36006N-A1 | CYLINDER STUD ASSY |
| SL36006N-A20P | CYLINDER COMPLETE ASSY |
| SL36006N-A21P | CYLINDER COMPLETE ASSY |
| SL36006W-A1 | CYLINDER STUD ASSY |
| SL36006W-A2 | CYLINDER STUD AND VALVE ASSY. |
| SL36006W-A20P | CYLINDER COMPLETE ASSY. |
| SL36006W-A21P | CYLINDER COMPLETE ASSY |
| SL3601-SC | RING SET SINGLE CYLINDER |
| SL36033 | BARREL MACHINED 360W NAT CHOKE |
| SL36033N | BARREL |
| SL36033TW | BARREL |
| SL36100WLC-A1 | CYLINDER ASSY |
| SL36101S | HEAD MACHINING |
| SL36100WLC-A1 | STUD ASSY ANGLE VALVE 361 |
| SL36100WSC-A1 | STUD ASSY ANGLE VALVE 361 |
| SL36100WSC-A2 | VALVE ASSY ANGLE VALVE 361 |
| SL36100WSC-A20P | POWER ASSY ANGLE VALVE 361 |
| SL36400 | CRANKSHAFT MACHINING SOLID |
| SL36400-A1 | CRANKSHAFT ASSY SOLID CRNKSHFT |
| SL36400-A20 | CRANKSHAFT ASSEMBLY |
| SL36400-A21 | CRANKSHAFT ASSEMBLY |
| SL36500 | CRANKSHAFT MACHINING |
| SL36500-A1 | CRANKSHAFT SUB-ASSY CONST SPD |
| SL36500-A2 | CRANKSHAFT,SUB-ASSY. FIX PITCH |
| SL36500-A20 | CRANKSHAFT ASSEMBLY |

SUPERIOR IP RE FOLLOWING PARTS SUPPLIED TO TAE/ CENTURION

| Part Number | Part Description |
|---|---|
| SL36500-A31 | CRANKSHAFT ASSEMBLY |
| SL36550 | CRANKSHAFT MACHINING |
| SL36550-A1 | CRANKSHAFT ASSY THIN WALL CNTR |
| SL36600 | CRANKSHAFT MACHINING |
| SL36600-A1 | CRANKSHAFT ASSY HEAVY WALL |
| SL36600-A20 | CRANKSHAFT ASSEMBLY |
| SL36600-A30 | CRANKSHAFT ASSEMBLY |
| SL36650 | CRANKSHAFT MACHINING |
| SL36650-A1 | CRANKSHAFT SUB-ASSY CNTR WTD |
| SL36650-A50 | CRANKSHAFT ASSY W/CNTR WT |
| SL36800 | CRANKCASE MACHINING |
| SL36800-R1 | CRNKCSE ASSY WD/#1 MNT, ROLLER |
| SL36800-R11 | CKCASE ASSY WD/#1 MNT ROLLER |
| SL36800-R21 | CRANKCASE ASSY WD#2 DYN ROLLER |
| SL36800-W1 | CRANKCASE ASSY,WD /W #1 MOUNT |
| SL36800-W11 | CRANKCASE ASSEMBLY |
| SL36800-W13 | CRANKCASE ASSEMBLY |
| SL36800-W31 | CRANKCASE ASSEMBLY |
| SL36850 | CRANKCASE MACHINING |
| SL36850-R1 | CRNKCSE ASSY WD/#1 MNT, ROLLER |
| SL36850-R11 | CKCASE ASSY WD/#1 MNT ROLLER |
| SL36850-R21 | CRANKCASE ASSY WD#2 DYN ROLLER |
| SL36850-W1 | CRANKCASE ASSY,WD /W #1 MOUNT |
| SL36850-W11 | CRANKCASE ASSEMBLY |
| SL36850-W13 | CRANKCASE ASSEMBLY |
| SL36850-W31 | CRANKCASE ASSEMBLY |
| SL38 | STUD |
| SL50 | STUD |
| SL54001 | CYLINDER HEAD |
| SL54002-A1 | CYLINDER ASSEMBLY |
| SL54002NLC-A1 | CYLINDER ASSEMBLY |
| SL60009 | VALVE KEY |
| SL61510 | PLUG |
| SL62388 | ROTO CAP |
| SL65441 | VALVE SPRING SEAT |
| SL66728 | WASHER |
| SL68317 | PROP DRIVE GEAR |
| SL68484 | TUBE, PROPELLER OIL |
| SL68795 | VALVE COVER |
| SL69532 | VALVE SPRING SEAT |
| SL69796 | DOWEL |
| SL71105 | TAPPET BODY |
| SL71895A | VALVE SEAT |
| SL71903A | BUSHING |
| SL71907A | COUNTERWEIGHT WASHER |
| SL72050 | LOCK, VALVE SPRING RETAINER |

