**EXHIBIT A**

## SUPPLIER AGREEMENT

This Supplier Agreement ("Agreement") is made between Thielert Aircraft Engines GmbH ("TAE") and Superior Air Parts, Inc. ("Superior").

In consideration of their mutual covenants, and for other good and valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

### SECTION I
### PURCHASE AND SALE

1.01. Manufacturing Requirements. TAE agrees to manufacture and sell and Superior agrees to purchase the aircraft parts ("Product") listed on Schedule 1.01.

1.02. Terms. TAE agrees to sell the Product to Superior under the terms, conditions and prices listed on Schedule 1.02. TAE warrants that its output capability is sufficient to supply the requirements of Superior as set forth in Schedule 1.02.

1.03. Currency.    All transactions shall be in United States dollars.

1.04. Orders. All deliveries of the Product shall be made by Superior''s issuance of its purchase order to TAE. In the event of conflict between a purchase order and this Agreement, this Agreement will control. Payment terms are net thirty (30) days.

1.05. Termination or Modification. Superior may notify TAE to terminate, modify or reduce an order at which time TAE shall cease all work on the order. In the event of such notice: (a) Superior shall pay for all goods on such order already completed by TAE following delivery and acceptance in accordance with the provisions of this Agreement, (b) TAE may make a reasonable adjustment in price to cover any increase in its costs resulting from the notice, and (c) Superior shall make no reimbursement for raw materials or materials in the course of manufacture which exceed those needed to complete the original purchase order.

1.06. Shipment.    All Product shall be shipped at Superior's expense.

1.07. Delivery.    Delivery is made when the Product arrives at Dresden Airport, Germany. Product shall be shipped so as to be delivered not later than the 1st day of each month. TAE agrees to pay a late delivery charge equivalent to a ½ % discount on any Product delivered between the 10th and 15th day of any month and a 1% discount per day for each calendar day after the 15th day of each month up to a maximum of 5%.

1.08. Delays and Shortages. If TAE determines at any time that some cause will prevent the timely delivery of the quantity of ordered Product, TAE will immediately notify Superior and state its best estimate of the revised delivery schedule. Provided however, that if TAE fails to deliver the

-1-

Product on the schedule and in the quantities specified on three (3) consecutive purchase orders, and regardless of cause, Superior may terminate this Agreement.

1.09. Title. Title to the Product passes to Superior upon payment. Title to rejected Product shall remain in Superior until TAE returns the full purchase price to Superior in accordance with Section V.

1.10. Risk of Loss. The risk of loss from any casualty to the Product, regardless of cause, shall be on TAE up to the time of delivery at Dresden Airport, Germany. Thereafter, such risk shall be on Superior unless the Product is rejected by Superior in accordance with Section V. After rejection, the risk of loss shall be on Superior up to the time the Product is delivered at DFW International Airport for return to TAE.

## SECTION II
## TERM OF AGREEMENT

2.01. Effective Date. This Agreement shall take effect on the date it has been executed by both parties and shall continue in effect for three (3) years from the date of execution unless terminated earlier as provided elsewhere in this Agreement.

## SECTION III
## TECHNICAL DATA

3.01. Technical Data. Superior shall deliver to TAE all drawings and the related data and information that TAE may request and which is reasonably required for the intended use of the drawings.

3.02. Title. Superior shall retain title to all Superior furnished drawings, related data (whether or not maintained or stored on computer) and information supplied to TAE under this Agreement. TAE will maintain the confidentiality of all drawings, data and information supplied by Superior and will return such drawings, data and information to Superior upon the termination of this Agreement.

3.03. Proprietary Rights Data. Superior's drawings, related data and information shall be used by TAE only for the performance of its obligations under this Agreement, unless otherwise provided in this Agreement or expressly approved by Superior in writing.

3.04. Preservation. TAE assumes the risk of, and shall be responsible for, any loss or destruction of, or damage to, the drawings, related data or information of Superior upon its delivery to TAE.

