1              IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE NORTHERN DISTRICT OF TEXAS

2                   DALLAS DIVISION

3 In Re:                    )    **Case No. 08-36705-bjh-11**
                       )    Chapter 11

4 SUPERIOR AIR PARTS, INC.,     )
                       )    Dallas, Texas

5         Debtor.          )    December 12, 2013
                       )    1:15 p.m.

6                        )
                       )    STATUS CONFERENCE

7                        )    MOTION TO CONTINUE HEARING
                       )

8

                  TRANSCRIPT OF PROCEEDINGS

9         BEFORE THE HONORABLE BARBARA J. HOUSER,
         UNITED STATES CHIEF BANKRUPTCY JUDGE.

10

APPEARANCES:

11

12 For the Debtor:            James F. Adams
                       Christopher Alan Robison

13                        PASSMAN & JONES, P.C.
                       1201 Elm Street, Suite 2500

14                        Dallas, TX  75270
                       (214) 742-2121

15 For Dr. Achim Ahrent,       Chester B. Salomon
Insolvency Administrator,   BECKER GLYNN MUFFLY CHASSIN &

16 Thielert AG; Thielert AG;     HOSINSKI LLP
Corporate Finance           299 Park Avenue

17 Partners Midcap GmbH:        New York, NY  10171
*(Telephonic)*               (212) 888-3033

18

For Dr. Bruno Kübler,       Daniel P. Winikka

19 Insolvency Administrator,   Craig F. Simon
Thielert Aircraft Engines,   SIMON, RAY & WINIKKA LLP

20 GmbH:                     2525 McKinnon Street, Suite 540
                       Dallas, TX  75201

21                        (214) 871-2292

22 Court Recorder:            Dennis Baird
                       UNITED STATES BANKRUPTCY COURT

23                        1100 Commerce Street, 12th Floor
                       Dallas, TX  75242

24                        (214) 753-2006

25

```
 1   Transcription Service:        Kathy Rehling
                                   311 Paradise Cove
 2                                 Shady Shores, TX  76208
                                   (940) 498-2402
 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
              Proceedings recorded by digital sound recording;
25               transcript produced by transcription service.
```

1                 DALLAS, TEXAS - DECEMBER 12, 2013 - 1:52 P.M.

2            THE COURT:  I'll take appearances.

3            MR. ADAMS:  Your Honor, Jim Adams and Chris Robison

4   here on behalf of Superior Air Parts.

5            MR. WINIKKA:  Good afternoon, Your Honor.  Dan Winikka

6   and Craig Simon on behalf of Dr. Bruno Kübler, insolvency

7   administrator for Thielert Aircraft Engines, GmbH.

8            THE COURT:  All right.  Mr. Adams?

9            MR. ADAMS:  Your Honor, we have two matters before the

10  Court today.  One is the status conference that the Court set,

11  and the other one is the motion of the -- Dr. Kübler in the

12  Thielert Aircraft Engines', which we refer to it as TAE for

13  simplicity's sake, motion to continue our motion to enforce.

14  And if I could give the Court a little bit of background to

15  bring you up to where we are in the case, I'm happy to do it if

16  the Court would appreciate it.

17           THE COURT:  Please.

18           MR. ADAMS:  Your Honor, back in April of this year,

19  Superior Air Parts sent a demand letter to the TAE, the

20  Thielert group over in Germany, requesting the return pursuant

21  to the confirmation order and the confirmation -- and the plan

22  of reorganization of various drawings, technical data, whatnot

23  that had been supplied to TAE during the business relationship

24  between Superior Air Parts and TAE.

25      As the Court might remember, part of the reorganization of

1    Superior was basically to allow it to go forward in its so-

2    called piece parts business, which include, among other things,

3    manufacturing replacement parts for Lycoming and Continental

4    engines and also Superior's own engine called the XP Series,

5    Experimental Series, 360 and 400, I think.

6        Anyway, after the confirmation, TAE, which was in its own

7    bankruptcy over in Germany, continued to be a supplier of parts

8    to Superior, so part of the confirmation order was a

9    requirement that people such as TAE return all of the parts and

10    intellectual property to Superior.  But since there was an

11    ongoing business relationship, Superior did not make the demand

12    for that return until, like I say, April of this year, when

13    their business -- yes?

