Craig F. Simon
Texas Bar No. 00784968
Daniel P. Winikka
Texas Bar No. 00794873
Simon, Ray & Winikka LLP
2525 McKinnon Street, Suite 540
Dallas, TX 75201
Phone: (214) 871-2292
Facsimile: (469) 759-1699
Counsel for Dr. Kübler, in his capacity as Insolvency
Administrator of Thielert Aircraft Engines GmbH

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>SUPERIOR AIR PARTS, INC.<br><br>Debtor. | Chapter 11<br><br>Case No. 08-36705-BJH-11 |

**REPLY TO SUPERIOR AIR PARTS, INC.'S RESPONSE TO
MOTION TO COMPEL ARBITRATION**

Dr. Bruno Kübler, in his capacity as insolvency administrator (the "Insolvency Administrator") of Thielert Aircraft Engines GmbH ("TAE"), files this Reply to Superior Air Parts, Inc.'s ("Superior") Response [D.I. 696] to TAE's Motion to Compel Arbitration [D.I. 689]. In support of this Reply, the Insolvency Administrator respectfully states as follows:

**I.    OVERVIEW[1]**

1.    The parties' dispute centers around Superior's contention that TAE is in possession of property Superior owns. Remarkably, Superior asserts that the relief it seeks in its

---

[1] Superior's Response contains several factual mischaracterizations of events preceding the filing of the Motion to Compel Arbitration. For instance, Superior suggests that the Insolvency Administrator unduly delayed seeking a continuance on the Motion to Enforce. (see Response at 8). In point of fact, the Insolvency Administrator filed the motion for a continuance only after waiting for nearly two weeks for Superior to respond to a request to reschedule the Motion to Enforce so that the arbitration issue could be heard first and only to have Superior subsequently show up at the status conference and agree to have the arbitration issue heard first. In the interest of brevity, however, the Insolvency Administrator is not otherwise addressing Superior's various mischaracterizations.

Motion to Enforce "is not dependent on the 2001 Supplier Agreement or any clause therein…" (see Response at 9).  At the same time, however, Superior states that "Superior agreed to furnish its specifications, designs, test results, computations, drawings and/or other technical data to TAE . . . [and] TAE agreed to safeguard and return such property to Superior upon termination of the supplier relationship."  (Response at 2).  According to Superior, it is the Supplier Agreement that contains these agreements of Superior and TAE.  Indeed, Superior's contention that the relief it seeks is not dependent upon the Supplier Agreement is directly at odds with Superior's prior contention, in response to the Insolvency Administrator's request for documentation establishing ownership, that Superior's ownership rights are based on the Supplier Agreement.   See July 18, 2013 letter from Adams, attached to Motion to Compel as Exhibit E ("Section 3.02 [of the Supplier Agreement] provides that (1) Superior shall retain title to all Superior IP supplied to TAE…").  Absent the Supplier Agreement, Superior would have no basis for its ownership claims.[2]

2. As described in the Motion to Compel, Superior's Motion to Enforce requires two separate determinations.  First, Superior must establish that the Insolvency Administrator is in possession of property that belongs to Superior.  Because, based on Superior's claims, it appears that any property supplied to TAE was supplied pursuant to the Supplier Agreement, determination of the threshold ownership issue necessarily implicates the Supplier Agreement and the parties' dealings thereunder.  Second, Superior must establish that the Court's Confirmation Order requires the Insolvency Administrator to return such property.  Because the Insolvency Administrator agrees to return any property that is determined to belong to Superior, this second issue is in reality no issue at all.

3. The question before the Court is whether the Court or an arbitrator should decide what property, if any, the Insolvency Administrator has that Superior owns. Because Superior's alleged ownership rights stem from an agreement that provides for arbitration of "any dispute related to [the Supplier Agreement]," the ownership issue must be arbitrated.  Further, because

---

[2] While Superior tries to hinge its claims on the Court's Confirmation Order, that order did not include a determination of what property Superior owns.  Instead, it provided that any property that was owned by Superior was to be returned to Superior.

2

the ownership issue must be resolved before the Court can make any ruling on the Motion to Enforce and since the Insolvency Administrator will promptly return to Superior any property that the arbitrator determines Superior owns, the Insolvency Administrator respectfully requests that the Court dismiss the Motion to Enforce without prejudice or, in the alternative, stay all proceedings related to the Motion to Enforce and adjourn the scheduled hearing on that matter until the arbitrator issues the necessary ruling resolving the ownership dispute.

