# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **IN RE:** | ) Case No. 08-36705-bjh11 |
| | ) Chapter 11 |
| **SUPERIOR AIR PARTS, INC,** | ) |
| | )  Courtroom 2 |
| | ) 1100 Commerce Street |
| **Debtor.** | ) Dallas, Texas 75242-1496 |
| | ) |
| | ) January 21, 2014 |
| | ) 10:07 A.M. |

TRANSCRIPT OF MOTION TO COMPEL ARBITRATION (DOC. 689).
BEFORE HONORABLE BARBARA J. HOUSER
UNITED STATES CHIEF BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Passman & Jones |
| | By:  JAMES F. ADAMS, ESQ. |
| | CHRISTOPHER ROBISON, ESQ. |
| | 1201 Elm Street, Suite 2500 |
| | Dallas, Texas 75270 |
| | |
| For Insolvency | Simon, Ray & Winikka, LLP |
| Administrator, Dr. Kubler: | By:  CRAIG SIMON, ESQ. |
| | DANIEL P. WINIKKA, ESQ. |
| | 2525 McKinnon Street |
| | Suite 540 |
| | Dallas, Texas 75201 |
| | |
| ECRO: | Dennis Baird |

**TRANSCRIPTION SERVICE:**   **TRANSCRIPTS PLUS, INC.**
**435 Riverview Circle**
**New Hope, Pennsylvania 18938**
**Telephone: 215-862-1115**
**Facsimile: 215-862-6639**
e-mail CourtTranscripts@aol.com

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

2

1          THE COURT:  Appearances, please.

2          MR. SIMON:  Your Honor, good morning.  Craig Simon

3 and Dan Winikka for the insolvency administrator, Dr. Kubler.

4          MR. ROBISON:  Good morning, Your Honor.  Chris

5 Robison and Jim Adams for Superior Air Parts.

6          THE COURT:  Please.

7          MR. SIMON:  Thank you, Your Honor.  Again, Your

8 Honor, Craig Simon for the insolvency administrator.

9          We're here today on Dr. Kubler's motion to compel

10 arbitration.  Because I think the papers may be somewhat

11 confusing on this point, I want to be clear about what we are

12 seeking to arbitrate and what we are not seeking to arbitrate.

13          We are not asking the Court to order arbitration of

14 the question of whether or not the Court's confirmation order

15 has been complied with.  We agree that that question, to the

16 extent it ever needs to be addressed, which it will not,

17 parenthetically, should be addressed by this Court.

18          What we are asking the Court to do is to enforce the

19 arbitration clause in a contract that provides for the very

20 ownership rights that Superior is saying it has.

21          THE COURT:  But the contract seems to have a one way

22 arbitration clause:  It's Superior that can demand arbitration,

23 not you.

24          MR. SIMON:  Well, that is certainly Superior's read

25 of it, Your Honor.  That's not our read of it.  I will --

1              THE COURT:  Well, then let's look at it.  Because

2  it's how I'm reading it, too.  And if you don't have a right to

3  compel arbitration, we're sort of done, right?  If the contract

4  -- if --

5              MR. SIMON:  I would agree with that, Your Honor.

6              THE COURT:  If the contract says Superior can demand

7  arbitration --

8              MR. SIMON:  I absolutely agree with that, Your Honor.

9  If the Court reads it that way, and there are a couple of legal

10  principles, I think, that apply with respect to the

11  construction.  Namely that any doubts regarding whether or not

12  the arbitration clause does provide a right for my client to

13  invoke it, any doubts must be resolved in favor of arbitration.

14              But the arbitration clause at issue, Your Honor, is

15  at Page 6 of the supplier agreement, and Section 10.05.  And I

16  will agree that it begins with the words, "TAE agrees," but it

17  says, "any dispute related to this agreement, including the

18  arbitrability of this agreement, shall, on the written request

19  of the other party."

20              So what Superior wants to do here is they want to

21  read the "other party" to mean Superior.  And what I would

22  submit to Your Honor is that if the parties had intended for,

23  quote, "the other party" to mean, quote, "Superior," they could

24  have easily said Superior.

25              THE COURT:  Isn't there another provision, though?

4

1 | There is, Your Honor, it doesn't apply.  And I think that

2 | actually supports Dr. Kubler's position here.

