Jerry C. Alexander
Texas State Bar No. 00993500
James F. Adams
Texas State Bar No. 00863450
Christopher A. Robison
Texas State Bar No. 24035720
PASSMAN & JONES
A Professional Corporation
1201 Elm Street, Suite 2500
Dallas, Texas 75270-2599
(214) 742-2121 Telephone
(214) 748-7949 Facsimile

COUNSEL FOR SUPERIOR AIR PARTS, INC.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No. 08-36705-bjh-11 |
| SUPERIOR AIR PARTS, INC., | § | Chapter 11 |
| | § | |
| Debtor. | § | |
| | § | |

**SUPERIOR AIR PARTS, INC.'S HEARING BRIEF
REGARDING ESTOPPEL BY CONTRACT, ENFORCEMENT OF
CONFIDENTIALITY AGREEMENT, AND SUPERIOR'S OWNERSHIP
<u>OF DOCUMENTS "CREATED" BY TAE</u>**

**TABLE OF CONTENTS**

**PAGE NO.**

I.   SUMMARY OF ARGUMENTS ................................................................................. 1

II.  FACTUAL BACKGROUND ..................................................................................... 4

III. ARGUMENT AND AUTHORITIES ........................................................................ 5

    A.   TAE is Estopped from Challenging the Confidential and Proprietary Status of Property It has Contractually Agreed is Confidential and Proprietary. .......................................... 5

    B.   Superior Owns Anything "Created by" TAE Using Superior's Proprietary Information. ................................................................................................................................ 7

    C.   The Superior Data at Issue Need Not Be a Trade Secret for the Court's Confirmation Order to Be Enforced ........................................................................................ 9

    D.   Any Limited Disclosure of the Superior Data is Immaterial Its Trade Secret Status. ... 10

IV. CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

**PAGE NO.**

**Cases**

*Bishop v. Miller*, 412 S.W.3d 758 (Tex. App.—Houston 2013) .................................................. 13

*CIGNA Corp. v. Amara,* -- U.S. --, 131 S. Ct. 1866, 179 L.E.2d 843 (2011)................................ 8

*Coffey v. Singer Asset Finance Co.*, 223 S.W.3d 559, 569-70 (Tex. App.—Dallas 2007, no pet.) 9

*Fisher v. Kerlin*, 279 S.W.2d 637, 643 (Tex. Civ. App. 1955)...................................................... 10

*In re Assoc. Marketers Inc. of Am.*, 1 F.3d 1237, 1993 WL 309726, at *3 (5th Cir. 1993) ......... 10

*In re George*, 28 S.W.3d 511, 516 (Tex. 2000) ..................................................................... 10, 11

*In re Matter of Uniservices, Inc.*, 517 F.2d 492, 496-97 (7th Cir. 1975) ....................................... 9

*Interspiro USA Inc. v. Figgie Int'l Inc.,* 815 F. Supp. 1488, 1502-03 (D. Del. 1993) .................... 9

*Interspiro USA, Inc. v. Figgie Intern. Inc.*, 18 F.3d 927 (Fed. Cir. 1994) ...................................... 9

*Johnson v. Structured Asset Services, LLC*, 148 S.W.3d 711, 721-22 (Tex. App.—Dallas, no pet.) ........................................................................................................................................ 9

*Lamont, L.O.G. v. Vaquillas Energy Lopeno Ltd., L.L.P.*, 421 S.W.3d 198, 211 (Tex. App.—San Antonio 2013, pet. filed)................................................................................................. 13, 14

*Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 289 (5th Cir. 1978)............................. 12

*Leonard v. Texas*, 767 S.W.2d 171, 175 (Tex. App.—Dallas 1988, writ granted) ...................... 13

*Metallurgical Indus. Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1200 (5th Cir. 1986).......................... 14

*Picker Int'l. Corp. v. Imaging Equip. Serv., Inc.*, 931 F. Supp. 18, 35 (D. Mass. 1995)................ 9

