Jerry C. Alexander
Texas State Bar No. 00993500
James F. Adams
Texas State Bar No. 00863450
Christopher A. Robison
Texas State Bar No. 24035720
PASSMAN & JONES
A Professional Corporation
1201 Elm Street, Suite 2500
Dallas, Texas 75270-2599
(214) 742-2121 Telephone
(214) 748-7949 Facsimile

COUNSEL FOR SUPERIOR AIR PARTS, INC.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No. 08-36705-bjh-11 |
| SUPERIOR AIR PARTS, INC., | § | Chapter 11 |
| | § | |
| Debtor. | § | |
| | § | |

**SUPERIOR AIR PARTS, INC.'S HEARING BRIEF REGARDING THE RES JUDICATA EFFECT OF SUPERIOR'S CONFIRMED PLAN AND THE COURT'S CONFIRMATION ORDER**

COMES NOW, Superior Air Parts, Inc. ("**Superior**" or "**Debtor**"), the Debtor, and files this Hearing Brief Regarding the Res Judicata Effect of Superior's Confirmed Plan and the Court's Confirmation Order ("**Hearing Brief**"). Superior's Hearing Brief is filed in connection with Superior's Motion to Enforce [Dkt. 684], which is set for hearing on July 22, 2014 at 2:15 PM.

**I.    SUMMARY OF THE ARGUMENT**

1.    Thielert Aircraft Engines GmBH, by and through its Insolvency Administrator, Dr. Kübler ("**TAE**"), is the respondent to Superior's Motion to Enforce. In defending the Motion, TAE intends to attack Superior's ownership of the data (*e.g.* drawings) underlying Superior's FAA Parts Manufacturer Approvals (PMAs). TAE's attack on Superior's ownership

of its drawings and other technical data is a collateral attack on Superior's Plan and Confirmation Order and is barred by *res judicata*.

2. Superior's bankruptcy Schedules, Disclosure Statement, Plan, and Confirmation Order specifically defined Superior's business and assets to include Superior's PMAs **and all technical data underlying the PMAs**. The Plan and Confirmation Order further provided that all of Superior's property (except for certain assets transferred to the Creditors Trust) would vest in the Reorganized Debtor free and clear of all claims, liens, charges, or other encumbrances and interests.[1]

3. TAE participated in Superior's bankruptcy proceeding as one of Superior's largest creditors, and TAE ultimately received a $500,000.00 distribution from the proceeds of the sale of Superior through the bankruptcy process. TAE never objected to Superior's Plan or to entry of the Confirmation Order; in fact an Order was entered specifically confirming TAE's acceptance of the Plan. Therefore, TAE is bound by the terms of the Plan and Confirmation Order and is barred from raising claims or issues that it could or should have raised prior to confirmation, including any claim that Superior does not own drawings and technical data underlying its PMAs.

## II.    ARGUMENT AND AUTHORITIES

**A.    A Confirmation Order Acts as *Res Judicata* as to All Claims or Issues that Could or Should have been Raised Before Confirmation.**

4. "'A bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect,' binding the parties by its terms and precluding them 'from raising claims or issues that they could have or should have raised before confirmation.'" *Valley Historic Ltd.*

---

[1] Superior's business, as well as the assets it owned, were specifically described and defined because reorganization process was premised on the sale of the company as a going concern, rather than liquidation. Ultimately, Brantly International, Ltd. was the successful bidder with a winning bid of $7,000,000.00, which Brantly transferred to Superior's Creditors Trust in exchange for stock in the reorganized Superior.

*P'ship v. Bank of New York*, 486 F.3d 831, 839 (4th Cir. 2007) (quoting *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough* (*In re Varat Enters., Inc.*), 81 F.3d 1310, 1315 (4th Cir.1996)); *see also Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1051, 1054 (5th Cir.1987).[2]

5.  A party with adequate notice of a bankruptcy proceeding cannot typically challenge a confirmed plan. *In re Harvey*, 213 F.3d 318, 321 (7th Cir.2000). A creditor may not "stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings." *In re Pence*, 905 F.2d 1107, 1109 (7th Cir.1990).

