Craig F. Simon
Texas Bar No. 00784968
Daniel P. Winikka
Texas Bar No. 00794873
SIMON, RAY & WINIKKA LLP
2525 McKinnon Street, Suite 540
Dallas, TX 75201
Phone: (214) 871-2292
Facsimile:  (469) 759-1699
Counsel for Dr. Kübler, in his capacity as Insolvency
Administrator of Thielert Aircraft Engines GmbH

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| SUPERIOR AIR PARTS, INC. | Case No. 08-36705-BJH-11 |
| Debtor. | |

**REPLY BRIEF OF INSOLVENCY ADMINISTRATOR
RELATING TO MOTION TO ENFORCE CONFIRMATION ORDER
PURSUANT TO COURT'S JULY 23, 2014 RULING REGARDING BRIEFING**

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT............................................................................1

II.     ARGUMENTS AND AUTHORITIES.....................................................................4


      A.  SUPERIOR HAS ESSENTIALLY CONCEDED THAT IT DOES NOT
      OWN THE TAE MATERIALS......................................................................4

      B.  SUPERIOR HAS NO RIGHTS TO INFORMATION THAT IS NEITHER A
      TRADE SECRET NOR CONFIDENTIAL........................................................6

           1)  THE INSOLVENCY ADMINISTRATOR IS NOT PROPOSING
           TO TAKE ACTIONS THAT ARE
           IMPROPER..............................................................................6

           2)  THE SUPPLIER AGREEMENT DOES NOT PROVIDE
           SUPERIOR WITH ANY RIGHTS TO INFORMATION THAT IS
           NOT SECRET............................................................................7

      C.  ESTOPPEL BY CONTRACT IS INAPPLICABLE AND DOES NOT
      ENABLE SUPERIOR TO AVOID THE FACT THAT THE INFORMATION
      SUPERIOR PROVIDED IS NOT CONFIDENTIAL....................................15

      D.  THE PLAN AND CONFIRMATION ORDER DID NOT ESTABLISH
      THAT THE INFORMATION SUPERIOR PROVIDED TO TAE IS
      CONFIDENTIAL AND DO NOT PRECLUDE THE INSOLVENCY
      ADMINISTRATOR FROM ARGURING THE INFORMATION IS NOT
      CONFIDENTIAL.........................................................................................19

      E.  SUPERIOR CANNOT SERIOUSLY DISPUTE THAT THE
      INFORMATION IT SUPPLIED IS IN THE PUBLIC DOMAIN OR, AT A
      MINIMUM, READILY ASCERTAINABLE................................................20

III.    CONCLUSION................................................................................................23

# TABLE OF AUTHORITIES

### Cases

*Adelphon v. DiRico,* 1992 WL 281395 (N.D. Tex March 26, 1992)............................................ 12

*Allan J. Richardson & Associates, Inc. v. Andrews*, 718 S.W.2d 833, 837 (Tex. App. 1986    8

*Bluebonnet Petroleum, Inc. v. Kolkhorst Petroleum Company*, 2008 WL 4527709 (Tex. App.—Houston [14th Dist.] Oct. 9, 2008) .................................................................................... 8

*Cataphote Corp. v. Hudson,* 422 F.2d 1290 (5th Cir. 1970) .................................................. 16, 17

*Crim Truck & Tractor v. Navistar Inter.*, 823 S.W.2d 591, 594-95 (Tex. 1992)    10

*Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*, 2012 WL 460275 (S.D. Tex. Feb. 13, 2012) .......................................................................................................................... 11, 12

*E.I. Du Pont De Nemours Powder Co. v. Masland*, 244 U.S. 100 (1917).................................. 15

*Elcor Chem. Corp. v. Agri-Sul, Inc.,* 494 S.W.2d 204 (Tex. App.—Dallas 1973, writ ref'd n.r.e.) ................................................................................................................................ 13, 14

*Global Water Group, Inc. v. Atchley,* 244 S.W.3d 924 (Tex. App.—Dallas 2008, pet. denied).. 12

*Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985)................................... 5

*Hyde Corp. v. Huffines*, 314 S.W.2d 763 (Tex. 1958)........................................................... 13, 14

*In re Electro-Motor, Inc.*, 390 B.R. 859 (Bankr. E.D. Tex. 2008) ................................................ 8

*In re Matter of Uniservices, Inc.*, 517 F.2d 492, 496-97 (7th Cir. 1975) .................................... 18

*K & G Tool & Serv. Co. v. G & G Fishing Tool Serv.*, 314 S.W.2d 782 (Tex. 1958) ................ 13

*Lawfinders Assoc. Inc. v. Legal Research Ctr., Inc.,* 65 F. Supp. 2d 414 (N.D. Tex 1998)..... 9, 11

*Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286 (5th Cir. 1978).............................. 11, 17

*Luccous v. J.C. Kinely Co.,* 376 S.W.2d 336 (Tex. 1964)...................................................... 17, 18

*NCH Corp. v. Broyles*, 749 F.2d 247 (5th Cir. 1985)................................................................... 8

*Picker Int'l. Corp. v. Imaging Equip. Servs., Inc.*, 931 F. Supp. 18 (D. Mass. 1995) ................. 18

*Reingold v. Swiftships, Inc.* 126 F.3d 645 (5th Cir. 1997)............................................................ 6

*Ruckelshaus v. Monsanto* Co., 467 U.S. 986 (1984) ................................................................ 15

*Sharma v. Vinmar Int'l Ltd.*, 231 S.W.3d 405 (Tex.App. – Houston [14th Dist.] 2007) ............ 13

*Sikes v. McGraw-Edison Co.*, 671 F.2d 150 (5th Cir. 1982) .................................................. 13, 14

*Simplified Telesys., Inc. v. Live Oak Telecom, L.L.C.*, 68 S.W.3d 688 (Tex. App.—Austin 2000, pet. denied)........................................................................................................................... 10

*Stewart & Stevenson Services, Inc. v. Serv-Tech, Inc.,* 879 S.W.2d 89 (Tex. App.—Houston [14th Dist.]1994, writ denied))........................................................................................................ 8

*Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225-26 (Tex. 2002).......... 10

*T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18 (Tex.App.—Houston [1st Dist.] 1998, pet. dism'd) ...................................................................................................... 9

*Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877 (Tex. App. – Dallas, 2003, no pet.) .......... 11

*Wissman v. Boucher,* 240 S.W.2d 278, 279-280 (Tex. 1951)...................................................... 12

*Woodard v. Gen. Motors Corp.*, 298 F.2d 121 (5th Cir. 1962) ................................................ 16

*Zoecon Indus. v. American Stockman Tag Co.,* 713 F.2d 1174 (5th Cir. 1983) .......................... 15

Statutes

Tex. Civ. Prac. & Rem. Code § 134A.002(6)............................................................................... 9

Dr. Bruno Kübler, in his capacity as Insolvency Administrator (the "Insolvency Administrator") of Thielert Aircraft Engines GmbH ("TAE"), files this reply brief pursuant to the Court's directive of July 23, 2014. In support hereof, the Insolvency Administrator respectfully represents as follows.

