# Exhibit A

```
 1                IN THE UNITED STATES BANKRUPTCY COURT
 2                FOR THE NORTHERN DISTRICT OF TEXAS
 3                           DALLAS DIVISION
 4   In re:                     §
                                §
                                §
 5   SUPERIOR AIR PARTS, INC.,  §      NO. 08-36705-BJH-11
                                §
 6       Debtor.                §
 7
 8
 9                       ORAL DEPOSITION OF
10                         CHARLES DEDMON
11       INDIVIDUALLY AND AS CORPORATE REPRESENTATIVE OF
12                    SUPERIOR AIR PARTS, INC.
13                         JULY 15, 2014
14
15           ORAL DEPOSITION of CHARLES DEDMON,
16   produced as a witness at the instance of the
17   Insolvency Administrator of Thielert Aircraft Engines
18   GmbH, and duly sworn, was taken in the above-styled
19   and numbered cause on the 15th of July, 2014, from
20   10:13 a.m. to 4:26 p.m., before Jennifer Quick
21   Davenport, CSR in and for the State of Texas, reported
22   by machine shorthand, at the offices of Passman &
23   Jones, 1201 Elm Street, Suite 2500, in the City of
24   Dallas, County of Dallas, State of Texas, pursuant to
25   Notice and the Federal Rules of Civil Procedure.
```

Charles Dedmon - July 15, 2014

```
              1        A.   That's correct.
              2        Q.   Let's continue on.  The next question is:
              3   How many parts have -- have you tried to obtain PMA
              4   approval for with respect to the Continental and
              5   Lycoming aircraft engines?
15:45:28      6              Answer:  Several thousand.
              7              Question:  And that related to piston
              8   engines?
              9              Answer:  Yes.
             10              Question:  In every single one of those
             11   several thousand parts the information was in the
             12   public domain?
             13              Answer:  Yes.
             14              Was that your testimony, sir?
             15        A.   Yes.
             16        Q.   Was that testimony truthful?
15:45:52     17        A.   Yes.
15:46:51     18        Q.   What type of dispute was this Rolls-Royce
             19   case?
15:46:58     20        A.   The dispute was over Rolls-Royce claiming
             21   that HEROS had used their data -- had misappropriated
             22   their data to prepare PMA applications, I believe all
15:47:25     23   of which were made under the identicality statutes.
             24        Q.   Okay.  So it was a trade secrets case, in
             25   part?
```

Charles Dedmon - July 15, 2014

```
 1         A.   I assume so, yes.
 2         Q.   Is that your recollection?
 3         A.   Yes.
 4         Q.   And your opinion, in a nutshell, was that
 5    there was no misappropriation of trade secrets because
 6    all of the information was publicly available?
 7         A.   In this case, yes.
15:47:58  8    Q.   Who were you retained by in that case?
 9         A.   By Passman Jones.
10         Q.   What lawyers?
11         A.   I'm sorry?
12         Q.   What lawyers?
13         A.   Mr. Alexander, and I'm not sure who else
14    worked on the case.
15         Q.   Mr. Robison?
16         A.   I don't know.  I don't remember.
15:48:30 17    Q.   Is there something I'm missing here, sir,
18    with respect to the question of whether or not the
19    information in the Superior drawings is all available
20    in the public domain?
21         A.   The answer to that would be no.  When I was
22    making this testimony, I was speaking particularly
23    about the drawings that were in dispute between
15:48:58 24   Rolls-Royce and HEROS.  I wasn't talking about
25    Superior drawings or others, although some of the
```

1 principles would certainly apply.

2     Q. Your testimony in the Rolls-Royce case about

3 the PMA applications that you were familiar with and

4 had made for Continental and Lycoming parts --

5     A. Yes.

6     Q. -- related to the Superior Air Parts,

7 correct?

8     A. Right.

9     Q. And those are the same parts -- some subset

15:49:28 10 of those parts are the parts that are involved in this

11 dispute, correct?

12     A. Yes. At the time that we were talking I was

13 referring to parts that had been developed at Superior

14 when I was there at Superior.

15     Q. Okay. And the time you were talking in this

16 dispute was 2009, I believe, right, 2008, 2009? Let's

17 look. October 22nd, 2009, I believe.

15:50:00 18     A. Right, okay. Yes.

19         MR. SIMON: Let's go off the record for

20 just a moment.

15:50:17 21         (Recess 3:50-4:06.)

16:07:00 22     Q. (By Mr. Simon) I was looking back to see if

23 I asked you this question before, and I don't see that

24 I did. The testimony that you gave in the Rolls-Royce

25 case in your deposition, that was under oath, correct?