SUPERIOR IP RE FOLLOWING PARTS SUPPLIED TO TAE/ CENTURION

| Part Number | Part Description |
|---|---|
| SL72057A | VALVE SEAT |
| SL72058A | VALVE SEAT |
| SL72072 | OIL TUBE |
| SL72073 | OIL TUBE |
| SL72155 | PROP FLANGE BUSHING |
| SL72255 | SHROUD TUBE |
| SL72626A | ROCKER SHAFT |
| SL72877 | BODY, HYD. |
| SL72877A | BODY, HYD. |
| SL72797 | COUNTERWEIGHT ROLLER |
| SL73207 | OIL TUBE |
| SL73857A | PISTON RING |
| SL73938 | VALVE |
| SL74230A | VALVE GUIDE |
| SL74241A | PISTON RING |
| SL74637 | BUSHING, VALVE ROCKER |
| SL74710 | TUBE, OIL |
| SL74711 | PLUG |
| SL74996 | GEAR AND BUSHING ASSY |
| SL75060 | BOLT, ROD |
| SL75061 | BOLT, ROD |
| SL75089A | PISTON |
| SL75154 | STUD |
| SL75439-1P | GASKET SET PRODUCTION ENGINE |
| SL75656 | PROP FLANGE BUSHING |
| SL75657 | PROP FLANGE BUSHING |
| SL75706 | CAMSHAFT |
| SL75706-1 | LOBE PROFILE |
| SL76118 | SPACER |
| SL76121 | TACH DRIVE ASSY |
| SL76220 | THRU BOLT |
| SL77450 | CONNECTING ROD ASSEMBLY |
| SL77450-1 | CONNECTING ROD SMALL/NARROW |
| SL78027 | BOLT, CONNECTING ROD |
| SL78030 | CONNECTING ROD ASSEMBLY |
| SL78030-1 | CONNECTING ROD SUB-ASSEMBLY |
| SL78290 | PLUNGER ASS'Y |
| SL78290A | PLUNGER ASS'Y |
| SL78915 | OIL SUMP ASSY |
| SL78915-1 | OIL SUMP MACHINING |
| SL383-B | NUT-HEX |
| SLC078915 | OIL SUMP CASTING |
| SLC20051 | CASTING, CRANKCASE (L),F.M.P.G |
| SLC20052 | CASTING, CRANKCASE,(R) F.M.P.G |
| SLC36005 | CASTING HEAD 360 STANDARD |
| SLC36101 | CASTING HEAD 360 ANGLE HEAD |

SUPERIOR IP RE FOLLOWING PARTS SUPPLIED TO TAE/ CENTURION

| Part Number | Part Description |
|---|---|
| SLF10207 | FORGING |
| SLF17F21188 | ROCKER ARM FORGING |
| SLF18790 | ROCKER ARM FORGING |
| SLF36030 | SLF36030 FORGING |
| SLF36500 | CRANKSHAFT FORGING (360) |
| SLF36550 | CRANKSHAFT FORGING (360 C/W) |
| SLF36700 | CONNECTING ROD FORGING |
| SL-STD-8 | WASHER |
| SL-STD-33 | WASHER |
| SL-STD-514 | DOWEL |
| SL-STD-557 | DOWEL |
| SL-STD-1065 | DOWEL, STEPPED |
| SL-STD-1066 | DOWEL |
| SL-STD-1211 | EXPANSION PLUG |
| SL-STD-1411 | NUT-HEX |
| SL-STD-1623 | HELICOIL |
| SL-STD-1872 | HELICOIL |
| SL-STD-1925 | PAN HEAD SCREW |
| SL-STD-2090 | NUT-HEX |
| STD-1066 | DOWEL |
| SV00001 | TC ENGINE ASSY MASTER DRAWING |
| SV18800 | CAMSHAFT |
| SV18800-2 | CAMSHAFT SUB ASSEMBLY |
| SV18803 | CAMSHAFT ASSEMBLY-400/10:1 CR |
| SV18803-2 | CAMSHAFT, ROLLER LIFTER,FPG |
| SV18805 | CAMSHAFT ASSEMBLY-361&400/8.5 |
| SV18805-2 | CAMSHAFT, ROLLER LIFTER,FPG |
| SV40001 | STUD ASSY, CYLINDER, 400 |
| SV40006 | VALVE ASSY ANGLE VALVE 400 |
| SV40006-A1 | STUD ASSY, CYLINDER, 400 |
| SV40006-A2 | VALVE ASSY ANGLE VALVE 400 |
| SV40033 | BARREL MACHINING |
| SV40450 | CONNECTING ROD ANGLED |
| SV40450-1 | CONNECTING ROD, SUB ASSEMBLY |
| SV40650 | CRANKSHAFT ASSY CNTR WT,400 |
| SV40650-A1 | CRANKSHAFT ASSY CNTR WT,400 |
| SV40650-A30 | CRANKSHAFT ASSY CNTR WT |
| SV40650-A50 | CRANKSHAFT ASSY W/CNTR WT |
| SV40851 | BUSHING |
| SV72800 | ROLLER LIFTER |
| SV72800-1 | ROLLER LIFTER BODY |
| SV72800-2 | SHIM |
| SV72800-5 | PUSHROD CUP |
| SV72800-10 | NEEDLE BEARING |
| SV72800-11 | PIN |
| SV72800-2 | SHIM |