## SECTION IV
## QUALITY CONTROL AND AUDIT

4.01. <u>Conformity</u>.  TAE warrants that all Product delivered under this Agreement shall be free from defects in material and workmanship and will meet or exceed the requirements of Superior"s purchase orders, the current Superior"s Quality Requirements for Suppliers and the applicable descriptions, specifications, and drawings.

4.02. <u>Initial Audit and First Article Inspection</u>.  Upon execution of this Agreement, Superior shall have the right to audit TAE"s production facility for compliance with Superior's quality and inspection requirements ("Initial Audit") and for the purpose of adding TAE to Superior"s FAA approved vendor list. Should TAE"s facility fail to pass the Initial Audit, TAE shall have a reasonable time to cure. If TAE fails to cure within a reasonable time, Superior may terminate this Agreement without further obligation or liability.

4.03. <u>Continuing Audit</u>.  During the course of this Agreement, Superior and the FAA shall have the right to audit TAE"s production facility for compliance with Superior's quality and inspection requirements and the Federal Aviation Regulations upon reasonable notice.  If discrepancies are noted, TAE shall have a reasonable time to cure. If TAE fails to cure within a reasonable time, Superior may terminate this Agreement without further obligation or liability except to pay for Product already shipped, subject to the terms of this Agreement.

4.04. <u>Inspection and Certification</u>.  TAE shall inspect and test all Product prior to shipment to Superior and TAE will provide a letter of conformity and any additional required certifications with each shipment of Product. All testing and inspection by TAE shall be in accordance with Superior's FAA Approved Quality Control Manual. Notwithstanding any inspection by TAE, all Product shall be subject to final inspection and acceptance by Superior at Superior's facility in Dallas, Texas.

## SECTION V
## INSPECTION AND REJECTED PRODUCT

5.01. <u>Inspection</u>.  Should Superior reject any Product for failure to conform to the requirements of an order, Superior shall notify TAE of such rejection within thirty (30) days of receipt at Superior's facility and TAE shall have the option to repair or replace the non-conforming Product at its expense. Should TAE fail to act to correct any Product within sixty (60) days of when the parties agree it is non-conforming, Superior may return such non-conforming Product to TAE and TAE shall return the full purchase price to Superior. Rejected Product shall be returned at TAE's expense.

5.02. <u>Reject Rate</u>.  If the reject rate for such non-conforming product exceeds 2% for a period of two (2) consecutive orders, TAE shall have a reasonable time to cure. If TAE fails to cure within a reasonable time, Superior may terminate this Agreement without further obligation or liability except to pay for Product already shipped, subject to the terms of this Agreement.

## SECTION VI
## WARRANTY

6.01. Warranty Administration.   TAE understands and agrees that Superior will offer a warranty on the Product to Product purchasers. The parties agree that Superior shall administer the Product warranty and that TAE will provide full technical assistance, documentation and other cooperation necessary to fully administer this third-party warranty. Provided however, that TAE assumes all responsibility for defects in material and workmanship in the Product.

6.02   Exemption.   TAE shall not be responsible for defects in the Product arising out of or resulting from defects in the Technical Data provided by Superior according to Section III. of this Agreement or defects arising out of or resulting from installation or further processing of the Product by Superior.

## SECTION VII
## INDEMNIFICATION AND INSURANCE

7.01.   Indemnification of Superior.   TAE shall defend, indemnify and hold Superior, its directors, officers, employees and agents harmless from and against, any and all claims, demands, suits and causes of action which may be made against Superior, including without limitation, all attorneys' fees, costs and expenses incurred in defense thereof, for death, personal injury, property damage or any loss whatsoever, and arising out of or resulting from defects in material or workmanship in the Product delivered under this Agreement but not for defects in the Technical Data provided by Superior according to Section III. of this Agreement or defects arising out of or resulting from installation or further processing of the Product by Superior.

7.02.   Indemnification of TAE.   Superior shall defend, indemnify and hold TAE, its directors, officers, employees and agents harmless from and against, any and all claims, demands, suits and causes of action which may be made against TAE, including without limitation, all attorneys' fees, costs and expenses incurred in defense thereof, for death, personal injury, property damage or any loss whatsoever, and arising out of or resulting from defects in the Technical Data provided by Superior according to Section III of this Agreement or defects arising out of or resulting from installation or further processing of the Product by Superior.