14        THE COURT:  One problem.  Mr. Salomon asked to be

15    patched in by phone, --

16        MR. ADAMS:  Oh.

17        THE COURT:  -- and I just got reminded of that.  So,

18    sorry.  Hang on.  You don't have to repeat, but --

19        MR. ADAMS:  Oh.  Thank you, Your Honor.

20        MR. SALOMON:  Hello?

21        THE COURT:  Mr. Salomon?

22        MR. SALOMON:  Yes?

23        THE COURT:  This is Judge Houser.

24        MR. SALOMON:  Good afternoon, Judge Houser.

25        THE COURT:  Good afternoon.  We're taking up Superior

 1   Air Parts.  Mr. Adams is at the podium.  So, please.

 2              MR. ADAMS:  Thank you, Your Honor.

 3              MR. SALOMON:  Thank you, Judge.

 4              MR. ADAMS:  Your Honor, as I was trying to explain,

 5   part of the reorganization was the return of Superior's

 6   intellectual property to Superior.  And in the Thielert

 7   Aircraft Engines situation, since there was an ongoing business

 8   relationship, a demand was not made for the return of the

 9   drawings and technical data and whatnot until, like I said,

10   April of this year.  A letter was sent to Dr. Kübler, who was

11   the insolvency administrator, which I understand to be

12   basically like a bankruptcy trustee, for TAE, and also a letter

13   was sent to a company that apparently TAE had created post-

14   confirmation, a company by the name of Centurion.  And I

15   believe a copy might have also been sent to Mr. Salomon's

16   client, who is the administrator for the parent entity, called

17   TAG, Thielert Aviation Group I believe is what it's called.

18        Anyway, in April the letter went out.  In June, we got a

19   response from TAE's counsel, who's present here, basically

20   saying we need more details.  A letter went back in reply in

21   early July of 2013 trying to provide more detail, and then a

22   telephone conference was held July 11, 2013 in which a

23   representative of Superior was trying to provide additional

24   detail of what they were trying to get back.

25        As a result of statements made in that telephone

1    conference, we were uncomfortable because TAE was in the

2    process of selling substantially all its assets to a competitor

3    of Superior's, an offshoot of the Continental Motors group, is

4    my understanding.  So we went ahead and filed a motion to show

5    cause and basically saying that under the plan they were

6    supposed to give it back, under the confirmation order they

7    were supposed to give it back, we've made demand for it to come

8    back, they haven't given it back.  You know, please, Judge,

9    enforce your order.

10       And subsequently I'm told that the title "motion to show

11   cause" shows my age, because that apparently has fallen out of

12   favor.  But anyway, we filed that.  Set for hearing in August,

13   I believe, mid-August.  And supplied some additional

14   information to them, to the TAE people.  They had requested,

15   among other things, a copy of the supplier agreement and a

16   purchase -- sample purchase order.  We sent it to them.

17   Entered into a -- tolling agreements in early August with a

18   forbearance period which basically said that we wouldn't -- we

19   would agree to move the hearing on our motion to show cause

20   until sometime after October 30th, I believe it was, in order

21   to give Dr. Kübler and TAE more time to explore whether or not

22   they have our stuff.  Basically, what we were hearing was that,

23   you know, there are no more employees at TAE, and so Dr.

24   Kübler, like most bankruptcy trustees, was a little bit

25   uncertain as to exactly what he has and who it belongs to and

1  everything like that.

2      Anyway, I failed to file the tolling agreement with the

3  Court.  I had a number of family medical issues going on at the

4  time.  But we did call up Viola Salcido and tell her that the

5  tolling agreement had been entered into, requesting that it be

6  taken off the August 15th, I think it was, docket, and that

7  we'd probably be asking for it to be reset sometime after the

8  tolling period expired at the end of October.  And I actually

9  had a couple more conversations with Ms. Salcido in September

10  and October.  And then when the forbearance period was getting

11  ready to expire on October 28th, I sent a settlement proposal.

12  On October 30th, we got a rejection of our settlement proposal

13  and, for the first time ever, an arbitration demand.

14      We looked at the arbitration issue, and this is not set for

15  today, but basically it's a three-sentence paragraph that says

16  that TAE agrees to arbitrate if Superior requests arbitration.