## II.    ARGUMENT AND AUTHORITIES

### *The Ownership Dispute is Within the Scope of the Arbitration Clause*

4.     Superior contends that the arbitration clause in section 10.05 of the Supplier Agreement permits Superior, but not TAE, to require arbitration.  Superior's argument in this regard requires a narrow reading of the arbitration clause that ignores a key aspect of the clause. In determining the scope of an arbitration agreement, courts must resolve any doubts about the scope of an arbitration clause in favor of arbitration.  Prudential Sec., Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex. 1995) ("a court should not deny arbitration '*unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue.'");  Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960) ("[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage"); Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004) ("once a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration").

5.     Superior has failed to establish that the arbitration clause is not susceptible to an interpretation that the ownership dispute is arbitrable.  Prudential Sec., 909 S.W.2d at 899.  On its face, the arbitration clause applies to "any dispute related to this Agreement."  In addition, while Superior emphasizes that the paragraph begins with "TAE agrees," it all but ignores the fact that the clause expressly provides that arbitration may be invoked by "the other party."

3

Stated differently, had the parties intended for Superior to be the only party entitled to invoke arbitration under section 10.05, it would have been very easy to expressly say so. Rather than providing that arbitration could be commenced "on the written request of *the other party*", the parties would have simply said that arbitration could be commenced "on the written request *of Superior*." Indeed, as reflected by the separate arbitration provision applicable to purchase orders between the parties, the parties knew how to do precisely that. Compare Supplier Agreement section 10.05 ("on the written request of *the other party*") and Schedule 1.02 ("on the written request *of Superior*").[3]

6. The "other party" language in section 10.05 is similar to the language found in the parties' forum selection clause in section 10.02 ("brought by the other"). Section 10.02 begins with "The parties agree" rather than "TAE agrees" as found in 10.05. In each case, notwithstanding the different lead-in to the provision, the "other" and "other party" language evidences the parties' intent that either party may invoke the applicable provision. And, contrary to Superior's position, including a forum selection clause is in no way inconsistent with permitting either party to require arbitration because arbitration is an optional procedure under the agreement.

7. Finally, the Supplier Agreement and the arbitration clause require that an arbitrator, not the Court, resolve any dispute regarding arbitrability. See AT&T Technologies, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). Superior has failed to address this provision of the Supplier Agreement in its response.

### *The Court Lacks Discretion to Deny Arbitration*

8. Superior argues that the question of compliance with the Confirmation Order is a core proceeding and that the arbitration would conflict with the purposes of the Bankruptcy Code because it would deny the Court the ability to enforce its own order. Accordingly, Superior contends that the *National Gypsum* test is met.

---

[3] Schedule 1.02 applies to sales of product pursuant to purchase orders between the parties. See Supplier Agreement section 1.02. Product sales are not at issue in the Motion to Enforce or in the Insolvency Administrator's arbitration demand.

4

9. Superior's analysis rests on the faulty premise that the arbitration will address Superior's request to enforce the Court's Confirmation Order. Quite obviously, Superior frames the analysis in such a way because the actual issue to be arbitrated – the question of ownership – does not satisfy the two-prong *National Gypsum* test. A proceeding to determine ownership over property asserted to be owned by a reorganized debtor that emerged from bankruptcy over four years ago is not a core proceeding. Similarly, an arbitration proceeding over ownership will not conflict in any way with the purposes of the Bankruptcy Code nor will it interfere in any way with this Court's ability to interpret or enforce its own orders. In the unlikely event proceedings to enforce the Confirmation Order are required after the arbitration, those proceedings could be conducted in this Court.[4]

### III. CONCLUSION

The Insolvency Administrator respectfully requests that the Court grant the Motion to Compel in all respects.

Dated: December 30, 2013

                                                **SIMON, RAY & WINIKKA LLP**

                                                By: */s/ Daniel P. Winikka*

                                                Craig F. Simon, Esq.
                                                State Bar No. 00784968
                                                Daniel P. Winikka, Esq.
                                                State Bar No. 00794873
                                                2525 McKinnon Street, Suite 540
                                                Dallas, TX 75201
                                                Telephone: (214) 871-2292
                                                Facsimile: (469) 759-1699

                                                ***Counsel for the Insolvency Administrator***

---

[4] As explained in the Insolvency Administrator's Motion to Compel, if the arbitrator determines that the Insolvency Administrator is in possession of property owned by Superior, the Insolvency Administrator will return such property to Superior. As a result, further proceedings are not likely to be necessary.

5

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on this 30th day of December 2013, a true and correct copy of the foregoing document has been served on the parties listed below via the Court's ECF filing system, first class mail or other appropriate means.

                                                    */s/ Daniel P. Winikka*

                                                    Daniel P. Winikka

U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242-1496

Jerry Alexander
James Adams
Christopher Robison
Passman & Jones
1201 Elm Street, Suite 2500
Email:  alexanderj@passmanjones.com
          jimadams@passmanjones.com
          robisonc@passmanjones.com