3 |          The other provision, I think the one you're referring

4 | to, Your Honor, is at Schedule 1.02, about three or four pages

5 | back in the agreement.

6 |          THE COURT:  Yup.

7 |          MR. SIMON:  And this provision, by the way, governs

8 | the purchase orders between the parties.  So this particular

9 | dispute, this ownership dispute is not related to a purchase

10 | order.  So Section -- Schedule 1.02 does not apply to this

11 | dispute.

12 |          And I think actually the language in Paragraph 15 of

13 | Schedule 1.02 suggests how the parties would have worded the

14 | arbitration clause in Section 10.05 had they intended it to be

15 | a one-way street.

16 |          THE COURT:  Well, except that says "Seller agrees

17 | that any dispute related to a purchase order or this agreement

18 | shall" --

19 |          MR. SIMON:  That's -- that is exactly what it says.

20 | But Schedule 1.02 itself does not apply to this dispute because

21 | Schedule 1.02 only applies to purchase orders.  That's set

22 | forth in --

23 |          THE COURT:  Well, what's the disagreement then that's

24 | referenced -- if that's true, that you didn't need this

25 | agreement.

5

1          MR. SIMON:  Well, if you have -- I would submit to

2  you, Your Honor, that if the parties have a dispute pursuant to

3  a purchase order that involved some term or condition of the

4  main agreement, as well, then Schedule 1.02 provides that only

5  Superior can invoke the arbitration right.

6          THE COURT:  Well, but that's not what this says.  It

7  says, "Seller agrees that any dispute related to a purchase

8  order or this agreement shall."

9          MR. SIMON:  Well, let me -- let me go back to this,

10  Your Honor.  And I will be the first one to concede this

11  contract is not very artfully drafted.

12                          (Laughter)

13          MR. SIMON:  Okay.  I don't s--

14          THE COURT:  And I'm hopeful that neither of you had

15  anything to do with that, right?

16          MR. SIMON:  I certainly did not, Your Honor, I can

17  assure you of that.

18          THE COURT:  But whose form is this?

19          MR. SIMON:  Well, I believe it's Superior's form.

20  But to be fair, there is a provision that's in the contract

21  that says it's not to be construed against the drafter.  But I

22  will say, Your Honor, that under the case law that we've cited

23  in our papers, any ambiguities in this document -- and, again,

24  I believe the only operative section here, because we're not

25  talking about a purchase order -- the only operative section

1  and the only section the Court should construe is Section

2  10.05.

3          If you -- if you can read that provision, if there is

4  a reading of that provision that provides TAE with an

5  arbitration right, then that is the way the Court must read

6  that provision.  You may -- you may not construe it to preclude

7  arbitration rights where there is a reading that would support

8  arbitration rights.  That's the -- that's the clear law.  And I

9  submit to you that the "other party" language does that.

10         THE COURT:  Well, I'm not reading the schedule as

11 narrowly as you are.  The schedule is part of the agreement --

12 you want me to look at 10.05 in isolation.  But the schedule is

13 a part of the agreement, right?

14         MR. SIMON:  The schedule is a part of the agreement.

15 But, Your Honor, it only applies to purchase orders.

16         THE COURT:  Well, but where does it say that

17 anywhere?    Where does the schedule say that?

18         MR. SIMON:  In Paragraph 1, "These standard terms and

19 conditions apply to, and are incorporated in all purchase

20 orders issued by Superior."

21         And actually, Your Honor, it goes on to say, "By its

22 acceptance of a purchase order, seller agrees to be bound by

23 the terms and conditions in this agreement."  And I'll note,

24 again, this entire document is not well drafted.  But agreement

25 in Paragraph 1 is lower case.  Agreement in Paragraph 15 is

1  lower case A.  I think one way to read this, and perhaps the

2  correct way to read this, is that the agreement being

3  referenced in Paragraph 1, and the agreement being referenced

4  in Paragraph 15 of Schedule 1.02 is the agreement in Schedule

5  1.02, and not the main agreement in --

6          THE COURT:  Because --

7          MR. SIMON:  -- not the main agreement, which is

8  capitalize A.

9          THE COURT:  Because in the main document, it's --

10  this agreement is capitalized.