*Picker Int'l, Inc. v. Leavitt,* 94 F.3d 640 (1st Cir.1996) ................................................................. 9

*Rhorer v. Raytheon Engineers and Constructors, Inc.*, 181 F.3d 634, (5th Cir. 1999).................. 8

**Treatises**

RESTATEMENT (THIRD) OF AGENCY § 8.05 (2006) ................................................................ 10, 11

COMES NOW, Superior Air Parts, Inc. ("**Superior**" or "**Debtor**"), the Debtor, and files this Hearing Brief Regarding Estoppel by Contract, Enforcement of Confidentiality Agreement, and Superior's Ownership of Documents "Created" by TAE ("**Hearing Brief**"). Superior's Hearing Brief is filed in connection with Superior's Motion to Enforce [Dkt. 684], which is set for hearing on July 22, 2014 at 2:15 PM.

## I.    SUMMARY OF ARGUMENTS

1.     Thielert Aircraft Engines GmBH ("**TAE**") was a supplier to Superior pursuant to a Supplier Agreement ("**Supplier Agreement**"). Superior furnished drawings, data and information ("**Superior Data**") to TAE pursuant to the Supplier Agreement for numerous aircraft parts for which Superior holds Parts Manufacturer Approvals (PMAs) issued by the Federal Aviation Administration (FAA). Superior spent thousands of man-hours and millions of dollars developing the Superior Data and obtaining the PMAs. The Supplier Agreement provided that (a) TAE acknowledged Superior's ownership of the Superior Data, (b) TAE agreed to maintain the confidentiality of the Superior Data, (c) TAE would use the Superior Data only for performance of TAE's obligations under the Supplier Agreement, and (d) TAE would return the Superior Data to Superior.

2.     Superior made demand on TAE and its insolvency administrator Dr. Bruno Kübler ("**Kübler**") for the Superior Data pursuant to the Court's Confirmation Order.[1] After denying for months that they possessed any of Superior's property, TAE and Kübler eventually turned over approximately 700 drawings of Superior's aircraft parts.

---

[1] See, paragraph 37 of the Court's Order Confirming Third Amended Plan of Reorganization Filed by The Debtor and the Official Committee of Unsecured Creditors Dated July 23, 2009 ("**Confirmation Order**") preserving Superior's rights pursuant to any confidentiality agreement and requiring the return of all documents and other information owned by Superior related to Superior's business and operations. Appendix p. 127; Confirmation Order at ¶ 37.

Superior's Hearing Brief Regarding Estoppel by Contract, Enforcement of Confidentiality Agreement, and
Superior's Ownership of Documents "Created" by TAE  -  Page 1 of 14
364076v10

3. TAE and Kübler insisted that Superior release any claim to the remaining drawings, data and information in their possession; however, TAE and Kübler refused to certify that they no longer possess any Superior Data. Accordingly, Superior spent days reviewing computer files in Germany and discovered that TAE and Dr. Kübler still possess hundreds more machine drawings and three dimensional models ("**CAD drawings**") of Superior's parts containing the Superior Data.[2] These drawings and models are merely another expression of the Superior Data expressed in German instead of English and in millimeters instead of inches. They are nothing more than translations of the Superior Data.

4. TAE and Kübler now contend those machine drawings and CAD drawings of Superior's parts – which TAE "created" in connection with its obligations under the Supplier Agreement – are not owned by Superior, but rather are somehow owned by TAE. Their contention is without merit, both legally and under the terms of the Supplier Agreement. TAE and Kübler also argue that the Superior Data provided by Superior had to be exclusive to Superior in order for it to be Superior's property.

5. TAE's contentions cannot prevail for at least[3] four reasons.

6. First, TAE entered into the Supplier Agreement with Superior wherein TAE agreed to maintain the confidentiality of all drawings, data and information supplied by Superior. TAE further agreed that the drawings, data and information furnished by Superior were Superior's proprietary property and that TAE would only use said drawings, data and information for the performance of its obligations under the Supplier Agreement. Accordingly,

---

[2] Superior will introduce evidence at the hearing on its Motion to Enforce showing the machine and CAD drawings are virtual copies of Superior's parts, with no substantive changes. The evidence will also show that the machine and CAD drawings, in virtually all instances, bear Superior's name and/or part number.