6.  In the context of a motion to enforce a confirmed plan and confirmation order, courts (including one court in this district) have held the *res judicata* effect of a confirmation order bars subsequent challenges by a creditor to a debtor's claim of ownership of property. *See In re Chesnut*, No. 03-4105, *available at* 2008 WL 2962943, at *3 (N.D. Tex. July 29, 2008) (Lynn, J.) ("Because the ownership of the Property was an issue that could have been raised prior to or at the time of confirmation of the Plan and because the issue was not otherwise posed to the court, the *res judicata* effect of confirmation prevents TMC from raising this issue now"), *aff'd*, 356 Fed. Appx. 732 (5th Cir.2009);[3] *see also In re Jones*, No. 10 B 04352, *available at* 2011 WL 748427, at *3 (Bankr.N.D.Ill. Feb. 24, 2011) (pawnshop creditor's argument that pawned property was not property of the estate was barred by the *res judicata* effect of confirmed plan).

---

[2] *See also Wallis v. Justice Oaks II, Ltd.* (*In re Justice Oaks II, Ltd.*), 898 F.2d 1544 (11th Cir.1990), *cert. denied*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990) (order confirming a plan of reorganization is entitled to preclusive effect on all claims or issues which were raised or could have been raised in the confirmation proceedings).

[3] Citing *Cromwell v. County of Sac*, 94 U.S. 351, 358, 24 L.Ed. 195 (1876) (holding that res judicata applies not only to the points "upon which the court was required by the parties to form an opinion, and pronounce a judgment, but to every point which properly belonged to the subject of the litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time"); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1054 (5th Cir.1987) (opining that a bankruptcy court's order confirming the plan bars subsequent actions that were raised or could have been raised in connection with confirmation); *In re Howe*, 913 F.2d 1138, 1143 (5th Cir.1990) (noting that the "law in this circuit is well settled that a plan is binding upon all parties once it is confirmed and all questions that could have been raised pertaining to such plan are res judicata").

**B.    TAE's Attack on Superior's Ownership of Drawings and Technical Data Underlying Superior's PMA's is Barred by Res Judicata.**

7.    The foundation of Superior's confirmed plan was the sale of Superior as a going concern by cancelling all existing stock in Superior and the issuance of new stock in Superior to Brantly International, Inc. and other entities (collectively, "**Brantly**").  *See* Appendix pp. 1-2; Third Amended Plan of Reorganization of Superior Air Parts, Inc. and The Official Committee of Unsecured Creditors (the "**Plan**"), p. 1-2 ("Summary of Plan") (Dkt. 322).

8.    In exchange for the issuance of new stock, Brantly contributed $7,000,000 to the Creditors' Trust formed by the Plan and Confirmation Order.  *See id*. at p. 2.  Among the distributions made by the Creditors Trust was a $500,000 distribution to TAE.  Appendix p. 15; Plan at p. 15.

9.    One of the first steps leading to approval of the Plan was the Court-approved Disclosure Statement.[4]  In defining Superior's "Assets and Liabilities at the Time of Filing," the Disclosure Statement provided:

> <u>Personal Property</u>.  …The Debtor **owns** Intellectual Property related to its PMAs, Production Certificates, Type Certificates and Supplemental Type certificates of undetermined value.[5]

*See* Appendix p. 55; Third Amended Disclosure Statement, p. 7 (Dkt. 321) (emphasis added).

10.    Likewise, Superior's Plan provided for "the resumption and continuation of [Superior's] business, including the assembly and sale of piece parts, cylinder assemblies, and Vantage engines."  *See* Appendix pp. 1-2; Plan, pp. 1-2.  Superior's Plan defined "Piece Parts Business" to include:

---

[4] The Third Amended Disclosure Statement for Superior Air Parts, Inc. [Dkt. 321] was approved by the Court on July 23, 2009.  *See* Order Approving Debtor's Third Amended Disclosure Statement and Setting Deadlines [Dkt. 325].

[5] While the PMAs owned by Superior are public record, specific lists of PMA's and Type Certificates owned by Superior were also attached to Superior's Schedules and filed in the bankruptcy case.  *See, e.g.*, Dkt. 4-4 (Schedule B22 – List of PMAs, Schedule B23 – Type Certificates).