## I.     PRELIMINARY STATEMENT

During the July 23, 2014 hearing, the Court pointed out that the parties' prior briefing appeared like two ships passing in the night.  The Court asked the parties to file new briefs addressing the contested issues and, in particular, asked the Insolvency Administrator to file the opening brief addressing why Superior Air Parts, Inc. ("Superior") should get back only those documents that Superior furnished to TAE and not the TAE-created materials that contain TAE's proprietary information relating to the manufacturing process (the "TAE Materials").[1]

In his pre-hearing briefing, the Insolvency Administrator described the evolution of Superior's contentions from seeking (a) the return of a limited number of documents Superior supplied to TAE to (b) every document, model or drawing ever created by TAE that relates to its business with Superior.  Now, in its July 31, 2014 Supplemental Hearing Brief ("Response

---

[1] Because the Insolvency Administrator has not yet presented his case, the Court does not yet have the benefit of all the facts.  Thus, it bears emphasizing that the evidence will show that TAE devoted substantial time and expense to create 3D volume models.  From those models, TAE also created drawings that contain proprietary manufacturing process know-how that was likewise developed through significant engineering work.  Dimensions and tolerances from the Superior 2D drawings are included in the 3D volume models and subsequent drawings TAE created from the 3D volume models, but the 3D volume models and TAE-created drawings are not identical to the 2D drawings that Superior furnished and did not merely convert English to German and standard measurements to metric.  Moreover, the evidence will show that the 3D volume models could easily have been created without the information on the Superior 2D drawings.  Separate and apart from the TAE-created materials, there were some instances where TAE initiated design changes that were ultimately made to the parts.  This appears to have occurred in about 59 instances.  Despite Superior's focus on those changes in its case in chief, TAE is not contending, and has never contended, that those TAE-initiated design changes gave TAE any ownership rights over Superior's updated drawings reflecting those changes. This dispute has nothing to do with those changes.

1

Brief"), Superior's case has taken yet another turn.  In an apparent recognition of the fallacy of

its arguments, Superior no longer insists that it owns the TAE Materials.  Thus, instead of

contending that the Court's Confirmation Order (**which only deals with information owned by**

**Superior**) requires the Insolvency Administrator to return the TAE Materials, Superior's latest

contention is that the Court should preclude the Insolvency Administrator from using those

materials even if Superior does not own them.  This latest request clearly falls outside of the

issues presented to the Court in this proceeding and is effectively a request for injunctive relief.

But there is no motion for injunctive relief before the Court.

The Insolvency Administrator filed its brief on July 28, 2014 ("Opening Brief") and

explained why the Supplier Agreement clearly does not give Superior ownership over materials

that contain manufacturing process know-how and information TAE created (even if the TAE

Materials contain some information that Superior furnished) and also explained that Superior has

no basis to claim ownership of the TAE Materials absent a contractual agreement that Superior

would own such materials.  Because Superior is the movant and bears the burden of establishing

that the materials created by TAE, maintained by TAE, and in TAE's possession, are owned not

by TAE but instead by Superior, the Insolvency Administrator also addressed other arguments

that Superior had made regarding ownership, including (a) Superior's argument that the Plan and

Confirmation Order bar the Insolvency Administrator from arguing TAE owns the TAE

Materials; (b) Superior's factual assertion that the TAE Materials are identical to the Superior

furnished drawings; and (c) what TAE understood to be Superior's contention that Superior is

vested with ownership in the TAE Materials because the TAE Materials contain information

from the Superior 2D drawings that cannot be separated.

Superior's Response Brief, however, does not respond to any of these arguments.

Superior does not address TAE's arguments as to why the Supplier Agreement does not give

Superior ownership.  Superior also fails to address TAE's argument that the Plan and

Confirmation Order do not preclude TAE from arguing TAE owns the TAE Materials.  And

Superior appears to have abandoned its contention that Superior owns the TAE Materials

because those materials are "identical" to the 2D drawings Superior supplied—despite the fact that Superior and its expert, Marwill, focused much of their attention during Superior's case-in-chief on that argument.

Rather than addressing why **Superior allegedly owns** the TAE Materials—which is the central issue in this dispute—Superior has reframed the issue as whether TAE has the right to **use and sell** the TAE Materials. Superior has abandoned its request that it receive the TAE Materials in their entirety, effectively conceding that TAE owns the TAE Materials. Indeed, Superior now informs the Court that "Superior is not seeking TAE's manufacturing processes or know how." Response Brief at 9. Superior's brief not only fails to address the heart of the Insolvency Administrator's argument regarding ownership of the TAE Materials, but more importantly, also fails to carry Superior's burden to show that it owns the TAE Materials.

This dispute is thus no longer about either the Insolvency Administrator returning the materials Superior provided or about TAE's ownership of the TAE Materials. It is about Superior seeking to prevent the Insolvency Administrator from monetizing materials TAE created through great expense and engineering know-how; an issue wholly separate from the issue of ownership of the TAE Materials.

Superior advances several arguments to support its contention that the Insolvency Administrator should be prohibited from selling the TAE Materials even if the Superior "information" in the TAE Materials does not constitute a trade secret. But a review of the authorities Superior cites illustrates the flaws in its arguments. In fact, while on the one hand Superior vehemently argues that it need not establish that the information it supplied was protectable as trade secrets (and, in fact, Superior did not establish that it was), it on the other hand relies extensively on case law involving trade secrets. These authorities establish what common sense dictates: Superior must establish that the Superior-furnished information in the TAE Materials is secret (either a trade secret or otherwise confidential) to even have a colorable argument to prevent the Insolvency Administrator from recognizing the value of the TAE Materials. Superior has failed to do so and instead devotes much of its brief to arguing purported

bases to preclude the Insolvency Administrator from establishing that the Superior-provided information is not secret.  Superior, however, fails to even respond to the Insolvency Administrator's prior arguments regarding why estoppel by contract and *res judicata* do not apply.