SUPERIOR IP RE FOLLOWING PARTS SUPPLIED TO TAE/ CENTURION

| Part Number | Part Description |
|---|---|
| SV72805-2 | ROLLER LIFTER ASSY |
| SV78945-1 | COLD AIR INTAKE PIPE ASSY |
| SV78946-1 | COLD AIR INTAKE PIPE ASSY |
| SV90842-1 | ROD BOLT 400 SERIES |
| SV911 | SET SCREW (LONG) |
| SV912 | SCREW SHORT FINE ROLLER LIFTER |
| SV913 | SCREW SHORT COARSE ROLLER LIFT |
| SVF40033 | BARREL FORGING |
| SX36800-R1 | CRANKCSE ASSY WD/#1 MNT, ROLLER |
| SX36800-R2 | CRANKCSE ASSY WD/#2 MNT, ROLLER |
| SX36800-R3 | CRANKCSE ASSY WD/#3 MNT, ROLLER |
| SX36850 | CRANKCASE ASSY FRONT MOUNT |
| SX40850 | CRANKCASE ASSY |
| SX20049 | CRANKCASE MACHINING |
| SX20050 | CRANKCASE MACHINING |
| SX36800 | CRANKCASE ASSY |
| SX72805-1 | ROLLER LIFTER BODY |

**EXHIBIT F**

## DEMAND FOR ARBITRATION

**Claimant:**

Dr. Bruno Kübler, in his capacity as Insolvency Administrator for Thielert Aircraft Engines GmbH and Centurion Aircraft Engines AG & Co. KG

**Claimant's Attorneys:**

Craig F. Simon
Daniel P. Winikka
SIMON, RAY & WINIKKA LLP
2525 McKinnon St., Suite 540
Dallas, TX 75201
(214) 871-2292

**Respondents:**

Superior Air Parts, Inc.

**Respondent's Attorney(s):**

James F. Adams
Passman & Jones
2500 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
214-742-2121

**Nature of the Dispute:**

Superior Air Parts, Inc. ("Superior") has asserted that Thielert Aircraft Engines GmbH ("TAE") and Centurion Aircraft Engines AG & Co. KG ("Centurion") are in possession of certain "Proprietary Information" (as such term is defined in Superior's Plan of Reorganization) that is owned by Superior. Superior has requested that TAE, Centurion and others in possession of such Proprietary Information return such information to Superior. *See* Exhibit A – letter dated April 24, 2013.

Superior's claim of ownership of the Proprietary Information is based, in whole or in part, on the terms and conditions of a Supplier Agreement dated December 15, 2001 (the "Supplier Agreement") between TAE and Superior. *See* Exhibit B – letter dated July 18, 2013. The Supplier Agreement broadly provides, in Section 10.05, for arbitration of "any dispute related to this Agreement…" TAE and Centurion believe that Superior seeks to require that they turn over documents and information that Superior does not own. The questions of what information Superior supplied to TAE pursuant to the

Supplier Agreement, whether Superior owns such information, and whether TAE or Centurion are otherwise in possession of any property Superior owns are necessary predicates to any obligation of TAE or Centurion to return such property.

In addition, Superior has filed a Motion to Show Cause ("Show Cause Motion") with the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"), pursuant to which Superior seeks a ruling that TAE and others should be held in contempt and enjoined for violating the Bankruptcy Court's 2009 confirmation order in Superior's bankruptcy case. TAE is itself in insolvency proceedings in Germany, and the assets of its business have been sold to an unrelated third party. Because the Show Cause Motion was pending at the time of the sale, out of an abundance of caution to ensure that he did not transfer to the buyer any documents or information that Superior might own, Dr. Kübler segregated all documents or information that related to the relevant portion of TAE's business (based on part numbers supplied by Superior) and withheld it from the sale. In addition, Dr. Kübler has repeatedly requested that Superior identify the specific documents or other property that it contends it owns and that is in the possession of TAE or Centurion. To date, Superior has been unwilling to provide that information.

Accordingly, through this Arbitration, Dr. Kübler, in his capacity as Insolvency Administrator for Thielert Aircraft Engines GmbH and Centurion Aircraft Engines AG & Co. KG, seeks (1) to require Superior to identify the specific Proprietary Information that was provided to TAE and that Superior provide other information that may be required for Claimant to determine what, if any, property they have that Superior owns and (2) to the extent necessary, a declaratory judgment that some or all of the segregated documents or information in Claimant's possession is not owned by Superior.

**Hearing Location:**

Dallas County, Texas

Dated October 30, 2013

SIMON, RAY & WINIKKA LLP

Craig F. Simon
Daniel P. Winikka
2525 McKinnon Street
Suite 540
Dallas, Texas 75201
(214) 871-2292

*Counsel for Claimant*