The parties acknowledge that their indemnification of the other extends to and includes claims, demands, suits, and causes of action made against the other sounding in strict liability, negligence and breach of express or implied warranties. The parties further acknowledges that their indemnification of the other is without limitation, and is without regard to whether the strict liability, negligence or breach of warranty is alleged to be sole, vicarious, or active or passive in nature.

7.03.   Insurance.   While this Agreement is in effect and to fully effect the intent of this indemnification, each party will maintain standard form combined single-limit product liability completed operations insurance in the amount of at least $10,000,000, under terms and conditions

-4-

ordinarily available in the insurance market. The insurance will be maintained with liability insurers of recognized responsibility acceptable to the other party, will name the indemnitee as an additional insured to the extent of the indemnitor's responsibility under this Agreement, will provide that such insurance is primary over any other valid and collectible insurance of the additional insured, will continue in force for at least thirty (30) days after written notice of cancellation or termination of this Agreement from the indemnitor, and will contain a waiver of any rights of subrogation such insurers may have against the additional insured. Each party will furnish to the other the certificate evidencing the specific coverages and provisions required by this section.

## SECTION VIII
## FORCE MAJEURE

8.01    Force Majeure.    Neither party shall be responsible for, nor be deemed to be in default under, this Agreement on account of any delay in delivery of any Product or other performance hereunder due to any of the following causes: (i) acts of God, terrorist attacks, war, warlike operations, insurrections or riots; (ii) fires, floods or explosions; serious accidents; epidemics or quarantine restrictions; (iii) any act of government, governmental priorities, allocation regulations or orders affecting materials, facilities or the Product; (iv) strikes or labor troubles causing cessation, slowdown or interruption of work; (v) delay in transportation, or (vi) any other cause to the extent it is beyond such party's control and not occasioned by such party's fault or negligence. If either party is so prevented from timely performance of any of its obligations hereunder, the time for performance will be extended by a period of business days equal to the time lost by reason of such delay, provided that the party shall promptly notify the other party in writing of the cause of such delay or default. The affected party shall use its reasonable best efforts to remove the cause of delay.

## SECTION IX
## TERMINATION

9.01.    Termination.    Either party may terminate this Agreement by ninety (90) day written notice. In addition, either party may terminate the Agreement for any of the following reasons:

(a)    The other party's failure to fulfill its obligations as specified in this Agreement;

(b)    The insolvency, filing of a petition for bankruptcy, or the voluntary appointment of a referee, trustee, conservator, or receiver for substantially all of a party's assets.

(c)    The transfer of substantially all of a party"s assets to another entity.

9.02.    Notice of Termination.    Any party may terminate this Agreement without further notice if a breach is not remedied within ten (10) days from the date of written notice for any monetary breach and thirty (30) days from the date of written notice of any other breach.

9.03. Effect of Termination. Termination of this Agreement shall not release any party from any obligation or liability incurred prior to the effective date of such termination. Neither party shall not be liable to the other by reason of the termination for any compensation, reimbursement, or damages on account of the loss of anticipated sales or profits or on account of expenditures, investments, leases or commitments in connection with the business or goodwill or otherwise.

## SECTION X
## OTHER TERMS AND CONDITIONS

10.01  Governing Law.    This Agreement shall be construed and interpreted by and in accordance with the laws of the State of Texas, and whether or not any conflicts of law principle would refer the interpretation to the law of another jurisdiction.

10.02. Forum Selection.    The parties agree and understand that the obligations of the parties under this Agreement shall be and are performable in Dallas County, Texas. The parties consent and agree that venue of any suit or legal proceeding brought by the other, or those in privity with them, and related to this Agreement, shall be in Dallas County, Texas. Further, the parties agree to hereby submit to the jurisdiction of the state or federal courts that are located in Dallas County, Texas, and designate the Secretary of State of Texas as their agent for service of process.