17  So it looked like a one-way street to us.

18      So we were trying to reschedule the motion to show cause.

19  And then the Court, apparently not hearing from us, issued an

20  order denying the motion to show cause without prejudice for

21  want of prosecution.  So then we -- that was on November the

22  11th.  Or November 14th.  And the very next day, we filed

23  basically our motion to show cause in what I hope is the

24  correct terminology now, which is a motion to enforce, and set

25  it for hearing on the 18th of this month.  And at the request

1  of counsel for TAE, we ended up rescheduling that to the 20th

2  of this month.

3      On the 4th of this month, we received some requests for

4  production and requests for -- and some interrogatories.  And

5  then on the 9th of this month we received a preliminary

6  response to our motion to enforce, a motion to compel

7  arbitration, and a motion to continue the hearing on the motion

8  to enforce.  And that motion for continuance is set for today.

9  That's the other thing that's set for today.  And if I may

10 address that briefly.  While we don't buy TAE's argument on the

11 motion to compel arbitration because we believe it is a one-way

12 street, nonetheless, it makes logical sense to have that heard

13 first before the motion to enforce.  I mean, it just makes

14 sense to me to do it that way.

15      THE COURT:  But help me understand.  So, what --

16 you're seeking to enforce a provision in a contract that was

17 assumed pursuant to a confirmed plan and post-confirmation

18 terminated?

19      MR. ADAMS:  No, Your Honor.  What I'm seeking to

20 enforce is the Court's order requiring TAE to give us our stuff

21 back.  That's --

22      THE COURT:  Okay.  Well, how did that order come

23 about?

24      MR. ADAMS:  The order came about because that was a

25 provision in the plan of reorganization and the Court ended up

1    confirming the plan and requiring TAE, among others, to return

2    property to the Debtor.

3         (Pause.)

4              THE COURT:  One second.

5              MR. ADAMS:  Yes, Your Honor.

6         (Pause.)

7              THE COURT:  All right.  Go ahead.

8              MR. ADAMS:  Your Honor, on the confirmation order,

9    which is entry -- Document #404 in the case, there are several

10   provisions which we believe are relevant, one of which is the

11   Paragraph 36, which is the vesting of property with the

12   Debtor's estate, and then 37, which is the return of the

13   property pursuant to Section 612 of the -- 6.12 of the plan.

14             THE COURT:  Do you have documents that I can look at?

15             MR. ADAMS:  Your Honor, I have a document that has

16   highlighting on it, if I may show it to counsel?

17             THE COURT:  You may.  (Pause.)  Thank you, Mr. Adams.

18             MR. WINIKKA:   Thank you.

19        (Pause.)

20             THE COURT:  And what provision of the plan?

21             MR. ADAMS:  Um, --

22             THE COURT:  Or of this order?

23             MR. ADAMS:  Of the order, 30 -- I think it was 35 and

24   37 or 36 and 37.

25             THE COURT:  All right.

1          MR. ADAMS:  It should have some yellow highlighting on

2    it.

3       Your Honor, I also have a copy of the motion to enforce.

4          THE COURT:  Well, that's just the vesting.  That just

5    is the revesting.

6          MR. ADAMS:  And then 37, Your Honor.

7          THE COURT:  All right.

8          MR. ADAMS:  Your Honor, I also have a copy of the

9    motion to enforce, if the Court would like to look at that.

10   But basically it goes through the confirmation -- I mean, the

11   plan of reorganization and the confirmation and the request for

12   the return of the property, and then the lack of the return and

13   then the request that the Court enforce the confirmation order.

14         THE COURT:  That's not necessary.  That's not set for

15   hearing today.

16         MR. ADAMS:  Correct, Your Honor.

17         THE COURT:  I mean, the show cause was set because,

18   frankly, you reopened this case and then nothing was going on

19   on the face of the docket.

20         MR. ADAMS:  Yes, Your Honor.  And I apologize for

21   that.

22         THE COURT:  And so we just can't -- this is an old,

23   old, old case that was reopened for a narrow purpose.  A

24   lawsuit got filed.  It's now up on appeal.  And from my

25   perspective, this case needs to get re-closed.  And after we

1  basically issued a show cause order, you filed this motion to

2  enforce.  Is that about right?

3         MR. ADAMS:  I'm sorry.  After I filed the motion to

4  show cause?

5         THE COURT:  After we issued this status, setting this

6  for the status because nothing was happening in this, then you

7  filed the motion to enforce.