11          MR. SIMON:  Is capitalized.  And I would submit to

12  Your Honor, if there were no distinction between the

13  agreements, lower case, in Schedule 1.02 and the provisions of

14  the main agreement, the agreement with a capital A, there would

15  be no reason to have Schedule 1.02 as a separate schedule.  But

16  that's what the parties did.

17          So, again, I can't stand here before Your Honor and

18  say this is a beautifully drafted provision and it's crystal

19  clear that there are arbitration rights here.  But I think that

20  is a fair reading of this provision.

21          There is a distinction between the language, quote

22  "other party," and --

23          THE COURT:  Well, clearly --

24          MR. SIMON:  -- the reference to Superior, there has

25  to be a reason why there's a difference.  And I submit to you

1  that given the law, that any ambiguities must be resolved in

2  favor of arbitration and only if there is no reading that

3  results in a finding that arbitration applies, we would -- we

4  would ask the Court, send this ownership dispute to

5  arbitration.  Whatever the arbitrator determines is owned by

6  Superior -- again, we've been down this path before -- but

7  whatever the arbitrator determines is owned by Superior, if

8  anything, will be promptly returned.  There won't be an issue

9  about compliance with the Court order.

10          THE COURT:  Has -- have -- has a list been provided

11  to you of -- because we had that conversation at the last

12  hearing.

13          MR. SIMON:  We did, Your Honor.

14          THE COURT:  And no list had been then provided.

15          MR. SIMON:  Well, there has been a list, I believe --

16  Mr. Winikka will correct me if I'm wrong -- I believe of part

17  numbers, but not of documents.  So the list is not really what

18  we're looking for.

19          So we are going to -- whether we do it in arbitration

20  or here, Your Honor --

21          THE COURT:  You're going to have to do some

22  discovery?

23          MR. SIMON:  -- we are going to have to do some

24  discovery.  And we're working on providing also -- I think

25  Superior indicated at the last hearing they want to go over it

1  and see what's been segregated in Germany.  There had been some

2  technical issues with that because these are engineering

3  documents that are just on a hard drive.  So we're working

4  through that.  But I think -- I think we'll get through that,

5  it just will take some time to conduct the discovery.

6        But, again, we think all that can be done under the

7  direction of the arbitrator.  Send them back whatever may be

8  theirs, and you'll probably never have to hear from us again.

9        So unless the Court has questions, I'll --

10        THE COURT:  I do not.

11        MR. SIMON:  Thank you.

12        MR. ROBISON:  Good morning, Your Honor.  Chris

13  Robison for Superior Air Parts.

14        I want to first address a couple of things raised by

15  Mr. Simon in his argument:

16        Point one, there hasn't been any evidence in the

17  record as to who drafted this agreement.  And, quite frankly, I

18  don't know who drafted it.  Mr. Adams and I were not the

19  drafters of this agreement.  So I just want to make sure that's

20  clear.

21        Second point on the law, I heard a lot about any

22  ambiguities must be construed in favor of arbitration.  I

23  believe that's actually incorrect.  In the <u>Sherer</u> case from the

24  Fifth Circuit, which is cited in our response, the Court

25  actually talks about that point and says:

10

1          "We apply the federal policy favoring

2      arbitration when addressing ambiguities regarding whether

3      a question falls within an arbitration agreement's scope,

4      but we do not apply this policy when determining whether a

5      valid agreement exists."

6          So if this was -- and that's at Page 381 of the

7  Sherer opinion.

8          THE COURT:  And what's the cite on that, again,

9  please?

10          MR. ROBISON:  That's 548 F. 3d 379, and that's a 2008

11  opinion.

12          So, Your Honor, if this was a two way arbitration

13  clause where Superior actually agreed to submit to arbitration

14  on written request from TAE, you could then construe an

15  ambiguity whether this dispute falls within the scope of the

16  agreement in favor of arbitration.

17          But what the Fifth Circuit says is you do not apply

18  that policy when determining whether a valid agreement exists.

19          And that really brings me to the crux of my argument.

20  We think this arbitration clause in the agreement is

21  unambiguous.  TAE is the only party here that agrees to

22  submit --

23          THE COURT:  Well, I'm -- I was thinking you were

24  right, but I've got to tell you the distinctions that movant's

25  counsel have raised are somewhat appealing to me.