[3] Superior is filing a separate Hearing Brief that sets forth reasons TAE's arguments fail as a matter of *res judicata*.

Superior's Hearing Brief Regarding Estoppel by Contract, Enforcement of Confidentiality Agreement, and
Superior's Ownership of Documents "Created" by TAE  -  Page 2 of 14
364076v10

TAE is estopped from now challenging whether the drawings, data, and information are Superior's property or exclusive to Superior.

7. Second, both the Supplier Agreement and agency law repudiate the notion that TAE could use the Superior Data to create "new" products or drawings. Anything TAE created using the Superior Data is owned by Superior.

8. Third, in the event TAE contends the Superior Data was disclosed to third parties, any such disclosure is immaterial. Applicable case law permits limited disclosure of confidential and proprietary information to third parties, even in the absence of a written non-disclosure or confidentiality agreement, without destroying its trade secret status. This is especially true in this situation, where any such disclosure is made to further the data owners' economic interests.

9. Fourth, whether the Superior Data qualifies as a trade secret is not the issue. TAE contractually agreed that the Superior Data was proprietary to Superior and to maintain the confidentiality of the Superior Data.[4] This Court's Confirmation Order provided that the Reorganized Debtor retained Superior's rights under all confidentiality agreements, which includes the Supplier Agreement, and ordered TAE to return the Superior Data to Superior. There is no reason why the Confirmation Order should not be enforced, irrespective of whether the Superior Data qualifies as a trade secret. The Third Amended Disclosure Statement adopted by Court Order [Dkt. 325] specifically stated that Superior owned all intellectual property related to its PMAs. The Confirmation Order is not limited to trade secrets or exclusivity; the order applies to all proprietary data, i.e. data that was the property of Superior.

---

[4] Superior's retention of the right to enforce these agreements was explicitly incorporated into paragraph 37 of the Confirmation Order.

## II.    FACTUAL BACKGROUND

10.    On December 15, 2001, Superior and TAE entered into a Supplier Agreement. Appendix pp. 134 - 149; Supplier Agreement.  In general, the Supplier Agreement called for TAE to manufacture and sell and for Superior to purchase certain aircraft parts identified in the Supplier Agreement.  Appendix p. 135; Supplier Agreement at ¶ 1.01.

11.    Superior further agreed to provide TAE with part drawings and related data and information in order that TAE could manufacture the aircraft parts on behalf of Superior. Appendix p. 136; Agreement at ¶ 3.01.

12.    Importantly, the Supplier Agreement made clear that Superior retained title to all technical drawings and related data and information supplied to TAE.  Appendix p. 136; Supplier Agreement at ¶ 3.02.  TAE expressly agreed to "maintain the **confidentiality** of all drawings, data and information supplied by Superior and will return such drawings, data and information to Superior upon the termination of this Agreement."  *Id.* (emphasis added).

13.    Furthermore, in paragraph 3.03 of the Supplier Agreement titled "**Proprietary Rights Data**," TAE agreed that "Superior's drawings, related data and information shall be used by TAE only for the performance of its obligations under this Agreement…."  Appendix p. 136; Supplier Agreement at ¶ 3.03.

14.    In addition, paragraph 12 in Schedule 1.02 of the Supplier Agreement, titled Superior Air Parts, Inc. Standard Terms and Conditions, provided:

> BUYER SUPPLIED ITEMS.  Superior shall retain title to all Superior furnished drawings, equipment, data and information supplied to Seller….**Seller will maintain the confidentiality of all such drawings, data and information and may not reproduce or divulge such information without the express written consent of Superior.**  Superior's drawings, equipment, data and information shall be used by Seller only for the performance of its obligations under the purchase order and Seller will return all

Superior's Hearing Brief Regarding Estoppel by Contract, Enforcement of Confidentiality Agreement, and
Superior's Ownership of Documents "Created" by TAE  -  Page 4 of 14
364076v10

>       drawings, equipment, data and information to Superior at Superior's request.