>	Selected IP Assets.  All IP Assets **supporting and otherwise underlying all replacement parts for which Seller has obtained from the FAA Parts Manufacturer Approval ("PMA")**, including replacement parts for Lycoming and TCM engines as listed on as well as engineering specimens and masters related to such parts; and all electronic as well as paper copies of documents related to the foregoing, including all documentation submitted to and correspondence with the FAA relating to such engines and replacement parts identified above, as well as engineering data, legacy data, inspection processes and the quality manual.
>
>	Other Tangible Personal Property.  All other tangible personal property of [Debtor] that is used or held for use in connection with the manufacture, repair and sale of aircraft engines and aircraft engine parts except Excluded Assets.
>
>	Experimental Engines.  Those experimental engines currently undergoing testing, as well as prototype, engineering specimens and masters related to such engines, including without limitation, the Model 400 Engine and related prototype(s).  All Intellectual Property, know-how, designs, drawings, specifications, data and documentation supporting and otherwise underlying all of [Debtor's] XP-Series Engines.

Appendix pp. 8-9; Plan. at pp. 8-9.

11.	Superior's Plan of Reorganization further provided that "the property of the Debtor…shall vest in the Reorganized Debtor on the Effective Date free and clear of all Claims, Liens, charges or other encumbrances and Interests."  Appendix p. 21; Plan at p. 21, § 6.13.

12.	On August 27, 2009, the Bankruptcy Court entered its Confirmation Order [Dkt. 404] (the "**Confirmation Order**").  Like the Plan, the Confirmation Order provides, in relevant part, that "all property of the Estate shall vest in the Reorganized Debtor as of the Effective Date, and the Reorganized Debtor shall take and hold all such assets free and clear of all Claims, Liens, encumbrances and other interests of holder of Claims and Interests."  *See* Appendix p. 126-127; Confirmation Order at ¶ 36.

13.	The Confirmation Order also discharged any debts that Superior might have owed TAG or TAE/Centurion (¶ 35), and enjoined everyone, including TAG and TAE/Centurion, from

asserting any claims against Superior or its property which arose prior to the Effective Date. Appendix pp. 125-126; Confirmation Order at ¶¶ 32 - 35.

14. In sum, TAE was put on notice on multiple occasions throughout Superior's bankruptcy proceeding that: (1) Superior owned its PMAs and the technical data underlying the PMAs; and (2) Superior's PMAs and the technical data underlying the PMAs would be transferred to the Reorganized Debtor free and clear of all claims, liens, and encumbrances. If TAE contended Superior did not own the technical data underlying its PMAs, it could and should have raised that issue prior to confirmation of Superior's Plan (especially given that TAE was a creditor **and** the Confirmation Order specifically directed TAE to return Superior's property). Instead, TAE accepted the Plan and received its $500,000.00 distribution.[6] Accordingly, TAE is barred from attacking Superior's ownership of the data underlying its PMAs.

WHEREFORE, premises considered, Superior Air Parts, Inc. respectfully request the Court bar TAE from attacking Superior's ownership of the technical data underlying its PMAs and grant Superior such other and further relief to which it may be justly entitled.

---

[6] *See* Appendix p. 132-133; Court Order dated September 21, 2009 (Dkt. 419) ("It is therefore ORDERED that the Motion is GRANTED and **TAE is hereby deemed to have accepted the Third Amended Plan of Reorganization filed by the Debtor and the Official Committee of Unsecured Creditors**") (emphasis added).

Respectfully submitted,

By: */s/ Christopher Robison*
    Jerry C. Alexander
    Texas Bar No. 00993500
    James F. Adams
    Texas Bar No. 00863450
    Christopher A. Robison
    Texas Bar No. 24035720
    PASSMAN & JONES, P.C.
    1201 Elm Street, Suite 2500
    Dallas, Texas 75270-2599
    (214) 742-2121 Telephone
    (214) 748-7949 Facsimile
    alexanderj@passmanjones.com
    jimadams@passmanjones.com
    robisonc@passmanjones.com

COUNSEL FOR SUPERIOR AIR
PARTS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 14th day of July, 2014, pursuant to the Federal Rules of Bankruptcy Procedure, via Facsimile and/or ECF/PACER upon the following:

Daniel P. Winikka and Craig Simon
Simon, Ray & Winikka LLP
2525 McKinnon Street, Suite 540
Dallas, Texas 75201

*Attorneys for Dr. Kübler, Insolvency Administrator for TAE*

    */s/ Christopher A. Robison*
    Christopher A. Robison