## II.     ARGUMENT AND AUTHORITIES

### A.  Superior Has Essentially Conceded that It Does Not Own the TAE Materials

As the Insolvency Administrator explained in its opening brief, TAE owns the TAE Materials unless the parties had contractually agreed that Superior would own materials TAE created to manufacture the parts.  The Insolvency Administrator further explained that the Supplier Agreement clearly does not give Superior ownership of materials TAE creates.  In its response, Superior appears to abandon its prior contention in this regard and now does not contest that proposition or make any argument that the Supplier Agreement gives Superior the right to the TAE Materials.  Superior even states that it "is not seeking TAE's manufacturing processes or know how . . ."  Response Brief at 9.

In fact, the only argument Superior makes that is arguably related at all to *ownership* of the TAE Materials is Superior's contention that the Insolvency Administrator should be required to "return" Superior's "information" and that to return the "information" Superior allegedly owns the Insolvency Administrator should "return" the TAE Materials but can remove or redact "any TAE manufacturing processes or know-how . . ."  Response Brief at 9.  But as noted above, Superior has cited no authority to establish that Superior owns the TAE Materials solely because the TAE Materials contain information Superior supplied.  Furthermore, as explained below, Superior cannot own information that is in the public domain or readily ascertainable in any event.

4

Superior likewise cites no authority for the remarkable proposition that it owns materials TAE created solely because those materials reflect information that is on Superior's 2D drawings. The fact that the TAE Materials reflect information that is on Superior's 2D drawings does not create an issue of ownership of the TAE Materials, in whole or in part.[2] Furthermore, as explained below, Superior cannot own information that is in the public domain or readily ascertainable in any event. With respect to ownership of the TAE Materials, Superior has failed to meet its burden to establish ownership.

In essence, Superior now asks this Court to order that the Insolvency Administrator may not use or transfer the drawings and information the Insolvency Administrator owns.[3] There are at least two fundamental problems with this request. First, Superior's Motion to Enforce seeks only to require the return of information owned by Superior. There is no motion for injunctive relief before the Court. Second, and more fundamentally, Superior has failed to establish a right to injunctive relief, and the evidence affirmatively establishes that Superior would not be entitled to an injunction against the Insolvency Administrator even if one were properly sought.

To establish a right to injunctive relief, Superior would be required to prove that it would suffer an irreparable injury in its absence, that the threatened injury to the Superior outweighs the harm that the injunction may cause the Insolvency Administrator, that there is a likelihood of success on the merits, and that the public interest would not be adversely affected by the injunction. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). Moreover, "[i]njunctive relief is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *Id.*

---

[2] A requirement that the Insolvency Administrator provide to Superior everything that TAE created, while redacting information relating to TAE's manufacturing processes and know-how, would be tantamount to a ruling that the Insolvency Administrator is prohibited from using or selling the TAE Materials without any analysis or determination of whether the "information" Superior provided to TAE is in fact information in which Superior has a protectable interest.

[3] In fact, the first two sections of Superior's latest brief focus not on which party owns the TAE Materials, but instead on what Superior contends are TAE's confidentiality obligations under the Supplier agreement.

Here, Superior has fallen well short of meeting its burden.  Indeed, Superior rested its case without offering any evidence concerning (a) the extent of any injury it would sustain if an injunction were not granted; (b) whether any threatened injury to Superior outweighs the injury to the Insolvency Administrator; (c) the impact on the public interest; or (d) the likelihood of success, any evidence that the information is a trade secret or confidential and therefore entitled to protection.

In contract, and though the burden of proof rests on Superior, the Insolvency Administrator will have established that the information Superior supplied to TAE is all in the public domain or, at a minimum, readily ascertainable.  In other words, the information Superior supplied (and the only information it could even arguably own) is not secret in any sense of the word.  The Court should decline Superior's request to enter an order, in whatever form, that either precludes the Insolvency Administrator from using TAE's property or, worse yet, requiring that TAE's property be provided to Superior.

**B.      Superior Has No Rights to Information that Is Neither a Trade Secret nor Confidential.**

**1.      The Insolvency Administrator Is Not Proposing to Take Actions That Are Improper**

At the outset of its brief, Superior suggests that the Insolvency Administrator's intent eventually to sell the TAE Materials when those materials contain information from Superior provided to TAE is "extraordinary," (Response Brief. at 2), not "worthy of sympathy" (*Id*. at 10), makes him a "misappropriator" (*Id*. at 9), and "has been rejected by numerous Federal and State courts," citing to *Reingold v. Swiftships, Inc*. 126 F.3d 645, 651 (5th Cir. 1997) and other cases (*Id*. at 7-8, f.n. 20).   These statements and the entire tone of Superior's brief mistakenly presume that the information Superior provided is a trade secret or is otherwise protectable confidential information.[4]

---

[4] The numerous federal and state court cases to which Superior cites as having "rejected" the Insolvency Administrator's purported plan are misappropriation of trade secret cases.  The information on the Superior 2D drawings, however, does not contain trade secrets.

Superior, however, devotes the vast majority of its brief to making arguments as to why it should not have to prove that the information is in fact secret (*i.e.*, a trade secret or confidential) – principally by arguing that the Insolvency Administrator should be precluded from arguing that the emperor has no clothes.  As explained below, the Insolvency Administrator is not precluded from selling the TAE Materials if the information from Superior is not a trade secret or confidential (*i.e.*, is in the public domain or readily ascertainable), nor is the Insolvency Administrator precluded from arguing that the information is not a trade secret or confidential.[5] Moreover, if the information Superior provided is available in the public domain or could be readily ascertained with little effort, which the evidence will show is the case, there is nothing offensive about the Insolvency Administrator monetizing the TAE Materials, which were created by TAE through substantial expense and its own engineering efforts.  Public policy does not permit Superior to effectively restrain trade through provision of non-secret information under a supplier agreement that purports to restrict the supplier from using or disclosing the non-secret information for all eternity.