10.03. Attorneys Fees.    The parties agree that, if it either should file suit or commence legal proceedings against the other related to this Agreement, the party filing suit or commencing legal proceedings will pay the other the costs of defending such suit or legal proceeding, including reasonable attorneys' fees, in the event that (a) the other party prevails in the suit or legal proceeding; or (b) the value of the recovery awarded to the party filing suit or commencing legal proceedings is equal to or less than any written settlement proposal made by the other party prior to commencement of the suit or legal proceeding.

10.04. Partial Invalidity.    In the event that any provision of this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not effect any other provision hereof, and this Agreement shall be construed as if such provision(s) had never been contained in this Agreement.

10.05. Arbitration.    TAE agrees that any dispute related to this Agreement, including the arbitrability of this Agreement shall, on the written request of the other party, be submitted to arbitration under the rules as Superior and TAE shall agree. If no agreement can be reached, such arbitration shall be governed by the Commercial Arbitration Rules of the American Arbitration Association.

10.06. Modification and Waiver.    No modification or waiver of any provision of this Agreement shall arise from any action or inaction of either party, and shall not be binding except by an instrument in writing expressly waiving or modifying the provision and executed by the party entitled to the benefit of the provision.

10.07. <u>Entire Agreement</u>.   This Agreement constitutes the entire agreement between TAE and Superior. Neither party shall be bound by any communications between them on the subject matter of this Agreement unless the communication is (a) in writing, (b) bears a date contemporaneous with or subsequent to the date of this Agreement, and (c) is agreed to by both parties to this Agreement. On execution of this Agreement, all prior agreements, letters of intent or understandings between the parties shall be null and void. Provided however, that nothing in this Agreement is intended to waive any claim TAE has already made for credits due Superior from prior transactions.

10.08. <u>Assignability</u>. By this Agreement, the parties intend to bind themselves, their successors and their assigns to the other party to this Agreement and to the successors and assigns of the other party to this Agreement with respect to all warranties and covenants of this Agreement. It is the specific intent of the parties that, should the stock or substantially all of the assets of a party be sold to a third party, that this Agreement shall be binding upon such purchaser. Provided, however, that neither TAE nor Superior shall assign this Agreement without the express written consent of the other.

10.09. <u>Terms</u>. The provisions of this Agreement shall apply to and form a part of every transaction between the parties concerning the subject matter of this Agreement and shall supersede any printed terms and conditions on any of the parties' forms.

10.10. <u>Notices</u>. All notices that are required or that may be given pursuant to the terms of this Agreement shall be in writing and shall be sufficient in all respects if given in writing and delivered personally or sent by registered or certified mail as follows:

If to Superior before 2/1/02

> Bernie Coleman
> President
> Superior Air Parts, Inc.
> 14280 Gillis Road
> Dallas, Texas 75244-3792

If to Superior after 2/1/02:

> Bernie Coleman
> President
> Superior Air Parts, Inc.
> 621 S. Royal Lane
> Suite 100
> Coppell, Texas 7519

-7-

If to TAE:

        Frank Thielert
        President
        Thielert Motoren GMBH
        Helbingstrabe 64-66
        D-22047 Hamburg
        Germany

10.11. **Construction.** The parties acknowledge that each party has reviewed this Agreement and agree that the rule of construction to the effect that any ambiguities be resolved against the drafting party, shall not be employed in the interpretation of this Agreement or any amendments or schedules. The parties agree that the section descriptions are made for ease of reference and may not be used to interpret this Agreement.

10.12. **Authority.** The parties represent and warrant that each is a legal entity duly organized and in good standing in the states and/or countries in which they have their principle offices and that each has the requisite authority to enter into and fulfill this Agreement.

10.13. **Notice of Claim.** The parties agree to promptly notify the other in writing within thirty (30) days of the receipt of any claims, demands, suits and causes of action referenced in Section VII.

10.14. **Government Approval.** Superior will obtain from the FAA a PMA and any other required permit and authorization which is required for the manufacture and/or sale of the goods delivered under this Agreement. The copy of the applicable PMA's, permits and authorizations will be provided to TAE with each initial order. Each subsequent purchase order will specify the appropriate part number, PMA, permit and/or authorization. Superior will not accept goods under this Agreement which have not been manufactured under the appropriate FAA approvals.