8         MR. ADAMS:  Oh.  Your Honor, what ended up happening

9  was I had filed my motion to show cause, we had gone into the

10 tolling period to allow TAE to investigate --

11        THE COURT:  No, no, no, I understand that.

12        MR. ADAMS:  Okay.  Okay.

13        THE COURT:  But then you didn't tell us anything.  I

14 mean, having a conversation with Ms. Salcido removing something

15 when you don't file something of record isn't all that helpful.

16        MR. ADAMS:  Well, I'm sorry, Your Honor.

17        THE COURT:  She only has 4,000-5,000 cases to keep

18 track of.

19        MR. ADAMS:  Your Honor, I understand, Your Honor.  My

20 father had been in the hospital with a stroke back in August,

21 which is when I would have filed --

22        THE COURT:  Much of this is happening?

23        MR. ADAMS:  -- that of record.  And I was literally

24 working from the hospital.

25        THE COURT:  All right.  So we've got the motion for --

1   to enforce set for hearing on --

2           MR. ADAMS:  The --

3           THE COURT:  -- December 20th?

4           MR. ADAMS:  That's correct, Your Honor.  And then the

5   motion to compel arbitration is out there.  And quite frankly,

6   it makes logical sense to hear the motion to compel arbitration

7   first.  Because if the Court punts us on arbitration, then you

8   don't have to decide the motion to enforce.  Now, I would hope

9   the Court would not punt us on arbitration and that we could go

10  forward with the motion to enforce.  We --

11          THE COURT:  And is the arbitration provision in the

12  underlying contract?

13          MR. ADAMS:  The arbitration provision is in the

14  supplier agreement, which is, I guess, an underlying contract.

15          THE COURT:  And that supplier agreement was assumed

16  pursuant to the plan, and then post-confirmation it was

17  terminated?

18          MR. ADAMS:  They've been buying stuff from them

19  pursuant to this contract, is my understanding, all the way

20  through April or May of this year.

21          THE COURT:  Okay.  But I guess answer my question.  It

22  was assumed pursuant to the plan?

23          MR. ADAMS:  I believe --

24          THE COURT:  Yes?

25          MR. ADAMS:  I believe it was, Your Honor.

1          THE COURT:  Okay.

2          MR. ADAMS:  Either that or run through.

3          THE COURT:  And is it still in effect or was it

4    terminated between the parties?

5          MR. ADAMS:  It was effectively terminated in April of

6    this year.

7          THE COURT:  All right.

8          MR. ADAMS:  That's my understanding.  Your Honor, --

9          THE COURT:  We don't have that contract.  Nobody has,

10   in all of the stuff that's been provided, we have never seen

11   it.  Or at least we don't have it, to our knowledge.  Has

12   anyone provided us a copy of the contract that --

13         MR. ADAMS:  I thought it was Exhibit A to the

14   response, preliminary response to our -- to the motion to

15   enforce.

16         THE COURT:  Okay.  So was that recently filed?

17         MR. ADAMS:  Yes.  That would have been on the 9th,

18   Your Honor.

19         THE COURT:  Okay.  Well, since -- no offense, since

20   it's not set for hearing until the 20th, we have not seen it.

21   So we now have the supplier contract that is at issue?

22         MR. ADAMS:  That's my understanding, Your Honor.

23         THE COURT:  All right.  And is there a provision in

24   that contract that is the alleged arbitration provision?

25         MR. ADAMS:  That's correct, Your Honor.  And it's

1    Section 525 or something like that.

2         THE COURT:  Okay.

3         MR. ADAMS:  But Your Honor, we have been discussing

4    among counsel for the various parties a way to do this in an

5    organized, orderly fashion.  And like I say, the motion to

6    compel arbitration was filed Monday of this week.  We were

7    proposing that Superior have two weeks, which would make it

8    through the -- where's my calendar?

9         THE COURT:  23rd?

10        MR. ADAMS:  Through the 23rd of this month to file a

11   response, and then the Movants would have until the 30th of

12   this month to file a reply.  And then we checked with --

13   Nicole?

14        THE COURT:  Uh-huh.

15        MR. ADAMS:  Whose last name unfortunately I don't --

16        THE COURT:  Whittington.

17        MR. ADAMS:  Okay.  Checked with Nicole about the

18   availability of the Court, if possible, to hold a 30-minute

19   hearing on the motion to compel arbitration on the morning of

20   January 7th, and then, assuming that the Court doesn't grant

21   the motion, have a hearing on the motion to enforce on January

22   21st.  My understanding is that the Court is fortunate enough

23   to get the 20th off.