11

1          MR. ROBISON:  Your Honor, they're -- I'm sorry.

2          THE COURT:    I mean clearly the provisions are

3  different from each other between the primary agreement and the

4  schedule.

5          MR. ROBISON:  Let me address --

6          THE COURT:  The schedule clearly says that Superior

7  can demand arbitration, right?  If I look at --

8          MR. ROBISON:  The schedule, as I read it, says that

9  TAE agrees that it will submit to arbitration on written

10  demand --

11          THE COURT:  Of Superior.

12          MR. ROBISON:  -- of Superior.

13          THE COURT:  Correct.  So Superior is the one who

14  demands arbitration under the schedule.

15          MR. ROBISON:  The word "Superior" is used when

16  describing the party that may request the arbitration.

17          THE COURT:  Correct.  So if the schedule were only

18  document, then I would agree with you, TAE is not entitled to

19  demand arbitration.  It is only Superior that's entitled to

20  demand arbitration.  But 10.05 of the agreement speaks in

21  different terms.

22          MR. ROBISON:  It does.  It says that TAE agrees to

23  submit to arbitration on written request of the other party,

24  which the other party to this agreement is Superior.

25          And I'll submit to you, Your Honor, that if they

1   wanted to make this provision a two way street, they knew how

2   to do it.  Because there are other provisions in this agreement

3   that are two way streets.  For example, 10.02, it begins "The

4   parties agree and understand."

5           THE COURT:  No.

6           MR. ROBISON:  The same is true --

7           THE COURT:  I hear you, but why -- why -- Superior is

8   the only party.  So why in that section doesn't it just say "on

9   the written request of Superior."

10          MR. ROBISON:  Actually, Your Honor, I don't know why

11  they wrote the agreement the way they wrote it.

12          THE COURT:  I mean if -- if -- aren't I correct that

13  there are only two parties here?  So if -- so the reference to

14  the other party can only be, from your perspective, Superior.

15          MR. ROBISON:   Yes, Your Honor.  And why they didn't

16  put Superior there, I don't know.  But I don't think there's

17  any way to take that fact and make -- and convert this

18  arbitration agreement into a two way street.

19          I think that would be inconsistent with the other

20  terms of the contract.  As I mentioned, Your Honor, there are

21  provisions that start out, "The parties agree."  Those are two

22  way streets.

23          There's also a provision, 10.14, on Page 8 of the

24  supplier agreement that's a one way street where superior

25  agrees to do something, and it starts out, "Superior will

1  obtain from the FAA."  That's something that Superior has to

2  do.

3          So they -- if they wanted to make it a two way

4  street, Your Honor, they knew how to do it.

5          THE COURT:  They could have.

6          MR. ROBISON:  And I think to read it as a two way

7  street would be inconsistent with the other provisions of the

8  contract.

9          THE COURT:  Well, what -- what other provisions of

10  the contract?

11          MR. ROBISON:  The provisions that start out "The

12  parties agree."

13          THE COURT:  All right.

14          MR. ROBISON:  Another point, Your Honor, backing up

15  to this idea that we're going to go arbitrate ownership, and

16  then whatever the arbitrator says, they'll comply with.  Or if

17  they don't, we'll come back here and you can order them to turn

18  it over.

19          Your Honor, I'll submit to you that what we're asking

20  them to return are things that are described in the plan,

21  disclosure statement, and confirmation order as being part of

22  Superior's Piece Parts business.  TAE participated in this

23  bankruptcy, they received a distribution.  I think if they had

24  a complaint or a concern that they had things in their

25  possession that weren't owned by Superior that may be subject

1 to that confirmation order, the time has past for them to raise

2 that concern.  The Piece Parts business is described in fairly

3 great detail in the plan, disclosure statement, and

4 confirmation order as including the data underlying Superior's

5 PMAs, as well as Superior's experimental engines program.

6 That's all in the plan and confirmation order as being part of

7 Superior's business.  And the point of the plan confirmation

8 process in this case, as the Court is aware, is for Superior to

9 continue to engage in that business.

10        So we would submit that there's really no need to

11 submit that to arbitration.

12        THE COURT:  Well, except apparently you can't give

13 them a list of property.