Appendix p. 145; Supplier Agreement at Schedule 1.02, ¶ 12 (emphasis added).

15.     On August 27, 2009, this Honorable Court entered its Confirmation Order in the above-styled bankruptcy case. Appendix pp. 117 - 131; Confirmation Order. In paragraph 37 of the Confirmation Order, the Court ordered TAE, among others, to return to Superior "all documents and other information owned by the Debtor related to the Debtor's business and operations (the "Proprietary Information")." Appendix p. 127; Confirmation Order at ¶ 37. The Court further declared: "**For the avoidance of doubt, the Reorganized Debtor retains all of the Debtor's rights pursuant to any confidentiality agreement executed in connection with the exchange of such information**." *Id.* (emphasis added).

### III.    ARGUMENT AND AUTHORITIES

**A.    TAE is Estopped from Challenging the Confidential and Proprietary Status of Property It has Contractually Agreed is Confidential and Proprietary.**

16.     Estoppel by contract, a form of quasi estoppel, is a state-law doctrine. *Rhorer v. Raytheon Engineers and Constructors, Inc.*, 181 F.3d 634, (5th Cir. 1999), *abrogated on other grounds by CIGNA Corp. v. Amara,* -- U.S. --, 131 S. Ct. 1866, 179 L.E.2d 843 (2011). Thus, federal courts look to state law when applying the doctrine. *See id.*[5]

17.     In Texas, "[e]stoppel by contract is based on the idea that a party to a contract will not be permitted to take a position inconsistent with its provisions, to the prejudice of another." *Johnson v. Structured Asset Services, LLC*, 148 S.W.3d 711, 721-22 (Tex. App.—Dallas, no

---

[5] The Supplier Agreement between Superior and TAE provided that it would be governed by the laws of the State of Texas. Appendix p. 140; Supplier Agreement at ¶ 10.01.

pet.). In other words, a party is bound by the terms of its contract unless the contract is void, annulled, or set aside in some other way, such as by fraud, accident or mistake. *Id.* at 722.[6]

18. Federal courts have applied estoppel by contract, or a variation of it, to bar parties that contractually agree to honor and/or protect proprietary and confidential information from later challenging the "trade secret" status of the information. *See Picker Int'l. Corp. v. Imaging Equip. Serv., Inc.*, 931 F. Supp. 18, 35 (D. Mass. 1995), *aff'd sub nom Picker Int'l, Inc. v. Leavitt*, 94 F.3d 640 (1st Cir.1996) (holding that defendant was estopped from challenging "trade secret" status because it agreed to treat the subject property as "confidential, proprietary information" of the plaintiff); *see also In re Matter of Uniservices, Inc.*, 517 F.2d 492, 496-97 (7th Cir. 1975) (holding that chief executive officer who treated debtor's data as confidential and proprietary during employment was estopped, after termination of his employment, from denying that data was a trade secret).[7]

19. The result should be the same in this case. As part of its Supplier Agreement with Superior, TAE agreed that the technical drawings and related data and information constituting the Superior Data was proprietary and confidential to Superior. Appendix pp. 136, 145; Supplier Agreement at ¶¶ 3.01 – 3.03; Schedule 1.02, ¶ 12. As a result, TAE is estopped from now arguing that the Superior Data is not proprietary and confidential to Superior.

---

[6] For example, a party that agrees to grant a lender a security interest in certain property cannot subsequently ask that the lien be voided and the loan be deemed unsecured. *Coffey v. Singer Asset Finance Co.*, 223 S.W.3d 559, 569-70 (Tex. App.—Dallas 2007, no pet.).