> **2.      The Supplier Agreement Does Not Provide Superior with any Rights to Information that Is Not a Secret**

Superior goes to great lengths to argue that it is not required to prove that the information it provided to TAE is a trade secret and devotes several pages to its argument that confidentiality agreements remain enforceable even in the absence of trade secret status.  *See* Response Brief at pp.10-15.  In yet another example of Superior failing to address the arguments raised by the Insolvency Administrator, Superior appears to ignore the fact that the Insolvency Administrator

---

[5] Superior suggests that the fact that the parties are litigating over ownership and the ability to transfer materials that reflect the Superior information must mean that the information is a proprietary trade secret and has some significant value.  *See* Response Brief at f.n.29 (suggesting that information could not be in the public domain because if it was no buyer pay for it).  As the Insolvency Administrator pointed out in its Opening Brief, it is the TAE Materials reflecting the manufacturing process know-how that have the value.  In contrast, the Superior-supplied information is all in the public domain or readily ascertainable, and a determination to that effect will enable the Insolvency Administrator to recognize the value of TAE's materials by eliminating Superior's misplaced attempts to preclude their monetization.

argued in its brief that the Superior materials were neither trade secrets <u>nor confidential</u>.  *See*
Opening Brief at § D.1.[6]   As a result, Superior has no protectable interest in the information.  In
fact, the cases Superior cites make clear that whether or not the information at issue is truly
confidential (or, in some instances, a trade secret) is a central inquiry in the decision of whether
to enforce a confidentiality provision.

　　　To enforce a confidentiality agreement restricting disclosure/use of information, the
information must be shown to be secret and cannot be information that is in the public domain or
readily ascertainable (*i.e.*, it must be confidential).  *See Allan J. Richardson & Assocs., Inc. v.
Andrews*, 718 S.W.2d 833, 834, 837 (Tex. App. 1986) (finding that trial court did not err in
"refusing to enjoin the former employees from disclosing confidential information" because
the "evidence presented at the temporary injunction hearing supports the conclusion that the
information which Richardson, Inc., seeks to protect is readily ascertainable and therefore not a
trade secret or confidential information."); *In re Electro-Motor, Inc.*, 390 B.R. 859, 869 (Bankr.
E.D. Tex. 2008) ("information generally known and readily available is not confidential."); *see
also NCH Corp. v. Broyles*, 749 F.2d 247, 251-52 (5th Cir. 1985) (applying Louisiana law and
concluding that trial court did not err in concluding that certain customer information was
confidential because the information "goes beyond what is generally known or readily
ascertainable").  Similarly, under Texas law "there is no cause of action for misappropriation of
confidential information that is not either secret or, at least substantially secret."  *Stewart &
Stevenson Servs., Inc. v. Serv-Tech, Inc.,* 879 S.W.2d 89,  (Tex. App.—Houston [14[th] Dist.]1994,
writ denied)); *see also Bluebonnet Petroleum, Inc. v. Kolkhorst Petroleum Co.*, 2008 WL
4527709  at *6 (Tex. App.—Houston [14[th] Dist.] Oct. 9, 2008) (explaining that the summary
judgment evidence did not support plaintiff's claim for improper use of confidential information

---

　　　[6] Section III of the Supplier Agreement, and in particular Sections 3.02 and 3.03 on
which Superior relies, only apply to the extent the information supplied by Superior was in fact
confidential.  Section 3.02 expressly references confidentiality, and Section 3.03 only relates to
purported "Proprietary Rights Data."

that did not amount to a trade secret because the "information must not be publicly available or readily ascertainable").

It is not necessary, and the Insolvency Administrator has never contended that it is necessary, to show that the information is a trade secret.  A trade secret requires showings beyond simply that the information is not in the public domain or readily ascertainable.  *See, e.g., Lawfinders Assoc., Inc. v. Legal Research Ctr., Inc.*, 65 F.Supp. 2d 414, 417-18 (N.D. Tex. 1998) (setting out elements of trade secret, including that it is used in a business and gives the owner an opportunity to obtain an advantage over competitors who do not know or use it); Tex. Civ. Prac. & Rem. Code § 134A.002(6) (defining trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.").  If the applicable information is in the public domain or readily ascertainable, however, then the information cannot be a trade secret and a party cannot be liable for misappropriation of a trade secret or for breach of an agreement not to disclose/use such information.

The cases Superior cites are completely consistent with this proposition, and Superior cites no cases that hold it can enforce a disclosure/use restriction in a confidentiality agreement if the applicable information is in the public domain or readily ascertainable and thus not confidential.

Superior first cites and relies upon *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18 (Tex.App.—Houston [1st Dist.] 1998, pet. dism'd).  Superior suggests that TAE agreed to contractual duties that are identical to the duties owed by a former employee under common law and asserts that "TAE may utilize the *general* knowledge, skill and experience learned as a Superior supplier, but TAE *cannot* use Superior's confidential information or trade secrets . . ."  Brief Response at 11 (emphasis in original).  As an initial

matter, an employee owes fiduciary duties to an employer, as the *T-N-T Motorsports* case noted, and those fiduciary duties do not extend to arms length transactions, like the one present here, that do not involve an employer/employee relationship or some other special relationship. *Crim Truck & Tractor v. Navistar Inter.*, 823 S.W.2d 591, 594-95 (Tex. 1992) (superseded by statute on other grounds as noted in *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225-26 (Tex. 2002) (arms length contractual relationships do not give rise to fiduciary obligations).  Even in the employee context, however, the information must still be confidential or a trade secret to be entitled to protection.  The *T-N-T* decision rests on the premise that the information provided to the employee was in fact confidential or a trade secret.  965 S.W. 2d at 22-23 (discussing information that was "not known to the public" and "confidential and intended to be kept a secret").  The case is thus unremarkable and in no way supports Superior's attempt to manufacture a claim based upon non-secret information**.**

Superior next relies heavily on *Simplified Telesys., Inc. v. Live Oak Telecom, L.L.C.*, 68 S.W.3d 688 (Tex. App.—Austin 2000, pet. denied), which likewise does not support Superior's position.  First, the case centered around employer-employee relationships, which, as noted above, involve fiduciary obligations not present here.  More importantly, the case merely stands for the proposition that the employer/plaintiff might prevail on its claim for breach of the confidentiality agreement without also proving that the applicable information constituted a trade secret.  Accordingly, the appellate court reversed the trial court's granting of summary judgment in favor of the defendant/employees because the plaintiff offered evidence that the information at issue was not "publicly known" or "generally available"; in other words, that the information was, in fact, confidential.  *Id.* at 696.  Moreover, generally consistent with a requirement that confidential information be secret and not publicly known/generally available, the confidentiality agreement in *Simplified Telesys* contained express provisions (1) defining what materials were

confidential; and (2) making clear that information that became "publicly known and generally

available" through no wrongful act would not be considered confidential. *Id.* at 692. *Simplified*

*Telesys* in no way supports the notion that using or disclosing information that is not confidential

can somehow result in a breach of a confidentiality agreement.