Signed on this 15 the day of December, 2001, in Dallas County, Texas.

Thielert Aircraft Engines GmbH

_/s/ Frank Thielert_

Frank Thielert
President

Superior Air Parts, Inc.

_/s/ Bernie Coleman_

Bernie Coleman
President

-8-

Schedule 1.01
Products

| Part Number | Description | Production Costs (Each) |
|---|---|---|
| SL19332-1 | Connecting Rod | $200 |
| SL11750-1 | Connecting Rod | $200 |
| SL36500-A2 | Crankshaft | $2,060 |
| SA530661 | Camshaft | $300 |
| SA649520-A3 | Camshaft | $300 |
| SL16511 | Camshaft | $250 |
| SL18840 | Camshaft | $250 |
| SL19340-2 | Camshaft | $325 |
| SL75906 | Camshaft | $225 |
| SA530851 | Lifter | TBD |
| SA628488 | Lifter | TBD |
| SA633106 | Lifter | TBD |
| SA646846 | Lifter | TBD |
| SA646846 | Hydraulic Unit | TBD |
| SL15B21318 | Lifter | TBD |
| SL71105 | Lifter | TBD |
| SL72877 | Lifter | TBD |
| SL78290 | Lifter | TBD |

*TBD = To be Determined

## Schedule 1.02
## SUPERIOR AIR PARTS, INC.
## STANDARD TERMS AND CONDITIONS

1. ACCEPTANCE BY SELLER. These standard terms and conditions apply to and are incorporated in all purchase orders issued by Superior. By its acceptance of a purchase order, Seller agrees to be bound by the terms and conditions in this agreement.

2. UNIT PRICES. Prices indicated on a purchase order are maximum prices. Seller agrees to adjust the prices downward to any lower prices in effect on date of shipment.

3. PACKING. All goods shall be packaged in accordance with Superior's specifications and, where not specified, shall be suitably packed and prepared for shipment to prevent damage in transit, to insure the lowest transportation and insurance rates, and to meet carrier's requirements.

4. INVOICES/RECEIPTS. Seller must submit to Superior a separate invoice in duplicate for each purchase order. All invoices, bills of lading and delivery receipts must show the Superior purchase order number.

5. SUBSTITUTIONS. Seller shall notify Superior immediately upon receipt of a purchase order if Seller is unable to fully comply with the conditions in the purchase order. Superior may authorize shipment of substitute goods or shipment under different conditions by issuing a supplement to the purchase order. Unauthorized substitutions or shipments not conforming fully with the terms of the purchase order may be returned to Seller at Seller's expense.

6. CANCELLATION. If the Seller fails to make deliveries of the goods within the time specified in a purchase order, Superior may cancel the purchase order, except when Seller's delay in delivery is due to causes beyond the control of Seller. Seller shall notify Superior within ten (10) days that there will be such delay and of the new delivery schedule. In the event of the institution of any proceedings by or against either party in bankruptcy or insolvency, or for the appointment of a receiver or trustee, or of an assignment for the benefit of creditors, the other party shall be entitled to cancel a purchase order by written notice.

7. TERMINATION OR MODIFICATION. Superior may notify Seller to terminate, modify or reduce an order at which time Seller shall cease all work on the order. In the event of such notice: (a) Superior shall pay for all goods already completed by Seller following delivery and acceptance in accordance with the provisions of this agreement, (b) Seller may make a reasonable adjustment in price to cover any increase in its costs resulting from the notice, and (c) Superior shall make no

reimbursement for raw materials or materials in the course of manufacture which exceed those needed to complete the original purchase order.