24        THE COURT:  What's the 20th?

25        MR. ADAMS:  I don't know.  Presidents' Day?

 1          A VOICE:  Probably --

 2      (Momentary recording lapse.)

 3          THE COURT:  I'm not wildly enthusiastic about the 7th

 4  for a hearing on this.

 5          MR. WINIKKA:  Your Honor, if I might interject here

 6  for a minute.

 7          THE COURT:  Uh-huh.

 8          MR. WINIKKA:  Dan Winikka for the record.  Your Honor,

 9  with respect to the scheduling, I'm not -- I guess, you know,

10  we had talked about these dates with Mr. Adams earlier today

11  and we've been trying to reach an agreement on a schedule here

12  for all of these things for what amounts to almost three weeks

13  now.  The 7th, you know, in our view 30 minutes may not be

14  enough.  But probably more importantly, January 21st for the

15  motion to enforce, it was our understanding that maybe there

16  was only an hour and a half available on that date.  And for an

17  evidentiary hearing with multiple witnesses, it seems to us

18  that that may not be enough time.

19      I would also point out that we have asked Mr. Adams whether

20  they intend to serve discovery, which they haven't done yet.

21  You know, to date he's indicated he's not sure whether they

22  will or not.  But if they do, then this schedule won't work as

23  well with January 21st.

24          THE COURT:  Well, how much time do we need?  And quit

25  asking for hearings without conferring with each other.  We

1    want a good joint time estimate for contested hearings.  So,

2    how much time do the parties think they need for the

3    arbitration, the motion to compel arbitration?

4            MR. ADAMS:  Your Honor, I think that the motion to

5    compel arbitration will probably be able to be ruled on on the

6    papers, and so I'm thinking 15 minutes a side should give

7    plenty of time to --

8            THE COURT:  I understand that's what you think, but if

9    30 minutes isn't enough, what is?  This doesn't seem like it's

10   that complicated an issue.

11           MR. WINIKKA:  Yes, Your Honor.  We would think an hour

12   to an hour and a half.

13           THE COURT:  It's going to have been fully briefed and

14   you think you're going to need an hour and a half?  What are we

15   going to -- no evidence, right?

16           MR. WINIKKA:  Not from our position, Your Honor.

17           MR. ADAMS:  Your Honor, --

18           THE COURT:  I assume the provision is either

19   enforceable or it's not.  Right?

20           MR. ADAMS:  Correct, Your Honor.

21           THE COURT:  What am I missing?

22           MR. WINIKKA:  I don't think you're missing anything,

23   Your Honor.

24           THE COURT:  All right.  (Pause.)  All right.  How

25   about 9:00 o'clock on January 10th?

1          MR. WINIKKA:  Your Honor, Dan Winikka.  That's okay

2    for us.

3          MR. ADAMS:  Your Honor, I'm sorry, 9:00 o'clock on

4    which?

5          THE COURT:  The 10th.

6          MR. ADAMS:  Your Honor, I'm scheduled to be in San

7    Antonio the 9th and the 10th.  I'm available the entire

8    following week.

9          THE COURT:  That's my trial week, so --

10         MR. ADAMS:  Oh, I'm sorry.  Or on the 8th, for that

11   matter.  I can rearrange things on the 8th.

12         THE COURT:  No.  It's either the 9th or 10th or it's

13   going to go to the week of the 20th.

14         MR. WINIKKA:  Your Honor, this is Dan Winikka again

15   for the record.  You know, I would point out -- Mr. Adams kind

16   of gave the history here -- that Dr. Kübler, you know, takes

17   his responsibilities very seriously here, and we've been

18   seeking additional information for some time so he can properly

19   determine what's Superior's and what's not.  And, you know, we

20   don't believe this is really an issue of compliance with the

21   order.  He fully intends to return whatever is owned by

22   Superior and has an obligation to and takes that obligation

23   very seriously.

24      As a result of that, when this impending sale is going on,

25   he has segregated all property that could potentially be owned

1   by Superior.  So it's been set aside for safekeeping.  And I

2   just point that out because we don't believe there's really any

3   -- necessarily any urgency here.  And so maybe it would make

4   sense to put this on more of a normal schedule, and we could

5   use January 21st for the arbitration motion.  And then if it

6   doesn't go to arbitration, set the hearing on the motion to

7   enforce, you know, for a later date, which would give the

8   parties plenty of time to do whatever discovery needs to get

9   done as well.