14        MR. ROBISON:  Your Honor, I'll --

15        THE COURT:  So to say it's described in fairly

16 significant detail, but yet you can't produce a list of what

17 you're looking for seems a little inconsistent.

18        MR. ROBISON:  We've -- Your Honor, we've given them a

19 list that says we want the drawings back for these part

20 numbers.  I'm not sure how to describe it any different.  I

21 mean the drawings are drawings for particular parts and part

22 numbers.  We've given them a list of the part numbers that we

23 think they have.  It doesn't seem that --

24        THE COURT:  That you think they have the drawings

25 for?

1          MR. ROBISON:  Yes.

2          THE COURT:  And --

3          MR. ROBISON:  So I'm --

4          THE COURT:  And why do you -- the debtor gave them

5   the drawings?

6          MR. ROBISON:  The --

7          THE COURT:  I mean --

8          MR. ROBISON:  Correct.  Superior -- they were the

9   manufacturer of those parts, and thus in connection with the

10  manufacturer of those parts, Superior --

11         THE COURT:  You gave them the --

12         MR. ROBISON:  -- would have supplied them the

13  drawings for the parts.

14         THE COURT:  But -- and I haven't gone back to look at

15  the plan.  But does the plan have that specificity?  We want

16  the drawings back for these parts numbers?

17         MR. ROBISON:  No, I believe the plan says that they

18  have to return data or information owned by Superior and/or

19  used in its business.  The --

20         THE COURT:  That's -- I mean no offense, I'm not --

21  yes, but I don't -- that -- that's not terribly specific.

22         MR. ROBISON:  That provision, in and of itself, is

23  not terribly specific.  There are other -- there are other

24  parts of the plan that describe Superior's -- what's defined as

25  Piece Parts business that are more specific.

16

1                 THE COURT:  Okay.

2                 MR. ROBISON:  And those -- I apologize if that was

3   unclear.

4                 THE COURT:  No, no.  And, frankly, the -- I'm not

5   sure I'm seeing how -- the relevance of the plan argument.  So

6   help me, because maybe I'm just missing what the relevance of

7   that is --

8                 MR. ROBISON:  I guess --

9                 THE COURT:  -- to today's issue.

10                MR. ROBISON:  I guess my point is it sounds to me

11  like they want to go back and relitigate.  And I'm -- some of

12  this is based on the discovery that they served on us.  What

13  I'm sensing is that they want to go back and relitigate

14  Superior's rights to those particular drawings.

15                They have asked us in discovery the types of things

16  that you would ask in a trade secrets case.  For example, if

17  you were going to make an argument that someone waived their

18  proprietary rights to a drawing, those are the types of

19  questions that we're getting in discovery.

20                And my point is if that's the argument that they're

21  going to make, that Superior doesn't have any rights -- any

22  ownership in those drawings, they should have made that

23  argument during the plan confirmation stage when --

24                THE COURT:  You want to bar them by res judicata.

25                MR. ROBISON:  Potentially that would be an argument

17

1 that we would make, Your Honor, yes.

2          THE COURT:  All right.  But that's not an issue for

3 today.

4          MR. ROBISON:  Not today, no, Your Honor.

5          And with that, unless the Court has any other

6 questions about this contractual interpretation argument, I

7 think that concludes my argument.

8          THE COURT:  Thank you.

9          MR. ROBISON:  Thank you, Your Honor.

10          MR. SIMON:  May I briefly respond, Your Honor?

11          THE COURT:  Of course, please.

12          MR. SIMON:  Thank you, Your Honor.

13          Let me start at the end, the last point that was

14 being discussed.  And I agree with you, it's not really

15 relevant for today's purposes, but I want to make sure the

16 record is clear about this issue.

17          What is in dispute is what property or information my

18 client has, if any, that Superior owns.

19          To the extent there's a suggestion that this Court

20 has already resolved the ownership issue, I would disagree with

21 that.  What the Court's order does is it requires, among other

22 parties, TAE to return any information that is owned by

23 Superior to Superior.

24          There is a genuine dispute right now about what that

25 information is and whether or not it is owned by Superior.  And

1  that's the dispute that's to be arbitrated.  That has never

2  been litigated before this Court, it just wasn't.