[7] In fact, in a similar circumstance involving the enforcement of a settlement agreement from a patent infringement case, the Federal Circuit Court praised the United States District Court for the District of Delaware for properly excluding evidence proffered by the defendant that the subject patent was invalid or unenforceable. *Interspiro USA, Inc. v. Figgie Intern. Inc.*, 18 F.3d 927 (Fed. Cir. 1994). The reasoning behind the trial court's ruling was twofold: (1) the defendant had contractually waived any argument regarding the patent's validity and enforceability, and (2) the settlement agreement would be meaningless if the patent were not valid and enforceable. *See id.; see also Interspiro USA Inc. v. Figgie Int'l Inc.*, 815 F. Supp. 1488, 1502-03 (D. Del. 1993).

**B.    Superior Owns Anything "Created by" TAE Using Superior's Proprietary Information.**

20.    An agent's work product, when created on behalf of a principal, is owned by the principal. *See, e.g., In re George*, 28 S.W.3d 511, 516 (Tex. 2000) ("[t]he attorney is the agent of the client, and the work product generated by the attorney in representing the client belongs to the client").[8]

21.    The principal does not lose its property rights by relinquishing possession to an agent, even if the property changes form. *See* RESTATEMENT (THIRD) OF AGENCY § 8.05 (2006) ("**An agent who has possession of property of the principal has a duty to use it only on the principal's behalf**…**The rule is also a corollary of a principal's right, as an owner of property, to exclude usage by others**.") (emphasis added).  Similarly, an agent's use of the principal's property gives rise to a constructive trust in favor of the property owner when the property has been converted into a different form. *See Fisher v. Kerlin*, 279 S.W.2d 637, 643 (Tex. Civ. App. 1955).  In short, anything created by an agent using the principal's property belongs to the principal.

22.    In this regard, the terms of the Supplier Agreement between Superior and TAE mirror agency law.  The Supplier Agreement expressly provides that the drawings were only to be used by TAE in performing its obligations under the Supplier Agreement:

> 3.03.  Proprietary Rights Data.  **Superior's drawings**, related data and information **shall be used by TAE only for the performance of its obligations under this Agreement**, unless otherwise

---

[8] Here, TAE acted as Superior's agent for the manufacture of parts pursuant to a Supplier Agreement, in which TAE agreed that: (1) Superior would provide certain proprietary data to TAE; (2) TAE would only use said proprietary data for purposes of fulfilling its obligations under the Supplier Agreement; (3) Superior would retain title to all data provided to TAE under the Supplier Agreement; and (4) TAE would maintain the confidentiality of Superior's data and would return it to Superior upon termination of the Agreement.  In addition to creating an agency relationship, Superior's provision of its proprietary data also gave rise to a fiduciary duty owed by TAE to Superior. *See, e.g., In re Assoc. Marketers Inc. of Am.*, 1 F.3d 1237, 1993 WL 309726, at *3 (5th Cir. 1993) ("Texas courts have long recognized that entrustment of trade secrets gives rise to a fiduciary relationship.").

> provided in this Agreement or expressly approved by Superior in writing.

Appendix p. 136; Supplier Agreement at § 3.03 (emphasis added).

23. The Supplier Agreement further confirmed that Superior retained all titled to the drawings and required TAE to maintain the confidentiality of drawings.

> 3.02. <u>Title</u>. **Superior shall retain title to all Superior furnished drawings, related data** (whether or not maintained or stored on computer) **and information** supplied to TAE under this Agreement. **TAE will maintain confidentiality of all drawings, data and information supplied by Superior and will return such drawings, data and information to Superior upon the termination of this Agreement**.

*Id.* at § 3.02 (emphasis added); *see also* Appendix p. 145; Agreement at Schedule 1.02, ¶ 12.

24. The machine and CAD drawings, as work product created by TAE on Superior's behalf pursuant to the Suppler Agreement using the Superior Data, belong to Superior pursuant to both the terms of the Supplier Agreement and agency law. *See* Appendix p. 136; Supplier Agreement §§ 3.02, 3.03; *In re George*, 28 S.W.3d at 516 (an agent's work product belongs to the principal).