In addition, it is telling that Superior's only real effort to distinguish the *Lawfinders* case

the Insolvency Administrator cited was the presence of nearly identical provisions to those at

issue in *Simplified Telesys*. *See* Response Brief at 14 (citing provisions defining proprietary

information and excepting information in the public domain and arguing that *Lawfinders* is

inapplicable given the "unique nature of the agreement" there). Superior cannot have it both

ways—if *Lawfinders* is inapplicable, so is *Simplified Telesys*. The fact is that the provisions in

both cases merely make clear a very basic principle—information that is publicly available or

readily ascertainable is not confidential and, as such, a confidentiality agreement cannot be used

to block use or disclosure of such information. *See Tom James of Dallas, Inc. v. Cobb*, 109

S.W.3d 877, 888 (Tex. App. – Dallas, 2003, no pet.) ("To warrant protection, the information

must have a substantial element of secrecy and give the employer a competitive advantage.

Secrecy implies the information is not generally known or readily ascertainable.") (internal

citation omitted).[7]

---

[7] *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286 (5th Cir. 1978) (applying
Mississippi law) and *Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*, 2012 WL 460275
(S.D. Tex. Feb. 13, 2012) likewise offer no help in countering the Insolvency Administrator's
arguments. Again, both cases involve former employees who signed confidentiality agreements.
In *Lear Siegler,* while the court held that proof of trade secrets was not necessary, it expressly
held that the information at issue must be confidential in order for there to be a breach of contract
and the case thus supports the Insolvency Administrator's position. *Lear Siegler,* 569 F.2d at
289. Superior's reliance on *Dresser-Rand* is even more puzzling. *Dresser-Rand* merely stands
for the unremarkable proposition that an employment agreement that requires the employee to
return all employer-provided materials (whether confidential or not) to the employer to an

11

Superior's efforts to distinguish cases the Insolvency Administrator cited also fails.

*Global Water Group, Inc. v. Atchley,* 244 S.W.3d 924, 928-29 (Tex. App.—Dallas 2008, pet.

denied) and *Lawfinders* 65 F. Supp. 2d at 418 each illustrate the principle that, even where

information was obtained pursuant to a confidentiality agreement, courts will not impose liability

for misappropriation of trade secrets without addressing the threshold issue of whether the

information at issue was truly a trade secret.[8]  Superior makes no response to this essential point.

The elements of a claim for misappropriation of trade secrets provide a helpful backdrop

to illustrate the flaw in Superior's argument.  As cases cited by Superior make clear, to state a

claim for misappropriation of trade secrets under Texas law, a party must show (1) the existence

of a trade secret; (2) breach of a confidential relationship or other improper discovery of the trade

---

(continued…)

employee can be enforced.  2012 WL 460275 at *6.  It says nothing about whether a provision to keep material confidential—or to refrain from using such information—can prohibit someone from using information that is not truly confidential.

[8] The Insolvency Administrator also cited *Wissman v. Boucher,* 240 S.W.2d 278, 279-280 (Tex. 1951) and *Adelphon, Inc. v. DiRico,* 1992 WL 281395 (N.D.Tex. March 26, 1992) at *3 as further examples of courts refusing to impose liability for alleged misuse of information obtained in some confidence if the material at issue did not meet the test of trade secrets.  While Superior purports to distinguish these cases solely by noting that they did not involve confidentiality agreements, Superior misses the point.  Both cases involve situations where the defendant obtained information that was allegedly secret under some type of confidential arrangement— *Wissman* involved an agreement by the defendant to use the plaintiff's information only to manufacture fishing poles for him, and in *Adelphon* the defendant pretended to be in serious negotiations to purchase the product at issue in order to obtain information about it.  *See* 240 S.W.2d at 279-280; 1992 WL 281395 at *1.  In both instances, the courts concluded that, if the information at issue was not secret, any alleged breach of confidentiality was irrelevant.  *See, e.g., Adelphon,* 1992 WL 281395 at *3 (noting that "it is possible that [defendant] obtained information in an improper manner or that he breached an implied duty of confidentiality. However, it is unnecessary for the court to resolve the issue of whether [defendant] discovered the trade secret by improper means or breached a confidence placed in him by Plaintiff" because the information was not secret) (emphasis added).  Again, it is this threshold issue—there can be no breach of confidence if information is not actually confidential—that Superior has still not addressed.

12

secret; (3) use of the trade secret; and (4) damages. *See, e.g., Dresser-Rand,* 2012 WL 460275 at

*6.  Third parties can lawfully use or disclose another's trade secret if they obtain the

information through independent efforts (for instance, by reverse engineering).   A party who

obtains trade secret information through improper means or through an agreement restricting his

use of the information cannot defeat liability by arguing that he could have discovered the trade

secret on his own. *See, e.g., K & G Tool & Serv. Co. v. G & G Fishing Tool Serv.*, 314 S.W.2d

782, 787 (Tex. 1958). It is in that context, where the information at issue is in fact a trade secret

(in part because it is not in the public domain or readily ascertainable with minimal effort) that

courts often state that it does not matter that the defendant could have obtained the trade secret

information another way.[9]

    Superior continues to rely on cases involving trade secrets that have focused on the

breach of confidentiality rather than on the threshold question of whether there is a protectable

trade secret in the first instance. *See, e.g., Hyde Corp. v. Huffines*, 314 S.W.2d 763 (Tex. 1958);

*Sikes v. McGraw-Edison Co.*, 671 F.2d 150 (5th Cir. 1982); *Sharma v. Vinmar Int'l Ltd.*, 231

S.W.3d 405 (Tex.App. – Houston [14th Dist.] 2007), no pet.; *Elcor Chem.*, 494 S.W.2d 204;

*K&G Tool*, 314 S.W.2d 782.[10]   Attempting to avoid the ramifications of the fact that the

information it provided is not confidential, Superior cites these trade secret cases to contend that

it is of no legal consequence if TAE could have obtained the Superior provided information from

---

[9] This principle is the focus of *Elcor Chem. Corp. v. Agri-Sul, Inc.,* 494 S.W.2d 204 (Tex.
App.—Dallas 1973, writ ref'd n.r.e.) and the other cases on which Superior extensively relies.
*See* Response Brief at 17.  *Elcor*, like the other authorities on which Superior relies, is a trade
secret case and has no applicability here where the information is neither a trade secret nor
confidential.