8. INSPECTION AND REJECTION. Notwithstanding any prior payment or inspection by Superior, all goods are subject to final inspection and approval by Superior at Superior's place of business in Dallas, Texas within a reasonable time of delivery. Non-conforming goods may be rejected by Superior by seasonable notice to the Seller and Superior may charge Seller's account with any expenses reasonably incurred in their inspection, receipt, transportation, care and custody. Following notice of rejection, Superior may hold any rejected goods at the risk of Seller or may return such items to Seller at Seller's expense. After such notice of rejection, title to and risk of loss of the rejected goods shall be in Seller and Seller shall refund the full purchase price of such non-conforming goods to Superior.

9. WARRANTY. Seller warrants to Superior that all goods delivered under a purchase order will be free from defects in material and workmanship and will conform to the requirements of the purchase order including the applicable descriptions, specifications, and drawings that have been agreed to by the parties. Seller further warrants that its current and future manufacturing facilities and quality control procedures do and will comply with all applicable FAA regulations.

10. INDEMNITY. Seller shall defend, indemnify and hold Superior, its directors, officers, employees and agents harmless from and against any and all liabilities, claims, demands, suits, damages, losses and causes of action, including, without limitation, all attorneys' fees, costs and expenses, which may be made against or incurred by Superior a) for death, personal injury and/or for loss, damage or destruction of any property whatsoever arising out of or resulting from the condition of the goods delivered under any purchase order, and b) any illegal infringement or violation of any one or more patents or applications therefor.

11. ASSIGNMENT. Purchase orders may not be assigned by the Seller.

12. BUYER SUPPLIED ITEMS. Superior shall retain title to all Superior furnished drawings, equipment, data and information supplied to Seller. Seller shall be responsible for any loss or damage to the drawings, equipment, data or information supplied by Superior, reasonable wear and tear excepted. Seller will maintain the confidentiality of all such drawings, data and information and may not reproduce or divulge such information without the express written consent of Superior. Superior's drawings, equipment, data and information shall be used by Seller only for the performance of its obligations under the purchase order and Seller will return all drawings, equipment, data and information to Superior at Superior's request.

13. **LIMITATION OF DAMAGES.** Seller shall have no claim for damages, compensation, lost profits, allowance or otherwise by reason of any action taken or notice given by Superior, except as provided under the terms of this agreement.

14. **INVALIDITY.** In the event that any provision of this agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not effect any other provision hereof, and this agreement shall be construed as if such provision(s) had never been contained in this agreement.

15. **ARBITRATION.** Seller agrees that any dispute related to a purchase order or this agreement shall, on the written request of Superior, be submitted to arbitration under the rules as Superior and Seller shall agree. If no agreement can be reached, such arbitration shall be governed by the Commercial Arbitration Rules of the American Arbitration Association.

16. **NON-WAIVER.** No waiver of any provision of this agreement shall arise from any action or inaction of either party, except an instrument in writing expressly waiving the provision and executed by the party entitled to the benefit of the provision.

17. **ENTIRE AGREEMENT.** This agreement and the purchase orders of which it is a part constitute the entire agreement between Seller and Superior and neither party shall be bound by any communications between them unless the communication is (a) in writing, (b) bears a date contemporaneous with or subsequent to the date of this agreement, and (c) is agreed to by both parties. In the case of contradiction between this agreement and the purchase order, this agreement shall control.

18. **VENUE AND JURISDICTION.** Seller agrees and understands that the obligations of the parties under the purchase orders and this agreement shall be and are performable in Dallas County, Texas. Seller consents and agrees that venue of any suit or legal proceeding brought by Seller or those in privity with Seller shall be in Dallas County, Texas. Further, Seller agrees to hereby submit to the jurisdiction of the state or federal courts that are located in Dallas County, Texas, and designates the Secretary of State of Texas as its agent for service of process.

19. THE AGREEMENT AND THE PURCHASE ORDERS SHALL BE CONSTRUED AND INTERPRETED BY AND IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, AND WHETHER OR NOT ANY CONFLICTS OF LAW PRINCIPLE WOULD REFER THEIR INTERPRETATION TO THE LAW OF ANOTHER JURISDICTION.

20. **ACKNOWLEDGEMENT.** This order shall not be effective for any purpose nor shall Buyer be obligated to pay any moneys called for hereunder unless and until Seller

shall have signed and returned written acknowledgment and acceptance.