10        THE COURT:  I guess if the -- well, I don't understand

11  why this can't be resolved.  If everybody is taking their

12  obligations seriously and a bunch of property has been

13  segregated, go take a look at it and -- at least partially I

14  understand that they keep asking for a list of what you think

15  they have that -- and you just keep giving them general

16  descriptions.  I feel like, if property has been set aside, can

17  we not determine if that's Superior's property?

18        MR. ADAMS:  Your Honor, perhaps the solution is for me

19  to send an employee of the client over to Germany and just look

20  through it and see what they believe is theirs, Superior's, and

21  what is not.  And do the -- do it that way.

22        THE COURT:  Well, I don't care how it gets done, but

23  you know, this sort of -- it just seems like we're going back

24  and forth.  Do you have a list of property that you believe

25  they need to give to you?

1              MR. ADAMS:  I can develop a list of property.  And --

2              THE COURT:  Haven't they been asking for a list of

3      property?  It's at least my impression that they have been.

4              MR. ADAMS:  Yes, Your Honor, but, I mean, it's like

5      trying to describe boxes of documents that have been given to

6      them for multiple parts over multiple years.  Yes, that can go

7      back and be retraced to get all that.  But I'm thinking that

8      the easier solution is just have somebody hop on a plane, go

9      over to Germany and look at it.

10             THE COURT:  Well, again, I only offer the observation

11     that if you're seeking to enforce the plan, --

12             MR. ADAMS:  Yes, Your Honor.

13             THE COURT:  -- you're going to have to tell me what it

14     is that you think they have that they haven't given you.

15             MR. ADAMS:  Yes, Your Honor.  I realize that.  And

16     that's --

17             THE COURT:  And unless we have that list, I don't know

18     how to order them to give you something.  You know, I can say

19     give them everything that belongs to them, but what is that?

20     So, I mean -- and they can say, we want to give you what's

21     yours, but we now have a bankruptcy -- the equivalent of a

22     bankruptcy trustee, so I don't know if he knows exactly what is

23     Superior's or not.

24         But it seems like this cries out for people to just get

25     practical and go over and see what he has and what you think is

1    yours.  And again, maybe that doesn't resolve it, but it seems

2    like we have got to have a list of what it is Superior thinks

3    --

4            MR. ADAMS:  Yes, Your Honor.

5            THE COURT:  -- is in the third party's possession that

6    they won't give back.

7            MR. ADAMS:  Yes, Your Honor.  And I mean, that's going

8    to really be the bulk of our testimony on the motion to

9    enforce, is a witness who will be able to articulate exactly

10   what it is.

11       Your Honor, quite frankly, I mean, it's beginning to sound

12   like the week of the 21st is the most practical time to hold a

13   hearing on the motion to compel arbitration, and that can kind

14   of keep everybody's feet to the fire on resolving the issue of

15   exactly what's over there and exactly what the client is

16   seeking the return of.

17           THE COURT:  Well, all right.  So we could -- we have

18   time available on the 21st, which is Tuesday.  So we could give

19   you an hour for the motion to compel arbitration on Tuesday the

20   21st at 9:15, if that works.

21           MR. WINIKKA:  Yes, Your Honor.  That works.

22           THE COURT:  Mr. Adams, does that --

23           MR. ADAMS:  Yes, Your Honor.  And what we'll try to do

24   in the meantime is arrange for a mutually agreeable time for

25   somebody from Superior to go over to Germany and take a look at

1   this stuff that's been segregated.  And hopefully you won't

2   ever hear from us again.

3          THE COURT:  Well, I need to hear from you again

4   because we need to get the bankruptcy case re-closed.

5          MR. ADAMS:  Yes, Your Honor.  Yes, Your Honor.

6          THE COURT:  So, not hearing from you is what caused

7   this whole process to start again.