3         THE COURT:  I follow.

4         MR. SIMON:  Okay?  So -- and with respect to the

5  statement from counsel -- and I apologize, Your Honor, if

6  there's -- there's nothing in the record about who drafted this

7  agreement, by the way, I don't dispute that.  And my point was

8  it's not construed against the drafter anyway.

9         But with respect to the statement by counsel that

10 what they're asking for are drawings that were provided by the

11 debtor to TEA -- T -- TAE --

12        THE COURT:  TAE.

13        MR. SIMON:  Sorry.  -- to TAE, I'm not sure that's

14 entirely correct.  And I think that's part of the dispute.  My

15 understanding is that a number of these drawings were developed

16 by TAE, perhaps from scratch.  And if that's the case, there is

17 -- that raises another issue about who owns the drawings.

18        So that is part of what we are seeking to obtain

19 discovery about, and what we think the arbitrator will be asked

20 to resolve if this Court permits us to go to arbitration.

21        Let me go back then to the beginning of the argument

22 and just briefly address this case law.  I -- the law is clear,

23 Judge.  Once there is a valid arbitration agreement in place,

24 ambiguities about whether or not the dispute is arbitrable get

25 resolved in favor of arbitration.

1          Here, there is no dispute about whether there is a

2  valid agreement to arbitrate.  The question is what does that

3  agreement cover.

4          THE COURT:  No, I don't think so.

5          MR. SIMON:  You don't read it that way?  That's --

6          THE COURT:  I think there is a -- I mean they're

7  clearly disputing that you have the right to demand

8  arbitration.

9          MR. SIMON:  And I think that's a question --

10          THE COURT:  And that goes to the question of whether

11  there is an agreement to arbitrate.

12          MR. SIMON:  Well, I think --

13          THE COURT:  That you can -- that you can trigger.

14          MR. SIMON:  Okay.  I don't -- I don't read the law

15  that way, Your Honor.  But I respect the Court's view of that.

16  I think there is a valid agreement to arbitrate, and the

17  question is is it unilateral or bilateral.

18          THE COURT:  Well --4

19          MR. SIMON:  And that's -- that's the way I view it.

20          THE COURT:  All right.

21          MR. SIMON:  And the Fifth Circuit says once a court

22  determines -- and I'm quoting from the Banc One case that's

23  cited in our brief, Your Honor, 367 F. 3d 426:

24          "Once a court determines that an agreement to

25      arbitrate exists, the court must pay careful attention to

1     the strong federal policy favoring arbitration and must

2     resolve all ambiguities in favor of arbitration."

3         So I -- I think there is a bilateral agreement here,

4  Your Honor, or at least it's certainly very arguable that there

5  is given the discrepancy in the language.

6         THE COURT:  Well, except -- I hear you.  And as you

7  have pointed out on a couple of occasions, this is not the most

8  artfully drafted document.  But to read it the way -- to read

9  10.05 the way you want me to, it is "TAE agrees that any

10  dispute related to this agreement, including the arbitrability

11  of this agreement, shall, on the written request of TAE, be

12  submitted to arbitration."

13         That's the effect of how you want that to be read.

14  And no offense, that doesn't make any sense.  TAE agrees that

15  if TAE demands arbitration, there will be arbitration.  Well,

16  of course you do.

17         There were only two parties to this agreement, right?

18  There is nothing in 10.05 that says "Superior agrees to

19  arbitrate."

20         MR. SIMON:  May I address that point?

21         THE COURT:  Please.

22         MR. SIMON:  I think -- and, again, I think this is a

23  terribly worded agreement.

24                    (Laughter)

25         MR. SIMON:  Okay.  So I'm clear on that, I think I

1   am.  This language, "The parties agree TAE agrees," to me is

2   meaningless.  The -- all of these -- there are only two parties

3   to this agreement.  So every agreement referenced in here,

4   contained anyplace in this contract, has to be a bilateral

5   agreement.  The parties are -- the parties have indicated their

6   assent to every provision in this agreement by their

7   signatures.

8              THE COURT:  No, not necessarily.  I mean it is

9   conceivable to me that Superior agreed that if it wanted to

10  arbitrate, you were going to arbitrate.  But that that was its

11  unilateral decision to make, not yours.  That's, to me, the

12  distinction between "the parties agree" and "TAE agrees."