25. Moreover, Superior did not lose its property rights to the Superior Data by relinquishing possession of the drawings, data and information to TAE, even if the drawings changed in form from two dimensional to three dimensional, English to German, or inches to millimeters. *See* RESTATEMENT (THIRD) OF AGENCY § 8.05 (2006). In fact, TAE expressly agreed that Superior "shall retain title [*i.e.* ownership] to all Superior furnished drawings, related data (whether or not maintained or stored on computer) and information supplied to TAE under [the Supplier] Agreement." *See* Appendix pp. 136, 145; Supplier Agreement at § 3.02; Schedule 1.02, ¶ 12.

Superior's Hearing Brief Regarding Estoppel by Contract, Enforcement of Confidentiality Agreement, and
Superior's Ownership of Documents "Created" by TAE  -  Page 8 of 14
364076v10

26. Finally, the machine and CAD drawings would not even exist but for TAE's improper use of the Superior Data furnished to TAE in the first place.

27. In short, TAE was Superior's agent and had both fiduciary and contractual obligations to only use Superior's technical data solely on Superior's behalf. Accordingly, under both agency principles and contract law, the machine and CAD drawings are owned by Superior and should be returned pursuant to the Confirmation Order.

C. **The Superior Data at Issue Need Not Be a Trade Secret for the Court's Confirmation Order to Be Enforced**

28. TAE's "trade secret" argument is an attempt to confuse the real issue before the Court – TAE's lack of compliance with the Confirmation Order. Setting aside the fact that TAE is estopped from even arguing the Superior Data is not Superior's trade secret (*see* Part III.A, above), Superior's Motion to Enforce the Confirmation Order should *still* be granted because it makes no difference whether or not the Superior Data qualifies as a trade secret.

29. When a contractual provision explicitly requires a party to maintain the confidentiality of information, it makes no difference whether the information technically qualifies as a "trade secret." *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 289 (5th Cir. 1978) (applying Mississippi law). This is exactly the situation before the Court.

30. The Supplier Agreement explicitly declared all drawings, data and information supplied by Superior to TAE to be proprietary to Superior. Appendix pp. 136, 145; Supplier Agreement at ¶ 3.03; Schedule 1.02, ¶ 12. The Supplier Agreement also required TAE to maintain the confidentiality of these drawings, data and information, and only use the Superior Data as allowed under the Supplier Agreement for Superior's benefit. Appendix pp. 136, 145; Supplier Agreement ¶¶ 3.02 and 3.03; Schedule 1.02, ¶ 12. Moreover, the Confirmation Order

Superior's Hearing Brief Regarding Estoppel by Contract, Enforcement of Confidentiality Agreement, and
Superior's Ownership of Documents "Created" by TAE  -  Page 9 of 14
364076v10

expressly retained Superior's rights under this confidentiality agreement. Appendix p. 127; Confirmation Order at ¶ 37.

31. In sum, TAE's "trade secret" argument is a red herring because TAE contractually agreed that the Data was proprietary to Superior and to maintain the confidentiality of the Superior Data. Therefore, the Confirmation Order should be enforced irrespective of whether the Superior Data qualifies as a Superior trade secret.

**D. Any Limited Disclosure of the Superior Data is Immaterial Its Trade Secret Status.**

32. As set forth above, the Court should not even consider arguments regarding whether the Superior Data is a Superior trade secret. However, even if the Court were to consider such arguments, any limited disclosure of the Superior Data by Superior to third parties is not sufficient to destroy the Superior Data's trade secret status.

33. An essential feature of a trade secret is that it is, in fact, a secret. The owner must take reasonable steps to protect the secret. *Bishop v. Miller*, 412 S.W.3d 758 (Tex. App.—Houston 2013). When efforts are made to maintain secrecy, trade secret status should be protected. *Lamont, L.O.G. v. Vaquillas Energy Lopeno Ltd., L.L.P.*, 421 S.W.3d 198, 211 (Tex. App.—San Antonio 2013, pet. filed). In this case the evidence will show that Superior dedicated thousands of man-hours and millions of dollars developing the Superior Data. Moreover, Superior made efforts to safeguard such data by limiting access to the data and maintaining a log of who received the data.