[10] The *Elcor* and *Sharma* cases, like most of the cases relied on by Superior, were both
cases involving former employees.  As noted above, the outcomes and language used in these
cases may have been influenced by the unique implied fiduciary obligations inherent in the
employer-employee relationship.

other sources.  Superior's view of the cases it cites is essentially that the only inquiry in a trade secret case is whether there was a confidential relationship between the parties.  If so, Superior would argue, the party alleging misappropriation no longer has to establish that its information even meets the definition of a trade secret.

The fallacy in Superior's argument is simple: the cases Superior cites "assume the existence of a trade secret and focus on the second element of a misappropriation claim—the requirement that the defendant acquire the trade secret through breach of a confidential relationship or discovery it by improper means." *Lawfinders,* 65 F. Supp. 2d at 421 (specifically citing and discussing *K&G Tool, T-N-T Motorsports* and other cases relied on by Superior).

The language of Superior's cases is consistent with the fact that the courts in those cases were assuming the existing of a trade secret, at least the existence of a trade secret at the time the defendant breached it obligation to keep the secret in confidence.  In *Elcor,* the court stated that *Hyde* and *K&G* "reiterate the well established rule of law that when one breaches his confidential relationship in order to **unfairly use a trade secret of another**, equity will grant relief…" 494 S.W.2d at 212 (emphasis added).  The assumption that the information at issue is indeed a trade secret was essential to the court's finding.

Additionally, in *Sikes,* the language relied on by Superior was that "[i]t is thus the present law of Texas that one who acquires knowledge of this sort in confidence may not turn it to his own use in breach of that confidence even though **subsequent events make it available to the rest of the world.**".  *Sikes*, 671 F.2d at 151, citing *Hyde,* 314 S.W.2d at 777 (emphasis added). Thus, the focus—in both *Sikes* and in *Hyde,* upon which Superior heavily relies—was on information that was once apparently secret and misappropriated but was **subsequently** made

14

public (e.g., via the patent application process in *Hyde*).  *Id.*, *see also Hyde,* 314 S.W.2d at 773

(discussing subsequent issuance of patents via which the contents of the patent application—

information that had previously been disclosed to the defendant via a licensing agreement—

became public).  Here, the Insolvency Administrator's argument is not that, after Superior

provided drawings to TAE it then disclosed them to the public (via a patent application or

otherwise), but that the information in the drawings—which is about parts designed to be

identical to and/or interchangeable with parts made years prior by other manufacturers—was

never a trade secret or confidential because it is publicly available and/or readily ascertainable.

Superior's reliance on language from *E.I. Du Pont De Nemours Powder Co. v. Masland*,

244 U.S. 100, 102 (1917) to dismiss out of hand the extensive Texas and Federal law cited by

Superior should be rejected.  First, even the Supreme Court has subsequently recognized that the

language was "dictum."  *Ruckelshaus v. Monsanto* Co., 467 U.S. 986, 1003, n.9 (1984).

Moreover, *Masland* involved only the issue of use of trade secrets by an expert during trial; it is

in no way analogous to the present dispute.  *See* 244 U.S. at 101-102.  Finally, subsequent courts

have cited *Masland* when discussing confidentiality obligations and have still held that there can

be no breach if the underlying information is not secret to begin with.  *See, e.g., Zoecon Indus. v.

American Stockman Tag Co.,* 713 F.2d 1174, 1178-79 (5th Cir. 1983) (citing *Masland* for

proposition that "[a] confidential relationship gives rise to an employee's duty not to use or

disclose the employer's trade secrets" but noting that "[t]he duty not to disclose, however, is

breached <u>only when the information disclosed can be properly classified as a trade secret.</u>")

(emphasis added).

      **C.**      **Estoppel By Contract is Inapplicable and Does Not Enable Superior to Avoid
the Fact that the Information Superior Provided Is Not Confidential**

Superior reiterates its argument that the Insolvency Administrator is barred by "estoppel by contract" from arguing that the materials Superior provided are not confidential.  In so doing, however, Superior ignores the primary argument the Insolvency Administrator made—that estoppel by contract simply does not fit and is not applicable here.  As the Insolvency Administrator pointed out in his opening brief (*see* Brief at 19), TAE agreed only to "maintain the confidentiality" of all drawings.  In *Woodard v. Gen. Motors Corp.*, 298 F.2d 121, 129 (5th Cir. 1962), which the Insolvency Administrator cited in its Opening Brief and which Superior failed to address, the Fifth Circuit made clear that estoppel by contract applies only if the party claiming estoppel shows that "he was misled to his injury by a reliance upon recitals in the instrument and that he had no notice of facts contrary to those recited." *Id.*  There are no "recitals" in the Supplier Agreement, let alone any that deal with confidentiality.  Superior has not responded at all to this argument.

Instead, Superior merely (a) attempts to distinguish the cases the Insolvency Administrator cited (*Cataphote Corp*. *v*. *Hudson*, 444 F.2d 1313 (5th Cir. 1971) and *Luccous v. J.C.Kinley Co.,* 376 S.W.2d 336 (Tex. 1964)) and (b) re-cites the same cases it had previously cited in its pre-hearing brief with no attempt to address the Insolvency Administrator's arguments demonstrating why those cases do not support Superior's position.