_____acknowledges receipt of Superior Air Parts, Inc. Purchase Order Standard Terms and Conditions and agrees to comply with the same on all purchase Orders received from Superior.

By (Signature): _____

Name (Printed): _____

Title: _____

Company: _____

Date: _____

**Amendment**
of **SUPPLIER AGREEMENT** (signed on 2001 December 15th)
between
Thielert Aircraft Engines GmbH ("TAE")
and
Superior Air Parts, Inc. ("SUPERIOR")

**The parties hereby agree modifications of the SUPPLIER AGREEMENT as follows:**

Section I, 1.05 <u>Termination and Modification</u> shall be replaced by:

**Forecast, Changes, Rescheduling**
(1) SUPERIOR shall declare within the context of any production purchase Order, as well as subsequent follow-on Orders, a "base schedule" of delivery requirements. The "base schedule" shall be for a period of thirty-six months and shall identify the rate of delivery for each month. The initial six months of deliveries in the "base schedule" represents SUPERIOR's obligation/liability, whereas the last thirty months of deliveries in the "base schedule" are anticipated quantities, which can be changed by SUPERIOR as follows:
- For crankshafts
  - any monthly quantity scheduled for delivery up to nine full calendar months from date of delivery scheduled can be changed up to plus/minus 75 percent,
  - any monthly quantity scheduled for delivery up to six full calendar months from date of delivery scheduled can be changed up to plus/minus 30 percent,
  - any monthly quantity scheduled for delivery up to three full calendar months from date of delivery scheduled can be changed up to plus/minus 15 percent.

  The quantity by which each month is reduced must be rescheduled for delivery.
  Any quantities scheduled for delivery within the last three full calendar months from date of delivery scheduled shall not be changed.

- For any other article
  - any monthly quantity scheduled for delivery up to six full calendar months from date of delivery scheduled can be changed up to plus/minus 75 percent,
  - any monthly quantity scheduled for delivery up to four full calendar months from date of delivery scheduled can be changed up to plus/minus 30 percent,
  - any monthly quantity scheduled for delivery up to two full calendar months from date of delivery scheduled can be changed up to plus/minus 15 percent.

  The quantity by which each month is reduced must be rescheduled for delivery.
  Any quantities scheduled for delivery within the last two full calendar months from date of delivery scheduled shall not be changed.

1

(2) SUPERIOR is obligated to update the base schedule monthly for a minimum period of thirty- six months quarterly.

Section I, 1.07 Delivery shall be replaced by:

Delivery
(1) If Orders are accepted by TAE, delivery shall be in compliance with the schedule contained in an order and shall be made by TAE at such times and places and of such items and quantities as agreed Delivery deadlines and delivery periods are only binding upon TAE if TAE has specifically confirmed them in writing as firm delivery dates, subject to the proviso that TAE itself obtain proper and timely delivery from the suppliers. Delivery periods commence once the order is accepted.
(2) Delivery is made when the Product arrives at Dresden Airport, Germany, or port of departure for ocean shipments.
(3) In the event of delayed, defective, insufficient volume of or unsuccessful delivery on the part of the suppliers of TAE and in the event of force majeure, industrial disputes, breakdowns and stoppages without fault, public disorder, official measures and other unforeseeable, extraordinary and blameless events affecting TAE or their suppliers, TAE is entitled to extend the delivery deadlines and delivery periods to a fair and reasonable extent. If TAE encounters or anticipates difficulty in meeting the delivery schedule, TAE shall notify SUPERIOR in writing, if possible.

Section II, 2.01 Effective Date shall be replaced by:

Term
Unless otherwise terminated in accordance with the provisions of this Supplier Agreement, this Agreement shall remain in force and effect up to and including December 31, 2007.
Unless notified with 12-month notice this agreement will renew automatically for 2 years.

Lichtenstein, 10-14-05                        Dallas, Texas 10-21-05
(Location, Date)                                 (Location, Date)

**Thielert Aircraft Engines GmbH**             **Superior Air Parts, Inc**

Frank Thielert                                  Tim Archer
President                                       President

2