8          MR. ADAMS:  Your Honor, I have a question regarding

9   that.  Assuming that we can get things with the Thielert group

10  resolved, while the Lycoming issue is up on appeal -- I think

11  it's in Judge Lindsay's court -- what is this Court's

12  preference on how we handle the fact that this case is open?  I

13  mean, is it possible to close this case even though it's on

14  appeal, or --

15         THE COURT:  Well, I mean, that's what you were being

16  asked to come in and talk about, --

17         MR. ADAMS:  Okay.

18         THE COURT:  -- is why we couldn't go ahead and re-

19  close the case.

20         MR. ADAMS:  I just don't know if, --

21         THE COURT:  So you need to --

22         MR. ADAMS:  -- procedurally, if that's --

23         THE COURT:  You need to look at that --

24         MR. ADAMS:  Okay.

25         THE COURT:  -- so that we can figure out if we can re-

1   close it.

2      For example, it may be possible to re-close it, and if

3   Judge Lindsay -- I guess I don't know enough -- I don't

4   remember enough about that lawsuit to know the answer.  But I

5   assume it's possible that he could send something back down

6   here, and if he does then there needs to be a bankruptcy case

7   reopened.  If we closed it, we'd need to reopen it again to

8   deal with whatever he ordered us to.

9      What are the alternatives coming out of that?

10          MR. ADAMS:  Well, my only concern, of course, is that

11   somehow closing the case here would moot the appeal.

12          THE COURT:  Well, I'm happy for you to look at that.

13          MR. ADAMS:  Okay.

14          THE COURT:  But I, you know, --

15          MR. ADAMS:  And quite frankly, we --

16          THE COURT:  I don't know that --

17          MR. ADAMS:  -- ought to get Mr. Olson involved on

18   that, since it's his appeal.

19          THE COURT:  Right.  How long has -- that's been

20   pending for --

21          MR. ADAMS:  I want to say the briefing was finished

22   last July.  June, maybe.

23          THE COURT:  June of this year?

24          A VOICE:  Your Honor, I think the briefing on the

25   appeal was done by probably March/April this year.

1        THE COURT:  And you've heard nothing further from the

2  Court?

3        MR. ADAMS:  No requests for anything.

4        THE COURT:  Okay.  Well, we should go ahead, though,

5  and get the motion to enforce set.  So, how much time do we

6  anticipate that taking?

7        MR. ADAMS:  Your Honor, I would anticipate 30 minutes

8  of testimony and 15 minutes of argument.  Again, the testimony

9  is going to be --

10        THE COURT:  For you?

11        MR. ADAMS:  The testimony is going to be the bulk of

12  it, which is basically somebody getting up and saying, here is

13  what they have, here is what we need back.  And you know, I --

14        THE COURT:  So you need 45 minutes --

15        MR. ADAMS:  Yes, Your Honor.

16        THE COURT:  -- for your case in chief?

17        MR. ADAMS:  Yes, Your Honor.

18        THE COURT:  And argument?  How much do you need?

19        MR. WINIKKA:  Probably about the same, Your Honor.

20        THE COURT:  All right.  So that's an hour and a half

21  hearing on the motion to enforce?

22        MR. ADAMS:  Yes, Your Honor.

23        THE COURT:  Okay.

24        MR. WINIKKA:  Your Honor, I would point out, since we

25  don't have their responses to the discovery yet, it's -- you

1  know, we're making our best predictions here, but I can't

2  predict what --

3      Also, Your Honor, it's fine if Superior wants to send

4  somebody to Germany, but we're still going to need the

5  responses to our discovery, because what we've requested is the

6  list you're talking about, and we need to see what they've

7  furnished us.

8      And some of that information over there is going to be, you

9  know, TAE intellectual property, and so, you know, we may need

10  some type of protective order as well.  So, I just wanted to

11  point that out for the record.

12          THE COURT:  Fair enough.

13      (Pause.)

14          THE COURT:  How about February 17th?  Does that work

15  for the parties?

16          MR. ADAMS:  Your Honor, that's --

17          THE COURT:  Presidents' --

18          MR. ADAMS:  That works for me.

19          THE COURT:  That's a federal holiday, I'm told,

20  Presidents' Day.

21          MR. ADAMS:  That's why you still have it open.

22          THE COURT:  How about the 18th?

23          MR. WINIKKA:  That's fine with us, Your Honor.

24          MR. ADAMS:  That's okay with us, Your Honor.  Your

25  Honor, I have not checked with the client to make sure my

 1  witness is available, but --

 2          THE COURT:  It's far enough away, surely the witness

 3  will be available.