13             MR. SIMON:  I'm not sure I'm following, Your Honor.

14  I -- I think my point is that Paragraph 10.05 is an agreement

15  by both parties.

16             THE COURT:  Right, but not an agreement to

17  necessarily arbitrate.

18             MR. SIMON:  Well, but I think you have --

19             THE COURT:  It's --

20             MR. SIMON:  -- to get past the "TAE agrees" language

21  to make that determination.  And -- and I -- I can't come up

22  with any reason why they would have said "the other party" if

23  what they meant was Superior.  They --

24             THE COURT:  Crappy drafting.

25             MR. SIMON:  They clearly knew how to do it.  They

22

1  clearly knew how to say Superior when they meant Superior.

2          THE COURT:  But they also knew how to say "the

3  parties agree."  All they had to say in 10.05, consistent with

4  10.02, 10.03 is "the parties agree that any dispute related to

5  this agreement, including the arbitrability of this agreement,

6  shall be submitted to arbitration."  That's all that section

7  needed to say, and that's not what it said.

8          MR. SIMON:  Or if they wanted -- or, if I may, if

9  they wanted to say it's a one way street, all they needed to

10  say was "on the written request of Superior."

11         THE COURT:  But see, I -- "the TAE agrees" at the

12  outset of that provision tells me that the other party is

13  Superior.  The -- it makes no sense to say "TAE agrees that if

14  it demands arbitration, there will be arbitration."  Well, duh,

15  of course, TAE agrees that if it demands arbitration, there

16  will be arbitration.  It wouldn't demand it otherwise.

17         So the "TAE agrees" at the outset of that strongly

18  suggests to me that it is Superior who gets to request it.  And

19  then, of course, the -- Paragraph 15 of the schedule where it

20  is also Superior who demands that is consistent, right?

21         MR. SIMON:  I --

22         THE COURT:   Because the seller -- the seller, under

23  the -- the seller is TAE, right?

24         MR. SIMON:  That's correct.

25         THE COURT:  So, "Seller agrees that any dispute

1   related to a purchase order shall, on the written request of

2   Superior, be submitted to arbitration."

3             MR. SIMON:  That's clear.

4             THE COURT:  If you read -- see, I think they're both

5   clear.  It starts out the same way, "TAE agrees," instead of

6   "Seller agrees."

7             MR. SIMON:  Well, Your Honor, if you find it clear,

8   then we're litigating the issue here.  I don't find it clear,

9   and I think there is a reading -- a reasonable reading that the

10  two clauses are different and they're different for a reason.

11            If you construe the agreement as a whole, that's --

12  that's our reading of it.  If the Court's ruling to the

13  contrary, we'll obviously respect the Court's decision.

14            THE COURT:  Very well.  Thank you very much.

15            MR. SIMON:  Okay.

16            THE COURT:  Appreciate it.

17                       (Pause)

18            THE COURT:  Well, the Court does read this contrary

19  to movants, that's certainly where I was when I came out on the

20  bench after preparing for the hearing.  And while the argument

21  is an interesting one by movant, I just don't read the document

22  in the same fashion.

23            I will agree that the document is not some lawyer's

24  finest work, assuming a lawyer drafted it.  But to read

25  Paragraph 10.05 of the agreement as movant does makes the

1  provision, frankly, silly.   To read 10.05 the way movant does,

2  it would essentially mean that "TAE agrees that any dispute

3  related to this agreement, including the arbitrability of the

4  agreement, shall, on the written request of TAE, be submitted

5  to arbitration under the rules as Superior, and TAE shall

6  agree."  That reading just makes no sense to the Court.  Of

7  course TAE agrees that if it demands arbitration, there will be

8  arbitration.  That makes that provision superfluous in that --

9  reading it in that fashion.

10       There were two parties to the agreement, TAE and

11 Superior, and I read 10.05 as follows, "TAE agrees that any

12 dispute related to this agreement, including the arbitrability

13 of the agreement, shall, on the written request of the other

14 party," which, of course, in this case is Superior, "be

15 submitted to arbitration under the rules that Superior and TAE

16 shall agree."

17       So unlike TAE's counsel, I read this to provide that

18 TAE agreed that if Superior, as the other party to the

19 agreement, demanded arbitration, arbitration would occur under

20 the rules as both parties may have agreed.