34. A trade secret is not necessarily destroyed by disclosure to a third party. For example, disclosure to a limited number of people with whom a trade secret owner has a confidential relationship does not destroy trade secret status. *See, e.g., Leonard v. Texas*, 767 S.W.2d 171, 175 (Tex. App.—Dallas 1988, writ granted). Even in the absence of a written non-

disclosure or confidentiality agreement, trade secret status is not destroyed simply by showing the trade secret information to third parties, such as prospective buyers, customers, or licensees. *Lamont L.O.G.* at 212. This is especially true when disclosure of the trade secret is in furtherance of the owner's economic interest. *Metallurgical Indus. Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1200 (5th Cir. 1986).

35. Superior's evidence will show that it provided the Superior Data to manufacturers, like TAE, with whom it had a written confidential relationship. If TAE contends Superior provided the Superior Data to third parties without requiring a non-disclosure or confidentiality agreement, this does not destroy the Superior Data's trade secret status. *See Lamont, L.O.G. v. Vaquillas Energy Lopeno Ltd., L.L.P.*, 421 S.W.3d 198, 211-12 (Tex. App.—San Antonio 2013, pet. filed). Superior has always placed a proprietary rights label on any drawings in the Superior Data and only disclosed the data to further its economic interest. *See Metallurgical Indus. Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1200 (5th Cir. 1986).

36. Accordingly, any limited disclosure of the Superior Data took place under circumstances sufficient to maintain the data's trade secret status.

## IV. CONCLUSION

37. In summary and conclusion:

    a.     TAE is required by the Confirmation Order to return the Superior Data to Superior not only in its original form, but also as converted into the machine and CAD drawings derived from the Superior Data;

    b.     TAE is also required by the contract to return the Superior Data to Superior not only in its original form, but also as converted into the machine and CAD drawings derived from the Superior Data;

    c.     Nothing TAE has done with the Superior Data, including the "creation" of the machine and CAD drawings from the Superior Data, has changed the character of the Superior Data and its derivative works into something that is not the property of Superior;

Superior's Hearing Brief Regarding Estoppel by Contract, Enforcement of Confidentiality Agreement, and
Superior's Ownership of Documents "Created" by TAE - Page 11 of 14
364076v10

    d.  Nothing Superior has done with respect to the Superior Data has modified or waived any proprietary rights it has in the Superior Data and its derivative works.

The Superior Data, whether in its original form or as incorporated into the machine and CAD drawings, should be returned to Superior.

  WHEREFORE, premises considered, Superior respectfully submits the foregoing hearing brief and requests the Court grant its Motion to Enforce and afford Superior such other and further relief to which it may be justly entitled.

Superior's Hearing Brief Regarding Estoppel by Contract, Enforcement of Confidentiality Agreement, and
Superior's Ownership of Documents "Created" by TAE  -  Page 12 of 14
364076v10

Respectfully submitted,

By: */s/ Christopher Robison*
    Jerry C. Alexander
    Texas Bar No. 00993500
    James F. Adams
    Texas Bar No. 00863450
    Christopher A. Robison
    Texas Bar No. 24035720
    Passman & Jones, P.C.
    1201 Elm Street, Suite 2500
    Dallas, Texas 75270-2599
    (214) 742-2121 Telephone
    (214) 748-7949 Facsimile
    alexanderj@passmanjones.com
    jimadams@passmanjones.com
    robisonc@passmanjones.com

COUNSEL FOR SUPERIOR AIR PARTS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 14th day of July, 2014, pursuant to the Federal Rules of Bankruptcy Procedure, via Facsimile and/or ECF/PACER upon the following:

Daniel P. Winikka and Craig Simon
Simon, Ray & Winikka LLP
2525 McKinnon Street, Suite 540
Dallas, Texas 75201

*Attorneys for Dr. Kübler, Insolvency Administrator for TAE*

    */s/ Christopher A. Robison*
    Christopher A. Robison