Superior purports to distinguish *Cataphote* because the defendant in that case himself had prior knowledge about the alleged trade secret process.  *See* Response Brief at 19.  Superior claims that the clear finding by the Fifth Circuit that "a duty not to use an idea already known cannot be created by virtue of the fact that one makes a confidential disclosure of that idea" (444 F.2d at 1316) was referring to the defendant's individual prior knowledge.  *Id.*  Superior's characterization of the Fifth Circuit's ruling is blatantly incorrect.  In multiple instances, the

*Cataphote* Court made clear that the information at issue was generally known in the industry. *See, e.g.,* 444 F.2d at 1315 (noting district court's finding that "the processes and techniques in dispute were common and necessary to all vertical type furnaces and known to the trade"); *id.* (noting that "the claimed trade secret processes were simply too basic and commonly known to be protectable"); *id.* (citing earlier *Cataphote* opinion by prior Fifth Circuit opinion that concluded that "an item or process of public or general knowledge in an industry cannot be appropriated by one as his own secret."). Indeed, immediately after stating its finding that "a duty not to use an idea already known cannot be created by virtue of the fact that one makes a confidential disclosure of that idea," the Fifth Circuit went on to state that "if the rule were not so restricted it is obvious that by disclosing an idea under delusions of confidence, the person making the disclosure thereafter could prevent the confidante from subsequently making use of it, even though the idea was <u>well known prior to the date of the disclosure and open to the use of all others in the world</u>." *Id.* at 1316 (emphasis added). Clearly, the finding in *Cataphote* was based on the conclusion that, where information is generally known in the industry or is publicly available, a party cannot make it confidential merely by disclosing it pursuant to a confidentiality agreement. Superior has failed to make any reasoned argument why the clear dictate of *Cataphote* does not apply here.[11]

---

[11] Superior does point out that *Cataphote* was a trade secret case and involved Mississippi law. However, as noted, Superior itself has cited and relied on numerous trade secret cases and cases applying Mississippi law. *See, e.g., Lear Siegler,* 569 F.2d 286. Superior also points out that there was no confidentiality agreement in *Cataphote.* While that is true, Superior ignores the fact that, in its prior ruling in the case, a different panel of the Fifth Circuit noted that, while there was no express contract, any duties the defendant might have regarding Cataphote's processes and equipment could be based on "the implied contract springing from his confidential relationship to Cataphote." *Cataphote Corp. v. Hudson,* 422 F.2d 1290, 1292 (5th Cir. 1970). Thus, there was a confidential relationship at issue in *Cataphote*; in fact, the very sort of confidential relationship that Superior suggests is "no different" from the relationship at issue

Superior's effort to distinguish the Texas Supreme Court's opinion in *Luccous v. J.C. Kinely Co.,* 376 S.W.2d 336 (Tex. 1964) also fails. Superior claims that the license agreement there was "irrelevant" because it had terminated. Response Brief at 20. While the *Luccous* court did reject a claim for breach of contract based on the fact that the license agreement had terminated, it cannot be disputed that the court's decision to reverse the lower court's grant of an injunction to prevent the defendants from using information gained <u>under the licensing agreement</u> was based on the fact that the information at issue was not secret: ("We hold that the plaintiff has no 'trade secret' for this court to protect, and the equitable remedy of injunction should not be employed <u>to prevent defendants from using the information and knowledge they gained under the licensing agreement</u>…"). 376 S.W.2d at 340. Thus, in *Luccous,* the Texas Supreme Court—like the court in *Global Water, Lawfinders* and others—made clear that courts will not blindly apply a confidentiality provision or other mechanism by which a party has claimed its information is confidential or a trade secret but will, instead, look at the threshold question of whether the material at issue is truly confidential or secret. Superior has offered no real response to this extensive line of cases.

Superior's only other argument to support application of estoppel by contract is its continued citation to and reliance on *Picker Int'l. Corp. v. Imaging Equip. Servs., Inc.*, 931 F. Supp. 18 (D. Mass. 1995), *aff'd sub nom Picker Int'l., Inc. v. Leavitt,* 94 F.3d 640 (1st Cir.1996) and *In re Matter of Uniservices, Inc.*, 517 F.2d 492 (7th Cir. 1975). *See* Response Brief at 18, 20. But Superior made no effort to respond to the Insolvency Administrator's arguments showing why those cases do not support Superior's position. *See* Opening Brief at 20-21

---

(continued…)

here. *See* Response Brief at 10 (analogizing relationship between TAE and Superior to relationship of employer and employee).

(pointing out that (1) the *Picker* court conducted an extensive analysis as to whether the

information at issue truly was a trade secret and concluded that it was; and (2) *Uniservices*

involved implied obligations between an employer and employee and the defendant's own

affirmative representations regarding the value of the information at issue).

Thus, Superior has failed to establish that estoppel by contract is applicable here.  It has

ignored the Insolvency Administrator's arguments, has continued to rely on inapplicable and

distinguishable case law, and has failed to articulate any reasonable basis to disregard cases like

*Cataphote* and *Luccous.*

> **D.     The Plan and Confirmation Order Did Not Establish that the Information
> Superior Provided to TAE Is Confidential and Do Not Preclude the
> Insolvency Administrator From Arguing the Information Is Not Secret**

Superior asserts that the *res judicata* effect of the Plan and Confirmation Order "bar Dr.

Kubler from challenging Superior's ownership of the drawings, data, and information underlying

Superior's PMAs by contending the drawings, data, and information is in the public domain."

Response Brief at 21.  Superior argues that the Insolvency Administrator and TAE "were put on

notice" that "(1) Superior owned its PMAs and the technical data underlying the PMAs; and (2)

Superior's PMAs and the technical data underlying the PMAs would be transferred to the

Reorganized Debtor free and clear of all claims, liens and encumbrances."  *Id.* at 23.  Superior

therefore contends that "[i]f TAE believed the Superior's drawings [sic] or the technical data

underlying Superior's PMAs was in the public domain, Dr. Kubler could and should have raised

that issue prior to confirmation . . ."  *Id.*  Other than cases standing for the general proposition

that *res judicata* can apply in a confirmation context, Superior cites only the same two cases that

the Insolvency Administrator distinguished in his opening brief.  Superior Response Brief at f.n.

88.  Both of those cases are inapplicable because each involved a subsequent attempt by a

19

creditor to challenge the actual terms of the plan and confirmation order at issue.  *See* Insolvency

Administrator's Opening Brief at 8-9.

As the Insolvency Administrator explained in his Opening Brief, the Plan and

Confirmation Order made no determination whatsoever about ownership of the TAE Materials.