 4          MR. ADAMS:  Yes, Your Honor.

 5          THE COURT:  How about 9:15?

 6          MR. ADAMS:  Yes, Your Honor.

 7          THE COURT:  Is the witness local?

 8          MR. ADAMS:  I have two witnesses that would be my

 9  primary choices.  One's local, and one -- the other one is

10  local but he travels to China just constantly.

11          THE COURT:  All right.  Well, if they're local,

12  assuming they're in town, then 9:15 works, so --

13          MR. ADAMS:  Yes, Your Honor.

14      And Your Honor, since we're doing the hearing on the 21st

15  on the motion to compel arbitration, should we just go ahead

16  and do the regular 21-plus-4-day response time for the motion

17  to compel and then I can't even remember what the Local Rules

18  are on the reply.

19          THE COURT:  No.  I would -- I'd like to go ahead and

20  get those briefs in.

21          MR. ADAMS:  Okay.  Thank you, Your Honor.

22          THE COURT:  So, no reason not to do that, from my

23  perspective.

24          MR. WINIKKA:  Your Honor, just for the record, as Mr.

25  Adams pointed out with respect to his client, our client would

1   be -- witness would be coming from Germany.  And so we also

2   have not confirmed February 18th because that wasn't a date

3   we'd talked about before, but --

4          THE COURT:  Again, surely it's a convenient time.

5   It's far enough away that I would like to think schedules could

6   accommodate that date.

7          MR. WINIKKA:  Understood, Your Honor.

8          THE COURT:  All right.  What else do we need to talk

9   about?

10          MR. ADAMS:  I think that's it, Your Honor.  Thank you

11   very much for your time.

12          MR. SALOMON:  Judge, Judge, it's Chester Salomon.  May

13   I have permission to speak briefly?

14          THE COURT:  About what?

15          MR. SALOMON:  Well, first, there was a reference made

16   to TAG having been sent a letter.  Mr. Adams said that at the

17   beginning of his presentation.  My client doesn't have any

18   recollection -- any record of having gotten a letter.  That's

19   point one.

20      Point two and more importantly, it looks as if this is a

21   fight between Superior and TAE and Dr. Kübler, its insolvency

22   administrator.  TAE in fact does have some basic documents that

23   it received in 2008.  These are not technical documents,

24   according to my client.  They relate to the due diligence

25   process for the acquisition.  TAG bought Superior, bought the

1  shares of Superior, in -- I'm not sure when, in the mid-2000s.

2  And the documents include loan agreements and other general

3  documents that you'd expect a parent company to have concerning

4  transactions with a subsidiary.

5     We would be willing to make the documents that we have

6  available to Superior's representative, and I would like to

7  propose that we -- that you authorize us to scan the copies of

8  the documents that we have and forward them to either Mr. Adams

9  or to a representative of Superior that would be designated.

10  And then, if there really is no other relief that is being

11  sought against TAG, I would request that we be relieved from

12  any further participation in these proceedings.

13          THE COURT:  Well, you need to visit with Mr. Adams

14  offline about that.  And if he's agreeable, he'll remove you;

15  if he's not, then so be that.

16          MR. ADAMS:  I'll contact Mr. Salomon and work with

17  him, Your Honor.

18          THE COURT:  All right.

19          MR. ADAMS:  Anything else, Your Honor?

20          THE COURT:  Not from my perspective.  Thank you very

21  much.

22          MR. ADAMS:  May we be excused?

23          THE COURT:  You may.  Thank you.

24          MR. ADAMS:  Thank you.

25          MR. SALOMON:   Thank you.

1          MR. WINIKKA:   Thank you, Your Honor.

2          MR. SALOMON:   Bye.

3          THE COURT:   Bye-bye.

4      (Proceedings concluded at 2:35 p.m.)

5                          --oOo--

6

7

8

9

10

11

12

13

14

15

16

17

18

19                      CERTIFICATE

20     I certify that the foregoing is a correct transcript from

21  the digital sound recording of the proceedings in the above-

22  entitled matter.

23

24  _____        _____

Kathy Rehling, CET**D-444                      Date
25  Certified Electronic Court Transcriber

1                               INDEX

2   PROCEEDINGS                                              3

3   WITNESSES

4   -none-

5   EXHIBITS

6   -none-

7   RULINGS

8   END OF PROCEEDINGS                                     28

9   INDEX                                                 29

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25