21       Frankly, if the agreement is as TAE argues, or the

22 administrator on behalf of TAE argues, it would have been

23 simple, as was done in Paragraph 10.02 and 10.03 to simply say

24 in 10.05, "The parties agree that any dispute related to this

25 agreement, including the arbitrability of this agreement, shall

1  be submitted to arbitration under the rules as they shall

2  agree." That's not what the document says, and I think it is

3  clear that Superior is the party under Section 10.05 of the

4  agreement that can request arbitration, in which case TAE

5  agrees that arbitration will occur.

6       That reading of Section 10.05 of the agreement is

7  consistent with Schedule 1.02 of the same agreement, which

8  says, and I'm quoting, Paragraph 15, "Seller," who is TAE,

9  "agrees that any dispute related to a purchase order or this

10 agreement," from the Court's perspective, referencing back to

11 the underlying agreement to which the schedule is attached,

12 "shall, on the written request of Superior, be submitted to

13 arbitration under the rules ass Superior, and seller shall

14 agree."

15      From the Court's perspective, that is exactly what

16 Paragraph 10.05 provides, and it makes little sense to me that

17 the two provisions would be inconsistent with each other. And,

18 frankly, reading both of them in the fashion that the Court

19 does makes both of the arbitration provisions, one in the body

20 of the agreement, and the other, while referencing the

21 underlying agreement, being contained in the schedule attached

22 to the agreement. Reading them together, it makes sense to the

23 Court that the provisions should be consistent.

24      The Court's interpretation of the schedule is

25 bolstered as being incorporated into the underlying agreement,

1  notwithstanding counsel's argument that the schedule should

2  have used a capital A on agreement, as was done in the body of

3  the agreement, by Paragraph 17, which says, "This agreement,

4  and the purchase orders of which it is a part, constitute the

5  entire agreement between seller," again TAE, "and Superior."

6          So from the Court's perspective, it's clear that when

7  the parties are using "this agreement" in Schedule 1.02, it's a

8  reference back to the underlying agreement of which the

9  schedule is a part.

10         And for those reasons, the Court concludes that the

11  motion to compel arbitration must be denied because Superior

12  has not requested arbitration.  And under the Court's

13  interpretation of the agreement and the schedule appended to

14  the agreement, it is only Superior who has the right to demand

15  arbitration.

16         All right.  So, Mr. Adams, would you and your

17  colleague prepare a proposed order denying the motion to compel

18  arbitration?  Allow opposing counsel to review it, and then

19  upload it to the Court?

20         MR. ADAMS:  We will, Your Honor.

21         THE COURT:  Excellent.  Good.

22         MR. ROBISON:  Your Honor, do you want just a simple

23  order saying "motion denied?"

24         THE COURT:  "For the reasons stated on the record" is

25  fine.

27

1          MR. ROBISON:  Yes, Your Honor.

2          THE COURT:  All right.  Excellent.  Thank you, all,

3 very much.  Now we've got then the -- is it a motion for

4 summary judgment?

5          MR. ROBISON:  I believe it's just our motion to

6 enforce, Your Honor --

7          THE COURT:  All right.

8          MR. ROBISON:  -- set on the 18th of February, I

9 believe.

10         THE COURT:  All right.

11         MR. ROBISON:  Is that right?

12         MR. SIMON:  That's right.

13         THE COURT:  Excellent.  Good.  I'll see you then.

14         MR. ROBISON:  Thank you, Your Honor.

15         MR. SIMON:  Thank you, Your Honor.

16         THE COURT:  Thank you very much.

17         MR. ROBISON:  May I be excused?

18         THE COURT:  You may.  Thank you.

19    (Whereupon, at 10:45 A.M., the hearing was adjourned.)

20

21

22

23

24

25

1

2

3

4                    <u>CERTIFICATE OF TRANSCRIBER</u>

5

6        I, KAREN HARTMANN, a certified Electronic Court

7   Transcriber, certify that the foregoing is a correct transcript

8   from the electronic sound recording of the proceedings in the

9   above-entitled matter.

10

11   *Karen Hartmann*

12

13   Karen Hartmann, AAERT CET**D0475 Date:  July 1, 2014

14   TRANSCRIPTS PLUS, INC.

15

16

17

18

19

20

21

22

23

24

25