Similarly, the Plan and Confirmation Order made no determination that the information Superior

provided to TAE is secret.  As the Insolvency Administrator also explained in his opening brief,

*res judicata*, otherwise known as claim preclusion, does not apply here because TAE (through

the Insolvency Administrator) is not asserting a claim or cause of action against Superior.  The

Insolvency Administrator is presenting evidence and argument to the Court as to why Superior

has not, and cannot, meet its burden to show it owns the TAE Materials and, given Superior's

new focus in its response brief, why Superior is not entitled to prevent the Insolvency

Administrator from selling the TAE Materials.  Superior has failed to even respond to this

argument and has clearly not established that the Insolvency Administrator's argument that the

Superior-furnished information is not confidential somehow constitutes a claim that is the same

cause of action involved in confirmation of the Plan.[12]  It is baseless to assert that in the context

of confirmation of the Plan, TAE should have sought in essence a declaratory judgment that the

Superior-furnished information is not confidential or a trade secret and that TAE would not be in

breach of any contractual obligations to Superior if TAE later determined to sell the TAE

Materials.

        **E.**        **Superior Cannot Seriously Dispute that the Information It Supplied Is in the
Public Domain or, at a Minimum, Readily Ascertainable**

---

[12] Among other elements, claim preclusion requires that the same cause of action be required in both lawsuits.  *See* Insolvency Administrator's Opening Brief at 8.  Superior has not even attempted to establish that each of the required elements for claim preclusion have been met.

The final portion of Superior's Response Brief contains Superior's ill-fated attempt to prove what it contends it need not prove:  that the information it supplied to TAE is confidential or a trade secret.   In doing so, Superior argues that both Professor Rienäcker (the Insolvency Administrator's expert witness) and Charles Dedmon (Superior's former CEO who was responsible for obtaining Superior's PMA's) each testified in their depositions that engine maintenance manuals alone do not contain all information concerning the design of a part.

First, concerning Professor Rienäcker's testimony, the Insolvency Administrator does not contend (and has never contended) that the engine maintenance manuals alone contain all information related to the design of the parts.  Instead, as Professor Rienäcker will testify, those manuals (which both Professor Rienacker and Mr. Dedmon agree are publicly available) contain the most critical information concerning the design of the parts.  Professor Rienäcker will explain that all other information Superior supplied can be readily obtained with only moderate effort.  The engine overhaul manuals contain all dimensions and tolerances important for assessing airworthiness and interchangeability of a spare part.  Any remaining information Superior supplied is either publicly available (from sources other than engine overhaul manuals) or is at a minimum readily ascertainable.

Next, Superior tries to explain away Dedmon's prior, sworn testimony that the information necessary for Superior to obtain PMAs on the "several thousand" parts for Continental and Lycoming engines is in the public domain.  Dedmon Dep. 112:2-17 (excerpts attached as Exhibit A).  To do so, Superior cites Dedmon's testimony from early in his deposition, before he was presented with his prior sworn testimony from the Rolls Royce litigation.  It was indeed remarkable how inconsistent Mr. Dedmon's deposition testimony was on such a critical point.  Yet, when presented with his prior inconsistent deposition testimony,

Mr. Dedmon confirmed that the testimony was in fact his testimony and that it was truthful.

Dedmon Dep. 112:2-17.

Mr. Dedmon's prior, sworn testimony was clear and unequivocal.  So was his deposition

testimony in this dispute when he testified that his prior testimony did, in fact, concern the same

Superior parts that are at issue in this dispute:

> Q.    Your testimony in the Rolls-Royce case about the PMA applications that you
>
> were familiar with and had made for Continental and Lycoming parts –
>
> A.    Yes.
>
> Q.    – related to the Superior Air parts, correct?
>
> A.    Right.
>
> Q.    And those are the same parts – some subset of those parts are the parts that are
>
> involved in this dispute, correct?
>
> A.    Yes.

(Dedmon Dep. 114:2-12.)

Finally, Superior's argument that Dedmon's prior testimony is taken from "an unrelated

case" and "from an incomplete transcript taken out of context" is remarkable for at least two

reasons.  First, as noted above, while Dedmon's testimony was in a dispute between different

parties, his testimony nevertheless concerned the same parts that are at issue here.  And the

testimony was clear and unequivocal on the key issue of the public availability of the

information necessary to obtain PMA approval.  Mr. Dedmon's testimony is directly contrary to

what Superior would have this Court conclude.

Second, it is inexplicable how Superior's counsel can argue to the Court that the

transcript cited by the Insolvency Administrator is incomplete.  Mr. Dedmon was retained in the

Rolls Royce case by the same counsel who represents Superior in this dispute – Passman and Jones, and specifically Superior's lead counsel in this dispute – Jerry Alexander.   (Dedmon Dep. 113:8-14.)   The undersigned counsel has requested, in writing and on multiple occasions, that Passman and Jones produce a complete copy of Mr. Dedmon's deposition transcript from the Rolls Royce case.  *See* Simon 7/24/14 letter to Robison;  Winikka 7/29/14 email to Robison (attached as Exhibit B).  To date, Superior's counsel has not responded to these requests.  This is all the more remarkable given that Passman and Jones obviously has the transcript given that Superior has attached portions of the deposition transcript to its brief.  *See* SAP Appendix at pp. 060 – 062.  It is thus quite telling that nothing in the excerpts cited by Superior comes close to suggesting that Dedmon's prior testimony concerning the parts at issue here was anything other than what it appears to be: a critical admission by Superior's designated corporate representative on a key issue in this dispute.

### III.    CONCLUSION

The Insolvency Administrator respectfully requests that, because the TAE Materials are not Superior's property and because any Superior-provided materials either have been or will be returned, the Motion to Enforce be denied and that the Insolvency Administrator be awarded any additional relief to which he may be entitled.

Dated:  August 4, 2014

Respectfully submitted,

 /s/ Craig F. Simon
Craig F. Simon, Esq.
State Bar No. 00784968
Daniel P. Winikka, Esq.
State Bar No. 00794873
SIMON, RAY & WINIKKA LLP
2525 McKinnon Street, Suite 540
Dallas, TX  75201
Telephone:  (214) 871-2292
Facsimile:   (469) 759-1699

**Counsel for Dr. Bruno Kübler, in his Capacity as Insolvency Administrator of Thielert Aircraft Engines GmbH**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 4[h] day of August, 2014, a true and correct copy of the foregoing document has been served on the parties listed below via the Court's ECF filing system, first class mail or other appropriate means.

                                        */s/ Craig F. Simon*
                                        Craig F. Simon


U.S. Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242-1496

Jerry Alexander
James Adams
Christopher Robison
PASSMAN & JONES
1201 Elm Street, Suite 2500
Dallas, TX 75270